| DEBTOR: | A.H.E.R | |
|---------|---------|---|
| CASE #: | 98-25773 tnrough 98-25777 | MONTHLY OPERATING REPORT |

ACCRUAL BASIS – 6

The debtor in possession must complete the reconciliation below for each bank account, including all general, payroll and tax accounts, as well as all saving and investment accounts, money market accounts, certificates of deposit, government obligations, etc. Accounts with restricted funds should be identified by placing an asterisk next to the account number. Attach additional sheets if necessary.

Month: November 1998

| BANK RECONCILIATIONS: | | | | |
|---|---|---|---|---|
| BANK:<br>ACCOUNT NUMBER:<br>PURPOSE: | ACCOUNT #1 | ACCOUNT #2 | ACCOUNT #3 | ACCOUNT #4 |
| Balance Per Bank Statement | | | | |
| + Total deposits not Credited | | | | |
| - Outstanding checks | | | | |
| +/- Other reconciling items | | | | |
| Month End Balance Per Books | | | | |
| Number of Last Check Written | | | | |

***COPIES OF BANK STATEMENTS ATTACHED. Reconciliations are in progress.*

| INVESTMENT ACCOUNTS | | | | |
|---|---|---|---|---|
| BANK:<br>ACCOUNT NUMBER:<br>NAME: | Date of Purchase | Type of Instrument | Purchase Price | Current Value |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL INVESTMENTS | | | | |

***PLEASE REFER TO FINANCIAL STATEMENTS AND ATTACHED BANK STATEMENTS.*

| CASH | |
|---|---|
| Currency on Hand | |

***PLEASE REFER TO FINANCIAL STATEMENTS.*

| TOTAL CASH - END OF MONTH | |
|---|---|

***PLEASE REFER TO FINANCIAL STATEMENTS.*

Please attach copies of bank statements.
***COPIES OF BANK STATEMENTS ATTACHED.*

DEBTOR:     A.H.E.R.:
CASE #:     98-25773 through 98-25777                    _ONTHLY OPERATING REPORT

ACCRUAL BASIS – 7

**Payment to Insiders and Professionals**

Of the total distributions shown for the month, list the amount paid to insiders [as defined in Section 101(31) (A) – (F) of the U.S. Bankruptcy Code) and to professionals. For payments to insiders, identify the type of compensation paid (e.g. salary, bonus, commission, insurance, housing allowance, travel, car allowance, etc.).

| Name | Position | Type of Payment | Amount Paid | Cumulative Unpaid Balance |
|------|----------|-----------------|-------------|---------------------------|
|      |          |                 |             |                           |
|      |          |                 |             |                           |
|      |          |                 |             |                           |
| Total Payments to Insiders |  |  |  |  |

***PLEASE SEE ATTACHED REPORT.**

| Name | Type of Professional | Date of Court Order Authorizing Payment | Amount Approved | Amount Paid | Total Paid To Date |
|------|----------------------|------------------------------------------|-----------------|-------------|--------------------|
|      |                      |                                          |                 |             |                    |
|      |                      |                                          |                 |             |                    |
|      |                      |                                          |                 |             |                    |
| Total Payments to Professionals |  |  |  |  |  |

***PLEASE SEE THE ATTACHED PYAMENT SCHEDULE**

| Name of Creditor | Scheduled Monthly Payments Due | Amounts Paid During Month | Total Unpaid Post-petition |
|------------------|--------------------------------|---------------------------|----------------------------|
|                  |                                |                           |                            |
|                  |                                |                           |                            |
|                  |                                |                           |                            |
| Total            |                                |                           |                            |

***NO ADEQUATE PROTECTION PAYMENTS MADE DURING THIS OPERATING PERIOD.**

DEBTOR:      A.H.E.R.I
CASE #:      98-25773 through 98-25777                           ONTHLY OPERATING REPORT

ACCRUAL BASIS – 8

| | | | |
|---|---|---|---|
| 1. | Have any assets been sold or transferred outside the normal course of business this reporting period? | X | |
| 2. | Have any funds been disbursed from any account other than a debtor in possession account? | | X |
| 3. | Are any post-petition receivables (accounts, notes, or loans) due from related period? | X[1] | |
| 4. | Have any payments been made on pre-petition liabilities this reporting period? | X[2] | |
| 5. | Have any post-petition loans been received by the debtor from any party? | | X |
| 6. | Are any post-petition payroll taxes past due? | | X |
| 7. | Are any post-petition state or federal income taxes past due? | | X |
| 8. | Are any post-petition real estate taxes past due? | | X |
| 9. | Are any other post-petition taxes past due? | | X |
| 10. | Are any amounts owed to post-petition creditors past due? | X[3] | |
| 11. | Have any pre-petition taxes been paid during the reporting period? | | X |
| 12. | Are any wage payments past due? | X[4] | |

1)  *PLEASE SEE FINANCIAL STATEMENTS.*
2)  *PRE-PETITION FEDERAL GRANT LIABILITIES , WAGES, BENEFITS AND OTHER PAYMENTS PAID PURSUANT TO COURT APPROVED MOTION.*
3)  *PLEASE SEE A/P AGING REPORT.*
4)  *POTENTIAL SEVERANCE PAY OF $322,833 FOR AUMP AND $349,228 FOR AUHS HAS BEEN IDENTIFIED.  PAYMENTS ARE BEING WITHHELD SUBJECT TO DETERMINATION OF THE APPLICABILITY OF THE OBLIGATION.*

| | | | |
|---|---|---|---|
| 1. | Are worker's compensation, general liability, and other necessary insurance coverages in effect? | X | |
| 2. | Are all premium payments paid current? * | X | |
| 3. | Please itemize policies below. *** | | |

*Tail coverage for Medical malpractice coverage has been acquired and paid for the period subsequent to the sale of the eastern operations as of 11/10/98.  It is as yet undetermined whether additional premiums may be required to settle amounts due for medical and malpractice liability and general insurance amounts for periods prior to the sale.  Amounts may be due and payable for the physician practices at AUMP-West and AUHS-West that have been retained by AHERF.*
**THESE ARE ON FILE WITH THE COURT (PROVIDED AS PART OF INITIAL OPERATING REPORT FILING).*

Installment Payments

| Type of Policy | Carrier | Period Covered | Payment Amount & Frequency |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

***NONE.*

DEBTOR:    A.H.E.R..
CASE #:    98-25773 through 98-25777                    ...ONTHLY OPERATING REPORT

ACCRUAL BASIS – 9

| | | | |
|---|---|---|---|
| 1. | Total Number of Employees at Beginning of Period | | |
| 2. | Number of Employees Hired During the Period | | |
| 3. | Number of Employees Terminated or Resigned During the Period | | |
| 4. | Total Number of Employees on Payroll at End of Period | | |

***PLEASE SEE ATTACHED OPERATIONS REPORT.*

**Change of address**

If your mailing address has changed and you have not previously notified the United States Trustees of the change, list your new address below.

Date of Change:    _____

New Address:    _____

_____

_____

***NO CHANGES OF ADDRESS DURING THIS OPERATING PERIOD.*

ALLEGHENY HOSPITALS, CENTENNIAL

CONSOLIDATED FINANCIAL STATEMENTS

November 30, 1998

Printed:    16-Mar-99
            02:31 PM

ALLEGHENY HOSPITALS, CENTENNIAL,
CONSOLIDATED BALANCE SHEETS
November 30, 1998
(Dollars in thousands)

| | November 30,1998 | June 30, 1998 |
|---|---|---|
| **Current:** | | |
| Cash and short-term investments | $20,939 | ($7,077) |
| Investments limited as to use | 3,823 | 12,641 |
| Receivables: | | |
| Patient accounts, less allowance | | |
| for doubtful accounts of $48,962 at | | |
| November 30 and $43,554 at June 30 | 41,239 | 36,971 |
| Other | 4,175 | 5,920 |
| Inventories | 0 | 3,336 |
| Prepaid expenses | 1,030 | 1,069 |
| Total current assets | 74,272 | 52,860 |
| | | |
| **Investments limited or restricted as to use:** | | |
| Unrestricted: | | |
| By Board for designated purposes | 3,952 | 4,055 |
| By financing agreements | 14,563 | 14,245 |
| Temporarily restricted | 2 | 19,408 |
| Permanently restricted | 0 | 5,997 |
| Total investments limited or restricted as to u | 18,517 | 43,705 |
| | | |
| Property and equipment, net | 1,237 | 145,715 |
| Restricted funds receivable from operations | 0 | 0 |
| Other assets | 9,520 | 9,188 |
| | | |
| Total assets | $103,546 | $251,468 |

## ALLEGHENY HOSPITALS, CENTENNIAL
### CONSOLIDATED BALANCE SHEETS
November 30, 1998
(Dollars in thousands)

| LIABILITIES AND NET ASSETS | November 30, 1998 | June 30, 1998 |
|---|---|---|
| **Post-Petition Liabilities:** | | |
| **Current Liabilities:** | | |
| Accounts payable | $3,770 | $0 |
| Accrued expenses | 12,681 | 0 |
| DIP financing | 0 | 0 |
| Payables to affiliates | 9,502 | 0 |
| Current portion of deferred revenue | 23 | 0 |
| Current portion of self-insurance liabilities | 3,820 | 0 |
| Current portion of long-term debt | (45) | 0 |
| Total current liabilities | 29,751 | 0 |
| **Long-term Liabilities:** | | |
| Long-term debt | 105 | 0 |
| Payable to affiliates | 8,318 | 0 |
| Deferred revenue | 0 | 0 |
| Self-insurance liabilities | 0 | 0 |
| Other noncurrent liabilities | 1,025 | 0 |
| Total long-term liabilities | 9,448 | 0 |
| Total post-petition liabilities | 39,199 | 0 |
| **Pre-Petition Long-term Liabilities:** | | |
| Accounts payable | 27,452 | 34,248 |
| Accrued expenses | 27,326 | 46,896 |
| Long-term debt | 163,507 | 167,191 |
| Payables to affiliates | 35,115 | 39,234 |
| Operating funds payable to restricted funds | 0 | 0 |
| Deferred revenue | 4,248 | 4,363 |
| Deferred revenue | 3,363 | 10,327 |
| Self-insurance liabilities | 13,119 | 6,296 |
| Other noncurrent liabilities | 216,127 | 308,555 |
| Total pre-petition long-term liabilities | 315,276 | 308,555 |
| Total liabilities | 315,276 | 308,555 |
| **Net assets:** | | |
| **Post-petition** | | |
| Unrestricted | (122,233) | 0 |
| Temporarily restricted | (21,362) | 0 |
| Permanently restricted | (5,997) | 0 |
| **Pre-petition** | | |
| Unrestricted | (89,599) | (84,450) |
| Temporarily restricted | 21,364 | 21,366 |
| Permanently restricted | 5,997 | 5,997 |
| Total net assets | (211,830) | (57,087) |
| Total liabilities and net assets | $103,546 | $251,468 |

