UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS, LLP, <br><br> Defendant. | Civil Action No. 00-684 <br><br> Judge David Stewart Cercone |

## THE COMMITTEE'S BRIEF IN OPPOSITION TO PwC's MOTION TO PRECLUDE DUPLICATIVE AND UNRELIABLE EXPERT ACCOUNTING TESTIMONY

### INTRODUCTION

This case is about improper accounting and audit failure. The bad accounting and bad auditing resulted in financial statements that were misstated by many tens of millions of dollars and damages that run in the hundreds of millions. That plaintiff The Official Committee of Unsecured Creditors of Allegheny Health, Education and Research Foundation would proffer expert testimony from more than one accountant could surprise no one. That defendant PricewaterhouseCoopers LLP now objects, if not surprising, is at least ironic because there can be little doubt that PwC will call and seek to qualify numerous accountants to offer expert testimony at trial.

PwC will offer the testimony of its specially retained expert, J.W. Tillett, Jr. It also will call William Buettner, the firm's now-retired partner and the long-time engagement partner for Coopers & Lybrand's audits of AHERF. PwC will call accountants Mark Kirstein and Amy Frazier, who are current PwC employees and were the two audit team managers for the

PII-1122582v1

AHERF account during fiscal years 1996 and 1997. The number of additional current and former employee auditors and accountants that PwC will call to the stand from its roughly fifteen-member AHERF engagement teams for these fiscal years is less predictable, but there will be more.

Nearly to a person, these Coopers witnesses are certified public accountants, trained in Generally Accepted Accounting Principles and Generally Accepted Auditing Standards. There can be little doubt that part and parcel of their trial testimony will be assertions that their work in 1996 and 1997 complied with governing professional obligations.

The Committee proffers expert testimony from two auditors, Robert Berliner and D. Paul Regan, who independently evaluated Coopers' audit work and whether it complied with Generally Accepted Auditing Standards. The Committee also proffers expert testimony from one former auditor, James Wallace, who spent a career auditing hospitals and whose opinions rebut Mr. Tillett's assertions that matters peculiar to hospital audits somehow could support Coopers' AHERF audit work. By calling Messrs. Berliner, Regan, and Wallace, the Committee hardly will be attempting to suggest to the jury that it "should weigh competing expert testimony 'by the pound.'" PwC Br. at 2. If the Committee were to make the attempt, the scales would tip rather swiftly toward the side with the PwC assembled accountants.

PwC's motion to preclude what it labels "duplicative and unreliable" expert accounting testimony and to thereby limit the Committee's presentation of expert accounting and auditing testimony to that which can be elicited "from one expert", PwC Br. at 1, is an effort to guarantee that, in any weigh-off, PwC will start with a four-or-five-or-more-accountant-to-one advantage. The effort should be recognized for what it is, and it should fail.

The Committee's expert accounting witnesses will not present testimony that is improperly duplicative or cumulative, nor should any determination of the issue be made months before trial. Nor is the testimony of any of the Committee's accounting experts "unreliable." Mr. Wallace's testimony is grounded in his many years of hospital auditing experience and a review of record material far in excess of that necessary to support his limited rebuttal opinions. And Mr. Regan's knowledge of Mr. Kirstein's involvement in another high-profile audit failure case tried to a verdict against PwC in this district has nothing whatever to do with the admissibility of Mr. Regan's opinions. PwC's motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Messrs. Berliner, Regan, and Wallace do not "offer highly duplicative opinions." PwC Br. at 1. Messrs. Berliner and Regan each independently evaluated Coopers' audits for fiscal years 1996 and 1997. To do the job, each, of necessity, reviewed rooms full of accounting records, audit work papers, and deposition testimony. Their reviews and evaluations were exhaustive, detailed, and, perhaps most importantly, independent. To this day, neither expert has reviewed any of the work of the other, with one exception. Doubtless as a predicate to Coopers' motion here, counsel for PwC required Mr. Regan to review selected portions of Mr. Berliner's expert report during Mr. Regan's deposition.

That the records they reviewed were substantially similar is not remarkable. The work papers, after all, are the work papers. That after separate, years-long analytical reviews, they both reached a number of conclusions to the effect that Coopers had failed in its GAAS duties is not remarkable either, given the gross nature of the audit errors revealed by their independent efforts. To suggest that these experts will be called to the stand to "vouch" for one another is just silly. Neither has even reviewed the other's report in full.

