**TAB 1**

**H**

Only the Westlaw citation is currently available.

United States Bankruptcy Court,
E.D. Pennsylvania.
**In re ASOUSA PARTNERSHIP, Debtor.**
**ASOUSA PARTNERSHIP, Plaintiff,**
**v.**
**MANUFACTURERS ALLIANCE INSURANCE CO., Chapel Insurance Associates, Inc., Kaminsky Insurance Agency, Inc., Defendants.**
**No. 01-12295DWS, 03-1005.**

Feb. 2, 2005.

**Background:** Debtor brought adversary proceeding against insurance agent and insurer over property insurance portion of commercial package insurance policy. Insurer brought cross-claim against agent. Insurance agent brought motion for summary judgment against debtor. Insurer brought motion for summary judgment on its cross-claim against agent.

**Holdings:** The Bankruptcy Court, Sigmund, Chief Judge, held that:
(1) debtor had viable breach of implied warranty claim against agent;
(2) economic loss doctrine did not preclude debtor's professional negligence claim against agent;

(3) fact issue existed as to whether insurance agent undertook to perform specific service for debtor;
(4) debtor made prima facie causation showing; and
(5) fact issue existed on insurer's breach of contract and indemnification claims against agent.
Motions denied.

**[1] Insurance ⚿ 1671**

217k1671 Most Cited Cases
Contract between property owner and insurance agent was not required under Pennsylvania law for owner to have viable claim for breach of implied warranty against agent, where agent made owner additional insured under property insurance portion of renter's commercial package insurance policy but did not obtain approval to do so from insurer and insurer subsequently denied coverage to owner on basis that owner was not named insured under policy. Fed.Rules Bankr.Proc.Rule 7056, 11 U.S.C.A.; Restatement of Agency (Second) § 329.

**[2] Contracts ⚿ 330(4)**
95k330(4) Most Cited Cases
Under Pennsylvania law, a breach of contract claim can only be brought against the contracting parties.

**[3] Principal and Agent ⚿ 136(2)**
308k136(2) Most Cited Cases
In Pennsylvania, an agent is liable to a party under a contract it makes with that party on behalf of a principal where the agent lacks authority to bind the principal; this rule is applicable whether or not the agent is a party to the transaction. Restatement (Second) of Agency § 329.

**[4] Negligence ⚿ 463**
272k463 Most Cited Cases
In Pennsylvania, the economic loss doctrine generally precludes recovery in negligence actions for injuries which are solely economic.

**[5] Insurance ⚿ 1671**
217k1671 Most Cited Cases
Economic loss doctrine did not preclude property owner's professional negligence claim against insurance agent under Pennsylvania law, that agent breached duty of reasonable care to obtain insurance coverage for property owner, as additional insured under property insurance portion of renter's commercial package insurance policy, since claim stemmed from duty of care imposed by law upon professionals, rather than from contract between parties. Restatement (Second) of Torts § 299A.

**[6] Negligence ⚿ 481**
272k481 Most Cited Cases
Under Pennsylvania law, a plaintiff cannot maintain an action for professional negligence in the absence of privity with the defendant.

**[7] Bankruptcy ⚿ 2164.1**
51k2164.1 Most Cited Cases
Genuine issue of material fact existed as to whether insurance agent undertook to perform specific service for property owner, as third party, precluding summary judgment on owner's professional negligence claim against agent under Pennsylvania law. Fed.Rules Bankr.Proc.Rule 7056, 11 U.S.C.A.; Restatement (Second) of Torts

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

§ 552.

**[8] Contracts 🔑 326**
95k326 Most Cited Cases
In Pennsylvania, a breach of contract claim requires proof of causation.

**[9] Insurance 🔑 1671**
217k1671 Most Cited Cases

**[9] Insurance 🔑 1673**
217k1673 Most Cited Cases
Property owner made prima facie showing under Pennsylvania law, for purpose of its professional negligence claim, that failure of insurance agent to add it as additional insured to property insurance portion of renter's commercial package insurance policy was substantial factor, i.e., it was significant or recognizable, in producing harm to owner, where every attempt by owner to obtain coverage under policy was met with insurer's response that owner was not named insured.

**[10] Negligence 🔑 375**
272k375 Most Cited Cases
In Pennsylvania, "proximate cause" is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant.

**[11] Negligence 🔑 380**
272k380 Most Cited Cases
In Pennsylvania, in the context of proximate cause, conduct may be a substantial factor in bringing about the plaintiff's harm as long as it is significant or recognizable; it need not be quantified as large or considerable.

**[12] Negligence 🔑 1568**
272k1568 Most Cited Cases

**[12] Negligence 🔑 1675**
272k1675 Most Cited Cases
In Pennsylvania, the burden of proving proximate cause is upon the plaintiff and must be sustained by a preponderance of the evidence.

**[13] Negligence 🔑 1568**
272k1568 Most Cited Cases
In Pennsylvania, when establishing causation, a plaintiff need not exclude every possible alternative cause of its injury; rather, once a plaintiff has made a prima facie showing that the defendant's conduct was a substantial factor in bringing about the plaintiff's harm, the burden shifts to the defendant to prove that the alternative cause would have produced the injury independently.

**[14] Damages 🔑 30**
115k30 Most Cited Cases
Pennsylvania law allows consequential damages stemming from a breach of contract.

**[15] Bankruptcy 🔑 2164.1**
51k2164.1 Most Cited Cases
Genuine issue of material fact existed as to whether insurance agent performed within scope of its authority when it issued certificates indicating that property owner had been added as additional insured under property insurance portion of renter's commercial package insurance policy, precluding summary judgment on insurer's breach of contract and indemnification claims against agent under Pennsylvania law. Fed.Rules Bankr.Proc.Rule 7056, 11 U.S.C.A.

Steven M. Coren, Esquire, Kaufman, Coren & Ress, P.C., Philadelphia.

Anthony Miscioscia, Esquire, White and Williams LLP, Philadelphia.

Jeffrey B. McCarron, Esquire, Swartz Campbell LLC, Philadelphia.

Dave P. Adams, Esquire, Office of the U.S. Trustee, Philadelphia.

MEMORANDUM OPINION

SIGMUND, Chief Bankruptcy J.

***1** Before the Court are the following: (1) the Motion for Summary Judgment by Defendants Chapel Ins. Associates, Inc. ("Chapel") and Kaminsky Insurance Agency, Inc. ("Kaminsky") (collectively "C & K") to the Complaint (the "C & K Motion"); and (2) the Motion of Cross-Claim Plaintiff Manufacturers Alliance Insurance Co. ("MAICO") for summary judgment against Cross-Claim Defendants C & K (the "MAICO Motion"). [FN1] For the reasons stated below, both motions are denied.

