Slip Copy
(Cite as: 2005 WL 525401, *7 (E.D.Pa.))

Page 8

activity. As paragraph 131 for example avers: "[o]n information and belief, the Defendants (along with Jenkens) conspired to devise and promote the COBRA strategy for the purpose of receiving and splitting millions of dollars in fees ... The receipt of those fees was the primary, if not sole, motive in the development and execution of the transaction ... Indeed, Defendants devised the transaction and agreed to provide a veneer of legitimacy to each other's opinion as to the lawfulness and tax consequences of the COBRA strategy by agreeing to the representations that would be made and to issue the allegedly "independent" opinions before potential clients were solicited ..." We therefore deny the moving defendants' motion to dismiss Plaintiffs' claim under Section 1962(d).

B. Plaintiffs' Fraud and Negligent Misrepresentation Claims

Movants also seek the dismissal of the plaintiffs' claims under state law for, *inter alia,* fraud and negligent misrepresentation.

To state a claim for fraud which satisfies the exacting standard of Fed.R.Civ.P. 9(b), the plaintiff must "plead (1) a specific false representation of material fact, (2) knowledge by the person who made it of its falsity, (3) ignorance of its falsity by the person to whom it was made, (4) the intention that it should be acted upon, and (5) that the plaintiff acted upon it to his damage." *U.S. ex. Rel. Atkinson v. Pennsylvania Shipbuilding Co.,* 255 F.Supp.2d 351, 407 (E.D.Pa.2002), quoting *Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 284 (3d Cir.1992). *See Also, Brickman Group Ltd. v. CGU Insurance Co.,* No. 754 EDA 2004, 2004 Pa.Super. LEXIS 4936, *28 (Dec. 29, 2004) ("The essential elements of a cause of action for fraud or deceit are a misrepresentation, a fraudulent utterance thereof, an intention to induce action thereby, justifiable reliance thereon and damage as a proximal result.")

A cause of action for fraudulent misrepresentation is similarly comprised of the following elements: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result." *Martin v. Lancaster Battery Co.,* 530 Pa. 11, 18, 606 A.2d 444, 448 (1992), quoting *Scaife Co. V. Rockwell-Standard Corp.,* 446 Pa. 280, 285, 285 A.2d 451, 454 (1971), *cert. denied,* 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1972).

*8 By way of their motions, Moving Defendants argue that Plaintiffs have also failed to allege sufficiently specific facts to plead fraud or negligent misrepresentation. Reading the complaint as a whole and paragraphs 231-248 in particular, we find that the gravamen of plaintiffs' averments is (1) that the defendants, including the movants here, acting in concert, knowingly and specifically misrepresented to the plaintiffs that, *inter alia,* the COBRA tax strategy was a legal tax shelter and/or use of a tax code "loophole" which had been independently reviewed by the Jenkens law firm and by the various accountant defendants and found to be legal; (2) that Defendants made these misrepresentations with the purpose of inducing the plaintiffs to engage in the strategy and thereby generate fees of between 5 1/2 % and 9 1/2 % of the tax savings being sought, (3) that the plaintiffs justifiably relied upon these misrepresentations (given the defendants' reputations and the relationships which plaintiffs had shared with them) and engaged in the tax strategy (4) with the result that they suffered extreme financial damages by having to pay back taxes, penalties and interest when the IRS disallowed the losses which the plaintiffs had taken on their returns. These averments are, we find, more than sufficient to put the defendants on notice of what conduct they are charged with having committed and to satisfy the particularity requirements of both Federal and Pennsylvania law. Accordingly, Plaintiffs' seventh and eighth causes of action shall be allowed to stand.

C. Plaintiffs' Breach of Contract and Professional Negligence Claims

Movants here also seek the dismissal of the plaintiffs' claims for breach of contract and professional negligence for failure to plead any facts which could support a finding that they negligently performed the services for which they were hired and because the complaint fails to indicate whether the alleged contract between them and the Heller plaintiffs is oral or written. Defendants also assert that the breach of contract claim should be dismissed as a "mislabeled negligence claim" because it is not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
(Cite as: 2005 WL 525401, *8 (E.D.Pa.))

Page 9

based on a breach by movant of any specific provision of the contract between them.

Generally speaking, to sustain a claim for breach of contract, a plaintiff must allege: (1) the existence of a contract, (2) including its essential terms, (3) a breach of a duty imposed by the contract and (4) resultant damage. *Pittsburgh Construction Co. v. Griffith,* 834 A.2d 572, 580 (Pa.Super.2003); *Corestates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa.Super.1999). Contracts for professional, legal and accounting services contain, as an implied term of the contract, a promise by the attorney or accountant to render legal services in accordance with the profession at large. *See, Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108, 115 (1993); *Gorski v. Smith,* 2002 Pa.Super. 334, 812 A.2d 683, 694 (2002); *Koken v. Steinberg,* 825 A.2d 723, 730 (Pa.Cmwlth.2003). Thus, a breach of contract claim may properly be premised on a professional's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large. *Gorski,* 812 A.2d at 694.

*9 Furthermore, under Pennsylvania law, professional negligence actions can be maintained only against defendants who are licensed professionals such as (1) health care providers as defined by Section 503 of the Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. § 1303.503; (2) accountants; (3) architects; (4) chiropractors; (5) dentists; (6) engineers or land surveyors; (7) nurses; (8) optometrists; (9) pharmacists; (10) physical therapists; (11) psychologists; (12) veterinarians; or (13) attorneys. *Gilmour v. Bohmueller,* Civ. A. No. 04-2535, 2005 U.S. Dist. LEXIS 1611 (E.D.Pa. Jan. 27, 2005); Pa.R.C.P. 1042.1. In order to establish a claim for malpractice, a plaintiff/aggrieved client must demonstrate three basic elements: (1) employment of the professional or other basis for a duty; (2) the failure of the professional to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of damage to the plaintiff. *Kituskie v. Corbman,* 552 Pa. 275, 281, 714 A.2d 1027, 1029 (1998); *Rizzo v. Haines,* 520 Pa. 484, 499, 555 A.2d 58, 65 (1989).

In this case, the plaintiffs allege that defendants Orndorf and Beard Miller were the longtime accountants for the Heller plaintiffs and that in response to the Heller plaintiffs' request for tax planning advice, the Heller plaintiffs and the Beard Miller defendants effectively entered into a contract for professionally competent accounting advice. Thereafter, these defendants introduced plaintiffs to the COBRA strategy by referring them to Defendants Dudzinsky, BDO Seidman and representatives of Jenkens & Gilchrist and the Deutsche Bank defendants and that Orndorf participated in several teleconference calls between the Hellers and these other parties. In so doing, the complaint alleges that Orndorf and Beard Miller disregarded their obligations to meet all applicable standards of care and to comply with all applicable rules of professional conduct and instead provided plaintiffs with advice, opinions, recommendations, representations and instructions that they either knew or reasonably should have known to be wrong thereby breaching their contract with plaintiffs and committing malpractice. These averments are, we find, more than adequate to plead claims for contractual breach and professional malpractice and we therefore deny the motion to dismiss these claims against Moving Defendants.

D. Plaintiffs' Claim for Breach of Fiduciary Duty

The Beard Miller defendants also seek dismissal of plaintiffs' sixth claim for breach of fiduciary duty.

