## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THE OFFICIAL COMMITTEE OF  )
UNSECURED CREDITORS OF   )
ALLEGHENY HEALTH, EDUCATION )
AND RESEARCH FOUNDATION,  )
           )
   Plaintiff,      )  Civil Action No. 00-684
           )
   v.        )
           )  Judge David Stewart Cercone
PRICEWATERHOUSECOOPERS, LLP, )
           )
   Defendant.     )

### APPENDIX TO THE COMMITTEE'S RESPONSE TO PwC'S STATEMENT OF UNDISPUTED AND MATERIAL FACTS UNDER LOCAL RULE 56.1(C)(1)

#### VOLUME 12

James M. Jones (PA #81295)
Laura E. Ellsworth (PA #39555)
Laura A. Meaden (PA #52002)
JONES DAY
500 Grant Street, 31st Floor
Pittsburgh, PA 15219

Richard B. Whitney
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114

Attorneys for Plaintiff The Official Committee
of Unsecured Creditors of AHERF

July 11, 2005

# COMMITTEE APPENDIX

# Tab 4

4/16/2001 First Amended Complaint

5/7/2004 Plaintiff's Response to Defendant's Second Set of Interrogatories

5/6/2005 Committee's Motion to Exclude Certain Testimony From
PricewaterhouseCoopers' Experts

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, | : : : : : | |
| Plaintiff, | : : | No. 00-684 |
| v. | : : | Phase III |
| PRICEWATERHOUSECOOPERS, LLP, | : : | The Hon. Donald E. Ziegler |
| Defendant. | : | |

## FIRST AMENDED COMPLAINT

Plaintiff, the Official Committee of Unsecured Creditors (the "Committee") of

Allegheny Health, Education and Research Foundation ("AHERF") and its four debtor affiliates

(collectively with AHERF, "Debtors"), brings this action derivatively on behalf of and for

recovery to the Debtors' estates and on behalf of the Debtors' unsecured creditors, alleging as

follows:

### NATURE OF THIS ACTION

1.     At the end of the 1980s, the Allegheny Health, Education and Research

Foundation ("AHERF") was the parent foundation of a financially sound healthcare system,

anchored by the 120-year-old Allegheny General Hospital in Pittsburgh.  In the ensuing ten

years, AHERF would accumulate 55 total entities, including 14 hospitals, two medical schools,

two captive insurance companies and hundreds of physician practices (collectively with AHERF,

the "AHERF System," or "AHERF and its affiliates").  AHERF and its affiliates would also be in

      f.     For each of fiscal years 1996 and 1997, Coopers failed to disclose the false and misleading nature of senior management's representations concerning the Graduate and AUMC Acquisitions, when it knew or should have known of the false and misleading nature of these representations, and of the likely long-term impact of those acquisitions; and

      g.     For each of fiscal years 1996 and 1997, Coopers failed to monitor compliance with the various recommendations that it made to the AHERF System's management for improved operations and controls, and ignored those deficiencies when performing subsequent audits and other engagements pertaining to the AHERF System.

      45.     In providing unqualified opinions on the fiscal 1996 and 1997 financial statements of AHERF and its affiliates, Coopers knew that such opinions would be relied upon, and intended that they be so relied upon, by the innocent, unaware and misinformed Trustees of AHERF and its affiliates, as well as AHERF's bondholders, debt-enhancers, and other creditors and — parties and individuals who were so situated and duly motivated to act and to intervene, and who would have acted and intervened, in order to protect AHERF and its affiliates against the effects of a financial deterioration.

      46.     In failing to inform the innocent, unaware and misinformed Trustees of AHERF and its affiliates of certain reportable conditions that would have called into question the accuracy, quality and reliability of the System's financial reporting, Coopers knew or should have known that this failure would be relied upon by those parties and individuals, who were so situated and duly motivated to act and to intervene, and who would have acted and intervened, in order to protect against the effects of a financial deterioration.

      47.     As a result of the professional negligence of Coopers, the innocent, unaware and misinformed Trustees of AHERF and its affiliates, AHERF's bondholders, debt-enhancers, and other creditors, and others, refrained from taking steps within their powers and authority to halt

further deterioration in the AHERF System's financial condition. Further, even after the disastrous operating results experienced by the AHERF System came to light, the above-described negligence of Coopers contributed materially to significant delays in discovering the true financial state of affairs in the AHERF System and materially aided in preventing the immediate implementation of effective measures in time to reverse the decline in the System's financial condition. Moreover, after the Debtors' petitions for bankruptcy protection were filed, the inaccuracies revealed in the AHERF System's financial statements had a material and negative effect on the sale price of certain Debtor affiliates, further escalating the shortfall to the Debtors' creditors.

