Hall - Statement                                    Page 25

1    would offer that, and it is relevant because it supports the

2    other testimony in the case that I was about to talk about,

3    Your Honor.  That there were no expenses associated with this

4    income.

5            THE COURT: Okay.  There were no expenses associated

6    with this income or any -- anything else.

7            MR. HALL: Correct.

8            THE COURT: Yeah, all right.  Well it didn't -- I

9    don't see why they seem to be concerned about whether this was

10   a consulting fee or a severance pay.  I don't think that makes

11   any difference for this charge.

12           MR. HALL:  A --

13           THE COURT: I mean it might be part of the evidence if

14   you --

15           MR. HALL: Your Honor, I don't think it does either.

16           THE COURT: Yeah.  Yeah, okay.  Now --

17           MR. HALL: I think the evidence --

18           THE COURT: -- so that gets us --

19           MR. HALL: -- that I just enumerated is relevant

20   though, Your Honor, for the reason I stated.  And -- and this

21   is nothing new, this is in the Government's papers.

22           THE COURT: Well I don't know what evidence you're

23   talking about now.

24           MR. HALL:  The four witnesses that I just referred

25   to, Your Honor.

1    THE COURT:  Okay.  All right.  Well they --

2    MR. HALL:  They -- the -- the --

3    THE COURT: -- they would so testify if -- if you went

4    to trial.  And we'd make a decision then as to whether it was

5    relevant or not.  It might be for trial, but not for this.  So

6    the gravamen of this offense is that there were $229,000 of

7    expenses set forth in the tax return --

8    MR. HALL: Yes, Your Honor.

9    THE COURT: -- which were not real or --

10    MR. HALL: That's correct.

11    THE COURT: -- a substantial portion of which were not

12    real.

13    MR. HALL:  And the Government would establish that,

14    Your Honor, --

15    THE COURT: Right.

16    MR. HALL: -- by calling Ms. Calvert's former husband,

17    Wayne Calvert, and he would testify that they discussed the tax

18    return sometimes on the phone and in person, that they

19    discussed a plan to artificially inflate the expenses

20    associated with his business to offset the -- the income from

21    this consulting or severance agreement, and that those expenses

22    were inflated -- or those expenses totalled $229,154.  And that

23    was an overstatement by approximately $179,545.  And that's a

24    summary of what the Government would offer, Your Honor.

25    THE COURT:  All right.  And that they discussed this.

He apparently signed the return, not she.

MR. HALL:  Correct.

THE COURT: But she aided in -- in a return, and the two of them discussed it together and agreed upon these numbers.

MR. HALL:  That --

THE COURT:  That's your contention?

MR. HALL: -- that is what his testimony would be, Your Honor.

THE COURT: Yeah, all right.  Now do you agree that those facts are essentially correct?

MS. CALVERT: No, sir.

THE COURT: Okay.  Well you tell me then what -- I mean we have to determine here whether --

MS. CALVERT: I'm sorry.  Yes.

MR. SANTAGUIDA: You knew what he was doing?

MS. CALVERT:  I knew his aim --

MR. SANTAGUIDA: Okay.

MS. CALVERT: -- was to reduce our tax liability to the greatest extent he could.  He has a tax program called Turbo Tax, and he sat at home all day playing with it.  I didn't see the return before he sent it in.  If I had, surely it wouldn't have been submitted and said that we had employee -- all sorts of income tax.

THE COURT: Uh-huh.

Calvert - The Court                    Page 28

1      MS. CALVERT:  But yeah, it's ultimately my income and

2   my responsibility.  I should have knew better, so I take full

3   responsibility.

4      THE COURT: Okay.  Well what they're saying here, the

5   word here is you did this willfully.  So that means that you

6   knew and agreed to the fact that he would put in these business

7   expenses when you knew that they were not legitimate, that they

8   were much higher than the actual expenses that he had in

9   connection with his business.  And that they were false.

10      MS. CALVERT:  Yes.

11      THE COURT:  Do you agree with that?

12      MS. CALVERT:  Yes.

13      THE COURT:  All right.  All right, Mr. Santaguida, do

14   you have anything further?

