The Three Rivers Stadium Box

      Carol Gordon testified that she was employed as secretary to David McConnell, AHERF's Chief Financial Officer. She testified that in 1998, Tom Chakurda, AHERF Vice-President of Communications, informed David McConnell and her that Sherif Abdelhak wanted a luxury box for AHERF at Three Rivers Stadium in Pittsburgh, but that Abdelhak wanted it kept "low-profile." To that end, she said, McConnell received a $55,000 AHERF check on March 25, 1998. To avoid tax consequences the amount was classified as a reimbursement for authorized expenditures. McConnell, in turn, generated a personal check on March 31, 1998 payable to the Stadium Authority of Pittsburgh for $55,000.

      William F. Wells testified that he reviewed numerous documents subpoenaed by the Grand Jury as part of this investigation including documents relating to the lease by McConnell of the Three Rivers Stadium box. Wells testified that in addition to the rental of the stadium box, an attempt was made to renovate the box. The cost of these renovations, like the rental itself, was laundered through McConnell. Wells testified that on May 20, 1998, an AHERF check was issued to McConnell in the amount of $25,000. This check was classified as a reimbursement for authorized expenses. The $25,000 check was deposited to McConnell's personal bank account at North Side Bank. Both the $55,000 check and the $25,000 check requests were approved by Sherif Abdelhak. Wells testified that McConnell spent $8,307.94 in renovations and expenses relative to the stadium box. This amount was spent on May 22, 1998 in the following manner:

-16-

| Vendor | Purpose | Amount |
|--------|---------|--------|
| Aramark Sports & Entertainment | Food/Drink | $ 745.86 |
| Spector Management Group | Ice Maker | $ 916.08 |
| Marian Leventon Interior | Deposit on Renovations | $6,646.00 |
| | TOTAL | $8,307.94 |

Wells testified that according to the subpoenaed documents, no other stadium box expenditures were made from the $25,000, thereby leaving a balance of $16,692.06 with McConnell. No evidence of repayment of this amount could be found from either McConnell's bank account, AHERF records or anecdotal accounts from witnesses. Notwithstanding this fact, two vendors were left with balances due. Marian Leventon was owed $6,646.63 and Aramark was owed $1,000.

Carol Gordon testified that McConnell's employment with AHERF ended in early July, 1998. Gordon said she knew McConnell still had the balance of $16,692.06 from the expense check. She telephoned McConnell at his home to inform him that there were still payments due to the two vendors. Gordon testified that McConnell told her to submit the bills to AHERF for payment. Ultimately, she said, Leventon accepted the furniture back. Aramark joined the other creditors in AHERF's bankruptcy, filed July 21, 1998.

-17-

## RECOMMENDATION OF CHARGES

Based on the evidence we have obtained and considered, which establishes a *prima facie* case, we, the members of the Fourteenth Statewide Investigating Grand Jury recommend that the Attorney General, or his designee, institute criminal proceedings against the following individuals and charge them with the listed offenses:

**SHERIF ABDELHAK**

Theft by Failure to Make Required Disposition of Funds Received (18 Pa.C.S. § 3927)(F-3)

Misapplication of Entrusted Property (18 Pa.C.S. § 4113)(M-2)

Conspiracy to Commit Violations of the Theft by Failure to Make Required Disposition of Funds Received and Misapplication of Entrusted Property, 18 Pa.C.S. § 903, 18 Pa.C.S. § 3927, and 18 Pa.C.S. § 4113

Theft by Unlawful Taking (18 Pa.C.S. § 3921 (F-3)(*Quaker Valley Payment*)

Contributions or Expenditures by Corporations (25 P.S. § 3253(a))(Misdemeanor)

Conspiracy to Commit Violations of the Contributions or Expenditures by Corporations, 18 Pa.C.S. § 903, 25 P.S. § 3253(a)

**DAVID MCCONNELL**

Theft by Failure to Make Required Disposition of Funds Received (18 Pa.C.S. § 3927)(F-3)

Misapplication of Entrusted Property (18 Pa.C.S. § 4113)(M-2)

Conspiracy to Commit Violations of the Theft by Failure to Make Required Disposition of Funds Received and Misapplication of Entrusted Property, 18 Pa.C.S. § 903, 18 Pa.C.S. § 3927, and 18 Pa.C.S. § 4113

Theft by Failure to Make Required Disposition (18 Pa.C.S. § 3927)(F-3)(*Three Rivers Box*)

Conspiracy to Commit Violations of the Contributions or Expenditures by Corporations, 18 Pa.C.S. § 903, 25 P.S. § 3253(a).

