Schedule A (Form 990) 1995        SDN, INC.                    23-2609230                                Page 3

**Part IV-A  Support Schedule**    (Complete only if you checked a box on line 10, 11, or 12 above.)  Use cash method of accounting.    N/A
NOTE:  You may use the worksheet in the instructions for converting from the accrual to the cash method of accounting.

| Calendar year (or fiscal year beginning in) | (a) 1994 | (b) 1993 | (c) 1992 | (d) 1991 | (e) Total |
|---|---|---|---|---|---|
| **15** Gifts, grants, and contributions received. (Do not include unusual grants. See line 28.) | | | | | |
| **16** Membership fees received | | | | | |
| **17** Gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is not a business unrelated to the organization's charitable, etc., purpose | | | | | |
| **18** Gross income from interest, dividends, amounts received from payments on securities loans (section 512(a)(5)), rents, royalties, and unrelated business taxable income (less section 511 taxes) from businesses acquired by the organization after 6/30/75 | | | | | |
| **19** Net income from unrelated business activities not included in line 18 | | | | | |
| **20** Tax revenues levied for the organization's benefit and either paid to it or expended on its behalf | | | | | |
| **21** The value of services or facilities furnished to the organization by a governmental unit without charge. Do not include the value of services or facilities generally furnished to the public without charge | | | | | |
| **22** Other income. Attach a schedule. Do not include gain or (loss) from sale of capital assets | | | | | |
| **23** Total of lines 15 through 22 . . . . . . . . . | | | | | |
| **24** Line 23 minus line 17 . . . . . . . . . . . | | | | | |
| **25** Enter 1% of line 23 . . . . . . . . . . . | | | | | |

**26  Organizations described in lines 10 or 11:**                                  N/A

| | | |
|---|---|---|
| a Enter 2% of amount in column (e), line 24 | 26a | 0 |
| b Attach a list (which is not open to public inspection) showing the name of and amount contributed by each person (other than a governmental unit or publicly supported organization) whose total gifts for 1991 through 1994 exceeded the amount shown in line 26a.  Enter the sum of all these excess amounts . . . . . . | 26b | N/A |
| c Total support for section 509(a)(1) test:  Enter line 24, column (e) . . . . . . . . . . . . . | 26c | 0 |
| d Add:  Amounts from column (e) for lines:     18 ____0__ 19 ____0__     22 ____0__ 26b ____0__ | 26d | 0 |
| e Public support (line 26c minus line 26d total) . . . . . . . . . . . . . . . . . . . . . | 26e | 0 |
| f Public support percentage (line 26e (numerator) divided by line 26c (denominator)) . . . . . . . . | 26f | 0.00% |

**27  Organizations described on line 12:**                                         N/A

a For amounts included on lines 15, 16, and 17, that were received from a "disqualified person," attach a list to show the name of, and total amounts received in each year from, each "disqualified person."  Enter the sum of such amounts for each year:

(1994) _____     (1993) _____     (1992) _____     (1991) _____

b For any amount included in line 17 that was received from a nondisqualified person, attach a list to show the name of, and amt. received for each year, that was more than the larger of (1) the amount on line 25 for the year or (2) $5,000.  (Include in the list organizations described in lines 5 through 11, as well as individuals.) After computing the difference between the amount received and the larger amount described in (1) or (2), enter the sum of all these differences (the excess amounts) for each year:

(1994) _____     (1993) _____     (1992) _____     (1991) _____

| | | |
|---|---|---|
| c Add:  Amounts from column (e) for lines:     15 ____0__ 16 ____0__     17 ____0__ 20 ____0__ 21 ____0__ . . . . . . . . | 27c | 0 |
| d Add:  Line 27a total ____0__ and line 27b total ____0__ . . . . . . . . | 27d | 0 |
| e Public support (line 27c minus line 27d total) . . . . . . . . | 27e | 0 |
| f Total support for section 509(a)(2) test:  Enter amount on line 23, column (e) . . . . . . | 27f | 0 |
| g Public support percentage (line 27e (numerator) divided by line 27f (denominator)) . . . . . . | 27g | 0.00% |
| h Investment income percentage (line 18, column (e) (numerator) divided by line 27f (denominator)) . . . . . . | 27h | 0.00% |

**28  Unusual Grants:** For an organization described in line 10, 11, or 12, that received any unusual grants during 1991 through 1994, attach a list (which is not open to public inspection) for each yr showing the name of the contributor, the date and amount of the grant, and a brief description of the nature of the grant.  Do not include these grants in line 15.  (See instructions on page 5.)

**Part V     Private School Questionnaire**          (See instructions on page 5.)
**(To be completed ONLY by schools that checked the box on line 6 in Part IV)**                    N/A

|  |  | Yes | No |
|---|---|---|---|
| 29 | Does the organization have a racially nondiscriminatory policy toward students by statement in its charter, bylaws, other governing instrument, or in a resolution of its governing body? . . . . . . . .  **29** |  |  |
| 30 | Does the organization include a statement of its racially nondiscriminatory policy toward students in all its brochures, catalogues, and other written communications with the public dealing with student admissions, programs, and scholarships? . . . . . . . . . . . . . . . . .  **30** |  |  |
| 31 | Has the organization publicized its racially nondiscriminatory policy through newspaper or broadcast media during the period of solicitation for students, or during the registration period if it has no solicitation program, in a way that makes the policy known to all parts of the general community it serves? . . . . . . . . .  **31** |  |  |

If "Yes," please describe; if "No," please explain.  (If you need more space, attach a separate statement.)

