Creditors' Committee's and the Chapter 11 Trustee's business judgment, as the case may be, and (ii) in the best interest of the Beneficiaries.

16.    Disbursing Agent.  The Chapter 11 Trustee (or a disbursing agent designated by the Chapter 11 Trustee and the Creditors' Committee) shall be, and hereby is, authorized and directed to serve as disbursing agent to make all distributions required under the Plan (a) to the holders of Allowed Claims and (b) thereafter, to the extent Disputed Claims become Allowed, to the holders of such Allowed Claims.  All distributions including any proceeds from the Recovery Actions shall be made pursuant to, and in accordance with, the provisions of Articles 5 and 6 of the Plan.  Any payment of Cash made by Liquidating AHERF (by the Chapter 11 Trustee or his disbursing agent) pursuant to the Plan shall be made by wire transfer or check drawn on a domestic bank; provided, however, that until no later than December 21, 2000 at 5:00 p.m. (Pittsburgh time), holders of Allowed Claims in excess of $15 million in the aggregate may provide to the Chapter 11 Trustee or his disbursing agent written instructions for the receipt by wire transfer of distributions required to be made from the Estates upon the occurrence of and after the Effective Date.  Any payments made by the AHERF Lenders pursuant to that certain order (the "Settlement Order") approving the Stipulation of Settlement and Order dated December 6, 2000 (the "Stipulation") among the Chapter 11 Trustee, the AHERF Lenders and the Creditors' Committee directly to parties designated by the Chapter 11 Trustee as provided in the Settlement Order shall be deemed to be distributions made in accordance with Section 6.6(b) of the Plan.  All other distributions under the Plan required to be made to holders of Allowed Claims upon the occurrence of the Effective Date shall be deemed in

accordance with the Plan if made by the Chapter 11 Trustee or his disbursing agent as soon as practicable after the occurrence of the Effective Date.

17.    <u>Discharge</u>.  Subject to. and upon the occurrence of. the Effective Date. and except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or the Plan. the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final satisfaction. settlement. release and discharge as against the Debtors of any debt that arose before the Effective Date. and any debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code. and all Claims against the Debtors or Estates of any nature, including, without limitation. any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of Claim based on such debt. obligation or equity interest is filed or deemed filed under Section 501 of the Bankruptcy Code. (ii) such Claim is Allowed under Section 502 of the Bankruptcy Code or (iii) the holder of such Claim has accepted the Plan; <u>provided, however</u>, that the foregoing discharge shall not apply to rights of holders of Insurance Claims to name the Debtors as nominal defendants in any litigation solely to obtain a right of recovery against any applicable Insurance Policy (but not to enforce a judgment against any property of the Debtors or Liquidating AHERF).

18.    <u>Injunctions</u>.  As of the Effective Date. except as otherwise provided in the Plan, all Persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place. any action or other proceeding, whether directly, derivatively or otherwise against the Debtors, their Estates, the Chapter 11 Trustee or Liquidating AHERF, on account of or respecting any Claims. debts, rights. Causes of Action or liabilities discharged pursuant to the Plan, except to the extent expressly permitted under the Plan.

19.    Exculpation.  Neither the Debtors, the Chapter 11 Trustee, the Creditors'
Committee (including its individual members), the Bankruptcy Officers or their advisors, agents
or Professionals shall have or incur any liability to any holder of a Claim or any fiduciary for
such holder for any act or omission in connection with, related to, or arising out of, the
Chapter 11 Cases, the preparation or formulation of the Plan, the pursuit of confirmation of the
Plan, the consummation of the Plan or the administration of the Plan or the property to be
distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects,
the Debtors, the Chapter 11 Trustee, or Creditors' Committee and each of their respective
members, officers, directors, employees, advisors, agents and Professionals shall be entitled to
rely upon the advice of counsel with respect to their duties and responsibilities under the Plan;
provided, however, that nothing in the Plan shall, or shall be deemed to, release or exculpate such
parties with respect to their respective obligations or covenants arising pursuant to this Plan.
Notwithstanding the foregoing, and except as provided in the PBGC Settlement Agreement,
nothing in this Plan shall constitute or be construed as a release or exculpation from liability for
claims against non-Debtors brought by the Pension Benefit Guaranty Corporation under the
Employee Retirement Income Security Act or other applicable laws that relate to fiduciary
obligations to or administration of the Allegheny Health, Education and Research Foundation
Retirement Account Plan, the Graduate Hospital Pension Plan, the Graduate Hospital Teamsters
Plan and the Zurbrugg Memorial Hospital Retirement Income Plan.

20.    Settlements and Compromises.  All settlements and compromises
contained in the Plan, including, but not limited to, those referred to in paragraph M of this
Order, are approved pursuant to Bankruptcy Rule 9019 as fair, prudent and reasonable

compromises of the controversies and Claims resolved by such settlements and are binding upon all entities affected thereby.

21.     Estate Assets' Reversion.  The following amounts shall become Estate Assets and shall be distributed pursuant to Section 6.6 of the Plan: (i) distributions under the Plan that are unclaimed for a period of one year after the date of such distribution and (ii) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash actually distributed on account of such Disputed Claim plus Reserve Income related thereto.

