DBR-CG-001660

DBR-CG-001661

DBR-CG-001662

Danforth

Powar

**REDACTED**

DBR-CG-001663



DBR-CG-001664

REDACTED

REDACTED

DBR-CG-001665

REDACTED

REDACTED

DBR-CG-001666



REDACTED

DBR-CG-001667

jdb

supposition

jdb

joe

DBR-CG-001668



DBR-CG-001669

B.

98

97

continually

(2)

DBR-CG-001670

DBR-CG-001671



DBR-CG-001672

REDACTED

DBR-CG-001673

REDACTED

DBR-CG-001674



Cooper
Larry
Barnes

DBR-CG-001675

*[Page consists of handwritten shorthand notation, largely illegible]*

Barnes

Power

REDACTED

DBR-CG-001676

REDACTED

REDACTED

REDACTED

DBR-CG-001677

DBR-CG-001678

REDACTED

REDACTED

DBR-CG-001679

Kpmg [illegible]

all [illegible]

[illegible]

DBR-CG-001680

Transcription of Shorthand Notes of Carol Gordon - Finance and Audit Committee, August 27, 1998

NOTE from transcriptionist:

( ) means I did not write anything in that spot at the meeting.

__________ means I cannot read it now.

___?___ means I do not know who said it.

Meeting began 8:00 a.m.

III. A.

Edelman: Regarding Section III. C. in the previous meeting, there were actions taken or not taken in the meeting which I have to question. Question is, are we approving the document or the actions? Have question because I think history has been re-written. I am not sure that report was correct.

Barnes: That is what Sherif said.

Edelman: Regarding Section IV. A., I don't believe it was proposed by Sherif at all. My understanding is that this Committee was set up by some of our Trustees. I am thinking more about our liability than anything else.

___?___ We will have a meeting a week from tomorrow when we will have more time, and we will defer approval of the minutes and review them with care. A week from tomorrow is a meeting of the Finance and Audit Committee.

Barnes: I propose that at the end of this meeting we suspend the meeting and reconvene a week from Friday at the same time. We have had a lot to do. There is a lot of stuff that has to be attended to.

IV. A.

Dionisio: Introduced two from Price Waterhouse, Partners in PricewaterhouseCoopers, and told who they were.

Neuwirth: Are they from Coopers or PriceWaterhouse?

Dionisio: Audit Committee may recall that early last Fiscal Year a proposal was made to the Audit Committee that in lieu of doing individual audits by obligated group, prior

management thought there would be a benefit to doing a single audit on a consolidated basis. Benefit was that our combined audit fees would be $150,000 less. There was some question about whether Trustees, on behalf of bondholders, would accept consolidated AHERF audit in lieu of Obligated Group audits, and the Audit Committee, in considering that recommendation, asked that management get approval for that approach from the Trustees. It is my understanding that in some cases positive approvals were received and in other cases, silence - and I am still sorting through the details. I have shared that because, looking back now with the events that have emerged, that in my judgment raises some issues because some accounting decisions and reporting decisions that may have been appropriate on a consolidated basis are problematic when you look at Obligated Groups. In addition, it is my view that there were some accounting and reporting decisions made that it appears subsequent facts did not support or there were facts that were, that may have been overlooked or misinterpreted. Net result is that in my judgment, as CFO for AHERF, there is a question whether or not the June, 1997 audit report can continue to be relied upon, and it is my judgment that it should not be relied upon because in the final analysis I believe there will be restatements with respect to the financial statements. I consulted with PriceWaterhouseCoopers; we discussed the issues, and Jim Stalder and I had a number of discussions with respect to these matters. I shared with PriceWaterhouse my views, and he shared things that had come to his firm's attention. I think it is safe to say at this time we are in general agreement that the financial statements should not be relied upon. I have an obligation as an officer of the corporation, the Board shares in that obligation, and PriceWaterhouse has an obligation to notify people who may be relying on those statements that they should not be relied upon. I can get into the details, but it is my understanding that we should delay discussion of the details until the meeting that you are going to call for next week.

Stalder: I will emphasize that we have worked together, and we are in agreement. Ben Korble is a senior auditor in our firm and could share the technical issues, and I think it is safe to say that regarding the notice: when it is discovered there is a question about the validity of the statements, we all have a responsibility that anyone who is relying on the statements is informed about our concern of the statements. The preferable way in announcing this matter, and we should not wait any longer to notify the user. In a bankruptcy, one might argue that historical statements are not relevant, but there are entities who are not bankrupt.

Korble: We do agree with what Joe said. We are not in a position to say we have signed off on this. We understand you expect us to check the details. The risk is that there is not a requirement to revise the accounts. Some of the matters that Joe and

his team are looking at have not been finalized, and other matters may require contemplation. If you have evidence that you need review them, our recommendation is that you notify users of the financial statements.

