undersigned have the right to convert Advances of another type to Affected Advances or to continue any Affected Advance as a Eurodollar Advance. Bank shall promptly withdraw such notice when it shall have determined that the conditions described in the first sentence of this Section no longer exist.

ILLEGALITY. Notwithstanding any other provisions herein, if any law, regulation, treaty or directive or any change therein or in the interpretation or application thereof, shall make it unlawful for Bank to make or maintain Eurodollar Advances as contemplated by this Note, the Advances then outstanding as Eurodollar Advances, if any, shall be converted automatically to Prime Rate Advances on the last day of the then current Interest Period with respect thereto or within such earlier period as required by law. The undersigned hereby agrees promptly to pay Bank, upon demand by Bank, any additional amounts necessary to compensate Bank for any costs incurred by Bank in making any conversion in accordance with this Section on a day other than the last day of an Interest Period, including, but not limited to, any interest or fees payable by Bank to lenders of funds obtained by it in order to make or maintain its Eurodollar Advances hereunder and any loss incurred in liquidating or re-employing deposits from which such funds were obtained (Bank hereby agreeing to use all reasonable efforts to minimize such cost but Bank's notice of such costs to be conclusive absent manifest error).

REQUIREMENTS OF LAW. In the event that any change in law, regulation, treaty or directive or in the interpretation or application thereof or compliance by Bank with any request or directive made subsequent to the date hereof (whether or not having the force of law) from any central bank or other governmental authority, agency or instrumentality:

(i) shall subject Bank to any tax of any kind whatsoever with respect to this Note, or any Advances made by it hereunder, or change the basis of taxation of payments to Bank of principal, interest or any other amount payable hereunder (except for any taxes imposed on or measured by the overall income of Bank);

(ii) shall impose, modify or hold applicable any reserve, special deposit, compulsory Advance, FDIC insurance or similar requirement against assets held by, or deposits or other liabilities in or for the account of, advances or Advances by, or other credit extended by, or any other acquisition of funds by, any office of Bank which are not otherwise included in the determination of the Eurodollar Rate hereunder;

(iii) affects the amount of capital required or expected to be maintained by Bank or any corporation controlling Bank and Bank determines the amount of capital required is increased by or based upon the existence of this Note or any Advance hereunder, as determined by Bank in its reasonable discretion; or

7

F&L-01-014178

(iv) shall impose on Bank any other condition;

and the result of any of the foregoing is to increase the cost to Bank of making, renewing or maintaining any Advance hereunder or to reduce any amount receivable hereunder then, in any such case, the undersigned shall promptly pay Bank, upon its demand, any additional amounts necessary to compensate Bank for such additional costs or reduced amount receivable as determined by Bank. If Bank becomes entitled to claim any additional amounts pursuant to this Section, it shall promptly notify the undersigned of the event by reason of which it has become so entitled. A certificate as to any additional amounts payable pursuant to the foregoing sentence submitted by Bank to the undersigned shall be conclusive in the absence of manifest error.

INDEMNITY. The undersigned agrees to indemnify Bank and to hold Bank harmless from any loss or expense which Bank may sustain or incur as a consequence of (a) default by the undersigned in payment when due of the principal amount of or interest on the Fixed Rate Advances, including, but not limited to, any such loss or expense arising from interest or fees payable by Bank to lenders of funds obtained by it in order to maintain its Eurodollar Advances hereunder and any loss incurred in liquidating or re-employing deposits from which such funds were obtained, (b) default by the undersigned in making a borrowing or conversion after the undersigned has given a notice in accordance hereof, (c) default by the undersigned in making any prepayment after the undersigned has given a notice of prepayment in accordance hereof or (d) a prepayment of a Fixed Rate Advance on a day which is not the last day of an Interest Period with respect thereto, or the failure of the undersigned to borrow any Eurodollar Rate Advance after notice has been given to Bank in accordance hereof, including, but not limited to, any such loss or expense arising from interest or fees payable by Bank to lenders of funds obtained by it in order to maintain its Eurodollar Advances hereunder any and loss incurred in liquidating or re-employing deposits from which such funds were obtained. This covenant shall survive for one (1) year following the payment of the this Note; Bank agrees, however, to promptly notify the undersigned of any event which would result in an indemnification obligation on the part of the undersigned pursuant to this Section.

ADVANCE ACCOUNT. Bank shall open and maintain on its books an Advance account in the name of the undersigned with respect to Advances, payments and the computation and payment of interest hereunder. Such Advance account shall be conclusive and binding on the undersigned as to the amount at any time due to Bank from the undersigned except in the case of manifest error.

