calculated in accordance with the actual amount required to be repaid on such Commitment Indebtedness and the actual interest rate and amortization schedule applicable thereto. No Additional Indebtedness shall be deemed to arise when any funding occurs under any such commitment or any such commitment is renewed upon terms which provide for substantially the same terms of repayment of amounts disbursed pursuant to such commitment as obtained prior to such renewal.

(g) In addition, no Additional Indebtedness shall be deemed to arise when Indebtedness which bears interest at a variable rate of interest is converted to Indebtedness which bears interest at a fixed rate or the method of computing the variable rate on such Indebtedness is changed or the terms upon which Indebtedness, if Optional Tender Indebtedness, may be or is required to be tendered for purchase are changed, if such conversion is in accordance with the provisions applicable to such variable rate Indebtedness or Optional Tender Indebtedness in effect immediately prior to such conversion or change.

(h) Except for the purpose of determining whether any particular Guaranty may be incurred and except for the purpose of calculating any historical Long-Term Debt Service Requirement, a guarantor shall be considered liable only for that percentage of the Indebtedness guaranteed and interest thereon as is described in Section 5.06 hereof.

(i) Obligations issued to secure Indebtedness permitted to be incurred under Section 5.05 shall not be treated as Additional Indebtedness.

(j) Each Obligated Affiliate may elect to have Indebtedness issued pursuant to one provision of Section 5.05, including, without limitation, subsection (a) (iii) of Section 5.05, reclassi- fied as having been incurred under another provision of Section 5.05, by demonstrating compliance with such other provision on the assumption that such Indebtedness is being reissued on the date of delivery of the materials required to be delivered under such other provision, including the certification of any applicable Projected Rate. From and after such demonstration, such Indebtedness shall be deemed to have been incurred under the provision with respect to which such compliance has been demonstrated until any subsequent reclassification of such Indebtedness.

38

PR-BINDER-01-00044

**Section 5.08.** **Debt Service Coverage Ratio.** (a) The Obligated Group covenants to set rates and charges for its facilities such that the Historical Long-Term Debt Service Coverage Ratio, calculated at the end of each fiscal year of the Obligated Group, will not be less than 1.10:1.

(b) If at any time the Historical Long-Term Debt Service Coverage Ratio required by clause (a) hereof is not met, the Obligated Group covenants to retain a Consultant to make recommendations to increase Projected Long-Term Debt Service Coverage Ratios for subsequent fiscal years of the Obligated Group to the levels required or, if in the opinion of the Consultant the attainment of such level is impracticable, to the highest practicable level. Each Obligated Affiliate agrees that it will, to the extent permitted by law, follow the recommendations of the Consultant, to the extent that such recommendations apply to any Obligated Affiliate. So long as the Obligated Group shall retain a Consultant and each Obligated Affiliate shall follow such Consultant's recommendations, to the extent permitted by law, this Section shall be deemed to have been complied with even if such ratio for any subsequent fiscal year of the Obligated Group is below the previously referred to required levels; provided, however, the Revenues of the Obligated Group shall not be less than the amount required in cash to pay the Expenses of the Obligated Group and to pay the debt service on all Indebtedness of the Obligated Group for such year and that the Historical Long-Term Debt Service Coverage Ratio shall in all events be at least 1.00:1.

(c) If a report of a Consultant is delivered to the Trustee, which report shall state that Governmental Restrictions have been imposed which make it impossible for the coverage requirement in clause (a) hereof to be met, then such coverage requirement shall be reduced to the maximum coverage permitted by such Governmental Restrictions but in no event less than 1.00:1.

**Section 5.09.** **Sale, Lease or Other Disposition of Assets.** Each Obligated Affiliate agrees that it will not sell, lease or otherwise dispose of assets, except in the ordinary course of business and except for transfers of assets:

(a) To any Person if prior to the sale, lease or other disposition there is delivered to the Trustee an Officer's Certificate stating that, in the judgment of the Obligated Group Agent, such assets have, or within the next succeeding 24 calendar months are reasonably expected to, become inadequate, obsolete, worn out, unsuitable, unprofitable, undesirable or unnecessary and the sale, lease, removal or other disposition thereof will not impair the structural soundness, efficiency or economic value of the remaining assets.

(b) To another member of the Obligated Group without limit.

39

PR-BINDER-01-00045

(c)   To a Person which is not a member of the Obligated Group, provided that prior to the sale, lease or other disposition there is delivered to the Trustee an Officer's certificate of the Obligated Group Agent stating that immediately after such action:

(i)   The Historical Long-Term Debt Service Coverage Ratio for the most recent fiscal year preceding the proposed date of such transaction for which audited Financial Statements are available, assuming such transaction actually occurred at the beginning of such fiscal year, would not have been reduced to less than 1.10:1; or

(ii)   The Projected Long-Term Debt Service Coverage Ratio for the fiscal year immediately succeeding the proposed date of such transaction is expected to be not less than 1.10:1.

(d)   To any Person which is not an Obligated Affiliate, or a successor corporation pursuant to a merger or consolidation permitted by Section 5.10 hereof, without limit, if such Person shall become an additional Obligated Affiliate pursuant to Section 5.12 hereof.

Notwithstanding any of the foregoing, Allegheny Health, Education and Research Corporation shall be permitted to transfer to another Person that Property described in Exhibit A to the Original Master Indenture upon such terms and conditions with or without consideration as shall be determined by the Governing Body of Allegheny Health, Education and Research Corporation.

In addition, Allegheny Health Education and Research Corporation shall be permitted to transfer the amount of liquid assets from the sources and to the Persons as listed on Exhibit B to the Original Master Indenture upon such terms and conditions with or without consideration as shall be determined Governing Boy of Allegheny Health, Education and Research Corporation.

Section 5.10.   Consolidation, Merger, Sale or Conveyance.

(a)   Each Obligated Affiliate covenants that it will not merge or consolidate with any other corporation, partnership, joint venture, business trust or other entity which is not an Obligated Affiliate or sell or convey all or substantially all of its assets to any Person which is not an Obligated Affiliate unless:

(i)   such Obligated Affiliate will be the continuing corporation, or if the successor corporation or other transferee entity is not an Obligated Affiliate, such successor corporation or other transferee entity shall be a corporation or business association organized and existing under the laws of the United States of America or a state thereof and shall

40

PR-BINDER-01-00046

become an Obligated Affiliate pursuant to Section 5.12 hereof or the provisions of Section 5.14 hereof shall be complied with;

(ii) the Obligated Group immediately after such merger or consolidation, or such sale or conveyance, would not be in default in the performance or observance of any covenant or condition of this Indenture (including any covenant or condition which imposes restrictions upon the activities of the Obligated Affiliates) and the conditions described in subsections (a)(i) or (ii) of Section 5.05 would be met for the incurrence of one dollar of Long-Term Additional Indebtedness; and

(iii) if all amounts due or to become due on any Related Bond have not been fully paid to the Holder thereof, there shall have been delivered to the Trustee an Opinion of Bond Counsel to the effect that under then existing law the consummation of such merger, consolidation, sale, or conveyance, whether or not contemplated on any date of the delivery of such Related Bond, would not adversely affect the exclusion from gross income of interest received by the Holder of such Related Bond, to the extent such interest has been previously excluded from gross income.

(b) In case any such successor corporation or other transferee entity shall succeed to and be substituted for its predecessor and shall become an Obligated Affiliate pursuant to Section 5.12 hereof, any such successor corporation or transferee entity of an Obligated Affiliate thereupon may cause to be signed, and may issue in its own name, Notes or Guaranties issuable hereunder; and upon the order of such successor corporation or other transferee entity and subject to all the terms, conditions and limitations in this Indenture prescribed, the Trustee shall authenticate and shall deliver Notes that such successor corporation or other transferee entity shall have caused to be signed and delivered to the Trustee. All Outstanding Notes so issued and all Outstanding Guaranties issued by such successor corporation or other transferee entity hereunder shall in all respect have the same legal rank and benefit under this Indenture as Outstanding Notes or Guaranties theretofore or thereafter issued in accordance with the terms of this Indenture as though all of such Notes and Guaranties had been issued hereunder by an Obligated Affiliate without any such consolidation, merger, sale or conveyance having occurred.

(c) In case of any such consolidation, merger, sale, or conveyance such changes in phraseology and form (but not in substance) may be made in Notes thereafter to be issued as may be appropriate.

41

PR-BINDER-01-00047

(d)  The Trustee shall receive an opinion of Counsel as conclusive evidence that any such consolidation, merger, sale, or conveyance complies with the provisions of this Section and that it is proper for the Trustee under the provisions of Article VIII and of this Section to join in the execution of any instrument required to be executed and delivered by this Section.

Section 5.11.  Filing of Financial Statements, Certificate of No Default, Other Information.  The Obligated Group, acting through the Obligated Group Agent, covenants that it will:

(a)  As soon as practicable but in no event later than five months after the end of each fiscal year, file with the Trustee, with each Noteholder who may have so requested in writing or in whose behalf the Trustee may have so requested and with Moody's Investors Service and Standard & Poor's Corporation a copy of its audited Financial Statements as of the end of such fiscal year accompanied by the opinion of independent certified public accountants.  Such audited Financial Statements shall be prepared in accordance with generally accepted accounting principles and shall include such statements as shall be necessary for a fair presentation of financial position, results of operations and changes in Total Fund Balance and financial position as of the end of such fiscal year.

(b)  As soon as practicable but in no event later than five months after the end of each fiscal year, file with the Trustee, and with each Noteholder who may have so requested or in whose behalf the Trustee may have so requested, an Officer's Certificate of the Obligated Group Agent and a report of independent certified public accountants stating the Historical Long-Term Debt Service Coverage Ratio for such fiscal year and stating whether or not, to the best knowledge of the signers, the Obligated Group is in default in the performance of any covenant contained in this Indenture and, if so, specifying each such default of which the signers may have knowledge.

(c)  If an Event of Default shall have occurred and be continuing, (i) file with the Trustee such other financial statements concerning the operations and financial affairs of the Obligated Group as the Trustee may from time to time reasonably request, excluding specifically donor records, patient records and personnel records and (ii) provide access to its facilities for the purpose of inspection by the Trustee during regular business hours or at such other times as the Trustee may reasonably request.

(d)  Within 10 days after its receipt thereof, file with the Trustee a copy of each report which any provision of this Indenture requires to be prepared by a Consultant or an Insurance Consultant.

