ARTICLE TEN

IMMUNITY OF INCORPORATORS, MEMBERS, OFFICERS, EMPLOYEES
AND MEMBERS OF GOVERNING BODY

Section 10.1.  Incorporators, Members, Officers, Employees and
Members of the Governing            Body  Exempt  from  Individual
                                    Liability . . . . . . . . .  56

ARTICLE ELEVEN

SATISFACTION AND DISCHARGE OF MASTER INDENTURE;
RELEASE OF MEMBERS OF THE OBLIGATED GROUP;
UNCLAIMED MONEYS

Section 11.1.  Satisfaction and Discharge of Master Indenture  56
Section 11.2.  Application of Funds Deposited for Payment of
    Obligations . . . . . . . . . . . . . . . . . . . . . . .  57
Section 11.3.  Repayment of Moneys Held by Master Trustee . .  57

ARTICLE TWELVE

MISCELLANEOUS PROVISIONS

Section 12.1.  Successors and Assigns of Members of the Obligated
Group to be Bound by            Master Indenture . . . . . . .  58
Section 12.2.  Official Acts by Successor Corporation . . . .  58
Section 12.3.  Notice or Demand Served by Mail . . . . . . .  58
Section 12.4.  Governing Law . . . . . . . . . . . . . . . .  59
Section 12.5.  Legal Holidays . . . . . . . . . . . . . . . .  59
Section 12.6.  Benefits  of  Provisions  of  Indenture  and
    Obligations . . . . . . . . . . . . . . . . . . . . . . .  60
Section 12.7   Designation of Obligated Group Agent . . . . .  60
Section 12.8.  Execution in Counterparts . . . . . . . . . .  60
Section 12.9.  Effective Date . . . . . . . . . . . . . . . .  60
Section 12.10. Headings for Convenience Only . . . . . . . .  60

EXHIBIT A Existing Liens
EXHIBIT B Section 4.5 "Other Indebtedness"

iv

K&L/DAK 00007

This **MASTER TRUST INDENTURE** (the "Original Master Indenture" and, together with all amendments and supplements hereto, the "Master Indenture"), dated as of May 15, 1996, by and among **ALLEGHENY UNIVERSITY HOSPITALS** (formerly The Medical College of Pennsylvania and Hahnemann University Hospital System), **HAHNEMANN UNIVERSITY HOSPITAL, ALLEGHENY UNITED HOSPITALS, INC., ALLEGHENY UNIVERSITY FOR HEALTH SCIENCES** (formerly The Medical College of Pennsylvania and Hahnemann University), **ST. CHRISTOPHER'S HOSPITAL FOR CHILDREN** and **HORIZON MEDICAL CORPORATION**, all Pennsylvania nonprofit corporations, as the initial members of the Obligated Group ( together with such other persons as may become members of the Obligated Group, the "Obligated Group" and, each, together with any legal successor thereto, a "Member of the Obligated Group" or "Member"), and **NORWEST BANK MINNESOTA**, National Association (together with any legal successor thereto or assignee thereof, the "Master Trustee"), a national banking association organized and existing under the laws of the United States of America, with its present principal corporate trust office in Minneapolis, Minnesota.

## PRELIMINARY STATEMENT

The Members of the Obligated Group are authorized by law and deem it desirable to enter into this Master Indenture for the purpose of providing for the issuance from time to time of Notes and Indenture Guaranties (as such terms, together with certain other terms used herein, are defined in Section 1.1 hereof) in connection with the lawful and proper corporate purposes of the Members.

All acts and things necessary to constitute this Master Indenture a valid indenture and agreement according to its terms have been done and performed by the Members of the Obligated Group. At the time Obligations are issued in accordance with the provisions of this Master Indenture, all acts and things necessary to authorize such Obligations and to constitute such Obligations the valid and binding legal obligations of the Members of the Obligated Group will have been done and performed.

## GRANTING CLAUSE

NOW, THEREFORE, in order to declare the terms and conditions upon which Obligations are to be issued and delivered hereunder, and in consideration of the premises, and of the sum of One Dollar to it duly paid by the Master Trustee at the execution of this Master Indenture, the receipt of which is hereby acknowledged, and intending to be legally bound hereby, the Members of the Obligated Group hereby covenant and agree with the Master Trustee, for the equal and proportionate benefit of the respective Holders from time to time of all Obligations issued and Outstanding hereunder, to perform and observe all covenants and agreements of the Obligated Group and each Member of the Obligated Group hereunder, as follows:

K&L/DAK 00008

## ARTICLE ONE

### DEFINITIONS OF TERMS, CONSTRUCTION
### AND CERTAIN GENERAL PROVISIONS

Section 1.1.  <u>Definitions of Terms</u>. Unless the context shall otherwise require, the words and terms used in this Master Indenture shall have the meanings specified in this Section 1.1.

"Accountant" shall mean any Person who or which is appointed by any Member of the Obligated Group for the purpose of examining and reporting on or passing on questions relating to the financial statements of one or more Members of the Obligated Group or the entire Obligated Group, has all certifications necessary for the performance of such services, and has a favorable reputation for skill and experience in performing similar services in respect of entities of a comparable size and nature.

"Additional Indebtedness" shall mean any Indebtedness (including all Obligations, other than the 1996 Notes) incurred by any Member of the Obligated Group, subsequent to its becoming a Member of the Obligated Group.

"Affiliate" of any specified Person shall mean any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For purposes of this definition, "control" when used with respect to any specified Person means the power to direct the policies of such Person, directly or indirectly, whether through the power to appoint and remove its directors, the ownership of voting securities, by contract, membership or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"AHERF" shall mean Allegheny Health, Education and Research Foundation, a Pennsylvania nonprofit corporation.

"Architect" shall mean a Person who or which is appointed by any Member of the Obligated Group for the purpose of passing on questions relating to the design and construction of Facilities, has all licenses and certifications necessary for the performance of such services, and has a favorable reputation for skill and experience in performing similar services in respect of Facilities of a comparable size and nature.

"Audited Financial Statements" shall mean the consolidated or combined revenue and expense statement and balance sheet of the Obligated Group reported upon by an independent certified public Accountant.

"Balloon Indebtedness" shall mean:

(a)  Long-Term Indebtedness as to which, when issued, 25% or more of the principal thereof is due at maturity, or

2

K&L/DAK 00009

(b) Long-Term Indebtedness as to which, when issued, 25% or more of the principal thereof is due in a single year, or

(c) Long-Term Indebtedness as to which, when issued, 25% or more of the original principal amount thereof may, at the option of the holder or registered owner thereof, be redeemed or repurchased at one time, which portion of the principal is not required by the documents pursuant to which such Indebtedness is issued to be amortized by redemption prior to such date.

"Bond Index" shall mean (i) in respect of any outstanding Indebtedness, the average interest rate on such Indebtedness for the twelve (12) months immediately preceding the month prior to such calculation, or if such Indebtedness shall have a variable rate for less than a twelve (12) month period, the average interest rate for such lesser period; and (ii) in respect of any proposed Indebtedness, at the option of the Obligated Group Agent, the initial rate established for such Indebtedness, as determined by an Officer's Certificate.

