rights or remedies, notwithstanding any law or statute existing or hereafter enacted to the contrary with respect to the replacement or payment of negotiable instruments, investments or other securities without their surrender.

Section 2.7.    <u>Establishment of Funds and Investment of Fund Money</u>.  The Master Trustee shall establish and maintain a revenue or similar debt service fund hereunder for the purpose of accumulating and paying amounts due on Outstanding Obligations (i) if the applicable Supplemental Indenture provides for the making of deposits directly with the Master Trustee in respect of an Obligation, or (ii) upon the occurrence of an Event of Default hereunder and the exercise of any remedies by the Master Trustee for the benefit of all Holders of Outstanding Obligations.  In the case of (i) above, deposits to any such fund and payments therefrom shall be made in accordance with the terms and provisions of the applicable Supplemental Indenture for the making of deposits into and payments from such fund.  In the case of (ii) above, any moneys realized by the Master Trustee upon the exercise of any remedies shall be applied in accordance with the provisions of Section 7.6 hereof.   All money held at any time in any fund established hereunder in the case of (i) above shall, upon written request and direction of the Obligated Group Agent, be invested in Investment Securities and any money realized by the Master Trustee in the case of (ii) above shall be invested by the Master Trustee, without need of any further authorization or direction, only in Government Obligations having maturities not in excess of 90 days, unless the Master Trustee is otherwise directed by Holders in the manner provided in Section 7.8 hereof.  The Master Trustee shall not be liable or responsible for any loss resulting from any such investment.

Section 2.8.    <u>Supplemental Indenture Creating any Obligation</u>.  The Members of the Obligated Group and the Master Trustee may from time to time enter into a Supplemental Indenture in order to create an Obligation of one or more Members.  Such Supplemental Indenture shall (i) with respect to Obligations created thereby, set forth the date thereof and the date or dates on which principal of and premium, if any, and interest on such Obligations shall be payable, (ii) provide for the form of such Obligations and (iii) contain such other terms and provisions as shall not be inconsistent with the provisions hereof.

Section 2.9.    <u>Conditions to Issuance of Obligations Hereunder</u>.   Simultaneously with or prior to the execution authentication and delivery of Obligations pursuant to this Master Indenture:

(a)  All requirements and conditions to the issuance of such Obligations, if any, set forth in the Supplemental Indenture shall have been complied with and satisfied, as provided in an Officer's Certificate, a certified copy of which shall be delivered to the Master Trustee;

K&L/DAK 00032

'b. The applicable Member or Members of the Obligated Group or the Obligated Group Agent shall have delivered to the Master Trustee such opinions, certificates, proceedings, instruments and other documents as the Master Trustee or the Related Bond Issuer, if any, may reasonably request;

(c) Other than in the case of the issuance of the 1996 Notes, the requirements of Article IV with respect to the incurrence of Additional Indebtedness shall have been satisfied; and

(d) Each Supplemental Indenture shall specify the purpose or purposes for which such Obligations are being issued, which may be any lawful corporate purpose of the applicable Member of the Obligated Group.

## ARTICLE THREE

### MEMBERSHIP IN AND WITHDRAWAL
### FROM THE OBLIGATED GROUP

Section 3.1.    Conditions for Membership. A Person may become a Member of the Obligated Group only upon the following conditions:

(a) Such Person shall execute and deliver to the Master Trustee an appropriate instrument, satisfactory to the Master Trustee, containing the agreement of such Person (i) to become a Member of the Obligated Group under this Master Indenture and thereby to become subject to compliance with all provisions of this Master Indenture pertaining to a Member of the Obligated Group, including the performance and observance of all covenants and obligations of a Member of the Obligated Group hereunder, (ii) unconditionally and irrevocably guaranteeing to the Master Trustee, the Holders of all Obligations and each other Member of the Obligated Group that all Obligations which at the time have been issued and are then Outstanding and all Obligations which may thereafter be issued and be Outstanding hereunder will be paid in accordance with the terms thereof and of this Master Indenture when due, and (iii) granting the Master Trustee a security interest in its Gross Revenues, perfected to the extent permitted by law, subject only to Permitted Liens;

(b) The Master Trustee shall have received an Officer's Certificate of the Obligated Group Agent to the effect that the Obligated Group Agent consents to such Person becoming a Member of the Obligated Group;

(c) The Master Trustee shall have received an opinion of Counsel to the effect that (i) the conditions contained herein relating to membership in the Obligated Group have been satisfied; (ii) the instrument described in subparagraph (a) above has been duly authorized, executed and delivered by such Person and constitutes a legal, valid and binding agreement of such Person, enforceable in accordance with its terms, subject only to and limited by the then existing law relating to bankruptcy and

K&L/DAK 00033

insolvency and other standard and customary legal exceptions, (iii) under then existing law, such Person becoming a Member Obligated Group will not (1) subject any Obligation registration provisions of the Securities Act of 1933, as (or that any such Obligation has been so registered registration is required) or (2) require this Master Indenture be qualified under the Trust Indenture Act of 1939, as amended that this Master Indenture has been so qualified qualification is required);

(d)    If all amounts due or to become due on any Outstanding Related Bond which bears interest that is not includable in income under the Code have not been paid to the holder thereof Master Trustee shall have received an Opinion of Bond Counsel the effect that under then existing law such Person becoming Member of the Obligated Group would not adversely affect validity of such Related Bond or cause the interest payable Related Bond to become includable in gross income under the and

(e)    There is delivered to the Master Trustee an Certificate of the Obligated Group Agent (which certificate described in (B)(1) below shall treat the Income Available for Service and Indebtedness of such Person as if such Person Member of the Obligated Group) to the effect that (A) either Event of Default then exists hereunder, nor to such knowledge, does there then exist any event which, with the of time or giving of notice or both, would or might become of Default hereunder, or (2) such Person becoming a Member Obligated Group will cure any Event of Default then in hereunder, and (B) either (1) if one dollar of Additional Indebtedness were incurred, the Obligated Group would meet providing for the incurrence of Long-Term Indebtedness pursuant Section 4.2(a)(i) or (ii) hereof, or (2) by reason membership, the Projected Debt Service Coverage Ratio for the two Fiscal Years following such entry into the Obligated will be greater than the Projected Debt Service Coverage such Fiscal Years had such entry into the Obligated Group occurred.

Section 3.2.    **Withdrawal from the Obligated Group**.

(a)    No Member of the Obligated Group may withdraw Obligated Group unless:

(i)    If the Member of the Obligated Group is the Obligated Group Agent, the Obligated Group Agent the withdrawal;

(ii)    If all amounts due on any Outstanding Related which bears interest that is not includable in gross income the Code have not been paid to the holder thereof, the Trustee shall have received an Opinion of Bond Counsel, in substance satisfactory to the Master Trustee, to the effect under then existing law such Member's withdrawal from the

Group would not adversely affect the validity of such Related Bond or cause the interest payable on such Related Bond to become includable in gross income under the Code;

(iii)   The Master Trustee shall have received an Officer's Certificate of the Obligated Group Agent to the effect that, after giving effect to such withdrawal, either (1) if one dollar of Additional Indebtedness were incurred, the Obligated Group would meet the test providing for the incurrence of Long-Term Indebtedness pursuant to Section 4.2(a)(i) or (ii) hereof, or (2) such Person's withdrawal from the Obligated Group will cure any Event of Default then in existence hereunder, or (3) the Projected Debt Service Coverage Ratio for each of the two Fiscal Years immediately following withdrawal of such Member from the Obligated Group will be greater than the Projected Debt Service Coverage Ratio for such Fiscal Years had such withdrawal not occurred; and

(iv)   The Master Trustee shall have received an Officer's Certificate of the Obligated Group Agent to the effect that, immediately after the withdrawal of such Person from the Obligated Group, no Event of Default then shall exist hereunder, nor, to such officer's knowledge, shall there then exist any event which, with the passage of time or giving of notice or both, would become an Event of Default.

