d; If at any time in the Master Trustee's sole discretion, it deems it necessary or advisable in the performance of its duties under this Section 8.1 to seek judicial determination of the proper exercise thereof by such judicial proceedings as the Master Trustee shall deem most effective, each Member of the Obligated Group will be jointly and severally liable to indemnify the Master Trustee for and hold it harmless against any expense or liabilities incurred, arising out of or in connection with such judicial proceedings with the same security for performance of the obligations of the Members of the Obligated Group under this subsection (d) which is set forth in Section 8.5 hereof; provided that such expense or liability has not arisen as a result of the Master Trustee's gross negligence or willful misconduct.

**Section 8.2.** **Reliance on Documents; Indemnification, Etc**. Except as otherwise provided in Section 8.1(a) hereof:

(a) The Master Trustee may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, note, bond, debenture or other paper or document (including any statement by or on behalf of any Holder relating to the amount of principal outstanding or interest due on any Obligation) believed by it to be genuine and to have been signed or presented by the proper party or parties.

(b) Any request, direction, order or demand of any Member of the Obligated Group mentioned herein shall be sufficiently evidenced by an Officer's Certificate (unless other evidence in respect thereof is herein specifically prescribed); and any resolution of the Governing Body of any Member of the Obligated Group may be evidenced to the Master Trustee by a copy thereof certified by the Secretary or an Assistant Secretary of such Member.

(c) The Master Trustee may consult with Counsel, and the advice of such Counsel shall be full and complete authorization and protection, and the Master Trustee shall be relieved of liability to the Holders of Obligations and to the Members of the Obligated Group in respect of any action taken, suffered or omitted by it hereunder in good faith and in accordance with such advice.

(d) Prior to the occurrence of an Event of Default hereunder and after the curing of all Events of Default, the Master Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, note, bond, debenture or other paper or document unless requested in writing to do so by the Holders of a majority in aggregate principal amount of Obligations then Outstanding; provided, however, that if the payment within a reasonable time to the Master Trustee of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of the Master Trustee, not reasonably assured to the Master Trustee by the security afforded to it by the terms of this Master

K&L/DAK 00057

Indenture, the Master Trustee may require indemnity, reasonably satisfactory to the Master Trustee, with respect to such additional compensation as the Master Trustee may require for complying with such request and against such costs, expenses (including, without limitation, fees of Counsel) or liabilities as a condition to so proceeding.  The reasonable expense of every such examination shall be paid by the members of the Obligated Group or, if paid by the Master Trustee, shall be repaid by the members of the Obligated Group upon demand.

(e)  The Master Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys.

(f)  The Master Trustee shall be under no responsibility for the approval by it in good faith of any expert or other skilled person for any of the purposes expressed in this Master Indenture.

Section 8.3.    **Responsibility for Recitals, Validity of Indenture, Proceeds of Notes**.  The recitals contained in this Master Indenture and in the Obligations (other than the certificate of authentication on such Obligations) shall be taken as the statements of the Members of the Obligated Group, and the Master Trustee assumes no responsibility for the correctness of the same. The Master Trustee makes no representations as to the validity or sufficiency of this Master Indenture or the liens or security created hereby or of the Obligations.  The Master Trustee shall not be accountable for the use or application by any Member of the Obligated Group of any of the Notes or of the proceeds of such Notes, or for the use or application of any moneys paid over by the Master Trustee in accordance with any provision of this Master Indenture, or for use or application of any moneys received by any paying agent other than the Master Trustee.

Section 8.4.    **Master Trustee May Own Notes**.  The Master Trustee, in its individual or any other capacity, may become the owner or pledgee of Notes with the same rights it would have if it were not Master Trustee hereunder.  Any provision to the contrary herein notwithstanding, no provision of this Master Indenture shall prohibit the Master Trustee from serving as trustee under any Related Financing Documents or from maintaining a banking relationship with any Member of the Obligated Group; provided that, after the occurrence of an Event of Default or a default in any other credit arrangement between the Master Trustee and a Member of the Obligated Group if the Master Trustee determines that any such service as trustee or such relationship is in conflict with its duties under this Master Indenture, it shall eliminate the conflict or resign as Master Trustee.

Section 8.5.    **Compensation and Expenses of Master Trustee**. Each Member of the Obligated Group shall pay, and shall be jointly and severally liable to pay, to the Master Trustee from time to time, and the Master Trustee shall be entitled to, reasonable compensation, and each Member of the Obligated Group shall pay, and shall be jointly and severally liable to pay, or reimburse the

51

K&L/DAK 00058

Master Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the Master Trustee in connection with the acceptance or administration of its trusts under this Master Indenture (including the reasonable compensation and the expenses and disbursement of its Counsel and of all persons not regularly in its employ) except any such expense, disbursement or advance as may arise from its gross negligence or wilful misconduct. Each Member of the Obligated Group shall indemnify, and shall be jointly and severally liable to indemnify, the Master Trustee for, and to hold it harmless against, any loss, liability or expense incurred without gross negligence or wilful misconduct on the part of the Master Trustee and arising out of or in connection with the acceptance or administration of such trusts, including the costs and expenses (including, without limitation, a reasonable compensation to its Counsel) of defending itself against any claim of liability in the premises. The respective joint and several obligations of each Member of the Obligated Group under this Section 8.5 to compensate the Master Trustee, to pay or reimburse the Master Trustee for expenses, disbursements and advances and to indemnify and hold harmless the Master Trustee shall survive the satisfaction and discharge of this Master Indenture and the resignation, removal and succession of the Master Trustee. As security for the payment of all such obligations, the Master Trustee shall have an express lien on any moneys and Investment Securities on deposit in any funds which the Master Trustee may establish hereunder from time to time, subject and subordinate only to the rights of any Holder to such moneys and Investment Securities.

Section 8.6. **Officer's Certificate as Evidence**. Except as otherwise provided in Section 8.1(a) hereof, whenever in the administration of the provisions of this Master Indenture the Master Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking, suffering or omitting any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by an Officer's Certificate delivered to the Master Trustee. In the absence of bad faith on the part of the Master Trustee, any such Officer's Certificate shall be full ratification of any action taken, suffered or omitted by the Master Trustee under the provisions of this Master Indenture upon the faith thereof, and the Master Trustee shall not be obligated to make any investigation into the facts stated therein.

