circumstances contemplated in clauses (i) through (vii), inclusive, of Section 2.06.

Section 2.05. <u>Indemnification</u>. To the extent permitted by applicable law, the Obligated Group hereby agrees to indemnify and hold harmless the Bank (and its directors, officers, employees and agents) from and against any and all claims, damages, losses, liabilities, costs or expenses (including reasonable attorneys' fees) whatsoever that the Bank may incur (or which may be claimed against the Bank by any person or entity whatsoever) by reason of or in connection with (a) the issuance or a transfer of, or payment or failure to pay under, the Letter of Credit, (b) any breach by the Obligated Group of any representation, warranty, covenant, term or condition in, or the occurrence of any default under, this Agreement or the Related Documents, including all reasonable fees or expenses resulting from the settlement or defense of any claims or liabilities arising as a result of any such breach or default, (c) any inaccuracy or alleged inaccuracy in any material respect, or any untrue or alleged untrue statement of any material fact, contained in any offering memorandum or similar document for the Bonds or any amendment or supplement thereto, or by reason of the omission or alleged omission to state therein a material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading (in each case, other than with respect to the Bank), and (d) involvement of the Bank in any suit, investigation, proceeding, inquiry or action as a consequence, direct or indirect, of the Bank's issuance of the Letter of Credit, its entering into this Agreement or any other event or transaction contemplated by any of the foregoing; provided the Obligated Group shall not be required to indemnify the Bank for any claims, damages, losses, liabilities, costs or expenses to the extent, but only to the extent, caused by (i) the willful misconduct or gross negligence of the Bank or (ii) the Bank's willful failure to pay under the Letter of Credit after the presentation to it by the Trustee of a sight draft and certificate strictly complying with the terms and conditions of the Letter of Credit, unless the Bank in good faith and upon advice of counsel believes that it is prohibited by law or other legal authority from making such payment. Nothing in this Section is intended to limit the reimbursement obligations of the Obligated Group contained in Section 2.02(a). The obligations of the Obligated Group under this Section shall survive the termination of this Agreement.

Section 2.06. <u>Liability of Bank</u>. As between the Obligated Group and the Bank, the Obligated Group assumes all risks of the acts or omissions of the Remarketing Agent, the Trustee, the Tender Agent or any of their agents with respect to the use of the Letter of Credit by each of the foregoing. Neither the Bank nor any of its officers or directors shall be liable or responsible for (i) the use which may be made of the Letter of Credit or for any acts or omissions of the Remarketing Agent, the Trustee, the Tender Agent or any of their agents in connection

PNC18750

- 11 -

AH- 13740

therewith; (ii) the form, validity, sufficiency, accuracy or
genuineness of any documents (including without limitation any
documents presented under the Letter of Credit), or of any
statement therein or endorsement thereon, even if any such
documents, statements or endorsements should in fact prove to be
in any or all respects invalid, insufficient, fraudulent, forged,
inaccurate or untrue; (iii) the payment by the Bank against
presentation of documents which do not comply with the terms of
the Letter of Credit including failure of any documents to bear
any reference or adequate reference to the Letter of Credit; or
any other failure by the Trustee or the Tender Agent or any of
their agents to comply fully with conditions required in order to
effect a drawing under the Letter of Credit; (iv) the validity or
sufficiency of any instrument transferring or assigning or
purporting to transfer or assign the Letter of Credit or the
rights or benefits thereunder or proceeds thereof, in whole or in
part, which may prove to be invalid or ineffective for any
reason; (v) errors, omissions, interruptions or delays in
transmission or delivery of any messages by mail, cable,
telegraph, telex, telephone or otherwise; (vi) any loss or delay
in the transmission or otherwise of any document or draft
required in order to make a drawing under the Letter of Credit;
or (vii) any other circumstances whatsoever in making or failing
to make payment under the Letter of Credit, except only that the
Obligated Group shall have a claim against the Bank, and the Bank
shall be liable to the Obligated Group, to the extent, but only
to the extent, of any direct, as opposed to consequential,
damages suffered by the Obligated Group which the Obligated Group
proves were caused by (x) the Bank's willful misconduct or gross
negligence or (y) the Bank's willful failure to pay under the
Letter of Credit after the presentation to it by the Trustee of a
draft and certificate strictly complying with the terms and
conditions of the Letter of Credit, unless the Bank in good faith
and upon advice of counsel believes that it is prohibited by law
or other legal authority from making such payment.   In
furtherance and not in limitation of the foregoing, the Bank may
accept documents that appear on their face to be in order,
without responsibility for further investigation, regardless of
any notice or information to the contrary.   Except for the Bank's
obligations under the Letter of Credit, the Bank shall have no
liability to the Obligated Group or any other person as a result
of any reduction of the credit rating of the Bank or any
deterioration in the Bank's financial condition, and the
Obligated Group hereby indemnifies and holds harmless the Bank
from any and all claims, damages, losses, liabilities, costs or
expenses relating to the Obligated Group or the Bonds which the
Bank may incur in connection therewith.   No reduction of the
credit rating of the Bank or deterioration in the Bank's
financial condition shall reduce or in any way diminish the
obligations of the Obligated Group to the Bank under this
Agreement, including without limitation the Obligated Group's
obligation to pay Letter of Credit commitment fees to the Bank
and to reimburse the Bank for any drawing under the Letter of
Credit.

PNC18751

- 12 -

AH-13741

ARTICLE III

SECURITY

Section 3.01. <u>Subrogation</u>. The Obligated Group and the Bank intend that, in the event of one or more draws under the Letter of Credit and the application thereof to the payment of Bonds, (i) the Bank will have the security and benefit of the Bond Documents as and to the extent provided in the Indenture and (ii) the Bank will be subrogated pro tanto to the rights of the Trustee and the Tender Agent and the holders of such Bonds in and to all funds and security held by the Trustee and the Tender Agent under the Bond Documents for the payment of the principal of and interest on such Bonds, including, without limitation, all debt service funds and other funds and securities and other instruments comprising investments thereof. In addition, the Bank shall have any and all other subrogation rights available to the Bank at law or in equity.

Section 3.02. <u>Pledge of Rights to Certain Funds and Investments</u>. To secure the Obligated Group's obligations to the Bank under this Agreement, the Obligated Group hereby pledges, assigns and grants to the Bank a security interest in all of the Obligated Group's right, title and interest in and to (but not its duties or obligations with respect to) all funds and investments thereof now or hereafter held by the Trustee under the Bond Documents as security for the payment of the Bonds including, without limitation, any and all debt service funds and other funds and securities and other instruments comprising investments thereof and interest and other income derived therefrom held as security for the payment of the Bonds. The Bank's rights under this Section are in addition to, and not in lieu of, its rights described in Section 3.01 and are subject to the prior rights of the Trustee and the holders of the Bonds. The Obligated Group covenants and agrees that it will defend the Bank's rights and security interests created by this Section against the claims and demands of all persons. In addition to its other rights and remedies under this Agreement and the Bond Documents, the Bank shall have all the rights and remedies of a secured party under the Uniform Commercial Code of the Commonwealth of Pennsylvania or other applicable law with respect to the security interests created by this Section.