34

ALLEGHENY HOSPITALS, CENTENNIAL.
CONSOLIDATED STATEMENT OF REVENUE AND EXPENSES
for the five months ended November 30, 1998
(Dollars in thousands)

| | Year-to-Date |
|---|---|
| **Revenue:** | |
| Inpatient | $66,269 |
| Outpatient | 19,976 |
| Capitation | 419 |
| Risk contract | (1,008) |
| Physician services | 124 |
| Sponsored projects | (77) |
| Assets released from restriction | 0 |
| Investment income | 634 |
| Other | 2,240 |
| **Total revenue** | 88,577 |
| **Expenses:** | |
| Salaries, wages and fees | 37,868 |
| FICA | 2,498 |
| Fringe benefits | 4,202 |
| Patient care supplies | 12,613 |
| Purchased services | 11,780 |
| Support & contract costs | 13,940 |
| Administrative and general | 4,020 |
| Bad debts | 7,822 |
| Depreciation and amortization | 3,188 |
| Interest | 6,462 |
| **Total expenses** | 104,393 |
| **Deficiency of revenue over expenses,** | |
| before discontinued operations and special items | (15,816) |
| **Discontinued Operations:** | |
| Loss on sale of hospital assets | (93,984) |
| **Special items:** | |
| Restructuring costs | (13,719) |
| **Deficiency of revenue over expenses** | ($123,519) |

35

**ALLEGHENY HOSPITALS, CENTENNIAL**
**CONSOLIDATED STATEMENT OF CHANGES IN NET ASSETS**
for the five months ended November 30, 1998
(Dollars in thousands)

| | | Restricted Funds | |
| --- | --- | --- | --- |
| | Unrestricted | Temporarily Restricted | Permanently Restricted |
| Balances, June 30, 1998 | ($84,450) | $21,566 | $5,997 |
| Deficiency of revenue over expenses | (4,561) | | |
| Restricted: | | | |
| Gifts, grants and bequests | | 6 | |
| Investment income | | | |
| Unrealized depreciation of investments | | | |
| Transfers: | | | |
| (To)/from affiliates: | | | |
| AUMP-East | (588) | (8) | |
| Net assets released from restriction | | | |
| Balances, July 20, 1998 | ($89,599) | $21,564 | $5,997 |
| Deficiency of revenue over expenses | (118,987) | | |
| Restricted: | | | |
| Gifts, grants and bequests | | 20 | 305 |
| Investment income | | 271 | |
| Transfers: | | | |
| (To)/from affiliates: | | | |
| AUMP - East | (3,245) | (13) | |
| AUHS - East | (14) | (191) | |
| (To)/from other funds | 13 | | |
| Net assets released from restriction | | (21,449) | (6,302) |
| Disposal of restricted hospital assets | | | |
| Deferred revenue and other | | | |
| Balances, November 30, 1998 | ($122,833) | ($41,362) | ($5,997) |
| Total Net Assets | ($211,832) | $2 | $0 |

**ALLEGHENY HOSPITALS, CENTENNIAL,**
**CONSOLIDATING BALANCE SHEETS**
**AS OF NOVEMBER 30, 1998**
(dollars in thousands)

| ASSETS | GRADUATE | MT. SINAI | PARKVIEW | CITY AVE. | TOTAL | RECLASS ELIMN. | GRAND TOTAL |
|---|---|---|---|---|---|---|---|
| **Current:** | | | | | | | |
| Cash and short-term investments | $17,759 | $377 | ($1,666) | $4,469 | $20,939 | | $20,939 |
| Investment limited as to use | 3,823 | 0 | 0 | 0 | 3,823 | | 3,823 |
| Receivables: | | | | | | | |
| Patient accounts | 29,640 | 0 | 7,940 | 3,759 | 41,339 | | 41,339 |
| Affiliates | 1,046 | 0 | 1,320 | 0 | 2,366 | | 2,366 |
| Other | 745 | 251 | 2,717 | 462 | 4,175 | | 4,175 |
| Inventories | 6 | (7) | 0 | 1 | 0 | | 0 |
| Prepaid expenses | 1,166 | 0 | 214 | 230 | 1,630 | | 1,630 |
| Total current assets | 54,185 | 621 | 10,525 | 8,941 | 74,272 | | 74,272 |
| **Investments limited or restricted as to use:** | | | | | | | |
| Unrestricted: | | | | | | | |
| By Board for designated purposes | 3,838 | 0 | 0 | 114 | 3,952 | | 3,952 |
| By financing agreements | 14,563 | 0 | 0 | 0 | 14,563 | | 14,563 |
| Temporarily restricted: | 0 | 0 | 0 | 2 | 2 | | 2 |
| Permanently restricted: | 0 | 0 | 0 | 0 | 0 | | 0 |
| Total investments limited or restricted as to u | 18,401 | 0 | 0 | 116 | 18,517 | 0 | 18,517 |
| Property and equipment, net | | 1,237 | 0 | 0 | 1,237 | | 1,237 |
| Receivable from affiliates | 56,590 | 0 | 0 | 0 | 56,590 | (56,590) | 0 |
| Restricted funds receivable from operations | 0 | 0 | 0 | 0 | 0 | | 0 |
| Receivable from GHS | 9,520 | 0 | 0 | 0 | 9,520 | | 9,520 |
| **Total assets** | $138,696 | $1,858 | $10,525 | $9,057 | $160,136 | ($56,590) | $103,546 |

## ALLEGHENY HOSPITALS, CENTENNIAL
### CONSOLIDATING BALANCE SHEETS
### AS OF NOVEMBER 30, 1998
(Dollars in thousands)

November 30, 1998

| LIABILITIES AND NET ASSETS | GRADUATE | MT. SINAI | PARKVIEW | CITY AVE. | TOTAL | RECLASS ELIMIN. | GRAND TOTAL |
|---|---|---|---|---|---|---|---|
| **Post-Petition Liabilities:** | | | | | | | |
| **Current Liabilities:** | | | | | | | |
| Account payable | 2,420 | 30 | 519 | 801 | 3,770 | | 3,770 |
| Accrued expenses | 8,473 | 2,119 | 1,011 | 1,078 | 12,681 | | 12,681 |
| DIP financing | 6,080 | 91 | 1,735 | 1,596 | 9,502 | | 9,502 |
| Payables to affiliates | 23 | | | | 23 | | 23 |
| Current portion of deferred revenue | 1,291 | | 1,701 | 828 | 3,820 | | 3,820 |
| Current portion of self-insurance liabilities | | | | | | | |
| Current portion of long-term debt | | | (45) | | (45) | | (45) |
| Total current liabilities | 18,287 | 2,240 | 4,921 | 4,303 | 29,751 | | 29,751 |
| **Long-term Liabilities:** | | | | | | | |
| Long-term debt | 9 | | 43 | 53 | 105 | | 105 |
| Payable to affiliates | 2,051 | | 2,937 | 3,330 | 8,318 | | 8,318 |
| Deferred revenue | | | | | | | |
| Self-Insurance liabilities | 517 | | 299 | 289 | 1,105 | | 1,105 |
| Other noncurrent liabilities | 526 | 132 | 299 | 241 | 1,198 | | 1,198 |
| Total long-term liabilities | 2,001 | 132 | 2,601 | 2,692 | 9,698 | | 9,698 |
| Total post-petition liabilities | 18,813 | 2,372 | 8,172 | 7,995 | 39,249 | | 39,249 |
| **Pre-Petition Long-term Liabilities:** | | | | | | | |
| Accounts payable | 17,892 | 710 | 3,082 | 5,768 | 27,452 | | 27,452 |
| Accrued expenses | 16,506 | 4,450 | 3,732 | 2,638 | 27,326 | | 27,326 |
| Long-term debt | 156,744 | 3,453 | 2,807 | 3,955 | 163,507 | | 163,507 |
| Payables to affiliates | | | 32,046 | 56,206 | 91,705 | (56,590) | 35,115 |
| Operating funds payable to restricted funds | 4,207 | 1,165 | 991 | 916 | 4,248 | | 4,248 |
| Deferred revenue | 2,291 | 132 | | 41 | 5,163 | | 5,163 |
| Self-Insurance liabilities | 12,611 | 192 | 241 | 241 | 13,116 | | 13,116 |
| Other noncurrent liabilities | 9,810 | | 58,788 | 69,765 | 13,115 | | 276,127 |
| Total pre-petition long-term liabilities | 210,253 | 14,181 | 59,938 | 77,761 | 332,712 | (56,590) | 276,122 |
| Total liabilities | 229,066 | 14,181 | 50,938 | 77,761 | 371,966 | (56,590) | 315,376 |
| **Net assets:** | | | | | | | |
| Post-petition | | | | | | | |
| Unrestricted | (67,786) | (1,182) | (27,195) | (26,070) | (122,233) | | (122,233) |
| Temporarily restricted | (21,362) | | | | (21,362) | | (21,362) |
| Permanently restricted | (5,997) | | | | (5,997) | | (5,997) |
| Pre-petition | | | | | | | |
| Unrestricted | (22,584) | (11,141) | (13,238) | (42,636) | (89,599) | | (89,599) |
| Temporarily restricted | 21,362 | | | 2 | 21,364 | | 21,364 |
| Permanently restricted | 5,997 | | | | 5,997 | | 5,997 |
| Total net assets | (90,370) | (12,323) | (40,433) | (68,704) | (211,830) | | (211,830) |
| Total liabilities and net assets | $138,696 | $51,858 | $10,525 | $9,057 | $160,135 | ($56,590) | $103,546 |