PII-1122582v1

- 3 -

Nor are their opinions duplicative. Each arrived at his opinions from perspectives born of varied accounting and auditing backgrounds and credentials. Mr. Berliner has fifty years of auditing and auditing-related experience. *See* Expert Report of Robert Berliner ("Berliner Rpt.") (included in the Appendix to the Committee's Brief in Opposition to PwC's Motion for Summary Judgment ("Com. Appndx.")) at Tab 3, Ex. A. He was an auditing practice leader and a more-than-thirty year auditor with one of the largest accounting firms in the world. *Id.* Among many leadership roles in the organization, he chaired the Task Force on Materiality and Audit Risk of the American Institute of Certified Public Accountants. *Id.* Mr. Regan also has many years of large accounting firm audit experience but is additionally a Certified Fraud Examiner. *See* Expert Report of D. Paul Regan ("Regan Rpt.") (Com. Appndx., Tab 3), Ex. A.

These two experts performed separate and non-identical analytical testing. For example, they used different analytical methods to evaluate and quantify the extent of the bad debt reserve shortfall at the DVOG hospital entities. *See* Berliner Rpt. at 2-15–2-17; Regan Rpt. at 51-52, Ex. D. Their opinions do not address all of the same areas of audit failure. For example, Mr. Regan does not address certain conclusions made by Mr. Berliner in his report, including adjustments related to "accounts at gross" (failure to reduce accounts to contractually agreed upon value), periodic interim payment and certain cost rate adjustment accounts, accounting for deferred compensation and executive compensation benefits, and disclosure of restructuring costs. *See* Berliner Rpt. at 15-2–15-3, 10-1–10-10, 6-15–6-24, 15-5–15-6. To be sure, each expert concludes that Coopers' auditors failed in their GAAS duties in many, many respects. But their work is not the same, and their opinions are not identical.

Indeed, each of these experts also undertook different, supplemental tasks in connection with their overall evaluations of the underlying audits.

For example, Mr. Berliner focused on the impact that Coopers' audit failures had on AHERF's reported financial statements. He developed and will present to the jury "corrected" balance sheets and statements of operations for AHERF's fiscal-years 1996 and 1997. These statements depict what AHERF's audited financial statements would have looked like had Coopers conducted its audits in accordance with professional standards. *See* Berliner Rpt. at 4, Appendices I and II. Mr. Regan did not do this quantification work. Mr. Berliner also has investigated GAAP violations in AHERF's unaudited fiscal-year 1998 financial statements and has set forth those findings in a separate report. *See* Supplemental Expert Report of Robert Berliner (Com. Appndx., Tab 3) at 1-2 and Appndx. 1. Mr. Regan did not do this work either.

Mr. Regan conducted an extensive analysis of "other audit" work papers from Coopers' audits of non-AHERF Pennsylvania hospitals. Mr. Regan opines that the other audit work papers did not support, and in fact are at odds with, what Coopers permitted to occur at AHERF. *See* Supplemental Expert Report of D. Paul Regan (Com. Appndx., Tab 3) at 6. Mr. Berliner did not review these work papers and did not do this work.

Mr. Wallace, a thirty-year hospital auditor, has not evaluated the multiple ways in which Coopers violated GAAS in connection with its 1996 and 1997 AHERF audits. He has never claimed that he has. PwC's retained expert Mr. Tillett identifies certain audit work performed by Coopers that, in Mr. Tillett's estimation, is GAAS-compliant in light of matters peculiar to hospital audits (or at least his experience with hospital audits), and he asserts that his hospital audit experience is broader than that of Messrs. Regan and Berliner. Mr. Wallace, without opining about broader GAAS-compliance issues, will testify regarding Mr. Tillett's claim of a "hospital or healthcare auditing justification" for Coopers' AHERF work. Mr. Tillett primarily sprinkles this purported justification over Coopers' work in the areas of materiality,

accounts receivable valuation, and auditor-board of trustees interactions. *See* Tab 1, Expert Report of James Wallace ("Wallace Rpt.") at 3. Mr. Wallace does not "vouch" for Messrs. Regan or Berliner. He responds to Mr. Tillett's "healthcare auditing justification" and Mr. Tillett's critique of the work of Messrs. Regan and Berliner in that regard.