UNCONTESTED FACTUAL AND

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



PROCEDURAL BACKGROUND [FN2]

Debtor owns a property located at 980 Glasgow Street, Pottstown, Pennsylvania (the "Premises") which Debtor at one time rented to Pennexx Foods, Inc. f/n/a Pinnacle Foods, Inc. ("Pinnacle"), not a party to this action. Pinnacle vacated the Premises in July 2002, causing significant damage in its exodus and rendering the Premises unrentable. [FN3] Of relevance here, Pinnacle obtained an insurance policy with MAICO with the term of September 1, 2001 to September 1, 2002 (the "Policy"). [FN4] Prior to the issuance of the Policy, Pinnacle had a policy with another insurer, CGU (the "CGU Policy"). Exhibit I, Deposition of Edward Kaminsky ("Kaminsky Dep.") at 24.

The Policy is a commercial package policy, providing property and liability insurance and containing numerous forms and endorsements. The property insurance portion of the Policy forms the basis of the Debtor's Complaint and names the Premises as "covered property," though it identifies only Pinnacle as the named "insured." Exhibit O to C & K Motion at MAI00769 (Declarations), MAI00772 (Building and Personal Property Coverage Form). [FN5]

The Policy was placed through C & K which has an "Agent Agreement" with MAICO. Exhibit J to C & K Motion. [FN6] On or about October 10, 2001, C & K's employee, Wayne McFarland ("McFarland") sent Debtor via facsimile two documents titled "Evidence of Property Insurance" and "Certificate of Liability Insurance" (collectively, the "Certificates"). Exhibit P; Exhibit M, Deposition Transcript of Wayne McFarland ("McFarland Dep.") at 33-36; Exhibit B, Deposition Transcript of Theodore C. Asousa, Jr. ("Asousa Dep.") at 95-96. Both documents indicate that the Debtor has been added as an additional insured under the Policy. The circumstances surrounding McFarland's faxing of the Certificates are unclear. Debtor's principal, Theodore Asousa, did not request the Certificates. Indeed, at the time he received the facsimile, he assumed that the Certificates pertained to a renewal of the CGU Policy, sent a copy to his bankruptcy counsel and filed the originals. Asousa Dep. at 95. McFarland has no recollection as to why he sent the Certificates. McFarland Dep. at 33- 34.

It is undisputed that McFarland did not request permission from or notify MAICO of his issuance of the Certificates. *Id.* at 35-36. While C & K denies that it needed to get MAICO's approval to add Debtor to the Policy, it nevertheless subsequently terminated McFarland in part for his failure to notify MAICO of the issuance of the Certificates. Kaminksy Dep. at 16-18, 34- 36; Exhibit 13 to MAICO Motion (C & K internal memo noting termination of McFarland). MAICO's position is that Debtor is not a named insured under the Policy. While disputing this position with regard to MAICO's cross-claim, C & K assumes for the purposes of its motion against Debtor that the Certificates were insufficient to add the Debtor as a named insured.

***2** After Pinnacle vacated the Premises, and after learning from Chapel that MAICO was the insurer during the relevant period, Debtor contacted MAICO on or about August 30, 2002, seeking coverage for the damage. Exhibit 16 to MAICO Motion (form titled "General Liability Notice of Occurrence Claim"); Asousa Dep. at 107-08. Several days later MAICO's representative, Paul Brown, informed Debtor that MAICO had no record of Debtor being a named insured under the Policy. Asousa Dep. at 108-09. Debtor faxed MAICO copies of the Certificates. Exhibit 18 to MAICO Motion (letter dated 9/6/02 from T. Asousa to P. Brown). In response, MAICO reviewed its records but found no indication that Chapel had ever notified it regarding the addition of Debtor as an insured. MAICO made a determination that Debtor was not an additional insured. Declaration of Ruth Hopkins ("Hopkins Decl.") ¶¶ 7-8, Exhibit 11 to MAICO Motion. MAICO reaffirmed this determination when its representative was questioned by Debtor's counsel. Exhibit 19 to MAICO Motion at MAI00631-640 ("MAICO Log Notes"); Exhibit Q, Deposition Transcript of Peter Pezowicz ("Pezowicz Dep.") at 190 (testifying that Debtor's claim was denied because Debtor was not an additional insured).

Debtor subsequently filed this adversary action, seeking relief against MAICO under the Policy and alternatively against C & K. Debtor has since settled its claims with MAICO, leaving only its alternative claims against C & K. MAICO has filed and continues to press a cross-claim against C & K for defense costs and indemnification pursuant to an indemnification clause in the Agent Agreement and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



common law.

DISCUSSION

A motion for summary judgment is governed by Federal Rule of Civil Procedure 56, applicable in this proceeding pursuant to Federal Rule of Bankruptcy 7056, which states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ .P. 56(c). The party moving for summary judgment must overcome the initial burden of demonstrating the absence of a material question of fact. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law will determine which facts are material. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Id.* at 255. A court must find that the motion alleges facts which, if proven at trial, would require a directed verdict. 6 J. Moore, *Moore's Federal Practice,* ¶ 56.26 (2d ed.1988). If so, the respondent "must set forth specific facts showing there is a genuine issue for trial," and may not "rest upon the mere allegations or denials of the pleading." Fed. R. Civ P. 56(e). If the non-movant's evidence "is merely colorable, or is not significantly probative, summary judgement may be granted. *Anderson,* 477 U.S. at 250.

***3** However, as it is the moving party's burden to demonstrate the absence of genuine issues of material fact, even if the opposing party fails to file contravening affidavits or other evidence that establishes a genuine issue of material fact, summary judgment must still be warranted and will be denied where the movant's own papers demonstrate the existence of material factual issues. *Drexel v. Union Prescription Centers, Inc.,* 582 F.2d 781, 790 (3d Cir.1978) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159-61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citations omitted)). *See Maldonado v. Ramirez,* 757 F.2d 48, 51 (3d Cir.1985). With this standard in mind, I address the arguments and evidence put forth by C & K and MAICO.

I.

[1] Debtor's claims against C & K stem from the issuance of the Certificates purporting to add Debtor as an additional insured under the Policy. The three counts assert different theories of recovery, namely: breach of contract under the Policy (Count III); negligence in the performance of its duties as an insurance agent (Count IV); and negligent misrepresentation (Count V). The C & K Motion raises numerous legal arguments in support of summary judgment which I address in turn.

A.