Generally speaking, a fiduciary relationship arises under Pennsylvania law where "one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust on the other. *Becker v. Chicago Title Insurance Co.,* Civ. A. No. 02-2292, 2004 U.S. Dist. LEXIS 1988 at *22 (E.D.Pa. Feb. 4, 2002), quoting *L & M Beverage Co. v. Guiness Import Co.,* 1995 U.S. Dist. LEXIS 19443 at *13-14 (E.D.Pa. Dec. 29, 1995). *See Also, Etoll, Inc. v. Elias/Savion Advertising, Inc.,* 2002 Pa.Super. 347, 811 A.2d 10, 22 (Pa.Super.2002). Thus, those who give advice in business may engender confidential relations if others, by virtue of their own weakness or inability, the advisor's pretense or expertise, or a combination of both, invest such a level of trust that they seek no other counsel. *Basile v. H & R Block,* 2001 Pa.Super. 136, 777 A.2d 95, 102 (Pa.Super.2001). In Pennsylvania, a claim for breach of fiduciary duty must allege that: (1) the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



defendant acted negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) the plaintiff suffered injury; and (3) the defendant's failure to act solely for the plaintiff's benefit was a real factor in bringing about plaintiff's injuries. *Gilmour,* 2005 U.S. Dist. LEXIS at *30.

*10 In reviewing the plaintiffs' complaint, we note that it alleges that Mr. Orndorf and Beard Miller occupied a position of trust in relation to the Heller plaintiffs by virtue of their having long been the Hellers' accountants and that the Heller plaintiffs had placed their confidence in these defendants to advise them appropriately and to act in their best interests. The complaint further avers that the moving defendants either intentionally or negligently disregarded this relationship when they failed to act in good faith and advised Plaintiffs to enter into the COBRA transactions, that as a result of the defendants' counsel and advice the plaintiffs did engage in the COBRA transactions with the result that they suffered serious financial harm by having to pay, *inter alia,* back taxes and significant penalties and interest to the IRS. As we find these allegations are sufficient to state a cause of action against the movants here for breach of fiduciary duty, the motion to dismiss this claim is denied.

E. Plaintiffs' Civil Conspiracy Claim

Movants also ask that the plaintiffs' claim for civil conspiracy be dismissed. For the following reasons, this request too, shall be denied.

Civil conspiracy is the agreement of two or more entities or individuals to engage in an unlawful act, or an otherwise lawful act by unlawful means when some overt act is taken in furtherance of the conspiracy and some actual legal harm accrues to the plaintiff. *Doltz v. Harris & Associates,* 280 F.Supp.2d 377, 389 (E.D.Pa.2003). To prove a civil conspiracy under Pennsylvania law, a plaintiff must show (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuit of the common purpose and (3) actual legal damage. *Id. See Also, Flynn v. Health Advocate, Inc.,* Civ. A. No. 03-3764, 2004 U.S. Dist. LEXIS 293 at *17 (E.D.Pa. Jan. 13, 2004).

In reading the complaint in this matter as a whole, we find that it more than amply states a cause of action for civil conspiracy against the moving defendants here in that movants are alleged to have acted in concert with all of the other defendants and attorneys and representatives from Jenkens & Gilchrist to persuade their clients (the Heller plaintiffs) to engage in an illegal tax strategy. The complaint further alleges that in pursuit of this goal, Defendants Orndorf and Beard Miller, *inter alia,* participated in phone conferences with plaintiffs and the other defendants and advised the plaintiffs that the strategy was lawful with the result that the plaintiffs were damaged by having to pay back taxes, interest and penalties to the IRS. Thus, the motion to dismiss the civil conspiracy claim is also denied.

F. Plaintiffs' Declaratory Judgment Claim

Finally, Movants assert that the plaintiffs' claim for declaratory judgment should be dismissed on the grounds that the relief which it seeks is merely duplicative of the relief sought under the other counts of the complaint. However, the only caselaw which defendants cite in support of this argument is from the seventh circuit and provides that dismissal on this basis is discretionary with the court. *See, Yellow Cab Co. V. City of Chicago,* 186 F.2d 946, 950-951 (7th Cir.1951); *Rayman v. Peoples Savings Corp.,* 735 F.Supp. 842, 851-853 (N.D.Ill.1993). Given that our independent research reveals no such authority from the Third Circuit and even accepting this Seventh Circuit authority, we decline to exercise our discretion in favor of dismissal on these grounds in light of the undeveloped state of the record in this case. Accordingly, the declaratory judgment claim shall likewise be permitted to stand.

*11 An order follows.

### ORDER

AND NOW, this 3rd day of March, 2005, upon consideration of the Motion of Defendants Steven D. Orndorf and Beard Miller Company, LLP to Dismiss Plaintiffs' Complaint and Plaintiffs' Response thereto, it is hereby ORDERED that the Motion is GRANTED IN PART and DENIED IN PART and Plaintiffs' Third Claim for Violating and Seeking to and Aiding and Abetting a Scheme to Violate 18 U.S.C. § 1962(c) is DISMISSED with prejudice.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy
(Cite as: 2005 WL 525401, *11 (E.D.Pa.))

Page 11

In all other respects the Motion is DENIED.

2005 WL 525401 (E.D.Pa.), 95 A.F.T.R.2d 2005-1372, RICO Bus.Disp.Guide 10,838

**Motions, Pleadings and Filings (Back to top)**

. 2:04cv03571 (Docket)
(Jul. 28, 2004)

**END OF DOCUMENT**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.  
1997 WL 476455 (E.D.Pa.), RICO Bus.Disp.Guide 9379  
(Cite as: 1997 WL 476455 (E.D.Pa.))  
▷

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.  
**Linda S. KAISER, et al.**  
v.  
**Allen W. STEWART, et al.**  
No. Civ. A. 96-6643.

Aug. 19, 1997.

Gerald E. Arth, Ira B. Silverstein, Lisa A. Carney, Fox Rothschild, O'Brien & Frankel, LLP, Phila, PA, for Linda S. Kaiser, Insurance Commisioner of the Commonwealth of Pennsylvania, in her capacity as Liquidator of Summit National Life Insurance Company c/o Office of Liquidations and Special Funds, Linda S. Kaiser, Insurance Commisioner of the Commonwealth of Pennsylvania, in her capacity as Liquidator of EBL Life Insurance Company c/o Office of Liquidations and Funds, Plaintiff.

James A. Young, Mary Ellen Nepps, Timothy C. Russell, Kenneth I. Trujillo, Christie, Pabarue, Mortensen and Young, Phila, PA, Creed C. Black, Jr., Phila, PA, Elizabeth J. Chambers Cozen and O'Connor, Phila, PA, Daniel J. Digiacomo, Digiacomo & Baffa, Phila, PA, for Defendants.

Kenneth I. Trujillo, Christie, Pabarue, Mortensen and Young, Phila, PA, Linda Dale Hoffa, U.S. Attorney's Office, Phila, PA, Catherine M. Recker, Welsh and Recker, P.C., Phila, PA, Wiliam Kaufmann, United States of America, Robert E. Welsh, Jr., Movant.