48.    Cooper's breach of duty as aforesaid was a direct and proximate cause of Debtors' present financial condition, in that such breach of duty allowed the continued deterioration of the Debtors into insolvency and prevented those ultimately responsible for governing the Debtors, AHERF's creditors, and others, from taking steps to prevent or minimize the Debtors' financial deterioration.

49.    By virtue of the aforesaid breach of duty and negligence of Coopers, the Debtors' estates have been damaged to the full extent of the Debtors' insolvency, which amount is in excess of $1.0 billion.

## COUNT II — BREACH OF CONTRACT

50.    Plaintiff repeats and re-avers the allegations contained in paragraphs 1-49 of this First Amended Complaint as if the same had been fully rewritten herein.

51.    As part of its engagement and contract with AHERF for the rendition of auditing, special reports, and other services for fiscal years 1996 and 1997, Coopers agreed to perform such services in accordance with that degree of special competence which Coopers claims to

f.     For each of fiscal years 1996 and 1997, Coopers breached its own internal standards in failing to disclose the false and misleading nature of management's representations concerning Graduate and AUMC Acquisitions, when it knew or should have known of the false and misleading nature of these representations, and of the likely long-term impact of those acquisitions.

53.    In providing unqualified opinions on the fiscal 1996 and 1997 financial statements of AHERF and its affiliates, Coopers knew that such opinions would be relied upon, and intended that they be so relied upon, by the innocent, unaware and misinformed Trustees of AHERF and its affiliates, as well as AHERF's bondholders, debt-enhancers, other creditors, regulators and others — parties who were so situated and duly motivated to act and to intervene, and who would have acted and intervened, in order to protect AHERF and its affiliates against the effects of a financial deterioration.

54.    In failing to inform the innocent, unaware and misinformed Trustees of AHERF and its affiliates of certain reportable conditions that would have called into question the accuracy, quality and reliability of the System's financial reporting, Coopers knew or should have known that this failure would be relied upon by those parties and individuals, who were so situated and duly motivated to act and to intervene, and who would have acted and intervened, in order to protect against the effects of a financial deterioration.

55.    As a result of Coopers' breach of contract, and its failure to conduct its audit and other professional services in accordance with the internal standards formulated by Coopers for the performance of such services, the innocent, unaware and misinformed Trustees of AHERF and its affiliates, AHERF's bondholders, debt-enhancers, and other creditors, and others refrained from taking steps within their powers and authority to halt further deterioration in the AHERF System's financial condition. Further, even after the disastrous operating results experienced by

the AHERF System came to light, the above-described negligence of Coopers contributed materially to significant delays in discovering the true financial state of affairs in the AHERF System and materially aided in preventing the immediate implementation of effective measures in time to reverse the decline in the System's financial condition. Moreover, after the Debtors' petitions for bankruptcy protection were filed, the inaccuracies revealed in the AHERF System's financial statements had a material and negative effect on the sale price of certain Debtor affiliates, further escalating the shortfall to the Debtors' creditors.

56.     Coopers' breach of contract as aforesaid was a direct and proximate cause of Debtors' present financial condition, in that such breach of duty allowed the continued deterioration of the Debtors into insolvency and prevented AHERF's creditors, those ultimately responsible for governing the Debtors, and others from taking steps to prevent or minimize the Debtors' financial deterioration.

57.     By virtue of the aforesaid breach of contract by Coopers, the Debtors' estates have been damaged to the full extent of the Debtors' insolvency, which amount is in excess of $1.0 billion.

## COUNT III — AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

58.     Plaintiff repeats and re-avers the allegations contained in paragraphs 1-57 of this First Amended Complaint as if the same had been fully rewritten herein.

59.     As alleged in the separate proceeding filed by the Committee against certain former senior officials of AHERF, *Official Committee of Unsecured Creditors of Allegheny Health, Education and Research Foundation v. Sherif S. Abdelhak, et al.* (Adv. Proceeding No.

## JURY DEMAND

The Committee hereby demands a trial by jury on all issues and claims so triable in this matter.