15      MR. SANTAGUIDA:  No, Your Honor.

16      THE COURT: Mr. Hall?

17      MR. HALL: No, Your Honor.

18      MR. SANTAGUIDA: Judge, can I have one moment just

19   so she --

20      THE COURT:  Uh-huh.  Sure.

21      MR. SANTAGUIDA:  -- feels satisfied?

22      (Counsel confers with defendant)

23      MR. SANTAGUIDA:  She didn't go over each item, but

24   she knew that when he said we're paying $26,000 in taxes that

25   something was wrong because she should have paid a hundred and

Calvert - The Court                    Page 29

1   something -- or 79,000 in taxes.

2                MS. CALVERT: I -- yeah.

3                MR. SANTAGUIDA:  All right, good.

4                THE COURT:  Yeah.  All right?  Is that -- is that

5   correct?

6                MS. CALVERT: Yes.

7                THE COURT: All right.  So you knew that he was

8   putting in some false numbers.  You just say you didn't know

9   the specifics of it?

10                MS. CALVERT: I knew he was -- he was -- he was --

11                MR. SANTAGUIDA: Fudging?

12                MS. CALVERT: -- maximizing what he was doing with

13   this Turbo Tax thing.

14                THE COURT: Uh-huh.

15                MS. CALVERT: He explained the whole thing, the ranges

16   to me, and all that kind of stuff.  Yes, sir.

17                THE COURT: Okay.  Well whatever Turbo Tax is, --

18                MS. CALVERT: I --

19                THE COURT: -- that's really not the question because

20   that suggests that you thought that there was some program that

21   justified these expenses.  It has to -- if you are pleading

22   guilty, that means that you knew these numbers were false.

23                MS. CALVERT:  Your Honor, I -- I -- my education from

24   an accountant aspect knew that they --

25                THE COURT: Oh, you're an accountant?

1    MS. CALVERT: I'm not -- never practiced accounting,

2  but I --

3    THE COURT: Uh-huh.

4    MS. CALVERT: -- I understand --

5    THE COURT: Okay.

6    MS. CALVERT: -- and I -- I do know.

7    THE COURT: All right.

8    MS. CALVERT:  I agree.

9    THE COURT: All right.  Mr. Hall, do you have any

10  additional questions?

11    MR. HALL: No, Your Honor.

12    THE COURT:  Now Ms. Calvert, do you have any

13  questions before I take your guilty plea?

14    MS. CALVERT: No, Your Honor.

15    THE COURT:  Is there anything that has occurred here

16  today you do not understand?

17    MS. CALVERT: No, Your Honor.

18    THE COURT: Mr. Hall?

19    MR. HALL: Your Honor, I -- I just -- Ms. Calvert's

20  voice tapers off.  Throughout her claim -- she's not standing

21  at the microphone.  Now I just thought perhaps it might be

22  helpful to confirm that what she has just said to Your Honor is

23  that she acknowledges that she understood that her husband was

24  artificially inflating their expenses to reduce her tax

25  liability -- their joint tax liability.

Calvert - Plea                          Page 31

1    THE COURT: All right.  That -- is that correct?

2    MS. CALVERT: I agree, Your Honor.

3    THE COURT: Yeah, all right.  Now knowing everything

4    that has been said about the rights you're giving up by

5    pleading guilty, and the possible consequences to you, is it

6    still your desire to plead guilty to this charge?

7    MS. CALVERT: Yes.

8    THE COURT: All right.  Then the Court finds the

9    defendant is competent to plea.  The plea is free and

10   voluntary, and not the result of any force or threats, or any

11   promises apart from the plea agreement disclosed on the record.

12   That there's a factual basis for the plea of guilty.  The

13   defendant understands the charge, her legal rights, the maximum

14   possible penalties, and the defendant understands by pleading

15   guilty she is waiving her right to a trial.  The guilty plea

16   agreement is admitted into evidence as part of the record, and

17   the Deputy will take the plea of count one of the information.

18   DEPUTY: Carol Calvert, you're charged with

19   Information number 03-332, charging you with one count of

20   aiding in the presentation of false tax returns.  Now how say

21   you to count one, guilty or not guilty?