## NANCY WYNSTRA

Theft by Failure to Make Required Disposition of Funds Received (18 Pa.C.S. § 3927)(F-3)

Misapplication of Entrusted Property (18 Pa.C.S. § 4113)(M-2)

Conspiracy to Commit Violations of the Theft by Failure to Make Required Disposition of Funds Received and Misapplication of Entrusted Property, 18 Pa.C.S. § 903, 18 Pa.C.S. § 3927, and 18 Pa.C.S. § 4113

Conspiracy to Commit Violations of the Contributions or Expenditures by Corporations, 18 Pa.C.S. § 903, 25 P.S. § 3253(a)

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | ) | CRIMINAL DIVISION |
| | ) | |
| VS. | ) | MISC. DOCKET NO. 406   APRIL 2000 |
| | ) | |
| SHERIF S. ABDELHAK, DAVID W. | ) | OTN NOS. H191866-3; H191867-4; |
| McCONNELL and NANCY A. WYNSTRA, | ) | H191870-0 |
| | ) | |
| DEFENDANTS. | ) | |

ORIGINAL
CLERK OF COURTS
ALLEGHENY COUNTY

OPINION

ROBERT E. DAUER, SR. J.

COPIES MAILED TO:

Anthony Krastek, Deputy
Attorney General
Office of Attorney General
564 Forbes Avenue, 6th Floor
Pittsburgh, PA 15219

J. Alan Johnson, Esquire
Two PNC Plaza
Suite 2710
Pittsburgh, PA 15222

Sal Cognetti, Jr., Esquire
Foley, Cognetti & Comerford
507 Linden Street, Suite 700
Scranton, PA 18503

Philip A. Ignelzi, Esquire
Ogg, Cordes, Murphy & Ignelzi
245 Fort Pitt Boulevard
Pittsburgh, PA 15222

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYANIA | ) | CRIMINAL DIVISION |
| | ) | |
| VS. | ) | MISC. DOCKET NO. 406 APRIL 2000 |
| | ) | |
| SHERIF S. ABDELHAK, DAVID W. | ) | OTN NOS.: H191866-3; H191867-4; |
| McCONNELL and NANCY A. WYNSTRA. | ) | H191870-0 |
| | ) | |
| DEFENDANTS. | ) | |

## O P I N I O N

Although it may be unusual for a court to write an opinion concerning a preliminary hearing, because of the extraordinary multiplicity of counts brought by the Office of the Attorney General against each defendant and the public's misapprehension that these proceedings are criminal trials on these charges, this Court believes that some explanation of its rulings and dispositions is appropriate.

These extensive court proceedings consists of three simultaneous preliminary hearings in the above captioned cases pursuant to the Rules of Criminal Procedure of the Commonwealth of Pennsylvania. Preliminary hearings are normally conducted by District Justices, Municipal Court Judges, or City Magistrates. However, it is certainly not unprecedented for a Common Pleas Judge to preside at preliminary hearings when appointed by

the Supreme Court or the President Judge where there are unusual circumstances.

At a preliminary hearing, the Commonwealth bears the burden of establishing, at least, a prima facie case that a crime has been committed and that the accused is probably the one who committed it.   Com. V. Mullen, Pa. 333 A.2d 755.   The Commonwealth establishes a prima facie case at a preliminary hearing when it produces evidence of each and every element of each crime charged.  Pa. Rules Crim. Proc., Rule 143, 42 C.S.A.

A preliminary hearing's principal function is to protect an individual's rights against unlawful detention and, in seeking that protection, a defendant has the right to contest the existence of a prima facie case and may not be denied the opportunity of presenting evidence which, in his or her view, negates it's existence.