_____

_____

_____

| 32 | Does the organization maintain the following: |  |  |
|---|---|---|---|
| a | Records indicating the racial composition of the student body, faculty, and administrative staff? . . . . .  **32a** |  |  |
| b | Records documenting that scholarships and other financial assistance are awarded on a racially nondiscriminatory basis? . . . . . . . . . . . . . . . . . . . . .  **32b** |  |  |
| c | Copies of all catalogues, brochures, announcements, and other written communications to the public dealing with student admissions, programs, and scholarships? . . . . . . . . . . . .  **32c** |  |  |
| d | Copies of all material used by the organization or on its behalf to solicit contributions? . . . . . . . . .  **32d** |  |  |

If you answered "No" to any of the above, please explain.  (If you need more space, attach a statement.)

_____

_____

| 33 | Does the organization discriminate by race in any way with respect to: |  |  |
|---|---|---|---|
| a | Students' rights or privileges? . . . . . . . . . . . . . . . . . . .  **33a** |  |  |
| b | Admissions policies? . . . . . . . . . . . . . . . . . . . . .  **33b** |  |  |
| c | Employment of faculty or administrative staff? . . . . . . . . . . . . . .  **33c** |  |  |
| d | Scholarships or other financial assistance? . . . . . . . . . . . . . .  **33d** |  |  |
| e | Educational policies? . . . . . . . . . . . . . . . . . . . .  **33e** |  |  |
| f | Use of facilities? . . . . . . . . . . . . . . . . . . . . .  **33f** |  |  |
| g | Athletic programs? . . . . . . . . . . . . . . . . . . . .  **33g** |  |  |
| h | Other extracurricular activities? . . . . . . . . . . . . . . . . .  **33h** |  |  |

If you answered "Yes" to any of the above, please explain.  (If you need more space, attach a statement.)

_____

_____

| 34a | Does the organization receive any financial aid or assistance from a governmental agency? . . . . . . .  **34a** |  |  |
|---|---|---|---|
| b | Has the organization's right to such aid ever been revoked or suspended? . . . . . . . . . . .  **34b** |  |  |

If you answered "Yes" to either 34a or b, please explain using an attached statement.

| 35 | Does the organization certify that it has complied with the applicable requirements of sections 4.01 through 4.05 of Rev. Proc. 75-50, 1975-2 C.B. 587, covering racial nondiscrimination?  If "No," attach an explanation  **35** |  |  |

Schedule A (Form 990) 1995                              SDN, INC.                          23-2609230                                    Page 5

## Part VI-A  Lobbying Expenditures by Electing Public Charities        (See instructions on page 5.)
(To be completed ONLY by an eligible organization that filed Form 5768)                                    N/A

Check here      **a** ☐   If the organization belongs to an affiliated group (see instructions).

Check here      **b** ☐   If you checked 'a' and "limited control" provisions apply (see instructions).

| | | (a) Affiliated group totals | (b) To be completed for ALL organizations |
|---|---|---|---|
| **Limits on Lobbying Expenditures**<br>(The term "expenditures" means amounts paid or incurred) | | | |
| 36 Total lobbying expenditures to influence public opinion (grassroots lobbying) . . . . . . . . | 36 | | |
| 37 Total lobbying expenditures to influence a legislative body (direct lobbying) . . . . . . . . | 37 | | |
| 38 Total lobbying expenditures (add lines 36 and 37) . . . . . . . . | 38 | 0 | 0 |
| 39 Other exempt purpose expenditures . . . . . . . . | 39 | | |
| 40 Total exempt purpose expenditures (add lines 38 and 39) . . . . . . . . | 40 | 0 | 0 |
| 41 Lobbying nontaxable amount.  Enter the amount from the following table - | | | |
| **If the amount on line 40 is -**     **The lobbying nontaxable amount is -**<br>Not over $500,000       20% of the amount on line 40<br>Over $500,000 but not over $1,000,000 . . . . . . $100,000 plus 15% of the excess over $500,000<br>Over $1,000,000 but not over $1,500,000 . . . $175,000 plus 10% of the excess over $1,000,000<br>Over $1,500,000 but not over $17,000,000 . . . . $225,000 plus 5% of the excess over $1,500,000<br>Over $17,000,000 . . . . . . . . . . . . . . . . . $1,000,000 | 41 | 0 | 0 |
| 42 Grassroots nontaxable amount (enter 25% of line 41) . . . . . . . . | 42 | 0 | 0 |
| 43 Subtract line 42 from line 36.  Enter -0- if line 42 is more than line 36 . . . . . . . . | 43 | 0 | 0 |
| 44 Subtract line 41 from line 38.  Enter -0- if line 41 is more than line 38 . . . . . . . . | 44 | 0 | 0 |

Caution:  If there is an amount on either line 43 or line 44, file Form 4720.

### 4 - Year Averaging Period Under Section 501(h)
(Some organizations that made a section 501(h) election do not have to complete all of the five columns below.
See the instructions for lines 45 through 50 on page 7.)

| Calendar year (or fiscal year beginning in) | Lobbying Expenditures During 4-Year Averaging Period | | | | |
|---|---|---|---|---|---|
| | (a) 1995 | (b) 1994 | (c) 1993 | (d) 1992 | (e) Total |
| 45  Lobbying nontaxable . . . . . . . . . . . . | | | | | 0 |
| 46  Lobbying ceiling amount (150% of line 45(e)) | | | | | 0 |
| 47  Total lobbying expenditures | | | | | 0 |
| 48  Grassroots nontaxabl | | | | | 0 |
| 49  Grassroots ceiling amount (150% of line 48(e)) | | | | | 0 |
| 50  Grassroots lobbying e . . . . . . . . . . . . | | | | | 0 |

## Part VI-B  Lobbying Activity by Nonelecting Public Charities
(For reporting by organizations that did not complete Part VI-A) (See instructions on page 7.)