22.     Plan Documents.  The Chapter 11 Trustee is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents reasonably acceptable to the Creditors' Committee and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

23.     Rejection of Executory Contracts and Unexpired Leases.  Any executory contracts or unexpired leases (other than Insurance Policies) which (a) have not expired by their own terms on or prior to the Confirmation Date, (b) have not been assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, or (c) are not the subject of a motion to assume or reject the same which is pending at the time of the Confirmation Date, shall be deemed rejected on the Confirmation Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

24.    Rejection Damage Claims.  If the rejection of an executory contract or unexpired lease by the Debtors pursuant to Section 9.1 of the Plan results in a claim for damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estates, Liquidating AHERF or their respective properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Chapter 11 Trustee on or before forty-five days following the Confirmation Date.  Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims, or Centennial Unsecured Claims, as the case may be, subject to the provisions of the Plan.  The Chapter 11 Trustee shall have the right to object to any rejection damage claims filed in accordance with the preceding sentence.

25.    Retention of Jurisdiction.  Pursuant to Section 12.1 of the Plan, this Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to, the Chapter 11 Cases, the Plan and Liquidating AHERF pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code (a) to hear and determine the Recovery Actions or matters related thereunder to enable the Chapter 11 Trustee and the Creditors' Committee to prosecute the Recovery Actions; (b) to hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or to liquidate or estimate any Disputed Claim, provided that only the Chapter 11 Trustee, and the Creditors' Committee may file objections to Claims; (c) to hear and determine any and all applications by Professionals for compensation and reimbursement of expenses, pursuant to

Section 3.2(b) of the Plan; (d) to hear and determine any and all pending applications for the

rejection or assumption of executory contracts and unexpired leases. and fix and allow any

Claims resulting therefrom; (e) to enforce the provisions of the Plan subject to the terms thereof;

(f) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Plan

Documents or in the Confirmation Order as may be necessary to carry out the purpose and the

intent of the Plan; (g) to determine any Claim or liability to a governmental unit which may be

asserted as a result of the transactions contemplated herein; (h) to hear and determine matters

concerning state. local, and federal taxes in accordance with Sections 346. 505 and 1146 of the

Bankruptcy Code; and (i) to determine such other matters as may be provided for herein.

26.    Continuation of Creditors' Committee.  On the Effective Date, the

Creditors' Committee shall, among other things, continue to act as plaintiff in the Recovery

Actions, pursuant to Section 1123(3)(B) of the Bankruptcy Code, to which it is a party, and to

fulfil its other obligations under the Plan. as a five member committee consisting of one

representative of each of MBIA, PNC, the Centennial Indenture Trustee, Aetna US Healthcare.

Inc. and Health America. pursuant to bylaws which the Creditors' Committee may, in its sole

discretion, adopt.

27.    Continuation of Chapter 11 Trustee.  On the Effective Date, the Chapter

11 Trustee shall, among other things, continue to act as plaintiff in the Recovery Actions,

pursuant to Section 1123(3)(B) of the Bankruptcy Code. to which he is a party and to fulfill his

other obligations under the Plan and shall be appointed as sole trustee and chief liquidating

officer of Liquidating AHERF. subject in all respects to the supervision of the Creditors'

Committee, the provisions of the Plan and the Liquidating AHERF Bylaws.

28.    Professional Compensation and Expense Reimbursement Claims.  All

entities, including, without limitation, the individual members of the Creditors' Committee,

seeking an award by the Bankruptcy Court of professional fees, including the fees of the Chapter

11 Trustee, or of compensation for services rendered or reimbursement of expenses incurred

through and including the Confirmation Date under Sections 503(b)(2), 503(b)(3), 503(b)(4) or

503(b)(5) of the Bankruptcy Code, (a) shall file their respective final applications for allowances

of compensation for services rendered and reimbursement of expenses incurred through the

Confirmation Date (including, without limitation, for the period August 1, 2000 through and

including November 30, 2000) by no later than January 17, 2001, (b) shall appear at a hearing on

February 6, 2001 at which this Court shall  consider all of said final and interim fee applications

which heretofore have been filed but not determined by this Court, pursuant to such notice as this

Court may direct by separate order, and (c) if granted such an award by the Bankruptcy Court,

shall be paid in full in such amounts as are allowed by the Bankruptcy Court (i) on the later of the

Effective Date or the date such Administrative Expense Claim becomes an Allowed

Administrative Expense Claim, or as soon thereafter as is practicable or (ii) upon such other

terms as may be mutually agreed upon between such holder of an Allowed Administrative

Expense Claim and the Chapter 11 Trustee and the Creditors' Committee.  All fees and expenses

of Professionals for services rendered in connection with the Chapter 11 Cases and the Plan after

the Confirmation Date, including, without limitation, those relating to the occurrence of the

Effective Date, the prosecution of Causes of Action preserved hereunder and the resolution of

Disputed Claims, shall be paid by the Chapter 11 Trustee from the assets of  Liquidating AHERF

in the amount of 90% of fees asserted and 100% of expenses incurred upon receipt of reasonably

detailed invoices therefor by the Chapter 11 Trustee and Creditors' Committee, for such amounts

and on such terms as may be agreed to between such Professional and the Chapter 11 Trustee, with the consent of the Creditors' Committee, with the payment of the balance of such fees to be made upon fee applications to be filed with and determined by the Bankruptcy Court on a quarterly basis, upon such notice as the Bankruptcy Court may direct. To the extent of any inconsistencies between this paragraph and Section 3.2(b) of the Plan, this paragraph shall govern.