Danforth:

Powar:

REDACTED

Dionisio: With the issues at hand, I would think we would share the details of this with any potential purchaser. My view is that the adjustments we would be talking about primarily impact AHERF, which is not being acquired, so there should be no bearing on the potential divestiture. It affects the reclass of intercompany accounts which should have no bearing on the transaction and to the extent that there is any impact on earnings of the Obligated Groups, that impact would be in the years 1995 and 1996, so it wouldn't impact 1997 earnings. Lastly, both Vanguard and Tenet, in coming up with their EBIDTA calculations which support their offers, have been relying on a 12-month average, so they have mostly relied on the 1998 results.

Powar:

REDACTED

Barnes: As we go after this, when do we know what we are talking about? When will we have proof, and what are the facts? How long does this take?

Dionisio: I think we are close to reaching a conclusion.

Barnes: What does "close" mean?

Dionisio: By next Friday, I will be definitive in my views.

Powar:

REDACTED

REDACTED

Neuwirth: Obviously, it has been discussed with potential buyers that we are looking at this. Joe, you are going to have to be more definitive with me if you are leaning toward notifying users of the statements about the inability to rely on the statements. I would want to know what you are talking about this morning before we make any notice.

Barnes: The critical issue is the meeting with the Creditors' Committee.

Powar:

REDACTED

Barnes: If we put this on the shelf until Tuesday, would we be more definitive?

Stalder: We can provide more details by Tuesday but may not be through all the evaluations and conclusion but can brief the Committee with background concerns and possibilities.

Danforth: Have to spell out the probable changes because those changes should not impact the Vanguard transaction.

Powar: REDACTED

Gumberg: Could we take five minutes now and at least hear what we are dealing with? Is it balance sheet, cash flow?

Barnes: It is like peeling a scab, and we would be better off to get a report since it is only a few days. It would be more prudent to get a better report.

Neuwirth: Joe has come to the Committee with the people from PriceWaterhouse and said there is something wrong with the financial statements and people can no longer rely on them. I object if I could get any more information than that.

Palmer: Before we dismiss the group, I want to have a total Executive Session of the Committee.

Edelman:

REDACTED

REDACTED

Barnes: Clearly, there are disclosure issues and we will have to disclose them. That is the reason why I would like to get a good report with facts rather than do it today based on supposition, and I would like to suspend the meeting until Tuesday morning and hopefully we will have a more complete report than we have now.

Dionisio: If it would make any of the Committee members feel better, I am available for a briefing in advance of Tuesday. I would be glad to do that.

Edelman: I would suggest you might not want to do that because as you progress, you would have more news and we would have different information. I would rather have the story as a Committee.

Barnes: We will reconvene our Committee Tuesday morning at 8:00 a.m.

Barnes: What we want to do today is to tell you we don't have the details that Joe and Jim mentioned, but it is an issue of great concern and an issue that we will not only audit but must get sorted out very promptly and it has other implications with issues like A-133 that we need to be worried about. At this point, we have advised you that this is a worrisome issue on our plate and Tuesday morning we will try to peel the onion in a material and significant way. I apologize that we don't have the whole story laid out today, but we couldn't get it, so the choice was to tell you we have the problem and it is worrisome.

Barnes: Anything else on this issue? If not, Jim Stalder and Ben Korbele may be excused.

___?___ Could we move the Tuesday meeting to 7:00 a.m.?

IV. B.

Dionisio: What we would like to talk about for the balance of the meeting is the appointment of auditors for Fiscal Year 1998, and with respect to having some cleanup for 1997. I would recommend that the best way to deal with that is to consider whether we should continue to be represented by PricewaterhouseCoopers. If there are no other alternatives. If the Committee suggests a change in auditors, then Tony and I will prepare to make a recommendation on that matter.

Dionisio: I would like to share our perspective with you. With respect to the issue of

retaining PricewaterhouseCoopers, I have identified the pros and cons.

Advantages: With the merger between PriceWaterhouse and Coopers, we would be assured of having a new audit team, PriceWaterhouse representatives which would give us the advantage of a new team but give us the advantages of related to the continuity, work papers, access to prior auditors, and history on issues. (2) Prior to the merger, Coopers completed the interim audit which means the 1998 audit is about 50% complete. This consists of auditing transactions and transaction systems. Haven't completed year-end audit, which is directed at balance sheet items. We and PriceWaterhouse are near completion with respect to OMB-133, which is a special report related to the University and special grants. It is for 1997, always done a year in behind. Price Waterhouse is prepared to issue that report pending resolution of the consideration regarding the 1997 audit. Estimate is they could have it complete by September, 1997. That is an advantage because we need to have that audit and if we don't get it we would be required to seek favors from the OMB.

Barnes: How much money in grant contracts?

Dionisio: $60 - $80 million. Another advantage is that they could be a potential advocate in anticipated Director and Officer litigation. We would be in a position of supporting prior management and the Directors in respect to any third party action, given their obvious vested interest.