SECURITY INTEREST IN BANK ACCOUNTS AND OTHER PROPERTY. The undersigned also gives to Bank a security interest for the amount of this and all other obligations of the undersigned to Bank, in

8

any other property, credits, securities or moneys of the undersigned, which may at any time be in the possession of, or owed by, Bank in any capacity whatsoever, including, without limitation, the balance of any deposit account maintained by the undersigned with Bank. The undersigned authorizes Bank to apply any of the above security to the payment of any of the above obligations, or interest due thereon, at its option and discretion, at any time and from time to time. The surrender of this Note, upon payment or otherwise, shall not affect the right of Bank to retain the above security for any other obligations of the undersigned, and the undersigned agrees to take all necessary steps to preserve all rights therein of the undersigned or Bank against third parties.

EVENTS OF DEFAULT AND ACCELERATION. This and all other obligations of the undersigned to Bank shall be and become immediately due and payable without any demand or notice whatsoever, upon the occurrence of any of the following described events, each of which will constitute a default:

(a) Any failure of the undersigned to make any payment when due of the principal or interest of this or any other obligations of the undersigned to Bank;

(b) Any failure of the undersigned to comply fully with all of the terms and conditions of this or any other obligations or agreements of the undersigned to or with Bank or contained in any security agreement or device securing any other obligation of the undersigned to Bank;

(c) Any materially adverse change in the financial condition of the undersigned;

(d) Any assignment for the benefit of creditors of, or the commencement of any bankruptcy, receivership, insolvency, reorganization or liquidation proceedings by or against, the undersigned;

(e) The institution of any garnishment proceedings by attachment, levy or otherwise, against any deposit balance maintained, or any property deposited, with Bank by the undersigned;

(f) The creation of any lien, or the issuance of any attachment, against the property of or the entry of judgment against, the undersigned; or

(g) The failure of the undersigned to submit promptly to Bank hereof such financial information as may be reasonably required by the Bank, including without limitation, detailed balance sheets and income statements.

WAIVER OF EXEMPTIONS. The undersigned waives all laws exempting real or personal property from execution.

9

F&L-01-014180

ATTORNEY'S FEE FOR COLLECTION.  If this Note is not paid when due and is placed with an attorney for collection, and whether or not suit is entered hereon, the undersigned further agrees to pay Bank, in addition to the principal and interest then due, the costs of suit and reasonable attorney's fees.

No failure on the part of Bank to exercise any of its rights hereunder shall be deemed a waiver of such rights or of any default.  Unless stated otherwise herein, any notice which Bank shall elect to give shall be deemed to be given if deposited in the mails addressed to the undersigned at its address on Bank's records.

This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without application of any statute relating to conflicts of law.

WITNESS the due execution and sealing hereof with the intent to be legally bound hereby.

ATTEST:                              THE MEDICAL COLLEGE OF        (SEAL)
                                         PENNSYLVANIA

_____            By _____
Title  ASST. SECRETARY               Title  TREASURER


ATTEST:                              THE MEDICAL COLLEGE          (SEAL)
                                         HOSPITALS

_____            By _____
Title  ASST. SECRETARY               Title  TREASURER


tlf-9/3/92


F&L-01-014181

TO THE PITTSBURGH NATIONAL BANK

Copy of Resolution of Board of Directors of <u>Medical College Hospitals (Main Clinical Campus        )</u>
(Name of Corporation)

"RESOLVED:

1. That the President, Vice-President, Treasurer, Assistant Treasurer, Secretary and Assistant Secretary of this Corporation, or any one or more of them, are hereby authorized in the name and on behalf of this Corporation from time to time (1) to borrow money and to obtain credit from The Pittsburgh National Bank and to sell to or discount with said Bank any evidences of indebtedness and choses in action owned by this Corporation, on such terms as may be required by said Bank: (2) to authorize and cause the issuance of letters of credit and the purchase or sale of exchange for future delivery by said Bank for the account of this Corporation, on such terms as may be required by said Bank; (3) to give said Bank one or more mortgage or other liens on any real property of this Corporation or one or more liens on or security interests in any personal property of this Corporation to secure the payment and performance of this Corporation's obligations and liabilities of any nature to said Bank; and (4) in connection with the foregoing, to execute and deliver  any instruments and/or agreements required by said Bank, including those authorizing confession of judgment.

2. That the Secretary is hereby directed to file with said Bank a certified copy of this Resolution and a list of the persons, together with specimens of their signatures, who are the present holders of the said offices, and that said Bank shall be entitled as against this Corporation to presume conclusively that the persons so certified as holding such offices continue respectively to hold the same until otherwise notified in writing by the Secretary.

3. That this Resolution, insofar as said Bank is concerned, shall continue in full force and effect until receipt by said Bank of written notice from the Secretary of the changes, if any, therein."