PR-BINDER-01-00048

**Section 5.12.** **Parties Becoming Obligated Affiliates.** Persons which are not Obligated Affiliates and corporations which are successor corporations to any Obligated Affiliate through a merger or consolidation permitted by Section 5.10 hereof may become Obligated Affiliates, if:

(a) The Person or successor or transferee entity proposing to become an Obligated Affiliate shall execute and deliver a Supplemental Indenture by which it shall agree to be bound by this Indenture and become an Obligated Affiliate hereunder.

(b) The Obligated Group Agent shall file with Moody's Investors Service Standard & Poor's Corporation, the Trustee and with each Noteholder who may have so requested in writing or on whose behalf the Trustee has so requested certified copies of the documentation evidencing such corporate action.

(c) The Trustee shall also have received (i) a report by a Consultant which demonstrates that, immediately upon any Person or successor transferee entity becoming an Obligated Affiliate the Obligated Group would not, as part of such transaction, be in default in the performance or observance of any covenant or condition to be performed or observed by it hereunder and the Obligated Group could meet the conditions described in subsection(a)(i) or (ii) of Section 5.05 for the incurrence of one dollar of Long-Term Additional Indebtedness, and (ii) if all amounts due or to become due on any Related Bond have not been paid to the holder thereof, an opinion of Bond Counsel to the effect that under then existing law the consummation of such transaction, whether or not contemplated on any date of the delivery of any such Related Bond, would not adversely affect the exclusion from gross income of interest received by the Holder of any such Related Bond, to the extent such interest had been previously excluded from gross income, and (iii) an opinion of Counsel which may be contained in the same opinion specified in clause (ii) above, to the effect that the Supplemental Indenture referred to in clause (a) above has been duly authorized, executed and delivered by the Obligated Affiliate and constitutes the valid, binding and enforceable agreement of the Obligated Group and such Obligated Affiliate.

**Section 5.13.** **Insurance and Condemnation Proceeds.** Amounts received by any Obligated Affiliate as insurance proceeds with respect to any casualty loss or as condemnation awards may be used in such manner as the recipient may determine, including, without limitation, applying such moneys to the payment or prepayment of any Note or Notes in accordance with the terms thereof and of any Supplemental Indenture, subject to compliance with the provisions hereof and any Related Bond Indenture.

43

**Section 5.14.** **Additional Covenants Pertaining to Obligated Affiliates.**

(a) Each Obligated Affiliate covenants that it will not take any action, corporate or otherwise, which would cause any Obligated Affiliate to cease to be an Obligated Affiliate unless, prior to the taking of such action, there is delivered to the Trustee an Officer's Certificate of the Obligated Group Agent stating that immediately after such action is taken:

(i) the Historical Long-Term Debt Service Coverage Ratio for the most recent fiscal year for which audited Financial Statements are available, assuming such action actually occurred at the beginning of such period, would not have been reduced to less than 1.10:1; or

(ii) the Projected Long-Term Debt Service Coverage Ratio for the fiscal year immediately succeeding the proposed date of such action is expected to be greater than 1.10:1; and

(iii) the Obligated Group Agent shall file with Moody's Investors Service and Standard & Poor's Corporation, the Trustee and with each Noteholder who may have so requested in writing or on whose behalf the Trustee has so requested certified copies of the documentation evidencing such corporate action.

(b) Each Obligated Affiliate covenants that it will not issue any equity securities, the payment of dividends on which rank prior to the duty of such Obligated Affiliate to comply with the terms of this Indenture or which require the distribution of assets upon any voluntary or involuntary liquidation to any Person prior to the distribution of such assets to the Obligated Group.


ARTICLE VI

DEFAULT AND REMEDIES

**Section 6.01.** **Events of Default.** "Event of Default," as used herein, shall mean any of the following events:

(a) The Obligated Group shall fail to make any payment required by a Note or a Guaranty issued and Outstanding hereunder when and as the same shall become due and payable, whether at maturity, by proceedings for redemption, by acceleration or otherwise, in accordance with the terms thereof, of this Indenture and any Supplemental Indenture, and any grace period with respect thereto shall have expired; provided, however, that no such grace period shall exceed 30 days.

PR-BINDER-01-00050

(b)  The Obligated Group shall fail duly to observe or perform any covenant or agreement on its part under this Indenture for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Obligated Group Agent by the Trustee or to the Obligated Group Agent and the Trustee by the holders of at least 20% in aggregate principal amount of Notes and Guaranties then outstanding.

(c)  An event of default shall occur under a Related Bond Indenture or a Related Bond.

(d)  Any Obligated Affiliate shall fail to make any required payment with respect to any Indebtedness (other than Notes or Guaranties issued and Outstanding hereunder and other than any other Indebtedness which is Non-Recourse Indebtedness), whether such Indebtedness now exists or shall hereafter be created, and any period of grace with respect thereto shall have expired; or an event of default, as defined in any mortgage, indenture or instrument, under which there may be issued, or by which there may be secured or evidenced, any Indebtedness, whether such Indebtedness now exists or shall hereafter be created, shall occur; provided, however, that such default shall not constitute an Event of Default within the meaning of this Section if within 30 days, or within the time allowed for service of a responsive pleading if any proceeding to enforce payment of the Indebtedness is commenced, (i) such Obligated Affiliate in good faith commences proceedings to contest the existence or payment of such Indebtedness, and (ii) sufficient moneys are escrowed with a bank or trust company for the payment of such Indebtedness; provided, however, that Indebtedness (other than Indebtedness secured by Notes or Guaranties issued hereunder) with an aggregate principal amount of less than $1,000,000, whether singly or in the aggregate, shall not be considered Indebtedness for purposes of this subsection (d).

(e)  The entry of a decree or order by a court having jurisdiction in the premises adjudging any Obligated Affiliate a bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of any Obligated Affiliate under the Federal Bankruptcy Code or any other applicable Federal or state law, or appointing a receiver, liquidator, assignee, or sequestrator (or other similar official) of any Obligated Affiliate or of any substantial part of its Property, or ordering the winding up or liquidation of its affairs, and the continuance of any such decree or order unstayed and in effect for a period of 90 consecutive days.

(f)  The institution by any Obligated Affiliate of proceedings to be adjudicated a bankrupt or insolvent, or the consent by it to the institution of bankruptcy or insolvency proceedings against it, or the filing by it of a petition or answer or consent seeking

PR-BINDER-01-00051

reorganization or relief under the Federal Bankruptcy Code or any other similar applicable Federal or state law, or the consent by it to the filing of any such petition or to the appointment of a receiver, liquidator, assignee, trustee or sequestrator (or other similar official) of any Obligated Affiliate or of any substantial part of its Property, or the making by it of an assignment for the benefit of creditors, or the admission by it in writing of its inability to pay its debts generally as they become due.

Section 6.02. Acceleration; Annulment of Acceleration. (a) Upon the occurrence and during the continuation of an Event of Default hereunder, the Trustee may and, upon the written request of the Holders of not less than 20% in aggregate principal amount of Notes and Guaranties Outstanding shall, by notice to the Obligated Group Agent, declare all Notes Outstanding immediately due and payable, whereupon such Notes shall become and be immediately due and payable, anything in the Notes or herein to the contrary not-withstanding. In such event, there shall be due and payable on the Notes an amount equal to the total principal amount of all such Notes, plus all interest accrued thereon and, to the extent per-mitted by applicable law, which accrues to the date of payment.

(b) At any time after the principal of the Notes shall have been so declared to be due and payable and before the entry of final judgment or decree in any suit, action or proceeding instituted on account of such default, if (i) an Obligated Affiliate has paid or caused to be paid or deposited with the Trustee moneys sufficient to pay all matured installments of interest and interest on installments of principal and interest and principal or redemption prices then due (other than the principal then due only because of such declaration) of all Notes outstand-ing; (ii) any Obligated Affiliate has paid or caused to be paid or deposited with the Trustee moneys sufficient to pay the charges, compensation, expenses, disbursements, advances and liabilities of the Trustee and any paying agents; (iii) all other amounts then payable by the Obligated Group hereunder shall have been paid or a sum sufficient to pay the same shall have been deposited with the Trustee; and (iv) every Event of Default (other than a default in the payment of the principal of such Notes then due only because of such declaration) shall have been remedied, then the Trustee may annul such declaration and its consequences with respect to any Notes or portions thereof not then due by their terms. No such annulment shall extend to or affect any subsequent Event of Default or impair any right consequent thereon.

Section 6.03. Additional Remedies and Enforcement of Remedies.

(a) Upon the occurrence and continuance of any Event of Default, the Trustee may, and upon the written request of the Holders of not less than 20% in aggregate principal amount of the Notes and Guaranties Outstanding, together with indemnification of the Trustee to its satisfaction therefor, shall, proceed forthwith

PR-BINDER-01-00052

to protect and enforce its rights and the rights of the Noteholders hereunder by such suits, actions or proceedings as the Trustee, being advised by counsel, shall deem expedient, including but not limited to:

> (i)   enforcement of the right of the Noteholders to collect and enforce the payment of amounts due or becoming due under the Notes and Guaranties;

> (ii)   suit upon all or any part of the Notes and Guaranties;

> (iii)   civil action to require any Person holding moneys, documents or other property pledged to secure payment of amounts due or to become due on the Notes and Guaranties to account as if it were the trustee of an express trust for the Holders of Notes and Guaranties;

> (iv)   civil action to enjoin any acts or things, which may be unlawful or in violation of the rights of the Holders of Notes and Guaranties; and

> (v)   enforcement of any other right of the Note-holders conferred by law or hereby.

(b)   Regardless of the happening of an Event of Default, the Trustee, if requested in writing by the Holders of not less than 20% in aggregate principal amount of the Notes and Guaranties then Outstanding, shall, upon being indemnified to its satisfaction therefor, institute and maintain such suits and proceedings as it may be advised shall be necessary or expedient (i) to prevent any impairment of the security hereunder by any acts which may be unlawful or in violation hereof, or (ii) to preserve or protect the interests of the Holders, provided that such request and the action to be taken by the Trustee are not in conflict with any applicable law or the provisions hereof and, in the sole judgment of the Trustee, is not unduly prejudicial to the interest of the Holders of Notes and Guaranties not making such request.