"Book Value," when used in connection with Property of any Member of the Obligated Group, shall mean the cost of such Property, net of accumulated depreciation, calculated in conformity with generally accepted accounting principles, and when used in connection with Property of the Obligated Group, means the aggregate of the values so determined with respect to such Property of all Members of the Obligated Group determined in such a manner that no portion of such value of Property of any Member of the Obligated Group is included more than once.

"Capitalization" shall mean the principal amount of all outstanding Long-Term Indebtedness of the Obligated Group, plus the equity accounts of the Obligated Group (i.e., unrestricted fund balances, including any shareholder equity).

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and any successor thereto.

"Commitment Indebtedness" means the obligation of any Person to repay amounts disbursed pursuant to a Credit Facility to pay when due such Person's obligations with respect to Indebtedness.

"Completion Indebtedness" shall mean any Long-Term Indebtedness (i) incurred by any Person for the purpose of financing the completion of constructing or equipping Facilities with respect to which Long-Term Indebtedness was theretofore incurred in accordance with the provisions hereof, and (ii) with a principal amount not in excess of the amount required (a) to provide a completed and equipped Facility of substantially the type and scope contemplated at the time such prior Long-Term Indebtedness was originally incurred, (b) to provide for capitalized interest during the construction period and the period during which such Facilities are placed in service, (c) to capitalize a reserve with respect to such Completion Indebtedness

3

K&L/DAK 00010

and  d. to pay the costs and expenses of issuing such Completion Indebtedness.

"Construction Index" shall mean the health care component of the implicit price deflator for the gross national product as most recently reported prior to the date in question by the United States Department of Commerce or its successor agency, or, if such index is no longer published, such other index which is certified to be comparable and appropriate by the Obligated Group Agent in an Officer's Certificate delivered to the Master Trustee.

"Consultant" shall mean a Person who   r which is appointed by any Member of the Obligated Group for the purpose of passing on questions relating to the financial affairs, management or operations of one or more Members of the Obligated Group or the entire Obligated Group and has a favorable reputation for skill and experience in performing similar services in respect of entities engaged in reasonably comparable endeavors.  If any Consultant's report or opinion is required to be given with respect to matters partly within and partly without the expertise of any Consultant, such Consultant may rely upon the report or opinion of another Consultant possessing the necessary expertise.

"Counsel" shall mean an attorney-at-law or law firm (which may include Counsel to a Member of the Obligated Group, including inside Counsel retained by a Member of the Obligated Group or AHERF as an employee).

"Credit Facility" means any letter of credit, line of credit, insurance policy, guaranty or other agreement constituting a credit enhancement or liquidity facility which is issued by a bank, trust company, savings and loan association or other institutional lender, insurance company, financial institution or surety company.

"Debt Service Requirement" of any Person shall mean, for any period of time, the amounts payable or the payments required to be made by such Person in respect of principal and interest on Outstanding Long-Term Indebtedness during such period (including, with respect to Short-Term Indebtedness incurred pursuant to Section 4.1(c) hereof, the actual amount of interest paid thereon during such period and the principal due thereon during such period, calculated in accordance with Section 4.4 hereof), calculated in such a manner that no portion of Long-Term Indebtedness is included more than once and, taking into account (for purposes of calculating the Debt Service Requirements for any future period) that (i) the principal amount and any payments made in respect of any Indebtedness represented by a Guaranty shall be determined in accordance with Section 4.3 hereof, (ii) any payments to be made in respect of Balloon Indebtedness and Variable Rate Indebtedness shall be calculated in accordance with the provisions of Section 4.4 hereof, (iii) with respect to Indebtedness refunded or refinanced during such period, the amount of principal taken into account during such period shall be assumed to equal only the principal not payable from the proceeds of Indebtedness, and (iv) any amounts payable from funds available under an Escrow Deposit

4

K&L/DAK 00011

other than amounts so payable solely by reason of the obligor's failure to make payments from other sources) or funded from the proceeds of such Long-Term Indebtedness (i.e., accrued and capitalized interest) shall be excluded from the determination of the Debt Service Requirement.

"**Escrow Deposit**" shall mean a segregated escrow fund or other similar fund, account or deposit in trust of cash in an amount (and/or Investment Securities the principal of and interest on which will be in an amount), and under terms, sufficient to pay all or a portion of the principal of, premium, if any, and interest on Indebtedness as the same shall become due or payable upon redemption.

"**Event of Default**" shall mean any Event of Default under this Master Indenture, as provided in Article Seven hereof.

"**Facilities**" shall mean all land, leasehold interests and buildings and all fixtures and equipment of a Person.

"**Financial Advisor**" shall mean an investment banking or financial advisory firm, commercial bank or any other qualified Person who or which is appointed by any Member of the Obligated Group for the purpose of passing on questions relating to the availability and terms of specified types of Indebtedness for any Member of the Obligated Group and is actively engaged in and has a favorable reputation for skill and experience in underwriting or providing financial advisory services in respect of similar types of Indebtedness incurred by entities engaged in reasonably comparable endeavors.

"**First Supplemental Indenture**" shall mean the First Supplemental Master Trust Indenture dated as of May 15, 1996 to be executed and delivered by the Members of the Obligated Group and the Master Trustee concurrently with the execution and delivery of the Original Master Indenture, which First Supplemental Indenture supplements and amends the Original Master Indenture, provides for the issuance, authentication and delivery of the 1996 Notes under and pursuant to the Original Master Indenture, as so supplemented and amended and makes certain amendments to the Original Master Indenture solely for the benefit of the Bond Insurer (as defined therein).

"**Fiscal Year**" shall mean a period of twelve consecutive months ending on June 30 or on such other date as may be specified in an Officer's Certificate of the Obligated Group Agent executed and delivered to the Master Trustee.

"**Governing Body**" shall mean, when used with respect to any Person, its board of directors, board of trustees, or other board, committee or group of individuals in which the powers of a board of directors or board of trustees is vested generally or for the specific matters under consideration.

5

K&L/DAK 00012

"Government Issuer" shall mean any federal, state or municipal corporation or political subdivision thereof or any agency or instrumentality of any of the foregoing empowered to issue obligations on behalf thereof.

"Government Obligations" shall mean:

(i) direct obligations of, or obligations the timely payment of the principal of and interest on which is unconditionally guaranteed by, the United States of America;

(ii) evidences of ownership of a proportionate interest in specified direct obligations of, or specified obligations the timely payment of the principal of and the interest on which are unconditionally and fully guaranteed by, the United States of America, which obligations are held by a bank or trust company organized and existing under the laws of the United States of America or any state thereof in the capacity of custodian;

(iii) obligations issued by the Resolution Funding Corporation pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (the "FIRRE Act"), (A) the principal of which obligations is payable when due from payments of the maturing principal of non-interest bearing direct obligations of the United States of America which are issued by the Secretary of the Treasury and deposited in the Funding Corporation Principal Fund established pursuant to the FIRRE Act, and (B) the interest on which obligations, to the extent not paid from other specified sources, is payable when due by the Secretary of the Treasury pursuant to the FIRRE Act; and

(iv) obligations which are (A) issued by any state or political subdivision thereof or any agency or instrumentality of such a state or political subdivision, (B) fully secured as to principal and interest by obligations described in clause (i), (ii) or (iii) above and (C) rated at the time of purchase by a Rating Agency in its highest rating category.