(b)   Upon compliance with the conditions contained in subsection (a) above, the Master Trustee shall execute any documents reasonably requested by the withdrawing Member to evidence the termination of such Member's obligations hereunder and on all Obligations.

## ARTICLE FOUR

### LIMITATIONS ON INCURRENCE OF ADDITIONAL INDEBTEDNESS

Section 4.1.   Short-Term Indebtedness.   Subject to Section 4.5 hereof, each Member of the Obligated Group agrees that it will not incur any Additional Indebtedness constituting Short-Term Indebtedness unless:

(a)   immediately after the incurrence of such Short-Term Indebtedness, the principal amount of all Short-Term Indebtedness of the Obligated Group then Outstanding which is incurred pursuant to this subparagraph (a) does not exceed 25% of the Total Net Operating Revenues for the most recent Fiscal Year for which Audited Financial Statements are available; or

(b)   such Short-Term Indebtedness is being incurred as interim financing and is intended to be repaid out of the proceeds of other Long-Term Indebtedness, provided that any one of the applicable conditions described in Section 4.2 hereof is met with respect to such Short-Term Indebtedness on the date of the original incurrence thereof, assuming for purposes of compliance therewith that such

28

K&L/DAK 00035

Short-Term Indebtedness is Long-Term Indebtedness characterized as Balloon Indebtedness; or

(c) such Short-Term Indebtedness is intended to be reissued and refinanced periodically (as, for example, in the case of commercial paper and related Commitment Indebtedness), provided that any one of the applicable conditions described in Section 4.2 hereof is met with respect to such Short-Term Indebtedness on the date of the original incurrence thereof, assuming for purposes of compliance therewith that such Short-Term Indebtedness is Long-Term Indebtedness characterized as Balloon Indebtedness.

For a period of not fewer than 15 consecutive days within each Fiscal Year commencing with the Fiscal Year beginning July 1, 1996, the Obligated Group shall reduce the aggregate principal amount of all Outstanding Short-Term Indebtedness described in subparagraph (a) above to less than (i) 5% of Total Net Operating Revenues for the immediately preceding Fiscal Year plus (ii) such additional amount as the Obligated Group Agent certifies in an Officer's Certificate is (a) attributable to Short-Term Indebtedness incurred to offset a temporary delay in the receipt of funds due from third-party payors and (b) in the minimum amount reasonably practicable taking into account such delay.

Short-Term Indebtedness described in subparagraph (a) above shall not be deemed to include overdrafts to banks to the extent that the Obligated Group has immediately available funds sufficient to pay such overdrafts and such overdrafts occur and are corrected in the normal course of business.

**Section 4.2.    Other Indebtedness.**    Except as permitted in Sections 4.1 and 4.5 hereof, each Member of the Obligated Group agrees that it will not incur any Additional Indebtedness other than the following:

(a)  Long-Term Indebtedness if, prior to the incurrence thereof, there is delivered to the Master Trustee:

(i) an Officer's Certificate of the Obligated Group Agent certifying that the Historical Pro Forma Debt Service Coverage Ratio for the most recent Fiscal Year preceding the delivery of such Officer's Certificate for which Audited Financial Statements are available was not less than 1.20; or

(ii) (A) an Officer's Certificate of the Obligated Group Agent certifying that the Historical Debt Service Coverage Ratio for the most recent Fiscal Year preceding the delivery of such Officer's Certificate for which Audited Financial Statements are available was not less than 1.10, and (B) a Consultant's report (or, in lieu thereof, an Officer's Certificate of the Obligated Group Agent if the Projected Debt Service Coverage Ratio described in this subsection (B) is 1.75 or greater) to the effect that the Projected Debt Service Coverage Ratio, taking the proposed Additional Indebtedness into account, (x) in the case of Additional Indebtedness (other than a Guaranty) to finance capital

K&L/DAK 00036

improvements, for each of the two Fiscal Years succeeding the date on which such capital improvements are expected to be in operation, or (y) in the case of Long-Term Indebtedness not financing capital improvements or in the case of a Guaranty, for each of the two Fiscal Years succeeding the date on which the Indebtedness or Guaranty is incurred, is not less than 1.20.

The requirements of (a)(ii)(A) and (B) above will be deemed satisfied if (i) a Consultant's report filed with the Master Trustee contains a report of such Consultant that applicable laws or regulations have prevented or will prevent the achievement of such debt service coverage ratios, and (ii) the Obligated Group has generated Total Income Available for Debt Service in an amount which, in the opinion of such Consultant, the Obligated Group could reasonably have generated given such laws and regulations during the period affected thereby.

(b) Completion Indebtedness without limit if there is delivered to the Master Trustee: (i) an Officer's Certificate of the applicable Member of the Obligated Group, or of the Obligated Group Agent, stating that at the time the original Long-Term Indebtedness for the Facilities to be completed was incurred, such Member had reason to believe that the proceeds of such Long-Term Indebtedness, together with other moneys then expected to be available, would provide sufficient moneys for the completion of such Facilities; (ii) a statement of an Architect, a Consultant or an expert acceptable to the Master Trustee setting forth the amount estimated to be needed to complete the Facilities; and (iii) an Officer's Certificate of such Member of the Obligated Group, or of the Obligated Group Agent, stating that the proceeds of such Completion Indebtedness to be applied to the completion of the Facilities, together with a reasonable estimate of investment income to be earned on such proceeds and the amount of moneys, if any, committed to such completion by such Member or through enumerated bank loans (including letters or lines of credit) or through federal or state grants, will be in an amount not less than the amount set forth in the statement of an Architect or other expert referred to in clause (ii) above.

(c) Commitment Indebtedness without limit.

(d) Long-Term Indebtedness incurred for the purpose of refunding, repurchasing or refinancing (whether in advance or otherwise) any outstanding Long-Term Indebtedness if prior to incurrence thereof an Officer's Certificate of the applicable Member of the Obligated Group, or of the Obligated Group Agent, is delivered to the Master Trustee stating that the proposed Long-Term Indebtedness being incurred for the purpose of refunding, repurchasing or refinancing is in the best interests of either the Member of the Obligated Group or the Obligated Group.

(e) Subordinated Indebtedness or Non-Recourse Indebtedness without limit.

30

K&L/DAK 00037

(f) Indebtedness incurred in connection with a sale of accounts receivable with or without recourse by any Member of the Obligated Group consisting of an obligation to repurchase all or a portion of such accounts receivable upon certain conditions, provided that the principal amount of such Indebtedness permitted hereby shall not exceed the aggregate sales price of such accounts receivable received by such Member.

(g) Long-Term Indebtedness if prior to the incurrence thereof an Officer's Certificate of the Obligated Group Agent is delivered to the Master Trustee certifying that, immediately following the incurrence of such Long-Term Indebtedness, the total Outstanding Long-Term Indebtedness of the Obligated Group will not exceed 66-- 2/3% of the Capitalization.