Section 8.7. **Resignation, Removal and Succession of Master Trustee**. The Master Trustee may resign at any time without cause by giving at least 30 days prior written notice to the Obligated Group Agent and by mailing notice of such resignation to each Holder of an Obligation then Outstanding, as the names and addresses of such Holders appear on the registers maintained by the Master Trustee, such resignation to be effective upon the acceptance of such Master Trusteeship by a successor. In addition, the Master Trustee may be removed (a) with cause at the direction of the Holders of not less than 66 2/3% in aggregate principal amount of Obligations then Outstanding, delivered to the Obligated

K&L/DAK 00059

Group and the Master Trustee, or (b) for any reason at the direction of the Obligated Group Agent if no Event of Default then exists hereunder, such direction to be evidenced by an Officer's Certificate from a designated representative of the Obligated Group Agent delivered to the Master Trustee, any such removal to be effective upon the acceptance of the Master Trusteeship by a successor.  The Master Trustee shall promptly give notice of any removal pursuant to the previous sentence in writing to each Holder of an Obligation then Outstanding as provided above.  In the case of the resignation or removal of the Master Trustee, a successor Master Trustee may be appointed by the Obligated Group as evidenced by an Officer's Certificate of the Obligated Group Agent designating the successor unless an Event of Default exists hereunder.  If an Event of Default exists hereunder or if the Obligated Group otherwise fails to appoint a successor within 30 days after any notice of resignation or direction to remove the Master Trustee is given, a successor may be appointed at the direction of the Holders of not less than 66 2/3% in aggregate principal amount of Obligations then Outstanding.  If a successor Master Trustee shall not have been appointed within 45 days after such notice of resignation or removal, the Master Trustee, the Obligated Group Agent or any Holder of an Obligation then outstanding may apply to any court of competent jurisdiction to appoint a successor to act until such time, if any, as a successor shall have been appointed as above provided.  The successor so appointed by such court shall immediately and without further act be superseded by any successor appointed as above provided.

Section 8.8.  **Acceptance by Successor Master Trustee.**  Any successor Master Trustee, however appointed, shall execute and deliver to its predecessor and to the members of the Obligated Group an instrument accepting such appointment, and thereupon such successor, without further act, shall become vested with all the estates, properties, rights, powers and duties of its predecessor hereunder in the trusts under this Master Indenture applicable to it with like effect as if originally named the Master Trustee; but, nevertheless, upon the written request of such successor Master Trustee, its predecessor shall execute and deliver an instrument transferring to such successor Master Trustee, upon the trusts herein expressed applicable to it, all the estates, properties, rights and powers of such predecessor under this Master Indenture, and such predecessor shall duly assign, transfer, deliver and pay over to such successor Master Trustee all moneys or other property then held by such predecessor under this Master Indenture.

Section 8.9.  **Qualifications of Successor Master Trustee.**  Any successor Master Trustee, however appointed, shall be a bank or trust company having a combined capital and surplus of at least $50,000,000, if there be such an institution willing, able and legally qualified to perform the duties of the Master Trustee hereunder upon reasonable or customary terms.

Section 8.10.  **Successor by Merger.**  Any corporation into which the Master Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any

K&L/DAK 00060

merger, conversion or consolidation to which the Master Trustee shall be a party, or any corporation to which substantially all the business of the Master Trustee may be transferred, shall, subject to the terms of Section 8.9 hereof, be the Master Trustee under this Master Indenture without further act.

Section 8.11. Co-Master Trustees.

(a)  At any time, for the purpose of meeting the requirements of any applicable jurisdiction, the Master Trustee shall have power to appoint one or more Persons not unsatisfactory to the Obligated Group Agent to act as Co-Master Trustee under this Master Indenture, with such powers as may be provided in the instrument of appointment and to vest in such Person or Persons any property, title, right or power deemed necessary or desirable, subject to the provisions of this Section 8.11.

(b)  Each Co-Master Trustee shall, to the extent permitted by applicable law, be appointed subject to the following terms:

(i)   The rights, powers, duties and obligations conferred or imposed upon any such Co-Master Trustee shall not be greater than those conferred or imposed upon the Master Trustee, and such rights and powers shall be exercisable only jointly with the Master Trustee, except to the extent that, under any law of any jurisdiction in which any particular act or acts are to be performed, the Master Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights and powers shall be exercised by such Co-Master Trustee subject to the provisions of subsection (b)(iv) of this Section 8.11.

(ii)   The Master Trustee may at any time, by an instrument in writing executed by it, accept the resignation of or remove any Co-Master Trustee appointed under this Section 8.11.

(iii)   No Co-Master Trustee under this Master Indenture shall be liable by reason of any act or omission of the Master Trustee or any other Co-Master Trustee appointed under this Master Indenture.

(iv)   No power given to such Co-Master Trustee shall be separately exercised hereunder by such Co-Master Trustee except with the consent in writing of the Master Trustee, anything herein contained to the contrary notwithstanding.

ARTICLE NINE

SUPPLEMENTS AND AMENDMENTS

Section 9.1.   Supplemental Indentures without Consent of Holders.

(a)  Each Member of the Obligated Group, when authorized by a resolution of its Governing Body, and the Master Trustee may from

54

K&L/DAK 00061

time to time and at any time enter into a Supplemental Indenture for one or more of the following purposes:

(i)    to provide for the issuance of any Obligations hereunder;

(ii)    to evidence the addition of a Member of the Obligated Group or the succession of another corporation to any Member of the Obligated Group, or successive successions, and the assumption by the new Member of the Obligated Group or successor corporation of the covenants, agreements and obligations of a Member of the Obligated Group under this Master Indenture;

(iii)    to add to the covenants of any Member of the Obligated Group such further covenants, restrictions or conditions as its Governing Body and the Master Trustee shall consider to be for the protection of the Holders of Obligations issued hereunder, and to make the occurrence, or the occurrence and continuance, of a default in any of such additional covenants, restrictions or conditions an Event of Default permitting the enforcement of all or any of the several remedies provided in this Master Indenture as herein set forth; provided, however, that in respect of any such additional covenant, restriction or condition, such Supplemental Indenture may provide for a particular period of grace after default (which period may be shorter or longer than that allowed in the case of other defaults) or may provide for an immediate enforcement upon such default or may limit the remedies available to the Master Trustee upon such default;

(iv)    to cure any ambiguity or to correct or supplement any provision contained herein or in any Supplemental Indenture which may be defective or inconsistent with any other provision contained herein or in any Supplemental Indenture, or to make such other provisions in regard to matters or questions arising under this Master Indenture or any Supplemental Indenture as shall not impair the security of this Master Indenture or adversely affect the interests of the Holders of any particular Obligations or series of Obligations issued hereunder;

(v)    to modify or supplement this Master Indenture in such manner as may be necessary or appropriate to qualify this Master Indenture under the Trust Indenture Act of 1939, as then amended, or under any similar federal statute hereafter enacted, including provisions whereby the Master Trustee accepts such powers, duties, conditions and restrictions hereunder and each Member of the Obligated Group undertakes such covenants, conditions or restrictions additional to those contained in this Master Indenture as would be necessary or appropriate so to qualify this Master Indenture;