Section 3.03. <u>Financing Statements</u>. The Obligated Group will execute such financing statements and continuation statements under the Uniform Commercial Code or other applicable law as the Bank may specify in connection with the Bank's security interests under this Agreement and will pay the costs of filing the same in such public offices as the Bank may designate.

Section 3.04. <u>Pledge Agreement</u>. As security for payment of the obligations of the Obligated Group hereunder, the Obligated

- 13 -

PNC18752

AH- 13742

Group agrees to enter into the Pledge Agreement with respect to Bonds which have not been remarketed under the Trust Indenture.

Section 3.05.  <u>Joint and Several Obligation</u>.  Each Member of the Obligated Group by its execution of this Agreement acknowledges and agrees that it shall be jointly and severally liable for all obligations of the Obligated Group and each of its Members hereunder.

ARTICLE IV

CONDITIONS PRECEDENT

Section 4.01.  <u>Documentation</u>.  As conditions precedent to the Bank's issuance of the Letter of Credit, the Bank shall have received all of the following in form and substance satisfactory to the Bank:

(a)  An executed copy of this Agreement, the Bank Master Note and the Pledge Agreement and true and correct copies of executed copies of the other Related Documents and all documentation delivered in connection therewith;

(b)  Certified copies of the Articles of Incorporation and the Bylaws of each Member of the Obligated Group, and authorizing resolutions of each Member of the Obligated Group;

(c)  An opinion (or opinions) of counsel to the Members of the Obligated Group covering such matters relating to the transactions contemplated hereby or by the other Related Documents as the Bank may reasonably request;

(d)  Receipt by the Bank of a copy of each opinion, certificate and other document (in each case addressed to it if so requested by the Bank) required to be delivered in connection with the due issuance and delivery of the Bonds;

(e)  Audited consolidated financial statements of the Obligated Group for the Fiscal Year ended June 30, 1995 and unaudited consolidated financial statements of the Obligated Group for the nine months ended March 31, 1996 which include the information set forth in Section 5.11;

(f)  Evidence of the insurance required under Section 6.03; and

(g)  Receipt by the Bank of all other documents and opinions it may reasonably request relating to the existence of the Obligated Group, the authority of and the validity, binding effect and enforceability of this Agreement and each other Related Document and any other matters relevant hereto or thereto, all in form and substance satisfactory to the Bank.

- 14 -

PNC18753

AH 12743

Section 4.02. <u>Issuance of Bonds</u>.  On the date of execution and delivery hereof, all conditions precedent to the issuance and sale of the Bonds shall have been satisfied and the Bonds shall have been duly issued and delivered.

ARTICLE V

REPRESENTATIONS AND WARRANTIES

Each Member of the Obligated Group represents and warrants to the Bank as follows:

Section 5.01. <u>Existence</u>.  Each Member of the Obligated Group is a Pennsylvania nonprofit corporation, duly organized, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania. Each Member of the Obligated Group has all necessary material permits, licenses, certifications and qualifications to conduct its business as it is presently being conducted.

Section 5.02. <u>Tax-exempt Organization</u>.  Each Member of the Obligated Group is an organization described in Section 501(c)(3) of the Code, is exempt from federal income tax under Section 501(a) of the Code and is not a "private foundation" as defined in Section 509(a) of the Code.

Section 5.03. <u>Power, Authorization and No Conflicts</u>.  The execution, delivery and performance by each Member of the Obligated Group of this Agreement and the Related Documents are within its powers, have been duly authorized by all necessary action of the Boards of Trustees of each Member of the Obligated Group and do not contravene the Articles or Certificate of Incorporation or the Bylaws of the Member of the Obligated Group or any Governmental Rule applicable to such Member of the Obligated Group or any agreement or contractual restriction binding on or affecting such Member of the Obligated Group or any of its properties.

Section 5.04. <u>Governmental and Other Approvals</u>.  No authorization, approval or other action by, and no notice to or filing with, any Governmental Person is required for the due execution, delivery and performance by the Members of the Obligated Group of this Agreement or any Related Document, except such as have been obtained (including compliance with certificate of need requirements, if any).

Section 5.05. <u>Validity and Binding Effect</u>.  This Agreement and the Related Documents are the legal, valid and binding obligations of the Obligated Group enforceable against the Obligated Group and each Member of the Obligated Group in accordance with their terms, subject to the application by a court of general principles of equity and to the effect of any

PNC18754

- 15 -

AH- 13744

146812

applicable bankruptcy, insolvency, reorganization, moratorium or similar law affecting creditors' rights generally.

Section 5.06. <u>No Litigation</u>. Except as disclosed to the Bank in writing prior to the date of execution and delivery hereof, there is no pending action or proceeding before any Governmental Person or arbitrator against or directly involving a Member of the Obligated Group and, to the best of the Obligated Group's knowledge, there is no threatened action or proceeding affecting any Member of the Obligated Group before any Governmental Person or arbitrator which, in any case, might materially and adversely affect its financial condition or operations or the validity or enforceability of this Agreement or any Related Document.

Section 5.07. <u>No Violations</u>. No Member of the Obligated Group is in any material way in breach of or in default under (a) any applicable law or administrative regulation of the Commonwealth of Pennsylvania or the United States or any applicable judgment or decree or (b) except as disclosed to the Bank in writing prior to the date of execution and delivery hereof, any loan agreement, indenture, lease, sublease, bond, note, resolution, agreement or other instrument to which it is a party or otherwise subject, and no event has occurred and is continuing which, with the passage of time or the giving of notice or both, would constitute an event of default under any such instrument except for violations, if any, which the Obligated Group has disclosed to the Bank in writing and is proceeding in good faith to remove or correct. The Obligated Group has no knowledge of any violation, nor is there any notice or other record of any violation, of any Governmental Rule or restrictive covenant or other restriction applicable to the Facilities of each Member of the Obligated Group, except for violations, if any, which the Obligated Group has disclosed to the Bank in writing and is proceeding in good faith to remove or correct.

Section 5.08. <u>Compliance</u>. The operation of the Facilities of each Member of the Obligated Group does and shall, in all material respects, comply with, and are lawful, permitted and conforming uses under, all material applicable Governmental Rules.

Section 5.09. <u>No Liens</u>. There exist no Liens upon the Facilities of any Member of the Obligated Group other than Permitted Liens.

Section 5.10. <u>Third Party Reimbursement</u>.

(a) Each Member of the Obligated Group is duly authorized and licensed and certified to operate its Facilities and receive reimbursement therefor (to the extent reimbursement is applicable and available) under the Governmental Rules of the Commonwealth of Pennsylvania.