38

**ALLEGHENY HOSPITALS, CENTENNIAL**
**CONSOLIDATING BALANCE SHEETS**
**AS OF NOVEMBER 30, 1998**
**(Dollars in thousands)**

| | GRADUATE | MT SINAI | PARKVIEW | CTR. STE. | TOTAL | RECLASS ELIMIN. | GRAND TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | *June 30, 1998* | | | |
| **Current:** | | | | | | | |
| Cash and short-term investments | (37,612) | (350) | $1,458 | (473) | (37,077) | | (37,077) |
| | 12,641 | | | | 12,641 | | 12,641 |
| Receivables: | | | | | | | |
| Patient accounts | 29,635 | (4,407) | 4,517 | 7,238 | 36,971 | | 36,971 |
| Other | 5,417 | 26 | 48 | 359 | 5,920 | | 5,920 |
| Inventories | 2,408 | 4 | 174 | 350 | 3,336 | | 3,336 |
| Prepaid expenses | 866 | | 100 | 113 | 1,069 | | 1,069 |
| Total current assets | 43,455 | (4,481) | 6,807 | 7,389 | 52,860 | 0 | 52,860 |
| **Investments limited or restricted as to use:** | | | | | | | |
| Unrestricted | | | | | | | |
| By Board for designated purposes | 3,893 | 0 | 0 | (6) | 4,055 | | 4,055 |
| By financing agreements | 14,255 | 0 | 0 | 0 | 14,255 | | 14,255 |
| Temporarily restricted | 19,408 | 0 | 0 | 2 | 19,408 | | 19,408 |
| Permanently restricted | 5,922 | 0 | 0 | 5 | 5,922 | | 5,922 |
| Total investment limited or restricted as to use | 43,543 | 0 | 0 | 162 | 43,703 | 0 | 43,703 |
| Property and equipment, net | 83,231 | 7,357 | 29,106 | 26,111 | 145,715 | | 145,715 |
| Receivables from affiliates | 55,762 | 0 | 0 | 0 | 55,762 | (55,762) | 0 |
| Restricted funds receivable from operations | | 0 | 0 | 0 | | | |
| Other assets | 5,971 | 0 | 2,668 | 549 | 9,188 | | 9,188 |
| Total assets | 231,961 | 2,786 | 38,271 | 34,205 | 307,270 | (55,762) | 251,508 |
| **LIABILITIES AND NET ASSETS** | | | | | | | |
| **Pre-Petition Long-term Liabilities:** | | | | | | | |
| Accounts payable | 20,491 | 533 | 4,404 | 8,420 | 34,248 | | 34,248 |
| Accrued expenses | 29,049 | 6,321 | 6,943 | 5,281 | 46,896 | | 46,896 |
| Long-term debt | (60,222) | 5,411 | 2,566 | 4,002 | (67,191) | | (67,191) |
| Payables to affiliates | 0 | 0 | 33,975 | 55,603 | 94,996 | (55,762) | 39,234 |
| Operating funds payable to restricted funds | | | | 41 | | | |
| Deferred income | 4,212 | | | 1,035 | 4,350 | | 4,350 |
| Self-insurance liabilities | 4,299 | 1,359 | 2,414 | 1,935 | 10,127 | | 10,127 |
| Other noncurrent liabilities | 5,571 | 197 | 217 | 356 | 6,296 | | 6,296 |
| Total pre-petition long-term liabilities | 333,955 | 13,865 | 50,441 | 75,634 | 344,317 | (55,762) | 308,555 |
| **Net assets:** | | | | | | | |
| Unrestricted | (19,348) | (11,077) | (12,370) | (41,455) | (44,450) | | (44,450) |
| Temporarily restricted | 21,364 | 0 | 0 | 0 | 21,366 | | 21,366 |
| Permanently restricted | 5,922 | 0 | 0 | 2 | 5,997 | | 5,997 |
| Total net assets | 8,012 | (11,077) | (12,570) | (41,455) | (17,087) | 0 | (17,087) |
| Total liabilities and net assets | 231,868 | 2,786 | 38,271 | 34,205 | 402,230 | (55,762) | 251,508 |

**ALLEGHENY HOSPITALS, CENTENNIAL**
**CONSOLIDATING STATEMENT OF REVENUE AND EXPENSES**
for the five months ended November 30, 1998
(Dollars in Thousands)

| | CURRENT YEAR ACTUAL | | | | |
| --- | --- | --- | --- | --- | --- |
| | GRADUATE | MT.SINAI | PARKVIEW | CITY AVE. | GRAND TOTAL |
| **Revenue:** | | | | | |
| Inpatient | $41,465 | $(1,285) | $11,248 | $14,841 | $66,269 |
| Outpatient | 12,526 | (235) | 3,993 | 3,692 | 19,976 |
| Capitation | 178 | 0 | 164 | 77 | 419 |
| Risk contract | (221) | 0 | (295) | (490) | (1,008) |
| Physician services | 0 | 0 | 22 | 102 | 124 |
| Sponsored projects | 0 | 0 | 0 | 0 | 0 |
| Assets released from restriction | (77) | 0 | 0 | 0 | (77) |
| Investment income | 634 | 0 | 0 | 0 | 634 |
| Other | 1,729 | 0 | 295 | 216 | 2,240 |
| Total revenue | 56,232 | (1,520) | 15,427 | 18,438 | 88,577 |
| **Expenses:** | | | | | |
| Salaries, wages and fees | 20,324 | (2) | 7,041 | 10,505 | 37,868 |
| FICA | 1,330 | 0 | 463 | 705 | 2,498 |
| Fringe benefits | 2,159 | 0 | 854 | 1,189 | 4,202 |
| Patient care supplies | 9,765 | 10 | 1,310 | 1,528 | 12,613 |
| Purchased services | 7,741 | 327 | 1,636 | 2,076 | 11,780 |
| Support & contract costs | 9,017 | 0 | 2,392 | 2,531 | 13,940 |
| Administrative and general | 2,782 | 8 | 598 | 632 | 4,020 |
| Bad debts | 5,259 | (741) | 1,775 | 1,529 | 7,822 |
| Depreciation and amortization | 1,439 | 0 | 687 | 1,062 | 3,188 |
| Interest | 3,603 | 124 | 1,041 | 1,692 | 6,462 |
| Total expenses | 63,419 | (274) | 17,799 | 23,449 | 104,393 |
| Deficiency of revenue over expenses, before discontinued operations and special items | (7,187) | (1,246) | (2,372) | (5,011) | (15,816) |
| **Discontinued Operations:** | | | | | |
| Loss on disposal of hospital assets | (53,321) | 0 | (21,637) | (19,026) | (93,984) |
| **Special items:** | | | | | |
| Restructuring costs | (8,683) | 0 | (2,834) | (2,229) | (13,746) |
| Deficiency of revenue over expenses | $(69,191) | $(1,246) | $(26,843) | $(26,266) | $(123,546) |

40

**ALLEGHENY HOSPITALS, CENTENNIAL**
**CONSOLIDATING STATEMENT OF CHANGES IN NET ASSETS**
for the five months ended November 30, 1998
(Dollars in Thousands)

| | UNRESTRICTED | | | | |
| --- | --- | --- | --- | --- | --- |
| | GRADUATE | MT. SINAI | PARKVIEW | CITY AVE. | TOTAL |
| Balances, June 30, 1998 | ($19,348) | ($11,077) | ($12,570) | ($41,455) | ($84,450) |
| Deficiency of revenue over expenses | (2,942) | (64) | (521) | (1,034) | (4,561) |
| Transfers: | | | | | |
| (To)/from affiliates: | | | | | |
| AUMP-East | (294) | | (147) | (147) | (588) |
| Balances, July 20, 1998 | ($22,584) | ($11,141) | ($13,238) | ($42,636) | ($89,599) |
| Deficiency of revenue over expenses | ($66,249) | ($1,182) | ($26,322) | ($25,234) | ($118,987) |
| Transfers: | | | | | |
| (To)/from affiliates: | | | | | |
| AUMP - East | (1,536) | | (873) | (836) | (3,245) |
| AUHS - East | (14) | | | | (14) |
| To/from other funds | 13 | | | | 13 |
| Balances, November 30, 1998 | ($67,786) | ($11,182) | ($27,195) | ($26,670) | ($122,133) |
| Total Net Assets | ($90,370) | ($12,323) | ($40,433) | ($68,306) | ($211,433) |

**ALLEGHENY HOSPITALS, CENTENNIAL**
**CONSOLIDATING STATEMENT OF CHANGES IN NET ASSETS**
for the five months ended November 30, 1998
(Dollars in Thousands)

| | TEMPORARILY RESTRICTED | | | | |
| --- | --- | --- | --- | --- | --- |
| | GRADUATE | MT. SINAI | PARKVIEW | CITY AVE. | TOTAL |
| Balances, June 30, 1998 | $21,364 | $0 | $0 | $2 | $21,36 |
| Restricted: | | | | | |
| Gifts, grants and bequests | | | | | |
| Investment income | 6 | | | | 6 |
| Unrealized depreciation of investments | (8) | | | | (8) |
| Net assets released from restriction | | | | | |
| Balances, July 20, 1998 | $21,362 | $0 | $0 | $2 | $21,364 |
| Restricted: | | | | | |
| Gifts, grants and bequests | 20 | | | | 20 |
| Investment income | 271 | | | | 271 |
| Unrealized depreciation of investments | (13) | | | | (13) |
| To/from other funds | (191) | | | | (191) |
| Net assets released from restriction | | | | | 0 |
| Deferred revenue and other | (21,449) | | | | (21,449) |
| Disposal of restricted hospital assets | | | | | |
| Post-Petition Balance, November 30, 1998 | ($21,362) | $0 | $0 | $0 | ($21, ) |
| Total Net Assets | $0 | $0 | $0 | $2 | $2 |