Mr. Wallace's narrower scope of work and the limited rebuttal opinions that he expresses, properly portrayed, reveal that his testimony will not be duplicative of that of either Mr. Regan or Mr. Berliner. Neither would one expect that Mr. Wallace's opinions would be supported by a review of the bulk of the material that these other experts undertook. Mr. Wallace, nonetheless, did review volumes of material, including lengthy interrogatory responses, the financial statements at issue, and hundreds of pages of work papers and AHERF accounting and other records related to the healthcare audit issues that he addresses. *See* Tab 1, Wallace Rpt. at Ex. A. Neither the inquiry that he undertook nor the Rules of Evidence would require more.

Nor could any reading of the Rules of Evidence argue for curtailing the testimony of Mr. Regan merely because he was called upon to review the audit work and testimony of PwC's Mr. Kirstein during Mr. Regan's earlier expert work in the *Phar-Mor* litigation, which ended badly for Coopers in 1996. PwC argues, without benefit of citation, that Mr. Regan's testimony should be excluded because Mr. Regan's judgment concerning Mr. Kirstein's credibility may be influenced by Mr. Regan's earlier experience with Mr. Kirstein. Mr. Regan's knowledge of Mr. Kirstein's earlier work was raised for the first time during his deposition. It is not a part of Mr. Regan's opinions or his report. While PwC may make the choice to cross-examine Mr. Regan at trial about his knowledge of Mr. Kirstein's role in the *Phar-Mor* audits, that examination could only go to the issue of potential bias against Mr. Kirstein on Mr. Regan's

part. PwC may cross-examine away, but this phantom issue has nothing whatever to do with the admissibility of Mr. Regan's opinions.

## ARGUMENT

### I.   THE COMMITTEE PROFFERS NO DUPLICATIVE OR CUMULATIVE ACCOUNTING TESTIMONY.

"'[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence' is relevant and therefore admissible." *Shushereba v. R.B. Indus., Inc.*, 104 F.R.D. 524, 531 (W.D. Pa. 1985) (presentation of multiple films showing plaintiff performing work activities inconsistent with his alleged injuries was not "unduly cumulative" or "redundant"). "The rules of evidence generally favor the admissibility of evidence which is logically probative of material facts." *Id.*

Because the rules favor logically probative evidence, "there is no rule against multiple expert opinions on the same point of contention. It is only unduly repetitious evidence which should be precluded. When the repetitions add to the weight of the opinions, rather than merely 'beating a dead horse,' duplicitous [sic] testimony is admissible." *Alegria Enterprises v. Immel's Marine*, Civil Action No. 90-8127, 1992 U.S. Dist. LEXIS 3246 *2-*3 (E.D. Pa. March 17, 1992) (Tab 2) (denying motion to preclude duplicative expert testimony).

With the testimony of Messrs. Berliner, Regan and Wallace, the Committee will commit no violence upon a downed horse. Rather, it will present fairly complex accounting and auditing concepts and directly respond to the testimony of yet unknown numbers of PwC accountants and auditors. The Committee's proffered testimony is not duplicative in the first instance. Nor is its probative value "substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

In *Johnson v. United States*, 780 F.2d 902, 904 (11th Cir. 1986), the Eleventh Circuit vacated a judgment because an expert witness was precluded erroneously from testifying on the ground that his testimony was "cumulative." The court found that the testimony "would have been based in part on evidence not relied upon by the other experts" and that the expert's "analysis was somewhat different." *Id.* at 906. The court also found that the testimony would have been "more comprehensive" and concluded that it was "at least partially non-cumulative." *Id.*

All of the same things can be said of the proffered testimony of Messrs. Berliner, Regan and Wallace. Their testimony is similarly non-cumulative and admissible.

Mr. Wallace's testimony cannot be cumulative because it is offered solely in rebuttal to specific assertions concerning healthcare auditing by PwC's expert, Mr. Tillett. *See Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134, 1140 (3d Cir. 1983) (reversing district court's ruling excluding expert testimony as "cumulative" because expert's "testimony was necessary to rebut" that of defendant's expert); *see also Bowman v. Corrections Corp. of Am.*, 350 F.3d 537, 547 (6th Cir. 1983) (rejecting Rule 403 argument that expert testimony was cumulative where experts "were used to rebut the testimony" of plaintiff's experts).

Even if some portion of the testimony of the Committee's accounting experts were cumulative, it would remain admissible here. In *Habecker v. Copperloy Corp.*, 893 F.2d 49, 51 (3d Cir. 1990), the Third Circuit held that the district court erred in excluding expert witness testimony where "although [the expert's] testimony would have been cumulative to the testimony of another expert on the issue for which plaintiff sought to proffer his testimony, the defendants (collectively) offered three witnesses on the issue... ." *Id.* at 51. As noted above,

testimony from the Committee's three accounting and auditing experts here similarly may serve to help level the evidentiary scales.