[2] Count III is titled "Breach of Contract." The only contract identified is the Policy, Complaint ¶¶ 40-45, and there is no question of fact that neither the Debtor nor C & K are parties to it. C & K therefore argues for summary judgment because, as a matter of Pennsylvania law, a breach of contract claim can only be brought against the contracting parties. *See Marshall v. Port Authority of Allegheny County,* 524 Pa. 1, 568 A.2d 931, 936 (Pa.1990). [FN7]

[3] While C & K's general proposition is correct, it relies too much on the label Debtor has chosen for this claim rather than the substance of the claim, namely that C & K should be liable under the Policy in MAICO's stead because C & K exceeded the scope of their authority when they issued the Certificates. Complaint ¶ 41. As Debtor notes, Pennsylvania has adopted the Restatement of Agency (Second) § 329, which hold an agent liable to a party under a contract it makes with that party on behalf of a principal where the agent lacks authority to bind the principal. *DiCicco v. Willow Grove Bank,* 2004 WL 2150980, at *4 (E.D.Pa. Sept.21, 2004); *Hudock v. Donegal Mutual Insurance Company,* 438 Pa. 272, 264 A.2d 668, 672 (Pa.1970); *Kribbs v. Jackson,* 387 Pa. 611, 129 A.2d 490, 498 n. 2 (Pa.Super.1957). [FN8] This rule is applicable whether or not the agent is a party to the transaction. *See* Comment a, Restatement (Second) Agency § 329. Thus, while I agree with C & K that they would not be liable to Debtor under a straight breach of contract claim, Debtor's claim appears to fall within the scope of the Restatement's rule of liability under breach of implied warranty.

B.

[4][5] C & K asserts that both of Debtor's negligence claims (Counts IV and V) are precluded

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



under the economic loss doctrine as adopted by the Pennsylvania Superior Court. This doctrine generally "precludes recovery in negligence actions for injuries which are solely economic." *David Pflumm Paving & Excavating, Inc. v. Foundation Services Co.*, 816 A.2d 1164, 1170 (Pa.Super.2003) (emphasis added). [FN9] I have spoken on the economic loss doctrine before and need not go into depth here. Suffice it say, the doctrine is concerned with maintaining separate spheres of tort and contract law, and thus Pennsylvania jurisprudence has generally applied the doctrine to preclude a party from recovering in tort for losses to which their entitlement flows out of a contract. *E.g., Lichtenstein v. Stockton Bates, LLP (In re Computer Personalities Systems, Inc.),* 2003 WL 22844863, at*3 (Bankr.E.D. Pa., Nov 18, 2003). However, I disagree with C & K's assertion that the doctrine clearly precludes the negligence claims here.

***4** Count IV asserts a claim of negligence against C & K, namely that they breached a duty of reasonable care to obtain insurance coverage for the Debtor. Complaint ¶¶ 46-49. C & K concedes that there is an exception to the economic loss doctrine for claims of professional negligence. Memorandum of Law in Support of the Motion for Summary Judgment of Defendants [C & K] to the Complaint ("C & K Mem .") at 18. C & K asserts without authority, however, that insurance agents are not professionals who may be liable for professional negligence. [FN10] In contrast, Debtor cites to Pennsylvania law which imposes the same duty of care upon insurance agents as it does upon other professionals: "to exercise the skill and knowledge normally possessed by members of that profession." *Wisniski v. Brown & Brown Ins. Co.*, 852 A.2d 1206, 1212 (Pa.Super.2004) (*quoting Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1138 (Pa.Super.2003) (*citing*, Restatement (2d) of Torts § 299A)). Because Count IV stems from a duty of care imposed by law upon professionals, rather than from a contract between the parties, the economic loss doctrine does not preclude this tort claim. *Computer Personalities*, 2003 WL 22844863 at *4-5.

Count V asserts a claim for negligent misrepresentation which is governed by the Restatement (Second) of Torts (the "Restatement") § 552. [FN11] Unfortunately, there appears to be some inconsistency in the judicial application of the economic loss doctrine to such a claim. *Compare Duquesne Light Co. v. Westinghouse Electric Corp.*, 66 F.3d 604, 620 (3d Cir.1995) (predicting that the Pennsylvania Supreme Court would apply economic loss doctrine to a § 552 claim only where a party is in privity of contract with the tortfeasor) [FN12] *with David Pflumm Paving & Excavating, Inc. v. Foundation Services Co.*, 816 A.2d 1164 (Pa.Super.2003) (excluding § 552 claim under economic loss doctrine notwithstanding that the parties were not in contractual privity). [FN13] *See also Busy Bee v. Corestates Bank, N.A.*, 67 Pa. D. & C.4th 496, 527-28, 2004 WL 2603744 (Pa.Com.Pl.2004) (construing economic loss doctrine under *Pflumm* as precluding § 552 claims only where defendant does not know plaintiff will be influenced or guided by information provided and economic harm is therefore unforeseeable).

Complex doctrines of state law are best developed by the state courts. I see no reason to needlessly address the interplay of Restatement § 552 and the economic loss doctrine at this juncture where doing so would not obviate the need for or streamline a trial. Given my other holdings today, Debtor will be proceeding to trial under its theories of implied warranty of authority and professional negligence. It appears that the implied warranty claim and negligent misrepresentation claim will both focus on C & K's representations to Debtor and thus require the same fact witnesses. There is no prejudice in allowing Debtor to proceed to trial with its negligent misrepresentation claim and the court will reserve judgment on the arguments raised here with respect to the economic loss doctrine as pertains to this claim.

C.

***5** [6][7] C & K asserts that privity is required for Debtor's negligence claims (Counts IV and V), and seeks summary judgment premised upon the uncontested fact that there was and is no professional relationship between C & K and Debtor. With respect to the claim for professional negligence (Count IV), I agree as to the general rule: "under Pennsylvania law, a plaintiff cannot maintain an action for professional negligence in the absence of privity with the defendant ." *See In re Phar-Mor, Inc. Securities Litigation,* 892 F.Supp. 676, 690 (W.D.Pa.1995). Debtor, however, raises the Pennsylvania Supreme Court's decision in *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744, 746 (1983), recognized by C & K's cited authority. 892

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



F.Supp. at 689-90; *First Options of Chicago, Inc. v. Wallenstein,* 1994 WL 229554, at *3 (E.D.Pa.1994) . *Guy* states, *inter alia,* that privity encompasses more than a professional relationship and can be met by at least a showing of a specific undertaking on the professional's part to perform a specific service for the third party. 459 A.2d at 748-49. Plaintiff also identifies the following testimony from Kaminsky:

Q: Now, it was also your understanding, was it not, when Chapel was placing this new insurance with MAICO on behalf of [Pinnacle] that ... [Pinnacle] remained obligated under its lease to continue to name Asousa Partnership and its bank as additional insureds; correct?

A: Yes.