Bruce R. Genderson, John W. Vardaman, Gregory B. Craig, George A. Borden, Steven M. Umin, Williams and Connolly, Washington, DC, John H. Lewis, Jr., Morgan, Lewis and Bockius, Phila, PA, Morgan, Lewis & Bockius, L.L.P., David L. Harbaugh, Defendant

Trust Under Agreement Dated January 1, 1993; Allen W. Stewart; Settlor F/B/O, Geofrey S. Stewart, Joseph A. O'Cannor, Trustee, Philadelphia, PA, Prose.

Trust Under Agreement Dated January 1, 1993; Allen W. Stewart, Settlor F/B/O William Tamaccio, Joseph A. O'Cannor, Jr., Trustee, Philadelphia, PA, Prose.

Page 1

MEMORANDUM

BARTLE, District Judge.

*1 This is a civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.. §§ 1961 *et seq.*, with several pendent state law claims.. Plaintiff Linda Kaiser, the Insurance Commissioner of Pennsylvania ("Insurance Commissioner"), alleges that defendant Allen Stewart ("Stewart"), with the help of the other defendants, masterminded a scheme to acquire and siphon-off the assets of Summit National Life Insurance Company ("SNLIC") and Equitable Beneficial Life Insurance Company ("EBL"), two Pennsylvania domiciled insurance companies now in liquidation.

I

In an Order dated May 21, 1997, this court dismissed the first amended complaint of the Insurance Commissioner who had brought suit in her capacity as Liquidator of the two insurance companies. We held that she did not have standing to pursue the RICO claims for the persons on whose behalf she was suing, namely creditors, policyholders, shareholders, and members of SNLIC and EBL. Any injuries suffered by these persons were not proximately caused by the defendants' alleged RICO violations. That is, these persons were not direct victims and consequently did not have a claim under RICO. *See Holmes v. Sec. Investor Protection Corp.,* 503 U.S. 258, 268-69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). As we explained, the only direct victims, as set forth in the amended complaint, were the two insurers themselves. Unfortunately, the Insurance Commissioner had not sued on their behalf. Since no federal claim existed, we declined to exercise supplemental jurisdiction over her state law claims. 28 U.S.C. § 1367; *see Kaiser v. Stewart,* 965 F.Supp. 684 (E.D.Pa.1997).

Presently before the court is the motion of the Insurance Commissioner for reconsideration of our May 21, 1997 Order. She does not now contest our analysis on standing. Instead, she argues that we misread her amended complaint because, in her view, the insurers were included as victims on whose behalf she had instituted the action. We

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.  
(Cite as: 1997 WL 476455, *1 (E.D.Pa.))

Page 2

disagree. Her amended complaint clearly stated that she sought "to prosecute any action which may exist on behalf of the creditors, members, policyholders or shareholders" of SNLIC and EBL. Reinforcing this averment, she cited the statutory provision under Pennsylvania law authorizing her to act for these specific classes of persons. *See* Pa.Stat.Ann. tit. 40, § 221.23(13) (West 1992). [FN1] In contrast, she neither named the insurers themselves as entities for whose benefit she was suing, nor referenced the separate Pennsylvania statutory provisions which authorize her to stand in the insurers' shoes. *See id.* §§ 221.23(6), 221.23(12), 221.26(b). [FN2]

> FN1. This statute states that "[t]he Liquidator shall have the power: ... (13) [t]o prosecute any action which may exist in behalf of the creditors, members, policyholders or shareholders of the insurer against any officer of the insurer, or any other person." Pa.Stat.Ann. tit. 40, § 221.23(13) (West 1992).
>
> FN2. Under § 221.23, the Liquidator has the power to:  
> (6) collect all debts and moneys due and claims belonging to the insurer which it is economical to collect, wherever located, and for this purpose to institute timely action in other jurisdictions, in order to forestall garnishment and attachment proceedings against such debts; to do such other acts as are necessary or expedient to collect, conserve or protect its assets or property  
> as well as to "(12) continue to prosecute and to institute in the name of the insurer or in his own name any and all suits and other legal proceedings, in this Commonwealth or elsewhere, and to abandon the prosecution of claims he deems unprofitable to pursue further." Section 221.26(b) states that:  
> [t]he liquidator may, upon or after an order for liquidation, within two years or such additional time as applicable law may permit, institute an action or proceeding on behalf of the estate of the insurer upon any cause of action against which the period of limitation fixed by applicable law has not expired.

Nonetheless, plaintiff maintains a fall back position.. She requests the opportunity to amend her pleading for a second time to assert that she is suing on behalf of SNLIC and EBL. [FN3] Rule 15 of the Federal Rules of Civil Procedure states in pertinent part that:

> FN3. The Insurance Commissioner also claims that if given the chance to amend, she would "leave no doubt as to the identity of the enterprise(s) for each claim." Liquidator's Mot. for Reconsideration at 9-10. As the enterprises were clearly named in the first amended complaint, we see no need to address whether she can sufficiently identify the enterprises in another pleading.

[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served .... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

*2 It is within a district court's discretion to grant or deny the right to amend a complaint, but reasons must be given for a denial of that right. *Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Reasons to deny an amendment include "undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997).

We first examine whether the Insurance Commissioner's proposed amendment to her amended complaint would be futile. In assessing futility, we apply the standard of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Id. That is, we accept all well-pleaded facts of the proposed amended complaint as true and draw any reasonable inferences from such allegations in plaintiff's favor. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391 (3d Cir.1994). An amendment would be futile if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" contained in the newly amended complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

II  
In accordance with 18 U.S.C. § 1964(c), the Insurance Commissioner has asserted civil RICO claims under 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d). Thus, we must decide whether she would state any valid RICO claims if she were suing on behalf of the victim insurance companies.

A. § 1962(b)  
Count I of the amended complaint alleges a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
(Cite as: 1997 WL 476455, *2 (E.D.Pa.))

Page 3

violation of 18 U.S.C. § 1962(b) which states: [i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Two key terms contained in § 1962(b), "interest" and "control," are not defined in the RICO statute. At least two circuits have opined that control connotes more than just formal control "by acquiring a majority of the stock of a corporation." *See Ikuno v. Yip,* 912 F.2d 306, 310 (9th Cir.1990); *Sutliff, Inc. v. Donovan Co.,* 727 F.2d 648, 653 (7th Cir.1984), *overruled on other grounds by, Hammes v. AAMCO Transmission. Inc.,* 33 F.3d 774, 782 (7th Cir.1994). Several courts have gone so far as to say that control may include involvement in management and designation as an officer or director. *Ikuno,* 912 F.2d at 310; *Cincinnati Gas & Elec. Co. v. General Elec. Co.,* 656 F.Supp. 49, 85 (S.D.Ohio 1986). However, according to one decision in our district, while the control need not be formal such as through ownership of a majority of corporate stock, it still must be similar to "that type of influence over the operation or management of an enterprise." *T.I. Constr. Co., Inc. v. Kiewit Eastern Co.,* No. CIV. A. 91-2638, 1992 WL 195425, at *6 (E.D.Pa. Aug.5, 1992). After an extensive analysis of the statutory language and legislative history, the district court for the Western District of Pennsylvania similarly explained that control under § 1962(b) must be in the "nature of the control one gains through the acquisition of sufficient stock to affect the composition of the board of directors." *Moffatt Enter., Inc. v. Borden, Inc.,* 763 F.Supp. 143, 147 (W.D.Pa.1990). Agreeing with the two district court decisions in this circuit, we conclude that control of an enterprise means more than simply being a manager or a corporate officer. In common parlance, control connotes domination. It signifies the kind of power that an owner of 51% or more of an entity would normally enjoy.