Dated:

Respectfully submitted,

Laura E. Ellsworth (PA #39555)
Jones, Day, Reavis & Pogue
One Mellon Bank Center, 31st Floor
500 Grant Street
Pittsburgh, Pennsylvania 15219
(412) 391-3939

and

Richard B. Whitney (OH #0008004)
J. Kevin Cogan (OH #0009717)
Jones, Day, Reavis & Pogue
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-3939

and

Douglas A. Campbell (PA #23143)
Stanley E. Levine (PA #19819)
Campbell & Levine
1700 Grant Street
Pittsburgh, Pennsylvania 15219
(419) 261-0310

Attorneys for Plaintiff The Official Committee
of Unsecured Creditors of Allegheny Health,
Education and Research Foundation

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing First Amended Complaint

was served this 16th day of April, 2001, by hand upon Joseph F. McDonough, Esquire; Manion,

McDonough & Lucas, P.C.; 600 Grant Street, Suite 1414; Pittsburgh, Pennsylvania 15219; and

by United States First Class mail, postage prepaid, upon Francis P. Barron, Esquire; Cravath,

Swain & Moore; 825 Eighth Avenue; New York, New York 10019-7475.

_Laura E. Ellsworth_
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 00-684 |
| v. | ) ) ) | Judge David Stewart Cercone |
| PRICEWATERHOUSECOOPERS, LLP, | ) ) | |
| Defendant. | ) | |

## BRIEF IN SUPPORT OF THE COMMITTEE'S MOTION TO EXCLUDE CERTAIN TESTIMONY FROM PRICEWATERHOUSECOOPERS' EXPERTS

### INTRODUCTION

The Allegheny Health, Education and Research Foundation and certain of its affiliates filed for bankruptcy in July 1998. At the time of the filing, AHERF was a not-for-profit, multi-hospital health system. For years before the bankruptcy, Coopers & Lybrand had audited the financial statements of AHERF and its affiliates or their predecessors. PricewaterhouseCoopers, LLP, or "PwC" as it is sometimes known, is the successor to Coopers & Lybrand.

In this action, The Official Committee of Unsecured Creditors of the AHERF estates has sued PwC for professional negligence, breach of contract, and aiding and abetting breaches of fiduciary duty committed by certain members of AHERF's management. The Committee's claims focus on Coopers' audits of AHERF's financial statements for fiscal years 1996 and 1997.

PwC has identified 11 witnesses from whom it will seek to elicit expert testimony at trial. They include an accountant, consultants, and professors. While the Committee will take

Expert testimony that "fits" the case assists the trier of fact in understanding the evidence or deciding a fact at issue. *See Paoli*, 35 F.3d at 743. Expert testimony is not admissible where the jury is capable of comprehending the primary facts and drawing appropriate inferences therefrom. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000) (internal citation omitted), *cert. denied*, 532 U.S. 921 (2001).

The opinions challenged here come from those without qualifications, are supported by no reliable methodology, and will not permissibly assist the jury in finding the facts.

## II.    Rule 702 Bars Testimony From Experts Paid To Disagree With AHERF's Former Trustees And Creditors About Their Response to Accurate Audit Disclosures.

PwC retained James Orlikoff, a self-described health care governance consultant, to "provide an opinion . . . as to whether it is likely that any of the additional information that [the Committee] asserts that the audited financial statements should have disclosed to the board would have caused the board to act differently than it did and to initiate meaningful action." Orlikoff Report at 2 (all expert report excerpts attached as Ex. C). Dutifully, he complied.

Mr. Orlikoff opines that "there is no reason to believe that any of the additional information [the Committee] says the audited financial statements should have disclosed to the board would have caused the board to act differently." *Id.* at 3. Throughout his report he reiterates the theme. He adds detail and nuance, but the theme is always the same. Specifically, he would like to instruct the jury that

> ♦    There is no reason to believe that the additional information about AHERF's financial condition that [the Committee] alleges Coopers should have provided to the board would have caused the board to initiate meaningful action[,] [including] changing the . . . business plan or terminating management. (*Id.* at 54; *see also id.* at 23);

- 11 -

♦    There is no reason to believe that adding allegations of
       fraud or terminating management would have made the
       board change business course rather than simply putting in
       new management to execute existing strategy. (*Id.* at 56);

♦    There is no reason to believe that the course of AHERF's
       business plan would have changed had Mr. Abdelhak had
       been replaced by someone else from within AHERF . . .
       (*Id.*);