22   MS. CALVERT: Guilty.

23   THE COURT: All right.  Then the Court accepts the

24   plea of guilty, and the defendant is hereby adjudged guilty of

25   the offense set forth in count one of the information.  Now,

Colloquy                                    Page 32

1    Ms. Calvert, a written presentence report will be prepared by

2    the probation department.  You'll be asked to supply

3    information for that report.  You have the right to have your

4    attorney present while you do so.  You have the right to read

5    the report before the sentencing hearing, and you have the

6    right to be heard at the sentencing hearing with reference to

7    the contents of the report if you disagree with them.

8            The probation officer is seated over here, and I'm

9    not sure which one is for your -- okay.  Oh, you're pretrial

10   services, that's right, --

11           SPEAKER:  Yes.

12           THE COURT: -- it's information.  And you should make

13   arrangements with him before you leave the courtroom as to when

14   you're going to supply that information.  Now with reference to

15   her bail situation, does she have any prior record, Mr. Hall?

16           MR. HALL: No, Your Honor.

17           THE COURT: Okay.  Mr. Santaguida, tell me about

18   community contacts.

19           MR. SANTAGUIDA:  Judge, she's a lifetime resident of

20   the Eastern District and it would be -- you know, this matter's

21   been lingering, lingering, and lingering, so there's no reason

22   she won't appear --

23           THE COURT: Uh-huh.  Does she have family here?

24           MR. SANTAGUIDA: She has family here.

25           MS. CALVERT: Entire family --

Colloquy                    Page 33

1       THE COURT: Uh-huh.

2       MR. SANTAGUIDA: I'm asking for a nominal bail.  The

3  Government's agreed.

4       THE COURT: Uh-huh.  All right.  Mr. Hall?

5       MR. HALL: Your Honor, the Government agrees with the

6  pretrial services recommendation of an OR bond.

7       THE COURT: Uh-huh.  Was it $10,000?

8       SPEAKER: Yes, Your Honor.

9       THE COURT:  Okay.  All right, thank you.  All right

10 then, the Court finds by clear and convincing evidence that the

11 defendant is not likely to flee or fail to appear for

12 sentencing, and that she does not pose a danger to any person

13 or to the community.  She's placed then on $10,000 OR bond,

14 with the conditions that have been suggested by pretrial

15 services.

16       Now I want to advise you, Ms. Calvert, that you must

17 appear for sentencing and all other court dates, or that is a

18 separate criminal offense for which you can be prosecuted and

19 placed in jail for ten years, and fined up to $250,000.

20       MR. SANTAGUIDA: Judge, usual -- the usual conditions

21 of the bail are that the person's confined to the Eastern

22 District, and her family has a summer home in South Jersey.

23 Would she be allowed to travel there?

24       THE COURT: Uh-huh.  Yes.

25       MR. SANTAGUIDA: Thank you.

Colloquy                              Page 34

1    THE COURT: Yeah.  Well you can add that to the

2    conditions.  The Eastern District or -- and -- and New Jersey.

3    SPEAKER: Your Honor, I had recommended just 10,000 OR

4    with no conditions.

5    THE COURT: No conditions at all.

6    SPEAKER: Because she's being -- she's -- all her

7    family's here --

8    THE COURT: All right.

9    MR. SANTAGUIDA: Yeah, no conditions.

10   THE COURT: If there are no conditions at all, then

11   that makes it easy.  All right, thank you.

12   MR. SANTAGUIDA: Thank you.

13   THE COURT: Now the sentencing date will be September

14   the 17th at three p.m. in this courtroom.

15   MR. SANTAGUIDA: Thank you, Judge.

16   MS. CALVERT: Thank you.

17   THE COURT: Thank you.  I'll see you then.

18   MR. HALL: Thank you, Your Honor.

19                         * * * * *

20

21

22

23

24

25

C E R T I F I C A T I O N

    I, Karen O'Malley, court **approved transcriber**, certify that the foregoing is a correct **transcript from** the official electronic sound recording of **the proceedings** in the above-entitled matter.