The function of this Court is to determine whether the Commonwealth has produced evidence in the three above captioned cases on the elements of each of the over fifteen hundred counts sufficient to hold that charge for prosecution in a criminal trial.

The Commonwealth in the numerous counts in each criminal complaint alleges violations of several sections of the criminal code:

2

1.  Theft by failure to make required disposition of funds received, 18 Pa. C.S.A. §3927;

2.  Misapplication of entrusted property and property of government of financial institutions, 18 Pa. C.S.A. §4113;

3.  Contributions or expenditures by national banks, corporations or unincorporated associations for political purposes, 25 P.S. §3253;

4.  Criminal Conspiracy, 16 Pa. C.S.A. §903.

Theft by failure to make required disposition of funds received is comprised of four elements:

1.  The obtaining of the property of another;

2.  Upon agreement, or subject to a known legal obligation to make specified payments from such property or it's proceeds;

3.  An intention dealing with property so obtained as the defendant's own;

4.  Failure to make required disposition of the property.

An officer or employee of a financial institution is presumed to know any legal obligation relevant to his criminal liability.   This section effectively criminalizes conduct where the actors in question are merely custodians and conduits for the transmission of money to persons designated by agreement.

3

The Appellate Courts have adopted a "net shortage test" to apply upon the failure of the accused to meet the financial obligations as specified by the agreement.

In these cases the funds obtained from donors of endowments and trusts were not deposited in segregated bank accounts but were added to the total assets of the organization. The Superior Court has ruled that it is perfectly proper for those receiving funds subject to a specific obligation to commingle them with other funds as long as payments are timely made to those entitled to receive them. Comm. vs. Wood, 637 A2d 1335 432 Pa. Super. 183 (1994).

There is no question that many of the funds involved in these cases were originally gifts or derived from gifts and agreements establishing endowments and trust funds for specific purposes in the various medical and educational facilities that eventually became Allegheny Health Education Research Foundation (AHERF) meeting the first element of these alleged crimes.

The Commonwealth has offered evidence that the specific obligations designated by the donors of many funds have been thwarted.

This statute has been derived from former statutes involving embezzlement which required proof of a conversion of the funds. Although

4

such proof is no longer necessary, it should be obvious under basic criminal law that the defendant alleged to have committed a theft intended to deprive the owner of his property.

The phraseology that a person is guilty of theft by failure to make required disposition of funds if he intentionally "deals with property as his own" does not require that the defendant actually use the property of another. Rather the word "deals" in the context of this statute means that the actor treated the property of funds of another, designated to be used for a specific purpose, as if it were his or her own property. It is well settled that individuals are subject to indictment for acts done under the guise of a corporation where the individual personally dominated and controlled the corporation and directed its actions.

Accordingly, the mere fact that money which had been paid over to AHERF, its predecessors and constituents for specific purposes was applied to the benefit of the organization instead as the defendant's personal use would be immaterial. Comm. V. Wood, (Supra.)

In this case the evidence has been overwhelming that defendant Abdelhak was directly in control of AHERF and directed that money from various endowment funds be used to pay general operating expenses.

The Commonwealth has established in _____*355*_____ counts that the monies paid into the endowment fund were for definite purposes and that defendant Abdelhak directed that these monies be used for general operating purposes. The defendant Abdelhak is held for court on _*355*_ counts of Theft by Failure to Make Required Disposition of Funds Received.

There has been no evidence that defendant David McConnell had any part in directing that these funds be used for general operating purposes or had any authority to do so without the direction of defendant Abdelhak.

As Chief Financial Officer, he certainly knew or should have known that Abdelhak had directed the use of these endowment funds for general operating costs, however mere knowledge does not constitute a crime and there is no evidence that he approved or disapproved of Abdelhak's decision and directive or could have done anything about it.

Therefore, all Counts of Theft by Failure to Make Required Disposition of Funds received based on the use of endowment funds for general operating purposes against Mr. McConnell are DISMISSED.

There has been no evidence presented that Nancy Wynstra had any knowledge of the policy created by Defendant Abdelhak; gave any legal opinions or rendered any legal advice on whether the endowment funds could be used for any purposes other than what was stated in their

restrictions. There is no evidence that she was even asked and even if she was, she would only be culpable of giving bad legal advice. If lawyers were charged with a criminal act for giving bad legal advice, I am afraid that our jails would be jammed.