During the year, did the organization attempt to influence national, state or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of:

| | | Yes | No | Amount |
|---|---|---|---|---|
| a | Volunteers | | X | |
| b | Paid staff or management (include compensation in expenses reported on lines c - h) | | X | |
| c | Media advertisements | | X | |
| d | Mailings to members, legislators, or the public . . . . . . . . . . . | | X | |
| e | Publications, or published or broadcast statements . . . . . . . . . . | | X | |
| f | Grants to other organizations for lobbying purposes . . . . . . . . . . | | X | |
| g | Direct contact with legislators, their staffs, government officials, or a legislative body . . | | X | |
| h | Rallies, demonstrations, seminars, conventions, speeches, lectures, or any other means . . . . . . . . . | | X | |
| i | Total lobbying expenditures (add lines c through h) . . . . . . . . . . | | | NONE |

If "Yes" to any of the above, also attach a statement giving a detailed description of the lobbying activities.

Schedule A (Form 990) 1995          SDN, INC.                    23-2609230                              Page 6

## Part VII    Information Regarding Transfers To and Transactions and Relationships With Noncharitable Exempt Organizations

**51**  Did the reporting organization directly or indirectly engage in any of the following with any other organization described in section 501(c) of the Code (other than section 501(c)(3) organizations) or in section 527, relating to political organizations?

| | | Yes | No |
|---|---|---|---|
| **a** Transfers from the reporting organization to a noncharitable exempt organization of: | | | |
| (i) Cash . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 51a(i) | | X |
| (ii) Other assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | a(ii) | | X |
| **b** Other transactions: | | | |
| (i) Sales of assets to a noncharitable exempt organization . . . . . . . . . . . . . . . . | b(i) | | X |
| (ii) Purchases of assets from a noncharitable exempt organization . . . . . . . . . . . . | b(ii) | | X |
| (iii) Rental of facilities or equipment . . . . . . . . . . . . . . . . . . . . . . . . | b(iii) | | X |
| (iv) Reimbursement arrangements . . . . . . . . . . . . . . . . . . . . . . . . | b(iv) | | X |
| (v) Loans or loan guarantees . . . . . . . . . . . . . . . . . . . . . . . . . . . | b(v) | | X |
| (vi) Performance of services or membership or fundraising solicitations . . . . . . . . . . | b(vi) | | X |
| **c** Sharing of facilities, equipment, mailing lists, other assets, or paid employees . . . . . . . . | c | | X |

**d** If the answer to any of the above is "Yes," complete the following schedule. Column (b) should always show the fair market value of the goods, other assets, or services given by the reporting organization. If the organization received less than fair market value in any transaction or sharing arrangement, show in column (d) the value of the goods, other assets, or services received.

| (a) Line no. | (b) Amount involved | (c) Name of noncharitable exempt organization | (d) Description of transfers, transactions, and sharing arrangements |
|---|---|---|---|
| | | N/A | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**52a** Is the organization directly or indirectly affiliated with, or related to, one or more tax-exempt organizations described in section 501(c) of the Code (other than section 501(c)(3)) or in section 527? . . . . . . . . . . . .

| | Yes | No |
|---|---|---|
| | | X |

**b** If "Yes," complete the following schedule.

| (a) Name of organization | (b) Type of organization | (c) Description of relationship |
|---|---|---|
| N/A | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

SDN, Inc.
EIN: 23-2609230

Statement 1

Tax Year Ended: June 30, 1996

Form 990-EZ, Part IV, List of Officers, Trustees and Key Employees

| (A)<br>Name and<br>Address | (B)<br>Title and<br>Avg Hours | (C)<br>Compensation | (D)<br>Contrib to<br>Benefit Plans | (E)<br>Exp Acct &<br>Other Allow. |
|---|---|---|---|---|
| Donald Kaye, MD<br>100 West Laurel Avenue<br>Cheltenham, PA 19012 | President<br>As Required | NONE | NONE | NONE |
| Nancy A. Wynstra, Esq.<br>320 E. North Avenue<br>Pittsburgh, PA 15212 | Secretary<br>As Required | NONE | NONE | NONE |
| David W. McConnell<br>320 E. North Avenue<br>Pittsburgh, PA 15212 | Treasurer<br>As Required | NONE | NONE | NONE |
| Lynn R. Issacs<br>100 West Laurel Avenue<br>Cheltenham, PA 19012 | Asst. Secretary<br>As Required | NONE | NONE | NONE |
| Sherif S. Abdelhak<br>320 E. North Avenue<br>Pittsburgh, PA 15212 | Chairman<br>As Required | NONE | NONE | NONE |
| Robert M. McNair, Jr., Esq.<br>100 West Laurel Avenue<br>Cheltenham, PA 19012 | Asst. Secretary<br>As Required | NONE | NONE | NONE |

# COMMITTEE APPENDIX

## Tab 14

P8485
Mc/q/a

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:                                            :

                                                  :       Case Nos. 98-25773 MBM through
ALLEGHENY HEALTH, EDUCATION            :       98-25777 MBM inclusive
AND RESEARCH FOUNDATION,               :
ALLEGHENY UNIVERSITY OF THE            :       Chapter 11
HEALTH SCIENCES, ALLEGHENY            :
UNIVERSITY MEDICAL PRACTICES           :       Consolidated for
ALLEGHENY HOSPITALS                    :       Administration at 98-25773 MBM
CENTENNIAL AND ALLEGHENY              :
UNIVERSITY HOSPITALS-EAST,             :

                                                  :
              Debtors.                          :