29.    <u>Notice</u>. Notice of entry of this Confirmation Order and of the Effective Date of the Plan, substantially in the form annexed hereto as Exhibit A (which notice is hereby approved in all respects), shall be, and hereby is, deemed sufficient (a) if served upon (i) all holders of remaining claims either listed on the Debtors' schedule of assets and liabilities or on the claims docket, (ii) all entities which are party to any litigation in which the Chapter 11 Trustee or the Creditors' Committee, as the case may be, are the plaintiff or defendant, (iii) all entities or individuals which are parties to executory contracts or unexpired leases with the Debtors, (iv) the taxing authorities in any jurisdiction where the Debtors transact business, (v) the Office of the United States Trustee, (vi) the Securities and Exchange Commission, (vii) the District Director of the Internal Revenue Service, (viii) the United States Attorney for the Western District of Pennsylvania and (ix) any individual or entity filing a notice of appearance in the Chapter 11 Cases; and (b) if published once within twenty (20) days from the Effective Date in the national editions of <u>The New York Times</u> and <u>The Wall Street Journal</u>, <u>The Pittsburgh Post-Gazette</u> and in <u>The Philadelphia Inquirer-Daily News</u>.

30.  ᐧ Cancellation and Surrender of Existing Securities and Agreements. Except as may otherwise be provided in the Plan, including without limitation, as provided in Sections 5.3(f) and 5.4(e) and (f) of the Plan, on the occurrence of the Effective Date and the making of the initial distribution to the holders of Secured and Unsecured Claims, the promissory notes, share certificates, bonds and other instruments evidencing Claims, except as set forth in Section 9.3 of the Plan, against the Debtors shall be canceled without further act or action by any Person under any applicable agreement, law, regulation, order or rule and  the obligations of the Debtors under any  promissory notes, share certificates, bonds and other instruments evidencing any Claim shall be deemed discharged and released.

31.    Settlement with AHERF Lenders.  This Order is premised upon the settlement embodied in the Stipulation.  Except for the provisions of this paragraph which shall remain in full force and effect, this Order, and any provision hereof, shall not be effective or become final and enforceable, and the Effective Date shall not occur, unless and until the Settlement Order becomes a Final Order on or before December 26, 2000.  In the event that the Settlement Order does not become a Final Order on or before December 26, 2000, (i) this Order, and each provision hereof, shall immediately become and be deemed null and void ab initio; (ii) the AHERF Lenders' Objection shall immediately be deemed reinstated; (iii) this Court shall schedule a hearing with respect to confirmation of the Plan, at which hearing all parties will be entitled to a full plenary hearing with respect to the AHERF Lenders' Objection, including, without limitation, their objection to substantive consolidation as provided in the Plan; and (iv) any and all evidence or proof previously presented to the Court and any and all findings of fact and conclusions of law previously determined by the Court with respect to any of the issues

raised by the AHERF Lenders' Objection. including, without limitation. substantive

consolidation under the Plan. shall be deemed withdrawn and shall be of no precedential or

prejudicial effect as against the AHERF Lenders. and said withdrawal shall be of no precedential

or prejudicial effect as against the Chapter 11 Trustee and the Creditors' Committee.

32.    Effect of Reference to the Plan in this Confirmation Order.  The failure to

reference or discuss any particular provision of the Plan in this Confirmation Order shall have no

effect on the validity, binding effect and enforceability of such provision, and each provision of

the Plan shall have the same validity. binding effect and enforceability as if fully set forth in this

Confirmation Order.

33.    Headings.  Headings utilized herein are for the convenience of reference

only, and shall not constitute a part of the Plan or this Confirmation Order for any other purpose.

34.    Inconsistencies.  In the event of any inconsistencies between the Plan or

other agreement, instrument or document intended to implement the provisions of the Plan, the

provisions of the Plan shall govern unless otherwise explicitly provided for in such agreements,

instruments or documents.  In the event of any inconsistency between the Plan and any

agreement, instrument or document intended to implement the Plan and this Confirmation Order,

the provisions of the Plan and any such agreement, instrument or document shall govern. unless

otherwise expressly provided in this Confirmation Order.

35.     <u>Integration of Confirmation Order Provisions</u>.  Except as provided in paragraph 31 above, the provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent.