Dionisio: Cons: Collectively, there has been disappointment with respect to some past accounting and reporting matters. Based on my participation in recent AHERF Executive and Board meetings, there have been concerns expressed about some of the matters that came to our attention. You should be aware that the Coopers firm, and now, PricewaterhouseCoopers is generally not viewed favorably by the Creditors' Committee, given these circumstances, and given what has emerged, the Creditors' Committee generally would not react favorably to reappointment of PriceWaterhouse. PricewaterhouseCoopers is likely to be the subject of creditor litigation, because whenever creditors lose money and the accountants are always involved in litigation. Lastly, I think it is possible that if the creditors don't bring litigation against PriceWaterhouse and if the Directors & Officers are named in any litigation, then the Directors & Officers would consider cross claims against PricewaterhouseCoopers. So if we retained them, we might find ourselves in cross purposes with them.

Powar: Nothing to add.

Danforth: I think it is important to know how strongly the creditors feel about this.

Powar:

REDACTED

Edelman: Do you mean AHERF?

Sanzo: I think you, who are part of the Executive Committee, know that coming in to this position my early thoughts were that we should change auditors in the second year but that was before we filed and before we knew the members of the Creditors' Committee. I do not think the Pros outweigh the Cons, and I do not feel we have been well served by Coopers.

REDACTED

Dionisio: If it wasn't for the merger, we would be delighted to be associated with PriceWaterhouse.

Neuwirth: I would suggest that they change from PricewaterhouseCoopers.

Edelman: Is this a decision you need to make today?

Barnes: We have to make a decision today. It is an issue that should have ben resolved a month or so ago, but we have been trying to get cooperation. This decision is overdue and we have to make a decision.

Edelman: Will this interfere with the restatement of 1997?

Dionisio: No. When we talk about restating 1997, we don't go back and recall the 1997 report and reissue it. We are talking about when we do the 1998 audit to the extent that there is any adjustments that need to be made to beginning balance, they are made, but it won't have a bearing.

Barnes: Paul, was that a motion?

Yes.

Gumberg: Second.

Barnes: The general feeling is that we could change, and we must change if that is the decision.

Danforth: Who are PNC auditors?

___?___ Think it is Ernst & Young.

Palmer: I am comfortable with the motion and second but for clarification, if we change at this time will we have ready access to working papers and individuals who did work over the past two years or so from Coopers and will we need a subpoena to get our hands on those people? How easy is that?

Barnes:

Powar: REDACTED

___?___ You have here the motion that we replace PricewaterhouseCoopers with another firm.

Approved by all.

B. Recommendations of Successor Accountants

REDACTED

Dionisio:

We are not likely to produce audit reports in the traditional sense for the Debtor-in-Possession companies. There is no need for that with the exception of a requirement of the Debtor-in-Possession lenders. By the time we are required, the loan should be paid off and we will get a waiver.

Recommend at this time that we use the firm of Deloitte & Touche to do special procedures for the Debtors-in-Possession because we had selected them and advanced them to the court as representing us in terms of the Debtors-in-Possession. That leaves us with regard to the non-debtor companies - AGH, AUMC - Tony and I recommend that we appoint KPMG as auditors for the non-debtor companies. We received proposals from both firms, both are quality firms.

GOR0000089

While there may be advantages and disadvantages for each firm, given the activities of Deloitte with respect to the Debtors-in-Possession, it is our preference to hire someone else for the non-debtor companies.

Sanzo: I want to emphasize that. Joe has more experience with the accounting side, but our thought was that we could be happy with either firm, but as we thought about everything Deloitte would be doing on behalf of the debtors, it was our recommendation that we go with KPMG.

Powar: Have to go to Judge McCullough at 9:00

REDACTED

Barnes: Any further questions?

___?___ Have they both said they would do the work? (This question was from a member in Philadelphia).

Yes.

___?___ Do they feel they have any conflict?

Talked about pricing being fairly equal.

)ionisio: Audit fees are similar, $215/$220,000 plus expenses.

}arnes: Both competent firms, worldwide reputation. Management prefers KPMG.

delman: I move we approve the recommendation of management in both cases.

arnes: Moved and seconded that we accept KPMG as auditors of the non-debtor companies.

All agreed.

Executive session with Trustees.

05041
ıscription date: 5-25-01

GOR0000090

**EXHIBIT 18**



BT MASTERBRAND™
70 COUNT GREGG RULED 6" x 9"
STENO BOOK
Fin/Aud Cte 8-27-98
Fin/Aud Cte 1-1-98
BOOK NO.
FROM
TO
REORDER NO.
BTM00293
0 45082 00293 1
DBR-CG-006157A
Distributed By BT Office Products USA

DBR-CG-001682

DBR-CG-001683

DBR-CG-001684

DBR-CG-001685



DBR-CG-001686

REDACTED

DBR-CG-001687

REDACTED

DBR-CG-001688



DBR-CG-001689



DBR-CG-001690

**REDACTED**

DBR-CG-001691

DBR-CG-001692

REDACTED

REDACTED

DBR-CG-001693

[illegible]

etc.

[illegible]

ams [illegible]

REDACTED

DBR-CG-001694

REDACTED

REDACTED

DBR-CG-001695

REDACTED

REDACTED

DBR-CG-001696

**REDACTED**

*(handwritten shorthand notes — illegible)*

DBR-CG-001698

DBR-CG-001699