Certification

September 30, 1992
(Date)

I hereby certify that the foregoing is a true copy of a Resolution regularly presented to and adopted by the Board of

Directors of

<u>Medical College Hospitals (Main Clinical Campus Division)</u>       , a <u>Pennsylvania</u>
(Name of Corporation)                                        (State)

corporation, on September 30, 1992, at which a quorum was present and voted, and that the names of the present holders of the

offices referred to in said Resolution and specimens of their signatures are as follows:

| Office (typed) | Name of Present Holder (typed) | Specimen Signature |
|---|---|---|
| President | Donald M. Kaye, M.D. | *Donald Kaye* |
| Treasurer | Irene M. Cumming | *Irene M. Cumming* |
| Asst. Treasurer | Charles P. Morrison | *Charles P. Morrison* |
| Secretary | Nancy A. Wynstra, Esq. | *Nancy A. Wynstra* |
| Asst. Secretary | Mark A. Lieberman, Esq. | *Mark Lieb* |
| Asst. Secretary | Joan M. Mitchell | *Joan M. Mitchell* |
| Asst. Secretary | Stephanie S. Unger, Esq. | *Stephanie S. Unger* |
| Asst. Secretary | Lynn R. Isaacs | *Lynn R. Isaacs* |

(CORPORATE SEAL)

*[signature]* Secretary of <u>Medical College Hospitals (Main Clinical Campus       )</u>
(Name of Corporation)

**F&L-01-014182**

TO THE PITTSBURGH NATIONAL BANK

Copy of Resolution of Board of Directors of _____Medical College of Pennsylvania_____
                                                        (Name of Corporation)

"RESOLVED:

1. That the President, Vice-President, Treasurer, Assistant Treasurer, Secretary and Assistant Secretary of this Corporation, or any one or more of them, are hereby authorized in the name and on behalf of this Corporation from time to time (1) to borrow money and to obtain credit from The Pittsburgh National Bank and to sell or discount with said Bank any evidences of indebtedness and choses in action owned by this Corporation, on such terms as may be required by said Bank: (2) to authorize and cause the issuance of letters of credit and the purchase or sale of exchange for future delivery by said Bank for the account of this Corporation, on such terms as may be required by said Bank; (3) to give said Bank one or more mortgage or other liens on any real property of this Corporation or one or more liens on or security interests in any personal property of this Corporation to secure the payment and performance of this Corporation's obligations and liabilities of any nature to said Bank; and (4) in connection with the foregoing, to execute and deliver any instruments and/or agreements required by said Bank, including those authorizing confession of judgment.

2. That the Secretary is hereby directed to file with said Bank a certified copy of this Resolution and a list of the persons, together with specimens of their signatures, who are the present holders of the said offices, and that said Bank shall be entitled as against this Corporation to presume conclusively that the persons so certified as holding such offices continue respectively to hold the same until otherwise notified in writing by the Secretary.

3. That this Resolution, insofar as said Bank is concerned, shall continue in full force and effect until receipt by said Bank of written notice from the Secretary of the changes, if any, therein."

Certification

September 30, 199~
                                                              (Date)

I hereby certify that the foregoing is a true copy of a Resolution regularly presented to and adopted by the Board of

Directors of

__Medical College of Pennsylvania_____ , a ___Pennsylvania_____
              (Name of Corporation)                          (State)

corporation, on September 30, 1992, at which a quorum was present and voted, and that the names of the present holders of the

offices referred to in said Resolution and specimens of their signatures are as follows:

| Office (typed) | Name of Present Holder (typed) | Specimen Signature |
|---|---|---|
| President | D. Walter Cohen, D.D.S. | |
| Treasurer | Irene M. Cumming | |
| Asst. Treasurer | Charles P. Morrison | |
| Asst. Treasurer | David W. McConnell | |
| Secretary | Nancy A. Wynstra, Esq. | |
| Asst. Secretary | Almeta Cooper | |
| Asst. Secretary | Joan M. Mitchell | |

(CORPORATE SEAL)

Assistant Secretary of __Medical College of Pennsylvania__
                                         (Name of Corporation)

F&L-01-014183

# COMMITTEE APPENDIX

## Tab 28

Microfilm Number __9142 945__          Filed with the Department of State on          **JUL 03 1991**

Entity Number __1564885__

_Christopher A. Lewis_
Secretary of the Commonwealth

9/1

# ARTICLES OF AMENDMENT - DOMESTIC NONPROFIT CORPORATION
### DSCB:15-5915 (Rev 89)

In compliance with the requirements of 15 Pa. C.S. § 5915 (relating to articles of amendment), the undersigned nonprofit corporation, desiring to amend its articles, hereby states that:

1. The name of the corporation is: __United Hospitals, Inc.__

2. The (a) address of this corporation's current registered office in this Commonwealth or (b) commercial registered office provider and the county of venue is (the Department is hereby authorized to correct the following address to conform to the records of the Department):

   (a) __100 West Laurel Avenue__     __Cheltenham__     __PA__     __19012__     __Montgomery__
   Number and Street          City          State     Zip          County

   (b) _____
   Name of Commercial Registered Office Provider                                    County

   For a corporation represented by a commercial registered office provider, the county in (b) shall be deemed the county in which the corporation is located for venue and official publication purposes.