Section 6.04.   Application of Revenues and Other Moneys After Default.   During the continuance of an Event of Default all moneys received by the Trustee pursuant to any right given or action taken under the provisions of this Article, after payment of the costs and expenses of the proceedings resulting in the collection of such moneys and of the expenses and advances incurred or made by the Trustee with respect thereto and all other fees and expenses of the Trustee under this Indenture shall be applied as follows:

(a)   Unless the principal of all outstanding Notes shall have become or have been declared due and payable:

47

PR-BINDER-01-00053

First: To the payment to the Persons entitled thereto of all installments of interest then due on the Notes and the Guaranties in the order of the maturity of such installments, and, if the amount available shall not be sufficient to pay in full any installment or installments maturing on the same date, then to the payment thereof ratably, according to the amounts due thereon to the Persons entitled thereto, without any discrimination or preference; and

Second: To the payment to the Persons entitled thereto of the unpaid principal installments of any Notes and Guaranties which shall have become due, whether at maturity or by call for redemption, in the order of their due dates, and if the amounts available shall not be sufficient to pay in full all the Notes and Guaranties due on any date, then to the payment thereof ratably, according to the amounts of principal installments due on such date, to the Persons entitled thereto, without any discrimination or preference.

(b)  If the principal of all Outstanding Notes and Guaranties shall have become or have been declared due and payable, to the payment of the principal and interest then due and unpaid upon the Notes and Guaranties, without preference or priority of principal over interest or of interest over principal, or of any installment of interest over any other installment of interest, or of any Note or Guaranty over any other Note or Guaranty, ratably, according to the amounts due respectively for principal and interest, to the Persons entitled thereto without any discrimination or preference.

(c)  If the principal of all outstanding Notes and Guaranties shall have been declared due and payable, and if such declaration shall thereafter have been rescinded and annulled under the provisions of this Article, then, subject to the provisions of paragraph (b) of this Section in the event that the principal of all Outstanding Notes and Guaranties shall later become due or be declared due and payable, the moneys shall be applied in accordance with the provisions of paragraph (a) of this Section.

Whenever moneys are to be applied by the Trustee pursuant to the provisions of this Section, such moneys shall be applied by it at such times, and from time to time, as the Trustee shall determine, having due regard for the amount of such moneys available for application and the likelihood of additional moneys becoming available for such application in the future.  Whenever the Trustee shall apply such moneys, it shall fix the date upon which such application is to be made and upon such date interest on the amounts of principal to be paid on such dates shall cease to accrue.  The Trustee shall give such notice as it may deem appropriate of the deposit with it of any such moneys and of the fixing of any such date, and shall not be required to make payment to the Holder of any unpaid Note or Guaranty until such Note or Guaranty shall be presented to the Trustee for appropriate endorsement of any partial payment or for cancellation if fully paid.

48

PR-BINDER-01-00054

Whenever all Notes and Guaranties and interest thereon have been paid under the provisions of this Section and all expenses and charges of the Trustee have been paid, any balance remaining shall be paid to the Person entitled to receive the same; and if no other Person shall be entitled thereto, then the balance shall be paid to the Obligated Group or the successors of the Obligated Affiliates, or as a court of competent jurisdiction may direct.

**Section 6.05. Remedies Not Exclusive.** No remedy by the terms hereof conferred upon or reserved to the Trustee or the Noteholders is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative and shall be in other remedy given hereunder or existing at law or in equity or by statute on or after the date hereof.

**Section 6.06. Remedies Vested in the Trustee.** All rights of action (including the right to file proof of claims) hereunder or under any of the Notes and Guaranties may be enforced by the Trustee without the possession of any of the Notes or Guaranties or the production thereof in any trial or other proceedings relating thereto. Any such suit or proceeding instituted by the Trustee may be brought in its name as the Trustee without the necessity of joining as plaintiffs or defendants any Holders of the Notes or Guaranties. Subject to the provisions of Section 6.04 hereof, any recovery or judgment shall be for the equal benefit of the Holders of the Outstanding Notes or Guaranties.

**Section 6.07. Noteholders' Control of Proceedings.** If an Event of Default shall have occurred and be continuing, notwithstanding anything herein to the contrary, the Holders of at least a majority in aggregate principal amount of Notes and Guaranties then Outstanding shall have the right, at any time, by any instrument in writing executed and delivered to the Trustee and accompanied by indemnity satisfactory to the Trustee, to direct the method and place of conducting any proceeding to be taken in connection with the enforcement of the terms and conditions hereof or for the appointment of a receiver or any other proceedings hereunder; provided that such direction is not in conflict with any applicable law or the provisions hereof; and provided, further, that the Trustee shall have the right to decline to follow any such direction if the Trustee in good faith shall determine that the proceeding so directed would involve it in personal liability, and, in the sole judgment of the Trustee, is not unduly prejudicial to the interest of Noteholders not joining in such direction; and provided, further, that nothing in this Section shall impair the right of the Trustee in its discretion to take any other action hereunder which it may deem proper and which is not inconsistent with such direction by Noteholders.

49

PR-BINDER-01-00055

**Section 6.08.** **Termination of Proceedings.** In case any proceeding taken by the Trustee on account of an Event of Default shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Trustee or to the Noteholders, then the Obligated Group, the Trustee and the Noteholders shall be restored to their former positions and rights hereunder, and all rights, remedies and powers of the Trustee and the Noteholders shall continue as if no such proceeding had been taken.

**Section 6.09.** **Waiver of Event of Default.** (a) No delay or omission of the Trustee or of any Holder of the Notes or Guaranties to exercise any right or power accruing upon any Event of Default shall impair any such right or power or shall be construed to be a waiver of any such Event of Default or any acquiescence therein. Every power and remedy given by this Article to the Trustee and the Holders of the Notes and Guaranties, respectively, may be exercised from time to time and as often as may be deemed expedient by them.

(b) The Trustee may waive any Event of Default which in its opinion shall have been remedied before the entry of final judgment or decree in any suit, action or proceeding instituted by it under the provisions hereof, or before the completion of the enforcement of any other remedy hereunder.

(c) Notwithstanding anything contained herein to the contrary, the Trustee, upon the written request of the Holders of at least a majority of the aggregate principal amount of Notes and Guaranties then outstanding, shall waive any Event of Default hereunder and its consequences; provided, however, that, except under the circumstances set forth in subsection (b) of Section 6.02 hereof, a default in the payment of the principal of, premium, if any, or interest on any Note or payment under a Guaranty, when the same shall become due and payable by the terms thereof or upon call for redemption, may not be waived without the written consent of the Holders of all the Notes and Guaranties at the time Outstanding.

(d) In case of any waiver by the Trustee of an Event of Default hereunder, the Obligated Group, the Trustee and the Noteholders shall be restored to their former positions and rights hereunder, respectively but no such waiver shall extend to any subsequent or other Event of Default or impair any right consequent thereon.

**Section 6.10.** **Appointment of Receiver.** Upon the occurrence of any Event of Default unless the same shall have been waived as herein provided, the Trustee shall be entitled as a matter of right if it shall so elect, (i) forthwith and without declaring the Notes and Guaranties to be due and payable, (ii) after declaring the same to be due and payable, or (iii) upon the commencement of an action to enforce the specific performance hereof or in aid thereof or upon the commencement of any other judicial proceeding to enforce

50

PR-BINDER-01-00056

any right of the Trustee or the Noteholders, to the appointment of a receiver or receivers of any or all of the Property of the Obligated Group with such powers as the court making such appointment shall confer. Each Obligated Affiliate hereby consents and agrees, and will if requested by the Trustee consent and agree at the time of application by the Trustee for appointment of a receiver of its Property, to the appointment of such receiver of its Property and that such receiver may be given the right, power and authority, to the extent the same may lawfully be given, to take possession of and operate and deal with such Property and the revenues, profits and proceeds therefrom, with like effect as each such Obligated Affiliate could do so, and to borrow money and issue evidences of indebtedness as such receiver.

Section 6.11.  **Remedies Subject to Provisions of Law.**  All rights, remedies and powers provided by this Article may be exercised only to the extent that the exercise thereof does not violate any applicable provision of law, and all the provisions of this Article are intended to be subject to all applicable mandatory provisions of law which may be controlling and to be limited to the extent necessary so that they will not render this instrument or the provisions hereof invalid or unenforceable under the provisions of any applicable law.

**Section 6.12.**  **Notice of Default.**  The Trustee shall, within 10 days after the Trustee has knowledge of the occurrence of an Event of Default, mail to all Holders of Notes and Guaranties as the name and addresses of such Holders appear upon the books of the Trustee, notice of such Event of Default known to the Trustee, unless such Event of Default shall have been cured before the giving of such notice (the term "Event of Default" for the purposes of this Section being hereby defined to be the events specified in subsections (a), (b), (c), (d), (e) and (f) of Section 6.01, not including any periods of grace provided for in subsections (b) and (e) respectively, and irrespective of the giving of written notice specified in subsection (b) of Section 6.01); provided that, except in the case of default in the payment of the principal of or premium, if any, or interest on any of the Notes and Guaranties and the Events of Default specified in subsections (e) and (f) of Section 6.01, the Trustee shall be protected in withholding such notice if and so long as the board of directors, the executive committee, or a trust committee of directors or any responsible officer of the Trustee in good faith determine that the withholding of such notice is in the interests of the Holders of Notes and Guaranties.

51

PR-BINDER-01-00057

ARTICLE VII

THE TRUSTEE

Section 7.01. Certain Duties and Responsibilities.

(a)  Except during the continuance of an Event of Default:

(i)  the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(ii)  in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; but in the case of any such certificates or opinions which by any provision hereof are specifically required to be furnished to the Trustee, the Trustee shall be under a duty to examine the same to determine whether or not they conform to the requirements of this Indenture.

(b)  In case an Event of Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vented in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

(c)  No provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own wilful misconduct, except that:

(i)  this Subsection shall not be construed to limit the effect of Subsection (a) of this Section;

(ii)  the Trustee shall not be liable for any error of judgment made in good faith by a chairman or vice-chairman of the board of directors, the chairman or vice-chairman of the executive committee of the board of directors, the president, any vice president, the secretary, any assistant secretary, the treasurer, any assistant treasurer, the cashier, any assistant cashier, any trust officer or assistant trust officer, the controller and any assistant controller or any other officer or employee of the Trustee customarily performing functions similar to those performed by any of the above designated officers or with respect to a particular matter, any other officer or employee to whom such matter is

52

PR-BINDER-01-00058

referred because of his knowledge of and familiarity with the particular subject, unless it shall be proved that the Trustee was negligent in ascertaining the pertinent facts;

(iii)  the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of a majority in principal amount of the outstanding Notes and Guaranties relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee, under this Indenture; and

(iv)  no provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial or other liability, directly or indirectly, in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(d)  Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Section.