"Gross Revenues" shall mean (a) all revenues, income and other money earned and actually received by the Members of the Obligated Group, (b) investment income from and revenues realized upon the liquidation or sale of securities held by or on behalf of the Members of the Obligated Group, including those held in any of the funds or accounts established pursuant hereto, (c) insurance proceeds received by the Members of the Obligated Group and (d) all gifts, grants, bequests, contributions, and donations received by the Members of the Obligated Group, including the unrestricted income and profits therefrom, exclusive of gifts, grants, bequests, contributions, and donations to the extent specifically restricted to a particular purpose inconsistent with their being pledged pursuant hereto.

"Guaranty" shall mean any obligation of a Member of the Obligated Group guaranteeing in any manner any obligation of any Person other than a Member of the Obligated Group, whether or not

6

K&L/DAK 00013

issued hereunder as an Indenture Guaranty, which obligation would, if such other Person were a Member of the Obligated Group, constitute Indebtedness of the guaranteeing Member.

"Historical Debt Service Coverage Ratio" shall mean, for any period of time, the ratio determined by dividing Total Income Available for Debt Service for such period by the Debt Service Requirement of the Obligated Group for such period.

"Historical Pro Forma Debt Service Coverage Ratio" shall mean for any period of time, the ratio determined by dividing Total Income Available for Debt Service for such period by the Maximum Annual Debt Service of the Obligated Group for all Long-Term Indebtedness then Outstanding and the Long-Term Indebtedness then proposed to be issued. *debt service on the*

"Holder" shall mean, as the context requires, the registered owner of any Note or the beneficiary of any Indenture Guaranty in whose name an Indenture Guaranty is issued. In the case of an Obligation issued to a trustee or other fiduciary acting on behalf of the holders of any bonds, notes or other similar obligations which are secured by such Obligation, including any registered securities depository then in the business of holding (for the benefit of beneficial owners whose interests may be evidenced by book-entry registration) substantial amounts of obligations of types comprising the Obligations, the term "Holder" shall mean the trustee or other fiduciary or, if so provided in the Related Financing Documents, the holders of the Related Bonds in proportion to their respective interests therein, including any registered securities depository then in the business of holding (for the benefit of beneficial owners whose interests may be evidenced by book-entry registration) substantial amounts of obligations of types comprising the Obligations.

"Income Available for Debt Service" of a Person shall mean, with respect to any period of time, excess of revenues over expenses (in the case of for-profit entities, net income after tax), as determined in accordance with generally accepted accounting principles, to which shall be added depreciation, amortization, and interest expense on Long-Term Indebtedness, and from which shall be excluded any extraordinary items, any gain or loss resulting from either the extinguishment of Indebtedness or the sale, exchange or other disposition of assets not made in the ordinary course of business, any gain or loss resulting from the valuation of investment securities at market value and any other gain or loss that does not require or result in the expenditure of cash.

"Indebtedness" of a Person shall mean (i) in the case of the Members of the Obligated Group, all Notes and Guaranties, (ii) all liabilities (exclusive of reserves) recorded as indebtedness on the audited financial statements of such Person as of the end of its most recent fiscal year for which financial statements reported upon by an Accountant are available, (iii) any lease of real or personal property which is required to be capitalized on the

7

K&L/DAK 00014

balance sheet of such Person as lessee and in all other
obligations for borrowed money; provided that Indebtedness shall
not include (ii), in the case of a Member of the Obligated Group,
Subordinated Indebtedness or any other Indebtedness of such Member
to any other Member of the Obligated Group or (ii) any other
obligation which does not constitute indebtedness under generally
accepted accounting principles.

"**Indenture Guaranty**" shall mean any Guaranty issued hereunder
by a Member of the Obligated Group and secured hereby.

"**Insurance Consultant**" shall mean a Person, who or which is
appointed for the purpose of reviewing and recommending insurance
coverages for the Facilities and operations of one or more Members
of the Obligated Group or the entire Obligated Group and has a
favorable reputation for skill and experience in performing such
services in respect of Facilities and operations of a comparable
size and nature.

"**Investment Securities**" shall mean and include the following:

(a)  Government Obligations;

(b)  debt obligations issued by any of the following agencies
or such other like governmental or government-sponsored agencies
which may be hereafter created:  Bank for Cooperatives; Federal
Intermediate Credit Banks; Federal Financing Bank; Federal Home
Loan Bank System; Federal National Mortgage Association; Export-
Import Bank of the United States; Federal Home Administration;
Small Business Administration; Inter-American Development Bank;
International Bank for Reconstruction and Development; Federal Land
Banks; or Government National Mortgage Association;

(c)  long term debt obligations of any Government Issuer,
provided that such obligations are rated by each applicable Rating
Agency in any of the three highest rating categories (without
reference to sub-categories) assigned by such Rating Agency;

(d)  rights to receive the principal of or the interest on
obligations of Government Issuers meeting the requirements set
forth in subsection (c) above, whether through (i) direct ownership
(as evidenced by physical possession of such obligations) or by
registration as to ownership on the books of the issuer or its duly
authorized paying agent or transfer agent, or (ii) purchase of
certificates or other instruments evidencing an undivided ownership
interest in payments of the principal of or interest on such
obligations;

(e)  negotiable and non-negotiable certificates of deposit,
time deposits or other similar banking arrangements which are
issued by banks of trust companies or savings and loan
associations, provided that, unless issued by a Qualified Financial
Institution, any such certificate, deposit or other arrangement
shall be continuously secured as to principal in the manner and to
the extent provided in the last paragraph of this definition;

8

K&L/DAK 00015

(f)  repurchase agreements for Investment Securities described in subparagraph (a) or (b) above with a Qualified Financial Institution or with dealers in government bonds which report to, trade with and are recognized as primary dealers by a Federal Reserve Bank and are members of the Securities Investors Protection Corporation, provided that the repurchase price payable under any such agreement shall be continuously secured in the manner and to the extent provided in the last paragraph of this definition;

(g)  investment  agreements  with  Qualified  Financial Institutions;

(h)  commercial paper rated in the highest rating category (without reference to sub-categories) by each applicable Rating Agency;

(i)  shares or certificates in any short term investment fund rated in the highest rating category (without reference to sub-categories) by each applicable Rating Agency, which short term investment fund invests solely in obligations described in subparagraph (a) and (b) above;

(j)  debt obligations of any foreign government or political subdivision thereof or any agency or instrumentality of such foreign government or political subdivision, provided that such obligations are rated by each applicable Rating Agency (without reference to sub-categories) in the highest rating category assigned by such Rating Agency;

(k)  such other investments which at the time of the acquisition thereof shall be listed as permissible investments or trusted funds in an indenture, resolution, official statement, offering circular or prospectus with respect to Indebtedness which is issued under this Master Indenture; or

(l)  investments in money market funds which are registered under the Securities Act of 1933 and which, at the time of purchase, are rated at least "AAAm-G," "AAAM" or "AAm" by Standard & Poor's Ratings Services and, if rated by Moody's Investors Service, Inc., are rated at least "Aaa," "Aa1" or "Aa2," including money market funds for which the Master Trustee or an affiliate provides services for a fee, whether as an investment advisor, custodian, transfer agent, registrar, sponsor, distributor, manager or otherwise, provided that sums not in excess of $5,000,000 may be invested in money market funds which do not satisfy the foregoing requirements for periods up to six months.