(h) Long-Term Indebtedness of any Member of the Obligated Group (excluding for this purpose Long-Term Indebtedness permitted by or incurred in accordance with the provisions of subsections (a) through (g) hereof, which shall not be taken into account), the principal amount of which at the time incurred, together with the aggregate principal amount of all other Long-Term Indebtedness of the Obligated Group then Outstanding (excluding, as aforesaid, Long-Term Indebtedness permitted by or incurred in accordance with the provisions of subsections (a) through (g) hereof), does not exceed 25% of the Total Net Operating Revenues for the most recent Fiscal Year for Audited Financial Statements are available. If a Member of the Obligated Group incurs any Long-Term Indebtedness described in this Section 4.2(h) without delivery of the Officer's Certificate and the Consultant's report described in Section 4.2(a)(ii) hereof, and such Long-Term Indebtedness is later reported upon by a Consultant (and the report thereof is filed with the Master Trustee), whether as a condition to the incurrence of other Long-Term Indebtedness or otherwise, the portion of the percentage limitation described herein represented by such Long-Term Indebtedness so reported upon shall be reinstated and may be incurred again without the report of a Consultant, provided that the principal amount of such Indebtedness incurred after reinstatement shall not exceed the 25% limit described herein.

No Additional Indebtedness shall be deemed to arise when (i) Variable Rate Indebtedness is converted to Indebtedness which bears interest at a fixed rate, or (ii) the method of computing the interest rate on such Variable Rate Indebtedness is changed, or (iii) the terms upon which such Variable Rate Indebtedness may be or is required to be tendered for purchase are changed if, in each case, such conversion or change is made in accordance with the provisions applicable to such Variable Rate Indebtedness at the time of the original incurrence thereof.

Section 4.3.   **Guaranties; Limited Obligors**.

(a) Each Member of the Obligated Group agrees that it will not enter into or become liable in respect of any Guaranty dated after the date of this Master Indenture unless 20% of the principal amount of the Indebtedness being guaranteed could then be incurred

31

K&L/DAK 00038

as Indebtedness under Section 4.1 or 4.2 hereof, taking into account the assumptions as to calculating the annual principal and interest payments on, and the principal amount of, any Indebtedness being guaranteed, contained in subsection (b) of this Section 4.3 and using any applicable assumptions set forth in Section 4.4 hereof.

(b) The annual principal and interest payments on any Guaranty shall be deemed to be equal to 20% of the average annual principal and interest payments which would be payable on the Indebtedness being guaranteed if such Indebtedness were Indebtedness of the guarantor, and the principal amount of such Indebtedness shall be deemed to be 20% of such principal amount. If at any time the Guaranty becomes due and payable, then, for the Fiscal Year in which such payment is made, the annual principal and interest payments on the Guaranty shall be deemed to equal 100% of the principal and interest payable on the Indebtedness being guaranteed, and the principal amount of such Indebtedness shall be deemed to be 100% of such principal amount.

(c) Any Person may become a Limited Obligor upon delivery to the Master Trustee of the following:

(1) a Pledged Note, together with an Officer's Certificate of the Obligated Group Agent to the effect that the Obligated Group Agent consents to such Person becoming a Limited Obligor; and

(2) An opinion or opinions of Counsel to the effect that the Pledged Note (i) has been duly authorized, executed and delivered by the Limited Obligor, (ii) constitutes the legal, valid and binding obligation of the Limited Obligor, enforceable in accordance with its terms, subject only to and limited by the then existing law relating to bankruptcy and insolvency and other customary and standard legal exceptions, and (iii) has been validly assigned by the applicable Member of the Obligated Group to the Master Trustee.

(d) Any Person shall be released from its obligations and status as a Limited Obligor only upon the following conditions:

(1) The Master Trustee shall have received an Officer's Certificate of the Obligated Group Agent consenting to the release of such Person from its status as a Limited Obligor and certifying that immediately after the release of such Person, no Event of Default shall then exist hereunder, nor, to such officer's knowledge, shall there then exist any event which, with the passage of time or giving of notice or both, would become an Event of Default; and

(2) The Master Trustee shall have received an Officer's Certificate of the Obligated Group Agent to the effect that either (1) after giving effect to such release, either (1) if one dollar of Additional Indebtedness were incurred, the Obligated Group would meet the test providing for the incurrence of Long-Term

K&L/DAK 00039

Indebtedness pursuant to Section 4.2(a)(1) or (11) hereof, or (2) the Projected Debt Service Coverage Ratio for each of the two Fiscal Years immediately following such release will be greater than the Projected Debt Service Coverage Ratio for such Fiscal Years had such release not occurred, or (3) such Person has become a Member of the Obligated Group;

(e)  Upon  compliance  with  the  conditions  contained  in subsection  (d)  above,  the  Master  Trustee  shall  surrender  the Pledged Note to the Person ceasing its status as a Limited Obligor duly  marked  "canceled"  and  shall  execute  such  other  documents reasonably requested by such Person to evidence the termination of such status.

**Section 4.4.  Debt Service on Balloon Indebtedness and Variable Rate Indebtedness.**  For purposes of the covenants and computations  required  or  permitted  pursuant  to  this  Master Indenture, it shall be assumed, at the discretion of the applicable Member of the Obligated Group or the Obligated Group Agent, as the case may be, that any one of the following is satisfied:

(i)   the principal of Balloon Indebtedness is amortized from the date of calculation thereof over a term of thirty (30) years with level annual debt service payments at an assumed interest rate equal to the Bond Index; or

(ii)   the principal of Balloon Indebtedness is amortized during the term to the maturity thereof by deposits made to a sinking fund therefor pursuant to the terms of such Balloon Indebtedness or in accordance with a sinking fund schedule established by resolution of the Governing Body of the applicable Member of the Obligated Group adopted at or subsequent to the time of incurrence of such Balloon Indebtedness, as certified in an Officer's Certificate, provided that, at the time of such calculation, all deposits required to have been made prior to such date shall have been made; or

(iii)   the principal of Balloon Indebtedness is due and payable on the specified due date or due dates thereof; or

(iv)   with respect to Balloon Indebtedness for which there exists  a  Credit  Facility,  the  principal  of  such  Balloon Indebtedness  is  due  and  payable  in  the  amounts  and  at  the  times specified in the Credit Facility; and

(v)   Variable   Rate   Indebtedness   (other   than   Balloon Indebtedness) shall be assumed to be Indebtedness the interest on which is equal to that rate derived from the Bond Index.

**Section 4.5.  Existing Indebtedness.**  Each Member of the Obligated Group may incur Indebtedness, which may or may not be secured by an Obligation, in order to refinance the obligations described in **EXHIBIT B** hereto without meeting any of the tests set forth in Section 4.1 or 4.2 hereof; provided, however, that the incurrence of Indebtedness to refinance the Indebtedness described

33

K&L/DAK 00040

in paragraph 1. of said **EXHIBIT A** shall satisfy the tests set forth in Section 4.1 or 4.2 hereof unless (i) the total present value of the Debt Service Requirement on the Indebtedness to be incurred is not greater than the total present value of the rentals due under the Operating Lease, dated July 27, 1989, as amended, between St. Christopher's Hospital for Children and U.C.D., Inc. and (ii) the highest annual principal and interest payment due on such Indebtedness is not greater than the highest annual rental payment under said Operating Lease.