(vi)    to provide for the establishment of funds and accounts hereunder and for the proper administration of and transfers of moneys between any such funds and accounts, provided that, except as otherwise provided in Article Eleven hereof, all

K&L/DAK 00062

such funds and accounts shall be established for the equal and ratable benefit of the Holders of all Outstanding Obligations;

(vii)  to permit the issuance of Obligations in a form other than Notes and Indenture Guaranties, if appropriate, provided that such Obligations are equally and ratably secured with all other Obligations issued hereunder (except as otherwise provided herein);

(viii)  to reflect a change in applicable law; and

(ix)  to modify, amend, change or remove any covenant, agreement, terms or provision of this Master Indenture other than a modification of the type described in Section 9.2 hereof requiring the unanimous written consent of the Holders; provided that either (i) if at the time of the proposed amendment any Obligations or any series of Related Bonds are rated by a Rating Agency, written notice of the substance of such proposed amendment is given to such Rating Agency by the Obligated Group Agent not fewer than 30 days prior to the date such amendment is to take effect, and the Obligated Group Agent provides evidence satisfactory to the Master Trustee that the ratings on such Obligations or series of Related Bonds will not be lowered or withdrawn by such Rating Agency as a result of such proposed amendment; or (ii) a Consultant's report is delivered to the Master Trustee prior to the date such amendment is to take effect to the effect that the proposed amendment is consistent with then current industry standards for comparable institutions and demonstrating either that (1) the Projected Debt Service Coverage Ratio for the full Fiscal Year immediately after the effective date of such proposed amendment is not less than 1.20, assuming the maximum implementation (or such lower implementation certified to the Master Trustee by the Obligated Group Agent as being a reasonable basis for assumption) by the Obligated Group of the proposed amendment. or (2) if the proposed amendment is to a provision of this Master Indenture that contains a quantitative restriction or covenant, the average of the Projected Debt Service Coverage Ratio for the two full Fiscal Years immediately after the effective date of such proposed amendment or supplement will be greater than the average of the Projected Debt Service Coverage Ratio for such period had the proposed amendment not been implemented assuming the maximum implementation (or such lower implementation certified to the Master Trustee by the Obligated Group Agent as being a reasonable basis for assumption) of the proposed amendment, or (3) (a) the average of the Projected Debt Service Coverage Ratio for the two full Fiscal Years immediately after the effective date of such proposed amendment will not be less than 1.10, and (b) the average of the Projected Debt Service Coverage Ratio for the two full Fiscal Years immediately after the effective date of such proposed amendment will not be more than 35% lower than the average of the Projected Debt Service Coverage Ratio for such period had the proposed amendment not been implemented, assuming with respect to the projections made under the preceding clauses (a, and (b) the maximum implementation (or such lower implementation certified to the Master Trustee by the Obligated Group Agent as being a

K&L/DAK 00063

reasonable basis for assumption) of the proposed amendment if the proposed amendment is to a provision of this Master Indenture that contains a quantitative restriction or covenant; and provided, further, that no Supplemental Indenture entered into pursuant to this subparagraph (ix) shall result in any Member of the Obligated Group failing to comply with Section 6.2 hereof.

(b)   The Master Trustee is hereby authorized to join with each Member of the Obligated Group in the execution of any such Supplemental Indenture, to make any further appropriate agreements and stipulations which may be therein contained and to accept the conveyance, transfer, mortgage, pledge or assignment of any property thereunder, but the Master Trustee shall not be obligated to enter into any such Supplemental Indenture that affects the Master Trustee's rights, duties or immunities under this Master Indenture or otherwise.

(c)   Any Supplemental Indenture authorized by the provisions of this Section 9.1 may, without notice to or the consent of the Holders of then Outstanding Obligations issued hereunder, be executed by the Members of the Obligated Group and the Master Trustee.

Section 9.2.    Modification of Master Indenture with Consent of Holders.

(a)   With the consent of the Holders of not less than a majority in aggregate principal amount of Obligations then Outstanding, each Member of the Obligated Group, when authorized by its Governing Body, and the Master Trustee, may from time to time and at any time enter into a Supplemental Indenture hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Master Indenture or of any Supplemental Indenture or of modifying in any manner the rights of the Holders of Obligations; provided, however, that (i) without the consent of the Holders of all Obligations whose Obligations are proposed to be modified, no such Supplemental Indenture shall effect a change in the times, amounts or currency of payment of the principal of, premium, if any, or interest on any Obligation or a reduction in the principal amount or redemption price of any Obligation or the rate of interest thereon or permit the preference or priority of any Obligation over any other Obligation, and (ii) without the consent of the Holders of all Obligations then Outstanding, no such Supplemental Indenture shall reduce the aforesaid percentage or affected class of Obligations, the Holders of which are required to consent to any such Supplemental Indenture.

(b)   Upon the request of each Member of the Obligated Group, accompanied by a copy of a resolution of its Governing Body, and upon the filing with the Master Trustee of evidence of the consent of Holders as aforesaid, the Master Trustee shall join with each Member of the Obligated Group in the execution of such Supplemental Indenture unless such Supplemental Indenture affects the Master Trustee's own rights, duties or immunities under this Master

57

K&L/DAK 00064

Indenture or otherwise, in which case the Master Trustee may in its discretion, but shall not be obligated, to enter into such Supplemental Indenture.

(c)   It shall not be necessary for the consent of the Holders under this Section 9.2 to approve the particular form of any proposed Supplemental Indenture, but it shall be sufficient if such consent shall approve the substance thereof.

Section 9.3.    <u>Effect of Supplemental Indenture</u>.

(a)   Upon the execution of any Supplemental Indenture pursuant to the provisions of this Article Nine, this Master Indenture shall, with respect to each series of Obligations issued hereunder, be and be deemed to be modified and amended in accordance therewith, and the respective rights, limitation of rights, obligations, duties and immunities under this Master Indenture of the Master Trustee, each Member of the Obligated Group and the Holders of Obligations issued hereunder shall thereafter be determined, exercised and enforced hereunder, subject in all respects to such modifications and amendments, and all the terms and conditions of any such Supplemental Indenture shall be and be deemed to be part of the terms and conditions of this Master Indenture.

(b)   The Master Trustee, subject to the provisions of Sections 9.1 and 9.2 hereof, may receive and rely on an opinion of Counsel as conclusive evidence that any such Supplemental Indenture complies with the provisions of this Article Nine.