PNC18755

- 16 -

AH- 13745

(b)   No Member of the Obligated Group has had or expects to receive requests or assertions of claims for reimbursement or repayment by such Member of the Obligated Group of costs and/or payments heretofore made by any third party payor which, if adversely determined, would result in any material adverse change in the financial condition, operations or affairs of such Member of the Obligated Group.

Section 5.11.  <u>Financial Information</u>.  The consolidated balance sheet of the Obligated Group as at June 30, 1995 and as at March 31, 1996 and the related consolidated statements of revenues and expenses--general funds and changes in fund balances and changes in financial position of such Members of the Obligated Group for the Fiscal Year and the nine months then ended, respectively, (a) have been prepared in accordance with GAAP consistently applied, (b) with respect to the information as at June 30, 1995, have been certified by Coopers & Lybrand, Certified Public Accountants, (c) are true and complete and present fairly the financial condition and results of operations of the Members of the Obligated Group as of June 30, 1995 and as at March 31, 1996 for the period covered thereby, and (d) said balance sheet and the notes thereto accurately reflect all liabilities, including contingent liabilities, of each Member of the Obligated Group as of the date thereof.  Since April 1, 1996, each of the Members of the Obligated Group has conducted its operations in the ordinary course and there has been no material adverse change in the financial condition, operations or affairs of such Member of the Obligated Group.

Section 5.12.  <u>ERISA</u>.  With respect to each Plan, each Member of the Obligated Group is in material compliance with the applicable provisions of ERISA and the regulations and published interpretations thereunder.

Section 5.13.  <u>Absence of Events of Default Under Master Trust Indenture</u>.  No Event of Default, as that term is defined in the Master Trust Indenture, has occurred and is continuing nor has any event occurred which, with the giving of notice or lapse of time, or both, would constitute an Event of Default thereunder.

Section 5.14.  <u>Insurance</u>.  Each Member of the Obligated Group currently maintains insurance which meets or exceeds the requirements of Section 6.03 and such insurance is of such type and in such amounts (or in excess of such amounts) as are customarily carried by, and insures against such risks as are customarily insured against by, health care facilities systems of like size and character to each Member of the Obligated Group and its Facilities.  Any reserves maintained by any Member of the Obligated Group with respect to its self insurance programs have been actuarially determined to provide reasonable reserves with respect to the risks involved.

PNC18756

AH. 13746

Section 5.15.  _Incorporation of Representations and Warranties by Reference_.  The Obligated Group hereby makes to the Bank the same representations and warranties as are made by the Obligated Group and set forth in the other Related Documents, which representations and warranties, as well as the related defined terms contained therein, are hereby incorporated by reference with the same effect as if each and every such representation and warranty and defined term were set forth herein in its entirety.  No amendment to such representations and warranties or defined terms made pursuant thereto shall be effective to amend such representations and warranties and defined terms as incorporated by reference herein without the consent of the Bank.

Section 5.16.  _Disclosure_.  There is no fact known to any Member of the Obligated Group which materially adversely affects or in the future may (so far as each Member can now foresee) materially adversely affect the financial condition, operations or affairs of such Member which has not been set forth in this Agreement or in the other documents, certificates and statements furnished to the Bank by or on behalf of the Obligated Group prior to the date of execution and delivery of this Agreement in connection with the transactions contemplated hereby.

ARTICLE VI

GENERAL COVENANTS

So long as any amount is available under the Letter of Credit or any amount is due and owing to the Bank hereunder, each Member of the Obligated Group covenants that, except to the extent the Bank shall otherwise consent in writing, each of the following covenants shall be performed and complied with by the Obligated Group or party as indicated:

Section 6.01.  _Maintenance of Existence; Mergers; Withdrawal_.  Each Member of the Obligated Group (a) will maintain its existence, rights, privileges and licenses and its right to do business in the Commonwealth of Pennsylvania, (b) will not dissolve or otherwise dispose of all or substantially all of its assets, (c) unless permitted under the Master Trust Indenture and if such action will not result in an Event of Default hereunder, will not consolidate with or merge into another entity or permit one or more other entities to consolidate with or merge into it; provided, however, that any Member of the Obligated Group may merge with or into any other Member of the Obligated Group, and (d) will remain a member of the Obligated Group and not withdraw therefrom without the prior written consent of the Bank.  To the extent a consolidation, merger, disposition of assets or withdrawal requires an instrument or opinion to be satisfactory to the Master Trustee under the Master Trust Indenture, it is agreed that such instrument or opinion also must be satisfactory to the Bank.

PNC18757

- 18 -

AH-13747

Section 6.02.  <u>Compliance with Governmental Rules, Etc</u>.
Each Member of the Obligated Group will comply in all material
respects with all applicable Governmental Rules the noncompliance
with which could materially and adversely affect its operations
or condition, except for any such Governmental Rules which such
Member of the Obligated Group is contesting in good faith by
appropriate proceedings and the noncompliance with which during
such contest would not materially and adversely affect the Member
of the Obligated Group's operations or condition if the result of
such contest is adverse to such Member of the Obligated Group.

Section 6.03.  <u>Maintenance of Insurance</u>.  Each Member of the
Obligated Group will maintain or cause to be maintained such
insurance as is required under the Master Trust Indenture and
shall provide to Bank the same reports of the Insurance
Consultant (as defined therein), Officer's Certificates (as
defined therein) and any other information as is required to be
provided to the Master Trustee (and within the same time period
as is required) thereunder.

Section 6.04.  <u>Compliance with Related Documents and Other
Contracts</u>.  Each Member of the Obligated Group will comply with
all of its covenants and agreements under the Related Documents,
as the same may hereafter be amended or supplemented from time to
time (to the extent permitted herein), and comply with, or cause
to be complied with, all material requirements and conditions of
all contracts and insurance policies which relate to such Member
of the Obligated Group or its Facilities.

Section 6.05.  <u>Visitation Rights</u>.  Each Member of the
Obligated Group will, at any reasonable time and from time to
time, permit the Bank or its agents or representatives to examine
and make copies of and abstracts from the records, except for
confidential patient information, and books of account of, and
visit the properties of, such Member of the Obligated Group and
to discuss its affairs, finances and accounts  with its officers
and accountants.

Section 6.06.  <u>Keeping of Books</u>.  Each Member of the
Obligated Group will keep proper books of record and account, in
which full and correct entries shall be made of financial
transactions and the assets and operations of such Member of the
Obligated Group in accordance with GAAP.

Section 6.07.  <u>Maintenance of Properties</u>.  Each Member of
the Obligated Group will maintain and preserve all of its
Property in good working order and condition, ordinary wear and
tear excepted; not permit, commit or suffer any waste of any of
its Property; not use or permit the use of any of its Facilities
for any unlawful purpose or permit any nuisance to exist thereon;
and not sell, lease, transfer or otherwise dispose of any
substantial part of its Property, except in the ordinary course
of its operations or except as permitted by the Master Trust
Indenture.