42

**ALLEGHENY HOSPITALS, CENTENNIAL**
**CONSOLIDATING STATEMENT OF CHANGES IN NET ASSETS**
for the five months ended November 30, 1998
(Dollars in Thousands)

|  | PERMANENTLY RESTRICTED | | | | |
|  | GRADUATE | MT. SINAI | PARKVIEW | CITY AVE. | TOTAL |
|---|---|---|---|---|---|
| Balances, June 30, 1998 | $5,997 | $0 | $0 | $0 | $5,997 |
| Unrealized appreciation/(depreciation) of investments |  |  |  |  | 0 |
| Net assets released from restriction |  |  |  |  | 0 |
| Balances, July 20, 1998 | $5,997 | $0 | $0 | $0 | $5,997 |
| Gifts, grants and bequests | 305 |  |  |  | 305 |
| Unrealized appreciation/(depreciation) of investments |  |  |  |  | 0 |
| Net assets released from restriction |  |  |  |  | 0 |
| Disposal of restricted hospital assets | (6,302) |  |  |  | (6,302) |
| Post-Petition Balance, November 30, 1998 | ($5,997) | $0 | $0 | $0 | ($5,997) |
| Total Net Assets | 0 | 0 | 0 | 0 | 0 |

ALLEGHENY HOSPITALS, CENTENNIAL
Supporting Footnotes
*(Amounts in thousands)*

November 30, 1998

*Cash and short-term investments:* Cash and short-term investments include the following components:
o   Cash generated from operations.
o   Allocation of proceeds from the DIP Loan. The DIP Loan was paid-off from the proceeds to the sale of eastern entity assets to Tenet Health System on November 10, 1998.
o   Allocation of proceeds from the sale transaction.

The allocation of DIP loan and sales proceeds between corporations is included as an attachment to this schedule. The allocation methodology for DIP loan and sale proceeds has not been finalized. The methodology used within these reports is subject to the final agreement of appropriate parties.

*Investments limited or restricted as to use:*  Current and long-term portions of investments limited as to use are primarily bond sinking and debt service reserve funds related to the Series 1991 and 1993 debt issues. $3,838 classified under *board for designated purposes* is a collateral fund for workers compensation claims for Graduate Hospital. Temporary and permanently restricted endowment funds were transferred to Tenet as part of the sales transaction.

*Patient accounts receivable:*  Changes in patient accounts receivable balances reflect increased reserves established for aging receivable balances and a 15% reserve to reflect expected liquidation costs in the collection of outstanding accounts.

*Receivable from/payable to affiliates, current:*  Aggregate amounts due to or from affiliated entities represent amounts due for corporate support or other operating activity. Settlements include allocation of AHERF support for current period, including allocation of restructuring costs and contingent liability.  Management is in the process of reconciling and validating all post-petition inter-company amounts as the basis for proposing final settlement adjustments for all corporations.

*Other Receivables and prepaid expenses:*  Balances reflect the expected value of outstanding rent receivables, prepaid rents, security deposits, and miscellaneous prepaid expense amounts.

*Property and equipment, net:*  The asset sales transaction with Tenet included all property, plant and equipment for the sold corporations.  Mt. Sinai was not included in the sales transaction and is included at its expected liquidation value to the estate.

*Receivable from affiliates, long-term:* Pre-petition payables and receivables reported for each affiliated entity were consolidated through the AHERF parent entity. Balance represents the pre-petition amount due from AHERF as of the date of this report. The receivable balance is consolidated against the pre-petition payable to affiliates for financial statement purposes.

*Restricted funds receivable from operations:* Restricted funds receivable from operations was transferred to Tenet as part of sales transaction.

*Accounts payable and accrued expenses:* The change in balances reflects a refinement in the classification of pre- and post-petition liabilities.

*Long-term liabilities:* Balance includes primarily long-term amounts due to AHERF reported for Mt. Sinai, Parkview, and City Avenue. Management is in the process of reconciling and validating all post-petition inter-company amounts as the basis for proposing final settlement adjustment for all corporations.

*Pre-petition liabilities:* Pre-petition liabilities have not been reconciled to amounts being accumulated by claims administrators compiling data for the bankruptcy proceedings. Total pre-petition claims may change materially as a result of their work.

*Discontinued operations/Special items (statement of operations):* These amounts include the calculated loss from the sale of eastern corporation assets to Tenet and restructuring costs related to corporate downsizing and activities of the bankruptcy.

*Inter-company Support:* Final analysis to identify and settle amounts related to inter-company support is in process. Any adjustments related to these settlements will be recorded in future financial statements.

45

## AHERF et. al.
### Allocation of the DIP Loan and Sale Transaction Proceeds
*(in thousands)*

| | AUH, East | Centennial | AUHS-East | AUMP-East | AHERF | Total |
|---|---|---|---|---|---|---|
| Allocation of DIP Proceeds (A) | $ 35,510 | $ 13,654 | $ 15,188 | $ 5,886 | $ 14,152 | $ 84,391 |
| | | | | | | |
| Distribution of Net Sale Proceeds before cure amounts (B $) | $ 91,679 | $ 37,780 | $ 35,070 | $ (2,396) | $ 3,744 | $ 165,877 |
| Less Escrow Proceeds | (6,646) | (2,845) | (1,912) | (1,605) | (33,000) | (33,000) |
| Less Cure Amounts | | | | | (992) | (14,000) |
| | | | | | | |
| Adjusted Allocation of Net Proceeds | 85,032 | 34,935 | 33,158 | (4,001) | (30,247) | 118,877 |
| Less Allocation of DIP Borrowings | (35,510) | (13,654) | (15,188) | (5,886) | (14,152) | (84,391) |
| Less Allocation of DIP Loan Fees | (1,314) | (505) | (562) | (218) | (524) | (3,122) |
| | | | | | | |
| Net Allocated Proceeds | 48,208 | 20,776 | 17,407 | (10,105) | (44,923) | 31,364 |
| | | | | | | |
| Escrow Funds: | | | | | | |
| Cure | | | | | 992 | 14,000 |
| Indemnity Escrow | 6,646 | 2,845 | 1,912 | 1,605 | 33,000 | 33,000 |
| Grant Fund Escrow | | | | | | |
| | | | | | | |
| Total Endowments (C) | 6,646 | 2,845 | 1,912 | 1,605 | 33,992 | 47,000 |
| | | | | | | |
| Total Allocated Funds per the Financial Statements (A+B) | $ 54,854 | $ 23,621 | $ 19,319 | $ (8,500) | $ (10,931) | $ 78,364 |
| | | | | | | |
| Allocated cash per the Financial Statements (A+B+C) | $ 90,365 | $ 37,275 | $ 34,508 | $ (2,614) | $ 3,221 | $ 162,754 |

(A) DIP loan proceeds allocated based on cash (losses) by entity for the period 7/23/98 to 11/9/98.
(B) Transaction proceeds allocated based on net book value of assets transferred to Tenet, with adjustment for direct identification of certain adjustments to the sales price.

18-Mar-99
01:28 PM

ALLEGHENY UNIVERSITY MEDICAL PRACTICES

CONSOLIDATED FINANCIAL STATEMENTS

NOVEMBER 30, 1998

## ALLEGHENY UNIVERSITY MEDICAL PRACTICES
## CONSOLIDATED BALANCE SHEET
### November 30, 1998
#### (Dollars in thousands)

### ASSETS

| | November 30, 1998 | June 30, 1998 |
|---|---|---|
| Cash and short-term investments | ($18,213) | $449 |
| Patient accounts receivable, net | 12,075 | 17,908 |
| Other current assets | 3,806 | 5,368 |
| Total current assets | (2,332) | 23,725 |
| Property, Plant & Equipment-Net | 14,698 | 16,998 |
| Other Assets | 411 | 1,034 |
| Receivable from affiliates, net | 11,770 | 3083 |
| Total assets | $24,547 | $44,840 |

### LIABILITIES AND NET ASSETS

| | November 30, 1998 | June 30, 1998 |
|---|---|---|
| Post-Petition Liabilities: | | |
| Accounts payable and accrued expenses | $10,429 | $0 |
| DIP financing | 0 | 0 |
| Advance from parent | 4,080 | 0 |
| Total current liabilities | 14,509 | 0 |
| Payable to affiliates, net | 4,605 | 0 |
| Other long-term liabilities | 1,106 | 0 |
| Total post petition liabilities | 20,220 | 0 |
| Pre-Petition Liabilities: | | |
| Accounts payable and accrued expenses | 9,310 | 5,517 |
| Current portion of long-term debt | 785 | 2,970 |
| Advance from parent | 0 | 3,209 |
| Long-term capital lease obligations | 52 | 61 |
| Notes Payable | 16,725 | 16,725 |
| Other long-term liabilities | 2,471 | 937 |
| Payable to affiliates, net | 4,459 | 5,104 |
| Total pre-petition liabilities | 33,802 | 44,523 |
| Total liabilities | 54,022 | 44,523 |
| Net assets | | |
| Post-petition unrestricted | (29,792) | 0 |
| Pre-petition unrestricted | 317 | 317 |
| Total net assets | (29,475) | 317 |
| Total liabilities and net assets | $24,547 | $44,840 |