Should either party believe that the jury needs a caution concerning its evaluation of expert testimony in a multiple-expert case, that caution can be conveyed. Jury instructions on the issue are routine. *See Bowman*, 350 F.3d at 547 (rejecting Rule 403 argument that expert testimony was "cumulative" where "the jury was instructed that the number of witnesses for one side was not to be considered in weighing the proof").

Indeed, it is after the jury is impaneled that the testimonial issues PwC raises are better resolved. PwC's motion is no *Daubert* motion, as called for the Case Management Order. It is a motion expressly premised in the main on Rule 403 case law. PwC Br. at 6. It is therefore premature.

In *Option Resource Group v. Chambers Development Co.*, 967 F. Supp. 846 (W.D. Pa. 1996), defendants moved to exclude evidence on several grounds, including Rule 403, at the summary judgment stage. PwC does the same thing here. In responding to the Rule 403 challenge, this Court explained that it could not "conclude at this stage of the proceedings that the Rule 403 balancing require[d] the exclusion of said evidence." *Id.* at 849. The court held that, "[a]t a minimum, it [was] premature to decide the Rule 403 issue at the summary judgment stage of [the] case, and [that] the Court [would] reserve ruling on [the] objection until trial should the case proceed to that stage." *Id.* at 850 (citing *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 270 (3d Cir. 1983)).

The Committee's evidence cannot be cumulative until it is elicited. The Committee has not called a single witness at trial. It has not asked its expert accounting and auditing witnesses their first questions. No trial date is imminent. No needless cumulative

testimony has been suffered. The time to deal with any real objections to testimonial overlap is at trial when the substance and nuance of the testimony presented is known and any necessary tailoring can be done.

## II. MR. WALLACE'S QUALIFICATIONS ARE AMPLE AND HIS OPINIONS ARE GROUNDED IN THE RELEVANT FACTS.

PwC next argues that Mr. Wallace is somehow unqualified to offer opinions on hospital auditing because, in his retirement, he no longer maintains an active CPA license and because he has not reviewed all of the same records and deposition transcripts that other of the accounting experts in this case have reviewed. PwC Br. at 8-11. These, at best, are jury arguments and warrant little by way of response.

Mr. Wallace, whose healthcare auditing credentials are lengthy and impressive, was a licensed CPA through 1998. *See* Wallace Dep. (PwC Appndx., Tab 6) at 7. That he did not renew his license beyond this time is both understandable and of no moment. He retired from Arthur Andersen and his leadership role in that firm's healthcare practice in 1995, and his active audit practice had drawn to a close. PwC does not argue, nor could it, that regulatory strictures required Mr. Wallace to maintain a CPA license in connection with the consulting work he has undertaken since that time, including the work he has performed on this case.

Mr. Wallace is a member of the American Institute of Certified Public Accountants. He spent nearly 30 years on the professional staff of Arthur Andersen in the firm's Health Care Division. *See* Tab 1, Wallace Rpt. at 1-2. He was in charge of Arthur Andersen's healthcare practice in the Washington D.C. area, a Regional Director of the Southeast region, and a member of Arthur Andersen's Firm Wide Healthcare Steering Committee. *See id.* at 1. Since he retired from Arthur Andersen, his work in the healthcare field has continued and includes the creation of his own healthcare consulting firm. *See id.* at 2.

PII-1122582v1

- 10 -

Should PwC so choose, it may inquire of Mr. Wallace at trial regarding his decision not to maintain an active CPA license after retiring from Arthur Andersen. But that decision has nothing to do with his fundamental qualifications to render opinions regarding Coopers' audit work at AHERF during the mid-1990s when, by the way, Mr. Wallace maintained an active license.

Mr. Wallace's inability at his deposition to tick off certain current accounting industry standards for litigation consulting also is understandable. *See* PwC Br. at 8. Mr. Wallace testifies infrequently and therefore escaped the "inveterate" expert witness label PwC applies to Messrs. Berliner and Regan. PwC Br. at 2. Even assuming (without conceding) the relevance of the cited AICPA standards, Mr. Wallace complied with them. He had more than "sufficient relevant data" that afforded a "reasonable basis" for his opinion. Mr. Wallace's inability to cite the AICPA provision at his deposition, at the most, might affect the weight of his testimony, and can be probed through cross-examination at trial.