* * *

Q: - and since you previously procured the insurance to the benefit of Asousa Partnership and its bank, Pennsylvania Business Bank, you knew when you got insurance for [Pinnacle] with a new company, you'd have to do the same thing and make sure that Asousa Partnership and its bank, Pennsylvania Business Bank, were protected as additional insureds under the new insurance policy; correct?

A: Correct.

Kaminsky Dep. at 83-84. I certainly make no finding that C & K undertook to perform a service for Debtor, particularly based upon incomplete deposition excerpts. Nevertheless, the above testimony at least raises a question of fact as to whether a showing as contemplated by *Guy* may be made here.

As to the negligent misrepresentation claim (Count V), the Third Circuit Court of Appeals has expressly rejected the assertion that Pennsylvania's Restatement § 552 has a strict privity requirement. *Eisenberg v. Gagnon,* 766 F.2d 770, 779-80 (3d Cir.1985). Indeed, as the court noted ten years later, "virtually all the examples provided in the section involve liability to third parties." *Duquesne Light Co.,* 66 F.3d 604, 620 (3d Cir.1995); *accord Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Associates,* 39 F.Supp.2d 517, 531-34 (M.D.Pa.1999). [FN14]

D.

[8][9] C & K also asserts that summary judgment is warranted as to all of Debtor's claims because Debtor cannot show that C & K's conduct was the proximate cause of its damages. [FN15] Even assuming Debtor had been added to the Policy as an additional insured, C & K argues that Debtor fails to prove that it would have otherwise been covered under the Policy, pointing to certain Policy exclusions.

***6** [10][11][12] "Proximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant." *Little v. York County Earned Income Tax Bureau,* 333 Pa.Super. 8, 481 A.2d 1194, 1198 (Pa.Super.1984). It may be established by evidence that the defendant's conduct was a substantial factor in bringing about the plaintiff's harm. The conduct may be a substantial factor as long as it is significant or recognizable. It need not be quantified as large or considerable. *Commonwealth v. United States Mineral Products Co.,* 809 A.2d 1000, 1011 (Pa.Commw.2002). The burden of proving proximate cause is upon the plaintiff and must be sustained by a preponderance of the evidence. *Little,* 809 A.2d at 1198.

[13] I agree that C & K's conduct cannot be found to be a substantial cause if Debtor would have suffered the same fate (lack of coverage) absent D & K's negligence. *E.g., Hicks v. Metropolitan Edison Co.,* 665 A.2d 529, 534 (Pa.Commw.1995). I also believe, however, that C & K has overstated Debtor's burden of proof. In establishing causation, Debtor need not exclude every possible alternative cause of its injury. Rather, once Debtor has made a *prima facie* showing that C & K's conduct was a substantial factor in bringing about Debtor's harm, the burden shifts to C & K to prove that the alternative cause would have produced the injury independently. *E.g. Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, 12845, (Pa.1978); *Watkins v. Hospital of the Univ. of Penn.,* 737 A.2d 263, 267 (Pa.Super.1999); *Little,* 481 A.2d at 1199.

Here, the record evidence sufficiently establishes that every attempt by Debtor to obtain coverage under the Policy was met with MAICO's response that Debtor was not a named insured. Debtor has thus made a *prima facie* showing that C & K's failure to add Debtor to the Policy was a substantial factor, *i.e.,* it was significant or recognizable, in producing harm to the Debtor. *Commw. v. U.S. Mineral,* 809 A.2d at 1011. The burden now shifts

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



to C & K to prove that Debtor would have been denied coverage even if it had been named an additional insured. While C & K has raised several Policy exclusions that it believes preclude coverage, its burden here is to show that *MAICO* would have so interpreted and applied these exclusions. C & K cites to no such evidence. Indeed, on the summary judgment record before me, MAICO appears to have rested its denial of Debtor's claim entirely upon Debtor's lack of status as a named insured.

E.

[14] Finally, C & K asserts that certain consequential damages, *i.e.,* lost rent, are excluded under the Policy. I disagree. To the extent that Debtor seeks such damages under a contract theory, Pennsylvania law clearly allows consequential damages stemming from a breach of contract. *E.g., Commonwealth, Dept. of Transp. v. Cumberland Constr. Co.,* 90 Pa.Cmwlth. 273, 494 A.2d 520, 525 (Pa.Commw.1985). To the extent Debtor is seeking such damages in tort, the damages stem from C & K's tortious conduct, not the Policy, and its exclusions are therefore irrelevant.

II.

***7** [15] As noted above, MAICO has filed a cross-claim and summary judgment motion against C & K for defense costs incurred in this adversary as well as the settlement amount it paid to Debtor. MAICO relies in part upon the indemnification clause in the Agent Agreement, which states:

11.4 [Chapel] shall indemnify, defend and hold harmless [MAICO], its officers, directors, and employees from all claims, losses, damages, costs, liability or expenses, including attorney's fees, resulting from any injury to any person or any loss or damage to any property caused by or resulting from [Chapel's] failure to perform within the authorized scope of authority granted to [Chapel] in this Agreement.

Exhibit 10 to MAICO Motion at MAI00692-93. The plain language of the Agent Agreement clearly limits C & K's defense and indemnification obligations to instances where C & K failed to perform within the scope of its authority and its failure caused the damage at issue. MAICO also concedes that its alternative grounds of common law indemnification also require that the damage be caused by the indemnitor's actions. MAICO Mem. at 14 (*citing Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368, 370 (Pa.1951)). MAICO's cross-claim is thus dependent upon a finding that C & K failed to perform within the scope of its authority when it issued the Certificates.

In support of this assertion, MAICO relies upon the following provision in the Agent Agreement, which empowers C & K to:

A. Bind the Company for coverage but only after receiving a quotation from the Company. Coverage for risks not yet quoted by the Company cannot be bound without the express written authorization of the Company. Coverage cannot be bound on a quotation that is more than sixty (60) days old or which is backdated. After binding a coverage, the Agent must immediately notify the Company in writing of the Same.

Exhibit J at MAI00688, ¶ 1.4. While there is no question of fact that C & K did not obtain MAICO's approval before issuing the Certificates, MAICO provides no authority that adding Debtor as an additional insured to the existing Policy constituted a new risk requiring a quotation or authorization from MAICO pursuant to the above-quoted clause. [FN16]

C & K, however, has proffered the testimony of Glenn Giveans, an underwriting manager at PMA, to which MAICO belongs, which states *inter alia:*

Q: Okay. And do you have to approve the addition of additional insured on existing policies?

A: No.