*3 Section 1962(b) also precludes the acquisition or maintenance of "any interest" in an enterprise through racketeering activity. "Interest" has been defined as a "proprietary one." *Guerrier v. Advest, Inc.,* No. CIV. A. 90-709, 1993 WL 90404, at *10 (D.N.J.1993); *T.I. Constr.,* 1992 WL 195425, at *5; *Moffatt,* 763 F.Supp. at 147; *see also Northeast Jet Ctr., Ltd. v. Lehigh-Northampton Airport Auth.,* 767 F.Supp. 672, 683 (E.D.Pa.1991). In *Moffatt,* the court stated that an example of a proprietary interest would be the purchase of stock. *Moffatt,* 763 F.Supp. at 147. The Second Circuit uses a somewhat broader definition, stating that an interest "encompasses all property rights and is understood to refer to a right, claim, title or legal share in the enterprise." *Welch Foods, Inc. v. Gilchrist,* No. CIV. A. 93- 0641E(F), 1996 WL 607059, at *7 (W.D.N.Y. Oct.18, 1996); *accord Morin v. Trupin,* 832 F.Supp. 93, 99 (S.D.N.Y.1993).

Regardless of the exact definition of control or interest, "[m]ere participation in an enterprise does not plead a violation of subsection 1962(b)." *Welch,* 1996 WL 607059, at *7. After specifying a defendant's interest in or control of an enterprise, plaintiff must allege a "nexus between the interest [acquired] and the alleged racketeering activities," that is, it must be shown that the interest or control resulted from racketeering activity. *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1190-91 (3d Cir.1993). "It is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise." *Id.* In addition, plaintiff needs to allege injury resulting from defendants' acquisition of any interest in or control of a RICO enterprise "independent from that caused by the pattern of racketeering." *Id.* This is labeled as an acquisition injury. Under § 1962(b), the enterprise typically is the victim of the racketeering activity. *National Org. for Women v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 804, 127 L.Ed.2d 99 (1994).

The Insurance Commissioner alleges that defendant Stewart, along with defendants David Harbaugh ("Harbaugh"), Morgan, Lewis & Bockius ("ML & B"), Jeanne Fletcher ("Fletcher"), Nellie Morris ("Morris"), Lucille Werts Connors ("Connors"), and several Stewart-owned entities, acquired or maintained an interest in or control of the enterprise, SNLIC. [FN4] Through a pattern of racketeering activity, the defendants acquired or maintained an interest in or control of SNLIC. As a result of the acquisition, SNLIC was rendered insolvent. Afterwards, the defendants continued to disguise the insolvency of SNLIC, by defrauding SNLIC itself, and EBL, among others. To state a viable claim on

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Case 2:00-cv-00684-DSC   Document 124-4   Filed 07/11/2005   Page 8 of 15

Not Reported in F.Supp.
(Cite as: 1997 WL 476455, *3 (E.D.Pa.))

Page 4

behalf of SNLIC and EBL against these defendants under § 1962(b), the Insurance Commissioner must plead that through a pattern of racketeering activity, each defendant acquired or maintained an interest in or control of the enterprise, in this case SNLIC.

> FN4. The Stewart-owned entities named as defendants are: (1) Summit Company; (2) American Insurance Managers, Inc.; (3) Bankers Equity Life Insurance Company; (4) Bankers Equity Realty; (5) Erin Group Administrators, Inc.; (6) Cathedral Life Insurance Company; (7) Pacific Coast Underwriters, Inc.; (8) Covenant Realty, Ltd.; (9) Tartan Management Corporation; (10) Tsunami Corporation; and (11) Roe Corporations I-XXX, being unknown corporate entities owned and/or controlled by Stewart.

*4 In their response to the motion for reconsideration, all defendants assert that the Insurance Commissioner does not and cannot state a § 1962(b) claim against them because she fails to set forth what interest in or control of the enterprise they acquired or maintained and fails to aver a nexus between the racketeering acts and this interest or control. We will address the defendants separately.

The amended complaint asserts that Stewart possessed the kind of control "sufficient [ ] to affect the composition of the board of directors." *Moffatt,* 763 F.Supp. at 147. Paragraph 23 states that "SNLIC was owned and/or controlled by Stewart." Paragraph 29 alleges that "Stewart established an association of confederates, entities, partners and law firms for the purpose of **enabling Stewart** to acquire and maintain control over a complex amalgam of insurance companies and real estate-related interests." (emphasis added). According to the Insurance Commissioner, this association had multiple purposes, including "**to enable Stewart** to acquire and control the businesses," "to mask **Stewart's ownership and control** over the businesses and the association," and "to create high-paying jobs for his confederates." ¶ 29 (emphasis added). The Insurance Commissioner further avers that it was Stewart who "directed and controlled the association by making all strategic decisions which he then conveyed to the other named defendants. These defendants, in turn, directed and controlled the actions of the businesses' employees who carried out their directives." ¶ 30. In essence, the amended complaint claims that it was Stewart himself who dominated SNLIC. Because Stewart allegedly acquired SNLIC as a result of his racketeering acts of mail and wire fraud, he is a proper § 1962(b) defendant.

The Insurance Commissioner asserts that while Stewart was gaining control of SNLIC, he was acting in the "ordinary course of his partnership at ML & B," or "within the scope of [his] authority at ML & B." *See. e.g.* ¶¶ 33, 37. On the theory of respondeat superior liability, she contends that ML & B is also a proper § 1962(b) defendant. The Insurance Commissioner relies on *Petro-Tech, Inc. v. Western Company of North America,* 824 F.2d 1349, 1358, 1361 (3d Cir.1987), a case under §§ 1962(a) and (c), in which the Third Circuit stated that "the doctrine of respondeat superior may be applied under RICO where the structure of the statute does not otherwise forbid it." (emphasis added).

Respondeat superior liability, however, does not fit here. The Insurance Commissioner does not contend that Stewart was acting on behalf of, or at the behest of, ML & B when he was acquiring SNLIC. There is no allegation that ML & B, through Stewart, sought to acquire an interest in or control of SNLIC or that Stewart was merely its agent in this quest. The thrust of the amended complaint is quite to the contrary. Paragraphs 34-46, describing the acquisition of SNLIC, reveal that Stewart was out for himself. Originally, ML & B represented its client, Richard Fanslow ("Fanslow"), in the attempted acquisition of SNLIC. ¶ 35. When the Ohio Insurance Department would not approve the sale, Stewart, "who was then acting and continued to act as Fanslow's attorney in the ordinary course of his partnership at ML & B, proposed stepping into his client's shoes." ¶ 37. The amended complaint further alleges that when Stewart stepped into the transaction he "intended to consummate the scheme on his own behalf," and that he was the "ultimate acquiring principal ." ¶¶ 39, 44 (emphasis added). ML & B simply represented Fanslow, Virick, [FN5] and then SNLIC after Stewart acquired it. ¶ 44. Merely providing legal advice and services to a client does not equal acquiring or maintaining an interest in or control of it. *Morin,* 832 F.Supp. at 99; *Martin v. Brown,* 785 F.Supp. 313, 317-18 (W.D.Pa.1990). The Insurance Commissioner appears to be seeking to recover from ML & B solely because Stewart was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.
(Cite as: 1997 WL 476455, *4 (E.D.Pa.))