♦    [T]here is no reason to believe that the board [, on the
       advice of a consultant,] would have countenanced the
       abandonment of strategies all had agreed with for so long.
       (*Id.* at 59);

♦    [I]t is unlikely that . . . a report [of management fraud and
       related accounting adjustments] would have stirred the
       [audit] committee into action. More likely, it would have
       accepted whatever adjustment had been made. (*Id.* at 55);
       and

♦    [E]ven if such a confrontation did reach the board, . . . there
       is no reason to believe the board would have changed the
       course of AHERF's business plan. (*Id.*)

These are not expert opinions. Mr. Orlikoff has no qualifications for discerning

the veracity of AHERF trustees' testimony or predicting their behavior. He has applied no

methodology in the effort. He offers merely to tell the jury what not to believe. His "opinions"

are the argument of counsel voiced by a retained consultant.

Lawton Burns offers nothing more. He was asked to "analyze the causes of the

failure" of AHERF (Burns Report at 4), but, along the way, he, too, offers the opinion that

AHERF trustees would not have done as they have testified. In his deposition, he confirmed that

he intends to opine that "it is implausible that AHERF would have changed its strategy starting

in the fall of 1996." Burns Dep. at 163-64; *see also* Burns Report at 8. The plausibility of

AHERF's Board changing strategy, however, will be a determination for the jury.

possess skill or knowledge greater than laypersons in determining what causes tractor fires. *See id.* at 114-15.

Mr. Dickinson is a health care consultant with experience in what he calls "strategic planning," and he knows some things about hospitals. And the *Aloe Coal* tractor salesman knew a thing or two about tractors. But Mr. Dickinson knows no more about the sale of distressed hospitals than a tractor salesman knows about what causes a tractor to catch fire.

Mr. Dickinson's opinion concerning the sale of AHERF's Eastern hospitals should be excluded.

## CONCLUSION

For the foregoing reasons, this Court should preclude PwC from offering the expert opinions discussed above.

Respectfully submitted,

Laura E. Ellsworth (PA # 39555)
James M. Jones (PA # 81295)
Laura A. Meaden (PA # 52002)
JONES DAY
500 Grant Street, 31st Floor
Pittsburgh, PA  15219

Richard B. Whitney
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114

Attorneys for Plaintiff The Official
Committee of Unsecured Creditors of
AHERF

Dated:  May 6, 2005

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 6th day of May, 2005, a true and correct copy of the foregoing Brief in Support of the Committee's Motion to Exclude Certain Testimony From PricewaterhouseCoopers' Experts was served by facsimile (without exhibits) and overnight service (with exhibits) upon Antony L. Ryan, Esq., Cravath, Swaine & Moore, Worldwide Plaza, 825 8th Avenue, New York, New York 10019-7475, and by hand delivery upon Joseph F. McDonough, Esq., Manion, McDonough & Lucas, PC, 600 Grant Street, Suite 1414, Pittsburgh, Pennsylvania 15219, counsel for defendant.

One of the Attorneys for Plaintiff The
Official Committee of Unsecured Creditors
of AHERF

PII-1119595v1

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE OFFICIAL COMMITTEE OF<br>UNSECURED CREDITORS OF<br>ALLEGHENY HEALTH, EDUCATION<br>AND RESEARCH FOUNDATION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 00-684 |
| v. | ) ) | Judge David Stewart Cercone |
| PRICEWATERHOUSECOOPERS, LLP, | ) ) | |
| Defendant. | ) | |

### PLAINTIFF'S RESPONSES TO DEFENDANT'S
### SECOND SET OF INTERROGATORIES

Plaintiff The Official Committee of Unsecured Creditors of the Allegheny Health, Education and Research Foundation responds as follows to Defendant's Second Set of Interrogatories to Plaintiff:

### GENERAL OBJECTIONS

These General Objections apply to each of the interrogatories served and are incorporated by reference into each of the Committee's individual responses.

1.    The Committee objects to the interrogatories to the extent that they seek information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or protection from disclosure.

2.    The Committee objects to the interrogatories to the extent that they require lengthy narrative responses beyond the scope of discovery responses called for under the Federal Rules of Civil Procedure.

3.    The Committee objects to the interrogatories to the extent that they seek (a) information already known or readily ascertainable by PwC and any of its present or former