                         KAREN O'MALLEY
                         DIANA DOMAN TRANSCRIBING

Date: 10/27/03

# COMMITTEE APPENDIX

## Tab 6



**ALLEGHENY**
HEALTH, EDUCATION AND
RESEARCH FOUNDATION

---

# MESSAGE FROM THE CHAIR OF THE BOARD

*W.P. Snyder III*
*Chair, Board of Trustees*
*Allegheny Health, Education*
*and Research Foundation*

Aug. 27, 1998

The attached media release details an important issue we have reviewed and acted upon recently.

In our desire to be open and candid with our employees regarding issues involving our organization, we are providing you with this information prior to it being portrayed in the media.

We will supply you with further information on this matter should the need arise.

William P. Snyder III

**DC 2587**

A.8.B.4.c

# NEWS



**ALLEGHENY**
HEALTH, EDUCATION AND
RESEARCH FOUNDATION

RELEASE: IMMEDIATELY
Contact: Tom Chakurda
          (412) 359-6896

### AHERF DETERMINES THAT LOAN
### PAYMENTS MAY HAVE BEEN PREFERENTIAL

Allegheny Health, Education and Research Foundation (AHERF) today announced that
preferential payments may have been made on loans related to an Executive Benefit Program.

In March 1998, AHERF established a key employee stock options plan (KESOP) for the benefit
of its former President and CEO Sherif S. Abdelhak; former Chief Financial Officer, David
McConnell; and other executives, including Executive Vice President and Chief Human Resources
Officer Dwight Kasperbauer; Executive Vice President and General Counsel
Nancy A. Wynstra; Anthony M. Sanzo, who was then serving as President and Chief Executive
Officer of Allegheny General and Allegheny University Hospitals, West; and Donald Kaye, M.D.,
former President and Chief Executive Officer of Allegheny University Hospitals, East.

The KESOP Plan, a combined savings and incentive benefit, was funded through the transfer of
previously existing deferred compensation amounts.

As an added benefit, AHERF had also established for this same group of executives a loan
program whereby the individual could secure loans from PNC Bank.  AHERF was jointly liable
on these loans with the individual executive.  Five of the six eligible participants elected to secure
loans under the program.

Following the departure of Abdelhak and McConnell from the AHERF organization, PNC in July
1998 demanded payment on the loans to those particular individuals.

Given the potential liability to AHERF of having to repay approximately $8 million in outstanding
loans made to the entire group of executives, the Board of Trustees' Compensation Committee,
upon the advice of legal counsel, authorized the use of the KESOP funds for repayment.

AHERF has determined that these repayments may have been preferential as to both the
participants and the lender.

In addition, AHERF's review has revealed that approximately $400,000 used to fund the KESOP
for these executives came from monies in which the individuals did not have a fully matured
interest.

**DC 2588**

# COMMITTEE APPENDIX

## Tab 7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION & RESEARCH FOUNDATION,**<br><br>Plaintiff,<br><br>v.<br><br>**PRICEWATERHOUSECOOPERS, LLP.,**<br><br>Defendant. | **Civil Action No. 00-684** |

## DECLARATION OF JOHN G. UNICE

I, JOHN G. UNICE, declare:

1.      I am an attorney with the firm of Jones Day, counsel for Plaintiff The Official Committee of Unsecured Creditors of AHERF ( the "Committee").  I make this declaration in Support of the Committee's Opposition to PwC's Motion for Summary Judgment.

2.      The documents attached at Tab 5 of the Appendix in Support of the Committee's Opposition ("Com. Appdx.") are true and correct copies of documents obtained from the United States District Court for the Eastern District of Pennsylvania, which documents were filed and/or part of the record in a criminal matter brought by the United States Attorney against Carol Calvert, a former AHERF employee.

3.      The documents attached at Tab 8 of of the Com. Appdx. are true and correct copies of documents obtained from the Court of Common Pleas of Allegheny County, Pennsylvania, which documents were filed and/or part of the record in a criminal matter brought by the Pennsylvania Attorney General against former AHERF employees Sherif Abdelhak, David McConnell, and Nancy Wynstra.

4.      The documents attached at Tabs 24 and 25 of the Com. Appdx. are true and correct copies of documents produced by the law firm of Titus and McConomy to the United States Attorney during that office's investigation related to AHERF.  The documents were also produced to a central document repository located at the firm of McGuire Woods, 625 Liberty Avenue, Suite 2300, Pittsburgh, PA 15222, and have been available to the parties since in or about 2001.