All three defendants have been charged with numerous counts of Misapplication of Entrusted Property. A person commits this offense if he applies or disposes of property that has been entrusted to him as a fiduciary.

There is no question that these endowment funds were entrusted to AHERF, its predecessors, medical and educational facilities, some with total restrictions on the use of interest and/or surplus funds after the stated purpose of the endowment had been accomplished.

For the reason stated above that Defendant Abdelhak was in complete control and set the policies for the use of the endowment funds for general operating purposes, we find that the Commonwealth has presented sufficient evidence that these funds were entrusted to AHERF, its predecessors and constituents as a fiduciary and he applied and/or disposed of this property in a manner involving substantial risk of loss or detriment to persons for whose benefit the property was entrusted.

Therefore, Defendant Sherif Abdelhak is held for Court on _354_ counts of Misapplication of Entrusted Property for directing that monies

from these endowments be used for general operating purposes contrary to the wishes of the donor.

As stated above, the Commonwealth has failed to present any substantial evidence that either Defendant McConnell or Defendant Wynstra had anything to do with the policy directed by Defendant Abdelhak. Although we can speculate that Mr. McConnell knew about it, there is no evidence that he even approved. Therefore, all counts against Defendant McConnell for Misapplication of Entrusted Property concerning the use of endowment funds for general operating purposes are **DISMISSED**.

Also, there is absolutely no evidence that Defendant Nancy Wynstra gave any legal advice or opinions concerning the use of the funds even if she knew of Defendant Abdelhak's directive to use these funds to pay for general operating purposes. Therefore, all Counts of Misapplication of Entrusted Property against Defendant Nancy Wynstra are **DISMISSED**.

The remaining counts against Defendant Abdelhak: Counts 1499 Criminal Conspiracy; Court 1500 Theft by Unlawful Taking or Disposition; Count 1501 Violation of the PA Election Code; and Count 1502 Criminal Conspiracy are disposed of as follows:

Count 1499, the Commonwealth has alleged that Defendant Abdelhak conspired with Defendants David McConnell and Nancy Wynstra to divert

approximately $51,014,157 from various endowment accounts to the General Operating Account or AHERF to satisfy accounts payable, payroll needs and fund various operations of AHERF.

There has been no evidence presented that Defendants McConnell and/or Wynstra agreed with each other that one or more of them would engage in conduct constituting the crimes alleged or that they agreed to aid such other of the alleged conspirators in the planning or commission of such crimes or even discussed this policy change.

Without such an agreement either explicit or tacit, there can be no conspiracy. Therefore Count 1499 against Defendant Abdelhak is **DISMISSED.**

For the same reason Count 1499 alleging Defendant, David McConnell as a coconspirator is **DISMISSED** and Count 1499 charging a Nancy Wynstra as a coconspirator is **DISMISSED.**

Count 1500 charges Defendant Abdelhak with Theft by Unlawful Taking or Disposition, alleging that he gave $50,000 belonging to AHERF to the Quaker Valley School District for improvements to its athletic facilities. The Commonwealth has presented uncontradicted evidence that Defendant Abedelhak gave this $50,000 because of his personal relationship with a member of the school faculty and possibly because his son was a

student at the school. There is no question that the Attorney General's office has presented a prima facie case on this charge and Count 1500 against Mr. Abdelhak is held for **COURT**.

Count 1500 against Defendant David McConnell charges that he obtained $25,000.00 to be used for renovation of a box at Three River's Stadium, the money being the property of Allegheny Health, Education and Research Foundation and utilized part of these funds for such renovations, keeping the remainder, $16,692.06, for his personal use. The Commonwealth has presented sufficient evidence to establish a prima facie case on this charge and it is therefore held for **COURT.**

Count 1501 against Defendant Abdelhak charges that he allegedly violated the Election Code of Pennsylvania in that he made or directed to be made contributions of approximately $100,000 to various political candidates as campaign contributions. Although there was evidence that he authorized a $60,000 salary increase for Curtis B. Copeland and $40,000 salary increase for Joan Christay and there was evidence that Abdelhak made suggestions that they make contributions from the salary increases to various political candidates, he was not ordered to do and in some instances did not. It appears that these salary increases or bonuses were given to the two employees and they could spend the money as they wished.