_____ :

## ORDER CONFIRMING DEBTORS' SECOND AMENDED
## CONSOLIDATED LIQUIDATING PLAN OF REORGANIZATION
## <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

Allegheny Health, Education and Research Foundation, Allegheny University

Medical Practices, Allegheny Hospitals, Centennial, Allegheny University of the Health Sciences

and Allegheny University Hospitals-East (collectively, the "Debtors") having filed with this

Court their respective voluntary petitions for relief under Chapter 11 of Title 11, United States

Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") on July 21, 1998 (the "Petition Date");

and William J. Scharffenberger having been appointed the Chapter 11 Trustee of the Debtors;

and the Chapter 11 Trustee having filed the (1) Debtors' Second Amended Consolidated

Liquidating Plan of Reorganization dated December 5, 2000 (the "Plan") and the Amended

Disclosure statement dated August 15, 2000 (the "Disclosure Statement");[1] and the Disclosure

Statement having been approved as containing adequate information, as such term is defined in

Section 1125 of the Bankruptcy Code, by Order of the Court dated August 15, 2000 (the

---

[1]       Capitalized terms used but not defined herein shall have the meaning ascribed to such
terms in the Plan or the Disclosure Statement, as the case may be.

"Disclosure Statement Approval Order"); and the Disclosure Statement Approval Order having,

inter alia, (1) authorized the Chapter 11 Trustee to solicit acceptances or rejections of the Plan.

(2) approved the form of ballots (the "Ballots") to be transmitted with the Plan and Disclosure

Statement for voting purposes, (3) fixed October 18, 2000, at 5:00 p.m. (Pittsburgh time) as the

deadline for (a) Ballots accepting or rejecting the Plan to be received (the "Voting Deadline") and

(b) objections to confirmation of the Plan to be filed and served (the "Objection Deadline") and

(4) approved the form and manner of notice of the hearing on confirmation of the Plan and of the

Voting Deadline and Objection Deadline; and this Court having subsequently scheduled a

hearing pursuant to Section 1128 of the Bankruptcy Code for December 14, 2000 at 9:00 a.m., or

as soon thereafter as counsel can be heard (the "Confirmation Hearing"); and the Chapter 11

Trustee having solicited votes on the Plan by transmitting copies of the Plan, the Disclosure

Statement, the Disclosure Statement Approval Order, notice of the Confirmation Hearing (the

"Confirmation Hearing Notice") and a Ballot and/or Master Ballot to all impaired creditors and

banks or brokers holding the Centennial Bonds for the beneficial ownership of other entities or

individuals entitled to vote on the Plan; and the Court having considered the Declaration of

Carole G. Donlin Certifying the Ballots Accepting or Rejecting the Plan sworn to on December

4, 2000 (the "Ballot Declaration"); and it appearing that due notice of the Voting Deadline, the

Confirmation Hearing and the Objection Deadline having been given by the Chapter 11 Trustee

to creditors and other parties-in-interest in accordance with the Disclosure Statement Approval

Order, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") as evidenced by the affidavits of mailing and of publication filed with this Court; and the

Chapter 11 Trustee having filed with this Court a Memorandum of Law, dated December 5,

2000, and an Affidavit of Charles P. Morrison in support of confirmation, sworn to on December

4, 2000; and objections to confirmation of the Plan having been filed by (1) the AHERF Lenders[2] (the "AHERF Lenders' Objection") (2) Sarah Lohwater, (3) Bell Atlantic, (4) Comprehensive Safety Compliance, Inc., (5) the Pension Benefit Guaranty Corporation, (6) InPhyNet Contracting Services, Inc., (7) certain breast implant litigants, (8) the Attorney General of Pennsylvania, and (9) the United States Government, Department of Health and Human Services (together with the AHERF Lenders' Objection, collectively, the "Objections"); and upon all the documents and the evidence of record adduced at the Confirmation Hearing and the statements of the parties appearing at such hearing; and upon all the pleadings and proceedings heretofore had in these Chapter 11 Cases; and after due deliberation and consideration; and sufficient cause appearing therefor; and

IT HAVING BEEN FOUND AND DETERMINED by this Court that:

A.    Jurisdiction and Venue.  This Court has jurisdiction over the Chapter 11 Cases, and the subject matter of the Confirmation Hearing, and all issues raised by the Objections, pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(L) and this Court has jurisdiction to enter a Final Order with respect thereto.  Venue of the Chapter 11 Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are entities eligible for relief under Section 109 of the Bankruptcy Code.

---

2    The AHERF Lenders include Mellon Bank, N.A., Toronto Dominion (New York), Inc., Bank One, National Association as successor in interest to Bank One, Akron, N.A., and Bank One, National Association formerly known as the First National Bank of Chicago.

B. <u>Notice</u>.  In accordance with the Disclosure Statement Approval Order, the Chapter 11 Trustee timely (1) mailed notice of the Voting Deadline, of the date, time and place for the Confirmation Hearing and of the deadline and procedures respecting the Objection Deadline upon the parties set forth in the Disclosure Statement Approval Order and (2) published such notice in the publications set forth in the Disclosure Statement Approval Order.  Adequate and sufficient notice of the Confirmation Hearing, the Voting Deadline and the Objection Deadline, the proposed substantive consolidation of the Estates pursuant to Article 2 of the Plan and other requirements, deadlines, hearings and matters described in the Disclosure Statement Approval Order was provided in compliance with the Disclosure Statement Approval Order and the Bankruptcy Rules, and no other and further notice is required.  All parties-in-interest had the opportunity to appear and be heard at the Confirmation Hearing.