Dated: Pittsburgh, Pennsylvania
      December /4, 2000


                                                                             The Honorable M. Bruce McCullough
                                                                             United States Bankruptcy Court Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:                                              :

ALLEGHENY HEALTH, EDUCATION            :        Case Nos. 98-25773 MBM through
AND RESEARCH FOUNDATION,               :        98-25777 MBM inclusive
    Case No. 98-25773                       :

                                                  :
ALLEGHENY UNIVERSITY MEDICAL          :        Chapter 11
PRACTICES                              :
    Case No. 98-25774                       :

                                                  :
ALLEGHENY HOSPITALS,                   :
CENTENNIAL                             :
    Case No. 98-25775                       :        Consolidated for
                                                  :        Administration at 98-25773 MBM
ALLEGHENY UNIVERSITY                  :
HOSPITAL-EAST                          :
    Case No. 98-25776                       :

                                                  :
ALLEGHENY UNIVERSITY                  :
OF THE HEALTH SCIENCES                 :
    Case No. 98-25777                       :

_____ :

## NOTICE OF CONFIRMATION AND EFFECTIVENESS OF PLAN

PLEASE TAKE NOTICE, that on December __, 2000, the United States

Bankruptcy Court for the Western District of Pennsylvania entered an order (the "Confirmation

Order") confirming the Chapter 11 Trustee's Second Amended Consolidated Liquidating Plan of

Reorganization dated December 5, 2000 (the "Plan") of the above-captioned debtors

(collectively, the "Debtors").

PLEASE TAKE FURTHER NOTICE, that the Effective Date of the Plan, as

defined therein, occurred on December ___, 2000.

PLEASE TAKE FURTHER NOTICE, that the Confirmation Order is available for inspection in the Office of the Clerk of the United States Bankruptcy Court located at the United States Bankruptcy Court for the Western District of Pennsylvania, 600 Grant Street, Pittsburgh, Pennsylvania 15222.

PLEASE TAKE FURTHER NOTICE, that pursuant to the Plan, the automatic stay provided for in the Debtors' Chapter 11 cases under Section 362 of the Bankruptcy Code and in existence on the date of the confirmation of the Plan, is dissolved as of the Effective Date; the injunction imposed pursuant to the Bankruptcy Court's March 31, 1999 order staying all actions against non-debtors and actions that may implicate the Debtors' Executive Protection Policies (as defined in the Disclosure Statement) shall remain in effect.

Dated: December ___, 2000

PROSKAUER ROSE LLP

By: _____
Alan B. Hyman (AH 6655)
Jeffrey W. Levitan (JL 6155)
Michael E. Foreman (MF 5802)
1585 Broadway
New York, New York 10036
(212) 969-3000

- and -

SABLE, PUSATERI, ROSEN, GORDON &
ADAMS, LLC
Robert G. Sable (PA I.D. No. 00964)
Mark E. Freedlander (PA I.D. No. 70593)
Frick Building, 7th Floor
Pittsburgh, PA 15219
(412) 471-4996

Attorneys for the Chapter 11 Trustee

The United States Bankruptcy Court For The Western District
of Pennsylvania I, the undersigned Deputy Clerk, U.S. Bankruptcy
Court in and for said District, DO HEREBY CERTIFY that this
copy has been compared with the original thereof and that it is
complete and correct copy of such original as it appears of
record and on file in my office.

IN TESTIMONY WHEREOF I have hereunto set my hand at
Pittsburgh in said District, this 14 day of December 20 00

_____
Deputy Clerk, U.S. Bankruptcy Court

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br>ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION,<br>    Case No. 98-25773<br>ALLEGHENY UNIVERSITY MEDICAL PRACTICES<br>    Case No. 98-25774<br>ALLEGHENY HOSPITALS, CENTENNIAL<br>    Case No. 98-25775<br>ALLEGHENY UNIVERSITY HOSPITAL-EAST<br>    Case No. 98-25776<br>ALLEGHENY UNIVERSITY OF THE HEALTH SCIENCES<br>    Case No. 98-25777 | Case Nos. 98-25773 MBM through<br>98-25777 MBM inclusive<br><br>Chapter 11<br><br>Consolidated for Administration at<br>98-25773 MBM |

```
9825777 0050324-00   J0133A01   S#0002687
CAMPBELL & LEVINE LLC
ATTN: D SALZMAN & S LEVINE
1700 GRANT STREET
PITTSBURGH          PA 15219
```

### NOTICE OF CONFIRMATION AND EFFECTIVENESS OF PLAN

    PLEASE TAKE NOTICE, that on December 14, 2000, the United States Bankruptcy Court for the Western District of Pennsylvania entered an order (the "Confirmation Order") confirming the Debtors' Second Amended Consolidated Liquidating Plan of Reorganization dated December 5, 2000 (the "Plan") of the above-captioned debtors (collectively, the "Debtors").

    PLEASE TAKE FURTHER NOTICE, that the Effective Date of the Plan, as defined therein, occurred on December 26, 2000.

    PLEASE TAKE FURTHER NOTICE, that the Confirmation Order is available for inspection in the Office of the Clerk of the United States Bankruptcy Court located at the United States Bankruptcy Court for the Western District of Pennsylvania, 600 Grant Street, Pittsburgh, Pennsylvania 15222.