3. The statute by or under which it was incorporated is: __PA Nonprofit Corporation Law__

4. The date of its incorporation is: __April 23, 1990__

5. (Check, and if appropriate complete, one of the following):

   _X_ The amendment shall be effective upon filing these Articles of Amendment in the Department of State.

   ___ The amendment shall be effective on: _____

6. (Check one of the following):

   ___ The amendment was adopted by the members pursuant to 15 Pa. C.S. § 5914(a).

   _X_ The amendment was adopted by the board of directors pursuant to 15 Pa. C.S. § 5914(b).

7. (Check, and if appropriate complete, one of the following):

   _X_ The amendment adopted by the corporation, set forth in full, is as follows:

   Article One – Name is amended to read:  "The name of the corporation is  SDN, Inc."

   ___ The amendment adopted by the corporation as set forth in full in Exhibit A, attached hereto and made a part hereof.

M BURR KEIM COMPANY  PHILADELPHIA
1 800-532 8113

DSCB:15-5915 (Rev 89)-2

9142 946

8. (Check if the amendment restates the articles):

___The restated articles of incorporation supersede the original articles and all amendments thereto.

IN TESTIMONY WHEREOF, the undersigned corporation has caused these articles of amendment to be signed by a duly authorized officer thereof this _2nd_ day of ____July____, 19_91___.

United Hospitals, Inc.
(Name of Corporation)

BY: _____
(Signature)

TITLE: _Sherif S. Abdelhak, Chairman_

91 JUL -8 ⁞ 4:09

# COMMITTEE APPENDIX

## Tab 29

Microfilm Number **9139 773**

Entity Number 1564885

Filed with the Department of State on **JUN 28 1991**

*Christopher A. Lewis*

Secretary of the Commonwealth

# ARTICLES OF AMENDMENT - DOMESTIC NONPROFIT CORPORATION
### DSCB:15-5915 (Rev 89)

In compliance with the requirements of 15 Pa. C.S. § 5915 (relating to articles of amendment), the undersigned nonprofit corporation, desiring to amend its articles, hereby states that:

1. The name of the corporation is: United Hospitals, Inc.

2. The (a) address of this corporation's current registered office in this Commonwealth or (b) commercial registered office provider and the county of venue is (the Department is hereby authorized to correct the following address to conform to the records of the Department):

   (a) 100 West Laurel Avenue      Cheltenham      PA      19012      Montgomery
   Number and Street              City            State   Zip      County

   (b) _____  - -
   Name of Commercial Registered Office Provider                County

   For a corporation represented by a commercial registered office provider, the county in (b) shall be deemed the county in which the corporation is located for venue and official publication purposes.

3. The statute by or under which it was incorporated is: PA Nonprofit Corporation Law

4. The date of its incorporation is: April 23, 1990

5. (Check, and if appropriate complete, one of the following):

   ___ The amendment shall be effective upon filing these Articles of Amendment in the Department of State.

   X The amendment shall be effective on: July 1, 1991 at 12:02 A.M.

6. (Check one of the following):

   ___ The amendment was adopted by the members pursuant to 15 Pa. C.S. § 5914(a).

   X The amendment was adopted by the board of directors pursuant to 15 Pa. C.S. § 5914(b).

7. (Check, and if appropriate complete, one of the following):

   ___ The amendment adopted by the corporation, set forth in full, is as follows:

   X The amendment adopted by the corporation as set forth in full in Exhibit A, attached hereto and made a part hereof.

M BURR KEIM COMPANY PHILADELPHIA
1-800-533-8113

DSCB:15-5915 (Rev 89)-2

9139 774

8.   (Check if the amendment restates the articles):

_X_ The restated articles of incorporation supersede the original articles and all amendments thereto.

   IN TESTIMONY WHEREOF, the undersigned corporation has caused these articles of amendment to be signed by a duly authorized officer thereof this _28th_ day of ____June____, 19 _91_.

                              United Hospitals, Inc.
                              _____
                                    (Name of Corporation)

                              BY: _David W. McConnell_____
                                           (Signature)

                              TITLE:  David W. McConnell, President/Treasurer

9139 775

AMENDED AND RESTATED
ARTICLES OF INCORPORATION
OF
UNITED HOSPITALS, INC.
(A Pennsylvania Nonprofit Corporation)

### ARTICLE ONE
### Name

The name of the corporation is:
UNITED HOSPITALS, INC.

### ARTICLE TWO
### Address

The address of the registered office of the corporation in this Commonwealth is 100 West Laurel Avenue, Cheltenham, Pennsylvania  19012.