(e)  The Trustee shall not be deemed to have knowledge of any default hereunder unless the Trustee shall be specifically notified of such default in an Officer's Certificate of the Obligated Group Agent or by written notice from the Holder of at least 20% of the principal amount of the Outstanding Notes and Guaranties, and in the absence of such notice the Trustee may conclusively assume that there is no default; provided, however, the Trustee shall be required to take and be deemed to have notice of its (or any other Person's) failure to receive when due the moneys necessary to make payments of principal and interest on the Notes pursuant to Section 2.03 hereof.

Section 7.02.  Certain Rights of Trustee. Except as otherwise provide in Section 7.01:

(a)  The Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, note or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

53

PR-BINDER-01-00059

(b)  Any request, direction or statement of any Obligated Affiliate mentioned herein shall be sufficiently evidenced by an Officer's Certificate and any action of the Governing Body may be sufficiently evidenced by a copy of a resolution certified by the secretary or an assistant secretary of the Obligated Affiliate to have been duly adopted by the Governing Body and to be in full force and effect on the date of such certification and delivered to the Trustee.

(c)  Whenever in the administration of this Indenture the Trustee shall deem it desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, the Trustee (unless other evidence be herein specifically prescribed) may request and the Obligated Group Agent shall promptly deliver an Officer's Certificate proving or establishing such matter, and the Trustee may, in the absence of bad faith on its part, rely upon such Officers' Certificate.

(d)  The Trustee may consult with counsel or independent auditor and the written advice of such counsel or independent auditor or any opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon.

(e)  The Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture whether on its own motion or at the request or direction of any of the Noteholders pursuant to this Indenture which shall be in the opinion of the Trustee likely to involve expense or liability not otherwise provided for herein, unless one or more Noteholders or such Noteholders making such request shall have offered and furnished to the Trustee reasonable security or indemnity satisfactory to the Trustee against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction or otherwise in connection herewith.

(f)  The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, note or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or ratters as it may see fit, and, if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records (excluding specifically donor records, patient records and personnel records) and premises of any Obligated Affiliate, personally or by agent or attorney.

54

PR-BINDER-01-00060

(g)  The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder.

(h)  The Trustee shall not be liable for any action taken or omitted by it in good faith and believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Indenture.

Section 7.03.  **Right to Deal in Notes and Related Bonds**.  The Trustee may in good faith buy, sell or hold and deal in any Notes and Related Bonds with like effect as if it were not such Trustee and may commence or join in any action which a Noteholder or holder of a Related Bond is entitled to take with like effect as if the Trustee were not the Trustee.

Section 7.04.  **Removal and Resignation of the Trustee**.  The Trustee may resign on its motion or may be removed at any time by an instrument or instruments in writing signed by the Holders of not less than 50% of the principal amount of Notes and Guaranties then Outstanding.  No such resignation or removal shall become effective unless and until a successor Trustee (or temporary successor trustee as provided below) has been appointed and has assumed the trusts created hereby.  Written notice of such resignation or removal shall be given to the members of the Obligated Group and to each Holder of a Note and Guaranty then outstanding at the address then reflected on the books of the Trustee and such resignation or removal shall take effect upon the appointment and qualification of a successor Trustee.  A successor Trustee may be appointed at the direction of the Holders of not less than 50% in aggregate principal amount of Notes and Guaranties Outstanding.  In the event a successor Trustee has not been appointed and qualified within 60 days of the date notice of resignation is given, the Trustee, any Member of the Obligated Group or any Noteholder may apply to any court of competent jurisdiction for the appointment of a temporary successor Trustee to act until such time as a successor is appointed as above provided.

Unless otherwise ordered by a court or regulatory body having competent jurisdiction, or unless required by law, any successor Trustee shall be a trust company or bank having the powers of a trust company as to trusts, qualified to do and doing trust business in one or more states of the United States of America and having an officially reported combined capital, surplus, undivided profits and reserves aggregating at least $25,000,000, if there is such an institution willing, qualified and able to accept the trust upon reasonable or customary terms.

55

PR-BINDER-01-00061

Every successor Trustee howsoever appointed hereunder shall execute, acknowledge and deliver to its predecessor and also to the Obligated Group Agent an instrument in writing, accepting such appointment hereunder, and thereupon such successor Trustee, without further action, shall become fully vested with all the rights, immunities, powers, trusts, duties and obligations of its predecessor, and such predecessor shall execute and deliver an instrument transferring to such successor Trustee all the rights, powers and trusts of such predecessor. The predecessor Trustee shall execute any and all documents necessary or appropriate to convey all interest it may have to the successor Trustee. The predecessor Trustee shall promptly deliver all material records relating to the trust or copies thereof and on request communicate on request all material information it may have obtained concerning the trust to the successor Trustee.

Each successor Trustee, not later than ten days after its assumption of the duties hereunder, shall mail a notice of such assumption to each registered Holder of a Note and Guaranty.

Section 7.05. Compensation and Reimbursement. The Obligated Group Agent agrees:

(a) To pay the Trustee from time to time reasonable compensation for all services rendered by it hereunder (which compensation shall not be limited by any provision of law in regard to the compensation of a trustee of an express trust).

(b) Except as otherwise expressly provided herein, to reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its counsel and its agents), except any such expense, disbursement or advance as may be attributable to its negligence or bad faith.

(c) To indemnify the Trustee for, and to hold it harmless against, any loss, liability or expense incurred without negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of this trust or its duties hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

As security for the performance by the Obligated Group under this Section, the Trustee shall have a lien prior to the Notes and Guaranties upon all property and funds held or collected by the Trustee as such, except funds held in trust for the payment of principal of or interest or premiums on the Notes and Guaranties.

56

PR-BINDER-01-00062

**Section 7.06.  Recitals and Representations.**  The recitals, statements and representations contained herein, or in any Note or Guaranty (excluding the Trustee's authentication on the Notes and Guaranties) shall be taken and construed as made by and on the part of the Obligated Group and not by the Trustee, and the Trustee neither assumes nor shall be under any responsibility for the correctness of the same.

The Trustee shall not be responsible for the recording or rerecording, registration or re-registration, filing or refiling of this Indenture, or for the sufficiency or maintenance of the security, if any, for the Notes and Guaranties.

The Trustee makes no representation as to, and is not responsible for, the validity or sufficiency hereof, of the Notes and Guaranties, or the validity or sufficiency of insurance to be provided.  The Trustee shall be deemed not to have made representations as to the security afforded hereby or hereunder or as to the validity or sufficiency of such document.  The Trustee shall not be concerned with or accountable to anyone for the use or application of any moneys which shall be released or withdrawn in accordance with the provisions hereof.  · The Trustee shall have no duty of inquiry with respect to any default or Events of Default described herein without actual knowledge of or receipt by the Trustee of written notice of a default or an Event of Default from a member of the Obligated Group or any Holder.

**Section 7.07.  Separate or Co-Trustee.**  At any time or times, for the purpose or meeting any legal requirements of any jurisdiction, the Trustee shall have power to appoint, and, upon the request of the Holders of at least 25% in aggregate principal amount of Notes outstanding, shall appoint, one or more Persons approved by the Trustee either to act as co-trustee or cotrustees, jointly with the Trustee, to or act as separate trustee or separate trustees, and to vest in such Person or Persons, in such capacity, such rights, powers, duties, trusts or obligations as the Trustee may consider necessary or desirable, subject to the remaining provisions of this Section.

Every co-trustee or separate trustee shall, to the extent permitted by law but to such extent only, be appointed subject to the following terms, namely:

(a)  The Notes and Guaranties shall be authenticated and delivered solely by the Trustee.

(b)  All rights, powers, trusts, duties and obligations conferred or imposed upon the trustees shall be conferred or imposed upon and exercised or performed by the Trustee, or by the Trustee and such co-trustee or co-trustees or separate trustee or separate trustees jointly, as shall be provided in the instrument appointing such co-trustee or co-trustees or separate trustee or

57

PR-BINDER-01-00063

separate trustees, except to the extent that, under the law of any jurisdiction which any particular act or acts are to be performed, the Trustee shall be incompetent or unqualified to perform such act or acts, in which event such act or acts shall be performed by such co-trustee or co-trustees or separate trustee or separate trustees.

(c)  Any request in writing by the Trustee to any co-trustee or separate trustee to take or to refrain from taking any action hereunder shall be sufficient warrant for the taking, or the refraining from taking, of such action by such co-trustee or separate trustee.

(d)  Any co-trustee or separate trustee may, to the extent permitted by law, delegate to the Trustee the exercise of any right, power, trust, duty or obligation, discretionary or other-wise.

(e)  The Trustee at any time, by any instrument in writing, may accept the resignation of or remove any co-trustee or separate trustee appointed under this Section.  Upon the request of the Trustee, the Obligated Group Agent shall join with the Trustee in the execution, delivery and performance of all instruments and agreements necessary or proper to effectuate such resignation or removal.

(f)  No trustee or any paying agent hereunder shall be personally liable by reason of any act or omission of any other trustee or paying agent hereunder, nor will the act or omission of any trustee or paying agent hereunder be imputed to any other trustee or paying agent.

(g)  Any demand, request, direction, appointment, removal, notice, consent, waiver or other action in writing delivered to the Trustee shall be deemed to have been delivered to each such co-trustee or separate trustee.

(h)  Any moneys, papers, securities or other items of personal property received by any such co-trustee or separate trustee hereunder shall forthwith, so far as may be permitted by law, be turned over to the Trustee.

Upon the acceptance in writing of such appointment by any such co-trustee or separate trustee, it or he shall be vested with such rights, powers, duties or obligations, as shall be specified in the instrument of appointment jointly with full power and authority to do all acts and things and to exercise all discretion on its or his behalf and in its or his name.

58

PR-BINDER-01-00064

In case any co-trustee or separate trustee shall die, become incapable of acting, resign or be removed, all rights, powers, trusts, duties and obligations of said co-trustee or separate trustee shall, so far as permitted by law, vest in and be exercised by the Trustee unless and until a successor co-trustee or separate trustee shall be appointed in the manner herein provided.

ARTICLE VIII

SUPPLEMENTAL INDENTURES

     Section 8.01.  Supplemental Indentures Not Requiring Consent of Noteholders.  The Obligated Group, when authorized by resolution or other action of equal formality by the Governing Body of each Obligated Affiliate, and acting through the Obligated Group Agent, and the Trustee may, without the consent of or notice to any of the Holders, enter into one or more Supplemental Indentures for one or more of the following purposes; provided, however, that prior to the Effective Date a Supplemental Indenture to the Original Master Indenture shall also be executed and delivered in accordance with the terms of the Original Master Indenture:

     (a)  To cure any ambiguity or formal defect or omission herein.