Any security required to be maintained for Investment Securities in the form of certificates of deposit, time deposits, other similar banking arrangements and repurchase agreements described in subsections (e) and (f) above shall be subject to the following:

(i)  the collateral shall be in the form of obligations described in subsections (a) or (b) above, except that the security

9

K&L/DAK 00016

for certificates of deposit, time deposits or other similar banking arrangements may include other marketable securities which are eligible as security for trust funds under applicable regulations of the Comptroller of the Currency of the United States of America or under applicable state laws and regulations;

(ii) the collateral shall have an aggregate market value, calculated not less frequently than monthly, at least equal to the principal amount (less any portion insured by the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation or any comparable insurance corporation chartered by the United States of America) or the repurchase price secured thereby, as the case may be. The instruments governing the issuance of and security for the Investment Securities shall designate the Person responsible for making the foregoing calculations; provided that the Master Trustee shall make such calculations (in accordance with, and subject to, any applicable Master Trustee guidelines or policies) if they are not made by the Person so designated.

"Lien" shall mean any mortgage or pledge of, security interest in or lien or encumbrance on any Property of a Person in favor of, or which secures any Indebtedness or any other obligation of a Person to, another Person but shall not include any such liens where both Persons are Members of the Obligated Group.

"Limited Obligor" shall mean any Person, other than a Member of the Obligated Group on whose account any Member of the Obligated Group has issued a Guaranty as consideration for such Person's execution and delivery to such Member of a Pledged Note.

"Long-Term Indebtedness" shall mean (i) all Indebtedness which, at the time of incurrence or issuance, has a final maturity or term greater than one year or which is renewable at the option of the obligor thereof for a term greater than one year from the date of original incurrence or issuance; provided that Long-Term Indebtedness shall not include (a) Subordinated Indebtedness; (b) current obligations payable out of current revenues, including current payments for the funding of pension or benefit plans and contributions to self insurance programs; (c) obligations under contracts for supplies, services or pensions allocated to the current operating expenses of future years in which the supplies are to be furnished, the services rendered or the pensions paid; and (d) rentals payable under leases which are not properly capitalized under generally accepted accounting principles.

"Maximum Annual Debt Service" shall mean the highest annual Debt Service Requirement of the Obligated Group for the current or any succeeding Fiscal Year during the remaining term of all Outstanding Obligations.

"Members of the Obligated Group" (i) shall mean Allegheny University Hospitals (formerly The Medical College of Pennsylvania and Hahnemann University Hospital System), Hahnemann University Hospital, Allegheny United Hospitals, Inc., Allegheny University

10

K&L/DAK 00017

for Health Sciences (formerly The Medical College of Pennsylvania and Hahnemann University), St. Christopher's Hospital for Children, Horizon Medical Corporation and each other Person which becomes a Member of the Obligated Group in accordance with the provisions of Article Three hereof, whether or not such Person has issued any Obligations hereunder, as long as none of the foregoing corporations or such other Persons have not withdrawn from the Obligated Group pursuant to Article Three hereof, and (ii) when used in respect of any particular Obligation or other Indebtedness, shall mean the obligor thereunder.

"Net Operating Revenues" of a Person shall mean, with respect to any period of time, operating revenues less contractual allowances, free care, discounts and allowances for bad debts, all determined in accordance with generally accepted accounting principles.

"1996 Notes" shall mean the Notes to be issued pursuant to the First Supplemental Indenture.

"Non-Recourse Indebtedness" shall mean any Indebtedness of a Person secured by a Lien on Property of such Person, liability for which is effectively limited to the Property subject to such lien, with no recourse, directly or indirectly, to any other Property of such Person.

"Note" shall mean any note of a Member of the Obligated Group issued hereunder and secured hereby in order to evidence Long-Term Indebtedness or Short-Term Indebtedness incurred pursuant to the terms hereof.

"Obligated Group" shall mean all of the Members of the Obligated Group.

"Obligated Group Agent" shall mean (i) initially, Allegheny University Hospitals (formerly The Medical College of Pennsylvania and Hahnemann University Hospital System), (ii) such other Member of the Obligated Group as the then incumbent Obligated Group Agent shall designate as a successor by an Officer's Certificate delivered to the Master Trustee or (iii) if the initial or then incumbent Obligated Group Agent withdraws from the Obligated Group pursuant to Section 3.2, the Member of the Obligated Group appointed by the other Members of the Obligated Group, as evidenced by resolutions of their respective Governing Bodies delivered to the Master Trustee.

"Obligations" shall mean all Notes and Indenture Guaranties, any lease, contractual agreement to pay money or other obligations of any Member of the Obligated Group secured hereby and any additional forms of Obligations created pursuant to Section 9.1 hereof.

"Officer's Certificate" shall mean a certificate signed, in the case of a corporation, by the Chairman, Vice Chairman, President or Chief Financial Officer or, in the case of a

11

K&L/DAK 00018

certificate delivered by any other Person, the chief executive or chief financial officer of such Person, in either case whose authority to execute such certificate shall be evidenced to the satisfaction of the Master Trustee. When an Officer's Certificate is required hereunder to set forth matters relating to one or more Members of the Obligated Group, such Officer's Certificate shall, unless the context provides otherwise, be given by the Obligated Group Agent and may be given in reliance upon another certificate, or other certificates, and supporting materials, if any, provided by any duly authorized officer of the applicable Member of the Obligated Group.

"Opinion of Bond Counsel" shall mean an opinion in writing signed by an attorney or firm of attorneys experienced in the field of municipal bonds whose opinions are generally accepted by purchasers of municipal bonds.

"Outstanding" shall mean, as of any date of determination, (i) when referring to Notes, all Notes theretofore issued or incurred and not paid and discharged other than (a) Notes theretofore canceled by the Master Trustee or delivered to the Master Trustee for cancellation, (b) Notes deemed paid and no longer Outstanding as provided in Article XI hereof or for which an Escrow Deposit has been established, (c) Notes in lieu of which other Notes have been authenticated and delivered in accordance herewith and (d) any Note held by any Member of the Obligated Group; or (ii) when referring to Indenture Guaranties, all Indenture Guaranties unless the Master Trustee has received from the Holder thereof a written release of all claims against the Member of the Obligated Group thereunder and all other Members of the Obligated Group; or (iii) when referring to Indebtedness other than Notes and Indenture Guaranties, all Indebtedness theretofore issued or incurred other than (a) Indebtedness which has been paid or for which an Escrow Deposit has been established, (b) Indebtedness for which an opinion of Counsel stating that such Indebtedness has been discharged has been provided to the Master Trustee, (c) evidence of Indebtedness for which new evidence has been substituted in a manner analogous to clause (i)(c) above, and (d) any evidence of Indebtedness held by any Member of the Obligated Group, provided that Obligations or evidences of Indebtedness held by any Member of the Obligated Group may be deemed by such Member to be continuously Outstanding if such Obligations or evidences of Indebtedness were acquired with an intent that they only be held temporarily in connection with an effort to remarket them to Persons other than such Member.