## ARTICLE FIVE

### INSURANCE; DAMAGE TO OR DESTRUCTION
### OR TAKING OF PROPERTY

**Section 5.1.    Required Insurance Coverage.**  Each Member of the Obligated Group agrees that it will maintain, or cause to be maintained, insurance covering such risks and in such amounts as, in its reasonable judgment, is adequate to protect it and its Property and operations, including (to the extent that such Member is a health care institution) professional liability or medical malpractice insurance.  The Obligated Group Agent shall retain an Insurance Consultant who shall prepare and file with the Master Trustee (as soon as practicable but in no event later than five months after the end of the Fiscal Year ending June 30, 2000 and each third Fiscal Year thereafter) a report on the adequacy of such insurance.  Each Member of the Obligated Group agrees that it will follow any recommendations of the Insurance Consultant to the extent feasible, in the opinion of the Obligated Group Agent.

**Section 5.2.    Self-Insurance.**  In lieu of maintaining the insurance policies required by Section 5.1, the Obligated Group or any Member thereof may self-insure any of the required coverages (or a portion thereof), provided that the Master Trustee receives (as soon as practicable but in no event later than five months after the end of the Fiscal Year ending June 30, 1997 and each Fiscal Year thereafter) a report of an Insurance Consultant to the effect that (i) such self-insurance is consistent with proper management and insurance practices and (ii) in the case of self-insurance for professional liability or medical malpractice, such self-insurance program is actuarially sound.

**Section 5.3.    Recovery of Insurance Proceeds.**  In the event of damage to or destruction of all or any part of the Facilities of the Obligated Group with a Value in excess of five percent (5%) of the Value of all Property of the Obligated Group, the affected Member of the Obligated Group and the Obligated Group Agent shall exercise their best efforts to recover any applicable insurance proceeds, and such proceeds shall be paid to the Obligated Group Agent.  The Obligated Group Agent shall pay the reasonable expenses of obtaining such recovery from such proceeds and shall then give notice to the Master Trustee of the amount of such expenses and the amount of the remaining proceeds (herein called the "Net Proceeds").

34

K&L/DAK 00041

Section 5.4.   <u>Use of Net Proceeds</u>. Subject to the provisions of any Related Financing Document, the affected Member of the Obligated Group shall apply the Net Proceeds for any lawful corporate purpose as such Member determines if the Obligated Group Agent shall first have delivered to the Master Trustee an Officer's Certificate of the Obligated Group Agent stating that the Projected Debt Service Coverage Ratio for each of the two full Fiscal Years immediately following the date of such certificate, taking into account such damage or destruction and the proposed use of the Net Proceeds, is at least 1.10.  If the Obligated Group Agent is unable to deliver the foregoing Officer's Certificate, the affected Member shall apply the Net Proceeds or so much thereof as may be needed to the repair, replacement, restoration or reconstruction of the affected Facilities or, at the option of the applicable Member of the Obligated Group, to any other capital project of equivalent value and utility, to the acquisition of any Property or to the repayment in whole or in part of any Outstanding Obligations in such order of maturity or maturities or portions thereof as the Obligated Group Agent shall determine.

Section 5.5.   <u>Balance of Net Proceeds</u>.  Any Net Proceeds remaining after compliance by the affected Member of the Obligated Group and the Obligated Group Agent with Section 5.4 hereof shall be transferred by the Obligated Group Agent to the Master Trustee and applied to the redemption of the Outstanding Obligations in such order of maturity or maturities or portions thereof as the Obligated Group Agent shall determine.

Section 5.6.   <u>Eminent Domain</u>.  In the event of a taking by eminent domain of all or any part of the Facilities of the Obligated Group with a Value in excess of five percent (5%) of the Value of all Property of the Obligated Group, the affected Member of the Obligated Group and the Obligated Group Agent shall exercise their best efforts to recover any applicable proceeds, and such proceeds shall be paid to the Obligated Group Agent.  The Obligated Group Agent shall make appropriate deductions from such proceeds as in the case of insurance proceeds and shall give notice to the Master Trustee of the amount of such deductions and the amount of the remaining proceeds (also, "Net Proceeds").  The Net Proceeds shall be applied in the same manner as the Net Proceeds of insurance are required to be applied pursuant to Sections 5.4 and 5.5 hereof.

## ARTICLE SIX

### GENERAL COVENANTS OF EACH
### MEMBER OF THE OBLIGATED GROUP

Section 6.1.   <u>Covenants as to Corporate Existence, Maintenance of Property, Etc.</u>  Each Member of the Obligated Group hereby covenants:

(a)  Except as otherwise expressly permitted hereby, to preserve its corporate or other separate legal existence and to be

35

K&L/DAK 00042

qualified to do business and conduct its affairs in each jurisdiction where its ownership of Property or the conduct of its business or affairs requires such qualifications;

(b)  At all times to cause its Facilities to be maintained, preserved and kept in good repair, working order and condition and all needful and proper repairs, renewals and replacements thereof to be made; provided, however, that nothing contained in this subsection (b) shall be construed (i) to prevent it from ceasing to operate any portion of its Facilities, or (ii) to obligate it to retain, preserve, repair, renew or replace any Facilities, rights, privileges or licenses no longer used or, in the judgment of its Governing Body, useful in the conduct of its business;

(c)  To do all things reasonably necessary to conduct its affairs and carry on its business and operations in such manner as to comply with any and all applicable laws of the United States and the several states thereof and duly observe and conform to all valid orders, regulations or requirements of any governmental authority relative to the conduct of its business and the ownership of its Property; provided, nevertheless, that nothing herein contained shall require it to comply with, observe and conform to any such law, order, regulation or requirement of any governmental authority so long as the validity thereof or the applicability thereof to it shall be contested in good faith;

(d)  Promptly to pay all lawful taxes, governmental charges and assessments at any time levied or assessed upon or against it or its Property; provided, however, that it shall have the right to contest in good faith any such taxes, charges or assessments or the collection of any such sums and pending such contest may delay or defer payment thereof;

(e)  At all times to comply with all terms, covenants and provisions of any Liens existing from time to time upon its Property or any part thereof or from time to time securing any of its Indebtedness;

(f)  To procure and maintain (i) all necessary licenses and permits, (ii) all necessary accreditations of its health care and educational Facilities and operations (other than those of a type for which accreditation is not available) by a recognized accrediting body, when and as available, and (iii) its status as a provider of health care services eligible for reimbursement under the Medicare, Medicaid, Blue Cross and comparable programs, including future governmental programs, to the extent that the absence of any such license, permit, accreditation or status would materially adversely affect the ability of the Obligated Group to comply with the provisions hereof; provided, however, that it need not comply with this Section 6.1(f) if and to the extent that its Governing Body shall have determined in good faith, evidenced by an Officer's Certificate, that such compliance is not in its best interests and that lack of such compliance would not materially impair its ability to pay its Indebtedness when due; and

36

K&L/DAK 00043

(g)  Not to discriminate on any legally impermissible basis.

**Section 6.2.     Limitations on Creation of Liens.**  Each Member of the Obligated Group agrees that it will not create or suffer to be created or exist any Lien upon any Property, including, without limitation, all proceeds thereof, whether cash or non-cash, now owned or hereafter acquired by it, other than Permitted Liens.

**Section 6.3.     Rates and Charges.**  Each Member of the Obligated Group covenants and agrees to operate all of its Facilities on a revenue producing basis and to charge such fees and rates for its Facilities and services and to exercise such skill and diligence as to provide income from its Property, together with other available funds, sufficient to pay promptly all payments of principal and interest on its Indebtedness, all expenses of operation, maintenance and repair of its Facilities and all other payments required to be made by it hereunder to the extent permitted by law.  Each Member of the Obligated Group further covenants and agrees that it will, from time to time as often as necessary and to the extent permitted by law, revise its rates, fees and charges in such manner as may be necessary or proper to comply with the provisions of this Section 6.3.