Section 9.4.    <u>Obligations May Bear Notation of Changes</u>. Obligations authenticated and delivered after the execution of any Supplemental Indenture pursuant to the provisions of this Article Nine may bear a notation in form approved by the Master Trustee as to any matter provided for in such Supplemental Indenture.  If the Members of the Obligated Group which have issued any Obligations then outstanding or the Master Trustee shall so determine, new Obligations so modified as to conform, in the opinion of the Master Trustee and the Governing Bodies of such Members, to any modification of this Master Indenture contained in any such Supplemental Indenture may be executed by such Members, authenticated by the Master Trustee and delivered in exchange for obligations of the same series then Outstanding.

ARTICLE TEN

IMMUNITY OF INCORPORATORS, MEMBERS, OFFICERS, EMPLOYEES
AND MEMBERS OF GOVERNING BODY

Section 10.1.    <u>Incorporators, Members, Officers, Employees and Members of the Governing Body Exempt from Individual Liability</u>.  No recourse under or upon any obligation, covenant or agreement of this Master Indenture, or of any Obligations issued hereunder, or for any claim based thereon or otherwise in respect thereof, shall

K&L/DAK 00065

be had against any incorporator, member, officer, employee or
member or the Governing Body, whether past, present or future, of
any Member of the Obligated Group or of any successor corporation,
either directly or through such Member, whether by virtue of any
constitution, statute or rule of law, or by the enforcement of any
assessment or penalty or otherwise; it being expressly understood
that this Master Indenture and the Obligations issued hereunder are
solely corporate obligations, and that no personal liability
whatever shall attach to, or is or shall be incurred by, the
incorporators, members, officers, employees or members of the
Governing Body, whether past, present or future, of any Member of
the Obligated Group or any successor corporation, or any of them,
because of the creation of the Indebtedness hereby authorized, or
under or by reason of the obligations, covenants or agreements
contained in this Master Indenture or in any Obligations issued
hereunder or implied therefrom, and that any and all such personal
liability of every name and nature, either at common law or in
equity or by constitution or statute, of, and any and all such
rights and claims against, every such incorporator, member,
officer, employee or trustee, whether past, present or future,
because of the creation of the Indebtedness hereby authorized, or
under or by reason of the obligations, covenants or agreements
contained in this Master Indenture or in any Obligations issued
hereunder or implied therefrom, are hereby expressly waived and
released as a condition of, and as consideration for, the execution
of this Master Indenture and the issuance of the Obligations.


ARTICLE ELEVEN

SATISFACTION AND DISCHARGE OF MASTER INDENTURE;
RELEASE OF MEMBERS OF THE OBLIGATED GROUP;
UNCLAIMED MONEYS

Section 11.1. **Satisfaction and Discharge of Master Indenture**.
If the Master Trustee receives cash or Government Obligations, the
principal of and interest on which will be sufficient (without
reinvestment), together with any funds on deposit hereunder and
available for such purpose, to provide for the payment of the
principal of, premium, if any, and interest on all Outstanding
Obligations to and including the maturity date or prior redemption
or prepayment date thereof, (b) irrevocable instructions to redeem
all Obligations to be redeemed prior to maturity and to notify the
Holders of each such redemption and (c) an amount sufficient to pay
or provide for the payment of all other sums payable hereunder by
the Members of the Obligated Group, and if the Master Trustee shall
have been provided such reasonable indemnities as it may request,
then this Master Indenture shall cease to be of further effect, and
the Master Trustee, on demand of the Obligated Group Agent, and at
the cost and expense of the Obligated Group, shall execute all such
instruments acknowledging satisfaction of and discharging this
Master Indenture as may be requested by the Obligated Group Agent.
The Members of the Obligated Group hereby agrees to reimburse the
Master Trustee for any costs or expenses theretofore and thereafter
reasonably and properly incurred by the Master Trustee (including

59

K&L/DAK 00066

the reasonable costs and expenses of the Master Trustee's Counsel) in connection with this Master Indenture.

In like manner, the Member of the Obligated Group issuing any particular Obligation may provide for the payment thereof (or of a portion thereof) at or prior to maturity, and the Obligation (or portion thereof) so provided for shall thereupon cease to be Outstanding hereunder.

In lieu of the foregoing, the Member of the Obligated Group issuing any particular Obligation may deliver to the Holder thereof the amount required under the Related Financing Documents to provide for the payment of the principal, premium, if any, and interest due or to become due in respect of such Obligation, and such Obligation shall, upon surrender to the Master Trustee for cancellation, no longer be deemed Outstanding hereunder.

In the case of any Obligations issued to secure bonds, notes or other similar obligations issued by or on behalf of a Member of the Obligated Group, such Obligations shall be deemed Outstanding hereunder, notwithstanding compliance with the foregoing, unless and until the bonds, notes or other obligations secured thereby are no longer deemed Outstanding under the Related Financing Document pursuant to which they were issued, subject to any provision in such Related Financing Documents that may permit the surrender of such Obligations regardless of whether such bonds, notes or other obligations are deemed outstanding under such Related Financing Documents.

**Section 11.2.** **Application of Funds Deposited for Payment of Obligations.** All moneys deposited with the Master Trustee pursuant to Section 11.1 hereof shall be held in trust and applied by it to the payment to the Holders of the Notes, for the payment or redemption of which such moneys have been deposited with the Master Trustee, of all sums due and to become due thereon for principal, premium, if any, and interest.

**Section 11.3.** **Repayment of Moneys Held by Master Trustee.** Any moneys deposited with the Master Trustee for the payment of the principal, premium or interest due or to become due on Obligations and not so applied but remaining unclaimed by the Holders of such Obligations for four (4) years after the date upon which such payment shall have become due shall, to the extent permitted by applicable law, be repaid to the Obligated Group Agent by the Master Trustee on demand, and upon such repayment, the Holder of any of such Obligations entitled to receive such payment shall look only to the Members of the Obligated Group for the payment thereof; provided that, before being required to make any such repayment, the Master Trustee may notify the Holders of such unpaid Obligations that said moneys have not been so applied and that after a date named therein any unclaimed balance of said moneys then remaining will be returned to the Obligated Group Agent. Any such notice shall be given in such manner as may be specified in the applicable Supplemental Indenture and the cost thereof shall be paid by the Obligated Group.

60

K&L/DAK 00067

ARTICLE TWELVE

MISCELLANEOUS PROVISIONS

Section 12.1. <u>Successors and Assigns of Members of the Obligated Group to be Bound by Master Indenture</u>. All the covenants, stipulations, paid agreements in this Master Indenture contained by or on behalf of any Member of the Obligated Group or the Master Trustee shall inure to the benefit of and shall bind their respective successors and assigns, whether so expressed or not.

Section 12.2. <u>Official Acts by Successor Corporation</u>. Any act or proceeding by any provision of this Master Indenture authorized or required to be done or performed by any board, committee or officer of any Member of the Obligated Group shall and may be done and performed with like force and effect by the like board, committee or officer of any corporation that shall at the time be the lawful sole successor of such Member.