PNC18758

- 19 -

AH- 13748

Section 6.08.  <u>Reporting Requirements</u>.  The Obligated Group
will furnish or cause to be furnished to the Bank the following:

(a)  as soon as available and in any event within 150
days after the end of each Fiscal Year a consolidated and
consolidating balance sheet of the Obligated Group as of the end
of such Fiscal Year and the related (i) consolidated and
consolidating statement of revenues and expenses and (ii)
consolidated statements of changes in fund balances and changes
in financial position, in each case for the year then ended,
setting forth in comparative form the corresponding figures for
the immediately preceding Fiscal Year, which shall be prepared
and audited by certified public accountants satisfactory to the
Bank and certified as fairly presenting the consolidated
financial position and the revenues and expenses and changes in
fund balances and changes in financial position for, the Fiscal
Year then ended, all in conformity with GAAP; together with a
certificate of the chief financial officer of the Obligated Group
(i) certifying that they fairly present the consolidated
financial condition of the Obligated Group at the end of, and the
results of operations of the Obligated Group for, such Fiscal
Year, setting forth calculations in detail satisfactory to Bank
demonstrating compliance with the provisions of Section 6.10(c)
hereof, and (ii) stating that no Event of Default, or event
which, with the giving of notice or lapse of time or both, would
constitute any Event of Default, has occurred and is continuing
or, if an Event of Default or such event has occurred and is
continuing, a statement as to the nature thereof and the action
which the Obligated Group proposes to take with respect thereto;
stating that such officer has reviewed the provisions of this
Agreement and the Related Documents and has made or caused to be
made under his supervision a review of the condition and
operations of the Members of the Obligated Group during the
period covered by such financial statements for the purpose of
determining whether or not each Member of the Obligated Group has
complied with all of the terms, provisions and conditions of this
Agreement and the Related Documents applicable to it, and to the
best of his knowledge each Member of the Obligated Group has
kept, observed, performed and fulfilled each and every covenant,
provision and condition of this Agreement and the Related
Documents on its part to be performed and is not in default in
the performance or observance of any of the terms, covenants,
provisions or conditions hereof or thereof, or, if there is a
default, such certificate shall specify all such defaults, the
nature and status thereof and any remedial steps taken or
proposed to correct such default;

(b)  as soon as available and in any event within 60
days after the end of the first three quarters of each Fiscal
Year, a consolidated and consolidating balance sheet of the
Obligated Group as of the end of such quarter and the related (i)
consolidated and consolidating statement of revenues and expenses
and (ii) consolidated statements of changes in fund balances and

PNC18759

- 20 -

AH 13740

changes in financial position, in each case for the quarter then
ended, setting forth in comparative form the corresponding
figures for the corresponding date or period of the immediately
preceding Fiscal Year, all in reasonable detail and prepared in
accordance with GAAP, together with a certificate of the chief
financial officer of the Obligated Group (i) certifying that they
fairly present the consolidated financial condition of the
Obligated Group at the end of such quarter and the results of the
operations of the Obligated Group for such periods (subject to
normal year-end audit adjustments) and have been prepared in
accordance with GAAP, (ii) setting forth calculations in detail
satisfactory to Bank demonstrating compliance with the provisions
of Section 6.10(c) hereof, and (iii) stating that no Event of
Default, or event which, with the giving of notice or lapse of
time or both, would constitute any Event of Default, has occurred
and is continuing or, if an Event of Default or such event has
occurred and is continuing, a statement as to the nature thereof
and the action which the Member of the Obligated Group proposes
to take with respect thereto;

        (c)    from time to time upon Bank's request, any Member
of the Obligated Group's internally prepared balance sheets and
statements of income and expenditures reasonably accurately
reflecting the financial condition of such Member of the
Obligated Group;

        (d)    upon receipt by any Member of the Obligated Group,
copies of any letter or report with respect to the management,
operations or facilities of such Member submitted to it by its
accountants in connection with any annual or interim audit by
such Member's accounts, and a copy of any written response of
such Member of the Obligated Group to any such letter or report;

        (e)    as soon as available and in any event within 30
days after the close of each Fiscal Year of each Member of the
Obligated Group, each Member of the Obligated Group's budget and
projection of cash flow for the next Fiscal Year, prepared in
form and detail satisfactory to the Bank and approved by the
Board of Trustees of the Members of the Obligated Group;

        (f)    as soon as available and in any event within 150
days after the close of each Fiscal Year, utilization statistics
of each Member of the Obligated Group as the Bank may reasonably
request including, but not limited to, the number of licensed
beds, the average daily patient census and the patient payor mix
at each of its Facilities;

        (g)    promptly upon obtaining knowledge thereof, written
notice of the commencement or threat of any litigation,
arbitration or governmental proceeding against any Member of the
Obligated Group, or any governmental investigation or labor
dispute pending or threatened against any Member of the Obligated
Group, which could reasonably be expected to interfere

PNC18760

- 21 -

AH-13750

substantially with its usual operations  or materially adversely affect its financial condition, business or operations;

(h)  from time to time such additional information regarding the business, properties or the condition or operations, financial or otherwise, of any Member of the Obligated Group as the Bank may reasonably request;

(i)  as soon as possible and in any event (i) within 5 days after the occurrence of an Event of Default, (ii) within 30 days of becoming aware of the same, an event which, with the giving of notice or lapse of time or both, would constitute an Event of Default, or (iii) a material adverse change in the condition, financial or otherwise, or operations of any Member of the Obligated Group, a written statement of an officer of the Obligated Group setting forth the details of such Event of Default, event or material adverse change and the action which such Member of the Obligated Group proposes to take, with respect thereto;

(j)  (i) as soon as possible and in any event (1) within 30 days after any Member of the Obligated Group knows or has reason to know that any Termination Event described in clause (i) of the definition of Termination Event with respect to any Plan has occurred, and (2) within 10 days after any Member of the Obligated Group knows or has reason to know that any other Termination Event with respect to any Plan has occurred, a statement of the chief financial officer of the Obligated Group describing such Termination Event and the action, if any, which such Member of the Obligated Group proposes to take with respect thereto, and (ii) promptly and in any event within two Business Days after receipt thereof by any Member of the Obligated Group from the PBGC, copies of each notice received by any Member of the Obligated Group of the PBGC's intention to terminate any Plan or to have a trustee appointed to administer any Plan;

(k)  promptly after the incurrence by any Member of the Obligated Group of Long-Term Indebtedness in excess of $10,000,000 certificates and reports substantially similar to those required pursuant to Section 4.2 of the Master Trust Indenture; and

(l)  simultaneously with deliveries required under the Master Trust Indenture, deliver or cause to be delivered copies of all reports, notices, certificates, opinions and other documents required to be delivered under the Master Trust Indenture on behalf of the Obligated Group or any Member of the Obligated Group.