64

## ALLEGHENY UNIVERSITY MEDICAL PRACTICES
## CONSOLIDATED STATEMENT OF REVENUE AND EXPENSES
### for the five months ended November 30, 1998
(Dollars in thousands)

|  | Year-to-Date |
|---|---|
| **Revenue** | |
| Professional fees | $30,982 |
| Capitation | 21,319 |
| Investment income | (48) |
| Other | 3,513 |
| Total revenue | 55,766 |
| **Expenses** | |
| Salaries, wages and fees | 52,238 |
| FICA | 1,928 |
| Fringe benefits | 4,252 |
| Patient care supplies | 4,873 |
| Purchased services - Other | 16,458 |
| Administrative and general | 2,787 |
| Bad debt | 3,276 |
| Depreciation and amortization | 921 |
| Interest | 371 |
| Total expenses | 87,104 |
| Income/(loss) from operations | (31,338) |
| **Special Items:** | |
| Restructuring costs | (7,717) |
| Loss on sale of assets | (11,847) |
| Total special items | (19,564) |
| Excess/(deficiency) of revenue over expenses | ($50,902) |

ALLEGHENY UNIVERSITY MEDICAL PRACTICES
CONSOLIDATED STATEMENT OF CHANGES IN NET ASSETS
for the five months ended November 30, 1998
(Dollars in thousands)

|  | Total |
|---|---|
| Balance, June 30, 1998 | $317 |
| Deficiency of revenue over expenses | (2,833) |
| Transfer from affiliates: | |
| Operations Support | 2,833 |
| Balance July 20, 1998 | $317 |
| Deficiency of revenue over expenses | (48,069) |
| Unrealized appreciation of investments | 2 |
| Transfer from affiliates: | |
| Operations Support | 18,275 |
| Balance November 30, 1998 | ($29,792) |
| Total Net Assets | ($29,475) |

66

**CONSOLIDATING BALANCE SHEETS**
November 30, 1998
(Dollars in thousands)

### ASSETS

| | East | West | Total |
|---|---:|---:|---:|
| Cash and short-term investments | ($18,213) | $0 | ($18,213) |
| Patient accounts receivable, net | 8,462 | 3,613 | 12,075 |
| Other current assets | 1,001 | 2,805 | 3,806 |
| Total current assets | (8,750) | 6,418 | (2,332) |
| Property, Plant & Equipment -Net | 2 | 14,696 | 14,698 |
| Other Assets | 0 | 411 | 411 |
| Receivable from affiliates, net | 11,770 | 0 | 11,770 |
| Total assets | $3,022 | $21,525 | $24,547 |

### LIABILITIES AND NET ASSETS

| | East | West | Total |
|---|---:|---:|---:|
| Post-Petition Liabilities: | | | |
| Accounts payable and accrued expense | $8,229 | $2,200 | $10, |
| DIP financing | 0 | 0 | 0 |
| Advance from parent | 0 | 4,080 | 4,080 |
| Total current liabilities | 8,229 | 6,280 | 14,509 |
| Payable to affiliates, net | 703 | 3,902 | 4,605 |
| Other long-term liabilities | 708 | 398 | 1,106 |
| Total post petition liabilities | 9,640 | 10,580 | 20,220 |
| Pre-Petition Liabilities: | | | |
| Accounts payable and accrued expense | 4,884 | 4,426 | 9,310 |
| Current portion of long-term debt | 785 | 0 | 785 |
| Long-term capital lease obligations | 48 | 4 | 52 |
| Notes Payable | 725 | 16,000 | 16,725 |
| Other long-term liabilities | 2,331 | 140 | 2,471 |
| Payable to affiliates, net | 0 | 4,459 | 4,459 |
| Total pre-petition liabilities | 8,773 | 25,029 | 33,802 |
| Total liabilities | 18,413 | 35,609 | 54,022 |
| Net assets | | | |
| Post-petition unrestricted | (22,638) | (7,154) | (29,792) |
| Pre-petition unrestricted | 7,247 | (6,930) | 317 |
| Total net assets | (15,391) | (14,084) | (29,475) |
| Total liabilities and net assets | $3,022 | $21,525 | $24,547 |

**ALLEGHENY UNIVERSITY MEDICAL PRACTICES**
**CONSOLIDATING BALANCE SHEETS**
June 30, 1998
(Dollars in thousands)

### ASSETS

| | East | West | Total |
|---|---|---|---|
| Cash and short-term investments | $449 | $0 | $449 |
| Patient accounts receivable, net | 14,391 | 3,517 | 17,908 |
| Other current assets | 2,129 | 3,239 | 5,368 |
| Total current assets | 16,969 | 6,756 | 23,725 |
| Property, Plant & Equipment -Net | 1,149 | 15,849 | 16,998 |
| Other Assets | 0 | 1,034 | 1,034 |
| Receivable from affiliates, net | 3,083 | | 3,083 |
| Total assets | $21,201 | $23,639 | $44,840 |

### LIABILITIES AND NET ASSETS

| | East | West | Total |
|---|---|---|---|
| Accounts payable and accrued expense | $9,540 | $6,977 | $15, |
| Current portion of long-term debt | 2,970 | 0 | 2,970 |
| Advance from parent | 0 | 3,209 | 3,209 |
| Total current liabilities | 12,510 | 9,186 | 21,696 |
| Long-term capital lease obligations | 56 | 5 | 61 |
| Notes Payable | 725 | 16,000 | 16,725 |
| Other long-term liabilities | 663 | 274 | 937 |
| Payable to affiliates, net | 0 | 5,104 | 5,104 |
| Total liabilities | 13,954 | 30,569 | 44,523 |
| Net assets | 7,247 | (6,930) | 317 |
| Total liabilities and net assets | $21,201 | $23,639 | $44,840 |

**ALLEGHENY UNIVERSITY MEDICAL PRACTICES**
**CONSOLIDATING STATEMENT OF REVENUE AND EXPENSES**
for the five months ended November 30, 1998
(Dollars in Thousands)

| | Current Year-to-Date | | |
| | East | West | Total |
|---|---|---|---|
| **Revenue** | | | |
| Professional fees | $18,182 | $12,800 | $30,982 |
| Capitation | 10,767 | 10,552 | 21,319 |
| Investment income | 0 | (48) | (48) |
| Other | 450 | 3,063 | 3,513 |
| Total revenue | 29,399 | 26,367 | 55,766 |
| | | | |
| **Expenses:** | | | |
| Salaries,wages and fees | 29,436 | 22,802 | 52,238 |
| FICA | 1,061 | 867 | 1,928 |
| Fringe benefits | 2,856 | 1,396 | 4,252 |
| Patient care supplies | 1,500 | 3,373 | 4,873 |
| Purchased services | 9,006 | 7,452 | 16,458 |
| Administrative and general | 1,496 | 1,291 | 2,787 |
| Bad debts | 2,878 | 398 | 3,276 |
| Depreciation and amortization | 0 | 921 | 921 |
| Interest | 265 | 106 | 371 |
| Total expenses | 48,498 | 38,606 | 87,104 |
| | | | |
| Excess/(deficiency) of revenue over expenses, before special items | (19,099) | (12,239) | (31,338) |
| | | | |
| **Special Items:** | | | |
| Restructuring costs | (4,064) | (3,653) | (7,717) |
| Loss on sale of assets | (11,847) | 0 | (11,847) |
| | | | |
| Total special items | (15,911) | (3,653) | (19,564) |
| | | | |
| Excess/(deficiency) of revenue over expenses | ($35,010) | ($15,892) | ($50,902) |

69

**ALLEGHENY UNIVERSITY MEDICAL PRACTICES**
**CONSOLIDATING STATEMENT OF CHANGES IN NET ASSETS**
for the five months ended November 30, 1998
(Dollars in thousands)

| | East | West | Total |
|---|---|---|---|
| Balance, June 30, 1998 | $7,247 | ($6,930) | $317 |
| Deficiency of revenue over expenses | (1,922) | (911) | (2,833) |
| Transfer from affiliates: | | | |
| Operations Support | 1,922 | 911 | 2,833 |
| Balance July 20, 1998 | $7,247 | ($6,930) | $317 |
| Deficiency of revenue over expenses | (33,088) | (14,981) | (48,069) |
| Unrealized appreciation of investments | 0 | 2 | 2 |
| Transfer from affiliates: | | | |
| Operations Support | 10,450 | 7,825 | 18,275 |
| Balance November 30, 1998 | ($22,638) | ($7,154) | ($29,792) |
| Total Net Assets | ($15,391) | ($14,084) | ($29,475) |

70

ALLEGHENY UNIVERSITY MEDICAL PRACTICES
Supporting Footnotes
*(Amounts in thousands)*

November 30, 1998

**WEST REGION**

*Cash and short-term investments:* Previously allocated DIP borrowings of $14,402 as of October 31, 1998 were reversed during the month of November. The DIP liability was paid-off from the proceeds of the sale of eastern entity assets to Tenet Health System on November 10, 1998. Proceeds from the DIP borrowing were used to fund operating losses during the term of the Loan. The proceeds were allocated to the eastern entities to fund operating losses, with excess proceeds allocated to the AHERF Parent corporate entity. As such, AHERF has funded cash deficits for the Western filed entities. For the period ended November 30, 1998 a $4,080 payable has been recorded as an amount due to AHERF for the funding of cash deficits for AUMP-West, creating a zero cash balance as of this date.

*Patient accounts receivable:* Certain patient receivables were transferred to Tenet as part of the sales transaction. Value of receivables not taken by Tenet has been reserved based on estimated future collections on outstanding accounts.

*Other Current Assets:* Other current assets include $965 of inventories for drugs, $211 of pre-paid expenses (including $166 of prepaid insurance expense), and $1.600 of pre-paid rent. During the month of November a $2,400 receivable due from Health America was reserved at 100 percent as uncollectible.