That Mr. Wallace did not review all of the accounting records, work papers and depositions in the monumental discovery record in this case is utterly beside the point. The substantial list of key items from that record that he did review is attached to his report as Exhibit A. The list is not short, and it reflects more than sufficient inquiry and investigation to support his limited rebuttal opinions. Mr. Wallace was not asked to inquire after or opine regarding the broader audit issues in this case. His efforts were focused on not-for-profit healthcare materiality, aspects of not-for-profit healthcare accounts receivable valuation, and not-for-profit board-auditor interactions. On these topics, he is perhaps uniquely qualified to opine and his proffered testimony is grounded in the relevant facts. That testimony is reliable and admissible.

PwC points out, and the Committee must concede, that Mr. Wallace, at his deposition, committed the *faux pas* of forgetting the names of members of Coopers' AHERF engagement team, other than that of its leader, Mr. Buettner. *See* PwC Br. at 9. So too was Mr. Wallace unable to recall the names of AHERF's Audit Committee members when pressed. But to suggest that failure of these memory tests could render Mr. Wallace's opinions *Daubert*-disabled is, charitably put, a bit aggressive. Again, these lapses likely will not even make counsel for PwC's trial cross-examination outline. They surely cannot disqualify this witness from testifying altogether.

PwC also accurately notes that Mr. Wallace read the reports of Messrs. Berliner and Regan, along with the report of PwC's retained auditing expert, Mr. Tillett. *See* PwC Br. at 9. This can come as no shock. Mr. Wallace was tasked with evaluating and responding to Mr. Tillett's attacks on the opinions of Mr. Berliner and Mr. Regan to the effect that Coopers' audit work could be justified by healthcare auditing considerations with which, Mr. Tillett asserts, Messrs. Regan and Berliner have less familiarity than he. To the extent that Mr. Wallace's report refers to the reports of Messrs. Regan and Berliner, it is, in some part, doubtless occasioned by the fact that Mr. Tillett's report itself refers to these experts by name more than 200 times.

That Mr. Wallace's report, of practical necessity, refers to Mr. Berliner and Regan (and Mr. Tillett's disagreements with them) cannot render Mr. Wallace a redundant testimonial "voucher." PwC Br. at 7. Nor has the Committee offered his testimony for this purpose. Mr. Wallace's testimony rebuts Mr. Tillett's in ways that Messrs. Berliner's and Regan's does not.

Straining to accuse Mr. Wallace of "vouching," PwC reads more into *Tunis Brothers Co. v. Ford Motor Co.*, 124 F.R.D. 95, 96 (E.D. Pa. 1989), than is there. *See* PwC Br. at 7. The *Tunis* court merely reasoned that it would be inappropriate to admit testimony from a new damages expert, who was "simply going to vouch for" the appropriateness of the work of an earlier-designated damages expert. *Id.* at 98. In *Tunis*, the new expert was not offered to rebut an attack on the first expert, but rather, merely to give his opinion about the first expert's damages calculations. *See id.* at 97.

PwC's final assault on Mr. Wallace's modest testimonial effort charges him with relying on the reports of others. PwC Br. at 10. But the charge, read closely, is only that Mr. Wallace relied on certain "purported facts set out in the Berliner and Regan reports." *Id.*

PwC cites no authority to suggest that this is inappropriate and, instead, cites case law for a different proposition -- that "[a]n expert may not base his opinion on the *opinions* of others." *Id.* (emphasis added). The Committee disagrees with this statement of the law. *See United States v. 1014.16 Acres of Land*, 558 F. Supp. 1238, 1242 (W.D. Mo. 1983), *aff'd*, 739 F.2d 1371 (8th Cir. 1984) ("An expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion."); *see also Sunstar, Inc. v. Alberto-Culver Co.*, Case No. 01 C 0736, 2004 U.S. Dist. LEXIS 16855, *76 (N.D. Ill. April 23, 2004) ( Tab 3) ("There is nothing improper about one expert adopting and incorporating the opinions of another expert so long as it is made clear in the expert report."). But, more importantly, the misstated legal proposition is irrelevant. PwC has not argued that Mr. Wallace's opinions are based on the "opinions of others."