Exhibit L to Response of Defendants [C & K] to Motion of Defendant [MAICO] for Summary Judgment on its Cross-Claims ("C & K Cross-Claim Mem.") at 63 ("Giveans Dep."). Mr. Giveans' testimony at least raises an issue of fact as to whether C & K's failure to get preauthorization to issue the Certificates violates ¶ 1.4(A) of the Agent Agreement.

CONCLUSION

For the foregoing reasons, the C & K Motion and MAICO Motion are denied. As all dispositive motions are now resolved, this adversary action is ready to proceed to trial on Debtor's and MAICO's claims against C & K. A final pretrial/settlement conference shall be scheduled.

***8** An Order consistent with this Memorandum Opinion shall issue.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



ORDER

AND NOW, this 2nd day of February, 2005, upon consideration of (1) the Motion for Summary Judgment by Defendants Chapel Ins. Associates, Inc. ("Chapel") and Kaminsky Insurance Agency, Inc. ("Kaminsky") (collectively "C & K") to the Complaint (Doc. No. 55); and (2) the Motion of Cross-Claim Plaintiff Manufacturers Alliance Insurance Co. ("MAICO") for summary judgment against Cross-Claim Defendants C & K (Doc. No. 58) (collectively, the "Summary Judgment Motions"), and the responses thereto, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby ORDERED and DECREED that

1. The Summary Judgment Motions are DENIED.

2. On or before February 18, 2005, the parties shall file a joint pretrial statement and file a copy with chambers. The joint pretrial statement shall be signed by all counsel. It is the obligation of the plaintiff's counsel to initiate the procedures for its preparation and to assemble and submit the proposed pretrial statement to the court. Plaintiff's counsel shall submit a proposed joint pretrial statement to defendants' counsel not less than 7 days prior to the deadline for its submission to the Court.

Counsel are expected to make a diligent effort to prepare a proposed pretrial statement in which will be noted all of the issues on which the parties are in agreement and all of those issues on which they disagree. The proposed pretrial order shall govern the conduct of the trial and shall supersede all prior pleadings in the case. Amendments will be allowed only in exceptional circumstances and to prevent manifest injustice. Failure of any party to timely file the pretrial statement may result in the imposition of sanctions by the Court.

The joint pretrial statement shall be in the following form:

I. *Basis of jurisdiction.* (including a statement whether this matter is core or non-core). If the matter is noncore, the parties shall state whether they consent to the court's entry of a final order pursuant to 28 U.S.C. § 157(c)(2). If the parties disagree, they shall each cite to relevant authority to support their positions.

II. *Statement of uncontested facts.*

III. *Statements of facts which are in dispute.* [No facts should be disputed unless opposing counsel expects to present contrary evidence on the point at trial, or genuinely challenges the fact on credibility grounds.]

IV. *Damages or other relief.* A statement of damages claimed or relief sought. A party seeking damages shall list each item claimed under a separate descriptive heading, shall provide a detailed description of each item and state the amount of damages claimed. A party seeking relief other than damages shall list the exact form of relief sought with precise designations of persons, parties, places and things expected to be included in any order providing relief.

V. *Legal issues presented* and the constitutional, statutory, regulatory and decisional authorities relied upon. (Counsel should include a brief statement regarding which party has the burden of proof on each legal issue.)

***9** VI. *Witnesses* listed in the order they will be called along with a brief statement of the evidence the witness will give. Witnesses shall be classified between those who any party expects to present and those whom any party may call if the need arises. If not already provided to all parties, the address and telephone number of each witness shall be disclosed.

VII. *A list of all exhibits* to be offered into evidence which shall be serially numbered and physically marked before trial in accordance with the schedule. All objections (other than relevancy) to any of the exhibits shall be listed, specifying the nature thereof, under the exhibit. Exhibits to which objections are not listed shall be admitted at trial and objections not listed on the joint pretrial statement will not be allowed at trial. Documents which a party may offer if the need arises shall be separately identified.

VIII. *A list of each discovery item* and trial deposition to be offered into evidence. (Counsel shall designate by page portion of deposition testimony and by number the interrogatories which shall be offered in evidence at trial.)

IX. *Estimated trial time*

X. *A certification* that the parties have attempted good faith settlement discussions without success.

3. The dates in this Order are fixed by the Court. No requests for an extension shall be granted.

4. A mandatory final pretrial/settlement conference

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



shall be held on February 22, 2005, at 2:20 p.m. in Bankruptcy Courtroom # 3, Robert N.C. Nix Federal Courthouse & Post Office, 900 Market Street, 2nd Floor, Philadelphia, PA. If the adversary proceeding is not resolved prior to the conclusion of the conference, the adversary proceeding shall be set down for trial at the Court's first available date. Each party may file five (5) days prior to the date of trial a trial memorandum with service on the opposing party and a courtesy copy delivered to Chambers. The trial may be continued only in exceptional circumstances on motion to and leave of the Court.

FN1. Debtor has settled all of its claims against MAICO. Pursuant to their stipulation MAICO withdrew its pending motion for summary judgment against Debtor. Debtor in turn withdrew its motion for reconsideration of this Court's Opinion and Order dated April 26, 2004, denying Debtor's partial summary judgment motion (the "Reconsideration Motion"). *See* Exhibit A to Motion to Approve Settlement of Adversary No. 03-1005 as to Defendant [MAICO] ONLY at 6.

FN2. This is the second time I have had to address summary judgment motions in this adversary proceeding. Much of the relevant background can be found in my Memorandum Opinion and Order denying Debtor's Motion for Partial Summary Judgment. *See Asousa Partnership v. Manufacturers Alliance Ins. Co.,* 2004 WL 1043149 (Bankr.E.D. Pa., Apr 26, 2004) (hereinafter "*MAICO I* "). I incorporate those uncontested facts herein.

FN3. In a separate adversary action, *Asousa Partnership v. Pennexx Foods, Inc. f/n/a Pinnnacle Foods, Inc. (In re Asousa),* Adv. No. 01-974 (" *Asousa I* "), Debtor obtained a judgment against Pinnacle for, *inter alia,* damage to the Premises caused by Pinnacle (the "Property Damage"). The Property Damage was liquidated in *Asousa I* at $686,430.31. Order dated September 2, 2003 (the "Damages Order").