Page 5

an ML & B partner and used its resources at the time of his allegedly improper actions. This is not sufficient to create § 1962(b) liability. Plaintiff does not have a claim for relief against ML & B under Count I.

> FN5. Virick was a shell corporation established by Fanslow to acquire SNLIC. ¶ 35.

*5 The Insurance Commissioner also names Fletcher, Morris, and Connors as § 1962(b) defendants. Paragraph 153 of the amended complaint blankety asserts that all the § 1962(b) defendants acquired and maintained interest in and control of the SNLIC enterprise while paragraph 143 states that SNLIC was "controlled by Stewart and his associates until July 26, 1993." To state a RICO claim, however, a pleading must contain more than conclusory allegations of this kind. *See Glessner v. Kenny,* 952 F.2d 702, 714 (3d Cir.1991), *overruled on other grounds by, Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.,* 46 F.3d 258 (3d Cir.1995). The amended complaint simply avers that Fletcher was the treasurer and a director of SNLIC, that Morris was in-house counsel for SNLIC, as well as one of its directors and/or officers, and that Connors was the executive vice president, chief financial officer, and a director of SNLIC. ¶¶ 8-10. Nowhere are these defendants alleged to have owned any stock or otherwise possessed a proprietary interest in this insurance company. Nor is there anything to indicate that they had the type of control of the enterprise that a 51% owner would enjoy. While they may have had power over their subordinates, this is not the kind of control contemplated by § 1962(b). Officers and managers always have some supervisory authority over an enterprise's employees, but this does not mean that they control the enterprise. The amended complaint does not, and with the proposed amendment would not, state a § 1962(b) claim against Fletcher, Morris, and Connors.

As to the Stewart entities, only one allegedly acquired or maintained an interest in or control of SNLIC. Bankers Equity Life Insurance Company (now Bankers Equity Realty), one of the Stewart entities, owned SNLIC until January 1, 1993. ¶ 17c. [FN6] However, the Insurance Commissioner asserts no facts showing that there was a nexus between any racketeering acts and the party's interest in or control of SNLIC. The Stewart entities are not proper § 1962(b) defendants.

> FN6. One of the Insurance Commissioner's briefs asserts that SNLIC was ultimately owned by Summit Company, one of the Stewart entities. Plaintiffs' Omnibus Mem. of Law in Opp'n to the Motions to Dismiss the First Am. Complaint at 6. We cannot find this allegation in the amended complaint, which controls.

Finally, there is the defendant Harbaugh, an attorney with ML & B. According to the amended complaint, the Insurance Commissioner is suing him because he "represented and performed legal services for SNLIC, EBL [ ] and various other Stewart-owned or -controlled entities." ¶ 6. As noted above, the rendering of legal advice and services, by itself, is not enough to confer § 1962(b) liability. *Morin,* 832 F.Supp. at 99; *Martin,* 785 F.Supp. at 317-18. The amended complaint lacks any allegations that Harbaugh owned stock, possessed any other ownership rights, or exercised influence akin to that of a person owning the majority of SNLIC stock. [FN7] Mere participation in the enterprise does not suffice. *Welch,* 1996 WL 607059, at *7. Further, even if Harbaugh had an interest in or control of SNLIC, there is no averment that this interest or control was a result of racketeering activity. There can be no valid § 1962(b) claim against Harbaugh.

> FN7. Harbaugh is included in ¶ 30 as one of the defendants who received instructions from Stewart and then controlled SNLIC employees in carrying out his directives.

*6 The defendants further contend that it would be futile to allow the Insurance Commissioner to amend her amended complaint to sue on behalf of SNLIC and EBL with respect to the § 1962(b) claim because she has failed to plead their reliance upon the predicate acts of mail and wire fraud. While it is not necessary to plead or prove reliance to recover under federal mail or wire fraud statutes, the plain language of 18 U.S.C. § 1964(c), which confers standing on civil RICO plaintiffs, seems to require reliance. *Brandenburg v.. Seidel,* 859 F.2d 1179, 1188 n. 10 (4th Cir.1988). Section 1964(c) states that a person may sue if "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added). In other circuits, plaintiffs must plead and prove reliance to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp. Page 6
(Cite as: 1997 WL 476455, *6 (E.D.Pa.))

state a RICO case predicated on mail and wire fraud. *See Pelletier v. Zweifel,* 921 F.2d 1465, 1499-1500 (11th Cir.), *cert. denied,* 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991); *Brandenburg,* 859 F.2d at 1188.

However, that does not appear to be the law in this circuit. It is true that courts in this district did require reliance prior to the Third Circuit's decision in *Tabas v. Tabas,* 47 F.3d 1280 (3d Cir.), *cert. denied,* 515 U.S. 1118, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995). *See Masnik v. Bolar Pharm. Co.,* No. CIV. A. 90-4086, 1991 WL 138331, at *6 (E.D.Pa. July 18, 1991); *Rosenstein v. CPC Int'l, Inc.,* No. CIV. A. 90-4970, 1991 WL 1783, at *4 (E.D.Pa. Jan.8, 1991). [FN8] But, in a footnote in *Tabas,* the Third Circuit stated:

> FN8. These cases dealt with §§ 1962(a) and (c) of RICO although their discussion of reliance was not limited to any particular section.

[d]efendants' assertion that the mailings involved must themselves be relied upon by the victim of the fraud in order for a RICO claim to be established is inaccurate. As this Court stated in *Kehr Packages,* "completely 'innocent' mailings can satisfy the mailing element." Indeed, mailings "designed to lull [[[fraud] victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place" have been found to constitute actionable mail fraud.
*Tabas,* 47 F.3d at 1294 n. 18. [FN9] We can find only one court in this district which has discussed reliance after *Tabas.* It held that *Tabas* eliminated reliance on the underlying mailings in a RICO case. *Rodriguez v. McKinney,* 878 F.Supp. 744, 749 (E.D.Pa.1995).

> FN9. One district court did eliminate the reliance requirement prior to *Tabas.* *See Prudential Ins. Co. v. United States Gypsum Co.,* 828 F.Supp. 287, 294 (D.N.J.1993). And another agreed. *American Health Sys., Inc. v. Visiting Nurse Ass'n of Greater Philadelphia,* No. CIV. A. 93- 542, 1994 WL 314313, at *7 (E.D.Pa. June 29, 1994).

Defendants appear to be correct that the Insurance Commissioner does not allege reliance by SNLIC or EBL on any of the mailings or wires. Although these mailings and wires related to the financial operations of SNLIC, they were targeted primarily to insurance regulators and many were sent from SNLIC itself. One of the intended victims according to the amended complaint, however, was SNLIC. Obviously, SNLIC could not have been defrauded to the extent it originated the mailings or wires. Moreover, according to the appendix of predicate acts, no mails or wires were sent to EBL. Nonetheless, since reliance is not required in the Third Circuit, it is not necessary for a plaintiff to plead this element for a RICO claim.