5.      The documents attached at Tab 27 of the Com. Appdx. are true and correct copies of documents made available for the parties' review by the law firm of Foley and Lardner in or about November 2002, in response to a subpoena served by PwC in this matter.

6.      The documents attached at Tabs 31 and 32 of the Com. Appdx. are true and correct copies of documents produced by defendant PwC in this action.  These documents constitute workpapers and other documents relating to the audits and other professional services provided to the AHERF entities during fiscal-year 1997.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.


July 11, 2005



_____

# COMMITTEE APPENDIX

## Tab 8

3/15/2000 Grand Jury Indictment

5/10/2001 Opinion of Robert E. Dauer, Sr. J.

8/29/2002 Guilty Plea -- Explanation of Defendant's Rights

# CRIMINAL COMPLAINT

COUNTY OF:

| | |
|---|---|
| Magisterial District Number: 05-2-28 | COMMONWEALTH OF PENNSYLVANIA |
| District Justice Name:  HON. OSCAR PETITE, JR. | VS: |
| Address:          912 Fifth Avenue | DEFENDANT:      SHERIF ABDELHAK |
|                      Pittsburgh, PA 15219 |                              529 Pine Road |
| | Sewickley, PA 15143 |
| Telephone:  ( 412 ) 261-2660 | |

Docket No.:

Date Filed:

OTN:

| Defendant's Race/Ethnicity □ White   □ Asian        □ Black □ Hispanic  □ Native American x Unknown | Defendant's Sex □ Female X Male | Defendant's D.O.B. 03/14/1946 | Defendant's Social Security # 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 | Defendant's SID |
|---|---|---|---|---|
| Defendant's A.K.A. | Defendant's Vehicle Information:   Plate Number          State | Registration Sticker (MM/YY) | Defendant's Driver's License Number          State | |
| Complaint/Incident Number   21-790 | Complaint/Incident Numbers if other Participants   21-790 | | UCR/NIBRS Code | |

District Attorney's Office      □Approved      □Disapproved because: _____
(The district attorney may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. Pa.R.Cr.P.107.)

_____        _____
(N_ame of Attorney for Commonwealth - Please Print or Type)          (Signature of Attorney for Commonwealth)          (Date)

We,   Special Agents Joseph Lawlor and William Wells    (724) 832-5418          59 & 156
         (Name of Affiant - Please Print or Type)                        (Officer Badge Number/I.D.)

of   PA Office of Attorney General - BCI, 2910 Seminary Drive, Greensburg, PA   PA065015A          21-790
(Identify Department or Agency Represented and Political Subdivision)    (Policy Agency ORI Number)    (Originating Agency Case Number (OCA))

do hereby state: (check the appropriate box)
1.  x We accuse the above named defendant who lives at the address set forth above
     □ I accuse the defendant whose name is unknown to me but who is described as _____

     _____

     □ I accuse the defendant whose name and popular designation or nickname is unknown to me and whom I have therefore
        designated as John Doe
        with violating the penal laws of the Commonwealth of Pennsylvania at _____ Pittsburgh, PA _____
                                                                              (Place-Political Subdivision)

in _____ Allegheny _____ County on or about _____ March 1996 to July 1998 _____

Participants were: (if there were participants, place their names here, repeating the name of above defendant)
   Sherif Abdelhak, Nancy A. Wynstra and David McConnell _____

2.    The acts committed by the accused were:
       (Set forth a summary of the facts sufficient to advise the defendant of the nature of the offense charged.  A citation to the statute allegedly violated, without more, is not sufficient.  In a summary case, you must cite the specific section and subsection of the statute or ordinance allegedly violated.)