Suggestions that they spend their own money for any purpose, even political, does not constitute a crime and therefore Count 1501 against Defendant Abdelhak is **DISMISSED.**

Count 1502 charging Defendant Abdelhak with Conspiracy with Defendant McConnell, Defendant Wynstra, in that they authorized or directed salary increases for Curtis B. Copeland and Joan Christay and $50,000 bonuses in 1996 and 1997 for defendant McConnell and defendant Wynstra has not been substantiated by the Commonwealth. There has been no evidence presented that there was any agreement between the alleged conspirators. The authorization for these salary increases and bonuses was forthcoming from Defendant Abdelhak alone. There can be no conspiracy without an agreement and acquiescence in orders in most cases does not constitute such an agreement.

Therefore, Count 1502 against Defendant Abdelhak is **DISMISSED.**

Count 1501 against Defendant David McConnell alleging he participated in the same conspiracy is **DISMISSED** and Count 1500 against Defendant Nancy Wynstra alleging she participated in the same conspiracy is **DISMISSED.**

In summary, all counts against Defendant Nancy Wynstra are **DISMISSED.** Defendant David McConnell is held for Court on Count

1500 and all other Counts against him are **DISMISSED.**    Defendant

Abdelhak is held for Court on 354 counts of Theft by Failure to Make

Required Disposition of Funds, 1 Count of Theft by Unlawful Taking or

Disposition and  354 Counts of Misapplication of Entrusted Funds as

delineated in the disposition order.    All other counts against Defendant

Abdelhak are **DISMISSED.**

Defendant Nancy Wynstra is discharged.  Bail in the cases of

Defendant Sherif Abdelhak and Defendant David McConnell will be

continued as previously Ordered by the District Magistrate.


BY THE COURT:

_____, SR. J.

ROBERT E. DAUER


DATE: _May 10, 2001_

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      )

vs.      )      CC NO.  2001-08691

)

Sherif S. Abdelhak      )

## GUILTY PLEA
## EXPLANATION OF DEFENDANT'S RIGHTS

You or your attorney have indicated to the officers of this Court that you wish to plead guilty or nolo contendere to certain specific criminal charges which the Commonwealth of Pennsylvania has brought against you.

In order to have your plea accepted by this Court here today, you must waive your right to confront the prosection witnesses against you and agree to permit an Assistant District Attorney to summarize the Commonwealth's evidence against you. You must agree to stipulate to the authenticity and accuracy of any Crime Laboratory reports presented by the Commonwealth and to the chain of custody of any of the Commonwealth's evidence involved in your case.

You must fully understand that your plea must be voluntary and no clemency is being promised in exchange for your plea, with the exception of any plea bargain or arrangement previously agreed to between your attorney and the Assistant District Attorney assigned to your case.

By pleading guilty to any charge you are admitting that you committed that offense. By pleading nolo contendere you are stating that you do not contest the charges against you. In either case, the Commonwealth would not have to prove each and every element of the crimes with which you are charged as would be required in a jury or non-jury trial.

Please be advised that you must fully understand that the Constitution of the United States of America and the Constitution of the Commonwealth of Pennsylvania give to you an absolute right to have a trial by jury.

If you intend to waive your Constitutional right to a trial by jury, please answer all the questions on this form. Most of the questions are designed to be answered "yes" or "no." Where general

1

information is requested, please answer the question as fully as possible.

If you do not understand the question, you should say so in writing on this form. You should also tell your lawyer and the judge who hears your case so they can explain it to you. You must fully understand all of your rights before your plea can be accepted by the judge.

You should initial each page at the bottom after you have read, understood and completed your answers to the questions on that page. When you have finished all of the questions, you must sign the form at the end.