C. <u>Reasonable Classification of Claims (Section 1122(a))</u>.  The classification of Claims in Article 4 of the Plan is reasonable and necessary, and places Claims in a particular Class where such Claims are substantially similar to the other Claims of such Class, and therefore the Plan satisfies the requirements of Section 1122(a) of the Bankruptcy Code.

D. <u>Designation of Classes (Section 1123(a)(1))</u>.  Article 4 of the Plan properly designates all Classes of Claims, and therefore the Plan satisfies the requirements of Section 1123(a)(1) of the Bankruptcy Code.

E. <u>Specification of Unimpaired Classes (Section 1123(a)(2))</u>.  Article 4 of the Plan specifies the Classes of Claims which are unimpaired or impaired, and therefore the Plan satisfies the requirements of Section 1123(a)(2) of the Bankruptcy Code.

F.    <u>Specification of Treatment of Impaired Classes (Section 1123(a)(3))</u>.

Article 5 of the Plan specifies the treatment of each impaired Class of Claims, and therefore the

Plan satisfies the requirements of Section 1123(a)(3) of the Bankruptcy Code.

G.    <u>No Discrimination (Section 1123(a)(4))</u>.  The Plan provides the same

treatment for each Claim in a particular Class, and therefore the Plan satisfies the requirements of

Section 1123(a)(4) of the Bankruptcy Code.

H.    <u>Implementation of the Plan (Section 1123(a)(5))</u>.  Articles 6 and 7 and the

other provisions of the Plan provide adequate means for the Plan's implementation, and therefore

the Plan satisfies the requirements of Section 1123(a)(5) of the Bankruptcy Code.

I.    <u>Equity Securities (Section 1123(a)(6))</u>.  The requirements of

Section 1123(a)(6) of the Bankruptcy Code are inapplicable because the Plan contemplates the

liquidation of the Estates and it does not provide for the issuance of any securities.

J.    <u>Selection of Officers and Directors (Section 1123(a)(7))</u>.  The Plan

provides for the management and governance of Liquidating AHERF in a manner that is

consistent with the interests of creditors and with public policy with respect to the manner of

selection of any officer, director or trustee under the Plan, and any successor to such officer,

director or trustee, and therefore the Plan satisfies the requirements of Section 1123(a)(7) of the

Bankruptcy Code.

K.    <u>Impairment or Unimpairment of Claims (Section 1123(b)(1))</u>. The Plan impairs or leaves unimpaired, as the case may be, each Class of Claims, and therefore complies with Section 1123(b)(1) of the Bankruptcy Code.

L.    <u>Assumption or Rejection of Executory Contracts and Unexpired Leases (Section 1123(b)(2))</u>. Article 9 of the Plan provides for the rejection on the Confirmation Date of any executory contracts or unexpired leases (other than Insurance Policies) which (a) have not expired by their own terms on or prior to the Confirmation Date, (b) have not been assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, or (c) are not the subject of a motion to assume or reject the same which is pending at the time of the Confirmation Date, and therefore the Plan complies with Section 1123(b)(2) of the Bankruptcy Code.

M.    <u>Settlement and Compromise (Section 1123(b)(3))</u>. The Plan complies with Section 1123(b)(3)(A) of the Bankruptcy Code because any settlement and compromise incorporated in the Plan including, without limitation, the settlements with (a) MBIA Insurance Corporation and PNC Bank, N.A. regarding the treatment of the Secured and Unsecured Claims of holders of MBIA/PNC Claims and (b) Bank of New York, as indenture trustee acting for and on behalf of bondholders holding claims against Allegheny Hospital, Centennial regarding the treatment of the Secured and Unsecured Claims of holders of Centennial Bondholder Claims whereby, among other things, holders of Allowed Centennial Unsecured Claims receive a payment in Cash equal to 1.5% of such Allowed Claim and an Unsecured Claim Liquidation Participation equal to the 30% of such Allowed Claim, (1) reflects a reasonable balance of the risks and expenses of litigation against the benefits and early resolution of the disputes in a

6

context that permits confirmation of the Plan, (2) falls within the range of reasonableness for the resolution of complex litigation or litigable issues and claims and (3) is fair and equitable and in the best interests of the Debtors, their Estates and all holders of Claims.

N.    Plan Compliance With Provisions of the Bankruptcy Code (Section 1129(a)(1)). The Plan complies with all applicable provisions of the Bankruptcy Code including, without limitation, Sections 1122 and 1123 and, as required pursuant to Bankruptcy Rule 3016(b), is dated and identifies the Chapter 11 Trustee as the proponent of the Plan, and therefore the Plan satisfies the requirements of Section 1129(a)(1) of the Bankruptcy Code.

O.    Proponent Compliance With Provisions of the Bankruptcy Code (Section 1129(a)(2)). The Chapter 11 Trustee, as proponent of the Plan, has complied with the applicable provisions of the Bankruptcy Code including, without limitation, Sections 1125 and 1126, and therefore the Chapter 11 Trustee has satisfied the requirements of Section 1129(a)(2) of the Bankruptcy Code.

P.    Plan Proposed in Good Faith (Section 1129(a)(3)). The Plan has been proposed in good faith, for the valid business purposes of liquidating and distributing the Estate Assets and resolving and administering claims, and resolving other disputes, and has not been proposed by any means forbidden by law, and therefore the Plan satisfies the requirements of Section 1129(a)(3) of the Bankruptcy Code.

Q.    Payment of Costs and Expenses (Section 1129(a)(4)). Any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been

approved by, or will be subject to the approval of, this Court as reasonable, and therefore the Plan satisfies the requirements of Section 1129(a)(4) of the Bankruptcy Code.