    PLEASE TAKE FURTHER NOTICE, that pursuant to the Plan, the automatic stay provided for in the Debtors' Chapter 11 cases under Section 362 of the Bankruptcy Code and in existence on the date of the confirmation of the Plan is dissolved as of the Effective Date. The injunction imposed pursuant to the Bankruptcy Court's March 31, 1999 order staying all actions against non-debtors and actions that may implicate the Debtors' Executive Protection Policies (as defined in the Disclosure Statement) shall remain in effect.

Dated: January 12, 2001

| | | |
|---|---|---|
| **PROSKAUER ROSE LLP** | | **MCGUIRE WOODS LLP** |
| By: /s/ Alan B. Hyman<br>Alan B. Hyman<br>Jeffrey W. Levitan<br>Michael E. Foreman<br>1585 Broadway<br>New York, New York 10036<br>(212) 969-3000 | - and - | Robert G. Sable<br>Mark E. Freedlander<br>Frick Building, 7th Floor<br>Pittsburgh, PA 15219<br>(412) 471-4996 |

                    Attorneys for the Chapter 11 Trustee

# COMMITTEE APPENDIX

## Tab 15

#7652

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | |
| | : | Case Nos. 98-25773 MBM through |
| ALLEGHENY HEALTH, EDUCATION | : | 98-25777 MBM inclusive |
| AND RESEARCH FOUNDATION, | : | |
| ALLEGHENY UNIVERSITY OF THE | : | Chapter 11 |
| HEALTH SCIENCES, ALLEGHENY | : | |
| UNIVERSITY MEDICAL PRACTICES | : | |
| ALLEGHENY HOSPITALS | : | Consolidated for |
| CENTENNIAL AND ALLEGHENY | : | Administration at 98-25773 MBM |
| UNIVERSITY HOSPITALS-EAST, | : | |
| | : | |
| Debtors. | : | |

COPY

## AMENDED DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE FOR THE AMENDED CONSOLIDATED LIQUIDATING PLAN OF REORGANIZATION OF THE DEBTORS

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.**

**PROSKAUER ROSE LLP**
1585 Broadway
New York, New York 10036
(212) 969-3000
Alan B. Hyman
Jeffrey W. Levitan
Michael E. Foreman

**SABLE, PUSATERI, ROSEN, GORDON & ADAMS, LLC**
700 Frick Building
Pittsburgh, Pennsylvania 15219
(412) 471-4996
Robert G. Sable
Mark E. Freedlander

Co-Counsel to WILLIAM J. SCHARFFENBERGER, Chapter 11 Trustee of Debtors

Dated: August 15, 2000
    New York, New York

4844/66146-003 NYLIB2/742922 v3

# TABLE OF CONTENTS

Page

I.
INTRODUCTION AND SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   A. Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B. Summary of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   C. Voting and Confirmation Procedures . . . . . . . . . . . . . . . . . . . . . . . . 8
      1. Who May Vote . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      2. Voting Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
      3. Acceptance or Rejection of the Plan . . . . . . . . . . . . . . . . . . . 10
      4. Confirmation Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      5. Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.
BACKGROUND AND EVENTS PRECIPITATING
THE CHAPTER 11 FILING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   A. Historical Overview of the Debtors . . . . . . . . . . . . . . . . . . . . . . . . 12
      1. The Pittsburgh Operations and Other Affiliates . . . . . . . . . . 13
      2. The Philadelphia and New Jersey Operations . . . . . . . . . . . . 13
   B. Pre-Petition Institutional Debt . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      1. Mellon Bank Group Credit Facility . . . . . . . . . . . . . . . . . . . 14
      2. The DVOG Bonds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
      3. Centennial Bonds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
   C. The Debtors' Downfall . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      1. The Shift in the Health Care Industry . . . . . . . . . . . . . . . . . 16
      2. AHERF's Acquisitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      3. The AHERF Corporate Structure; Failure of Oversight . . . . 17
      4. The Descent into Bankruptcy. . . . . . . . . . . . . . . . . . . . . . . . . 18

III.
THE CHAPTER 11 CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
   A. Commencement of Chapter 11 Cases . . . . . . . . . . . . . . . . . . . . . . 19
      1. Initial Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
      2. Appointment of Creditors' Committee . . . . . . . . . . . . . . . . . 20
   B. Sale of the Philadelphia Operations . . . . . . . . . . . . . . . . . . . . . . . 20
   C. Appointment of the Chapter 11 Trustee . . . . . . . . . . . . . . . . . . . . 21
   D. Transfer of Sole Membership of Western Operations and Settlement of
      Litigation with Pennsylvania Attorney General . . . . . . . . . . . . . . . 23
   E. Overview of Claims and Assets . . . . . . . . . . . . . . . . . . . . . . . . . . 24

1. Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
2. Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
3. Executive Protection Insurance Policies . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.
ADVERSARY PROCEEDINGS AND THE DEBTORS' LIQUIDATION . . . . . . . . . . . . . . . 27
   A. Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
   B. Adversary Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
      1. The Recovery Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
      2. Other Causes of Action Impacting the
         Executive Protection Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
      3. The Steadfast Insurance Company Administrative Expense Claim . . . . . . . . . 34
   C. The Post-Effective Date Liquidation . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
      1. Purpose of Liquidating AHERF. . . . . . . . . . . . . . . . . . . . . . . . . . . 34
      2. Transfer of Assets to Liquidating AHERF . . . . . . . . . . . . . . . . . . . . 34
      3. Liquidation of Estates Assets; Responsibilities of Chapter 11 Trustee
         and Creditors' Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
      4. Attorney-Client Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
      5. Payment of and Reserve for Liquidation Administrative Expenses . . . . . . . . 36
      6. Distributions of Estate Assets . . . . . . . . . . . . . . . . . . . . . . . . . . 36
      7. Excess Estate Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
      8. Method of Distributions under the Plan . . . . . . . . . . . . . . . . . . . . . 38
      9. Reserve on Account of Disputed Claims . . . . . . . . . . . . . . . . . . . . . 39
     10. Reversion to Estate Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
     11. Aggregation of Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
     12. Subordination of Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
     13. Investment Power . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

V.
OVERVIEW OF THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
   A. General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
   B. Compromises Regarding Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
      1. Settlement with Three Primary Institutional Creditors . . . . . . . . . . . . . 41
      2. Substantive Consolidation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
   C. Classification of Claims and Equity Interests . . . . . . . . . . . . . . . . . . . . . 46
   D. Treatment of Claims Under the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
      1. Unclassified Categories of Claims . . . . . . . . . . . . . . . . . . . . . . . . 47
      2. Unimpaired Classes of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
      3. Impaired Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
   E. Description of Other Provisions of the Plan . . . . . . . . . . . . . . . . . . . . . . 55
      1. Cancellation of Existing Securities and Agreements . . . . . . . . . . . . . . 55

2. Effect of Convenience Class Election and Centennial Convenience Class Election ............................................................ 55
3. Objections to and Resolution of Administrative Expense Claims, Claims and Liquidation Administrative Expenses ................................... 55
4. Discharge ........................................................... 56
5. Injunction Relating to the Plan ..................................... 56
6. Exemption from Transfer Taxes ...................................... 56
7. Retention of Jurisdiction ........................................... 57
8. Rejection of Executory Contracts and Unexpired Leases .............. 57
9. Rejection Damage Claims ............................................ 57
10. Certain Agreements Unaffected by Plan or Disclosure Statement ...... 58
11. Retiree Benefits .................................................... 59
12. Compensation and Benefit Programs ................................. 59
13. Bankruptcy Officers ................................................ 59
14. Post-Confirmation Fees, Final Decree ............................... 59
15. Reservation of Rights .............................................. 59

F. PROVISIONS REGARDING CONDITIONS PRECEDENT TO EFFECTIVE DATE AND EFFECTS OF CONFIRMATION ................................. 60
1. Conditions to Effectiveness ......................................... 60
2. Waiver of Conditions ............................................... 60
3. Deadline for Effective Date ......................................... 60
4. Continuation of Bankruptcy Injunction or Stays ..................... 61
5. General Release of Liens ............................................ 61
6. Full and Final Satisfaction ......................................... 61
7. Administration Pending Effective Date .............................. 61
8. Setoffs ............................................................. 61

G. Corporate Action ....................................................... 61
1. Effectuating Documents and Further Transactions. .................. 61
2. Corporate Action ................................................... 61
3. Dissolution of the Debtors other than AHERF ....................... 62
4. Dissolution and Consolidation of Subsidiaries ...................... 62
5. Dissolution of Liquidating AHERF .................................. 62
6. Dissolution or Insolvency Proceeding of AHSPIC .................... 62

H. Post-Confirmation Administration ....................................... 62
1. Continuation of Creditors' Committee ............................... 62
2. Continuation of Chapter 11 Trustee ................................ 62
3. Post-Confirmation Compensation for Bankruptcy Officers ........... 63

VI.
ACCEPTANCE AND CONFIRMATION OF THE PLAN ...................... 63
A. Acceptance of the Plan ................................................. 63

B. Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
   1. Confirmation Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
   2. Statutory Requirements for Confirmation of the Plan . . . . . . . . . . . . . . . . . . . . . 64
   3. Confirmation Without Acceptance by All Impaired Classes . . . . . . . . . . . . . . . . 65

VII.
CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN . . . . . . . . . . . . . . . 66
  A. Federal Income Tax Consequences to the Debtors . . . . . . . . . . . . . . . . . . . . . . . . . . 66
  B. Federal Income Tax Consequences to Holders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

VIII.
RISK FACTORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
  A. Risks of Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
  B. Insurance Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
  C. Liquidation of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
  D. Certain Bankruptcy Related Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
   1. Risk of Non-Confirmation of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
   2. Nonconsensual Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

IX.
ALTERNATIVES TO THE PLAN AND CONSEQUENCES OF REJECTION . . . . . . . . . . . . 69
  A. Alternative Plans . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
  B. Chapter 7 Liquidation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

X.
RECOMMENDATION AND CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

## EXHIBITS

A - Joint Plan of Reorganization

B - Organizational Chart

# I.

## INTRODUCTION AND SUMMARY

During the 1990s, Allegheny Health, Education and Research Foundation ("AHERF") became one of the largest integrated healthcare networks in the nation, providing healthcare services to thousands of patients each day, educating future physicians and researchers, and employing thousands of individuals throughout the state of Pennsylvania and parts of New Jersey. AHERF was thought to be a model for other healthcare organizations throughout the country.