### ARTICLE THREE
### Purposes

UNITED HOSPITALS, INC. is incorporated under the Pennsylvania Nonprofit Corporation Law for the following purposes:

The Corporation shall be organized and operated exclusively to support, benefit, perform the functions of, or to carry out the purposes of St. Christopher's Hospital for Children and Allegheny United Hospitals, Inc., and in connection therewith:

(a)  To foster and support educational programs related to the rendering of care to the sick and injured and the promotion of health;

(b)  To promote and support scientific research in the field of health care;

(c)  To engage in any other business or activity consistent with the foregoing purposes which may lawfully be conducted on a nonprofit basis.

The corporation is organized and operated exclusively for charitable, educational and scientific purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, or the corresponding successor provisions of any United States Internal Revenue Law (hereinafter referred to as the "Code").  The corporation does not contemplate pecuniary gain or profit, incidental or otherwise.  No part of the net

9139 776

earnings of the corporation shall inure to the benefit of any director, officer or individual, except that the corporation shall be authorized and empowered to pay reasonable fees for services rendered and to make payments and distributions in furtherance of the purposes set forth herein.  No substantial part of the activities of the corporation shall include carrying on propaganda, or otherwise attempting to influence legislation, and no part of its activities shall include participating or intervening in (including publishing or distributing statements) any political campaign on behalf of or in opposition to any candidate for public office.

### ARTICLE FOUR
### Term of Existence

The term for which UNITED HOSPITALS, INC. shall exist is perpetual.

### ARTICLE FIVE
### No Stock

UNITED HOSPITALS, INC. is organized on a nonstock basis.

### ARTICLE SIX
### No Members

UNITED HOSPITALS, INC. shall have no members.

### ARTICLE SEVEN
### Board of Directors

The business, property and affairs of UNITED HOSPITALS, INC. shall be managed by its Board of Directors. The number, time and manner of election, term of office, voting rights and other provisions relating to the Board of Directors shall be fixed and governed by the Bylaws of UNITED HOSPITALS, INC.

### ARTICLE EIGHT
### Personal Liability of Directors

To the fullest extent that the laws of the Commonwealth of Pennsylvania permit elimination or limitation of the liability of directors, no director of UNITED HOSPITALS, INC. shall be personally liable for monetary damages as such for any action taken, or any failure to take any action, as a director.

Any amendment or repeal of this Article or adoption of any Bylaw or provision of the Articles of Incorporation of UNITED HOSPITALS, INC. which has the effect of increasing the liability of directors shall operate prospectively only and shall not affect any action taken, or any failure to act,

-2-

9139 777

prior to the adoption of such amendment, repeal, Bylaw or provision.

### ARTICLE NINE
### Distribution Upon Dissolution

In the event of the dissolution of UNITED HOSPITALS, INC., all assets of UNITED HOSPITALS, INC. remaining after the discharge or provisions for discharge of all its liabilities shall be distributed in the following manner to:

1) In equal amounts to St. Christopher's Hospital for Children ("St. Christopher's Hospital for Children" shall mean St. Christopher's Hospital for Children or its successor) and Allegheny United Hospitals, Inc. ("Allegheny United Hospitals, Inc." shall mean Allegheny United Hospitals, Inc. or its successor) provided that each corporation is then a qualified organization (a "qualified" organization shall mean an organization which qualifies as an exempt organization under Section 501(c)(3) of the Code and is described in Section 170(c)(2) of the Code);

2) in the event that either of St. Christopher's Hospital for Children or Allegheny United Hospitals, Inc. ceases to exist or is not a qualified organization, than solely to the remaining corporation provided such corporation is a qualified corporation;

3) In the event that neither of St. Christopher's Hospital for Children or Allegheny United Hospitals, Inc. are then in existence, or are qualified organizations, then solely to Allegheny Health Services, Inc. ("Allegheny Health Services, Inc." shall mean Allegheny Health Services, Inc. or its successor) provided that Allegheny Health Services, Inc. is a qualified corporation;

4) In the event that none of St. Christopher's Hospital for Children, Allegheny United Hospitals, Inc., or Allegheny Health Services, Inc. exist or are qualified corporations, then to such qualified organization or organizations designated by the Board of Directors.  No portion of the assets shall inure to the benefit of any director or officer of the corporation or any enterprise organized for profit.

Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction of the county in which the principal office of the corporation is located, exclusively for such purposes or to such organization or organizations, as said court shall determine, which are organized and operated exclusively for such purposes.

-3-

9139 778

## ARTICLE TEN
### Private Foundation

Notwithstanding any other provisions in these Articles, at all times when the corporation is a private foundation within the meaning of Section 509 of the Code, it shall be subject to the following additional restrictions.

(a)  It shall distribute its income at such times and in such manner as not to subject it to any tax under Section 4942 of the Code.

(b)  It shall not engage in any act of self-dealing as defined in Section 4941(d) of the Code.

(c)  It shall not retain excess business holdings as defined in Section 4943(c) of the Code.

(d)  It shall not make any investments as would subject it to tax under Section 4944 of the Code.

(e)  It shall not make any taxable expenditure as defined in Section 4945(d) of the Code.