     (b)  To correct or supplement any provision herein which may be inconsistent with any other provision herein, or to make any other provisions with respect to matters or questions arising hereunder and which shall not materially and adversely affect the interests of the Holders.

     (c)  To grant or confer ratably upon all of the Holders any additional rights, remedies, powers or authority that may lawfully be granted or conferred upon them subject to the provisions of Section 8.02(a).

     (d)  To qualify this Indenture under the Trust Indenture Act of 1939, as amended, or corresponding provisions of federal laws from time to time in effect.

     (e)  To create and provide for the issuance of a series of Notes or a Guaranty as permitted hereunder.

     (f)  To add an Obligated Affiliate as provided in Sections 5.10 or 5.12.

     (g)  To amend the covenants or the provisions hereof in the event there is a material change in the method or the practices of third-party reimbursement or payment; provided that there shall be delivered to the Trustee prior to the adoption of any such

59

PR-BINDER-01-00065

amendment an opinion of a consultant stating that the signer is of the opinion that (i) such amendment will not materially adversely affect the security, the remedies or other interests of the Noteholders, and (ii) as a result of such amendment, the Long-Term Debt Service Coverage Ratio in each of the first two periods of 12 full consecutive calendar months succeeding the date on which such amendment is to be adopted is projected to be higher than such Long-Term Debt Service Coverage Ratio would have been had such amendment not been adopted.

(h)  To amend the covenants or the provisions hereof in any respect; provided that, following such amendment, any rating on any Related Bond or Indebtedness outstanding hereunder in effect immediately prior to such amendment will not be withdrawn or reduced as a direct consequence of such amendment.

Section 8.02.  Supplemental Indentures Requiring Consent of Noteholders.  (a) Other than Supplemental Indentures referred to in Section 8.01 hereof and subject to the terms and provisions and limitations contained in this Article and not otherwise, the Holders of not less than 60% in aggregate principal amount of the Notes and Guaranties then Outstanding shall have the right, from time to time, anything contained herein to the contrary notwithstanding, to consent to and approve the execution by the Obligated Group Agent, on behalf of each Obligated Affiliate, when authorized by resolution or other action of equal formality by the Governing Body of each Obligated Affiliate, and the Trustee of such Supplemental Indentures as shall be deemed necessary and desirable for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained herein; provided, however, nothing in this Section shall permit or be construed as permitting a Supplemental Indenture which would:

(i)  extend the stated maturity of or time for paying interest on any Note or to reduce the principal amount of or the redemption premium or rate of interest payable on any Note without the consent of the Holder of such Note; or

(ii)  reduce the aggregate principal amount of Notes and Guaranties then Outstanding the consent of the Holders of which is required to authorize such Supplemental Indentures without the consent of the Holders of all Notes and Guaranties then Outstanding.

(b)  If at any time the Obligated Group Agent shall request the Trustee to enter into a Supplemental Indenture pursuant to this Section, which request is accompanied by a copy of the resolution or other action of the Governing Body of each Obligated Affiliate certified by its secretary, or if it has no secretary, its comparable officer, and the proposed Supplemental Indenture, and if within such period as shall be prescribed by the Obligated Group

60

PR-BINDER-01-00066

Agent following the request, the Trustee shall receive an instrument or instruments purporting to be executed by the Holders of not less than the aggregate principal amount or number of Notes and Guaranties specified in Subsection (a) for the Supplemental Indenture in question, which instrument or instruments shall refer to the proposed Supplemental Indentures and shall specifically consent to and approve the execution thereof in substantially the form of the copy thereof as on file with the Trustee, thereupon, but not otherwise, the Trustee may execute such Supplemental Indenture in substantially such form, without liability or responsibility to any Holder of any Note or Guaranty, whether or not such Holder shall have consented thereto.

(c)  Any such consent shall be binding upon the Holder of the Note or Guaranty giving such consent and upon any subsequent Holder of such Note or Guaranty and of any Note or Guaranty issued in exchange therefor (whether or not such subsequent Holder thereof has notice thereof), unless such consent is revoked in writing by the Holder of such Note or Guaranty giving such consent or by a subsequent Holder thereof by filing with the Trustee, prior to the execution by the Trustee of such Supplemental Indenture, such revocation and, if such Note or Guaranty or Notes or Guaranties are transferable by delivery, proof that such Notes are held by the signer of such revocation in the manner permitted by Section 10.01. At any time after the Holders of the required principal amount or number of Notes and Guaranties shall have filed their consents to the Supplemental Indenture, the Trustee shall make and file with the Obligated Group Agent a written statement to that effect.  Such written statement shall be conclusive that such consents have been so filed.

(d)  If the Holders of the required principal amount or number of the Notes and Guaranties Outstanding shall have consented to and approved the execution of such Supplemental Indenture as herein provided, no Holder of any Note or Guaranty shall have any right to object to the execution thereof, or to object to any of the terms and provisions contained therein or the operation thereof, or in any manner to question the propriety of the execution thereof, or to enjoin or restrain the Trustee or the Obligated Group Agent from executing the same or from taking any action pursuant to the provisions thereof.

Section 8.03.  Execution and Effect of Supplemental Indenture.

(a)  In executing any Supplemental Indenture permitted by this Article, the Trustee shall be entitled to receive and to rely upon an opinion of Counsel stating that the execution of such Supplemental Indenture is authorized or permitted hereby.  The Trustee may but shall not be obligated to enter into any such Supplemental Indenture which affects the Trustee's own rights, duties or immunities.

61

PR-BINDER-01-00067

(b)  Upon the execution and delivery of any Supplemental Indenture in accordance with this Article, the provisions hereof shall be modified in accordance therewith and such Supplemental Indenture shall form a part hereof for all purposes and every Holder of a Note and Guaranty theretofore or thereafter authenticated and delivered hereunder shall be bound thereby.

(c)  Any Note or Guaranty authenticated and delivered after the execution and delivery of any Supplemental Indenture in accordance with this Article may, and if required by the Obligated Affiliate issuing such Note or the Trustee shall, bear a notation in form approved by the Trustee as to any matter provided for in such Supplemental Indenture.  If the Obligated Affiliate issuing any series of Notes then Outstanding or the Trustee shall so determine, new Notes so modified as to conform, in the opinion of the Trustee and the Governing Body of such Obligated Affiliate, to any such Supplemental Indenture may be prepared and executed by the Obligated Affiliate and authenticated and delivered by the Trustee in exchange for and upon surrender of the Notes or Guaranties then Outstanding.

## ARTICLE IX

### SATISFACTION AND DISCHARGE OF INDENTURE

Section 9.01.  Satisfaction and Discharge of Indenture.  If (i) the Obligated Group Agent shall deliver to the Trustee for cancellation all Notes and Guaranties theretofore authenticated (other than any Notes which shall have been mutilated, destroyed, lost or stolen and which shall have been replaced or paid as provided in Section 2.04) and not theretofore canceled, or (ii) all Notes and Guaranties not theretofore canceled or delivered to the Trustee for cancellation shall have become due and payable and been paid, or (iii) the Obligated Group shall deposit with the Trustee (or with a bank or trust company acceptable to the Trustee) pursuant to an agreement between the Obligated Group and such bank or trust company in form acceptable to the Trustee as trust funds cash or Qualified Investments, the principal of and the interest on which when due or to become due to the maturity or redemption date, as the case may be, of such Notes and Guaranties shall be sufficient to deem such Notes and Guaranties no longer Outstanding hereunder, or (iv) with respect to Notes securing Related Bonds, sufficient funds shall be deposited with the Related Bond Trustee to deem such Related Bonds no longer outstanding, all in accordance with the Related Bond Indenture pursuant to which such Related Bonds were issued, and if in any case the Obligated Group shall also pay or cause to be paid all other sums payable hereunder by the Obligated Group, then this Indenture shall cease to be of further effect, and the Trustee, on demand of the Obligated Group Agent, and at the cost and expense of the Obligated Group, shall execute proper instruments acknowledging satisfaction of and

62

PR-BINDER-01-00068

discharging this Indenture. The Obligated Group hereby agrees to reimburse, the Trustee for any costs of expenses theretofore and thereafter reasonably and properly incurred by the Trustee in connection with this Indenture or such Notes and Guaranties. Notwithstanding the satisfaction and discharge of this Indenture, the obligations of the Obligated Group to the Trustee under Subsection 7.05(c) hereof shall survive.

Section 9.02. Payment of Notes and Guaranties after Discharge of Lien. Notwithstanding the discharge of the lien hereof as in this Article provided, the Trustee shall nevertheless retain such rights, powers and duties hereunder as may be necessary and convenient for the payment of amounts due or to become due on the Notes and Guaranties and the registration, transfer, exchange and replacement of Notes and Guaranties as provided herein. Nevertheless, any moneys held by the Trustee or any paying agent for the payment of the principal of, premium, if any or interest on any Note or Guaranty remaining unclaimed for five years after the principal of all Notes and Guaranties has become due and payable, whether at maturity or upon proceedings for redemption or by declaration as provided herein, shall then be paid to the Obligated Group Agent and the Holders of any Notes and Guaranties not theretofore presented for payment shall thereafter be entitled to look only to the Obligated Group for payment thereof as unsecured creditors, and all liability of the Trustee or any paying agent with respect to such moneys shall thereupon cease.

ARTICLE X

CONCERNING THE NOTEHOLDERS

Section 10.01. Evidence of Acts of Noteholders. (a) As to any request, direction, consent or other instrument provided hereby to be signed and executed by the Noteholders (i) such action may be in any number of concurrent writings, shall be of similar tenor, and may be signed or executed by such Noteholders in person or by agent appointed in writing, and (ii) in determining whether the Holders of the requisite principal amount of Notes and Guaranties have concurred in the taking of any action, Notes or Guaranties issued hereunder which are owned or held by a Related Bond Trustee as security for the payment of any Related Bond, if the terms of the Related Bond Indenture so provide, shall be disregarded and deemed not Outstanding for purposes of such determination and each holder of a Related Bond then outstanding under the Related Bond Indenture shall, for purposes of such determination, be deemed to hold a Note or Guaranty then outstanding in a principal amount equal to the aggregate principal amount of Related Bonds held by such holder.