"Permitted Liens" shall mean this Master Indenture, all Related Financing Documents and, as of any particular time:

(i)     Any lien from any Member of the Obligated Group to any other Member of the Obligated Group;

(ii)     Any judgment lien or notice of pending action against any Member of the Obligated Group so long as the Obligated Group Agent certifies to the Master Trustee in an Officer's Certificate that (1) such judgment or pending action is being

K&L/DAK 00019

contested and execution thereon has been stayed or the period for responsive pleading or appeal has not lapsed, or (2) in the absence of such contest, neither the pledge and security interest of this Master Indenture nor any Property of any Member of the Obligated Group will be materially impaired or subject to material loss or forfeiture;

(iii)    (A)    Rights    reserved    to    or    vested    in    any municipality or public authority by the terms of any right, power, franchise, grant, license, permit or provision of law affecting any Property to (1) terminate such right, power, franchise, grant, license or permit, provided that the exercise of such right would not materially impair the use of such Property or materially and adversely affect the value thereof, or (2) purchase, condemn, appropriate or recapture, or designate a purchaser of, such Property; (B) any liens on any Property for taxes, assessments, levies, fees, water and sewer charges, and other governmental and similar charges and any liens of mechanics, materialmen, laborers, supplies or vendors for work or services performed or materials furnished in connection with such Property which are not due and payable or which are not delinquent or which, or the amount or validity of which, are being contested and execution thereon is stayed; (C) easements, rights-of-way, servitudes, restrictions and other minor defects, encumbrances, and irregularities in the title to any Property which, as certified in an Officer's Certificate of the applicable Member, do not materially impair the use of such Property or materially and adversely affect the value thereof; (D) rights reserved to or vested in any municipality or public authority to control or regulate any Property or to use such Property in any manner, which rights, as certified in an Officer's Certificate of the applicable Member, do not materially impair the use of such Property or materially and adversely affect the value thereof; and (E) to the extent that it affects title to any Property, this Master Indenture;

(iv)    Any lease which relates to Property of the Members of the Obligated Group which is of a type that is customarily the subject of such leases, including but not limited to any leasehold interest required under any Related Financing Documents and leases with respect to office space for physicians and educational institutions, food service Facilities, gift shops and radiology or other hospital based specialty services, pharmacy and similar departments;

(v)    Any Lien securing Indebtedness of the Members of the Obligated Group, provided such Lien also secures all Obligations (other than Obligations representing Subordinated Indebtedness or Non-Recourse Indebtedness of the Members of the Obligated Group) on a parity basis;

(vi)    Any Lien arising by reason of good faith deposits with any Member of the Obligated Group in connection with leases of real estate, bids or contracts (other than contracts for the payment of money), deposits by any Member of the Obligated Group to secure public or statutory obligations or to secure, or in lieu of,

13

K&L/DAK 00020

surety, stay or appeal bonds, and deposits as security for the payment of taxes or assessments or other similar charges;

(vii)    Any Lien arising by reason of deposits with, or the giving of any form of security to, any governmental agency or any body created or approved by law or governmental regulation for any purpose at any time as required by law or governmental regulation as a condition to the transaction of any business or the exercise of any privilege or license, or to enable any Member of the Obligated Group to maintain self-insurance or to participate in any funds established to cover any insurance risks or in connection with workers' compensation, unemployment insurance, pension or profit sharing plans or other similar social security plans, or to share in the privileges or benefits required for companies participating in such arrangements;

(viii)    Any Lien arising by reason of an Escrow Deposit;

(ix)    Any Lien in favor of a trustee or the holder of a Note on the proceeds of Indebtedness or cash or investments deposited with such trustee with such proceeds prior to the application of such proceeds or cash or investments;

(x)    Any Lien on moneys deposited by patients or others with any Member of the Obligated Group as security for or as prepayment for the cost of patient care;

(xi)    Any Lien on Property received by any Member of the Obligated Group through gifts, grants or bequests, such Lien being due to restrictions on such gifts, grants or bequests of Property or the income thereon;

(xii)    Statutory rights of the United States of America by reason of federal funds made available under 42 U.S.C. §§291 et seq. and similar rights under other federal and state statutes;

(xiii)    Liens existing at the time of a consolidation or merger pursuant to Section 6.5 hereof, on the date of acquisition of any Property or at the time a Person becomes a Member of the Obligated Group pursuant to Section 3.1 hereof, provided that no such Lien (or the amount of Indebtedness secured thereby) may be increased, extended, renewed or modified to apply to any Property of any Member of the Obligated Group not subject to such Lien on such date unless such Lien as so extended, renewed or modified otherwise qualifies as a Permitted Lien hereunder;

(xiv)    Any Lien existing on the date of the execution and delivery of the Original Master Indenture (i) on specified items of personal Property or (ii) described in **Exhibit A** hereto, provided that (A) no such Lien (or the amount of Indebtedness secured thereby) may be increased, extended, renewed or modified to apply to any Property of any Member of the Obligated Group not subject to such Lien on such date unless such Lien as so extended, renewed or modified otherwise qualifies as a Permitted Lien hereunder and (B) any judgment lien shown on **Exhibit A** hereto shall remain

14

K&L/DAK 00021

subject to the standard set forth in clause (2) of subparagraph (ii) of this definition;

(xv)    A security interest in any funds or accounts established pursuant to the provisions of any Related Financing Documents;

(xvi)    Liens in the form of purchase money security interests in Property financed with the proceeds of Indebtedness secured thereby;

(xvii)    Liens securing any Indebtedness of the Members of the Obligated Group permitted hereunder, provided that the Master Trustee shall have received an Officer's Certificate from the Obligated Group Agent to the effect that not more than 15% of the Value of all Property of the Obligated Group would be subject to a Lien (excluding any lien which secures Non-Recourse Indebtedness and purchase money security interests permitted under subsection (xvi) above for the purposes of making such calculation); and

(xviii)    Liens on accounts receivable arising as a result of sale of such accounts receivable with or without recourse, provided that the principal amount of Indebtedness secured by any such Lien does not exceed the aggregate sales price of such accounts receivable received by the Member of the Obligated Group selling the same.

"Person" shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, a trust, an unincorporated organization, a governmental unit or an agency, political subdivision or instrumentality thereof or any other group or organization of individuals.

"Pledged Note" shall mean a promissory note executed by a Limited Obligor, as maker, in favor of a Member of the Obligated Group, as payee, evidencing a sum certain liability of such maker to such payee, which note shall be assigned by such payee to the Master Trustee pursuant to Section 2.3 hereof.

"Projected Debt Service Coverage Ratio" shall mean, for any future period of time, the ratio determined by dividing projected Total Income Available for Debt Service for such period by Maximum Annual Debt Service of the Obligated Group.

"Property" shall mean any and all rights, titles and interests in and to any and all property whether real or personal, tangible or intangible, including cash, and wherever situated.