The Members of the Obligated Group covenant and agree that they will cause the officer certifying the report referred to in Section 6.6(b) hereof to calculate the Historical Debt Service Coverage Ratio for the Fiscal Year covered by such report and to deliver a copy of such calculation to the Master Trustee.

If in any Fiscal Year, based upon the report referred to in Section 6.6(b) hereof, the Historical Debt Service Coverage Ratio is less than 1.10, the Members of the Obligated Group shall be required at their expense to retain a Consultant to make recommendations with respect to the rates, fees and charges of the Obligated Group and the Obligated Group's methods of operation and other factors affecting its financial condition in order to increase such Historical Debt Service Coverage Ratio to at least 1.10.

A copy of the Consultant's report and recommendations, if any, shall be filed with the Master Trustee and each Related Bond Trustee if required by the terms of any Related Bond Indenture. The Members of the Obligated Group shall follow each recommendation of the Consultant to the extent feasible (as determined by the Governing Body of each Member) and permitted by law.  So long as the Members of the Obligated Group shall retain a Consultant and shall follow such Consultant's recommendations to the extent feasible, no Event of Default shall be deemed to have occurred hereunder, provided only that Total Income Available for Debt Service for each such Fiscal Year is equal to not less than 100% of the actual Debt Service Requirement for such Fiscal Year.

The foregoing provisions notwithstanding, if in any Fiscal Year the Historical Debt Service Coverage Ratio is less than 1.10, the Master Trustee shall not be obligated to require the Members of

K&L/DAK 00044

the Obligated Group to retain a Consultant to make such recommendations if there is filed with the Master Trustee either (1) an Officer's Certificate of the Obligated Group Agent stating that a Consultant's report had previously been filed with the Master Trustee pursuant to this Section 6.3, that the facts and circumstances underlying the assumptions and conclusions contained in such Consultant's report have not changed in any material way, and that the Obligated Group is continuing to use its best efforts to implement the recommendations contained in such Consultant's report, or (2) a written report of a Consultant which contains an opinion of such Consultant that applicable laws or regulations have prevented the Obligated Group from generating Total Income Available for Debt Service during such Fiscal Year in an amount sufficient to cause the Historical Debt Service Coverage Ratio for such Fiscal Year to equal or exceed 1.10 and, if the Obligated Group Agent determines that such Consultant's opinion is based in whole or in part on any conclusions of law, such report is accompanied by a concurring opinion of Counsel as to any such conclusions of law supporting the opinion of such Consultant. The Members of the Obligated Group shall not be required to cause the Consultant's report referred to in clause (2) of this paragraph to be prepared more frequently than once if at the end of each Fiscal Year following the initial delivery of such Consultant's report, the Obligated Group Agent provides to the Master Trustee an opinion of Counsel to the effect that the applicable laws and regulations underlying such Consultant's report have not changed in any material way.

Section 6.4. **Sale, Lease or Other Disposition of Property**. Each Member of the Obligated Group agrees that it will not sell, lease or otherwise dispose of its Property, except for sales, leases or other dispositions of Property:

(a) To another Member of the Obligated Group;

(b) To any Person if prior to the sale, lease or other disposition there is delivered to the Master Trustee an Officer's Certificate stating that, in the judgment of the officer executing such certificate, such Property has become, or within the next succeeding 24 calendar months is reasonably expected to become, inadequate, obsolete, worn out, unsuitable, undesirable or unnecessary and the sale, lease, removal or other disposition thereof will not impair the structural soundness, efficiency or economic value of the remaining Property;

(c) To any Person, provided that prior to the sale, lease or other disposition there is delivered to the Master Trustee an Officer's Certificate of the Obligated Group Agent certifying that all Property transferred pursuant to this Section 6.4(c) in the then current Fiscal Year by all Members of the Obligated Group does not exceed 10% of the Value of all Property of the Obligated Group for the immediately preceding Fiscal Year;

(d) To any Person, provided that (1) prior to the sale, lease or other disposition there is delivered to the Master Trustee an

38

K&L/DAK 00045

Officer's Certificate of the Obligated Group Agent to the effect that immediately after the transfer in question, either (1) if one dollar of Additional Indebtedness were incurred, the Obligated Group would meet the test providing for the incurrence of Long-Term Indebtedness pursuant to Section 4.2(a)(i) or (ii) hereof, or (ii) such disposition will increase the Projected Debt Service Coverage Ratio in the Fiscal Year immediately following such disposition over what such ratio would have been in such Fiscal Year had such disposition not occurred; and (2) the Obligated Group Agent certifies to the Master Trustee in an Officer's Certificate that immediately following such sale, lease or other disposition, no Event of Default shall exist nor, to such officer's knowledge, shall there exist any event which, with the passage of time or the giving of notice or both, would become an Event of Default;

(e)  As part of a merger, consolidation, sale or conveyance permitted by Section 6.5 hereof;

(f)  In the ordinary course of business;

(g)  Upon fair and reasonable terms no less favorable than would be obtained in a comparable arm's-length transaction; or

(h)  To any Person if the transfer involves any Property received as restricted gifts, grants, bequests or other similar sums or the income thereon to the extent that such sums may not be pledged or applied to the payment of any Debt Service Requirement or operating expenses generally as a result of restrictions or designation imposed by the donor or maker of the gift, grant, bequest or other sums in question.

### Section 6.5.  Consolidation, Merger, Sale or Conveyance.

(a)  Each Member of the Obligated Group covenants that, except for a merger or consolidation with, or a sale or conveyance of all or substantially all of its assets to, another Person which, prior to such merger, consolidation, sale or conveyance, shall be a Member of the Obligated Group, it will not merge or consolidate with any other Person not a Member of the Obligated Group or sell or convey all or substantially all of its assets to any Person not a Member of the Obligated Group unless:

(i)  Either the Member of the Obligated Group will be the surviving corporation, or the successor corporation (if other than such Member) shall be a Person organized and existing under the laws of the United States of America or a state thereof and such Person shall become a Member of the Obligated Group and shall, pursuant to a Supplemental Indenture, expressly assume the due and punctual payment of the principal of, premium, if any, and interest on all Outstanding Obligations issued hereunder according to their tenor and the due and punctual performance and observance of all the covenants and conditions of this Master Indenture;

(ii)  If all amounts due or to become due on any Outstanding Related Bond which bears interest that is not

39

K&L/DAK 00046

includable in gross income under the Code have not been fully paid to the holder thereof, the Master Trustee shall have received an Opinion of Bond Counsel, in form and substance satisfactory to the Master Trustee, to the effect that under then existing law the consummation of such merger, consolidation, sale or conveyance, whether or not contemplated on any date of the delivery of such Related Bond, would not cause the interest payable on such Related Bonds to become includable in gross income under the Code or adversely affect the validity of such Related Bond; and

(iii)  There is delivered to the Master Trustee an Officer's Certificate of the Obligated Group Agent (which certification described in (B)(1) below shall treat the Income Available for Debt Service and Indebtedness of such Person as if such Person were a Member of the Obligated Group) to the effect that immediately following such transaction, (A) no Event of Default shall exist nor, to such officer's knowledge, shall there exist any event which, with the passage of time or the giving of notice or both, would become an Event of Default hereunder, and (B), after giving effect to such transaction, either (1) if one dollar of Additional Indebtedness were incurred, the Obligated Group would meet the tests providing for the incurrence of Long-Term Indebtedness pursuant to Section 4.2(a)(i) or (ii) hereof, or (2) such transaction will cure any Event of Default then in existence hereunder, or (3) the Projected Debt Service Coverage Ratio for each of the two Fiscal Years following such transaction will be greater than the Projected Debt Service Coverage Ratio for such Fiscal Years had such transaction not occurred.