Section 12.3. <u>Notice or Demand Served by Mail</u>. With respect to each series of Obligations, unless otherwise expressly specified or permitted by the terms of this Master Indenture or the applicable Supplemental Indenture, all notices shall be in writing, mailed by first-class mail, postage prepaid, and (i) if to one or more of the Members of the Obligated Group, addressed to such Member in care of Allegheny Health, Education and Research Foundation, D.L. Clark Building, 4th Floor, 503 Martindale Street, Pittsburgh, Pennsylvania 15212, Attention: Treasury, (ii) if to the Master Trustee, addressed to Norwest Bank Minnesota, National Association, 11000 Broken Land Parkway, Columbia, Maryland 21044, Attention: Securities Administration Services, with a copy to Norwest Bank Minnesota, National Association, Norwest Center, Sixth and Marquette, Minneapolis, Minnesota 55479, Attention: Corporate Trust Department, and (iii) if to any Holder of an Obligation identified in the registration books kept by the Master Trustee, addressed to such Holder at the address set forth in such registration books or to such other address as the Obligated Group Agent, any Member of the Obligated Group or the Master Trustee shall from time to time designate by notice in writing. If required to be given by the Obligated Group Agent, any Member of the Obligated Group, the Master Trustee or any Holder to any of the other of them, such notice shall be deemed given and such requirement satisfied if such notice is mailed by first-class mail, postage prepaid, addressed as provided above.

Section 12.4. <u>Governing Law</u>. This Master Indenture, any Supplemental Indenture and the Obligations issued hereunder shall be deemed to be contracts made under the laws of the Commonwealth of Pennsylvania and shall, for all purposes, be construed in accordance with the laws of said Commonwealth.

Section 12.5. <u>Legal Holidays</u>. Except to the extent that a Supplemental Indenture or Obligation provides otherwise, in any

61

K&L/DAK 00068

case where the date on which any principal, premium, interest or other payment is required to be paid shall be on a day on which banking institutions at the place of payment are authorized by law to remain closed, then payment of such amounts need not be made on such date but may be made on the next succeeding day which is not a day on which banking institutions at such place of payment are authorized by law to remain closed, with the same force and effect as if made on the date otherwise due and, in the case of such payment, no interest shall accrue for the period from and after such date.

Section 12.6. **Benefits of Provisions of Indenture and Obligations.** Nothing in this Master Indenture or in the Obligations issued hereunder, either expressed or implied, shall give or be construed to give any Person, other than each Member of the Obligated Group, the Master Trustee and the Holders of Obligations, any legal or equitable right, remedy or claim under or in respect of this Master Indenture or under any covenant, condition and provision herein contained, all such covenants, conditions and provisions being for the sole benefit of each Member of the Obligated Group, the Master Trustee and the Holders of such Obligations.

Section 12.7 **Designation of Obligated Group Agent.** Each Member of the Obligated Group appoints the Obligated Group Agent as its agent and true and lawful attorney in fact (a) to do and perform all such acts as "Obligated Group Agent" with such powers as are granted to the Obligated Group Agent pursuant hereto and (b) on behalf of the Obligated Group and each Member, to take such actions, to execute and deliver all such documents, instruments, certificates and the like and to include in such documents, instruments and certificates all such representations, warranties, covenants and agreements which the Members of the Obligated Group hereby agree shall be binding upon such Members as may be necessary or desirable (as determined by the Obligated Group Agent) in connection with any financing or refinancing involving any Obligations.

Section 12.8. **Execution in Counterparts.** This Master Indenture may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

Section 12.9. **Effective Date.** This Master Indenture shall become effective as of the day and year first written above upon execution hereof by the Members of the Obligated Group and the Master Trustee.

Section 12.10. **Headings for Convenience Only.** The Table of Contents and the headings of the several sections hereof are inserted for convenience only and shall not control or affect the meaning or construction of any of the provisions hereof.

62

K&L/DAK 00069

IN WITNESS WHEREOF, the parties hereto have caused this Master Indenture to be duly executed by persons thereunto duly authorized, as of the day and year first written above.

ALLEGHENY UNIVERSITY HOSPITALS

By: _____
    Authorized Officer

HAHNEMANN UNIVERSITY HOSPITAL

By: _____
    Authorized Officer

ALLEGHENY UNITED HOSPITALS, INC.

By: _____
    Authorized Officer

ALLEGHENY UNIVERSITY FOR HEALTH SCIENCES

By: _____
    Authorized Officer

ST. CHRISTOPHER'S HOSPITAL FOR CHILDREN

By: _____
    Authorized Officer

HORIZON MEDICAL CORPORATION

By: _____
    Authorized Officer

NORWEST BANK MINNESOTA,
    NATIONAL  ASSOCIATION,  as  Master
    Trustee

By: _____
    Authorized Officer

63

K&L/DAK 00070

**EXHIBIT  0332**

PN

EXECUTION COPY

LETTER OF CREDIT, REIMBURSEMENT AND SECURITY AGREEMENT

THIS LETTER OF CREDIT, REIMBURSEMENT AND SECURITY AGREEMENT (the "Agreement") is dated as of June 1, 1996, among ALLEGHENY UNIVERSITY HOSPITALS, ALLEGHENY UNITED HOSPITALS, INC., ST. CHRISTOPHER'S HOSPITAL FOR CHILDREN, HORIZON MEDICAL CORPORATION, HAHNEMANN UNIVERSITY HOSPITAL, and ALLEGHENY UNIVERSITY FOR HEALTH SCIENCES (each an initial "Member of the Obligated Group" and collectively, together with any and all additional Members of the Obligated Group, the "Obligated Group"), and PNC BANK, NATIONAL ASSOCIATION (the "Bank")

W I T N E S S E T H

A.  Pennsylvania Higher Educational Facilities Authority (the "Authority") proposes to issue its $50,000,000 Health Services Revenue Bonds (Allegheny Delaware Valley Obligated Group Project), Series D of 1996 (the "Bonds"), pursuant to that certain Trust Indenture dated as of June 1, 1996 (the "Trust Indenture"), between the Authority and Norwest Bank Minnesota, National Association, as trustee (in such capacity, the "Trustee").

B.  The proceeds of the Bonds will be used to finance a pooled loan program pursuant to which loans will be made from time to time to the Members of the Obligated Group who have executed a loan agreement with the Authority (each a "Loan Agreement" and collectively the "Loan Agreements") to finance, refinance or reimburse the costs of capital projects.