Section 6.09.  Amendments to Bond Documents or Master Trust Indenture.  No Member of the Obligated Group will consent to or enter into any amendment of or supplement to the Bond Documents or the Master Trust Indenture without the prior written consent of the Bank; provided, however, that amendments of or supplements

PNC18761

- 22 -

AH 13751

to the Trust Indenture for the purposes described in Sections 12.01(d) and 12.01(e), and 12.04(d) and 12.04(e) of the Trust Indenture and to the Master Trust Indenture for the purposes described in Sections 9.1(a)(i), 9.1(a)(ii), 9.1(a)(v), 9.1(a)(vi) and 9.1(a)(vii) of the Master Trust Indenture shall not require the prior written consent of the Bank (but the form of such amendments or supplements shall be provided to the Bank at least 10 days prior to the execution and delivery thereof).

Section 6.10.    <u>Financial Covenants</u>.

(a)    No Member of the Obligated Group will create, incur, assume or permit to exist any Lien upon any of its Facilities, other than Permitted Liens.

(b)    The Members of the Obligated Group agree that the provisions of the First Supplemental Master Trust Indenture shall be for the benefit of the Bank as well as for the Bond Insurer and, accordingly, the representations, warranties, covenants and agreements contained in the Master Trust Indenture, as so supplemented, are incorporated herein by reference for the benefit of the Bank.

(c)    Beginning September 30, 1996, and measured on a rolling four quarter basis on each December 31, March 31, June 30 and September 30 thereafter, the Members of the Obligated Group shall maintain a Liquidity Ratio as set forth below.  As used herein, "Liquidity Ratio" means, with respect to the Obligated Group taken as a whole, the ratio of (i) the sum of (a) cash and short-term investments, plus (b) assets restricted as to use by the Boards of Trustees to (ii) the sum of (a) the current maturities of Long-Term Indebtedness (as defined in the Master Trust Indenture) for the succeeding 12 months, plus (b) interest expense for the preceding 12 months, all as determined in accordance with GAAP.

| <u>Period</u> | <u>Liquidity Ratio</u> |
|---|---|
| Fiscal Year 1997 | 1.75 to 1.00 |
| Fiscal Year 1998 and thereafter | 2.00 to 1.00 |

(d)    (1)    No Member of the Obligated Group shall sell its accounts receivable except on an arms length basis and if immediately following such sale the Members of the Obligated Group shall not be in violation of any covenant, representation or warranty hereunder.

(2)    The phrase "with or without recourse" shall be substituted for the phrase "with recourse" wherever it occurs in subparagraph (f) of Section 4.2 of the Master Trust Indenture.

(e)    The Obligated Group Agent shall deliver to the Bank a certificate identifying the assumptions upon which any financial projections required to be made under the Master Trust

- 23 -

PNC18762

AH- 13752

146812

Indenture (including, without limitation, the Projected Debt Service Coverage Ratio) are based.

(f) All payments to the Members of the Obligated Group from third party payors currently are being made in a timely manner in accordance with standard industry practice. In the event the Obligated Group fails to reduce its Outstanding Short-Term Indebtedness (as defined in the Master Trust Indenture) to the levels required under Section 4.1 of the Master Trust Indenture on the basis that such failure is due to a temporary delay in the receipt of funds due from third party payors, the affected Member or Members of the Obligated Group shall deliver to the Bank a certificate specifically identifying the details with respect to such delay.

(g) No Member of the Obligated Group shall incur Short-Term Indebtedness (as defined in the Master Trust Indenture) pursuant to Section 4.1(b) of the Master Trust Indenture unless, prior thereto, such Member of the Obligated Group shall have delivered to the Bank a certificate of a Consultant (as defined in the Master Trust Indenture) certifying that as of such date such Consultant would be able to sell or place the Long-Term Indebtedness which will be incurred to repay such Short-Term Indebtedness and stating its best estimate of the interest rate and term of such Long-Term Indebtedness.

(h) No Member of the Obligated Group shall incur Completion Indebtedness (as defined in the Master Trust Indenture) in excess of 10% of the Long-Term Indebtedness originally incurred with respect to construction and/or equipping of a Facility or Facilities without the Bank's prior written consent, which consent shall not be unreasonably withheld.

(i) Without the prior written consent of the Bank, no Member of the Obligated Group shall incur Long-Term Indebtedness pursuant to Section 4.2(h) of the Master Trust Indenture unless, after giving effect thereto, all Outstanding Long-Term Indebtedness of the Obligated Group will not exceed 70% of its Capitalization (as defined in the Master Trust Indenture).

(j) Upon the occurrence and continuance of an Event of Default (as defined in the Master Trust Indenture), the Members of the Obligated Group shall take all action as may be reasonably necessary in the Bank's discretion, with the consent of the Master Trustee, to cause all account debtors and third party payors to make all payments directly to a lockbox for credit to a cash collateral account to be established and maintained with the commercial department of the Master Trustee (or other financial institution acceptable to the Master Trustee, the Bond Insurer (as defined in the Master Trust Indenture) and the Bank) for the benefit of the Holders of all Obligations issued and Outstanding (as such terms are defined in the Master Trust Indenture) under the Master Trust Indenture, together with all other acts necessary to give effect to the foregoing.

PNC18763

- 24 -

AH- 13753

Section 6.11.  ERISA.  No Member of the Obligated Group will (i) voluntarily terminate any employee benefit or other plan maintained for employees of such Member of the Obligated Group and covered by Title IV of ERISA (an "ERISA Plan"), so as to result in any material liability of such Member of the Obligated Group to PBGC; (ii) enter into any Prohibited Transaction (as defined in Section 4975 of the Code and in ERISA) involving an ERISA Plan which results in any material liability of such Member of the Obligated Group to PBGC; (iii) cause any occurrence of any Reportable Event which results in any material liability of such Member of the Obligated Group to PBGC; or (iv) allow or suffer to exist any other event or condition known to such Member of the Obligated Group which results in any material liability of such Member of the Obligated Group to PBGC.  Further, each Member of the Obligated Group will comply with the applicable provisions of ERISA where the failure so to comply might reasonably be expected materially to impair the right of such Member of the Obligated Group to carry on its business substantially as now being conducted or to materially and adversely affect its financial condition.

Section 6.12.  Preservation of Tax-Exempt Status.  Each Member of the Obligated Group will take whatever actions are necessary to continue to be organized and operated in a manner which will preserve and maintain its status as an organization exempt from Federal income taxes under Section 501(a) of the Code and will not perform any acts or enter into any agreements that shall cause revocation or adverse modification of such Federal income tax status of such Member of the Obligated Group.

Section 6.13.  Information to be Furnished to the Bank.  The Obligated Group will cause all documents required to be furnished or submitted to the Master Trustee and/or the Bond Insurer under the Master Trust Indenture and to the Trustee under the Trust Indenture, including all opinions, reports, requests, consents, notices and other documents, to be delivered to the Bank at the same time as the same are required to be furnished to the Master Trustee and/or the Bond Insurer or the Trustee.