*Property, plant, and equipment:* The net book value of property, plant, and equipment by asset component is summarized below.

| Asset Component | Gross Asset Value | Accumulated Depreciation | Book Value |
|---|---|---|---|
| Land | $809 | $- | $809 |
| Buildings | 4,204 | 466 | 3,738 |
| Leasehold improvements | 6,685 | 1,518 | 5,167 |
| Fixed equipment | 7 | 5 | 2 |
| Movable equipment | 7,584 | 3,750 | 3,834 |
| Construction-in-progress | 1,146 | - | 1,146 |
| Total | $20,435 | $5,739 | $14,696 |

Included in these assets is an estimated $5-$6 million of assets related to practices whose physician contracts have been rejected.

**TAB 3**

# In The Matter Of:

*AHERF v.*
*PRICEWATERHOUSECOOPERS, LLP*

---

## *CHARLES P. MORRISON*
### *June 29, 2004*

---

# *LEGALINK MANHATTAN*
## *420 Lexington Avenue - Suite 2108*
## *New York, NY 10170*
### PH: 212-557-7400 / FAX: 212-692-9171

**MORRISON, CHARLES P. - 30(b)(6)**



LEGALINK
A WORDWAVE COMPANY

Page 2

1       DEPOSITION OF CHARLES MORRISON,
    a witness, called by the Defendant for examination,
2   in accordance with the Federal Rules of Civil
    Procedure, taken by and before Anthony Jude Cordova,
3   RPR, a Court Reporter and Notary Public in and for
    the Commonwealth of Pennsylvania, at the offices of
4   Manion, McDonough & Lucas, U.S. Steel Tower, 14th
    Floor, Pittsburgh, Pennsylvania, on Tuesday, May 13,
5   2003, commencing at 9:06 a.m.
6
                    - - - -
7
8   APPEARANCES:
9       FOR THE PLAINTIFF:
    J. Kevin Cogan, Esq.
10  JONES DAY REAVIS & POGUE
    41 South High Street, Suite 1900
11  Columbus, OH  43215-6113
    614-469-3939
12          -and-
    Mark Tamburri, Esq.
13  JONES DAY REAVIS & POGUE
    One Mellon Bank Center, 31st Floor
14  Pittsburgh, PA  15219
    412-258-2300
15
16      FOR THE DEFENDANT:
    Antony L. Ryan, Esq.
17  Avrum Luft, Esq.
    CRAVATH SWAINE & MOORE
18  Worldwide Plaza
    825 Eighth Avenue
19  New York, NY  10019
    212-474-1986
20
21      FOR THE WITNESS:
    Ronald Crouch, Esq.
22  MCGUIRE WOODS, LLP
    23rd Floor, Dominion Tower
23  625 Liberty Avenue
    Pittsburgh, PA  15222
24  412-667-6000
25

Page 3

1                  *INDEX*
2   Examination by Mr. Ryan ------------ 4
3   Certificate of Court Reporter --------- 251
    Errata Sheet ------------------ 252
4
5          * INDEX OF EXHIBITS *
6   Deposition Exhibit 1425 ------------ 42
    Deposition Exhibit 1426 ------------ 90
7   Deposition Exhibit 1427 ----------- 124
    Deposition Exhibit 1428 ----------- 127
8   Deposition Exhibit 1429 ----------- 144
    Deposition Exhibit 1430 ----------- 149
9   Deposition Exhibit 1431 ----------- 155
    Deposition Exhibit 1432 ----------- 165
10  Deposition Exhibit 1433 ----------- 171
    Deposition Exhibit 1434 ----------- 174
11  Deposition Exhibit 1435 ----------- 182
    Deposition Exhibit 1436 ----------- 189
12  Deposition Exhibit 1437 ----------- 191
    Deposition Exhibit 1438 ----------- 195
13  Deposition Exhibit 1439 ----------- 201
    Deposition Exhibit 1440 ----------- 201
14  Deposition Exhibit 1441 ----------- 201
    Deposition Exhibit 1442 ----------- 213
15  Deposition Exhibit 1443 ----------- 214
    Deposition Exhibit 1444 ----------- 219
16  Deposition Exhibit 1445 ----------- 224
    Deposition Exhibit 1446 ----------- 224
17  Deposition Exhibit 1447 ----------- 244
18      (Exhibits were retained by Mr. Ryan)
19
20
21
22
23
24
25

Page 4

1               - - - -
2           MR. RYAN:  Anthony Ryan from Cravath,
3   Swaine & Moore, LLP representing the defendant
4   PriceWaterhouseCoopers, LLP.
5           MR. CROUCH:  Ron Crouch with McGuire
6   Woods representing the deponent and the Chapter
7   11 trustee.
8           MR. COGAN:  Good morning.  Kevin
9   Cogan of the law firm of Jones Day appearing on
10  behalf of the plaintiff, the unsecured
11  creditors committee.
12              - - - -
13          CHARLES MORRISON,
14      being first duly sworn,
15  was examined and testified as follows:
16              - - - -
17          EXAMINATION
18              - - - -
19  BY MR. RYAN:
20  Q.   Good morning.
21  A.   Good morning.
22  Q.   Could you, please, state your full name for the
23      record?
24  A.   Charles Morrison.
25  Q.   And your address?

Page 5

1   A.   206 Abbey Brook Lane, Venetia, Pennsylvania.
2   Q.   And by whom are you employed?
3   A.   Allegheny Health Education and Research
4       Foundation.
5   Q.   And in what capacity?
6   A.   My title is liquidation officer.  I support the
7       bankruptcy-appointed trustee in the business
8       issues related to the liquidation of AHERF.
9   Q.   Is that a full-time job?
10  A.   I work currently one day a week.
11  Q.   And how long have you been the liquidation
12      officer?
13  A.   Since the liquidating plan of reorganization
14      was approved in December of 2000.
15  Q.   Is it all right if we use the term AHERF to
16      refer to the Allegheny Health Education and
17      Research Foundation?
18  A.   Yes.
19  Q.   When did you first start to work at AHERF?
20  A.   April of 1989.
21  Q.   And what was your job at that time?
22  A.   My title was assistant vice president for
23      financial planning and budgeting -- for -- I'm
24      sorry.  I was employed at that time by the
25      Medical College of Pennsylvania.  I was

2 (Pages 2 to 5)

CHARLES MORRISON

Page 6

1    employed by AHERF, I believe, in 1991.
2  Q.  So, in 1989, you started working at the Medical
3    College of Pennsylvania?
4  A.  Correct.
5  Q.  And that's also known at MCP?
6  A.  Correct.
7  Q.  And that was a hospital and medical school
8    located in Philadelphia?
9  A.  Correct.
10  Q.  Was that already affiliated with AHERF at the
11    time that you started working there?
12  A.  Yes.
13  Q.  And where did you work before you came to work
14    at MCP?
15  A.  Price Waterhouse.
16  Q.  And how long did you work for Price Waterhouse?
17  A.  From August of 1981 till March of 1989.
18  Q.  And at the time you worked for
19    Price Waterhouse, was the firm affiliated in
20    any way with Coopers & Lybrand?
21  A.  No.
22  Q.  Those 2 firms have merged since?
23  A.  That's my understanding.
24  Q.  When you started working at MCP in 1989, were
25    you a Certified Public Accountant?

Page 7

1  A.  Yes.
2  Q.  To whom did you report at MCP in 1989?
3  A.  Irene Thompson.
4  Q.  And did she, at some point in time, change her
5    name to Irene Cummings?
6  A.  Yes.
7  Q.  And what was her position?
8  A.  She was the chief financial officer for MCP at
9    the time.
10  Q.  And at the time, was Ms. Thompson the person
11    who had responsibility for preparing financial
12    statements for MCP?
13  A.  Yes.
14  Q.  And did you play any role in that?
15  A.  I was eventually assigned those
16    responsibilities, yes.
17  Q.  When?
18  A.  I don't recall exactly when it would have been;
19    sometime during the latter part of 1989, I
20    believe.
21  Q.  And what role did you play, then, in preparing
22    MCP's financial statements?
23  A.  I supervised the general accounting department,
24    I supervised the grant accounting department,
25    the third-party reimbursement function,

Page 8

1    accounts payable, payroll, as well as budgeting
2    and decision support functions.
3  Q.  Is that, in effect, roughly the same job for
4    MCP that Steve Spargo later had for AHERF as a
5    whole?
6  A.  Much of those responsibilities were ultimately
7    transferred to Pittsburgh, and Steve was
8    responsible for those, yes, with the exception
9    of grant accounting.
10  Q.  And when did that transfer to Pittsburgh occur?
11  A.  My recollection is that occurred in 1993, I
12    believe. I'm not entirely certain.
13  Q.  Why don't we just back up a minute? Did your
14    job title change between when you started at
15    MCP in 1989 and when AHERF filed for Chapter 11
16    in 1998?
17  A.  It changed, yes, and I believe it was 1991, I
18    was promoted to vice president for the eastern
19    region, and in 1993, when Irene Cumming left, I
20    promoted to senior vice president and chief
21    financial officer for the eastern region of
22    AHERF's operations.
23  Q.  And did you continue to hold that title from
24    1993 to 1998?
25  A.  Until August of 1998, yes.