Federal Rule of Evidence 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made

PII-1122582v1

- 13 -

known to the expert at or before the hearing." Since Rule 703 expressly permits experts to base their opinions on facts "made known" to them, it is not improper for Mr. Wallace to rely on the expert reports of Mr. Berliner, Mr. Regan, and Mr. Tillett to glean some of the facts of the case. The Third Circuit has explained that "[u]nder Rule 703, an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts." *Barris v. Bob's Drag Chutes & Safety Equip., Inc.*, 685 F.2d 94, 101 n.10 (3d Cir. 1982) (citing *United States v. Hill*, 655 F.2d 512, 516 (3d Cir. 1981)); *Seese v. Volkswagenwerk A.G.*, 648 F.2d 833, 844 (3d Cir.), *cert. denied*, 454 U.S. 867 (1981).

Mr. Wallace's testimony is well grounded in the limited factual material relevant to his relatively narrow rebuttal opinions, and he is more than qualified to offer it.

### III. MR. REGAN'S EXPERT TESTIMONY SHOULD NOT BE EXCLUDED BECAUSE HE HAS EXERCISED APPROPRIATE PROFESSIONAL SKEPTICISM CONCERNING THE WORK OF ONE MEMBER OF COOPERS' AHERF ENGAGEMENT TEAM.

In Mr. Regan's deposition, he briefly testified that he had prior contact with the work and testimony of Mr. Kirstein in the *Phar-Mor* case. This contact is not mentioned in Mr. Regan's report. Nor is it a part of his opinions or the grounds therefor.

Though PwC may wish it were not so, Mr. Kirstein was a central figure in both the *Phar-Mor* audit failure case and this one. This is a matter of historical fact. Mr. Regan, an expert for certain parties plaintiff in the *Phar-Mor* case and for the Committee here, brought to his work in this case appropriate levels of professional skepticism in evaluating the work of the Coopers' AHERF audit teams. If he had not, perhaps PwC would be complaining about that failure. As it happens, he did, so now PwC complains that the application of due professional skepticism should somehow affect the admissibility of Mr. Regan's work. The argument should be rejected.

Mr. Regan has nowhere testified that his view of Mr. Kirstein's earlier work or testimony has affected his opinions in this case. It has not. Nor has Mr. Regan expressed an intent to testify concerning the credibility of Mr. Kirstein or other witnesses in this case. The jury will be free to make those determinations without expert testimony on the topic.

PwC may chose to cross-examine Mr. Kirstein on his prior contact with Mr. Kirstein in an effort to probe potential bias. But that effort would only serve as a challenge to Mr. Regan's credibility. Bias, even if established, does not render testimony inadmissible. The Third Circuit "long ago abandoned the practice of disqualifying witnesses because of presumed bias." *United States v. Zeiler*, 470 F.2d 717, 720 (3d Cir. 1972). "Bias can be examined through cross-examination, and juries are free to disregard biased testimony." *Id.* Other authorities concur. *See, e.g., DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000) (rejecting argument that expert's testimony was unreliable due to bias); *United States v. Ewell*, 252 F. Supp. 2d 104, 115 (D.N.J. 2003) (rejecting argument that testimony by expert who was allegedly biased should have been excluded).

Mr. Regan's prior contact with Mr. Kirstein is a non-issue unless, of course, PwC would like to raise it on cross-examination at trial. That choice is PwC's.

## CONCLUSION

For these reasons, the Committee requests that the Court deny what PwC calls its Motion to Preclude Duplicative and Unreliable Expert Accounting Testimony.

Respectfully submitted,

/s/ James M. Jones
James M. Jones (PA #81295)
Laura E. Ellsworth (PA #39555)
Laura A. Meaden (PA #52002)
JONES DAY
500 Grant Street, 31st Floor
Pittsburgh, PA 15219
Richard B. Whitney
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114

Attorneys for Plaintiff The Official Committee of Unsecured Creditors of AHERF

Date: July 11, 2005

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of July, 2005, a true and correct copy of the Committee's Brief in Opposition to PwC's Motion to Preclude Duplicative and Unreliable Expert Accounting Testimony was served upon all counsel registered with Electronic Case Filing to receive electronic service in this matter, as well as by Federal Express upon Antony J. Ryan, Esq. Cravath, Swaine & Moore, Worldwide Plaza, 825 8th Avenue, New York, New York 10019-7475, and Joseph F. McDonough, Esq., Manion, McDonough & Lucas, PC, 600 Grant Street, Suite 1414, Pittsburgh, Pennsylvania 15219, counsel for defendant.

/s/ John G. Unice
John G. Unice
One of the Attorneys for Plaintiff The Official
Committee of Unsecured Creditors of AHERF

PII-1123043v1