FN4. All of the parties simply attached documents to their respective motions and opposing memoranda without adequate affidavit support. This includes their respective copies of the Policy, which appear to be identical and bearing bates numbering MAI000697-MAI00866. No party has objected to any document submitted with the motions before the Court. "As is true with other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged." 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2722, at 384 (1998). *Accord Johnson v. United States Postal Service,* 64 F.3d 233, 237 (6th Cir.1995) (ruling that the "failure to object to evidentiary material submitted in support of a summary judgment motion constitutes a waiver of those objections."); *H. Sand & Co., Inc. v. Airtemp Corporation,* 934 F.2d 450, 454-55 (2d Cir.1991) (Rule 56 does not require parties to authenticate documents "where appellee did not challenge the authenticity of the documents in the district court."); *Dautremont v. Broadlawns Hospital,* 827 F.2d 291, 294-95 (8th Cir.1987) (affirming summary judgment where appellant failed to object in district court to its consideration of documents not in compliance with Rule 56 and failed to demonstrate that district court's consideration of documents constituted reversible error); *Giovacchini v. Perrine (In re Giovacchini),* 1995 WL 80102, at *3 n. 1 (E.D.Pa. Feb.27, 1995) (*citing* Federal Practice and Procedure § 2722) (holding that unauthenticated medical reports would be considered in ruling on motion for summary judgment since no objection was raised thereto). All subsequent exhibit citations reference those attached to the C & K Motion unless otherwise identified.

FN5. In contrast, the general liability portion of the Policy has been amended to include other parties such as Pinnacle's vendors. Exhibit O at MAI00739, 746 (Endorsements adding Fleming Companies and Smithfield Foods).

FN6. The Agent Agreement is actually between Chapel and several insurance companies who appear to be part of the PMA Group, including MAICO. Though the parties have never explained to the Court the relationship between Kaminsky and Chapel, the record indicates that Kaminsky's sole shareholder, Edward Kaminsky, also has ownership in Chapel. Kaminksy places all its insurance through the Chapel entity. Exhibit 9 to MAICO Motion, Kaminsky Dep. at 12-14. For the purposes of this litigation, the parties have acted as though C & K is a single unified entity. I will do the same in this memorandum opinion.

FN7. The parties are in agreement that Pennsylvania

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



law governs the claims in this adversary proceeding.

FN8. Section 329 of the Restatement (Second) of Agency states in pertinent part:
A person who purports to make a contract, conveyance or representation on behalf of another who has full capacity but whom he has no power to bind, thereby becomes subject to liability to the other party thereto upon an implied warranty of authority, unless he has manifested that he does not make such warranty or the other party knows that the agent is not so authorized.
In any case, Pennsylvania's application of liability against agents predates its adoption of the Restatement. *Kroeger v. Pitcairn,* 101 Pa. 311, 1882 WL 13522, at *4 (Pa.1882) (holding insurance agent liable under insurance policy where agent misstated, without authority, applicability of policy exclusion).

FN9. The Pennsylvania Supreme Court has yet to address the economic loss doctrine.

FN10. C & K's citation to *Chase Scientific Research, Inc. v. NIA Group, Inc.,* 96 N.Y.2d 20,30, 749 N.E.2d 161, 167, 725 N.Y.S.2d 592, 598 (2001) is simply not persuasive given the existence of Pennsylvania law cited by Debtor below. Moreover, the *Chase* court was defining the term "professional" for the purposes of a specific New York statute, taking into account the history and purpose of that statute. *Id.*

FN11. Section 552 provides as follows:
Information Negligently Supplied for the Guidance of Others
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

FN12. The Third Circuit Court of Appeals reasoning was straightforward: "where there is privity in contract between two parties, and where the policies behind tort law are not implicated, there is no need for an additional tort of negligent misrepresentation." 66 F.3d at 620.

FN13. The Superior Court did not address privity or *Duquesne Light Co.* in its analysis of the economic loss doctrine, but the facts clearly showed that privity was lacking.

FN14. While C & K correctly notes that *Phar-Mor* expressly holds otherwise, that court recognized *Eisenberg* and conceded that its position on privity was a minority viewpoint. 892 F.Supp. at 691-92.

FN15. Both a breach of contract and negligence claims require proof of causation. *See e.g. Mietelski v. Banks* 854 A.2d 579, 583 (Pa.Super.2004) ("causation is an essential element of a negligence action"); *Logan v. Mirror Printing Co.,* 410 Pa.Super. 446, 600 A.2d 225, 226 (1991) ("[i]n order to recover for damages pursuant to a breach of contract the plaintiff must show a causal connection between the breach and the loss").

FN16. I reject MAICO's assertion that this Court has already determined that adding an additional insured constitutes a new risk so as to require MAICO approval. MAICO relies on dicta in my prior memorandum opinion in *Asousa I,* where I simply rejected Debtor's unsupported assumption on its summary judgment motion that such an addition does *not* constitute new risk:
The Debtor appears to imply that simply adding the Debtor to the existing Policy was not binding a new risk so as to require a quote from MAICO. Debtor's Mem. at 37. Not only does the Debtor fail to provide any authority, but the statement is counterintuitive. If, for example, the proposed additional insured had an arson conviction or history of property insurance losses, the addition of that party would clearly be an additional and significant risk.
2004 WL 1043149 at *6 n. 9. My offhand statement that an argument is counterintuitive is a far cry from an affirmative finding of law.

2005 WL 775429 (Bankr.E.D.Pa.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. Indiana, Indianapolis Division.
**ERNST & YOUNG LLP, Charles Roach, Appellants,**
**v.**
**BAKER O'NEAL HOLDINGS, INC., American Public Automotive Group, Inc ., Appellees.**
**BAKER O'NEAL HOLDINGS, INC. and American Public Automotive Group, Inc., Plaintiffs,**
**v.**
**ERNST & YOUNG LLP and Charles J. Roach, Defendants.**
**No. 1:03-CV-0132-DFH.**

March 24, 2004.

Brian W. Welch, Scott R. Leisz, Bingham McHale, Indianapolis, IN, John J. Tharp, Jr., Stanley J. Parzen, Mayer Brown Rowe & Maw, Chicago, IL, Roger E. Zuckerman, Steven M. Salky, Aitan D. Goelman, Zuckerman Spaeder LLP, Washington, DC, for Appellants.

Andrew W. Hull, Sean T. White, Hoover Hull Baker & Heath LLP, Indianapolis, IN, for Appellees.

ENTRY ON PENDING MOTIONS

HAMILTON, J.

***1** Defendants Ernst & Young and Charles J. Roach, an Ernst & Young partner, provided accounting services to plaintiffs Baker O'Neal Holdings, Inc. (BOH) and its wholly owned subsidiary, American Public Automotive Group, Inc. (APAG). BOH and APAG have sued defendants on claims arising from their alleged role in participating in or aiding and abetting the fraudulent transfer of assets from BOH and APAG by James O'Neal, President and Chief Executive Officer of BOH and APAG. O'Neal is alleged to have transferred more than $3.7 million from BOH and APAG under the guise of officer "loans" he could not and did not repay.