*7 The defendants also claim that the § 1962(b) RICO claim is barred by the four year statute of limitations. *See Glessner,* 952 F.2d at 706. Such a contention is appropriate in a motion to dismiss only if the "complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver,* 38 F.3d at 1384 n. 1. Under the complicated factual allegations of this case it is certainly not clear on the face of the amended complaint that any defendant's interest in or control of SNLIC, to the extent it existed, occurred and ceased over four years ago.

In summary, it would be futile for the Insurance Commissioner, suing on behalf of SNLIC and EBL, to allege a § 1962(b) violation as to defendants ML & B, Fletcher, Morris, Connors, the Stewart entities, or Harbaugh. We conclude that the Insurance Commissioner would have a valid § 1962(b) claim on behalf of SNLIC and EBL against Stewart only. [FN10]

> FN10. The defendants asserted that the Insurance Commissioner failed to state an acquisition injury. *Lightning Lube,* 4 F.3d at 1190-91. This argument is without merit as the amended complaint clearly states that as a result of the acquisition, SNLIC was rendered insolvent. ¶ 154. Moreover, EBL was also rendered insolvent as a result of SNLIC's acquisition. ¶¶ 158a, 63.

### B. § 1962(c)

Count III of the amended complaint contains a claim under § 1962(c) of RICO. That provision reads:
[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.  
(Cite as: 1997 WL 476455, *7 (E.D.Pa.))

Page 7

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The § 1962(c) defendants are Stewart, Harbaugh, ML & B, Fletcher, Morris, Connors, Geoffrey Stewart ("G.S.Stewart"), June O'Brien ("O'Brien"), and the Stewart entities. Unlike the § 1962(b) count where SNLIC alone was named as the enterprise, the Insurance Commissioner identifies the § 1962(c) enterprise as SNLIC or EBL. As a backup, the Insurance Commissioner names as the enterprise an association in fact consisting of Stewart, Harbaugh, ML & B, Fletcher, Morris, Connors, G.S. Stewart, O'Brien, and the Stewart entities. Under RICO, the enterprise can be "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). [FN11]

> FN11. Injuries redressed under this section are caused by the predicate acts themselves. This is unlike § 1962(b) which required that a plaintiff plead an acquisition injury separate and apart from the predicate racketeering acts. *Lightning Lube,* 4 F.3d at 1190-91.

While the enterprise and the victim may be the same for purposes of § 1962(b), this is not true for § 1962(c) claims. Here, the enterprise and the victim must be separate. *Jaguar Cars. Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 267 (3d Cir.1995). Hence, neither the victim SNLIC nor the victim EBL can be the enterprise. [FN12] We must therefore determine whether the Insurance Commissioner can state a viable § 1962(c) claim based on her alternative position that the association in fact constituted the enterprise.

> FN12. In the companion criminal case, we held that there could be some overlap between the victim and the enterprise. *United States v. Stewart,* 955 F.Supp. 385, 387 (E.D.Pa.1997). No such partial overlap exists here.

In addition to the requirement that the victim and the enterprise may not be the same, § 1962(c) dictates that the defendant "persons" be separate and distinct from the named enterprise. Section 1962(c) prohibits certain activity by a "person **employed by or associated with** any enterprise." [FN13]

(emphasis added). Under this formulation those employed by or associated with the enterprise are necessarily different from the enterprise itself.

> FN13. A "person" under RICO is "any individual or entity capable of holding a legal or beneficial interest in property ." 18 U.S.C. § 1961(3).

*8 In *Jaguar Cars,* the Court of Appeals reexamined this distinctiveness requirement in light of two recent Supreme Court cases, *National Organization for Women v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) and *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Plaintiff Jaguar Cars, Inc. alleged that it had been defrauded by the owners of its Royal Oaks Dealership into paying for warranty repairs which were never actually made. *Jaguar Cars,* 46 F.3d at 261. Naming the Royal Oaks Dealership as the enterprise, Jaguar sued the owners of that dealership under § 1962(c) of RICO. *Id.* at 260, 264-65. Under earlier Third Circuit cases, Royal Oaks Dealership could not have been considered a proper RICO enterprise because a corporation was not deemed to be separate from its owners or agents. *See Glessner,* 952 F.2d at 710; *Brittingham v. Mobil Corp.,* 943 F.2d 297, 302 (3d Cir.1991). However, after analyzing these and other prior decisions, the Court of Appeals declared that "this court's application of the distinctiveness requirement to shield corporate officers and directors from § 1962(c) liability does not survive *Reves.*" *Jaguar Cars,* 46 F.3d at 265. Nevertheless, the court did not otherwise eliminate the requirement that the defendant persons and the enterprise must be distinct. *Id .* at 268. The Court of Appeals stated:

We are thus left with the question: what remains of the statutorily-based distinctiveness requirement after *Reves* and *Scheidler?* As we have stated, this requirement originates in the statute's textual directive that § 1962(c) liability requires conduct by defendant "persons" acting through an "enterprise." In this regard, we conclude that the essential holding of *Enright* [*B.F. Hirsch v. Enright Refining Co.,* 751 F.2d 628 (3d Cir.1984) ] remains undisturbed--a claim simply against one corporation as both "person" and "enterprise" is not sufficient. Instead, a viable § 1962(c) action requires a claim against **defendant "persons" acting through a distinct % 7 F'enterprise.'DDD'** But, alleging conduct by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.  
(Cite as: 1997 WL 476455, *8 (E.D.Pa.))

Page 8

officers or employees who operate or manage a corporate enterprise satisfies this requirement. *Id.* (emphasis added).

Courts in our district have since grappled with the breadth of this modified distinctiveness requirement. Some have allowed a total overlap between the defendant persons and the association in fact enterprise. *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* No. CIV. A. 95-1698, 1995 WL 455969, at *6-7 (E.D.Pa. July 27, 1995); *Brown v. Siegel,* No. CIV. A. 94-1829, 1995 WL 66860, at *6 (E.D.Pa. Feb.13, 1995). Another court allowed no overlap at all. *Klein v. Boyd,* No. CIV. A. 95-5410, 1996 WL 230012, at *11 (E.D.Pa. May 3, 1996). Still another reached a midway point allowing some overlap between the defendants comprising the association in fact enterprise and the defendant persons. *Schuylkill Skyport Inn, Inc. v. Rich,* No. CIV. A. 95- 3128, 1996 WL 502280, at *31-32 (E.D.Pa. Aug.21, 1996).

*9 The Insurance Commissioner here alleges that Stewart, Harbaugh, ML & B, Fletcher, Morris, Connors, G.S. Stewart, O'Brien and the Stewart entities were the defendant "persons." She also alleges that these very same persons constituted the association in fact enterprise. The overlap between the wrongdoers and the enterprise is complete. Where the wrongdoers and an association in fact enterprise are identical, we conclude that the Insurance Commissioner, by definition, cannot satisfy the distinctiveness requirement of § 1962(c). *See Jaguar Cars,* 46 F.3d at 268.

Simply put, the enterprise under § 1962(c) cannot be either the victim or the wrongdoer. Since none of the three alleged enterprises (SNLIC, EBL, and the association in fact) would be separate and apart from *both* the victims (SNLIC and EBL) and the wrongdoers (those named as the association in fact), the Insurance Commissioner's proposed amendment to the § 1962(c) averments to sue on behalf of SNLIC and EBL would be futile. In short, the Insurance Commissioner cannot state a claim for relief under this count. As a result, we need not reach defendants' remaining arguments precluding a § 1962(c) claim.