**POLICE**

**CRIMINAL COMPLAINT**

| | |
|---|---|
| Defendant's Name:   Sherif Abdelhak | |
| Docket Number: | |

| COUNT 1 | THEFT BY FAILURE TO MAKE<br>REQUIRED DISPOSITION OF FUNDS | 18 PA C.S. §3927(a)<br>3rd Degree Felony |
|---|---|---|

On or about February 11, 1998, through and including July 2, 1998, the Actor, Sherif Abdelhak, obtained property, namely,

approximately $52,442,975.00, which was diverted from various trust accounts into the General Operating Account of Allegheny

Health, Education and Research Foundation (AHERF), these monies belonging to AHERF, upon agreement or subject to the known

legal obligation to make specified payments or other disposition of the property or its proceeds, and said Actor intentionally dealt with

the property so obtained as his own and failed to make the required disposition or payment, in violation of the PA Crimes Code, Act of

December 6, 1972, 18 PA C.S. §3927(a).

| COUNT 2 | MISAPPLICATION OF ENTRUSTED PROPERTY | 18 PA C.S. §4113(a)<br>2nd Degree Misdemeanor |
|---|---|---|

On or about February 11, 1998, through and including July 2, 1998, the Actor, Sherif Abdelhak applied or disposed of property,

namely, approximately $52,442,975.00, that had been entrusted to him as a fiduciary, in a manner which he knew was unlawful and

involved substantial risk of loss or detriment to Allegheny Health, Education & Research Foundation (AHERF), the owner of the

property or the person for whose benefit the property was entrusted, all of which is in violation of the PA Crimes Code, Act of

December 6, 1972, 18 Pa. C.S. §4113(a).

| COUNT 3 | CRIMINAL CONSPIRACY | 18 Pa. C.S. §903(a)(1)<br>3rd Degree Felony |
|---|---|---|

On or about February 11, 1998 through and including July 2, 1998, the Actor, Sherif Abdelhak, with the intent of promoting or

facilitating the crimes of Theft by Failure to Make Required Disposition of Funds and Misapplication of Entrusted Property, conspired

or agreed with others, namely, David McConnell and/or Nancy Wynstra, that they, or one or more of them, would engage in conduct

constituting such crimes, and in furtherance thereof, did commit the overt acts, namely Sherif Abdelhak authored a memorandum

directing $70 million be diverted from various endowment accounts to the General Operating Account and approximately $52,422,975,

of this money was utilized by Actors Sherif Abdelhak, David McConnell, and/or Nancy Wynstra, to pay Allegheny Health, Education

and Research Foundation's (AHERF) accounts payable, satisfy payroll needs, and fund various wire transfers relating to the operations

of AHERF, knowing the diversion of this money was illegal and in direct disregard of the intent for which the endowments were

established, in violation of Section 903(a)(1) of the PA Crimes Code, Act of December 6, 1972, 18 Pa. C.S. §903(a)(1).

On or about February 28, 1998, the Actor, Sherif Abdelhak, unlawfully took or exercised unlawful control of property, namely $50,000 given to Quaker Valley School District, that money belonging to another, namely Allegheny Health, Education and Research Foundation (AHERF), with the intent to deprive the owner thereof, in violation of 3921(a) of the Pennsylvania Crimes Code, Act of December 6, 1979, 18 Pa. C.S. §3921(a).


COUNT 5            VIOLATION OF PA                 25 P.S. §3253(a)
                        ELECTION CODE                     3rd Degree Misdemeanor


On or about August 22, 1997 through and including June 26, 1998, the Actor, Sherif Abdelhak, unlawfully made or directed to be made, a contribution or expenditure, namely, approximately $100,000 in monies belonging to Allegheny Health, Education and Research Foundation (AHERF), in connection with the election of any candidate or for any political purpose whatever, except in connection with any question to be voted on by the electors of this Commonwealth, namely, the Actor, Sherif Abdelhak authorized a $60,000 net salary increase for Curtis B. Copeland, an employee of AHERF, and a $40,000 net salary increase for Joan Chrestay, an employee of AHERF, knowing this money would be used to illegally funnel AHERF money to various political candidates as campaign contributions, all of which is in violation of Section 3253(a) of the PA Statutes and Consolidated Statutes, Act of 1996, 25 P.S. §3253(a).