1.  What is your full name?  SHERIF SAMY HASSAN ABDELHAK

2.  How old are you today?  56

3.  How far did you go in school?  MASTERS DEGREE

4.  Can you read, write and understand the English language?  YES

5.  Do you understand that because you have been charged with more than one offense the court may impose a separate, or consecutive, sentence for each offense?  _____

6.  Have you discussed with your attorney the elements of each charged offense?  YES

7.  Have you discussed with your attorney the factual basis of each charged offense?  YES

8.  Have you discussed with your attorney how the facts in your case prove the elements of each charged offense?  YES

9.  Do you understand that both the Constitution of the United States of America and the Constitution of the Commonwealth of Pennsylvania give you an absolute right to a trial by jury?  YES

10. Do you understand that if you want a jury trial, you would take part in the selection of the jury along with your attorney and with the Assistant District Attorney assigned to prosecute your case?  YES

11. Do you understand that you and your attorney and the Assistant District Attorney assigned to prosecute your case would select a jury from a panel of jurors randomly picked by computer from the voter registration lists and other legally approved lists of citizens of Allegheny County?  YES

2

SA

12. Do you understand that both the defense and prosecution would have the right to "challenge" members of the jury panel and that this means you and the prosecution would have the right to keep certain persons on the jury panel from being a member of the jury in your case? __YES__

13. Both you and the prosecution would have as many challenges "for cause" as the court would approve. "For cause" means a good reason why the challenged person could not be an impartial juror in your case. Do you fully understand this? __YES__

14. Both you and the prosecution would each also have a number of "peremptory challenges". A "peremptory challenge" is one in which no reason has to be given to prevent a prospective juror from being a member of your jury. If you are charged with felonies. both you and the prosecution each have seven "peremptory challenges." If you are charged only with misdemeanors. both you and the prosection each have five "peremptory challenges." Do you fully understand this? __YES__

15. All twelve members of the jury finally selected would have to be satisfied that the Commonwealth had proven your guilt beyond a reasonable doubt on each charge; that is, the vote of all twelve must be guilty before you could be found guilty? Do you fully understand this? __YES__

16. You also may choose to be tried before a judge without a jury in what is called a "non-jury" trial and that the judge, in addition to ruling on legal questions and defining the law as in jury trials would also sit as a trier of fact, much like a jury does in a jury trial; and it would be the judge who determines from the evidence presented whether the Commonwealth has proven you guilty beyond a reasonable doubt. Do you fully understand this? __YES__

17. In either the jury trial or non-jury trial before a judge, you enter the courtroom clothed with the presumption of innocence and that presumption remains with you until such time, if ever, that a jury in a jury trial or judge in a non-jury trial, would find you guilty beyond a reasonable doubt. Do you fully understand this? __YES__

18. In either a jury trial or in a non-jury trial before a judge, it is the burden of the Commonwealth to prove you guilty "beyond a reasonable doubt," and to do this the Commonwealth must prove each and every element of the crime or crimes with which you are charged "beyond a reasonable doubt" to the satisfaction of all twelve jurors in a jury trial or to the satisfaction of the judge in a non-jury trial. Do you fully understand this? __YES__

3

19. A reasonable doubt is an honest doubt arising from the evidence presented or from the lack of evidence and it is the kind of doubt that would cause a reasonable, prudent person to pause or to hesitate before acting in a matter of the highest personal importance. Do you fully understand this? ___YES___

20. In either a jury trial or a non-jury trial before a judge, you have the absolute right to remain silent and need not present any evidence in your own behalf and there is no burden placed on you to prove your own innocence or, for that matter to prove anything since the burden is always on the Commonwealth to prove you guilty beyond a reasonable doubt. Do you fully understand this? ___YES___

21. However, in either a jury trial or a non-jury trial before a judge, you have the right, if you so desire, to testify and to have witnesses testify on your behalf and you would have the right to present any relevant evidence which you would tend or help to prove your innocence and to challenge the evidence and testimony presented by the prosecution. You also would have the right either yourself or through your attorney to cross-examine or question any witnesses presented by the Commonwealth in order to test their credibility and the truthfulness of their testimony. Do you fully understand this? ___YES___

22. By pleading guilty or nolo contendere you are giving up all of these rights described in the previous questions. Do you fully understand this? ___YES___