R.    Disclosure of Identities of Officers, Directors and Insiders (Section 1129(a)(5)). The Chapter 11 Trustee has disclosed the identity and other relevant information of all individuals, including insiders, proposed to serve, after confirmation of the Plan, as a Bankruptcy Officer of Liquidating AHERF pursuant to a Designation of Bankruptcy Officers dated October 11, 2000 (the "Designation of Bankruptcy Officers") which was filed with this Court, and the appointment to, or continuance in such office of each such individual, subject to the provisions of the Plan and the Liquidating AHERF Bylaws, is consistent with the interests of creditors and with public policy, and therefore the Plan satisfies the requirements of Section 1129(a)(5) of the Bankruptcy Code.

S.    No Rate Change (Section 1129(a)(6)). Section 1129(a)(6) is inapplicable to the Plan because there are no rate changes provided for in the Plan for which a governmental regulatory commission will have jurisdiction over the Debtors after confirmation of the Plan.

T.    Best Interest of Creditors (Section 1129(a)(7)). With respect to each impaired Class of Claims, each holder of a Claim of such Class entitled to vote on the Plan has accepted the Plan, or will receive or retain under the Plan on account of such Claim (including, without limitation, holders of Allowed Centennial Unsecured Claims), property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date. Therefore, the Plan satisfies the requirements of Section 1129(a)(7) of the Bankruptcy Code.

8

U.    Plan Acceptance (Section 1129(a)(8)).  Each Class, except Class 7, has

accepted the Plan, or is not impaired under the Plan and thus is conclusively presumed to have

accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code, and therefore the Plan

satisfies the requirements of Section 1129(a)(8) of the Bankruptcy Code.  The Plan provides for

no distribution to holders of Insurance Claims (Class 7) and, therefore, pursuant to Section

1126(g), Class 7 is deemed to reject the Plan.  The Plan does not discriminate unfairly against,

and is fair and equitable with respect to, holders of Insurance Claims and, therefore, the Plan

satisfies the requirements of Section 1129(b) of the Bankruptcy Code.

V.    Plan Treatment of Administrative Expense Claims, Priority Claims and

Tax Claims (Section 1129(a)(9)).  The Plan satisfies the requirements of Section 1129(a)(9) of

the Bankruptcy Code because, except to the extent that the holder of a particular Claim has

agreed to a different treatment of such Claim, the Plan provides that Administrative Expense

Claims pursuant to Section 507(a)(1) of the Bankruptcy Code, Priority Claims pursuant to

Sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code and Priority Tax Claims pursuant

to Section 507(a)(8) of the Bankruptcy Code shall be treated in accordance with the provisions of

Section 1129(a)(9) of the Bankruptcy Code.

W.    Acceptance by at Least One Impaired Class (Section 1129(a)(10)).  At

least one Class of Claims that is impaired under the Plan has accepted the Plan, determined

without including any acceptance of the Plan by any insider holding a Claim in such Class, and

therefore the Plan satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code.

X.    <u>Feasibility (Section 1129(a)(11))</u>.  The Plan satisfies the requirements of Section 1129(a)(11) of the Bankruptcy Code because the Debtors will have sufficient Cash to meet all payment and funding obligations under Articles 3 and 5 and Section 6.9 of the Plan for distribution to secured and unsecured creditors upon the occurrence of the Effective Date. Therefore, the Plan satisfies the requirements of Section 1129(a)(11) of the Bankruptcy Code.

Y.    <u>Payment of Fees (Section 1129(a)(12))</u>.  Pursuant to Section 14.13 of the Plan, Liquidating AHERF shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C § 1930(a)(6) and the filing of post-confirmation reports, until a final decree is entered, and therefore the Plan satisfies the requirements of Section 1129(a)(12) of the Bankruptcy Code.

Z.    <u>Retiree Benefits (Section 1129(a)(13))</u>.  To the extent applicable to the Debtors, Section 9.4 of the Plan provides that payment of any retiree benefits shall be continued solely to the extent, if any, and for the duration of the period the Debtors are contractually or legally obligated to provide such benefits, subject to any and all rights of the Debtors under applicable law, and therefore the Plan complies with Section 1129(a)(13) of the Bankruptcy Code.

AA.   <u>Cramdown (Section 1129(b))</u>.  With respect to holders of Insurance Claims (Class 7) who are deemed to reject the Plan, the Plan does not discriminate unfairly against such holders and is fair and equitable and, therefore, the Plan satisfies the requirements of Section 1129(b) of the Bankruptcy Code.

BB.  No Other Plan (Section 1129(c)).  No other plan of reorganization has

been filed with respect to the Debtors' Chapter 11 Cases.

CC.  Avoidance of Taxes or Application of Securities Laws (Section 1129(d)).

The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the

application of Section 5 of the Securities Act of 1933.  In addition, no party-in-interest that is a

governmental unit has requested that the Plan not be confirmed on such grounds.  The Plan,

therefore, satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

DD.  Discharge and Injunction.  The discharge and injunction provisions set

forth in Article 10 of the Plan and the exculpation provision set forth in Section 14.2 of the Plan

(1) are within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), (b) and (d), (2) are each

an essential means of implementing the Plan pursuant to Section 1123(a)(5) of the Bankruptcy

Code, (3) are integral elements of the settlements and compromises incorporated in the Plan, (4)

confer material benefits on, and thus are in the best interests of, the Debtors' Estates and (5) are,

in the facts and circumstances of these Chapter 11 Cases, consistent with and permitted pursuant

to Sections 105, 524, 1123, 1129 and all other applicable provisions of the Bankruptcy Code.