The story of AHERF's decline — the imprudent acquisitions of facilities that added to the AHERF System's highly leveraged capital structure, the excessive compensation and perquisites granted by AHERF's Board of Trustees, the failure of AHERF's external auditors and accountants to disclose to independent trustees on AHERF's Board that AHERF's accounting records were being manipulated, the gross mismanagement, misconduct and breach of fiduciary duties by, among others, the Chief Executive Officer, the Chief Financial Officer and General Counsel of AHERF leading to several lawsuits and indictments, and the improper transfer of millions of dollars to a consortium of AHERF's pre-petition lenders shortly before the commencement of the Chapter 11 Cases — has been well documented in the media and reports surrounding the Chapter 11 Cases. As a result of the financial demise of the AHERF System, hundreds of people lost their jobs, a dozen investigations were commenced by various federal and state governmental agencies, two grand juries were impaneled and thousands of persons and entities were left holding unpaid Claims aggregating in excess of one billion dollars. On July 21, 1998, AHERF and several of its affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

William J. Scharffenberger, the Chapter 11 Trustee of the Debtors (the "Chapter 11 Trustee"), and the Official Committee of Unsecured Creditors (the "Creditors' Committee") have worked together to achieve the best possible result for the parties affected by the bankruptcy under the circumstances. During the pendency of the Chapter 11 Cases, the Chapter 11 Trustee and the Creditors' Committee liquidated the remaining assets of the Debtors' Estates to augment the potential recovery of creditors. In addition, they negotiated a settlement with the three institutional creditors asserting security interests in significant assets of the Debtors' Estates to permit a payment of a portion of their secured claims at intervals in order to allow a meaningful initial distribution to be made to holders of allowed unsecured Claims upon the occurrence of the Effective Date of the liquidating Chapter 11 plan. The Chapter 11 Trustee and the Creditors' Committee have also set aside sufficient funds in connection with the creation of a post-Effective Date vehicle to pursue lawsuits already commenced, or to be commenced, against those responsible for AHERF's demise. It is the shared goal of the Chapter 11 Trustee and the Creditors' Committee that recoveries made, whether through a negotiated settlement or judgment, can be distributed at intervals to secured and unsecured creditors after the initial distribution on the Effective Date.

After exploring other options, the Chapter 11 Trustee and the Creditors' Committee are confident no viable alternative to the liquidating Chapter 11 plan being proposed exists. Accordingly, the Chapter 11 Trustee and the Creditors' Committee urge acceptance of the plan.

## A. Overview

WILLIAM J. SCHARFFENBERGER, the Chapter 11 Trustee of AHERF, Allegheny University Medical Practices ("AUMP"), Allegheny Hospitals, Centennial ("Centennial"), Allegheny University of the Health Sciences ("AUHS") and Allegheny University Hospitals-East ("AUH-East") together with AHERF, AUMP, Centennial and AUHS, collectively, the "Debtors"), transmits this Amended Disclosure Statement pursuant to Section 1125(b) of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in connection with the Debtors' Amended Consolidated Liquidating Plan of Reorganization dated August 15, 2000 (the "Plan"). By an order entered August __, 2000 (the "Disclosure Statement Approval Order"), the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court"), has found that the Disclosure Statement provides adequate information to enable holders of Claims that are impaired under the Plan to make an informed judgment in exercising their right to vote for acceptance or rejection of the Plan. A copy of the Plan is annexed hereto as Exhibit A. All capitalized terms used but not defined in this Disclosure Statement shall have the respective meanings ascribed to such terms in the Plan, unless otherwise noted.

THE PLAN REPRESENTS A NEGOTIATED SETTLEMENT AND COMPROMISE OF SIGNIFICANT ISSUES RESPECTING THE TREATMENT OF CLAIMS OF CREDITORS ASSERTING SECURITY INTERESTS IN AND LIENS ON CERTAIN PROPERTY OF THE DEBTORS' ESTATES, GENERAL UNSECURED CREDITORS (INCLUDING CREDITORS HOLDING UNSECURED DEFICIENCY CLAIMS) AND CREDITORS HOLDING CLAIMS AGAINST DIFFERENT ESTATES, AS REACHED AMONG THE CHAPTER 11 TRUSTEE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (THE "CREDITORS' COMMITTEE") AND THE THREE PRIMARY INSTITUTIONAL CREDITORS OF THE DEBTORS' ESTATES: MBIA INSURANCE CORPORATION ("MBIA"), PNC BANK, N.A. ("PNC") AND BANK OF NEW YORK, AS INDENTURE TRUSTEE ("BNY") ACTING FOR AND ON BEHALF OF BONDHOLDERS HOLDING CLAIMS AGAINST CENTENNIAL (COLLECTIVELY, THE "CENTENNIAL BONDHOLDERS"). THE CHAPTER 11 TRUSTEE BELIEVES THAT THE PLAN REPRESENTS THE BEST OPPORTUNITY TO DISTRIBUTE THE ESTATES' CASH TO CREDITORS AT THE EARLIEST POSSIBLE DATE WHILE ESTABLISHING THE MEANS BY WHICH THE ESTATES WILL CONTINUE TO PURSUE SIGNIFICANT LITIGATION CLAIMS FOR THE BENEFIT OF THE ESTATES' SECURED AND UNSECURED CREDITORS. THE CREDITORS' COMMITTEE, MBIA, PNC AND BNY JOIN WITH THE CHAPTER 11 TRUSTEE IN STRONGLY URGING ACCEPTANCE OF THE PLAN.