# COMMITTEE APPENDIX

## Tab 30

*Rel 21*

AMENDED AND RESTATED BYLAWS
of
SDN, INC.
(a Pennsylvania nonprofit corporation)


ARTICLE ONE:  OFFICES

1.1  <u>REGISTERED OFFICE</u>.

The registered office of SDN, Inc. (the
"Corporation") in the Commonwealth of Pennsylvania shall be as
designated in the Articles of Incorporation and the principal
office of the Corporation shall be as determined from time to
time by the Board of Directors.

1.2  <u>OTHER OFFICES</u>.

The Corporation may also have offices at such other
places as the Board of Directors may designate from time to time
or the business of the Corporation may require.


ARTICLE TWO:  BOARD OF DIRECTORS

2.1  <u>POWERS</u>.

The business, property and affairs of the Corporation
shall be managed by the Board of Directors.  The Board shall
have all powers conferred on it by law, the Corporation's
Articles of InCorporation and these Bylaws.  In addition, the
Board of Directors shall exercise such powers as may be reserved
to the Corporation by the bylaws of any subsidiary and in
connection therewith shall receive and give due consideration to
recommendations of the board of directors of any such subsidiary
before exercising any reserved power.

2.2  <u>NUMBER AND QUALIFICATIONS</u>.

The Board of Directors shall consist of not less than
three (3) nor more than twenty (20) Directors, as determined
from time to time by resolution of the Board and shall include
at least one (1) officer or director from each of St.
Christopher's Hospital for Children and Allegheny United
Hospitals, Inc.  Directors of the Corporation shall be selected
in accordance with the qualifications set forth in Section 2.2
hereof.  Each Director shall be a natural person of full age but
need not be a resident of Pennsylvania.

DC 3121



2.3  <u>ELECTION AND TERM OF OFFICE</u>.

Each Director shall normally be elected to serve for a term of one (1) year and until his successor has been elected and qualified, or until his earlier death, resignation or removal. A Director may be re-elected to serve for an additional term or terms.

2.4  <u>VOTING AND OTHER RIGHTS</u>.

Each Director shall have one (1) vote, exercisable only in person. All Directors may attend and participate in all meetings of the Board and may serve as voting members of Committees of the Board.

2.5  <u>RESIGNATION AND REMOVAL</u>.

Any Director may resign at any time by giving written notice to the Board of Directors, the Chairperson, the President or the Secretary of the Corporation. Such resignation shall take effect on the date of the receipt of such notice or at any later time specified therein and, unless otherwise specified therein, the acceptance of such resignation by the Board shall not be necessary to make it effective. Any Director may be removed, for proper cause, by a majority vote of the Directors in office.

2.6  <u>VACANCIES</u>.

Vacancies occurring in the Board of Directors, including vacancies resulting from an increase in the number of Directors, shall be filled by a majority of the remaining Directors, even if less than a quorum, and each person so elected shall serve for the balance of the unexpired term for which he was elected.

2.7  <u>PLACE OF MEETINGS</u>.

The meetings of the Board of Directors shall be held at such place within or outside Pennsylvania as a majority of the Directors may from time to time select, or as may be designated in the notice calling the meeting.

2.8  <u>ANNUAL MEETING</u>.

The annual meeting of the Board shall be held on such date and at such time and place as the Board shall determine for the purpose of appointment of officers and the transaction of such other business as may properly be brought before the meeting. No notice of such meeting need be given.

DC 3122

2.9  <u>REGULAR MEETINGS</u>.

Regular meetings of the Board shall be held at such date, time and place as shall be designated by resolution of the Board.  Other than the adoption by the Board of such a resolution, no notice of such meetings shall be required.

2.10  <u>SPECIAL MEETINGS</u>.

Special meetings of the Board of Directors shall be held whenever called by the Chairperson of the Board or the President or by two (2) or more Directors.  Notice of such meetings shall be given to each Director in writing at least five (5) days prior to such meeting or personally or by telephone or telegraph at least forty-eight (48) hours prior to such meeting.  Such notice shall state the time and place of the meeting.

2.11  <u>QUORUM AND ACTION BY DIRECTORS</u>.

A majority of the Directors in office shall be necessary to constitute a quorum for the transaction of business.  The acts of a majority of the Directors present at a meeting at which a quorum is present shall be the acts of the Board of Directors. In the absence of a quorum, a majority of the Directors present may adjourn the meeting from time to time, without notice other than by announcement at the meeting, until a quorum shall be present.

2.12  <u>CONSENT OF DIRECTORS IN LIEU OF MEETING</u>.

Any action which may be taken at a meeting of the Board of Directors may be taken without a meeting, if a consent or consents in writing setting forth the action so taken shall be signed by all of the Directors and shall be filed with the Secretary of the Corporation.

ARTICLE THREE:   COMMITTEES

3.1  <u>EXECUTIVE COMMITTEE</u>.