63

PR-BINDER-01-00069

(b)  Proof of the execution of any such request, direction, consent or other instrument or of the writing appointing any such agent and of the ownership of Notes and Guaranties, if made in the following manner, shall be sufficient for any of the purposes hereof and shall be conclusive in favor of the Trustee and the Obligated Group with regard to any action taken by them, or either of them, under such request, direction or consent or other instrument, namely:

(i)  The fact and date of the execution by any person of any such writing may be proved by the certificate of any officer in any jurisdiction who by law has power to take acknowledgments in such jurisdiction, that the person signing such writing acknowledged before him the execution thereof, or by the affidavit of a witness of such execution;

(ii)  The ownership of Notes and Guaranties registered in the name of a Holder as to principal or as to principal and interest may be proved by the register of such Notes and Guaranties; and

(iii)  The ownership of Related Bonds registered in the name of a Holder as to principal or as to principal and interest may be proved by the register of such Related Bonds maintained pursuant to the Related Bond Indenture.

(c)  Nothing in this Section shall be construed as limiting the Trustee to the proof herein specified, it being intended that the Trustee may accept any other evidence of the matters herein stated which it may deem sufficient.

(d)  Any action taken or suffered by the Trustee pursuant to any provision hereof, upon the request or with the assent of any person who at the time is the Holder of any Note or Guaranty or Notes or Guaranties, shall be conclusive and binding upon all future Holders of the same Note or Guaranty or Notes or Guaranties.

Section 10.02. **Notes or Related Bonds Owned by Members of Obligated Group.**  In determining whether the Holders of the requisite aggregate principal amount of Notes or Guaranties have concurred in any demand, direction, request, notice, consent, waiver or other action under this Indenture, any Notes, Guaranties or Related Bonds that are owned by any member of the Obligated Group or by any person directly or indirectly controlling or controlled by or under direct or indirect common control with such member shall be disregarded and deemed not to be Outstanding or outstanding under the Related Bond Indenture, as the case may be, for the purpose of any such determination, provided that for the purposes of determining whether the Trustee shall be protected in relying on any such direction, consent or waiver, only such Notes, Guaranties or Related Bonds which the Trustee has actual notice or knowledge are so owned shall be so disregarded.  Any Notes,

64

PR-BINDER-01-00070

Guaranties or Related Bonds so owned that have been pledged in good faith may be regarded as outstanding or outstanding under the Related Bond Indenture, as the case may be, for purposes of this Section, if the pledgee shall establish to the satisfaction of the Trustee the pledger's right to vote such Notes, Guaranties or Related Bonds and that the pledgee is not a person directly or indirectly controlling or controlled by or under direct or indirect common control with any member of the Obligated Group. In case of a dispute as to such right, any decision by the Trustee taken upon the advice of counsel shall be full protection to the Trustee.

Section 10.03. Instruments Executed by Holders Bind Future Holders. At any time prior to (but not after) the time that the Trustee takes any action in reliance upon evidence (as provided in Section 10.01 hereof) of the consent or other action by the Holders of the percentage in aggregate principal amount of Notes and Guaranties specified herein, any such Holder which shall have so consented or taken such action may, by filing written notice with the Trustee and upon proof of holding as provided in Section 10.01, revoke such consent or other action. Except upon such revocation, any such consent given or action taken by the Holder of a Note, Guaranty or Related Bond in any direction, demand, request, waiver, consent, vote or other action of such Holder shall be conclusive and binding upon such Holder and upon all future Holders and owners of such Note, Guaranty or Related Bond, and of any Note, Guaranty or Related Bond issued in lieu thereof, whether or not any notation in regard thereto is made upon such Note, Guaranty or Related Bond. Any action taken by the Holders of the percentage in aggregate principal amount of Notes and Guaranties specified herein in connection with such action shall be conclusively binding upon the Obligated Group, the Trustee and the Holders of all of such Notes, Guaranties and Related Bonds.


ARTICLE XI

MISCELLANEOUS PROVISIONS

Section 11.01. Limitation of Rights. With the exception of rights herein expressly conferred, nothing expressed or mentioned in or to be implied from this Indenture or the Notes or any Guaranty issued hereunder is intended or shall be construed to give to any person, other than each Obligated Affiliate, the Trustee, and the Holders of the Notes and Guaranties issued hereunder, any legal or equitable right, remedy or claim under or in respect to this Indenture or any covenants, conditions and provisions herein contained; this Indenture and all of the covenants, conditions and provisions hereof being intended to be and being for the sole and exclusive benefit of the parties mentioned in this Section.

PR-BINDER-01-00071

**Section 11.02. Severability.** If any one or more sections, clauses, sentences or parts hereof shall for any reason be questioned in any court of competent jurisdiction and shall be adjudged invalid or unenforceable, such judgment shall not affect, impair or invalidate the remaining provisions hereof, or the Notes or any Guaranties issued pursuant hereto, but shall be confined to the specific sections, clauses, sentences and parts so adjudged.

**Section 11.03. Holidays.** Except to the extent a Related Bond Indenture, Supplemental Indenture, Note or Guaranty provides otherwise:

(a)  Subject to subsection (b), when any action is provided herein to be done on a day or within a time period named, and the day or the last day of the period falls on a day on which banking institutions in the jurisdiction where the Corporate Trust Office is located are authorized by law to remain closed, the action may be done on the next ensuing day which is not a day on which banking institutions in such jurisdiction are authorized by law to remain closed, with the same effect as though done on the day or within the time period named.

(b)  When the date on which principal of or interest or premium on any Note is due and payable is a day on which banking institutions at the place of payment are authorized by law to remain closed, payment may be made on the next ensuing day on which banking institutions at such place are not authorized by law to remain closed, with the same effect as though payment were made on the due date and, if such payment is made, no interest shall accrue from and after such due date.

**Section 11.04. Governing Law.** This Indenture and the Notes and any Guaranties issued hereunder are contracts made under the laws of the Commonwealth of Pennsylvania and shall be governed by and construed in accordance with such laws. Venue for any action commenced in connection with this Indenture shall lie in Allegheny County, Pennsylvania, or the United States District Court for the district wherein any Obligated Affiliate is situated.

**Section 11.05. Counterparts.** This Indenture may be executed in several counterparts, each of which shall be an original and all of which shall constitute one instrument.

**Section 11.06. Immunity of Individuals.** No recourse shall be had for the payment of the principal of, premium, if any, or interest on any of the Notes or any Guaranties issued hereunder or for any claim based thereon or upon any obligation, covenant or agreement herein against any past, present or future officer, member, employee or agent of any Obligated Affiliate which is a corporation, whether directly or indirectly, and all such liability of any such individual as such is hereby expressly waived and

66

released as a condition of and in consideration for the execution hereof and the issuance of the Notes and any Guaranties issued hereunder.

Section 11.07. **Binding Effect**. This instrument shall inure to the benefit of and shall be binding upon each Obligated Affiliate, the Trustee and their respective successors and assigns, subject to the limitations contained herein.

Section 11.08. **Notices**.    (a)  Unless  otherwise  expressly specified or permitted by the terms hereof, all notices, consents or other communications required or permitted hereunder shall be deemed sufficiently given or served if given in writing, mailed by first class mail, postage prepaid and addressed as follows:

> (i)  If to the Obligated Group Agent or any Obligated Group Affiliate, addressed to such party in care of Allegheny Health, Education and Research Foundation at 320 East North Avenue, Pittsburgh, Pennsylvania 15212, Attention: President

> (ii)  If to the Trustee, addressed to it at the Corporate Trust Office; or

> (iii)  If to the registered Holder of a Note, addressed to such Holder at the address shown on the books of the Trustee kept pursuant hereto.

(b)  The Obligated Group or the Trustee may from to time by notice in writing to the others and to the registered Holders of the Notes and Guaranties designate a different address or addresses for notice hereunder.

## ARTICLE XII

### EFFECTIVE DATE

The Effective Date of this Indenture shall be April 7, 1993, which is the date as of which the Series 1983-A Note issued under the Original Master Indenture is no longer outstanding, as defined in the Original Master Indenture.  The Effective Date shall be evidenced by a Supplemental Indenture to the Original Master Indenture and this Indenture.

PR-BINDER-01-00073

IN WITNESS WHEREOF, each Obligated Affiliate has caused these presents to be signed in its name and on its behalf and attested by its duly authorized officers and to evidence its acceptance of the trusts hereby created the Trustee has caused these presents to be signed in its name and on its behalf by its duly authorized officers, all as of the day and year first above written.

ATTEST:                               ALLEGHENY GENERAL HOSPITAL

_____      By: _____
Its: _SECRETARY_                    Its: _PRESIDENT_


ATTEST:                               ALLEGHENY SINGER RESEARCH INSTITUTE

_____      By: _____
Its: _SECRETARY_                    Its: _PRESIDENT_


ATTEST:                               ALLEGHENY NEUROPSYCHIATRIC INSTITUTE

_____      By: _____
Its: _Secretary_                    Its: _President_


                                      PNC BANK,
                                        as Trustee

ATTEST:
_____      By: _____
Its: __RICHARD A. RANII__           Its: __F. J. Deramo__
      TRUST OFFICER                       Vice President


68

COMMONWEALTH OF PENNSYLVANIA    )
                                )
COUNTY OF ALLEGHENY             )


     I, _____*Doreen T Vizza*_____, a Notary Public in and for the said County in the Commonwealth of Pennsylvania, do hereby certify that _*Anthony M Sanzo*_____ and _*Curtis H Copeland*_ personally known to me to be the same persons whose names are, respectively, as _____ President and _*assistant*_ Secretary of Allegheny General Hospital, a Pennsylvania nonprofit corporation, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they, being thereunto duly authorized, signed, sealed with the seal of said Corporation, and delivered the said instrument as the free and voluntary act of said Corporation and as their own free and voluntary act, for the uses and purposes therein set forth.

     GIVEN under my hand and notarial seal this _22nd_ day of _June_, 1993.

                     *Doreen T Vizza*
                     Notary Public in and for
                     Allegheny County, Pennsylvania

> Notarial Seal
> Doreen T. Vizza, Notary Public
> Pittsburgh, Allegheny County
> My Commission Expires June 13, 1994
> Member, Pennsylvania Association of Notaries

69

PR-BINDER-01-00075

COMMONWEALTH OF PENNSYLVANIA     )
                                )
COUNTY OF ALLEGHENY             )


    I,  *Adrian T Vizza*, a Notary Public in and for the said
County in the Commonwealth of Pennsylvania, do hereby certify that
*Jesse H. Holliek, MD* and *Olga Perkum* personally known to me to be
the same persons whose names are, respectively, as ____ President
and ____ Secretary of **Allegheny Singer Research Institute**, a
Pennsylvania nonprofit corporation, subscribed to the foregoing
instrument, appeared before me this day in person and severally
acknowledged that they, being thereunto duly authorized, signed,
sealed with the seal of said Corporation, and delivered the said
instrument as the free and voluntary act of said Corporation and as
their own free and voluntary act, for the uses and purposes therein
set forth.