"Property, Plant and Equipment" shall mean all Property which is classified as property, plant and equipment under generally accepted accounting principles.

"Qualified Financial Institution" shall mean a bank, trust company, national banking association, insurance company or other financial services company whose unsecured long term debt

15

K&L/DAK 00022

obligations in the case of a bank, trust company, national banking association or other financial services company; or whose claims paying abilities (in the case of an insurance company) are rated in any of the three highest rating categories (without reference to sub-categories) by each applicable Rating Agency. For purposes hereof, the term "financial services company" shall include any investment banking firm or any affiliate or division thereof which may be legally authorized to enter into the transactions described in this Master Indenture pertaining, applicable or limited to a Qualified Financial Institution.

"Rating Agency" shall mean severally or collectively, if applicable (i) Standard & Poor's, a Division of The McGraw-Hill Companies and any successor thereto if it has assigned a rating to any Obligation issued and Outstanding hereunder or any Related Bonds issued and Outstanding pursuant to any Related Financing Documents, (ii) Moody's Investors Service, Inc. and any successor thereto if it has assigned a rating to any Obligation issued and Outstanding hereunder or any Related Bonds issued and Outstanding pursuant to any Related Financing Documents, and (iii) Fitch's Investors Service, L.P. and any successor thereto if it has assigned a rating to any Obligation issued and outstanding pursuant to any Related Financing Documents. If any such Rating Agency shall no longer perform the functions of a securities rating service for whatever reason, the term "Rating Agency" shall thereafter be deemed to refer to the others, but if both of the others shall no longer perform the functions of a securities rating service for whatever reason, the term "Rating Agency" shall thereafter be deemed to refer to any other nationally recognized rating service or services as shall be designated in writing by the Obligated Group Agent to the Master Trustee; provided that such designee shall not be unsatisfactory to the Master Trustee.

"Regulatory Body" shall mean any federal, state or local government, department, agency, authority or instrumentality and any other public or private organization, including accrediting bodies, having regulatory jurisdiction and authority over any Member of the Obligated Group or the Facilities or operations of such Member.

"Related Bond Indenture" shall mean any, indenture, bond resolution or other comparable instrument pursuant to which a series of Related Bonds are issued.

"Related Bond Issuer" shall mean the Government Issuer of any issue of Related Bonds.

"Related Bond Trustee" shall mean the trustee and its successors in the trust created under any Related Bond Indenture, and if there is no such trustee, shall mean the Related Bond Issuer.

"Related Bonds" shall mean the revenue bonds, notes, other evidences of indebtedness or any other obligations issued by a Government Issuer pursuant to a single Related Bond Indenture, the

16

K&L/DAK 00023

proceeds of which are loaned or otherwise made available to a Member of the Obligated Group in consideration of the execution, authentication and delivery of a Note to or for the order of such Government Issuer (or its assignee pursuant to a Related Bond Indenture), or (ii) any Person other than a Member of the Obligated Group in consideration of the issuance to such Government Issuer (or its assignee pursuant to a Related Bond Indenture) by such Person of any indebtedness or other obligation of such Person.

"**Related Financing Documents**" shall mean:

(a)  in the case of any Note, (i) all documents, including any Related Bond Indenture, pursuant to which the proceeds of the Note are made available to a Member of the Obligated Group, the payment obligations evidenced by the Note are created and any security for the Note (if permitted under this Master Indenture) is granted, and (ii) all documents, including any loan agreements, creating any additional payment or other obligations on the part of a Member of the Obligated Group which are executed in favor of the Holder in consideration of the Note proceeds being loaned or otherwise made available to such Member;

(b)  in the case of any Note securing Commitment Indebtedness, all documents creating, evidencing or securing such Commitment Indebtedness, including reimbursement and credit agreements with respect thereto;

(c)  in the case of any Indenture Guaranty, all documents creating the Indebtedness being guaranteed pursuant to the Indenture Guaranty and providing for the loan or other disposition of the proceeds of the Indebtedness and all documents pursuant to which any security for the Indenture Guaranty (if permitted hereunder) is granted; and

(d)  in the case of Indebtedness other than Notes and Indenture Guaranties, all documents relating thereto which are of the same nature and for the same purpose as the documents described in subparagraphs (a), (b) and (c) above.

"**Short-Term Indebtedness**" shall mean all Indebtedness other than Long-Term Indebtedness; provided that Short-Term Indebtedness shall not include (a) Non-Recourse Indebtedness or Subordinated Indebtedness; (b) current obligations payable out of current revenues, including current payments for the funding of pension and benefits plans and contributions to self insurance programs; (c) obligations under contracts for supplies, services or pensions allocated to the current operating expenses of future years in which the supplies are to be furnished, the services rendered or the pensions paid; and (d) rentals payable under leases which are not properly capitalized under generally accepted accounting principles.

"**Subordinated Indebtedness**" shall mean any promissory note, guaranty, lease, contractual agreement to pay money or other obligation of any Member of the Obligated Group which is expressly

17

K&L/DAK 00024

made subordinate and junior in right of payment of principal of, redemption premium, if any, and interest on (i) all Obligations issued pursuant to this Master Indenture and (ii) all other obligations of the Obligated Group hereunder and which is incurred on terms and conditions which substantially require that (1) no payment on account of principal of, redemption premium, if any, or interest on such Subordinated Indebtedness shall be made in any Fiscal Year, nor shall any property or assets be applied to the purchase or other acquisition or retirement of such Subordinated Indebtedness during any Fiscal Year, unless full payment of amounts due and payable in such Fiscal Year for principal of, redemption premium, if any, and interest on all Obligations issued under this Master Indenture have been made or duly provided for in accordance with the terms of such obligations; (2) no payment on account of principal of, redemption premium, if any, or interest on such Subordinated indebtedness shall be made, nor shall any property or assets be applied to the purchase or other acquisition or retirement of such Subordinated Indebtedness if, at the time of such payment or application, or immediately after giving effect thereto, (i) there shall exist a default in the payment of the principal of, redemption premium, if any, or interest on any Obligations, or (ii) there shall have occurred an Event of Default with respect to any Obligations, as defined therein and in this Master Indenture, and such Event of Default shall not have been cured or waived or shall not have ceased to exist; and (3) in the event that any Subordinated Indebtedness is declared or otherwise becomes due and payable because of the occurrence of an event of default with respect thereto, (x) the Holders at such time shall be entitled to receive payment in full thereon before the holders of the Subordinated Indebtedness shall be entitled to receive any payment on account of such Subordinated Indebtedness as a result of such event of default, and (y) no holder of Subordinated Indebtedness, or a trustee acting on such holder's behalf, shall be entitled to exercise any control over proceedings to enforce the terms and conditions of this Master Indenture.

"**Supplemental Indenture**" shall mean an indenture supplemental to, and authorized and executed pursuant to the terms of, this Master Indenture.

"**Total Income Available for Debt Service**" shall mean, as to any period, (a) the aggregate of Income Available for Debt Service of each Member of the Obligated Group for such period, determined in such a manner that no portion of Income Available for Debt Service of any Member of the Obligated Group is included more than once, plus (b) the Income Available for Debt Service of each Limited Obligor up to an amount equal to the outstanding principal balance evidenced by such Limited Obligor's Pledged Note.