(b)  In the case of any consolidation, merger, sale or conveyance pursuant to Section 6.5(a) and in the case of any consolidation or merger involving Persons which at the time of such consolidation or merger are Members of the Obligated Group, such successor corporation shall succeed to and be substituted for its predecessor hereunder.

(c)  In the case of any consolidation, merger, sale or conveyance pursuant to Section 6.5(a) and in the case of any consolidation or merger involving Persons which at the time of such consolidation or merger are Members of the Obligated Group, such changes in phraseology and form (but not in substance) may be made in Obligations thereafter to be issued as may be appropriate.

**Section 6.6.  Filing  of  Financial  Statements, Certificate of No Default, Other Information.** The Obligated Group covenants that it will:

(a)  As soon as practicable but in any event not later than six months after the end of each Fiscal Year, file or cause to be filed with the Master Trustee and each applicable Rating Agency a copy of its Audited Financial Statements.

(b)  As soon as practicable but in any event not later than six months after the end of each Fiscal Year, file with the Master Trustee, an Officer's Certificate of the Obligated Group Agent

40

K&L/DAK 00047

stating the Historical Debt Service Coverage Ratio for such Fiscal Year, stating the ratio determined by dividing the Total Income Available for Debt Service for such Fiscal Year by the Maximum Annual Debt Service for such Fiscal Year, and stating whether or not, to the best knowledge of such officer, any Member of the Obligated Group is in default in the performance of any covenant contained in this Master Indenture, and, if so, specifying each such default of which such officer may have knowledge.

(c) If an Event of Default shall have occurred and be continuing, (i) file with the Master Trustee such other financial statements and information concerning its operations and financial affairs as the Master Trustee may from time to time reasonably request, excluding specifically donor records, patient records and personnel records, and (ii), upon reasonable advance written notice, provide access to its Facilities for the purpose of inspection by the Master Trustee during regular business hours or at such other times as the Master Trustee may reasonably request.

(d) Within 10 days after its receipt thereof, file with the Master Trustee a copy of each report which any provision of this Master Indenture requires to be prepared by a Consultant or an Insurance Consultant.

(e) Notify the Master Trustee within 24 hours after a Member of the Obligated Group becomes "insolvent," as required by Section 202.097 of the regulations of the Pennsylvania Securities Commission. "Insolvent," for purposes of this subsection (e), means the inability of a Member of the Obligated Group to pay debts as they fall due in the usual course of business, or having liabilities in excess of the fair market value of assets; for purposes of this definition, such Member will not be considered insolvent if the auditor's report to the Member's certified balance sheet and profit and loss statement did not contain a "going concern qualification." "Going concern qualification," for purposes of this subsection (e) means a qualification contained in the auditor's report based upon the criteria contained in the Statement on Auditing Standard 34 promulgated by the American Institute of Certificate Public Accountants, Inc.

## ARTICLE SEVEN

### REMEDIES OF THE MASTER TRUSTEE AND HOLDERS IN EVENT OF DEFAULT

Section 7.1.  **Events of Default**.

(a) An Event of Default shall occur under this Master Indenture if any of the following events shall occur:

(i) if the Obligated Group shall fail to make any payment of principal, redemption premium or interest when due under the terms of any Obligation, and such failure continues to exist upon the expiration of any applicable grace period; or

41

K&L/DAK 00048

(ii) if any Member of the Obligated Group shall fail to observe or perform any covenant or agreement contained in this Master Indenture or any Supplemental Indenture, for a period of 30 days after written notice of such failure requiring the same to be remedied shall have been given by the Master Trustee to the Obligated Group Agent, the giving of which notice shall be at the discretion of the Master Trustee unless the Master Trustee is requested in writing to do so by the Holders of at least 25% in aggregate principal amount of all Outstanding Obligations, in which event such notice shall be given; provided, however, that if such observance or performance requires work to be done, actions to be taken or conditions to be remedied which by their nature cannot reasonably be done, taken or remedied within such 30-day period, no Event of Default shall be deemed to have occurred or to exist if, and so long as, the defaulting Member of the Obligated Group shall use its best efforts to commence such observance or performance within such 30-day period and shall diligently and continuously prosecute the same to completion; or

(iii) if any event of default shall occur under any Related Financing Document secured by one or more Obligations, and any applicable grace period with respect thereto shall have expired; or

(iv) if (a) any Member of the Obligated Group shall default in the payment of any Indebtedness (other than Obligations issued and Outstanding hereunder) which singly or in the aggregate exceeds 5% of the Book Value of all Property of the Obligated Group for the immediately preceding Fiscal Year (the "Material Indebtedness"), regardless of whether such Material Indebtedness now exists or shall hereafter be created, and any period of grace with respect thereto shall have expired, or (b) an event of default as defined in any Related Financing Documents under which any such Material Indebtedness may be issued, secured or evidenced shall occur, which default in payment or event of default, in the case of either (a) or (b), shall result in such Indebtedness becoming or being declared due and payable prior to the date on which it would otherwise become due and payable; provided, however, that such default shall not constitute an Event of Default if within the time allowed for service of a responsive pleading in any proceeding to enforce payment of such Material Indebtedness under the laws governing such proceeding (A) such Member commences proceedings to contest the existence or payment of such Material Indebtedness, or (B) in the absence of such contest, the Obligated Group Agent certifies to the Master Trustee in an Officer's Certificate that neither the pledge and security interest created under Section 2.3 of this Master Indenture nor any Property of the Obligated Group will be materially impaired or subject to material loss or forfeiture; or

(v) An involuntary case or other proceeding shall be commenced against a Member of the Obligated Group seeking reorganization, dissolution or other relief with respect to such Member under the United States Bankruptcy Code or any other similar applicable federal or state law or seeking the appointment of a

42

K&L/DAK 00049

receiver or trustee or assignee in bankruptcy or insolvency of such Member or its Property, and such case or proceeding is not stayed or dismissed within 60 days after the date of commencement thereof; or an order for relief shall be entered against a Member of the Obligated Group under the United States Bankruptcy Code or any other similar applicable federal or state law, or a decree or order of a court having jurisdiction in the premises for the appointment of a receiver or trustee or assignee in bankruptcy or insolvency of a Member of the Obligated Group or of its Property or for the winding-up or liquidation of its affairs shall have been entered; or

(vi)   if any Member of the Obligated Group shall institute proceedings to be adjudicated a voluntary bankrupt, or shall consent to the institution of a bankruptcy proceeding against it, or shall file a petition or answer or consent seeking reorganization or arrangement under the United States Bankruptcy Code or any other similar applicable federal or state law, or shall consent to the filing of any such petition, or shall consent to the appointment of a receiver or trustee or assignee in bankruptcy or insolvency of it or of its Property, or shall make assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due, or if corporate action shall be taken by any Member of the Obligated Group in furtherance of any of the aforesaid purposes.