C.  The Loan Agreements will be assigned to the Trustee to secure the Bonds.

D.  The payment obligations of the Members of the Obligated Group with respect to the Bonds and the proceeds thereof loaned to them pursuant to the Loan Agreements will be evidenced and secured by a certain promissory note (the "1996D Master Indenture Note") issued by Allegheny University Hospitals ("AUH"), on behalf of itself and as Obligated Group Agent, and each other Member of the Obligated Group to the Authority under that certain Master Trust Indenture dated as of May 15, 1996, as amended and supplemented by a First Supplemental Master Trust Indenture dated as of May 15, 1996 (as so supplemented and amended, the "Master Trust Indenture"), among the Members of the Obligated Group and Norwest Bank Minnesota, National Association, as trustee (in such capacity, the "Master Trustee"), which 1996D Master Indenture Note will be assigned to the Trustee.

PNC18740

DEPOSITION EXHIBIT
352
AKF

AH- 13730

E.   In order to facilitate the issuance and sale of the Bonds and to enhance the marketability of the Bonds and thereby achieve interest cost savings and other savings, the Obligated Group has requested that the Bank issue, and the Bank has agreed to issue, its irrevocable direct pay letter of credit (together with any substitute letter of credit issued pursuant to the terms hereof, the "Letter of Credit") to the Trustee and Norwest Bank Minnesota, National Association, as Tender Agent (in such capacity, the "Tender Agent"), for the account of the Members of the Obligated Group, authorizing the Trustee to make one or more draws on the Bank up to an aggregate of $50,805,480 (as reduced and reinstated from time to time in accordance with the provisions hereof and of the Letter of Credit (the "Stated Amount"), of which (i) $50,000,000 (the "Principal Component") shall be in respect of principal of the Bonds and (ii) $805,480 (the "Interest Component") shall be in respect of interest accrued on the Bonds.

F.   The obligation of each Member of the Obligated Group to repay amounts drawn under the Letter of Credit will be evidenced and secured by a certain promissory note (the "1996F Master Indenture Note" or the "Bank Master Note") issued by AUH, on behalf of itself and as Obligated Group Agent, and each other Member of the Obligated Group to the Bank under the Master Trust Indenture.

G.   The Bank is willing to issue the Letter of Credit upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the foregoing and the undertakings herein set forth, and intending to be legally bound, the Members of the Obligated Group and the Bank hereby agree as follows:

PNC18741

AH- 13731

ARTICLE I

DEFINITIONS

Section 1.01.  <u>Definitions</u>.  In this Agreement (except as otherwise expressly provided for or unless the context otherwise requires), defined terms may be used in the singular or the plural, the use of any gender includes all other genders and the following terms have the following meanings:

"Acceleration Draft" means a sight draft under the Letter of Credit accompanied by a Certificate in the form of Annex 4 to the Letter of Credit.

"Bank Documents" means this Agreement, the Letter of Credit, the Pledge Agreement and any other document or instrument executed and delivered by one or more of the Members of the Obligated Group and/or the Bank in connection with the transactions contemplated herein.

"Bond Documents" means the Bonds, the Trust Indenture, the Loan Agreements and any other agreements or instruments relating thereto.

"Business Day" means any day on which banks in Pittsburgh, Pennsylvania and Columbia, Maryland are open for commercial banking purposes.

"Code" means the Internal Revenue Code of 1986 and the rules and regulations thereunder, including any amendments and successor provisions thereto.

"Date of Issuance" means the date on which the Letter of Credit is issued.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and, unless the context otherwise requires, the rules and regulations promulgated thereunder from time to time.

"Event of Default" shall have the meaning ascribed to such term in Section 7.01.

"Facilities" means all Property which is property, plant and equipment under GAAP.

"Fiscal Year" means the annual accounting year of the Obligated Group, which currently begins on July 1 in each calendar year.

"GAAP" means generally accepted accounting principles applied on a consistent basis.

PNC18742

- 3 -

AH- 13732

"Governmental Person" means the government of the United States or the government of any state or locality therein, any political subdivision or any governmental, quasi-governmental, judicial, public or statutory instrumentality, authority, body or entity, or other regulatory bureau, authority, body or entity of the United States or any state or locality therein, including the Federal Deposit Insurance Corporation, the Comptroller of the Currency or the Board of Governors of the Federal Reserve System, any central bank or any comparable authority.

"Governmental Rule" means any law, rule, regulation, ordinance, order, judgment or decision of any Governmental Person.

"Indebtedness" shall have the meaning ascribed to such term in the Master Trust Indenture.

"Interest Draft" means a sight draft under the Letter of Credit accompanied by a Certificate in the form of Annex 1 to the Letter of Credit.

"Lien" shall have the meaning ascribed to such term in the Master Trust Indenture.

"Long-Term Indebtedness" shall have the meaning ascribed to such term in the Master Trust Indenture.

"Multi-employer Plan" means a "multi-employer plan" as defined in Section 4001(a)(3) of ERISA.

"Obligated Group Agent" shall have the meaning ascribed to such term in the Master Trust Indenture.

"Outstanding" when applied to the Bonds shall have the meaning ascribed to such term in the Trust Indenture.

"Participating Banks" shall have the meaning ascribed to such term in Section 8.11.

"PBGC" means the Pension Benefit Guaranty Corporation or any successor thereto.

"Permitted Liens" shall have the meaning ascribed to such term in the Master Trust Indenture.

"Person" means any natural person, corporation, partnership, association, joint-stock company, trust, unincorporated organization, joint venture, Governmental Person, public body or other legal entity.

"Plan" means any employee benefit, plan (other than a Multi-employer Plan) maintained for employees and covered by Title IV of ERISA.

- 4 -

"Pledge Agreement" means the Pledge and Security Agreement dated of even date herewith among the Members of the Obligated Group and the Bank.

"Prime Rate" means the fluctuating rate of interest per annum (computed on the basis of a year of 365 or 366 days, as the case may be) publicly announced by the Bank from time to time as the prime rate of the Bank, adjusted automatically as of the date of an announcement of any change in such prime rate.  The prime rate is determined from time to time by the Bank as a means of pricing some loans to its borrowers and neither is tied to any external rate of interest or index, nor necessarily reflects the lowest rate of interest actually charged by the Bank to any particular class or category of customers.

"Principal Office" means the Bank's office located at 237 Fifth Avenue, Third Floor Annex, Pittsburgh, Pennsylvania 15222, Attention:  Letter of Credit Department, or any other office in the City of Pittsburgh which may be designated in writing to the Obligated Group.

"Property" means any and all right, title and interest in and to any and all property whether real or personal, tangible or intangible and wherever situated.

"Redemption Draft" means a sight draft under the Letter of Credit accompanied by a Certificate in the form of Annex 3 to the Letter of Credit.

"Related Documents" means the Bank Documents, the Bond Documents and the Master Trust Indenture, any notes issued pursuant thereto, and any other agreements or instruments relating thereto.