Section 6.14.  Maintenance of Reimbursement Eligibility.  Each Member of the Obligated Group shall establish and maintain its status as a provider of health care services eligible for reimbursement under the Medicare, Medicaid, Blue Cross and equivalent third party payment programs the revenues from which are material to the operations of such Member of the Obligated Group, including future state and federal programs.

Section 6.15.  Further Assurances.  Each Member of the Obligated Group will execute and deliver from time to time such further instruments and take such further actions as may be required to carry out the purposes and provisions of this Agreement and to assure the Bank of the security rights in favor of the Bank contemplated by Article III and the Trust Indenture.

PNC18764

AH- 13754

Section 6.16.  <u>Appointment of Remarketing Agent</u>.  Upon notice from the Remarketing Agent that it is terminating its rights and obligations as the Remarketing Agent, the Obligated Group will appoint a successor remarketing agent promptly and in no event later than 30 days after the date of the notice from the Remarketing Agent.  In the event the Obligated Group determines to terminate the Remarketing Agent, the Obligated Group will appoint a successor remarketing agent a sufficient time prior to such termination in order to allow a smooth transition of such services.

Section 6.17.  <u>Payment of Taxes; Removal of Liens</u>.  Each Member of the Obligated Group will pay all assessments or other governmental charges as the same become due, all taxes, assessments (general or special) and governmental charges of any kind whatsoever that may be at any time lawfully assessed or levied against or with respect to the Facilities or any interest therein and promptly discharge or cause to be discharged all Liens, encumbrances and charges on the Facilities or any part thereof other than Permitted Liens; provided, however, that no Member of the Obligated Group shall be required to pay any tax, charge, assessment or imposition nor to remove any lien, charge or encumbrance nor to comply with any Governmental Rule so long as it shall contest, in good faith, the amount or validity thereof, in an appropriate manner or by appropriate proceedings which shall operate during the pendency thereof to prevent the collection of or other realization upon the tax, assessment, levy, fee, rent, charge, Lien or encumbrance so contested, and the sale, forfeiture or loss of the Facilities or any part thereof, or of the rent or any portion thereof, to satisfy the same; provided (i) that no such contest shall subject the Bank to the risk of any liability; (ii) that the Members of the Obligated Group will at all times effectively stay or prevent any official or judicial action detrimental to the interest of the Bank or the title, use or operation of the Facilities or any material part thereof; and (iii) that the Obligated Group shall give the Bank prompt written notice of any such contest.  Each such contest shall be promptly prosecuted to final conclusion (subject to the right of the Members of the Obligated Group to settle any such contest), and in any event the Members of the Obligated Group will save the Bank harmless against all losses, judgments, decrees and costs (including attorneys' fees and expenses in connection therewith) and will, promptly after the final determination of such contest or settlement thereof, pay and discharge the amounts which shall be levied, assessed or imposed or determined to be payable therein, together with all penalties, fines, interests, costs and expenses thereon or in connection therewith.

Notwithstanding the foregoing, if the Bank shall notify the Obligated Group that, in the opinion of counsel, by continued nonpayment of any of the foregoing items, the Facilities or any substantial part thereof will be subject to imminent loss or

PNC18765

- 26 -

AH 13755

forfeiture, then the Obligated Group agrees to promptly pay or cause to be paid all such unpaid items and cause them to be satisfied and discharged.

Section 6.18. <u>Ownership of Bonds</u>. No Member of the Obligated Group shall be the owner (equitable or beneficial) of any of the Bonds.

ARTICLE VII

DEFAULTS AND REMEDIES

Section 7.01. <u>Defaults</u>. Each of the following shall constitute an event of default hereunder ("Event of Default"):

(a)  Failure by the Obligated Group to make any payment when due under this Agreement or by any Member of the Obligated Group to make any payment when due under the Bank Master Note;

(b)  Failure by the Obligated Group to perform or comply with any of the other terms or conditions contained in this Agreement and continuance of such failure for 30 days after the earlier of written notice from the Bank to the Obligated Group or the Obligated Group has knowledge that such failure has occurred, or such longer period to which Bank may agree in the case of a default not curable by the exercise of due diligence within such 30 day period, provided that the Obligated Group shall have commenced to cure such default within such 30 day period and shall complete such cure as quickly as reasonably possible with the exercise of due diligence;

(c)  Any of the representations or warranties of the Obligated Group set forth in this Agreement, any Related Document or any other document furnished to the Bank pursuant to the terms hereof proves to have been materially false or incorrect when made;

(d)  Any material provision of this Agreement or the Bank Master Note shall at any time for any reason cease to be valid and binding on the Obligated Group, or shall be declared to be null and void, or shall be violative of any applicable law relating to a maximum amount of interest permitted to be contracted for, charged or received, or the validity or enforceability thereof shall be contested by the Obligated Group or any Member of the Obligated Group, or the Obligated Group shall deny that it has any or further liability or obligation under this Agreement or under the Bank Master Note;

(e)  The occurrence of an event of default as defined in any of the Related Documents;

(f)  Any Member of the Obligated Group shall (i) apply for or consent to the appointment of a receiver, trustee,

PNC18766

- 27 -

AH- 13756

liquidator or sequestrator or the like of the Member of the Obligated Group or of property of the Member of the Obligated Group, or (ii) admit in writing the inability of the Member of the Obligated Group to pay its debts generally as they become due, or (iii) make a general assignment for the benefit of creditors, or (iv) be adjudicated a bankrupt or insolvent, or (v) commence a voluntary case under the United States Bankruptcy Code or file a voluntary petition or answer seeking reorganization, an arrangement with creditors or an order for relief or seeking to take advantage of any insolvency law or file an answer admitting the material allegations of a petition filed against the Member of the Obligated Group in any bankruptcy, reorganization or insolvency proceeding, or action of the Member of the Obligated Group shall be taken for the purpose of effecting any of the foregoing, or (vi) take any corporate action or other action to authorize any of the foregoing, or (vii) if without the application, approval or consent of the Member of the Obligated Group, a proceeding 'shall be instituted in any court of competent jurisdiction, under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking in respect of such Member of the Obligated Group an order for relief or an adjudication in bankruptcy, reorganization, dissolution, winding up or liquidation, a composition or arrangement with creditors, a readjustment of debts, the appointment of a trustee, receiver, liquidator or sequestrator or the like of such Member of the Obligated Group or of all or any substantial part of the assets of such Member of the Obligated Group or other like relief in respect thereof under any bankruptcy or insolvency law, and, if such proceeding is being contested by such Member of the Obligated Group in good faith, the same shall (A) result in the entry of an order for relief or any such adjudication or appointment or (B) remain undismissed and undischarged for a period of 60 days;