Page 9

1  Q.  What role did you play in the 1989 to 1993 time
2    frame in interacting with external auditors?
3  A.  My responsibilities included the preparation of
4    financial statements, and from '89 through
5    the -- I believe it was the 1992 fiscal year
6    audit, we -- I and my staff supported the audit
7    process. The audit was conducted by
8    Coopers & Lybrand in -- out of the Philadelphia
9    office.
10  Q.  And with whom from Coopers & Lybrand did you
11    interact during those audits?
12  A.  The partner on the engagement was Clark Cable.
13    There were managers on the job that I don't
14    recall what their names were.
15  Q.  So, if I understood you right, from 1989 to
16    1993, you reported to Irene Thompson?
17  A.  Yes.
18  Q.  After she left the organization, to whom did
19    you report?
20  A.  David McCullough.
21  Q.  And after certain accounting functions were
22    consolidated to Pittsburgh, who had
23    responsibility for preparing east region
24    financial statements?
25  A.  The corporate services department here in

3 (Pages 6 to 9)

Page 38

CHARLES P. MORRISON

1             CHARLES P. MORRISON
2      MR. FRIEDMAN:  Objection to the
3  form.
4     Q    Do you know to whom those
5  professional fees in the amount of
6  approximately $2 million were paid?
7     A    KPMG was engaged to provide the
8  grant accounting support.
9     Q    Do you know whether that firm
10  was paid an amount of approximately $2 million
11  related to that project?
12     A    I don't recall what the exact
13  amount of the payment was, but they were paid a
14  substantial amount, yes.
15     Q    Is it your understanding that
16  the payment of that amount came directly out of
17  the $345 million gross purchase price for the
18  eastern region assets, rather coming out of the
19  general funds of the estates?
20     MR. FRIEDMAN:  Objection to the
21  form.
22     A    Yes.
23     Q    I am going to skip these various
24  fees and amounts that aren't that large, at
25  least as they relate to a $345 million amount,

Page 39

CHARLES P. MORRISON

1             CHARLES P. MORRISON
2  but I think the next large amount is on Page 2.
3     Do you see there there is item
4  15 which reads, "Total Aetna Contract
5  Settlement" in the amount of $12,500,000?
6     A    Yes.
7     Q    Do you have an understanding as
8  to what that represents?
9     A    Those were payments to Aetna to
10  induce them to accept the assignment of the
11  provider agreement between AHERF and Aetna with
12  I believe a substitution of Tenet for AHERF; a
13  cure payment, essentially.
14     Q    That is an amount that Aetna
15  asked for so that Tenet could assume the
16  existing contract between Aetna and AHERF or
17  eastern region AHERF entities?
18     A    Yes.
19     MR. FRIEDMAN:  Objection to the
20  form.
21     Q    Is it your understanding that $5
22  million of the $12.5 million paid to Aetna was
23  contributed by Tenet and $7 million came out of
24  the $345 million gross purchase price for the
25  eastern region assets?

Page 40

CHARLES P. MORRISON

1             CHARLES P. MORRISON
2     A    That's my understanding, yes.
3     Q    Now, do you see item 17 is
4  referred to as "DIP Financing Payoff" in the
5  amount of $87,512,723?
6     A    Yes.
7     Q    Do you have an understanding as
8  to what that represents?
9     A    Those were draws on the Debtor
10  in Possession financing that the Debtors'
11  estates put in place shortly after the
12  bankruptcy filing.
13     Q    That was provided, I gather, by
14  an entity called Madeline LLC?
15     A    Yes.
16     Q    Was that an amount in essence to
17  cover the operating losses of the Debtor
18  entities from the time of the bankruptcy filing
19  on July 21, 1998 until the time of the sale of
20  assets to Tenet on November 10, 1998?
21     MR. FRIEDMAN:  Objection to the
22  form.
23     MR. COGAN:  Objection.
24     A    That represents the cash flow
25  shortfall during that time period.

Page 41

CHARLES P. MORRISON

1             CHARLES P. MORRISON
2     Q    So, not an accrual accounting
3  loss, but a net cash outflow from the Debtor
4  entities over that almost four month period?
5     MR. FRIEDMAN:  Objection to the
6  form.
7     A    Yes, the cash flow shortfall
8  during that period.
9     MR. FRIEDMAN:  Could we take a
10  short break before you move on to the
11  next document?
12     MR. RYAN:  Sure.
13     THE VIDEOGRAPHER:  We are going
14  off the record at 10:27 a.m.
15     (At this point in the proceedings
16  there was a recess, after which the
17  deposition continued as follows:)
18     MR. RYAN:  Let's mark this as
19  Exhibit 2746.
20     (The above described document was
21  marked Exhibit 2746 for identification as
22  of this date.)
23     THE VIDEOGRAPHER:  We are back on
24  the record at 10:34 a.m.
25     Q    Do you have in front of you, Mr.

11 (Pages 38 to 41)

Page 42

CHARLES P. MORRISON

1  CHARLES P. MORRISON
2  Morrison, what we have marked as Exhibit 2746?
3  A    Yes.
4  Q    Is this what's entitled a
5  monthly operating report for the month ending
6  November 30, 1998?
7  A    Yes.
8  Q    Is this a report that you
9  prepared?
10  A    It's a report that my staff
11  prepared, yes.
12  Q    Is that your signature on the
13  cover page of the document?
14  A    Yes, it is.
15  Q    Could you explain in general
16  terms, please, what the monthly operating
17  reports for the bankrupt AHERF entities are?
18  A    They are reports required by the
19  United States Trustee's office for all Debtors
20  that collect information that the Trustee's
21  office, the U.S. Trustee's office deems
22  appropriate for monitoring the cases within the
23  Bankruptcy Court.
24  Q    And the U.S. Trustee is a
25  different person from the Chapter 11 Trustee,

Page 43

1  CHARLES P. MORRISON
2  is that right?
3  A    Yes.
4  Q    The U.S. Trustee is a government
5  employee, an officer of the government?
6  A    Yes.
7  Q    And the Chapter 11 Trustee is
8  Mr. Scharffenberger, who's a private
9  individual, right?
10  A    Yes.
11  Q    Now, if you could turn, please,
12  to Page 95 from Exhibit 2746, do you see here a
13  schedule entitled "Allocation of the DIP Loan
14  and Sale Transaction Proceeds"?
15  A    Yes.
16  Q    Do you see there an amount of
17  $84,391,000 that is referred to in the first
18  row as allocation of DIP proceeds, and is then
19  referred to in the sixth row or so as
20  allocation of DIP borrowing?
21  A    Yes.
22  Q    And there is an additional item
23  referred to as allocation of DIP loan fees, and
24  that's in the amount of $3,122,000?
25  A    Yes.

Page 44

1  CHARLES P. MORRISON
2  Q    Is the sum of those two items
3  the $87,513,000 or so, is that the same amount
4  in your understanding as the DIP financing
5  payoff that was item 17 in Exhibit 2744?
6  A    Yes.
7  Q    So, of the $87.5 million, in
8  effect $84.4 million, rounding the numbers, is
9  the net cash loss of the Debtor entities over
10  that three or four month period, and then $3.1
11  million is, in effect, the interest or
12  financing charge charged by Madeline?
13  MR. FRIEDMAN:  Objection to the
14  form.
15  Q    Is that your understanding?
16  A    I believe that would be
17  financing charges and other loan related fees,
18  yes, the $3,122,000.
19  Q    Now, the $84.4 roughly million
20  cash losses are allocated in this schedule to
21  the five Debtor entities, is that right?
22  A    Yes.
23  Q    What was the basis for that
24  allocation?
25  A    To the best of my recollection,

Page 45

1  CHARLES P. MORRISON
2  that was based on an accounting analysis of the
3  cash flow losses at each of those Debtor
4  entities.
5  Q    So that includes a $14.152
6  million cash loss at AHERF, the parent
7  corporation, even though that was not an entity
8  from which assets were sold to Tenet, is that
9  right?
10  MR. FRIEDMAN:  Objection to the
11  form.
12  A    There was AHERF assets in
13  Philadelphia that were transferred to Tenet as
14  part of the asset sale.
15  The $14 million would have been
16  the estimate of the cash flow losses related to
17  AHERF, yes.
18  Q    Related to all of AHERF, the
19  parent?
20  A    Related to AHERF, the parent,
21  yes.
22  Q    Now, I notice that AUHS-West and
23  AUMP-West not reflected on this schedule, is
24  that right?
25  A    Yes, that's correct.

**TAB 4**

# In The Matter Of:

*AHERF v.*
*PRICEWATERHOUSECOOPERS, LLP*

---

## *ROBERT BRUCE  DEN UYL*
*March 8, 2005*

---

# *LEGALINK MANHATTAN*
### *420 Lexington Avenue - Suite 2108*
### *New York, NY 10170*
#### *PH: 212-557-7400 / FAX: 212-692-9171*

**DEN UYL, ROBERT BRUCE  - Vol. 1**



Robert Bruce Den Uyl

1
2     (Question read.)
3     A.     Is there a way you can rephrase
4  that for me.
5     Q.     I can break it apart.  Let's take a
6  hypothetical DVOG credit and let's hypothesize
7  for a moment that the Graduate acquisition had
8  never occurred, so it's out of the picture.
9  AHERF is in bankruptcy, it has some assets, not
10 enough, and let's suppose for a moment that the
11 DVOG claimant gets 10 cents on the dollar
12 allowed a claim.  Now the scenario is different,
13 the Graduate acquisition did happen, the
14 Graduate assets as they did become are made part
15 of the consolidated estate and Graduate
16 claimants are paid off at this 30 percent rate.
17 Would you agree with me that depending on the
18 ratio of Graduate assets to claims, that the
19 inclusion of Graduate in the consolidated estate
20 might have the affect of causing other creditors
21 to recover at a lower rate, perhaps 9 cents on
22 the dollar, that's one possible affect, correct?
23     A.     Yes.
24     Q.     If the percentages turned out a
25 little differently another possible affect is

Robert Bruce Den Uyl

1
2  that the inclusion of the Graduate estate in the
3  consolidated estate could cause other claimants
4  to achieve a higher recovery, perhaps 11 cents
5  on the dollar?
6     A.     Yes.
7     Q.     Or if the percentages were all done
8  just right it would have no affect on the other
9  claimants and they would get 10 cents on the
10 dollar, correct?
11     A.     Yes.
12     Q.     Do you have any opinion as you sit
13 here today as to which of those three
14 possibilities, the real historical inclusion of
15 the Graduate estate in the consolidated estate
16 actually caused for other creditors?
17     A.     I certainly haven't analyzed that.
18 I think you need to look in all the payments to
19 the Centennial bondholders vis-a-vis the others
20 to analyze it, but I have not analyzed it.
21     Q.     Let me take you to your rebuttal
22 report, page 22.  There at the end of the first
23 paragraph you state "the Centennial creditors"
24 -- pardon me, that's not what I want.  The
25 middle of that paragraph you state Centennial