BOH and APAG both filed for bankruptcy protection on October 9, 1998, tolling any applicable statutes of limitations. The bankruptcy court confirmed the debtors' plan of reorganization on February 23, 2000. This action was filed as an adversary proceeding within the bankruptcy proceeding. The reference to the bankruptcy court was withdrawn so that the case would proceed in the district court.

The case is now before the court on plaintiffs' objection to the magistrate judge's denial of leave to file a Fourth Amended Complaint and defendants' motion to dismiss for failure to state a claim upon which relief can be granted. For the reasons discussed below, plaintiffs' objection is sustained, and plaintiffs are granted leave to file the Fourth Amended Complaint. Defendants' motion to dismiss is granted in part and denied in part.

I. *Plaintiffs' Objection to Magistrate Judge's Order Denying Leave to File Fourth Amended Complaint*

Plaintiffs amended their complaint three times prior to this entry. Two amendments came while the parties were contesting before the bankruptcy court defendants' motion to compel arbitration. After the case arrived in the district court, the magistrate judge permitted plaintiffs to file a third amended complaint on May 29, 2003. In July 2003, defendants filed their pending motion to dismiss Counts VI to XVII. That motion to dismiss has been defendants' first substantive response to plaintiffs' claims.

As part of their response to the motion to dismiss, plaintiffs sought leave to file a Fourth Amended Complaint. The magistrate judge denied plaintiffs' motion to file a fourth amended complaint on October 28, 2003. Plaintiffs objected pursuant to 28 U.S.C. § 636(b)(1), which authorizes a district judge to reconsider such a decision if the magistrate judge's decision was clearly erroneous or contrary to law. Because the proposed Fourth Amended Complaint is plaintiffs' first response to defendants' first substantive attack on the plaintiffs' claims, the court finds that the magistrate judge's decision was clearly erroneous and contrary to law.

Plaintiffs' proposed Fourth Amended Complaint

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

makes a number of substantive changes. It expands on the allegations made in the previous version of the complaint, but does not assert any new causes of action. The proposed complaint adds new allegations designed to support plaintiffs' theory that a fiduciary relationship existed between Ernst & Young and BOH and APAG. The Fourth Amended Complaint also alleges that plaintiffs were fraudulently induced to enter into the engagement letters that formed the contract between the parties regarding Ernst & Young's accounting and financial services. Finally, the Fourth Amended Complaint removes language tending to suggest that BOH and APAG were aware of or participated in the fraudulent transfer scheme allegedly undertaken by O'Neal and Roach.

***2** Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "shall be freely given when justice so requires," but leave to amend is not automatic. *Johnson v. Methodist Medical Ctr. of Ill.,* 10 F.3d 1300, 1303 (7th Cir.1993) (affirming denial of leave to file third amended complaint). "In *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Court determined that leave to amend should be granted under Federal Rule of Civil Procedure 15(a) unless there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." ' *Ferguson v. Roberts,* 11 F.3d 696, 706 (7th Cir.1993); accord, *Perrian v. O'Grady,* 958 F.2d 192, 194 (7th Cir.1992) (affirming denial of leave to amend). When determining leave to amend, the court should also consider judicial economy. *Perrian,* 958 F.2d at 195; *Bohen v. East Chicago,* 799 F.2d 1180, 1184-85 (7th Cir.1986). All of those factors must be balanced against any potential harm that could befall a moving party if leave is not granted. 3 Moore's Federal Practice § 15.15(1) (3d ed.2003).

After reviewing the course of the proceedings, the court sees no valid reason for denying leave to file the Fourth Amended Complaint. In considering the *Foman* factors, first, there has been no undue delay by plaintiffs. Substantial time has passed since the suit was first filed in December 1999. Most of this delay, however, is attributable to the parties' dispute as to whether plaintiffs' claims should be arbitrated. That dispute, which was the subject of an interlocutory appeal, lasted into 2003.

Second, there is no pattern of repeated failures to cure deficiencies by previous amendments. Although this will be plaintiffs' fourth amended complaint, it is still their first request to amend in response to a challenge to the sufficiency of their pleading. Plaintiffs' request to amend is a direct response to defendants' motion to dismiss, which is the first time that defendants have attacked the complaint on the merits. Fairness requires that plaintiffs be allowed an opportunity to cure the perceived defects in their complaint. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman,* 371 U.S. at 182.

The court also finds no evidence of bad faith on the part of plaintiffs in proposing the amendment. There are of course serious issues on the merits here. Those issues should not prevent plaintiffs from responding to the motion to dismiss, including deletion of allegations that plaintiffs contend the defendants have misconstrued in an effort to secure dismissal.

***3** Defendants are not significantly prejudiced by allowing plaintiffs to amend. The arguments presented in defendants' motion to dismiss are still relevant because plaintiffs' substantive claims have not changed. [FN1] Indeed, the majority (if not all) of the changes made in the Fourth Amended Complaint are consistent with the allegations of the Third Amended Complaint. Under these circumstances, BOH and APAG could have asserted these new allegations in a brief, without seeking leave to amend their complaint. See *Hrubec v. Nat'l R.R. Passenger Corp.,* 981 F.2d 962, 963-64 (7th Cir.1992) (in responding to a motion to dismiss, "[a] plaintiff need not put all of the essential facts in the complaint. He may add them by affidavit or brief--even a brief on appeal."); see also *Chavez v. Illinois State Police,* 251 F.3d 612, 650 (7th Cir.2001) (stating that "the well-established law of this circuit provides that, when reviewing a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



dismissal under Rule 12(b)(6), 'we will consider new factual allegations raised for the first time on appeal provided they are consistent with the complaint ." '), quoting *Veazey v. Communications & Cable of Chicago, Inc.,* 194 F.3d 854, 861 (7th Cir.1999), quoting in turn *Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434, 439 (7th Cir.1994).

FN1. Because the court grants plaintiffs' motion to amend the complaint, defendants' motion to dismiss the Third Amended Complaint technically is moot. However, to prevent a wasteful repetition of the briefing, the court's ruling today applies to the Fourth Amended Complaint.

The only new allegations that defendants contend are inconsistent with the Third Amended Complaint are those relating to the fraudulent inducement theory. The new allegations respond to a partial affirmative defense. With rare exceptions, a plaintiff is not required to anticipate affirmative defenses in a complaint. *U.S. Gypsum Co. v. Indiana Gas Co.,* 350 F.3d 623, 626 (7th Cir.2003); accord, *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). When a defense is raised, the plaintiff is entitled to respond. These allegations do no more than that. To the extent they are arguably inconsistent with other allegations in the complaint, which assume the validity of the engagement letters as contracts, the plaintiff is entitled to plead in the alternative. See Fed.R.Civ.P. 8(e)(2). Moreover, since services were provided and money was paid, there clearly was a contract for professional services that could be the basis of a professional malpractice claim, even if one party's agreement to that contract was fraudulently induced and even if there is a dispute concerning the specific terms of the contract.