### C. § 1962(d)

Counts II and IV of the amended complaint are conspiracy counts. They allege violations of § 1962(d) which states, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Count II alleges a conspiracy with respect to § 1962(b) while Count IV alleges a conspiracy with respect to § 1962(c).

A conspiracy claim predicated on § 1962(b) or § 1962(c) cannot stand if the underlying allegations under those sections do not set forth a valid claim. *Rehkop v. Berwick Healthcare Corp.,* 95 F.3d 285, 290 (3d Cir.1996); *Lightning Lube,* 4 F.3d at 1191. [FN14] Since plaintiff has not and cannot state a claim under § 1962(c) in Count III of the amended complaint, Count IV, which alleges a conspiracy under § 1962(c), falls. Any amendment thereto adding SNLIC and EBL as the beneficial plaintiffs would be futile.

> FN14. In *Rehkop,* 95 F.3d at 290, as well as *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1168-70 (3d Cir.1989), the Third Circuit held that a plaintiff who did not have standing under § 1962(c) could, under the facts of those cases, still maintain a claim under § 1962(d). However, where "the actions alleged to constitute violations of subsections 1962(a), (b), and (c) were not violations of these subsections," they could not support a § 1962(d) claim. *Rehkop,* 95 F.3d at 290. The Insurance Commissioner merely relies on her allegations in Counts I and III to support her conspiracy claims in Counts II and IV. Because Count III does not allege a § 1962(c) violation, there cannot be a conspiracy claim derived from it.

As explained above, Count I, alleging a § 1962(b) claim against defendant Stewart, remains viable. We turn now to the conspiracy claim based upon this alleged RICO violation, asserted in Count II. To state a valid RICO claim for conspiracy, the Insurance Commissioner must allege in her pleading: (1) an agreement to commit the predicate acts; (2) knowledge that those acts were part of a pattern of racketeering in violation of a RICO section; (3) the time period of the conspiracy; (4) the purpose of the conspiracy; (5) the actions taken to achieve the purpose of the conspiracy; and (6) proximate injury as a result of the conspiracy. *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166-69 (3d Cir.1989); *Rose v.. Bartle,* 871 F.2d 331, 366 (3d Cir.1989). Plaintiff must have been harmed in "furtherance of" a conspiracy under a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.  
(Cite as: 1997 WL 476455, *9 (E.D.Pa.))

Page 9

RICO section. *Rehkop,* 95 F.3d at 290. In at least general terms, the composition, objectives, and roles of each defendant in a conspiracy must be alleged even under the liberal pleading of Rule 8(a). *Rose,* 871 F.2d at 366.

**\*10** To state a RICO conspiracy under § 1962(d), however, the plaintiff must also aver that the defendants conspired *to* violate the underlying section, in this case § 1962(b). It is not sufficient that the defendants conspired *with* someone who was violating or attempting to violate that section of the statute. *See United States v. Antar,* 53 F.3d 568, 581 (3d Cir.1995). The defendant is only liable for "conspiring to do something for which, if the act was completed successfully, he or she would be liable." *Id.* The Court of Appeals declared that this distinction arose from the language of § 1962(d) itself which creates liability only when one conspires *to* violate a RICO section. *Id.*

Count II alleges that defendants Stewart, Harbaugh, ML & B, Fletcher, Morris, Connors, and several Stewart-owned entities, conspired "to violate RICO ... by agreeing to participate in the acquisition and maintenance of SNLIC through a pattern of racketeering." ¶ 163. In furtherance of this conspiracy, the defendants purportedly committed the predicate acts listed in Count I, with the ultimate goal of stripping SNLIC of its assets and then concealing its insolvency. According to the Insurance Commissioner, the defendants agreed to commit the predicate acts and knew that they were part of a pattern of racketeering activity.

Defendants argue that the *Antar* decision precludes a claim for conspiracy as alleged here. They maintain that the Insurance Commissioner has only alleged that they participated or conspired *with* Stewart in his quest to acquire or maintain an interest in or control of SNLIC. According to them, she fails to aver that the defendants conspired *to* acquire or maintain an interest in or control of SNLIC for themselves.

We agree with defendants. While the Insurance Commissioner avers that they conspired to violate § 1962(b), she specifies that this conspiracy was an agreement "to participate in the acquisition and maintenance of SNLIC." ¶ 163. This simply connotes a conspiracy to assist Stewart with his violation of § 1962(b). Other paragraphs of the amended complaint support this interpretation. *See, e.g.,* ¶¶ 23, 29, and 30. As we explained in the discussion concerning § 1962(b), only defendant Stewart is said to have sought to acquire or maintain an interest in or control of SNLIC. The Insurance Commissioner does not allege in the conspiracy count or anywhere else that the remaining defendants sought unsuccessfully to do what if successful would have been a § 1962(b) violation. *Antar,* 53 F.3d at 581. In other words, she does not plead that any of these defendants ever attempted but failed to acquire or maintain for themselves an interest in or control of SNLIC. Therefore, her conspiracy claim in Count II falls. *Id.; accord Heritage Bldg. Group v. Plumstead Township,* No. CIV. A. 95-4424, 1996 WL 69397, at *3 (E.D.Pa. Feb.16, 1996). As discussed above in connection with § 1962(b), the respondeat superior allegations in relation to ML & B are not applicable here. Finally, because one cannot conspire with himself, defendant Stewart cannot be liable for conspiracy.

### D. Aiding and Abetting

**\*11** Count V alleges that defendants Fletcher, Morris, Connors, Harbaugh, ML & B, G.S. Stewart, and O'Brien aided and abetted Stewart in any viable RICO violations set forth in Counts I through IV. Defendants contend that the Supreme Court's decision in *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), precludes aiding and abetting liability.

In that case, the Supreme Court held that "[b]ecause the text of § 10(b) [of the Securities Exchange Act] does not prohibit aiding and abetting ... a private plaintiff may not maintain an aiding and abetting suit under § 10(b)." *Id.* at 1455. It reasoned that Congress knew how to proscribe aiding and abetting and had chosen not to do so under the plain language of the statute. *Id.* at 1448. "If ... Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not." *Id.* The Court noted that "aiding and abetting a wrongdoer ought to be actionable in certain instances. The issue, however, is not whether imposing private civil liability on aiders and abettors is good policy but whether aiding and abetting is covered by the statute." *Id.*

Like the Securities Exchange Act, no provision of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp. Page 10
(Cite as: 1997 WL 476455, *11 (E.D.Pa.))

RICO authorizes a civil plaintiff to recover from a defendant who aids and abets a RICO violation. According to the rationale of *Central Bank,* it would seem that aiding and abetting liability under RICO is foreclosed. Yet, in a case decided shortly after *Central Bank,* the Court of Appeals of the Third Circuit stated that "a defendant may be liable under RICO if he [or she] aided or abetted the commission of at least two predicate acts of mail fraud." *Jaguar Cars,* 46 F.3d at 270. While it neither cited nor discussed *Central Bank,* that omission is easily explained. The defendants in *Jaguar Cars* did not question whether the plaintiff could sue them for aiding and abetting under RICO. The only issue before the Court of Appeals was whether the evidence at trial was sufficient to find one of the defendants liable as an aider and abettor. *Id.* Thus, *Jaguar Cars* does not support the Insurance Commissioner's position. In light of *Central Bank,* we hold that the Insurance Commissioner may not assert a civil claim for aiding and abetting liability under RICO.