COUNT 6            CRIMINAL CONSPIRACY               18 Pa. C.S. §903(a)(1)
                                               3nd Degree Misdemeanor


On or about March 26, 1996 through and including June 26, 1998, the Actor, Sherif Abdelhak, with the intent of promoting or facilitating the crime of Violation of the PA Election Code, the Actor, Sherif Abdelhak, conspired or agreed with others, namely, David McConnell, and/or Nancy A. Wynstra, and/or Curtis B. Copeland, and/or Joan Chrestay that they, or one or more of them, would engage in conduct constituting such crimes, and in furtherance thereof, did commit the overt acts, namely, Sherif Abdelhak, as Chief Executive Officer for Allegheny Health, Education and Research Foundation (AHERF), Nancy A. Wynstra, as General Counsel to AHERF, and David McConnell, as Chief Financial Officer of AHERF, directed and/or authorized AHERF lobbyist and employee, Curtis B. Copeland's $60,000 net salary increase and AHERF lobbyist and employee, Joan Chrestay's $40,000 net salary increase, and that Nancy Wynstra and David McConnell each received $50,000 in 1996 and another $50,000 each in 1997, to be utilized for the illegally funneling of AHERF's money to various political candidates as campaign contributions, knowing that the use of AHERF money for campaign contributions was illegal, in violation of Section 903(a)(1) of the PA Crimes Code, Act of December 6, 1972, 18

Pa. C.S. §903(a)(1).

all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly, or in violation of

| | | | | |
|---|---|---|---|---|
| 1. | 3927 | (a) | of the PCC | 1 |
| | (Section) | (Subsection) | (PA Statute) | (counts) |
| 2. | 4113 | (a) | of the PCC | 1 |
| | (Section) | (Subsection) | (PA Statute) | (counts) |
| 3. | 903 | (a)(1) | of the PCC | 2 |
| | (Section) | (Subsection) | (PA Statute) | (counts) |
| 4. | 3921 | (a) | of the PCC | 1 |
| | (Section) | (Subsection) | (PA Statute) | (counts) |
| 5. | 3253 | (a) | of the PEC | 1 |
| | (Section) | (Subsection) | (PA Statute) | (counts) |

3.  I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made. (In order for a warrant of arrest to issue, the attached affidavit of probable cause must be completed and sworn to before the issuing authority.)

4.  I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 PA.C.S. § 4904) relating to unsworn falsification to authorities.

_____, 19__        _____

                                                        (Signature of Affiant)

AND NOW, on this date _____, 19__, I certify that the complaint has been properly completed and verified. An affidavit of probable cause must be completed in order for a warrant to issue.

_____        _____ SEAL

   (Magisterial District)                  (Issuing Authority)

AOPC 412-(6/96)                    2 - 3



**POLICE**

**CRIMINAL COMPLAINT**

| Defendant's Name:  Sherif Abdelhak |
| --- |
| Docket Number: |

AFFIDAVIT of PROBABLE CAUSE

(SEE ATTACHED PRESENTMENT)

I, _____, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_____
(Signature of Affiant)

Sworn to me and subscribed before me this _____ day of _____, 19 _____.

_____ Date                        _____, District Justice

My commission expires first Monday of January, _____.          **SEAL**

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF:

# POLICE
# CRIMINAL COMPLAINT

Magisterial District Number: 05-2-28

District Justice Name: HON. OSCAR PETITE, JR.

Address:      912 Fifth Avenue
Pittsburgh, PA 15219

Telephone: ( 412 ) 261-2660

COMMONWEALTH OF PENNSYLVANIA

VS:

DEFENDANT:      DAVID McCONNELL
101 Lantern Circle
McMurray, PA 15317

Docket No.:

Date Filed:

OTN:

| Defendant's Race/Ethnicity | Defendant's Sex | Defendant's D.O.B. | Defendant's Social Security # | Defendant's SID |
|---|---|---|---|---|
| x White   □ Asian   □ Black<br>□ Hispanic   □ Native American   □ Unknown | □ Female<br>X Male | 01/31/55 | 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 | |

| Defendant's A.K.A. | Defendant's Vehicle Information:<br>Plate Number    State | Registration Sticker (MM/YY) | Defendant's Driver's License Number<br>State |
|---|---|---|---|
| | | | |

| Complaint/Incident Number   21-790 | Complaint/Incident Numbers if other Participants   21-790 | UCR/NIBRS Code |
|---|---|---|
| | | |

District Attorney's Office    □Approved    □Disapproved because: _____
(The district attorney may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. Pa.R.Cr.P.107.)