23. When you plead guilty or nolo contendere, the Commonwealth would not have to prove each and every element of the crime or crimes with which you are charged by the presentation of witnesses and/or other evidence but the Assistant District Attorney could simply present a summary of the evidence against you. Do you fully understand this? ___YES___

24. By pleading guilty, you are admitting you committed the crime or by pleading nolo contendere, you are stating that you do not challenge or dispute the charges against you. Do you fully understand this? ___YES___

25. By pleading guilty or nolo contendere, you give up the right not only to file pretrial motions, but also you abandon or give up any pretrial motions already filed and not yet decided and any pretrial motions in which decisions were already made. Do you fully understand this? ___YES___

26. Do you understand that by pleading guilty or nolo contendere, you also give up the right to present or assert any defenses on your behalf? ___YES___

4

27. If you were convicted after a jury trial or non-jury trial before a judge, you could appeal the verdict to a higher court and raise any errors that were committed in the trial court and this could result in a new trial or a dismissal. By pleading ~~guilty~~ you are giving up this right. Do you fully understand this? __YES__

28. Do you fully understand that if you were convicted after a jury trial or a non-jury trial before a judge, you could challenge in this Court and in the appellate courts whether the Commonwealth had presented enough evidence to prove you guilty beyond a reasonable doubt? __YES__

29. By pleading guilty or nolo contendere, you give up certain rights of appeal; in a jury trial or a non-jury trial before a judge, you would have the right to appeal any errors that might arise in your case to the Superior Court of Pennsylvania. However, when you plead guilty or nolo contendere, you limit the grounds for those appeals to four specific reasons:

   1. that this Court did not have jurisdiction in your case. With rare exception, this Court only has jurisdiction where the crime was committed in Allegheny County;

   2. that the sentence or probation imposed by this Court is illegal;

   3. that your plea was not knowingly, intelligently, and voluntarily made; and

   4. the incompetence or ineffectiveness of the attorney who represents you.

   All other grounds for appeal are given up. Do you fully understand this? __YES__

30. Do you understand that you have the right to file a motion seeking to withdraw your guilty plea or your nolo contendere plea at any time prior to the date of sentencing? __YES__

31. Do you understand that you must be sentenced within sixty (60) days of the date of the entry of your plea of guilty or your plea of nolo contendere? __YES__

32. Do you understand you have the right within ten (10) days after you have been sentenced to file a motion seeking to withdraw your guilty plea or your plea of nolo contendere? __YES__

5

33.   If you were to file a motion seeking to withdraw your plea of guilty or plea of nolo contendere, either prior to sentencing or within ten (10) days after sentencing, that motion must be filed in writing.  If you would fail to do so within these time periods, you would forever give up those rights.  Do you fully understand this?  _YES_

34.   In order to appeal your conviction that results for your plea of guilty or nolo contendere, you must file in writing your motion seeking to withdraw your plea, either prior to sentencing or within ten (10) days after sentencing and state one or more of the four (4) grounds listed below as the basis for a motion seeking to withdraw your plea:

   a) Your plea was not knowingly, intelligent and voluntary;

   b) that your crime was not committed within the jurisdiction of this Court, i.e., not committed within Allegheny County;

   c) that the sentence of this Court is illegal; and/or,

   d) that your attorney was ineffective and incompetent.

   If you do not file this motion within the proscribed time limits, you will have given up this right.  Do you fully understand this?  _YES_

35.   If your motion seeking to withdraw your plea of guilty or nolo contendere, which is filed prior to sentencing, is denied you would have ten (10) days from the date of sentencing to file with this Court a post-sentencing motion challenging the denial of your motion to withdraw your plea of guilty or your plea of nolo contendere.  Do you fully understand this?  _YES_

36.   Following the imposition of sentence upon you for your entry of either a plea of guilty or a plea of nolo contendere, you have the right to file post-sentencing motions with this Court which include:

   a) a motion challenging the validity of a plea of guilty or nolo contendere;

   b) a motion challenging the denial of a motion seeking a plea of guilty or nolo contendere;

   c) a motion to modify sentence.