EE.  Substantive Consolidation and Related Issues.  The testimony proffered

and the facts adduced at the Confirmation Hearing establish that the substantive consolidation of

the Debtors' Estates is warranted for all purposes as set forth in Article 2 of the Plan in the

Chapter 11 Cases pursuant to Section 105 of the Bankruptcy Code.  The Debtors share a

substantial identity in part because AHERF is the sole member of the other Debtors. AHERF

served as the general and administrative service provider for all of the Debtors, assets and

11

business functions of all of the Debtors are commingled, and it would be extremely difficult, if

not impossible, to segregate and ascertain individual assets and liabilities of the Debtors. The

burden and costs of disentangling the Estates heavily outweigh the benefit to creditors. The

affairs of the Debtors are so entangled that substantive consolidation of the Estates will benefit

all creditors. Unwinding the Debtors' assets and liabilities will substantially and materially delay

the distribution of funds to creditors, will deplete the assets of the Debtors' Estates substantially

to pay the resultant administrative expenses, will involve innumerable speculative assumptions

that will be contested by creditors of the individual Estates, and, ultimately, is not likely to be

feasible. Creditors of the Estates will also benefit from substantive consolidation due to the

elimination of the substantial inter-Debtor claims, which would otherwise be General Unsecured

Claims against the Estates. Liquidating plans for each of the Estates cannot be confirmed unless

and until complicated and substantial inter-Debtor claims and inter-creditor disputes could be

resolved because they constitute substantial liabilities against various of the individual Debtors

and would constitute the most significant liabilities of certain Debtors, including AHERF. The

evidence establishes that an accurate and expeditious determination of inter-company claims and

inter-creditor disputes cannot be made. Creditors extended trade and/or bank credit to the

Debtors as a single economic unit and did not rely on the separate identities of the many affiliates

of AHERF. Creditors are not prejudiced by the substantive consolidation of the Debtors' Estates

as contemplated in the Plan.

      FF.   Solicitation and Tabulation of Acceptances. As evidenced by the Ballot

Declaration, the solicitation and tabulation of acceptances and rejections of the Plan was

accomplished in a proper, fair and lawful manner in accordance with the Disclosure Statement

Approval Order and/or all applicable Bankruptcy Rules. The Plan has been duly accepted by the holders of Claims whose acceptance is required in accordance with the provisions of Section 1126(b) of the Bankruptcy Code.

GG.    <u>Plan Transfers</u>. All transfers and issuances by the Debtors are transfers under the Plan free from the imposition of taxes of the kind specified in Section 1146(c) of the Bankruptcy Code and are subject to the exemptions of Section 1145 of the Bankruptcy Code.

HH.    <u>Chapter 11 Trustee's Duties</u>. The Chapter 11 Trustee has completed and fulfilled all of his obligations and duties with respect to the Debtors' Estates through the Confirmation Date pursuant to Section 1106 of the Bankruptcy Code.

II.    <u>Modification of the Plan</u>. Any modifications of the Plan provided for and approved by this Order are non-material and do not adversely change the treatment of the holder of any Claim against the Debtors under the Plan. In accordance with Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan are hereby deemed to have accepted the Plan, as amended in accordance with any modifications. No holder of a Claim who has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of such modifications. Disclosure of any modifications on the record of the Confirmation Hearing constitutes due and sufficient notice thereof.

**IT IS NOW HEREBY ORDERED THAT:**

1.     <u>Confirmation</u>.  The Plan shall be. and hereby is. confirmed. having met the requirements of Section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into. and are an integral part of. this Confirmation Order.

2.     <u>Objections Overruled</u>.  The Objections to confirmation of the Plan that have not been withdrawn prior to entry of this Confirmation Order or are not cured by the relief granted herein shall be, and they hereby are, overruled in their entirety, and all withdrawn Objections shall be, and they hereby are. deemed withdrawn with prejudice and without costs.

3.     <u>Record Date</u>.  Pursuant to the Plan. and in accordance with Bankruptcy Rule 3021, the Distribution Record Date for the purposes of determining those holders of Claims entitled to receive distributions under the Plan shall be the Business Day after the Confirmation Date.

4.     <u>Confirmation Hearing</u>.  The record of this Confirmation Hearing shall be, and hereby is, closed.

5.     <u>Modifications</u>.  Any modifications to the Plan shall be, and hereby are, approved and are incorporated into and made part of the Plan.

6.     <u>Allowance of Claims</u>.  (a)  Pursuant to Section 5.3 of the Plan, the holders of Centennial Bondholders Claims shall be, and they hereby are. granted (i) an Allowed Secured Claim in the aggregate amount of $33 million and (ii) an Allowed Centennial Unsecured Claim

in the aggregate amount of $105.6 million, which shall be subject to reductions, to the extent necessary, pursuant to Section 5.3(e) of the Plan.

      (b)     Pursuant to Section 5.4 of the Plan, the holders of MBIA/PNC Claims shall be, and they hereby are, granted an Allowed Secured Claim in the aggregate amount of $50 million and an Allowed Unsecured Claim in the aggregate amount of $340.3 million, each of such Claims shall be treated as provided in Section 5.4(c) of the Plan and, to the extent, if necessary, pursuant to Section 5.4(d) of the Plan.

      7.     <u>Implementation of the Plan</u>. In accordance with Section 1142 of the Bankruptcy Code, the implementation and consummation of the Plan in accordance with its terms shall be, and hereby is, authorized and approved, and the Chapter 11 Trustee, the Creditors' Committee or any other Person designated pursuant to the Plan shall be, and they hereby are, authorized, empowered and directed to issue, execute, deliver, file and record any document, whether or not any such document is specifically referred to in the Plan, the Disclosure Statement or any exhibit thereto, and to take any action necessary or appropriate to consummate the Plan in accordance with its terms. Without in any manner limiting the foregoing, the execution and delivery, performance, filing or recordation by the Chapter 11 Trustee, the Creditor's Committee or any other entity or Person designated pursuant to the Plan, of each of the documents, instruments and agreements contemplated by or necessary in connection with consummation of the Plan, are hereby authorized and approved.