## B. Summary of the Plan

*Treatment of Claims.* The Plan provides that the holders of MBIA/PNC Claims and Centennial Bondholder Claims will have allowed secured claims in agreed upon amounts resulting from arms' length negotiations, pursuant to which MBIA, PNC and BNY, on behalf of holders of Centennial Bondholder Claims, agreed to compromise their asserted security interests in and liens on assets of the Debtors' Estates to avoid potentially protracted litigation of legal and factual issues raised by the Chapter 11 Trustee and the Creditors' Committee in connection with their respective liens and security interests. Only a negotiated portion of these secured claims will be paid on the Effective Date, with the balance to be paid out of net litigation recoveries, if any.

Based on such compromises with MBIA, PNC and BNY, the Chapter 11 Trustee proposes to make the following distributions from the Debtors' available assets as of the Effective Date to holders of secured and unsecured claims as illustrated below. The Plan classifies all Claims of the Debtors into ten separate Class and subclasses. The following table summarizes the classification and treatment of Claims under the Plan. A more detailed description of the classification of Claims and the treatment afforded under the Plan is provided in Section V of the Disclosure Statement. At this time, the Chapter 11 Trustee cannot predict whether any additional distributions will be made based on recoveries from the litigations being pursued by the Chapter 11 Trustee or the Creditors' Committee. Such recoveries can materially alter the amount available to distribute to holders of Claims on and after the Effective Date.

| Class | Description | Class Treatment | Projected Distribution on Effective Date | Class Status | Class Voting Rights |
|---|---|---|---|---|---|
| Not Applicable | Administrative Expense Claims | Paid in full. | Paid 100% in Cash. | Not Applicable. | Not entitled to vote. |
| Not Applicable | Priority Tax Claims | Paid in full. | Paid 100% in Cash. | Not Applicable. | Not entitled to vote. |
| 1 | Priority Claims | Paid in full. | Paid 100% of Claim in Cash. | Unimpaired | Deemed to accept Plan. |
| 2 | General Secured Claims | Paid in full or otherwise rendered unimpaired. | Paid 100% of Claim in Cash or otherwise rendered unimpaired. | Unimpaired | Deemed to accept Plan. |
| 3 | Secured Claims of holders of Centennial Bondholder Claims | Granted an Allowed Secured Claim of $33 million and an Allowed Centennial Unsecured Claim of $105.6 million | Paid $20.5 million of Allowed Secured Claim and granted an entitlement to recover remaining portion of Allowed Secured Claim upon first distribution by Liquidating AHERF. | Impaired. | Entitled to vote. |

| Class | Description | Class Treatment | Projected Distribution on Effective Date | Class Status | Class Voting Rights |
|---|---|---|---|---|---|
| 4 | Secured Claim of holders of MBIA/PNC Claims | Granted an Allowed Secured Claim of $50 million and an Allowed Unsecured Claim of $340.3 million. | Paid $10 million of Allowed Secured Claim and granted an entitlement to recover remaining portions upon first, second and subsequent distributions by Liquidating AHERF in accordance with Plan. | Impaired. | Entitled to vote. |
| 5(A) | General Unsecured Claims | Distribution of Cash. | Paid 5% of Allowed Unsecured Claim in Cash and entitled to subsequent distributions by Liquidating AHERF in accordance with Plan based on participation equal to amount of Allowed Claim. | Impaired. | Entitled to vote. |
| 5(B) | Centennial Unsecured Claims | Distribution of Cash. | Paid 1.5% of Allowed Unsecured Claim in Cash and entitled to recover subsequent distributions by Liquidating AHERF in accordance with the Plan based on participation equal to 30% of Allowed Claim. | Impaired. | Entitled to vote. |
| 6(A) | Allowed Convenience Claims | Distribution of Cash to holders of Allowed Unsecured Claims less than $1,000. | Paid 10% of Allowed Unsecured Claim in Cash; not entitled to further distributions. | Impaired. | Entitled to vote. |
| 6(B) | Allowed' Centennial Convenience Claims | Distribution of Cash to holders of Allowed Centennial Unsecured Claims less than $5,000. | Paid 3% of Allowed Unsecured Claim in Cash; not entitled to further distributions. | Impaired. | Entitled to vote. |