At the annual meeting of the Board of Directors, the Board may select from its members an Executive Committee of the Board.  The Executive Committee shall designate a Chairperson from its members, except that such Chairperson shall not be the Chairperson of the Board or the President.  The Executive Committee shall have and may exercise all of the powers and authority, of the Board of Directors permitted by law between Board meetings, except as otherwise restricted in these Bylaws.

DC 3123

3.2  <u>COMMITTEES</u>.

The Chairperson of the Board may establish from time to time such Committees, with such members, who need not be Directors, and such powers, authority and duties, as the Board may deem advisable.  All action of Committees shall be subject to approval by the Board of Directors of the Corporation.

Unless already appointed as a voting member of a Committee, the Chairperson of the Board and the President shall be ex-officio members without vote of each Committee.

3.3  <u>AUTHORITY OF COMMITTEES</u>.

Any Committee shall have and may exercise such power and authority as granted by resolution of the Board of Directors or as provided in these Bylaws, except that no such Committee shall have any power or authority as to the following:

    (a)  The filling of vacancies in the Board of Directors;

    (b)  The adoption, amendment or repeal of these Bylaws;

    (c)  The amendment or repeal of any resolution of the Board of Directors; or

    (d)  Action on matters committed by these Bylaws or resolution of the Board of Directors to another Committee.

3.4  <u>TERM, RESIGNATION AND VACANCIES</u>.

Members of all Committees shall serve at the pleasure of the Board of Directors.  Any member of a Committee may resign at any time by giving written notice to the Chairperson of the Committee or to the Secretary of the Corporation.  Such resignation, which may or may not be contingent on formal acceptance, shall take effect on the date of receipt or at any later time specified in the notice.  A vacancy on any Committee and any increase in the membership thereof shall be filled for the balance of the unexpired term in the same manner as members of the Committee were originally appointed.

3.5  <u>MEETINGS AND NOTICE</u>.

Meetings of a Committee may be called by the Chairperson of the Board, the Chairperson of the Committee or a majority of the members of the Committee.  Each Committee shall meet as often as necessary to perform its duties.  Notice

of the time and place of a Committee meeting shall be given at least forty-eight (48) hours prior to the meeting.

### 3.6 VOTING, QUORUM AND MANNER OF ACTING.

At all meetings of a Committee each Committee member shall have one (1) vote, exercisable only in person. A majority of the voting members of a Committee shall constitute a quorum for the transaction of business at any meeting of the Committee. The act of a majority of the members of a Committee present at a meeting at which there is a quorum shall be the act of the Committee so meeting. Action may be taken without a meeting if a consent or consents in writing setting forth the action so taken shall be signed by all of the members of the Committee and shall be filed with the Secretary of the Corporation.

### 3.7 MINUTES AND REPORTS.

Each Committee shall record all minutes and votes of such Committee and shall report its actions to the Board of Directors at the next meeting of the Board.

### ARTICLE FOUR:  OFFICERS

### 4.1 DESIGNATION AND QUALIFICATIONS.

The Corporation shall have a Chairperson, a President, a Secretary and a Treasurer and may have such other Officers and Assistant Officers as may be elected by the Board of Directors. Any number of offices may be held by the same person. The Chairperson shall be a Director and all other Officers may but need not be Directors.

### 4.2 ELECTION. TERM OF OFFICE AND COMPENSATION.

At each annual meeting of the Board of Directors, the Board shall elect the Officers of the Corporation and such Officers shall hold office at the pleasure of the Board, or until his earlier death, resignation or removal. The Board shall have the power to fill any vacancies in any office occurring for whatever reason. The Board shall determine the compensation of the Officers.

### 4.3 RESIGNATIONS.

Unless a contract provides otherwise, any Officer may resign at any time by giving written notice to the Board of Directors, the Chairperson or the Secretary of the Corporation. Such resignation shall take effect on the date of the receipt of such notice or at any later time specified therein and, unless

DC 3125

otherwise specified therein, the acceptance of such resignation by the Board shall not be necessary to make it effective.

### 4.4  REMOVAL.

Any Officer may be removed by the Board of Directors whenever in its judgment the best interests of the Corporation will be served thereby, and subject to the terms of his employment agreement with the Corporation, if any.

### 4.5  AUTHORITY AND DUTIES.

All Officers of the Corporation, as between themselves and the Corporation, shall, respectively, have such authority and perform such duties in the management of the property and affairs of the Corporation as may be provided in these Bylaws or, in the absence of controlling provisions in these Bylaws, as may be determined by resolution of the Board of Directors.

### 4.6  CHAIRPERSON.

The Chairperson of the Board shall preside at meetings of the Board of Directors of the Corporation. He shall also perform all duties incident to the office of Chairman and such other duties as may be prescribed by the Board from time to time.