    GIVEN under my hand and notarial seal this *22nd* day of
*June*, 1993.

                              *Adrian T. Vizza*
                              Notary Public in and for
                              Allegheny County, Pennsylvania

Notarial Seal
Adrian T. Vizza, Notary Public
Pittsburgh, Allegheny County
My Commission Expires June 13, 1994
Member, Pennsylvania Association of Notaries

70

COMMONWEALTH OF PENNSYLVANIA    )
                                )
COUNTY OF ALLEGHENY             )


    I, _____*Doreen T Vizza*_____, a Notary Public in and for the said
County in the Commonwealth of Pennsylvania, do hereby certify that
_____*Ralph S Dinicola*_____ and _____*Curtis E Copeland*_____ personally known to me to be
the same persons whose names are, respectively, as *Treasurer* ~~President~~
and _____ Secretary of Allegheny Neuropsychiatric Institute, a
Pennsylvania nonprofit corporation, subscribed to the foregoing
instrument, appeared before me this day in person and severally
acknowledged that they, being thereunto duly authorized, signed,
sealed with the seal of said Corporation, and delivered the said
instrument as the free and voluntary act of said Corporation and as
their own free and voluntary act, for the uses and purposes therein
set forth.

    GIVEN under my hand and notarial seal this _*22nd*_ day of
_*June*_, 1993.

                              *Doreen T Vizza*
                          Notary Public in and for
                          Allegheny County, Pennsylvania

Notarial Seal
Doreen T. Vizza, Notary Public
Pittsburgh, Allegheny County
My Commission Expires June 13, 1994
Member, Pennsylvania Association of Notaries

71

COMMONWEALTH OF PENNSYLVANIA    )
                               )
COUNTY OF ALLEGHENY            )


    I, _Janeen R Reimond_, a Notary Public in and for the said County in the Commonwealth of Pennsylvania, do hereby certify that ____F. J. DERAMO____ and _R. A. RANII__ personally known to me to be the same persons whose names are, respectively, as VICE PRESIDENT and __TRUST OFFICER_____ of PNC **Bank**, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they, being thereunto duly authorized, signed, sealed with the seal of said Bank, and delivered the said instrument as the free and voluntary act of said Bank and as their own free and voluntary act, for the uses and purposes therein set forth.

    GIVEN under my hand and notarial seal this _12th__ day of ___July__, 1993.

*Janeen R Reimond*
Notary Public in and for
Allegheny County, Pennsylvania.

> Notarial Seal
> Janeen R. Reimond, Notary Public
> Pittsburgh, Allegheny County
> My Commission Expires Aug. 3, 1995
> Member, Pennsylvania Association of Notaries

72

PR-BINDER-01-00078

FOLEY & LARDNER

ONE IBM PLAZA
SUITE 3300
330 NORTH WABASH AVENUE
CHICAGO, ILLINOIS 60611-3608
TELEPHONE (312) 755-1900
FACSIMILE (312) 755-1925
WRITER'S DIRECT LINE

A MEMBER OF GLOBALEX
WITH MEMBER OFFICES IN

LONDON, ENGLAND
PARIS, FRANCE
BERLIN, GERMANY
STUTTGART, GERMANY
DRESDEN, GERMANY
SINGAPORE
TAIPEI, TAIWAN

MILWAUKEE, WISCONSIN
MADISON, WISCONSIN
WASHINGTON, D.C.
ANNAPOLIS, MARYLAND
JACKSONVILLE, FLORIDA
ORLANDO, FLORIDA
TALLAHASSEE, FLORIDA
TAMPA, FLORIDA
WEST PALM BEACH, FLORIDA

July 21, 1993

PNC Bank, National Association
Pittsburgh, Pennsylvania

Allegheny General Hospital
Pittsburgh, Pennsylvania

Ladies and Gentlemen:

We have acted as special counsel to Allegheny General Hospital
("AGH"), Allegheny Singer Research Institute ("ASRI") and Allegheny
Neuropsychiatric Institute ("ANI"), all of which are Pennsylvania
nonprofit corporations, in connection with the execution and
delivery of the Restated and Amended Master Trust Indenture dated
April 7, 1993, as supplemented by the Seventh Supplemental Master
Trust Indenture dated April 7, 1993 (said Restated and Amended
Master Trust Indenture, supplemented as aforesaid, being referred
to herein as the "Restated Master Indenture"), among AGH, ASRI and
ANI (the "Obligated Group") and PNC Bank, as Master Trustee (the
"Master Trustee").

The Restated Master Indenture supplements, amends and otherwise
restates the Master Trust Indenture dated as of December 1, 1983,
as supplemented and amended (the "Original Master Indenture"),
between the Obligated Group and the Master Trustee.  The Second
Supplemental Master Trust Indenture dated as of February 1, 1988
which supplements the Original Master Indenture provides that the
Notes and Guaranties Outstanding under (and as defined in) the
Original Master Indenture on the effective date of the Restated
Master Indenture shall remain Outstanding under the Restated Master
Indenture.

To render this opinion, we have examined such documents,
certificates, records and corporate proceedings of the Obligated
Group and such other certificates, instruments and matters as we
have deemed relevant and necessary.  Based upon such examination,
we are of the opinion, as follows:

1.    All conditions precedent to the amendment of the Original
Master Indenture, which are set forth in Section 8.02 thereof, have
been complied with, and the execution of the Restated Master Inden-
ture is permitted under said Section 8.02.

PR-BINDER-01-00079

July 21, 1993
Page 2

    2.   The Restated Master Indenture has been duly authorized, executed and delivered by each member of the Obligated Group. Assuming the valid execution of the Restated Master Indenture by the Master Trustee (but expressing no opinion with respect to such), the Restated Master Indenture constitutes the legal, valid and binding agreement of each member of the Obligated Group, enforceable in accordance with its terms, subject to the qualification that (i) the enforcement thereof may be limited by laws relating to bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights and by the availability of equitable remedies and (ii) the provisions thereof pursuant to which each member of the Obligated Group covenants to make payments, loans or other transfers of moneys or assets for payment of debt service on Outstanding Notes (as defined in the Restated Master Indenture) may not be enforceable if such payments, loans or transfers: (a) are made with respect to any Note which was issued for a purpose which is not consistent with the charitable purpose of such member from which such payment, loan or transfer is requested or which was issued for the benefit of an entity other than a Tax-Exempt Organization (as defined in the Restated Master Indenture); (b) are requested to be made from any property which is donor restricted or which is subject to a direct, express or charitable trust which does not permit the use of such property for such payment, loan or transfer; or (c) would result in the cessation or discontinuation of any material portion of the health care or related services previously provided by such member from which such payment, loan or transfer is requested.

    3.  The Restated Master Indenture grants to the Master Trustee security interests in the Unrestricted Receivables (as defined therein) of the members of the Obligated Group, which security interests are (a) perfected to the extent that such security interests may be perfected by filing and (b) prior to any security interests in such Unrestricted Receivables which could be perfected solely by such filing, subject in each case as to enforcement of any applicable bankruptcy, reorganization, insolvency, moratorium, fraudulent conveyances or other similar laws or equitable principles affecting the enforcement of creditors' rights generally from time to time in effect.

                   Very truly yours,

                   *Tuy & Laran*

PR-BINDER-01-00080

---

## SEVENTH SUPPLEMENTAL MASTER TRUST INDENTURE

---

ALLEGHENY GENERAL HOSPITAL,
ALLEGHENY SINGER RESEARCH INSTITUTE
AND
ALLEGHENY NEUROPSYCHIATRIC INSTITUTE

AND

PNC BANK,
as Trustee

---

Dated April 7, 1993

---

Amending and Supplementing the Restated and Amended
Master Trust Indenture
dated April 7, 1993

---
---

This instrument was prepared by:

Robert J. Zimmerman
Foley & Lardner
Three First National Plaza
70 West Madison Street
Chicago, Illinois  60602

PR-BINDER-01-00081

THIS SEVENTH SUPPLEMENTAL MASTER TRUST INDENTURE (the "Seventh Supplemental Indenture"), dated April 7, 1993, between ALLEGHENY GENERAL HOSPITAL ("AGH"), ALLEGHENY SINGER RESEARCH INSTITUTE ("ASRI") and ALLEGHENY NEUROPSYCHIATRIC INSTITUTE ("ANI"), all Pennsylvania nonprofit corporations, and PNC BANK, Pittsburgh, Pennsylvania, a national banking association organized under the laws of the United States and duly qualified to accept and administer the trusts created hereby (the "Trustee");

### W I T N E S S E T H:

WHEREAS, Allegheny Health, Education and Research Corporation ("AHERC") and the Trustee executed and delivered that certain Master Trust Indenture dated as of December 1, 1983 (the "Original Master Indenture") pursuant to which AGH, ASRI and ANI became Obligated Restricted Affiliates; and

WHEREAS, AHERC and the Trustee executed and delivered the Second Supplemental Master Trust Indenture dated as of February 1, 1988 (the "Second Supplemental Indenture"), pursuant to which certain amendments to certain terms and provisions of the Original Master Indenture were proposed pursuant to the Restated and Amended Master Trust Indenture attached to the Second Supplemental Indenture as Exhibit A thereto (the "Restated Master Indenture") (the Original Master Indenture, as supplemented and amended by the amendments thereto set forth in the Restated Master Indenture, as hereby supplemented and amended and as heretofore and hereafter additionally supplemented and amended, being referred to herein as the "Master Indenture"); and

WHEREAS, subsequent to the date of the Original Master Indenture and the Second Supplemental Indenture, AHERC merged into AGH, and ANI became an Obligated Restricted Affiliate pursuant thereto; and

WHEREAS, Section 202 of the Second Supplemental Indenture provides, in compliance with the provisions of the Original Master Indenture relating to amendments to the Original Master Indenture, that the Restated Master Indenture shall become effective upon the date that the Series 1983-D Note issued under the Original Master Indenture, as supplemented by Supplemental Indenture No. One thereto, is no longer Outstanding under (and as defined in) the Original Master Indenture, as heretofore supplemented and amended (the "Effective Date"); and

WHEREAS, as of April 7, 1993 the Series 1983-D Note is no longer Outstanding under the Original Master Indenture, as heretofore supplemented and amended, and thus the Effective Date of the Restated Master Indenture is April 7, 1993; and

1

grants, bequests, donations and contributions heretofore or hereafter made to it, and the income and gains derived therefrom, which are specifically restricted by the donor or grantor to a particular purpose which is inconsistent with their use for payments required under the Master Indenture, as heretofore and hereby supplemented and amended, or on the Notes.