"**Total Net Operating Revenues**" shall mean, as to any period, the aggregate of Net Operating Revenues of each Member of the Obligated Group for such period, determined in such a manner that no portion of Net Operating Revenues of any Member of the Obligated Group is included more than once.

18

K&L/DAK 00025

"Variable Rate Indebtedness" shall mean any portion of Indebtedness the interest rate on which fluctuates subsequent to the time of incurrence.

"Value," when used in connection with any Property, shall mean either (a) Book Value, or (b), at the election of the Obligated Group Agent evidenced by an Officer's Certificate delivered to the Master Trustee, the aggregate fair market value of such Property, as reflected in the most recent written report of an appraiser selected by the Obligated Group Agent and, in the case of real property, who or which is a member of the American Institute of Real Estate Appraisers (MAI), delivered to the Master Trustee (which report shall be dated not more than three years prior to the date as of which value is to be calculated) (i) increased or decreased by the cost of any Property acquired, or the fair market value of any Property disposed of, since the date of such report and (ii) increased or decreased by a percentage equal to the aggregate percentage increase or decrease in the Construction Index from the date of such report to the date as of which value is to be calculated.

Section 1.2.  **Construction of References**.  References by number in this Master Indenture to any Article or Section shall be construed as referring to the Articles and Sections contained in this Master Indenture, unless otherwise stated.  The words "hereby", "herein", "hereof", "hereto", and "hereunder" and any compounds thereof shall be construed as referring to this Master Indenture generally and not merely to the particular Article, Section or subdivision in which they occur, unless otherwise required by the context.  Words of the masculine gender shall be deemed and construed to include correlative words of the feminine and neuter genders.  Unless the context shall otherwise indicate, words importing the singular number shall include the plural and vice versa.

Section 1.3.  **Separability Clause**.  If any provision of this Master Indenture shall be held or be deemed to be, or shall in fact be, inoperative or unenforceable as applied to any particular case in any jurisdiction or jurisdictions, or in all jurisdictions or in all cases, because any provision conflicts with any constitution or statute or rule of public policy or for any other reason, such circumstance shall not have the effect of rendering the provision or provisions in question inoperative or unenforceable in any other jurisdiction or in any other case or circumstance or of rendering any other provision or provisions herein contained invalid, inoperative or unenforceable.

Section 1.4.  **Accounting Principles**.  Where the character or amount of any asset or liability or item of income or expense is required to be determined or any consolidation, combination or other accounting computation is required to be made for the purposes of this Master Indenture or any agreement, document or certificate executed and delivered in connection with or pursuant to this Master Indenture, such determination or computation shall be done in accordance with generally accepted accounting principles

19

K&L/DAK 00026

in effect on (i) the date of execution and delivery of this Master Indenture, or (ii) at the election of the Obligated Group Agent, as specified in an Officer's Certificate delivered to the Master Trustee, the date such determination or computation is made for any purpose of this Master Indenture, such accounting principles, to the extent applicable, to be consistently applied; provided that intercompany balances and liabilities among the Members of the Obligated Group shall be disregarded and that the requirements set forth herein shall prevail if inconsistent with generally accepted accounting principles. In the event that the fiscal year of any Member of the Obligated Group ends on a date other than the last day of a Fiscal Year, the character or amount of any asset or liability or item of income or expense of such Member for its fiscal year ending within any Fiscal Year under consideration shall be deemed to be the character or amount of the appropriate asset or liability or item of income or expense for such Fiscal Year.

## ARTICLE TWO

### NOTES AND INDENTURE GUARANTIES

Section 2.1. **Issuance of Obligations; Form and Terms Thereof.** Subject to the further conditions specified in Article Four hereof, each Member of the Obligated Group shall be permitted to issue one or more series of Obligations hereunder on which all Members of the Obligated Group will be jointly and severally liable. The Obligations of each series shall be issued in fully registered form and otherwise in substantially the form approved by the Member of the Obligated Group issuing such Obligations and set forth in the Supplemental Indenture providing for the issuance thereof. The number and aggregate principal amount of Obligations shall not be limited, except as provided in any Supplemental Indenture. Subject to the applicable provisions hereof, all Obligations shall be issued upon and contain such maturities, payment terms, interest rate provisions, redemption or prepayment features and other provisions as shall be set forth in the Supplemental Indenture providing for the issuance of such Obligations.

Section 2.2. **Payment of Obligations.** The principal of, premium, if any, and interest on the Obligations shall be payable in any currency of the United States of America which, on the respective dates of payment thereof, is legal tender for the payment of public and private debts, and such principal, premium, if any, and interest shall be payable at the principal corporate trust office of the Master Trustee or, if a Member of the Obligated Group so elects, such payments shall be made directly by such Member, by check or draft or by wire transfer to such Holder, in either case delivered on or prior to the date on which such payment is due. In the case of all payments made directly to the Holder of an Obligation, the Member of the Obligated Group issuing such Obligation shall give notice of any such payment to the Master Trustee concurrently with the making thereof, specifying the amount paid and identifying the Obligation with respect to which such

20

K&L/DAK 00027

payment was made by series, designation, number and Holder. Except with respect to Obligations directly paid, the Members of the Obligated Group agree to deposit with the Master Trustee prior to each due date of the principal of, premium, if any, or interest on any of the Obligations the sum becoming due, all in accordance with the specific terms for such payments which may from time to time be specified in Supplemental Indentures.

Section 2.3.    **Cross-Guaranties; Security Therefor.**

(a)  Each Member of the Obligated Group hereby unconditionally and irrevocably, jointly and severally guarantees and promises to pay, any and all payments on any Obligation, according to the terms thereof, when due.

(b)  If for any reason any payment required pursuant to the terms of any Obligation issued hereunder has not been timely paid by the Member of the Obligated Group which incurred such Obligation, all other Members of the Obligated Group shall be obligated under subsection (a) of this Section 2.3 to make such payment.

To secure the payment of and performance under all Outstanding Obligations, the Members of the Obligated Group hereby sell, assign, transfer, set over and pledge unto the Master Trustee and grant a security interest in all money and Investment Securities which may at any time be held by the Master Trustee in any fund or account which may be established by the Master Trustee hereunder in connection with the administration of the trusts created hereby, and in all Pledged Notes, to have and to hold in trust for the benefit of the Holders from time to time of all Obligations issued and Outstanding hereunder, without preference or priority of any one Obligation over any other Obligation except as otherwise expressly provided herein.

As additional security for the payment of and performance under all Outstanding Obligations, each Member of the Obligated Group hereby conveys, grants, assigns, transfers, pledges, sets over and confirms to the Master Trustee and its successors and assigns a security interest in its Gross Revenues, subject only to Permitted Liens.  Prior to the occurrence of an Event of Default, any Member of the Obligated Group may, upon compliance with the provisions of Section 4.2(f) hereof, transfer, pledge or grant a security interest in its Gross Revenues, free of the security interest granted in this Section 2.3.  In the event of any such transfer, pledge or grant, upon the request of the Obligated Group Agent, the Master Trustee shall execute a release of its security interest with respect to the Gross Revenues to be so transferred or pledged.