(b)   Upon the occurrence of an Event of Default, then and in each and every such case, the Master Trustee may, by notice in writing to the Obligated Group Agent, declare the principal of all (but not less than all) Outstanding Obligations to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, anything in this Master Indenture or in such Outstanding Obligations to the contrary notwithstanding; provided that the Master Trustee shall be required to make such declaration (i) if an Event of Default has occurred under subsection (a)(i) above, (ii) if (1) an Event of Default has occurred under subsection (a)(iii) above as a result of the occurrence of an event of default under a Related Financing Document secured by one or more Obligations, and (2) such Related Financing Documents permit the Holder or Holders of such Obligations to declare (or to request the Master Trustee to declare) such Obligations to be immediately due and payable, and (3) the Master Trustee is requested to make such a declaration by such Holder or Holders, or (iii) if the Master Trustee is requested to make such a declaration by the Holders of not less than 25% in aggregate principal amount of all Outstanding Obligations.

(c)   Any declaration pursuant to subsection (b) above shall be subject to the condition that if, at any time after the principal of all Outstanding Obligations shall have been so declared due and payable, and before any judgment or decree for the payment of the moneys due shall have been obtained or entered as hereinafter provided, (i) one or more Members of the Obligated Group shall deposit with the Master Trustee an aggregate sum sufficient to pay (A) all matured installments of interest upon all Outstanding Notes

K&L/DAK 00050

and the principal and premium, if any, of all such Outstanding Notes that shall have become due otherwise than by acceleration (with interest on overdue installments of interest, to the extent permitted by law and on such principal and premium, if any, at the respective rates borne by such Notes to the date of such deposit) and any other amounts required to be paid pursuant to such Notes, (B) all amounts due under any each Indenture Guaranty other than by reason of acceleration, and (C) the expenses and fees of the Master Trustee, and (ii) any and all Events of Default under this Master Indenture, other than the nonpayment of principal of and accrued interest on Outstanding Obligations that shall have become due by acceleration, shall have been remedied, then and in every such case, the Master Trustee shall, if requested by the Holders of 25% in aggregate principal amount of all Obligations then Outstanding, waive all Events of Default and rescind and annul such declaration and its consequences, but no such waiver or rescission and annulment shall extend to or affect any subsequent Event of Default.

**Section 7.2.   Payment of Obligations on Default.**   Upon the occurrence of an Event of Default as described in Section 7.1 hereof and upon demand of the Master Trustee, each Member of the Obligated Group will pay to the Master Trustee, for the benefit of the Holders of all Obligations then Outstanding, (a) the whole amount that shall have become due and payable on all such Obligations for principal or interest, or both, and such other amounts as may be required to be paid on all such Obligations, with interest upon the overdue principal and installments of interest (to the extent permitted by law) at the respective rates of interest borne by such Obligations or as provided in the applicable Supplemental Indenture, and (b) such further amounts as shall be sufficient to cover the costs and expenses of collection, including a reasonable compensation to the Master Trustee or its agents, attorneys and Counsel, and any expenses incurred by the Master Trustee other than as a result of its gross negligence or bad faith.

**Section 7.3.   Suit for Moneys Due.**   In case any Member of the Obligated Group shall fail forthwith to pay the amounts due under Section 7.2 hereof upon such demand, the Master Trustee, in its own name and as trustee of an express trust, shall be entitled and empowered to institute any actions or proceedings at law or in equity for the collection of the sums so due and unpaid and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against each Member of the Obligated Group, and collect in the manner provided by law out of the Property of the Obligated Group wherever situated the moneys adjudged or decreed to be payable. The Master Trustee, upon the bringing of any action or proceeding at law or in equity under this Section 7.3, as a matter of right, without notice and without giving bond to any Member of the Obligated Group, may, to the extent permitted by law, have a receiver appointed of all of the Property of the Obligated Group pending such action or proceeding, with such powers as the court making such appointment shall confer.

44

K&L/DAK 00051

Section 7.4.   **Proceedings in Bankruptcy**.  In case there shall be pending proceedings for the bankruptcy or for the reorganization or arrangement of any Member of the Obligated Group under the United States Bankruptcy Code or any other applicable law, or in case a receiver or trustee shall have been appointed for its Property, the Master Trustee, irrespective of whether the principal of Obligations of any series shall then be due and payable as therein expressed or by declaration or otherwise and irrespective of whether the Master Trustee shall have made any demand pursuant to the provisions of Section 7.2 hereof, shall be entitled and empowered, by intervention in such proceedings or otherwise, to file and prove a claim or claims for the whole amount of principal, premium, if any, interest and any other amounts owing and unpaid in respect of Obligations of all series, and, in case of any judicial proceedings, to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Master Trustee and the Holders of the Obligations allowed in such judicial proceedings relative to such Member of the Obligated Group, its creditors or its property, and to collect and receive any moneys or other property payable or deliverable on any such claims, and to distribute the same after the deduction of its charges and expenses; and any receiver, assignee or trustee in bankruptcy or reorganization is hereby authorized by each of such Holders to make such payments to the Master Trustee and, in the event that the Master Trustee shall consent to the making of such payments directly to such Holders, to pay to the Master Trustee any amount due it for compensation and expenses, including Counsel fees incurred by it up to the date of such distribution.  To the extent that such payment of reasonable compensation, expenses and Counsel fees out of the estate in any such proceedings shall be denied for any reason, payment of the same shall be secured by a prior lien on, and shall be paid out of, any and all distributions, dividends, moneys, securities and other property which the Holders of the Obligations may be entitled to receive in such proceedings, whether in liquidation or under any plan of reorganization or arrangement or otherwise.

Section 7.5.   **Suit by Master Trustee**.  All rights of action and rights to assert claims under any Note may be enforced by the Master Trustee without the possession of such Obligation on any trial or other proceedings instituted by the Master Trustee.  In any proceedings brought by the Master Trustee (and also any proceedings involving the interpretation of any provision of this Master Indenture to which the Master Trustee shall be a party), the Master Trustee shall be held to represent all the Holders of Obligations, and it shall not be necessary to make any Holders of Obligations parties to such proceedings.

Section 7.6.   **Application of Moneys Collected**.  Any amounts collected by the Master Trustee pursuant to Sections 7.2, 7.3 and 7.4 hereof and, except as otherwise provided herein, all money and Investment Securities on deposit in any funds which the Master Trustee may establish hereunder from time to time shall be applied for the equal and ratable benefit of the Holders of Obligations in the following order at the date or dates fixed by the Master

K&L/DAK 00052

Trustee for the distribution of such moneys, upon presentation of such Obligations, and stamping thereon the payment, if only partially paid, and upon surrender thereof if fully paid:

(a)  to the payment of costs and expenses of collection, including fees of Counsel and reasonable compensation to the Master Trustee; and, thereafter,

(b)  whether or not the principal of all Outstanding Notes and amounts under all Outstanding Indenture Guaranties shall have become or have been declared due and payable according to the following order of priority:

FIRST:    To the payment to the Persons entitled thereto of all installments of interest then due on any Obligations in the order of the maturity of such installments and, if the amount available shall not be sufficient to pay in full any installment or installments maturing on the same date, then to the payment thereof ratably, according to the amounts due on such date, without any discrimination or preference;

SECOND:    To the payment to the Persons entitled thereto of the unpaid principal installments which shall have become due, whether at maturity or by call for redemption, on any Obligations in order of their due dates and, if the amounts available shall not be sufficient to pay in full all principal installments due on the same date, then to the payment thereof ratably, according to the amounts of principal installments due on such date, without any discrimination or preference; and

THIRD:    To the payment to the Persons entitled thereto of any additional amounts due and unpaid in respect of Obligations in the order of the due dates of such amounts, and if the moneys available therefor shall not be sufficient to pay in full any such additional amounts due on the same date, then to the payment thereof ratably, according to the amounts due thereon, without any discrimination or preference;

provided that for the purpose of determining the amount of unpaid principal in respect of any such Obligation, there shall be deducted the amount, if any, which has been realized by the Holder by exercise of its rights as a secured party with respect to any Liens permitted pursuant to Section 6.2 or which is on deposit in any fund established pursuant to any Related Financing Documents for such Obligations (other than amounts consisting of payments of principal and interest previously made and credited against the payments due under such Obligations) as of the date of payment by the Master Trustee pursuant to this subsection (b), all as certified to the Master Trustee by the Holder; and

(c)  to the payment of the remainder, if any, to the Obligated Group Agent, its successors or assigns, or to whomsoever may be lawfully entitled to receive the same, or as a court of competent jurisdiction may direct.