"Remarketing Agent" means the placement or remarketing agent designated as the Remarketing Agent for purposes of the Trust Indenture.

"Reportable Event" shall have the meaning ascribed to that term in Title IV of ERISA and the regulations thereunder.

"Tender Draft" means a sight draft under the Letter of Credit accompanied by a Certificate in the form of Annex 2 to the Letter of Credit.

"Termination Event" means (i) a Reportable Event described in Section 4043 of ERISA (other than a Reportable Event not subject to the provision for 30 day notice to the PBGC under the regulations promulgated under such Section) with respect to any Plan, (ii) the withdrawal of any Member of the Obligated Group from a Plan during a plan year in which it was a "substantial employer" as defined in Section 4001(a)(2) of ERISA, (iii) the cessation of operations of any facility of any Member of the

- 5 -

PNC18744

AH- 13734

146812

Obligated Group if, pursuant to Section 4062(e) of ERISA, such cessation causes such Member of the Obligated Group to be treated as a "substantial employer," (iv) the filing of a notice of intent to terminate a Plan or the treatment of a Plan amendment as a termination under Section 4041 of ERISA, (v) the institution of proceedings by the PBGC to terminate a Plan, or (vi) any other event or condition which might constitute grounds under Section 4042 of ERISA for the termination of, or the appointment of a trustee to administer, any Plan.

Section 1.02. <u>Rules of Construction: Time of Day</u>. The words "hereof", "herein", "hereto", "hereby" and "hereunder" refer to this entire Agreement. Unless otherwise indicated, all references to particular Articles or Sections are references to the Articles or Sections of this Agreement. References to any time of the day in this Agreement shall refer to Eastern standard time or Eastern daylight saving time, as in effect in Pittsburgh, Pennsylvania on such day. All accounting terms used herein which are not otherwise expressly defined herein shall have the meanings given them by GAAP.

ARTICLE II

LETTER OF CREDIT AND REIMBURSEMENT

Section 2.01. <u>Issuance of Letter of Credit</u>. Subject to the conditions precedent hereinafter set forth, the Bank will issue to the Trustee and the Tender Agent, pursuant to the request of the Obligated Group, on the date of execution and delivery of this Agreement, the Letter of Credit in the Stated Amount and substantially in the form attached hereto as <u>Exhibit A</u>. The Interest Component of the Stated Amount has been established on the basis of 49 days' interest on the Bonds at an interest rate of 12%. The Letter of Credit shall expire at 5:00 p.m. on June 10, 1999. The Letter of Credit is subject to prior automatic termination as provided therein.

Section 2.02. <u>Reimbursement and Other Payments</u>.

(a) The Obligated Group hereby agrees to pay or cause to be paid to the Bank a sum equal to each amount drawn under the Letter of Credit on the same Business Day that such amount is so drawn, except for amounts drawn under the Letter of Credit with respect to principal of and interest on the Bonds by a Tender Draft, which shall be payable upon the occurrence of the earliest of the following (or the next interest payment date with respect to interest):

(i)   the remarketing of the Bonds;

(ii)  an Event of Default hereunder; or

(iii) the expiration or termination of the Letter of Credit.

PNC18745

- 6 -

AH-13735

Except as otherwise provided herein, all sums payable
to the Bank under this Section 2.02(a) shall bear interest
payable on the first day of each month, from the date the
corresponding amount is drawn under the Letter of Credit until
such sums are paid in full (it being understood and agreed that
any sum paid after 3:00 p.m. on a Business Day shall bear
interest as if it was paid at 9:00 a.m. on the next following
Business Day), at a fluctuating rate per annum (computed for the
actual number of days elapsed, based on a 365 or 366-day year, as
the case may be) equal to the Prime Rate for the first 30 days,
the Prime Rate plus twenty-five one hundredths percent (.25%) for
the next 60 days and the Prime Rate plus fifty one hundredths
percent (.50%) thereafter.  Anything to the contrary
notwithstanding, if an Event of Default shall have occurred
hereunder, any sums or interest due and payable to the Bank under
this Agreement shall thereafter bear interest at a fluctuating
rate per annum (computed for the actual number of days elapsed,
based on a 365 or 366-day year, as the case may be) equal to two
percent (2%) per annum above the Prime Rate until such sum or
interest and all other amounts due and payable under this
Agreement having been paid in full.  All payments under this
Section 2.02(a) shall be applied first to the payment of interest
due and payable under this Section 2.02(a) and then to the
reduction of the principal balance of sums due and payable under
this Section 2.02(a).

(b)  On the date of execution and delivery hereof, the
Obligated Group shall pay to the Bank a one-time up-front fee of
$25,402.74.  On July 1, 1996, and quarterly on each October 1,
January 1, April 1 and July 1 thereafter so long as any credit
remains available to the Trustee and/or the Tender Agent under
the Letter of Credit and on the date of termination of the Letter
of Credit, the Obligated Group shall pay to the Bank a Letter of
Credit commitment fee computed at the rate of thirty-five one
hundredths percent (.35%) per annum on the average daily Stated
Amount during the preceding quarterly period (or portion thereof
in the case of the termination of the Letter of Credit on a day
other than an April 1, July 1, October 1 or January 1); provided
that, for purposes of computing such average daily Stated Amount,
the Stated Amount shall be treated as having been reinstated with
respect to each drawing with an Interest Draft theretofore
honored by the Bank in respect of which the Bank may be required
to reinstate the Letter of Credit pursuant to the terms thereof
but shall not be treated as having been reinstated with respect
to each drawing with a Tender Draft theretofore honored by the
Bank in respect of which the Letter of Credit may be required to
be, but has not been, reinstated pursuant to the terms thereof.
Computations of Letter of Credit commitment fees under this
Section shall be for the actual number of days in the applicable
period, based on a 365 or 366-day year, as the case may be.

PNC18746

- 7 -

AH- 13736

(c)  The Obligated Group shall pay to the Bank all
reasonable transaction charges that the Bank may make for
drawings under the Letter of Credit.  Such transaction charges
shall be payable quarterly at the same times as the fees
described in Section 2.02(b) hereof are payable, upon submission
to the Obligated Group by the Bank of the Bank's invoice
therefor.  In addition, the Obligated Group shall pay to the Bank
on demand any and all reasonable charges and expenses which the
Bank may pay or incur relative to the Letter of Credit.  The
Obligated Group shall pay to the Bank upon each transfer of the
Letter of Credit in accordance with its terms a transfer fee,
together with any and all reasonable costs and expenses of the
Bank incurred in connection with such transfer.  Any fees or
charges imposed pursuant to this Section 2.02(c) shall not exceed
those customarily charged by the Bank ($50 being the charge
presently made by the Bank for drawings under letters of credit).