(g)  Any litigation or administrative proceeding ensues, and is not dismissed within 30 days, involving any Member of the Obligated Group or any instrument, contract or document delivered to the Bank in compliance with this Agreement, and the adverse result of such litigation or proceeding would have, in the Bank's reasonable opinion, a materially adverse effect on the Obligated Group's or any Member of the Obligated Group's ability to pay its obligations and comply with the covenants under this Agreement or the Related Documents;

(h)  Any one or more judgments or orders are entered against any Member of the Obligated Group, where such judgments or orders aggregate $5,000,000 or more in excess of any insurance coverage protecting against such liability (but only to the extent satisfactory evidence of such insurance coverage is provided to the Bank) and either (i) continue unsatisfied and unstayed for 30 days or (ii) a judgment lien on such Member of the Obligated Group's Facilities is recorded in respect thereof and is not stayed pending appeal by a bond or other arrangement

PNC18767

- 28 -

AH- 13757

given or obtained by such Member of the Obligated Group on terms
which do not violate any of the covenants under this Agreement;

(i)  (i) Failure by any Member of the Obligated Group
to make any payment or payments in respect of (1) any obligation
or obligations owing to the Bank or (2) any obligation or
obligations for the payment of borrowed moneys in an aggregate
principal amount of $500,000 or more, when such payment or
payments are due and payable (after the lapse of any applicable
grace period) that results in the acceleration of such obligation
or obligations or enables the holder or holders of such
obligation or obligations or any person acting on behalf of such
holder or holders to accelerate the maturity of such obligation
or obligations (as used herein, "obligation for the payment of
borrowed money" shall include, without limitation, Obligations
and Indebtedness (as such terms are defined in the Master Trust
Indenture), obligations arising from guarantees of Indebtedness
to others, obligations (other than accounts payable and other
similar items arising in the normal course of business) for the
deferred payment of the purchase price of property and lease
obligations which in accordance with GAAP would be included in
determining total liabilities as shown on the liabilities side of
the balance sheet, or leases required to be capitalized under
GAAP); or (ii) the occurrence of any material default under any
agreement, indenture or other instrument under or pursuant to
which the Bonds or an obligation for the payment of borrowed
moneys is incurred, secured or issued, and continuance of such
default beyond the period of grace, if any, allowed with respect
thereto;

(j)  a moratorium or repudiation shall have been
declared or announced (whether or not in writing) with respect to
any Indebtedness of the Obligated Group or any Member of the
Obligated Group; or

(k)  the occurrence of a default or event of default
under any other agreement between or among the Bank and one or
more Members of the Obligated Group.

Section 7.02.  Remedies. (a)  If an Event of Default has
occurred and is continuing uncured, the Bank may

(1)  notify the Trustee and the purchaser of the
Bonds (if there exists only one such purchaser) of such
Event of Default and direct the Trustee to declare an event
of default as defined in the Trust Indenture, to accelerate
the Bonds (or cause a mandatory tender of the Bonds in lieu
of acceleration) and draw on the Letter of Credit and/or to
exercise remedies under the Bond Documents;

(2)  notify the Master Trustee of such Event of
Default and direct the Master Trustee to declare an event of
default as defined in the Master Trust Indenture and to

PNC18768

- 29 -

AH- 13758

declare the 1996F Master Indenture Note immediately due and payable;

> (3) declare the Obligated Group's obligations hereunder to be, whereupon the same shall become, immediately due and payable; and

> (4) exercise, or cause to be exercised, any and all such remedies as it may have under this Agreement or any other document or at law or in equity.

(b) Upon the occurrence of an Event of Default under Section 7.01(f), all of the Obligated Group's obligations hereunder shall automatically become immediately due and payable.

Section 7.03. _Waivers; Consents_. No waiver of, or consent with respect to, any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by the Bank, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

Section 7.04. _No Waiver; Remedies Cumulative_. No failure on the part of the Bank to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; and no single or partial exercise of any right hereunder shall preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies available under any other document or at law or in equity.

Section 7.05. _Set-Off_. Upon the occurrence and during the continuance of any Event of Default, the Bank is hereby authorized at any time and from time to time without notice to the Obligated Group or any Member of the Obligated Group (any such notice being expressly waived by the Obligated Group) and, to the fullest extent permitted by law, to set off and to apply any and all balances, credits, deposits (general or special, time or demand, provisional or final), accounts or moneys at any time held and other indebtedness at any time owing by the Bank to or for the account of the Obligated Group or any Member of the Obligated Group against any and all of the obligations of the Obligated Group or any Member of the Obligated Group now or hereafter existing under this Agreement or any other agreement or instrument delivered by the Obligated Group or any Member of the Obligated Group to the Bank in connection therewith, whether or not the Bank shall have made any demand hereunder or thereunder and although such obligations may be contingent or unmatured. The rights of the Bank under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Bank may have.

PNC18769

AH- 13759

146812

ARTICLE VIII

MISCELLANEOUS

Section 8.01. <u>Notices</u>. All notices and other communications provided for hereunder shall be in writing and sent by United States certified or registered mail, return receipt requested, or by telegraph, telex, telecopier or private delivery service, addressed as follows:

If to the Bank:

PNC Bank, National Association
One PNC Plaza, 5th Floor
Fifth Avenue and Wood Street
Pittsburgh, Pennsylvania 15222

Attention:  Manager, Health Care Group


If to the Obligated Group:

c/o AHERF
503 Martindale Street
Pittsburgh, Pennsylvania  15212

Attention:  Vice President-Treasury


If to the Trustee or the Tender Agent:

Norwest Bank Minnesota, National Association
11000 Broken Land Parkway
Columbia, Maryland  21044

Attention:  Securities Administration Services


Either party hereto and the Tender Agent may change the address to which notices to it are to be sent by written notice given to the other persons listed in this Section. All notices shall, when mailed as aforesaid, be effective on the date indicated on the return receipt and all notices given by other means shall be effective when received.

Section 8.02. <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns. The Obligated Group may not assign its rights under this Agreement without the prior written consent of the Bank.

Section 8.03. <u>Survival</u>. All representations, warranties, covenants and agreements made by the Obligated Group herein and in any document delivered pursuant hereto shall survive the

PNC18770

- 31 -

AH-13760

146812

delivery of this Agreement and any advances under the Letter of Credit and shall continue in full force and effect until payment in full of all of the obligations of the Obligated Group hereunder, it being understood that the agreements of the Obligated Group found in Sections 2.06 and 8.05 hereof shall survive the payment in full of any other obligations of the Obligated Group hereunder.

Section 8.04. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, with each executed counterpart constituting an original and all counterparts together constituting one agreement.