Robert Bruce Den Uyl

1
2  creditors "receive recoveries that might
3  otherwise have been provided to non-Centennial
4  creditors", do you see that?
5     MS. MEADEN:  I don't, can you tell
6  me where you are.
7     Q.     The sentence begins "Moreover" and
8  it's in the middle of the top paragraph.
9     MS. MEADEN:  Thank you.
10    Q.     The language is the assertion that
11 the Centennial creditors "receive recoveries
12 that might otherwise have been provided to
13 non-Centennial creditors"?
14    A.     Yes.
15    Q.     It is equally true, is it not, that
16 as a result of the consolidation with Graduate,
17 the AHERF estate contained assets that would
18 otherwise have been provided solely to Graduate
19 creditors?
20    A.     Could you repeat that?
21    (Question read.)
22    A.     If they were standing on their own,
23 yes.
24    Q.     Let me ask you to turn to page 8 of
25 your initial report.  This just for context is a

Robert Bruce Den Uyl

1
2  exhibit that you referred to in connection with
3  your creditor shortfall method of damage
4  calculation.  If I cause you any doubt or
5  concern I urge you to go back and check that,
6  but that's my understanding.  In preparing this
7  calculation you have used the allowed claims
8  values for these various categories, correct?
9     A.     Yes.
10    Q.     Why for purposes of your creditor
11 shortfall calculation did you use the allowed
12 claims?
13    A.     Because under that theory we're
14 looking to see what the shortfall is given the
15 allowed claims.  In other words, the claims of
16 these entities may be greater, but they are only
17 allowed this amount, so all I'm saying is that
18 given that allowance here's what the shortfall
19 is.
20    Q.     Have you ever advised a debtor in
21 bankruptcy in any context?
22    A.     Sure.
23    Q.     In that context is it your
24 experience that in bankruptcy claims are filed
25 which are without substantive merit?

23 (Pages 86 to 89)

Robert Bruce Den Uyl

1
2      A.    In some cases.
3      Q.    That does happen, right?
4      A.    It does happen, depending on whose
5  view it is.
6      Q.    In general, indeed creditors rush
7  to file any claims they can think of and sort
8  out later which are actually legally valid,
9  correct?
10         MS. MEADEN:  Objection, foundation.
11     A.    The experience varies.  There may
12  be some people that set forth claims that
13  ultimately turn out to be, well normally they
14  are reduced, whether it's because they are
15  overstated or through a process of just the
16  court trying to dwindle down the claims.
17     Q.    One reason a court will disallow a
18  claim in bankruptcy is a conclusion that there
19  was no such obligation as to a legal matter,
20  correct?
21     A.    That would be one reason, yes.
22     Q.    In your experience where an
23  obligation would have been legally enforceable
24  outside of bankruptcy, it will generally be
25  allowed as a claim inside a bankruptcy, correct?

Robert Bruce Den Uyl

1
2      A.    Not necessarily.  My experience has
3  been that generally the allowed claims are
4  probably less than what someone might recover
5  outside of the bankruptcy context.
6      Q.    In fact, as part of the bankruptcy
7  process the Bankruptcy Court sets about
8  determining which of the asserted claims are
9  legitimate legally enforceable debts and which
10  are not, correct?
11     A.    It tries to do that, yes.
12     Q.    Those which it concludes are not
13  legitimately legally enforceable debts it
14  disallows?
15         MS. MEADEN:  Objection, foundation,
16  vague.
17     A.    I think that's the hope, but again
18  my experience is that many liabilities are not
19  allowed that may be outside of the context of a
20  bankruptcy proceeding might be valid
21  liabilities.
22     Q.    Let me ask you to turn to page 21
23  of your rebuttal report.  There at the top of
24  the page is a reference to your calculation of
25  avoidable cost damages related to the Centennial

Robert Bruce Den Uyl

1
2  acquisition, you state "I intentionally and
3  appropriately measured the Centennial
4  liabilities as the total liabilities remaining
5  after the Tenet sale and not by the Centennial
6  claims that were allowed in bankruptcy", do you
7  see that?
8      A.    Yes.
9      Q.    The figure that you relied on was
10  simply the total remaining asserted claims
11  against Centennial in bankruptcy after the Tenet
12  sale, is that right?
13     A.    What number?
14     Q.    When you referred to the total
15  liabilities remaining after the Tenet sale?
16     A.    Yes.
17     Q.    What you used as the total
18  liabilities remaining for purposes of your
19  avoidable costs analysis was simply the total
20  remaining asserted claims against Centennial
21  after the Tenet sale, is that correct?
22     A.    Well, it was actually looking at
23  the balance sheets and adding up all the
24  liabilities that existed as of that time.
25     Q.    Did you make any effort to

Robert Bruce Den Uyl

1
2  determine which of those asserted liabilities
3  were likely to be legitimate legally enforceable
4  debts?
5      A.    As far as I know they all were.
6      Q.    Did you make any effort to
7  understand the discrepancy between that value
8  and the value of claims ultimately allowed by
9  the Bankruptcy Court against Centennial?
10     A.    I don't know the process for all of
11  the reasons why the court didn't allow all those
12  liabilities.  I do know there were liabilities
13  on a balance sheet, they were valid liabilities
14  as of the time, so there was no reason to
15  believe that they weren't legally enforceable
16  liabilities.
17     Q.    Let me show you what has been
18  previously marked as Exhibit 2746 which is a
19  monthly operating report for the month ending
20  November 30, 1998 from the trustee in
21  bankruptcy. Is this a document that you used in
22  arriving at your figure for the total
23  liabilities of Centennial?
24     A.    It could have been.
25     Q.    To the extent that the bankruptcy

24 (Pages 90 to 93)

Robert Bruce Den Uyl

1
2  court ultimately decided that certain
3  liabilities on the Centennial balance sheet were
4  not legally enforceable, do you have any basis
5  to disagree with that conclusion by the
6  Bankruptcy Court?
7      A.    I don't know that the bankruptcy
8  court -- I would be interested in seeing
9  anything I said that any of these claims weren't
10 legally enforceable.  Obviously the bankruptcy
11 court determined the allowed claims, that
12 doesn't mean necessarily that the other claims
13 aren't legally enforceable.
14     Q.    Excuse me Mr. Den Uyl, you would
15 agree would you not that for an entity in
16 bankruptcy, if the bankruptcy court disallows a
17 claim it's not legally enforceable, correct?
18     A.    After bankruptcy.
19     Q.    Right.
20     A.    Right.  My damage calculation
21 doesn't depend on the bankruptcy, it's if AHERF
22 had not acquired Centennial what would they have
23 avoided in terms of losses.
24     Q.    To the extent you are measuring
25 debts which the Bankruptcy Court ultimately

Robert Bruce Den Uyl

1
2  deems not allowable, those debts are potentially
3  losses to the creditors but are no longer
4  obligations of or losses to AHERF, would you
5  agree?
6      MS. MEADEN:  Objection.
7      MR. WHITNEY:  Calls for a legal
8  conclusion.
9      (Question read.)
10     A.    I can't answer that.
11     Q.    Let me take you to a hypothetical
12 scenario.  Assume that history proceeded as it
13 did proceed to the point that the Graduate
14 hospitals were merged into SDN but for whatever
15 reason AHERF never became the sole member of SDN
16 or in any other way became affiliated with SDN
17 and then AHERF goes bankrupt.  In that context
18 the Graduate entities would have been liable to
19 their creditors, correct?
20     MS. MEADEN:  Objection, calls for a
21 legal conclusion.
22     A.    Unless they were subsequently
23 consolidated.
24     Q.    The other AHERF entities would not
25 have been liable to Graduate or Centennial

Robert Bruce Den Uyl

1
2  creditors, correct?
3      MS. MEADEN:  Same objection.
4      Q.    Unless they were substantively
5  consolidated?
6      A.    Right.
7      Q.    Now let's go back to the real
8  historical situation in which Graduate hospitals
9  are merged into SDN, at a later point in time
10 AHERF becomes the sole member of SDN and then
11 the bankruptcy occurs.  In that context up to
12 the point of consolidation in the bankruptcy,
13 the Graduate entities were liable to the
14 Graduate creditors, correct?
15     MS. MEADEN:  Calls for a legal
16 conclusion, objection.
17     A.    Yes, given my lay understanding
18 that's right, but I can't say from a legal
19 perspective.
20     Q.    But you can say from the
21 perspective of somebody who's dealt with a lot
22 of entities and a lot of debt obligations,
23 correct?
24     MS. MEADEN:  Objection, he said
25 it's his lay opinion.

Robert Bruce Den Uyl

1
2      A.    Yes.  Again, I haven't reviewed the
3  documents, the legal documents.
4      Q.    In your lay opinion in this second
5  scenario, the real world scenario, up to the
6  point of consolidation in the bankruptcy, the
7  other AHERF entities had no obligation to
8  Graduate creditors, correct?
9      A.    Again, I think it's sort of form
10 over substance.  I think as part of AHERF, AHERF
11 as long as they owned Graduate or Centennial
12 would have continued to support it in whatever
13 way they could.
14     Q.    Do you believe that the various
15 obligated group structures within AHERF were
16 simply form over substance?
17     A.    No, I think they are obviously
18 there for a reason.  What I was saying was that
19 from an operational standpoint it's my
20 experience that one will support even though
21 there be a legal obligation to a group of
22 bondholders, as part of a larger entity that
23 entity will support that separate legal entity.
24     Q.    That is it will choose voluntarily
25 to subsidize a legally distinct subsidiary?

25 (Pages 94 to 97)