The court sees no prejudice to defendants by allowing the amendment. The court recognizes that defendants have spent significant time in drafting their motion to dismiss. Such effort, however, does not amount to "prejudice" sufficient to deny a plaintiff leave to amend his pleadings at least once in response to those briefs. As a general rule, a plaintiff whose complaint has been dismissed by the court is ordinarily entitled to amend it to try to cure the defects, unless it is apparent that such an effort would be futile. *E.g., Hart v. Bayer Corp.,* 199 F.3d 239, 247 n. 6 (5th Cir.2000) (district court erred by denying leave to amend); *Frey v. City of Herculaneum,* 44 F.3d 667, 672 (8th Cir.1995) (reversing denial of leave to amend); *Polich v. Burlington Northern, Inc.,* 942 F.2d 1467, 1472 (9th Cir.1991) (reversing denial of leave to amend). That's one major reason why Rule 12(b)(6) motions often seem to be more effective for educating the opposing party rather than narrowing the claims or issues. As explained below, however, the vast majority of the defendants' motion to dismiss still applies to the Fourth Amended Complaint. Under these circumstances, defendants are not unduly prejudiced by plaintiffs' proposed amendments to the complaint.

***4** Upon consideration of all the factors under *Foman v. Davis,* therefore, the court sees no sound basis for denying plaintiffs leave to amend their complaint. The court sustains the plaintiffs' objection to the magistrate judge's order denying such leave, and the Fourth Amended Complaint shall be deemed filed today.

II. *Motion to Dismiss*

The Fourth Amended Complaint includes three groups of claims. Counts I to V seek to treat the fees that were paid by BOH and APAG to Ernst & Young as avoidable preferences or fraudulent conveyances, which BOH and APAG are entitled to recover. Defendants have not challenged these counts in their motion to dismiss.

Counts VI to XI and XVII assert a variety of common law claims against defendants, including breach of fiduciary duty, fraud, constructive fraud, civil action by a crime victim, negligence and breach of contract. Defendants have moved to dismiss all of these counts arguing that the doctrine of *in pari delicto* bars BOH and APAG from asserting these common law claims. Defendants additionally contend that the one-year statute of limitations period of the Indiana Accountancy Act of 1993 applies here to bar plaintiffs' common law claims. Finally, defendants attack several of the common law claims on an individual basis.

Counts XII to XVI allege that the O'Neal loan transfers were avoidable preferences and fraudulent conveyances. Defendants have moved to dismiss these counts on the ground that they were neither transferees nor beneficiaries of the transfers, so they cannot be held liable under the federal Bankruptcy Act or the Indiana Uniform Fraudulent Transfer Act

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



(IUFTA).

For the reasons explained below, the court denies defendants' motion to dismiss with respect to Counts VI to XI and XVII, and grants defendants' motion to dismiss with respect to Counts XII to XVI.

A. *Factual Allegations*

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations liberally and drawing all inferences in the light most favorable to the plaintiffs. See, *e.g., Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 977-78 (7th Cir.1999); *Zemke v. City of Chicago,* 100 F.3d 511, 513 (7th Cir.1996); *McMath v. City of Gary,* 976 F.2d 1026, 1031 (7th Cir.1992).

For purposes of the motion, the court determines whether the plaintiffs might be able to prove any set of facts consistent with the allegations that would give the plaintiffs a right to relief. *Wudtke v. Davel,* 128 F.3d 1057, 1061 (7th Cir.1997), citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Dismissal is appropriate only if it appears beyond a doubt that the plaintiffs can prove no facts that would entitle them to relief. *Kennedy v. National Juvenile Detention Ass'n,* 187 F.3d 690, 694 (7th Cir.1999).

For the purpose of considering this motion, the court accepts the following allegations as true. Patrick Baker is the sole shareholder and Chairman of the Board of Directors of both BOH and APAG. APAG was created with the objective of developing and operating auto malls. The BOH and APAG business plan called for the purchase of automobile dealerships owned by Donald Massey. To this end, BOH and APAG raised money through loans from investors who were given promissory notes that were convertible into APAG stock. The notes were personally guaranteed by Baker and O'Neal.

***5** O'Neal and Charles Roach had a close relationship prior to O'Neal's employment with BOH and APAG. In the late 1980s and early 1990s, O'Neal and Roach had both been officers of the Arnold Palmer Automotive Group (here, "the Palmer Group"). While with the Palmer Group, O'Neal had misappropriated corporate assets for his own personal use, including a significant amount of cash, which was taken under the guise of officer loans. The owners of the Palmer Group eventually obtained a multi-million dollar judgment against O'Neal for these misappropriations. Arising from his tenure with the Palmer Group, O'Neal was also prosecuted by the State of Florida on felony counts for theft of more than $300,000 in state sales tax funds that were held in trust for the state. Roach, who also worked for the Palmer Group during this period, was aware of O'Neal's malfeasance and the judgments against him.

After leaving the Palmer Group, O'Neal joined BOH and APAG. Roach left the Palmer Group and joined Ernst & Young as a partner. Beginning in 1994, O'Neal hired Roach and Ernst & Young to perform accounting, consulting and tax services for BOH and APAG. During this time, Roach operated as the *"de facto* CFO for both BOH and APAG." Cplt. ¶ 36. O'Neal directed all accounting-related questions to Roach. O'Neal directed BOH's and APAG's bookkeeper Paul Mohabir to follow Roach's instructions on all financial matters. Roach prepared BOH's tax returns in 1994 and 1995, and prepared APAG's tax returns in 1995. In 1996, BOH and APAG retained Ernst & Young to audit and report on APAG's financial statements and the consolidated financial statements of the Massey auto dealership group. In 1997, BOH and APAG retained Ernst & Young to act as its exclusive financial advisor in the majority acquisition of Massey's auto dealership group.

At BOH and APAG, O'Neal removed large sums of money from the business. The transfers of cash were recorded as officer loans. Baker claims to have had no knowledge of these transfers. Roach had O'Neal execute promissory notes to account for the loan transactions. Roach had these loans listed as company assets in the BOH and APAG financial statements and tax filings even though he knew that O'Neal had no income and could not afford to repay the loans. Roach was aware of O'Neal's insolvency. In 1996 Roach had prepared a financial affidavit for O'Neal in an effort to show Florida probation officials that he should be given leniency on the state tax charges because he was unable to repay the stolen money. The affidavit showed no unencumbered assets, and liabilities exceeding $18

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