### III

All defendants complain that the Insurance Commissioner failed to plead the predicate acts of wire and mail fraud with specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure. They contend that for this reason the amended complaint fails to state a claim upon which relief can be granted and must be dismissed pursuant to Rule 12(b)(6).

This argument is without merit. It is true that Rule 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Insurance Commissioner's 80 page amended complaint with attached exhibits, including an appendix of specific predicate acts supporting the RICO claims, certainly meets this requirement.

### IV

*12 In their original motion to dismiss the amended complaint, defendants argued that the McCarran-Ferguson Act barred the Insurance Commissioner's RICO claims. *See* 15 U.S.C. §§ 1011 *et seq.* We had no occasion to reach this issue previously because we dismissed the amended complaint for lack of standing. If her proposed amendment is allowed, the Insurance Commissioner will have standing as to the § 1962(b) RICO claim against Stewart. Thus, we now address whether the McCarran-Ferguson Act would make any amendment futile.

Prior to 1944, insurance regulation was solely within the domain of the states since insurance was not considered to be interstate commerce. *See Paul v. Virginia,* 75 U.S. (8 Wall.) 168, 183, 19 L.Ed. 357 (1869). This long-standing legal principle was overturned by the Supreme Court in *United States v. South-Eastern Underwriters Association,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). That was a criminal antitrust case in which the Court held that insurance was a transaction of interstate commerce subject to federal regulation. In response, Congress passed the McCarran-Ferguson Act, which reaffirmed the primacy of state regulation of insurance. *See St. Paul Fire & Marine Ins. Co. v. Barry,* 438 U.S. 531, 538-39, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978). The Act provides, "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). With respect to federal regulation, the Act continues in pertinent part:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance.
18 U.S.C. § 1012(b).

In a parallel criminal RICO case currently before the undersigned, defendant Stewart raised this same McCarran-Ferguson argument in support of a motion to dismiss the indictment. We denied the motion. *See United States v. Stewart,* 955 F.Supp. 385 (E.D.Pa.1997). Because our analysis in the criminal case is virtually the same for this action, we need not repeat it at length here.

To determine the McCarran-Ferguson issue, we ask four questions: (1) does the federal law specifically relate to the business of insurance? (2) has Pennsylvania enacted any law for the purpose of regulating the challenged activity? (3) does the challenged activity constitute the business of insurance? and (4) would application of the federal law invalidate, impair, or supersede the state law? *Cochran v. Paco, Inc.,* 606 F.2d 460, 464-66 (5th Cir.1979). [FN15]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp. Page 11
(Cite as: 1997 WL 476455, *12 (E.D.Pa.))

FN15. In *United States Department of Treasury v. Fabe,* 508 U.S. 491, 113 S.Ct. 2202, 2208, 124 L.Ed.2d 449 (1993), the United States Supreme Court stated that in non-antitrust cases a three prong test applied. In determining whether McCarran-Ferguson precludes a civil complaint we must ask: (1) whether the federal statute specifically relates to the business of insurance; (2) whether the state law is enacted for the purpose of regulating the business of insurance; and (3) whether application of the federal statute would invalidate, impair or supersede the state statute. *Id.* This test was identical to the *Cochran* test except that the third prong, whether the challenged activity constituted the business of insurance, was eliminated and appears as part of the *Fabe* second prong, which asks whether the relevant state statute had been enacted for the purpose of regulating the business of insurance. *Id.* For this reason, we see very little difference between the 3 or 4 prong test. This court used the four prong test in the *Stewart* criminal opinion. We are not the only court to have done so in a non-antitrust case, after *Fabe. See Kenty v. Bank One,* 92 F.3d 384, 391 (6th Cir.1996); *Merchants Home Delivery Serve. v. Frank B. Hall & Co., Inc.,* 50 F.3d 1486, 1489 (9th Cir.), *cert. denied,* 516 U.S. 964, 116 S.Ct. 418, 133 L.Ed.2d 335 (1995); *J.J. White, Inc. v. William A. Graham Co.,* No. CIV.A. 96-6131, 1997 WL 134896, at *2 (E.D.Pa. Mar.17, 1997); *Dornberger v. Metropolitan Ins. Co.,* 961 F.Supp. 506, 516 (S.D.N.Y.1997); *Everson v. Blue Cross and Blue Shield,* 898 F.Supp. 532, 543 (N.D.Ohio1994). Other circuits have completely adopted the three prong test of *Fabe. See Doe v. Norwest Bank Minnesota,* 107 F.3d 1297, 1305 (8th Cir.1997); *Villafane-Neriz v. FDIC,* 75 F.3d 727, 735 (1st Cir.1996). We will apply both tests here.

All parties agree that the only federal law at issue here, RICO, does not specifically relate to the business of insurance. *See Senich v. Transamerica Premier Ins. Co.,* 766 F.Supp. 339, 340 (W.D.Pa.1990). The Insurance Commissioner and the defendants are also in accord that there are Pennsylvania laws which govern the activity alleged in the amended complaint. [FN16] It is over the remaining two questions that the parties differ, that is, whether the challenged activity was the business of insurance and whether the application of RICO would invalidate, impair, or supersede state laws. Only if we answer both of these two questions in the affirmative will the McCarran-Ferguson Act bar plaintiff's RICO claim. *Cochran,* 606 F.2d at 464.

FN16. SNLIC was originally an Ohio insurer and was allegedly acquired by Stewart in Ohio. The parties do not dispute that Ohio insurance laws exist which would apply to the allegations concerning the acquisition.

*13 For the same reasons as set forth in our opinion in the criminal case, the activity challenged here is not the business of insurance. As we said there, not every act of an insurer or its agents is the business of insurance for purposes of the McCarran-Ferguson Act. The Insurance Commissioner essentially asserts that the defendants, through acts of mail and wire fraud, siphoned funds from two companies which happened to be insurers. Various schemes were utilized to accomplish this "theft." They included the acquisition which rendered the insurers immediately insolvent, a relocation from Ohio to Pennsylvania, year-end financial transactions which made the insurers appear solvent when they were not, diversion of funds, and the sale of the insurers for no consideration. However, activities such as these are not the business of insurance since they are not limited to the insurance industry and are not an integral part of the policy relationship between an insured and its insurer. *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). None of the transactions allegedly performed was between the insurance company and the insureds or policyholders. Nor do these activities have the effect of transferring or spreading the risk of a policyholder or directly affect the performance of an insurance contract. *Id.; accord United States Dep't of Treasury v. Fabe,* 508 U.S. 491, 504, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993).

Assuming, however, that the activities challenged by the Insurance Commissioner could be considered the business of insurance, we conclude that the pursuit of this civil RICO action will not "invalidate, impair or supersede" any Pennsylvania law. *Cochran,* 606 F.2d at 464. To the extent that Pennsylvania regulates the challenged activities, its laws are consistent with RICO. We follow the weight of authority holding that "state and federal laws proscribing identical conduct do not conflict with or displace each other, and may coexist under the McCarran-Ferguson Act." *Merchants Home Delivery Serv. v. Frank B. Hall & Co., Inc.,* 50

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