_____    _____    _____
(Name of Attorney for Commonwealth - Please Print or Type)      (Signature of Attorney for Commonwealth)      (Date)

We, __Special Agents Joseph Lawlor and William Wells__    (724) 832-5418      59 & 156
(Name of Affiant - Please Print or Type)          (Officer Badge Number/I.D.)

of __PA Office of Attorney General - BCI, 2910 Seminary Drive, Greensburg, PA__   PA065015A      21-790
(Number)    (Originating Agency Case Number (OCA)))

do hereby state: (check the appropriate box)

1. x We accuse the above named defendant who lives at the address set forth above
    □ I accuse the defendant whose name is unknown to me but who is described as _____
    _____
    □ I accuse the defendant whose name and popular designation or nickname is unknown to me and whom I have therefore designated as John Doe
    with violating the penal laws of the Commonwealth of Pennsylvania at _____ Pittsburgh, PA _____
    (Place-Political Subdivision)

in _____ Allegheny _____ County on or about _____ March, 1996 to July 1998 _____

Participants were: (if there were participants, place their names here, repeating the name of above defendant)
_____ Sherif Abdelhak, Nancy A. Wynstra and David McConnell _____

2. The acts committed by the accused were:
    (Set forth a summary of the facts sufficient to advise the defendant of the nature of the offense charged. A citation to the statute allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section and subsection of the statute or ordinance allegedly violated.)

# CRIMINAL COMPLAINT

| Defendant's Name:  David McConnell |
| --- |
| Docket Number: |

| COUNT 1 | THEFT BY FAILURE TO MAKE REQUIRED DISPOSITION OF FUNDS | 18 PA C.S. §3927(a)<br>3RD Degree Felony |
| --- | --- | --- |

On or about February 11, 1998, through and including July 2, 1998, the Actor, David McConnell, obtained property, namely, approximately $52,442,975.00, which was diverted from various trust accounts into the General Operating Account of Allegheny Health, Education and Research Foundation (AHERF), these monies belonging to AHERF, upon agreement or subject to the known legal obligation to make specified payments or other disposition of the property or its proceeds, and said Actor intentionally dealt with the property so obtained as his own and failed to make the required disposition or payment, in violation of the PA Crimes Code, Act of December 6, 1972, 18 PA C.S. §3927(a).

| COUNT 2 | MISAPPLICATION OF ENTRUSTED PROPERTY | 18 PA C.S. §4113(a)<br>2nd Degree Misdemeanor |
| --- | --- | --- |

On or about February 11, 1998, through and including July 2, 1998, the Actor, David McConnell applied or disposed of property, namely, approximately $52,442,975.00, that had been entrusted to him as a fiduciary, in a manner which he knew was unlawful and involved substantial risk of loss or detriment to Allegheny Health, Education & Research Foundation (AHERF), the owner of the property or the person for whose benefit the property was entrusted, all of which is in violation of the PA Crimes Code, Act of December 6, 1972, 18 Pa. C.S. §4113(a).

| COUNT 3 | CRIMINAL CONSPIRACY | 18 Pa. C.S. §903(a)(1)<br>3rd Degree Felony |
| --- | --- | --- |

On or about February 11, 1998 through and including July 2, 1998, the Actor, David McConnell, with the intent of promoting or facilitating the crimes of Theft by Failure to Make Required Disposition of Funds and Misapplication of Entrusted Property, conspired or agreed with others, namely, Sherif Abdelhak and/or Nancy Wynstra, that they, or one or more of them, would engage in conduct constituting such crimes, and in furtherance thereof, did commit the overt acts, namely Sherif Abdelhak authored a memorandum directing $70 million be diverted from various endowment accounts to the General Operating Account and approximately $52,422,975, of this money was utilized by Actors Sherif Abdelhak, David McConnell, and/or Nancy Wynstra, to pay Allegheny Health, Education and Research Foundation's (AHERF) accounts payable, satisfy payroll needs, and fund various wire transfers relating to the operations of AHERF, knowing the diversion of this money was illegal and in direct disregard of the intent for which the endowments were established, in violation of Section 903(a)(1) of the PA Crimes Code, Act of December 6, 1972, 18 Pa. C.S. §903(a)(1).