   Do you fully understand these rights?  _YES_

6

37.  If you would file any post-sentencing motions, those motions must be decided by this Court within one hundred twenty (120) days of the date of the filing of said motions, or within one hundred fifty (150) days of the filing of those motions if you sought and were granted a thirty (30) days extension, which extension only you can request?  Do you fully understand this?  ___YES___

38.  If your post-sentencing motions are not decided within one hundred twenty (120) days of the date of filing, or within one hundred fifty (150) days of the date of filing, if you sought and received a thirty (30) day extension, then said motions are deemed to have been denied by operation of law and cannot be reconsidered by this Court.  Do you fully understand this?  ___YES___

39.  If this Court would deny your post-sentencing motion within either the one hundred twenty (120) or one hundred fifty (150) day time periods, you would have the right to file with this Court a motion to reconsider the denials of your post-sentencing motions; however, any motion to reconsider the denial of post-sentencing motions must be filed by you and decided by this Court within either the one hundred twenty (120) or one hundred fifty (150) day time limits.  If such a motion to reconsider the denial of post-sentencing motion is not filed by you or, if filed, not decided by this Court within the one hundred twenty (120) or one hundred fifty (150) day time limits, then any appellate rights that you have begin to run from the last day of either time limit.  Do you fully understand this?  ___YES___

40.  Should your post-sentencing motion be denied by this Court or by operation of law, you will receive, either from this Court or from the Clerk of Courts, an order of court advising you of your appellate rights, the right to assistance of counsel, if indigent, the right to proceed in forma pauperis, and, the qualified right to bail.  Any appeal to the Superior Court must be filed within thirty (30) days of the denial of your post-sentencing motion.  Do you fully understand?  ___YES___

41.  If you wish to file any of these motions with this Court or an appeal to the Superior Court of Pennsylvania and cannot afford an attorney to assist you do so, this Court will appoint an attorney to assist you to do so, this Court will appoint an attorney for you at no cost to you.  Do you fully understand this?  ___YES___

42.  When you plead guilty or nolo contendere, and your plea is accepted by this Court, all that remains is for the judge to sentence you on the charges to which you are pleading; but if your plea is rejected, your case will be sent back for reassignment to another courtroom and another judge for trial.

7

Do you fully understand this? _____YES_____

43. If there is a mandatory minimum sentence applicable and this mandatory sentence is sought by the Commonwealth, then this Court has no discretion to impose a lesser sentence and must impose at least the minimum sentence that is required by law. Do you fully understand this? _____YES_____

44. Are you aware that if the offenses with which you are charged do not require a mandatory sentence under the statutory law of Pennsylvania, this Court is not bound by the sentencing guidelines and may deviate from the guidelines; however, if the Court does so, both the District Attorney and you would have a right to appeal such deviation? _____YES_____

45. Do you understand that if you are entering a plea of guilty or a plea of nolo contendere to the charge of Violation of the Controlled Substance, Drug, Device and Cosmetic Act, that independent of any sentence this Court might impose, the Department of Transportation has the right, upon receipt of notice of this conviction, to impose an additional penalty upon you, in the form of the suspension of your driver's license for a period of time ranging anywhere from ninety (90) days to two (2) years. _____YES_____

46. Do you understand that if you are entering a plea of guilty or a plea of nolo contendere to the charge of Violation Vehicle Code: Driving Under Influence of Alcohol, a controlled Substance or both, that independent of any sentence this Court might impose, the Department of Transportation has the right, upon receipt of notice of this conviction, to impose an additional penalty upon you, in the form of the suspension of your driver's license for a period of one (1) year. _____YES_____

47. Do you understand that any term of imprisonment imposed as a result of your plea may be imposed separately, or consecutively, with any other state or federal term of imprisonment you are currently serving? _____YES_____

48. Do you understand that the conviction that will result from your plea may serve as a violation of any term of state or federal probation or parole? _____YES_____

49. Do you understand that a violation of your state or federal probation or parole could result in the imposition of a further separate, or consecutive, term of imprisonment? _____YES_____

50. Your plea must be voluntary and your rights must be voluntarily, knowingly and intelligently waived. If anyone has promised you anything other than the terms of a plea bargain, your plea will be rejected. If anyone has forced you or

8