      8.     <u>Binding Effect</u>. In accordance with Section 1141(a) of the Bankruptcy Code, the Plan and all of its provisions shall be, and hereby are, binding upon the Debtors,

Liquidating AHERF. any Person acquiring or receiving property or a distribution under the Plan, any lessor or lessee of property to or from the Debtors. any creditor of the Debtors and any holder of a Claim against the Debtors, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder (a) has filed, or is deemed to have filed. a proof of Claim, (b) has accepted or rejected the Plan or (c) will or will not receive a distribution under the Plan.

9.    <u>Substantive Consolidation</u>.  On the Effective Date: (i) all assets (and all proceeds thereof) and liabilities of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of AHERF. (ii) no distributions shall be made under the Plan on account of inter-company Claims among the Debtors and all such Claims shall be eliminated. (iii) all guarantees of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors. and (iv) each and every Claim filed or to be filed in any of the Chapter 11 Cases shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors; provided, however, that (a) for purposes of determining the availability of the right of set-off under Section 553 of the Bankruptcy Code, the Debtors shall be treated as separate entities so that, subject to the other provisions of Section 553 of the Bankruptcy Code. debts due to any of the Debtors may not be set-off against the debts of any of the other Debtors. (b) for purposes of determining the plaintiff of. and the availability of defenses to, Recovery Actions. the Debtors may, at the option of the Chapter 11 Trustee upon the direction of the Creditors' Committee, be treated as separate entities and (c) holders of Centennial Unsecured Claims shall be afforded the

treatment set forth in Section 5.6 of the Plan for all purposes and shall not be deemed General Unsecured Creditors for purposes of distributing under or voting for the Plan as a result of giving effect to this Article 2. To the extent that a creditor, including, but not limited to, the Pension Benefit Guaranty Corporation, is holding an Allowed Unsecured Claim against more than one of the Debtors' Estates arising out of the joint and several obligations of the Debtors, such creditor shall be treated as a holder of an Allowed General Unsecured Claim under Class 5(A) of the Plan.

      10.   Section 1146(c) Exemption. In accordance with Section 1146(c) of the Bankruptcy Code, (a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the revesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Plan, (b) the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money or any mortgage, deed of trust or other security interest under, in furtherance of, or in connection with the Plan, the issuance, renewal, modification or securing of indebtedness by such means and (c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, this Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. Consistent with the foregoing,

17

each recorder of deeds or similar official for any county, city or governmental unit in which any

instrument hereunder is to be recorded shall be, and hereby is, directed to accept such instrument,

without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer

tax, intangible tax or similar tax.

      11.    Exemption From Securities Laws.  The exemption from the requirements

of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and any state or local law requiring

registration for the offer or sale of a security, provided for in Section 1145 of the Bankruptcy

Code, shall apply to the Series A Bondholder Secured Liquidation Participations, the Series B

Bondholder Secured Liquidation Participations, the Series C Bondholder Secured Liquidation

Participations and the Unsecured Claim Liquidation Participations to be granted to creditors

pursuant to the Plan.

      12.    Binding Effect of Prior Bankruptcy Court Orders.  Subject to the terms of

the Plan and this Confirmation Order, all prior orders of this Court entered in the Chapter 11

Cases, all documents and agreements executed by the Chapter 11 Trustee or the Debtors as

authorized and directed thereunder, and all motions or requests for relief by the Debtors pending

before the Court as of the Effective Date shall be, and hereby are, binding upon, and shall inure

to the benefit of the successors and assigns of such Persons.

      13.    Corporate Authority to Implement Plan.  Except as may otherwise be

required pursuant to the Plan or any documents or agreements implemented in connection

therewith, all terms of the Plan, and all documents which are contemplated to be executed in

connection with the Plan, may be put into effect and carried out, without further action by the

trustees of Liquidating AHERF, who shall be deemed to have unanimously approved the Plan

and all agreements and transactions provided for or contemplated therein, including, without

limitation. (a) the adoption of the Liquidating AHERF Bylaws and (b) the initial selection of

directors and officers of the Bankruptcy officers.

14.     Authority to Grant Releases.  Without limiting the generality of Section

6.3(b) of the Plan, in connection with the compromise and settlement of any Recovery Actions,

the Creditors' Committee and the Chapter 11 Trustee (with prior consent of the Creditors'

Committee), are authorized to release and discharge, to the fullest extent permitted by law, the

non-Debtor parties to the Recovery Actions from all Claims and Causes of Action that the

Debtors, the Creditors' Committee or the Chapter 11 Trustee has or may have whether known or

unknown against such Persons.  Any settlement effectuated prior to the Confirmation Date, upon

notice thereof to the Bankruptcy Court. shall be deemed incorporated into the Plan and this Order

by this reference thereto. and the terms and provisions thereof shall be deemed a settlement

pursuant to Section 1123(b)(3)(A) of the Bankruptcy Code.

15.     Attorney Client Privilege.  In the event that the Chapter 11 Trustee (with

the prior consent of the Creditors' Committee) or the Creditors' Committee determine to waive

any aspect of their, the Debtors' Estates', or Liquidating AHERF's attorney-client privilege

(including any other applicable privileges or other immunities from disclosure) in connection

with requests for documentation and information heretofore sought or to be sought by

governmental agencies or other third parties investigating and litigating matters related to the

Debtors, such determination shall be. and hereby is. deemed as (i) a reasonable exercise of the