### 4.7  VICE CHAIRPERSONS.

Any Vice Chairperson or Vice Chairpersons elected by the Board of Directors shall perform such duties as may be assigned to them by the Board or the Chairperson. In the absence or upon the disability of the Chairperson, the Vice Chairpersons in the order of their designation (or, if no designation, in the order of their election) shall perform the duties of the Chairperson with the full powers of, and subject to the restrictions on, the Chairperson.

### 4.8  PRESIDENT.

The President shall be responsible for the general management of the business and affairs of the Corporation. He shall see that all resolutions, policies and orders of the Board are implemented and shall advise the Board on their formulation. He shall execute notes, mortgages, evidences of indebtedness, contracts and other instruments in writing on behalf of the Corporation, except where required or permitted by law to be otherwise executed and except where the execution thereof shall be expressly authorized and delegated by the Board to another Officer or Agent of the Corporation.

4.9  VICE PRESIDENTS.

Any Vice Presidents elected by the Board of Directors shall have such authority and perform such duties in the management of the business and affairs of the Corporation as may be determined by resolution of the Board. In the absence or upon the disability of the President, the Vice President, or if there shall be more than one (1), the Vice Presidents in the order determined by the Board (or, in the absence of such determination, in the order of their election) shall have the authority and perform the duties of the President.

4.10  SECRETARY.

The Secretary shall attend all meetings of the Board of Directors and shall keep minutes of and record all votes taken at such meetings in a book to be kept for that purpose. He shall give the required notice of meetings of the Board of Directors. He shall be custodian of the seal of the Corporation and cause it to be affixed to all documents to be executed on behalf of the Corporation which are required to be sealed. He shall have charge of the Corporation's books, records and other corporate documents.

4.11  TREASURER.

The Treasurer shall have or provide for the custody of the funds and securities of the Corporation and shall maintain full and accurate accounts of receipts and disbursements in the Corporation's books of account. He shall deposit or cause to be deposited all funds of the Corporation to its credit in such depositories as the Board of Directors may designate. He shall prepare or cause to be prepared such financial statements and reports of the Corporation requested by the Board.

ARTICLE FIVE:  INDEMNIFICATION OF DIRECTORS
AND OFFICERS

5.1  RIGHT TO INDEMNIFICATION.

Except as prohibited by law, every Director and Officer of the Corporation shall be entitled as of right to be indemnified by the Corporation against reasonable expense and any liability paid or incurred by such person in connection with any actual or threatened claim, action, suit or proceeding, whether civil, criminal, administrative, investigative or other, whether brought by or in the right of the Corporation or otherwise, in which he or she may be involved, as a party or otherwise, by reason of such person being or having been a Director or Officer of the Corporation or by reason of the fact

DC 3127

that such person is or was serving at the request of the
Corporation as a Director, Officer, Employee, Fiduciary or other
representative of another Corporation, partnership, joint
venture, trust, employee benefit plan or other entity (such
claim, action, suit or proceeding hereinafter being referred to
as "action").  Such indemnification shall include the right to
have expenses incurred by such person in connection with an
action paid in advance by the Corporation prior to final
disposition of such action, subject to such conditions as may be
prescribed by law.  Persons who are not Directors or Officers of
the Corporation may be similarly indemnified in respect of
service to the Corporation or to another such entity at the
request of the Corporation to the extent the Board of Directors
at any time denominates such person as entitled to the benefits
of this Article.  As used herein, "expense" shall include fees
and expenses of counsel selected by such person with the
approval of the Corporation and "liability" shall include
amounts of judgments, excise taxes, fines, penalties and amounts
paid in settlement.

     5.2   <u>RIGHT TO BRING SUIT</u>.

     If a claim under Section 5.1 of this Article is not
paid in full by the Corporation within thirty (30) days after
a written claim has been received by the Corporation, then the
person bringing such a claim under Section 5.1 of this Article
(hereinafter referred to as the "Claimant") may at any time
thereafter bring suit against the Corporation to recover the
unpaid amount of the claim and, if successful in whole or in
part, the Claimant shall also be entitled to be paid the expense
of prosecuting such claim.  It shall be a defense to any such
action that the Claimant's conduct was such that indemnification
for the amount claimed would violate the public policy of the
Commonwealth of Pennsylvania but the burden of proving such
defense shall be on the Corporation.  Neither the failure of the
Corporation (including its Board of Directors or independent
legal counsel) to have made a determination prior to the
commencement of such action that indemnification of the Claimant
is proper in the circumstances, nor an actual determination by
the Corporation (including its Board of Directors or independent
legal counsel) that the Claimant's conduct was such that
indemnification would violate such public policy, shall be a
defense to the action or create a presumption, that the
CLaimant's conduct was such that indemnification would violate
such public policy.

     5.3   <u>INSURANCE AND FUNDING</u>.

     The Corporation may purchase and maintain insurance to
protect itself and any person eligible to be indemnified
hereunder against any liability or expense asserted or incurred
by such person in connection with any action, whether or not the