Section 2.03.  Upon the execution of this Seventh Supplemental Indenture, all Notes and Guaranties Outstanding under the Original Master Indenture, as heretofore supplemented and amended, shall remain Outstanding under the Master Indenture and, as provided in Section 5.01(b) of the Restated Master Indenture, shall be the joint and several obligations of each Obligated Affiliate.  If the issuer of any such series of Notes or Guaranties or the Trustee shall so determine, new Notes or Guaranties, modified so as to conform to any Supplemental Indenture executed in accordance with the Master Indenture, may be prepared and executed by the issuer and authenticated and delivered by the Trustee, pursuant to Section 8.03(c) of the Restated Master Indenture, in exchange for and upon surrender of such Outstanding Notes and Guaranties.

Section 2.04.  Termination of Contribution Agreements.  As provided in Section 2.05 of the Second Supplemental Indenture, ASRI and ANI shall, by the execution hereof, be discharged from their obligations as Restricted Affiliates under their respective Contribution Agreements (as said terms are defined in the Original Master Indenture, as heretofore supplemented and amended) which are hereby terminated.

ARTICLE III

RATIFICATION OF THE
MASTER INDENTURE

Section 3.01.  In all respects not inconsistent with the terms and provisions of this Seventh Supplemental Indenture, the Master Indenture is hereby ratified, approved and confirmed.

3

PR-BINDER-01-00084

In Witness Whereof, ALLEGHENY GENERAL HOSPITAL, ALLEGHENY SINGER RESEARCH INSTITUTE and ALLEGHENY NEUROPSYCHIATRIC INSTITUTE each has caused these presents to be signed in its name and on its behalf by its _____ President and its corporate seal to be hereunto affixed and attested by its _____ Secretary, and, to evidence its acceptance of the trusts hereby created, PNC BANK has caused these presents to be signed in its name and on its behalf by its _____, its official seal to be hereunto affixed, and the same to be attested by its _____, all as of the day and year first above written.

ALLEGHENY GENERAL HOSPITAL

By: _____

Its: President

(SEAL)

Attest:

_____

Its: Secretary

ALLEGHENY SINGER RESEARCH INSTITUTE

By: _____

Its: President

(SEAL)

Attest:

_____

Its: Secretary

ALLEGHENY NEUROPSYCHIATRIC INSTITUTE

By: _____

Its: President

(SEAL)

Attest:

_____

Its: Secretary

4

PR-BINDER-01-00085

PNC BANK, as Trustee

By: _____

Its: _____
            F. J. Deramo
            Vice President

(SEAL)

Attest:

Its: _____
   RICHARD A. RANII
    TRUST OFFICER

5

PR-BINDER-01-00086

COMMONWEALTH OF PENNSYLVANIA  )
                                      )
COUNTY OF ALLEGHENY            )

     I, _Doreen T. Vizza_, a Notary Public in and for the said County in the Commonwealth of Pennsylvania, do hereby certify that _Anthony M. Sanzo_ and _Curtis B. Consumo_ personally known to me to be the same persons whose names are, respectively, as _____ President and _Assistant_ Secretary of **Allegheny General Hospital**, a Pennsylvania nonprofit corporation, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they, being thereunto duly authorized, signed, sealed with the seal of said Corporation, and delivered the said instrument as the free and voluntary act of said Corporation and as their own free and voluntary act, for the uses and purposes therein set forth.

     GIVEN under my hand and notarial seal this _23rd_ day of _June_, 1993.

                           _Doreen T. Vizza_
                           Notary Public in and for
                           Allegheny County, Pennsylvania

Notarial Seal
Doreen T. Vizza, Notary Public
Pittsburgh, Allegheny County
My Commission Expires June 13, 1994
Member, Pennsylvania Association of Notaries

COMMONWEALTH OF PENNSYLVANIA   )
                                    )
COUNTY OF ALLEGHENY              )

     I, _Doreen T. Vizza_, a Notary Public in and for the said County in the Commonwealth of Pennsylvania, do hereby certify that _James H. McMaster MD_ and _____ personally known to me to be the same persons whose names are, respectively, as ‿‿‿ President and _____ Secretary of **Allegheny Singer Research Institute**, a Pennsylvania nonprofit corporation, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they, being thereunto duly authorized, signed, sealed with the seal of said Corporation, and delivered the said instrument as the free and voluntary act of said Corporation and as their own free and voluntary act, for the uses and purposes therein set forth.

     GIVEN under my hand and notarial seal this _23nd_ day of _June_, 1993.

                            _Doreen T. Vizza_
                          Notary Public in and for
                          Allegheny County, Pennsylvania

> Notarial Seal
> Doreen T. Vizza, Notary Public
> Pittsburgh, Allegheny County
> My Commission Expires June 13, 1994
> Member, Pennsylvania Association of Notaries

COMMONWEALTH OF PENNSYLVANIA    )
                                )
COUNTY OF ALLEGHENY             )

    I, _Dereen T Vizza_, a Notary Public in and for the said County in the Commonwealth of Pennsylvania, do hereby certify that _Joseph O Dewey_ and _Curtis B Cooper_ personally known to me to be the same persons whose names are, respectively, as _Treasurer_ ~~President~~ and ‾‾‾‾‾‾ Secretary of Allegheny Neuropsychiatric Institute, a Pennsylvania nonprofit corporation, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they, being thereunto duly authorized, signed, sealed with the seal of said Corporation, and delivered the said instrument as the free and voluntary act of said Corporation and as their own free and voluntary act, for the uses and purposes therein set forth.

    GIVEN under my hand and notarial seal this _22nd_ day of _June_, 1993.

                          _Dereen T Vizza_
                          Notary Public in and for
                          Allegheny County, Pennsylvania

Notarial Seal
Doreen T. Vizza, Notary Public
Pittsburgh, Allegheny County
My Commission Expires June 13, 1994
Member, Pennsylvania Association of Notaries

COMMONWEALTH OF PENNSYLVANIA    )

COUNTY OF ALLEGHENY             )
                                )

I, _Janeen R Reimard_, a Notary Public in and for the said County in the Commonwealth of Pennsylvania, do hereby certify that _F. J. DERAMO_ and _R. A. RANII_ personally known to me to be the same persons whose names are, respectively, as _VICE PRESIDENT_ and _TRUST OFFICER_ of PNC Bank, subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that they, being thereunto duly authorized, signed, sealed with the seal of said Bank, and delivered the said instrument as the free and voluntary act of said Bank and as their own free and voluntary act, for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this _12th_ day of _July_, 1993.

Notary Public in and for
Allegheny County, Pennsylvania.

Notarial Seal
Janeen R. Reimard, Notary Public
Pittsburgh, Allegheny County
My Commission Expires Aug. 3, 1996

Member, Pennsylvania Association of Notaries

PR-BINDER-01-00090

WHEREAS, the Holders of 100% in aggregate principal amount of the Notes presently Outstanding under (and as said terms are defined in) the Original Master Indenture, as heretofore supplemented and amended, have consented to the execution and delivery of the Restated Master Indenture; and

WHEREAS, the Restated Master Indenture, revised to reflect the Effective Date and the names of the members of the Obligated Group as of the Effective Date, is attached hereto as Exhibit A; and

WHEREAS, all acts and things necessary to constitute this Seventh Supplemental Indenture a valid Indenture and agreement according to its term have been done and performed.

NOW, THEREFORE, THIS SEVENTH SUPPLEMENTAL INDENTURE WITNESSETH:

## ARTICLE I

### DEFINITION OF TERMS

Section 101.   For the purposes of this Seventh Supplemental Indenture, unless the context otherwise indicates, all terms used but not defined herein which are defined in the Second Supplemental Indenture shall have the meanings assigned to them therein.

All accounting terms not otherwise defined herein shall have the meanings assigned to them in accordance with generally accepted accounting principles.

## ARTICLE II

### EFFECTIVE DATE OF AMENDMENTS

Section 2.01.  The Effective Date of the amendments to the Original Master Indenture, proposed in the Second Supplemental Indenture and incorporated in the Restated Master Indenture, is April 7, 1993, which is the date of this Seventh Supplemental Indenture.

Section 2.02.  AGH, ASRI and ANI each hereby grants to the Trustee a security interest in its respective "Unrestricted Receivables," which means all of its accounts and assignable general intangibles now owned or hereafter acquired, regardless of where generated, and all proceeds therefrom, whether cash or non-cash, all as defined in Article 9 of the Pennsylvania Uniform Commercial Code, as amended, and all contract rights now owned or hereafter acquired, regardless of where generated, and all proceeds therefrom, whether cash or non-cash, all as defined in said Pennsylvania Uniform Commercial Code; excluding, however, gifts,

2

PR-BINDER-01-00083

**EXHIBIT  0325**

4282C:1592/008

EXECUTION COPY

1988 Bonds.

LETTER OF CREDIT, REIMBURSEMENT AND SECURITY AGREEMENT

Dated as of February 1, 1988

Between

ALLEGHENY HEALTH, EDUCATION AND RESEARCH CORPORATION

and

PITTSBURGH NATIONAL BANK





DEPOSITION EXHIBIT
325
AKF

PNC18946

AH- 13936

4282C:1592/008

# TABLE OF CONTENTS

                                                                    Page

Recitals..............................................................    1

## ARTICLE I

### DEFINITIONS

Section 1.01.  Definitions................................    2
Section 1.02.  Rules of Construction; Time of Day........    8

## ARTICLE II

### LETTER OF CREDIT AND REIMBURSEMENT

Section 2.01.  Issuance of Letter of Credit ..............    8
Section 2.02.  Reimbursement and Other Payments .........    8
Section 2.03.  Transfer of Letter of Credit;
               Reduction of Letter of Credit
               Amount; Reinstatement ..................   13
Section 2.04.  Obligations Absolute ......................   13
Section 2.05.  Indemnification ...........................   14
Section 2.06.  Liability of Bank .........................   15

## ARTICLE III

### SECURITY

Section 3.01.  Subrogation ...............................   16
Section 3.02.  Pledge of Rights to Certain Funds
               and Investments ......................   16
Section 3.03.  Financing Statements ......................   16
Section 3.04.  Pledge Agreement ..........................   17

## ARTICLE IV

### CONDITIONS PRECEDENT

Section 4.01.  Documentation .............................   17
Section 4.02.  Issuance of Bonds .........................   18

PNC18947

i.

AH- 13937