Gross Revenues may be used by the Members of the Obligated Group at any time for any lawful purpose, except as hereinafter provided.  If an Event of Default shall occur and be continuing, the Master Trustee shall notify the Holders, and the Members of the Obligated Group shall immediately deposit with the Master Trustee

21

K&L/DAK 00028

all Gross Revenues then on hand and not yet commingled with other funds of the Members and thereafter, on a daily basis, shall take such actions as may be reasonably necessary in order for the Gross Revenues thereafter paid or payable to the Members to be deposited with or transferred to the Master Trustee on a daily basis without commingling such Gross Revenues with other funds of the Members. The Master Trustee shall thereafter remit to the Members of the Obligated Group, upon written request of the Obligated Group Agent from time to time, Gross Revenues in such amounts as the Master Trustee, in its sole discretion, consistent with a Consultant's recommendations, shall determine there shall be sufficient to pay all necessary operating and maintenance expenses of the Members of the Obligated Group and thereafter shall apply such Gross Revenues pro rata to pay the Obligations. All Gross Revenues of the Members of the Obligated Group shall continue to be so deposited with or transferred to the Master Trustee until all Events of Default have been cured to the satisfaction of the Master Trustee or provision deemed by the Master Trustee to be adequate shall have been made therefor, whereupon the Gross Revenues shall be returned to the name and credit of the appropriate Members of the Obligated Group. During any such period that Gross Revenues are held by the Master Trustee, the Members of the Obligated Group shall not be entitled to use, retain or withdraw any of the Gross Revenues except as provided in this Section 2.3.

This Master Indenture constitutes a security agreement within the meaning of the Pennsylvania Uniform Commercial Code. In addition to all other rights and remedies hereunder, the Master Trustee shall have all rights and remedies of a secured party under the Pennsylvania Uniform Commercial Code. The Members of the Obligated Group shall join with the Master Trustee in the execution and filing of all financing statements, continuation statements and other documents as may be necessary from time to time to perfect or continue the perfection of the security interest granted in this Section 2.3.

Section 2.4. **Execution and Authentication of Obligations**. All Obligations shall be executed for and on behalf of a Member of the Obligated Group by its President, or such other officer designated in writing by, or in the manner specified in, a resolution of the Governing Body of such Member. All Obligations shall also require the written joinder thereto and execution thereof by the Obligated Group Agent and shall be executed for and on behalf of the Obligated Group Agent by its President, or such other officer designated in writing by, or in the manner specified in, a resolution of the Governing Body of the Obligated Group Agent. The signatures, or facsimiles thereof, of such officers may be mechanically or photographically reproduced on the Obligations. If any officer whose signature appears on any Obligation ceases to be such officer before delivery thereof, such signature shall remain valid and sufficient for all purposes as if such officer had remained in office until such delivery. Each Obligation shall be manually authenticated by an authorized signer of the Master Trustee, without which authentication no Obligation shall be valid or entitled to the benefits hereof.

22

K&L/DAK 00029

The Master Trustee's authentication shall be substantially in the following form:

### MASTER TRUSTEE'S AUTHENTICATION CERTIFICATE

The undersigned Master Trustee hereby certifies that this [Note/Indenture Guaranty/description of other Obligation] No. ____ is one of the [Notes/Indenture Guaranties/description of other Obligation] described in the within mentioned Master Trust Indenture.

_____
as Master Trustee

By: _____
Authorized Signature

Section 2.5.    Registration, Transfer and Exchange.

(a)  Registration books relating to Obligations of the Obligated Group shall be maintained at the principal corporate trust office of the Master Trustee.  Such books shall contain (i) the names and addresses of all Holders of Notes and all Holders of other Obligations who have filed their names and addresses with the Master Trustee for the purpose of receiving notices, and (ii) any other information which may be necessary for the proper discharge of the Master Trustee's duties hereunder in respect of such Obligations.

(b)  The Obligations of any series may be transferred or exchanged in the manner specified in the Supplemental Indenture providing for the issuance thereof.  No transfer or exchange made in any other manner shall be valid for any purpose hereunder. Unless otherwise specified in the Supplemental Indenture providing for the issuance of the Obligations to be transferred or exchanged, the Member of the Obligated Group issuing such Obligations shall pay all costs relating to such transfer or exchange, except for taxes or governmental charges related thereto, which shall be paid by the Holder requesting the transfer or exchange.

Section 2.6.    Mutilated, Destroyed, Lost or Stolen Obligations.

(a)  If any Obligation is mutilated, lost, stolen or destroyed, the Holder thereof shall be entitled to the issuance of a substitute Obligation only as follows:

(i)  in the case of a lost, stolen or destroyed Obligation, the Holder shall provide notice of the loss to the Obligated Group Agent, or to the Master Trustee within a reasonable time after the Holder receives notice of the loss;

23

K&L/DAK 00030

(ii)    in the case of a lost, stolen or destroyed Obligation, the Holder shall request the issuance of a substitute Obligation before the Obligated Group Agent receives notice of the transfer of the original Obligation to a bona fide purchaser for value without notice;

(iii)    in all cases, the Holder shall provide indemnity against any and all claims arising out of or otherwise related to the issuance of substitute Obligations pursuant to this Section 2.6 satisfactory to the Master Trustee and the Obligated Group Agent;

(iv)    in the case of a mutilated Obligation, the Holder shall surrender the Obligation to the Master Trustee for cancellation; and

(v)    in the case of a lost, stolen or destroyed Obligation, the Holder shall surrender any obligation which have not been lost, stolen or destroyed and provide evidence, satisfactory to the Master Trustee and the Obligated Group Agent, of the ownership of the affected Obligation and the loss, theft or destruction thereof.

Upon compliance with the foregoing, a new Obligation of like tenor and denomination, executed by the applicable Member of the Obligated Group, shall be authenticated by the Master Trustee and delivered to the Holder, all at the expense of the Holder to whom the substitute Obligation is delivered.    Notwithstanding the foregoing, the Master Trustee shall not be required to authenticate and deliver any substitute for an Obligation which has been called for redemption or which has matured or is about to mature and, in any such case, the principal or redemption price then due or becoming due shall be paid by the Master Trustee in accordance with the terms of the mutilated, lost, stolen or destroyed Obligation without substitution therefor.

(b)    Every substitute Obligation issued pursuant to this Section 2.6 shall constitute an additional contractual obligation of the Obligated Group, whether or not the Obligation alleged to have been destroyed, lost or stolen shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Master Indenture equally and proportionately with any and all other Obligations duly issued hereunder, provided that if the Obligation alleged to have been destroyed, lost or stolen shall at any time be enforceable by a bona fide purchaser for value without notice, such substitute Obligation shall no longer be deemed to be Outstanding hereunder, and the Obligated Group may recover the substitute Obligation and any payments of principal and interest made thereunder from the Holder to whom it was issued or from anyone taking under the Holder except a bona fide purchaser for value without notice.

(c)    All Obligations shall be held and owned upon the express condition that the foregoing provisions (i) are exclusive with respect to the replacement or payment of mutilated, destroyed, lost or stolen Obligations and (ii) shall preclude any and all other

24

K&L/DAK 00031