46

K&L/DAK 00053

Section 7.7.    <u>Actions by Holders</u>.

(a)    No Holder of an Obligation shall have any right by virtue of or by availing of any provision of this Master Indenture to institute any suit, action or proceeding in equity or at law upon or under or with respect to this Master Indenture or for the appointment of a receiver or trustee or any other remedy hereunder unless the Holders of not less than 25% in aggregate principal amount of Obligations then Outstanding shall have made written request upon the Master Trustee to institute such action, suit or proceeding in its own name as Master Trustee hereunder and shall have offered to the Master Trustee such reasonable indemnity as it may require against the costs, expenses and liabilities to be incurred therein or thereby, and the Master Trustee shall, for 30 days after its receipt of such notice, request and offer of indemnity, have neglected or refused to institute any such action, suit or proceeding and no direction inconsistent with such written request shall have been given to the Master Trustee pursuant to Section 7.8 hereof; it being understood and intended, and being expressly covenanted by the Holder of an Obligation and the Master Trustee, that no one or more Holders of Obligations shall have any right in any manner whatever by virtue of or by availing of any provision of this Master Indenture to affect, disturb or prejudice the rights of any other Holder of an Obligation or to obtain or seek to obtain priority over or preference to any other such Holder, or to enforce any right under this Master Indenture, except in the manner herein provided and for the equal, ratable and common benefit of all Holders of Obligations.    For the protection and enforcement of the provisions of this Section 7.7, each and every Holder of an Obligation and the Master Trustee shall be entitled to such relief as can be given either at law or in equity.

(b)    The Holder of an Obligation instituting a suit, action or proceeding in compliance with the provisions of this Section 7.7 shall be entitled in such suit, action or proceeding to such amounts as shall be sufficient to cover the costs and expenses of collection, including, to the extent permitted by applicable law, a reasonable compensation for its Counsel.

(c)    Notwithstanding any other provision of this Master Indenture, the right of a Holder of an Obligation to receive payment of the principal of and interest on any Obligation and any other amounts payable thereunder, on or after the respective due dates expressed in such Obligation, or to institute suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Holder, provided that any moneys collected on an Obligation through the exercise of rights and remedies of any Holder against any Member of the Obligated Group pursuant to the Related Financing Documents for such Obligation (other than rights and remedies relating to Liens granted pursuant to Section 6.2 hereof or to funds and accounts established under such Related Financing Documents) shall be paid over to the Master Trustee or, with the consent of the Holder, collected directly by the Master Trustee for application as provided in Section 7.6 hereof.

47

K&L/DAK 00054

Section 7.8.  **Direction of Proceedings by Holders**.  The Holders of a majority in aggregate principal amount of Obligations then Outstanding shall have the right to direct the time, method, and place of conducting any proceeding for any remedy available to the Master Trustee or exercising any trust or power conferred on the Master Trustee; provided, however, that subject to Section 8.2 hereof, the Master Trustee shall have the right to decline to follow any such direction if the Master Trustee, being advised by Counsel, determines that the action so directed may not lawfully be taken, or if a responsible officer or officers of the Master Trustee shall, in good faith, determine that the proceedings so directed would be illegal or involve it in personal liability for which it has not been indemnified as provided in Section 7.7(a) hereof, and provided further that nothing in this Master Indenture shall impair the right of the Master Trustee in its discretion to take any action deemed proper by the Master Trustee and which is not inconsistent with such direction by the Holders.

Section 7.9.  **Delay or Omission of Master Trustee**.  No delay or omission of the Master Trustee, or of any Holder of a Note, to exercise any right or power accruing upon an Event of Default, occurring and continuing as aforesaid, shall impair any such right or power or shall be construed to be a waiver of any such Event of Default or an acquiescence therein, nor shall the action of the Master Trustee or of the Holders of Obligations in case of any Event of Default, or in case of any Event of Default and subsequent waiver of such Event of Default, affect or impair the rights of the Master Trustee or of such Holders in respect of any subsequent Event of Default or impair any right resulting therefrom; and every power and remedy given by this Master Indenture to the Master Trustee or to such Holders may be exercised from time to time and as often as may be deemed expedient by it or by them.

Section 7.10.  **Remedies Cumulative**.  No remedy herein conferred upon or reserved to the Master Trustee or the Holders of Obligations entitled to the benefits hereof is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute; and the employment of any remedy hereunder, or otherwise, shall not prevent the concurrent employment of any other appropriate remedy or remedies.  In the pursuit of any such remedies the Master Trustee shall have and be vested with the rights of a secured creditor under the Pennsylvania Uniform Commercial Code (or similar laws of other jurisdictions as applicable) with respect to moneys collected by the Master Trustee pursuant to any provision hereof, and shall have the power to foreclose any Lien which may be granted to it as Master Trustee pursuant to Article Six hereof, all to the extent permitted by law.

Section 7.11.  **Notice of Default**.  The Master Trustee shall, within 10 days after the occurrence of an Event of Default, mail to all Holders of Obligations, as the names and addresses of such Holders appear upon the books maintained by the Master Trustee, notice of such Event of Default known to the Master Trustee unless

48

K&L/DAK 00055

such Event of Default shall have been cured before the giving of such notice; provided that, except in the case of an Event of Default specified in Section 7.1(a)(i) hereof, the Master Trustee shall be protected in withholding such notice if and so long as the Master Trustee in good faith determines that the withholding of such notice is in the interest of the Holders of the Obligations. For purposes of this Master Indenture, matters shall not be considered to be known to the Master Trustee unless they are known to an officer of its corporate trust department.

## ARTICLE EIGHT

### CONCERNING THE MASTER TRUSTEE

Section 8.1.    Duties and Liabilities of Master Trustee.

(a)   The Master Trustee, prior to the occurrence of an Event of Default and after the curing or waiving of all Events of Default which may have occurred, undertakes to perform such duties and only such duties as are specifically set forth in this Master Indenture. In case an Event of Default has occurred (which has not been cured or waived), the Master Trustee shall exercise such of the rights and powers vested in it by this Master Indenture, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

(b)   No provision of this Master Indenture shall be construed to relieve the Master Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct; provided, however, that:

(i) the Master Trustee shall not be liable for any error of judgment made in good faith by a responsible officer or officers of the Master Trustee, unless it shall be proved that the Master Trustee was grossly negligent in ascertaining the pertinent facts (other than facts which the Master Trustee is not required to investigate pursuant to Sections 8.2 and 8.6 hereof); and

(ii) the Master Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Holders of 25% in aggregate principal amount of Obligations then Outstanding relating to the time, method and place of conducting any proceeding for any remedy available to the Master Trustee, or exercising any trust or power conferred upon the Master Trustee, under this Master Indenture.

(c)   None of the provisions contained in this Master Indenture shall require the Master Trustee to expend or risk its own funds or otherwise incur personal financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers.

49

K&L/DAK 00056