(d) (i)  If any enactment, promulgation or adoption of or
change in any applicable Governmental Rule or in the
interpretation or administration thereof by any Governmental
Person charged with the interpretation or administration thereof,
or compliance by the Bank with any guideline, request or
directive (whether or not having the force of law) of any such
Governmental Person, shall either (A) impose, modify or deem
applicable any reserve, special deposit or similar requirement
(including without limitation a guideline, request or directive
which affects the manner in which the Bank allocates capital
resources to its commitments, including its obligations under
this Agreement and the Letter of Credit), (B) subject the Bank to
any tax or change the basis of taxation of the Bank (other than a
change in a rate of tax based on overall net income of the Bank),
or (C) impose on the Bank any other condition regarding this
Agreement or the Letter of Credit, and the result of any event
referred to in clause (A), (B) or (C) of this sentence shall be
to increase the direct or indirect cost to the Bank of issuing or
maintaining the Letter of Credit or the Bank's obligations under
this Agreement or to reduce the amounts receivable by the Bank
hereunder (which increase in costs or reduction in amounts
receivable shall be determined by the Bank's reasonable
allocation of such cost increase or reduction in amounts
receivable resulting from such event), then within 10 Business
Days after demand by the Bank, the Obligated Group shall pay to
the Bank, from time to time as specified by the Bank, additional
amounts that in the aggregate shall be sufficient to compensate
the Bank for such increased cost or reduction in amounts
receivable.  A certificate as to such increased cost or reduction
in amounts receivable by the Bank as a result of any event
mentioned in clause (A), (B) or (C) above to the Obligated Group
Agent shall, in absence of manifest error, be conclusive and
binding for all purposes.

(ii) If the Bank shall have determined that any enactment,
promulgation or adoption of or change in any applicable
Government Rule or guideline regarding capital adequacy, or in

PNC18747

- 8 -

146812

the interpretation or administration thereof, by any Governmental
Person charged with the interpretation or administration thereof,
or compliance by the Bank (or any controlling affiliate or
entity) with any guideline, request or directive regarding
capital adequacy (whether or not having the force of law and
whether or not failure to comply thereunder would be unlawful) of
any such Governmental Person, affects or would affect the amount
of capital required or expected to be maintained by the Bank (or
any controlling affiliate or entity) and the Bank determines, on
the basis of reasonable allocations, that the amount of such
capital is increased by or is based on its issuance or
maintenance of the Letter of Credit or the Bank's obligations
under this Agreement, then, within 10 Business Days after demand
by the Bank, the Obligated Group shall pay to the Bank, from time
to time as specified by the Bank, additional amounts sufficient
to compensate the Bank therefor.  A certificate as to such
amounts submitted to the Obligated Group Agent by the Bank shall,
in the absence of manifest error, be conclusive and binding for
all purposes.

        (e)  Whenever any payment pursuant to this Article
shall be due on any day that is not a Business Day, the date for
payment thereof shall be extended to the next succeeding Business
Day.  Except as otherwise provided in Section 2.02(a), all
payments to the Bank under this Agreement (including, without
limitation, all payments becoming due under Sections 2.02 and
8.05) shall be accompanied by interest thereon, from the date
such payments become due (whether or not a Business Day) until
they are paid in full, at a fluctuating rate per annum equal to
two percent (2%) per annum above the Prime Rate.  All payments by
or on behalf of the Obligated Group to the Bank under this
Agreement shall be made in lawful currency of the United States
at the Bank's office at Fifth Avenue and Wood Street, Pittsburgh,
Pennsylvania 15265, Attention: Manager, Health Care Group, or at
such other address and to the attention of such other person as
the Bank may stipulate by written notice to the Obligated Group
Agent, or by a wire transfer in immediately available funds from
the Obligated Group or on behalf of the Obligated Group to the
Bank in accordance with written wire instructions given to the
Obligated Group Agent by the Bank.  All payments hereunder shall
be made in immediately available funds at such office of the Bank
or other address as the Bank may so stipulate by written notice
to the Obligated Group Agent.

        (f)  The Bank shall maintain in accordance with its
usual practice an account or accounts evidencing the indebtedness
of the Obligated Group and the amounts payable and paid from time
to time hereunder.  In any legal action or proceeding in respect
of this Agreement, the entries made in such account or accounts
shall be presumptive evidence of the existence and amounts of the
obligations of the Obligated Group therein recorded.  The failure
to record any such amount shall not, however, limit or otherwise
affect the obligations of the Obligated Group hereunder to repay

PNC18748

- 9 -

AH-13738

all amounts owed hereunder together with all interest accrued thereon as provided herein.

Section 2.03.  Transfer of Letter of Credit; Reduction of Stated Amount; Reinstatement.

(a)  The Letter of Credit may be transferred in accordance with the provisions set forth in the Letter of Credit.

(b)  The Stated Amount shall be automatically reduced as specified in the Letter of Credit.  With respect to any reductions of the Stated Amount pursuant to the terms of the Letter of Credit as a result of Bonds ceasing to be Outstanding, the Bank shall have the right, at its option, to require the Trustee and/or the Tender Agent to surrender promptly the outstanding Letter of Credit to the Bank and to accept in substitution therefor a substitute letter of credit in the form of Exhibit A attached hereto, dated the date of such substitution, for an amount equal to the Stated Amount as so reduced, but otherwise having terms identical to the then outstanding Letter of Credit.

(c)  In the event of a drawing under the Letter of Credit with an Interest Draft and/or a Tender Draft, the Stated Amount shall, as provided in the Letter of Credit and subject to the conditions therein set forth, be automatically reinstated as set forth in the Letter of Credit.

(d)  The consent of the Bank shall be required in the event of a drawing with a Redemption Draft, to the extent that it involves an optional redemption of the Bonds; provided, however, that the Bank will consent to such optional redemption if the Obligated Group demonstrates to the reasonable satisfaction of the Bank that sufficient moneys will be available to reimburse the Bank for the amount to be drawn on the Letter of Credit in connection with such optional redemption.

Section 2.04.  Obligations Absolute.  The obligations of the Obligated Group under this Article shall be absolute, unconditional and irrevocable, and shall be performed strictly in accordance with the terms of this Agreement, under all circumstances whatsoever, including without limitation the following circumstances (i) any lack of validity or enforceability of this Agreement, the Related Documents or any other agreement or document relating thereto; (ii) any amendment or waiver of or any consent to or departure from this Agreement, the Related Documents or any document relating thereto; (iii) the existence of any claim, set-off, defense or other right which the Obligated Group may have at any time against the Trustee and/or the Tender Agent (or any persons or entities for whom the Tender Agent may be acting), the Bank or any other person or entity, whether in connection with this Agreement, the transactions described herein or any unrelated transaction, or (iv) any of the

PNC18749

- 10 -