Section 8.05. <u>Costs, Expenses and Taxes</u>. The Obligated Group agrees to pay on demand all costs and expenses of the Bank (including, without limitation, the reasonable fees and out-of-pocket expenses of counsel for the Bank) in connection with (a) the negotiation, preparation, execution, delivery, administration, termination or the like of this Agreement, the Letter of Credit and any other documents that may be delivered in connection with this Agreement or the Related Documents including, without limitation, any waiver or consent hereunder or thereunder or any amendments hereto or thereto, and (b) any Event of Default or alleged Event of Default or the enforcement or interpretation of this Agreement and such other documents. In addition, the Obligated Group shall pay any and all stamp, transfer, documentary and other taxes, assessments, charges and fees payable or determined to be payable in connection with the execution and delivery of this Agreement and such other documents and agrees to indemnify and to hold the Bank harmless from and against any and all liabilities with respect to or resulting from any delay in paying or omitting to pay such taxes, assessments, charges and fees, provided the Bank promptly notifies the Obligated Group of any such taxes, assessments, charges and fees.

Section 8.06. <u>Amendments</u>. This Agreement may be amended by an instrument in writing executed and delivered by each of the Members of the Obligated Group and the Bank.

Section 8.07. <u>Severability; Interest Limitation</u>. If any provision hereof is found by a court of competent jurisdiction to be prohibited or unenforceable in any jurisdiction, it shall be ineffective in such jurisdiction only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision in such jurisdiction to the extent it is not prohibited or unenforceable, nor invalidate such provision in any other jurisdiction, nor invalidate the other provisions hereof, all of which shall be liberally construed in favor of the Bank in order to effect the provisions of this Agreement. Notwithstanding anything to the contrary herein contained, the total liability of the Obligated Group for payment of interest pursuant hereto shall not exceed the maximum amount, if any, of such interest permitted by applicable law to be contracted for, charged or received, and

PNC18771

- 32 -

AH-13761

if any payments by the Obligated Group to the Bank include interest in excess of such a maximum amount, the Bank shall apply such excess to the reduction of the unpaid principal amount due pursuant hereto, or if none is due, such excess shall be refunded to the Obligated Group; provided that, to the extent permitted by applicable law, in the event the interest is not collected, is applied to principal or is refunded pursuant to this sentence and interest thereafter payable pursuant hereto shall be less than such maximum amount, then such interest thereafter so payable shall be increased up to such maximum amount to the extent necessary to recover the amount of interest, if any, theretofore uncollected, applied to principal or refunded pursuant to this sentence. Any such application or refund shall not cure or waive any Event of Default. In determining whether or not any interest payable under this Agreement exceeds the highest rate permitted by law, any non-principal payment (except payments specifically stated in this Agreement to be "interest") shall be deemed, to the extent permitted by applicable law, to be an expense, fee, premium or penalty rather than interest.

Section 8.08. <u>Complete Agreement</u>. Taken together with the other instruments and documents delivered in compliance herewith, this Agreement is a complete memorandum of the agreement of the Obligated Group and the Bank. Waivers or modifications of any provision hereof must be in writing signed by the party to be charged with the effect thereof.

Section 8.09. <u>Consent to Jurisdiction; Venue; Waiver of Jury Trial</u>. The Obligated Group and the Bank hereby irrevocably (i) agree that any suit, action or other legal proceeding arising out of or relating to this Agreement may be brought in any federal or state court located in Pittsburgh, Pennsylvania and consent to the jurisdiction of such court in any such suit, action or proceeding and (ii) waive any objection which either of them may have to the laying of venue of any such suit, action or proceeding in any such court and any claim that any such suit, action or proceeding has been brought in an inconvenient forum. The Obligated Group hereby irrevocably consents to the service of any and all process in any such suit, action or proceeding by mailing of copies of such process to the Obligated Group at its address provided in Section 8.01. The Obligated Group agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. All mailings under this Section shall be by certified mail, return receipt requested. Nothing in this Section shall affect the right of the Bank to serve legal process in any other manner permitted by law or affect the right of the Bank to bring any suit, action or proceeding against the Obligated Group or its property in the courts of any other jurisdiction. THE OBLIGATED GROUP AND THE BANK HEREBY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION ARISING HEREUNDER OR OTHERWISE IN CONNECTION HEREWITH.

PNC18772

AH- 13762

Section 8.10. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania without reference to its principles of conflicts of law.

Section 8.11. <u>Participation</u>. Notwithstanding any other provision of this Agreement, the Obligated Group understands that the Bank may at any time enter into participation agreements with one or more other participating banks (such other participating banks are hereinafter referred to as "Participating Banks") whereby the Bank will allocate to the Participating Banks certain percentages of the payment obligations of the Obligated Group under this Agreement and the funding obligations of the Bank under the Letter of Credit. Notwithstanding such allocations to Participating Banks, the Bank shall remain obligated by the terms of this Agreement. The Obligated Group acknowledges that, for the convenience of all parties, the Obligated Group's obligations under this Agreement are and will be undertaken for the benefit of, and as an inducement to, the Participating Banks as well as the Bank. Without limiting the foregoing, the Obligated Group acknowledges that Sections 2.02(d) and 2.05 and the indemnity of the Bank under Section 8.05 are for the benefit of the Participating Banks as if such Sections specifically referred to the Participating Banks and their participations in the payment obligations of the Obligated Group and the funding obligations of the Bank, and the Obligated Group agrees to make any payments required by such provisions for the account of any one or more Participating Banks to the Bank on demand of the Bank. The Obligated Group hereby grants to each Participating Bank, to the extent of its participation and to the extent permitted by applicable law, the right to set off deposit accounts maintained by the Obligated Group with such bank as if the Participating Banks were specifically referred to therein the date first above written.

Section 8.12. <u>Headings</u>. Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

Section 8.13. <u>Additional Participants</u>. No entity not an initial Member of the Obligated Group shall receive proceeds of the Bonds through the pooled loan program or enter into a Loan Agreement without causing to be delivered to the Bank, simultaneously therewith:

(a) if a Member of the Obligated Group, an acknowledgment and agreement, in form and substance satisfactory to the Bank, agreeing to be bound by the terms of this Agreement as a Member of the Obligated Group;

(b) if an Affiliate of a Member of the Obligated Group (as defined in the Trust Indenture) which does not become a Member of the Obligated Group, (i) an acknowledgment and agreement by such Affiliates, in form and substance satisfactory

to the Bank, confirming that (A) the Bank may rely upon the representations and warranties in the Loan Agreement executed by such Affiliate as if the same had been addressed to the Bank in the first instance, and (B) such Affiliate will provide to the Bank financial information of the type and in the manner described in Section 6.08 hereof and (ii) a consent by each Member of the Obligated Group to the loan to the Affiliate from the pooled loan program, together with an acknowledgement that it derives substantial benefits as a Member of the Obligated Group and continues to be jointly and severally liable for all obligations under the Bank Master Note; and

(c)  an opinion of counsel in substantially the form required by Section 4.05(b) of the Trust Indenture with respect to the execution by such entity of such acknowledgment and agreement.

PNC18774

- 35 -

AH- 13764