148642

(e)  The Obligated Group Agent shall deliver to the
Bank a certificate identifying the assumptions upon which any
financial projections required to be made under the Master Trust
Indenture (including, without limitation, the Projected Debt
Service Coverage Ratio) are based.

(f)  All payments to the Members of the Obligated Group
from third party payors currently are being made in a timely
manner in accordance with standard industry practice.  In the
event the Obligated Group fails to reduce its Outstanding Short-
Term Indebtedness (as defined in the Master Trust Indenture) to
the levels required under Section 4.1 of the Master Trust
Indenture on the basis that such failure is due to a temporary
delay in the receipt of funds due from third party payors, the
affected Member or Members of the Obligated Group shall deliver
to the Bank a certificate specifically identifying the details
with respect to such delay.

(g)  No Member of the Obligated Group shall incur
Short-Term Indebtedness (as defined in the Master Trust
Indenture) pursuant to Section 4.1(b) of the Master Trust
Indenture unless, prior thereto, such Member of the Obligated
Group shall have delivered to the Bank a certificate of a
Consultant (as defined in the Master Trust Indenture) certifying
that as of such date such Consultant would be able· to sell or
place the Long-Term Indebtedness which will be incurred to repay
such Short-Term Indebtedness and stating its best estimate of the
interest rate and term of such Long-Term Indebtedness.

(h)  No Member of the Obligated Group shall incur
Completion Indebtedness (as defined in the Master Trust
Indenture) in excess of 10% of the Long-Term Indebtedness
originally incurred with respect to construction and/or equipping
of a Facility or Facilities without the Bank's prior written
consent, which consent shall not be unreasonably withheld.

(i)  Without the prior written consent of the Bank, no
Member of the Obligated Group shall incur Long-Term Indebtedness
pursuant to Section 4.2(h) of the Master Trust Indenture unless,
after giving effect thereto, all Outstanding Long-Term
Indebtedness of the Obligated Group will not exceed 70% of its
Capitalization (as defined in the Master Trust Indenture).

(j)  Upon the occurrence and continuance of an Event of
Default (as defined in the Master Trust Indenture), the Members
of the Obligated Group shall take all action as may be reasonably
necessary in the Bank's discretion, with the consent of the
Master Trustee, to cause all account debtors and third party
payors to make all payments directly to a lockbox for credit to a
cash collateral account to be established and maintained with the
commercial department of the Master Trustee (or other financial
institution acceptable to the Master Trustee, the Bond Insurer
(as defined in the Master Trust Indenture) and the Bank) for the
benefit of the Holders of all Obligations issued and Outstanding

PNC18710

- 24 -

AH 13788

(as such terms are defined in the Master Trust Indenture) under the Master Trust Indenture, together with all other acts necessary to give effect to the foregoing.

Section 6.11.  ERISA.  No Member of the Obligated Group will (i) voluntarily terminate any employee benefit or other plan maintained for employees of such Member of the Obligated Group and covered by Title IV of ERISA (an "ERISA Plan"), so as to result in any material liability of such Member of the Obligated Group to PBGC; (ii) enter into any Prohibited Transaction (as defined in Section 4975 of the Code and in ERISA) involving an ERISA Plan which results in any material liability of such Member of the Obligated Group to PBGC; (iii) cause any occurrence of any Reportable Event which results in any material liability of such Member of the Obligated Group to PBGC; or (iv) allow or suffer to exist any other event or condition known to such Member of the Obligated Group which results in any material liability of such Member of the Obligated Group to PBGC.  Further, each Member of the Obligated Group will comply with the applicable provisions of ERISA where the failure so to comply might reasonably be expected materially to impair the right of such Member of the Obligated Group to carry on its business substantially as now being conducted or to materially and adversely affect its financial condition.

Section 6.12.  Preservation of Tax-Exempt Status.  Each Member of the Obligated Group will take whatever actions are necessary to continue to be organized and operated in a manner which will preserve and maintain its status as an organization exempt from Federal income taxes under Section 501(a) of the Code and will not perform any acts or enter into any agreements that shall cause revocation or adverse modification of such Federal income tax status of such Member of the Obligated Group.

Section 6.13.  Information to be Furnished to the Bank.  The Obligated Group will cause all documents required to be furnished or submitted to the Master Trustee under the Master Trust Indenture and to the Depositary and/or Merrill Lynch under the CP Documents, including all opinions, reports, requests, consents, notices and other documents, to be delivered to the Bank at the same time as the same are required to be furnished to the Master Trustee, the Depositary and/or Merrill Lynch.

Section 6.14.  Maintenance of Reimbursement Eligibility. Each Member of the Obligated Group shall establish and maintain its status as a provider of health care services eligible for reimbursement under the Medicare, Medicaid, Blue Cross and equivalent third party payment programs the revenues from which are material to the operations of such Member of the Obligated Group, including future state and federal programs.

Section 6.15.  Further Assurances.  Each Member of the Obligated Group will execute and deliver from time to time such further instruments and take such further actions as may be

PNC18711

\H. 13701

required to carry out the purposes and provisions of this Agreement and to assure the Bank of the security rights in favor of the Bank contemplated by Article III and the Trust Indenture.

Section 6.16. <u>Appointment of Dealer</u>. Upon notice from Merrill Lynch that it is terminating its rights and obligations as the Dealer under the Dealer Agreement, the Obligated Group will appoint a successor dealer promptly and in no event later than 30 days after the date of the notice from Merrill Lynch. In the event the Obligated Group determines to terminate Merrill Lynch, the Obligated Group will appoint a successor dealer a sufficient time prior to such termination in order to allow a smooth transition of such services.

Section 6.17. <u>Payment of Taxes; Removal of Liens</u>. Each Member of the Obligated Group will pay all assessments or other governmental charges as the same become due, all taxes, assessments (general or special) and governmental charges of any kind whatsoever that may be at any time lawfully assessed or levied against or with respect to the Facilities or any interest therein and promptly discharge or cause to be discharged all Liens, encumbrances and charges on the Facilities or any part thereof other than Permitted Liens; provided, however, that no Member of the Obligated Group shall be required to pay any tax, charge, assessment or imposition nor to remove any lien, charge or encumbrance nor to comply with any Governmental Rule so long as it shall contest, in good faith, the amount or validity thereof, in an appropriate manner or by appropriate proceedings which shall operate during the pendency thereof to prevent the collection of or other realization upon the tax, assessment, levy, fee, rent, charge, Lien or encumbrance so contested, and the sale, forfeiture or loss of the Facilities or any part thereof, or of the rent or any portion thereof, to satisfy the same; provided (i) that no such contest shall subject the Bank to the risk of any liability; (ii) that the Members of the Obligated Group will at all times effectively stay or prevent any official or judicial action detrimental to the interest of the Bank or the title, use or operation of the Facilities or any material part thereof; and (iii) that the Obligated Group shall give the Bank prompt written notice of any such contest. Each such contest shall be promptly prosecuted to final conclusion (subject to the right of the Members of the Obligated Group to settle any such contest), and in any event the Members of the Obligated Group will save the Bank harmless against all losses, judgments, decrees and costs (including attorneys' fees and expenses in connection therewith) and will, promptly after the final determination of such contest or settlement thereof, pay and discharge the amounts which shall be levied, assessed or imposed or determined to be payable therein, together with all penalties, fines, interests, costs and expenses thereon or in connection therewith.

Notwithstanding the foregoing, if the Bank shall notify the Obligated Group that, in the opinion of counsel, by continued

AH- 13702

PNC18712

148642

      (f)  Any Member of the Obligated Group shall (i) apply for or consent to the appointment of a receiver, trustee, liquidator or sequestrator or the like of the Member of the Obligated Group or of property of the Member of the Obligated Group, or (ii) admit in writing the inability of the Member of the Obligated Group to pay its debts generally as they become due, or (iii) make a general assignment for the benefit of creditors, or (iv) be adjudicated a bankrupt or insolvent, or (v) commence a voluntary case under the United States Bankruptcy Code or file a voluntary petition or answer seeking reorganization, an arrangement with creditors or an order for relief or seeking to take advantage of any insolvency law or file an answer admitting the material allegations of a petition filed against the Member of the Obligated Group in any bankruptcy, reorganization or insolvency proceeding, or action of the Member of the Obligated Group shall be taken for the purpose of effecting any of the foregoing, or (vi) take any corporate action or other action to authorize any of the foregoing, or (vii) if without the application, approval or consent of the Member of the Obligated Group, a proceeding shall be instituted in any court of competent jurisdiction, under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking in respect of such Member of the Obligated Group an order for relief or an adjudication in bankruptcy, reorganization, dissolution, winding up or liquidation, a composition or arrangement with creditors, a readjustment of debts, the appointment of a trustee, receiver, liquidator or sequestrator or the like of such Member of the Obligated Group or of all or any substantial part of the assets of such Member of the Obligated Group or other like relief in respect thereof under any bankruptcy or insolvency law, and, if such proceeding is being contested by such Member of the Obligated Group in good faith, the same shall (A) result in the entry of an order for relief or any such adjudication or appointment or (B) remain undismissed and undischarged for a period of 60 days;

      (g)  Any litigation or administrative proceeding ensues, and is not dismissed within 30 days, involving any Member of the Obligated Group or any instrument, contract or document delivered to the Bank in compliance with this Agreement, and the adverse result of such litigation or proceeding would have, in the Bank's reasonable opinion, a materially adverse effect on the Obligated Group's or any Member of the Obligated Group's ability to pay its obligations and comply with the covenants under this Agreement or the Related Documents;

      (h)  Any one or more judgments or orders are entered against any Member of the Obligated Group, where such judgments or orders aggregate $5,000,000 or more in excess of any insurance coverage protecting against such liability (but only to the extent satisfactory evidence of such insurance coverage is provided to the Bank) and either (i) continue unsatisfied and unstayed for 30 days or (ii) a judgment lien on such Member of

PNC18713

- 28 -

AH- 13703

148642

nonpayment of any of the foregoing items, the Facilities or any substantial part thereof will be subject to imminent loss or forfeiture, then the Obligated Group agrees to promptly pay or cause to be paid all such unpaid items and cause them to be satisfied and discharged.

Section 6.18. <u>Ownership of Commercial Paper Notes</u>. No Member of the Obligated Group shall be the owner (equitable or beneficial) of any of the Commercial Paper Notes.

ARTICLE VII

DEFAULTS AND REMEDIES

Section 7.01. <u>Defaults</u>. Each of the following shall constitute an event of default hereunder ("Event of Default"):

(a)  Failure by the System or any other Member of the Obligated Group to make any payment when due under this Agreement or under the 1996G Master Indenture Note;

(b)  Failure by the System or any other Member of the Obligated Group to perform or comply with any of the other terms or conditions contained in this Agreement and continuance of such failure for 30 days after the earlier of written notice from the Bank to the Obligated Group Agent or the Obligated Group Agent has knowledge that such failure has occurred, or such longer period to which the Bank may agree in the case of a default not curable by the exercise of due diligence within such 30 day period, provided that the System or the other Members of the Obligated Group shall have commenced to cure such default within such 30 day period and shall complete such cure as quickly as reasonably possible with the exercise of due diligence;

(c)  Any of the representations or warranties of the System set forth in this Agreement, any Related Document or any other document furnished to the Bank pursuant to the terms hereof proves to have been materially false or incorrect when made;

(d)  Any material provision of this Agreement or the 1996G Master Indenture Note shall at any time for any reason cease to be valid and binding on the System or the other Members of the Obligated Group, or shall be declared to be null and void, or shall be violative of any applicable law relating to a maximum amount of interest permitted to be contracted for, charged or received, or the validity or enforceability thereof shall be contested by the System or any Member of the Obligated Group, or the System or the other Members of the Obligated Group shall deny that it/they has/have any or further liability or obligation under this Agreement or under the 1996G Master Indenture Note;

(e)  The occurrence of an event of default as defined in any of the Related Documents;

PNC18714

- 27 -

AH-13704

the Obligated Group's Facilities is recorded in respect thereof and is not stayed pending appeal by a bond or other arrangement given or obtained by such Member of the Obligated Group on terms which do not violate any of the covenants under this Agreement;

(i)     (i) Failure by any Member of the Obligated Group to make any payment or payments in respect of (1) any obligation or obligations owing to the Bank or (2) any obligation or obligations for the payment of borrowed moneys in an aggregate principal amount of $500,000 or more, when such payment or payments are due and payable (after the lapse of any applicable grace period) that results in the acceleration of such obligation or obligations or enables the holder or holders of such obligation or obligations or any person acting on behalf of such holder or holders to accelerate the maturity of such obligation or obligations (as used herein, "obligation for the payment of borrowed money" shall include, without limitation, Obligations and Indebtedness (as such terms are defined in the Master Trust Indenture), obligations arising from guarantees of Indebtedness to others, obligations (other than accounts payable and other similar items arising in the normal course of business) for the deferred payment of the purchase price of property and lease obligations which in accordance with GAAP would be included in determining total liabilities as shown on the liabilities side of the balance sheet, or leases required to be capitalized under GAAP); or (ii) the occurrence of any material default under any agreement, indenture or other instrument under or pursuant to which the Commercial Paper Notes or an obligation for the payment of borrowed moneys is incurred, secured or issued, and continuance of such default beyond the period of grace, if any, allowed with respect thereto;

(j)     a moratorium or repudiation shall have been declared or announced (whether or not in writing) with respect to any Indebtedness of the Obligated Group or any Member of the Obligated Group; or

(k)     the occurrence of a default or event of default under any other agreement between or among the Bank and one or more Members of the Obligated Group.

Section 7.02.  Remedies.  (a)  If an Event of Default has occurred and is continuing uncured, the Bank may

(1)     deliver to the Depositary either a Default Notice or a No-Issuance Notice under the Letter of Credit;

(2)     notify the Master Trustee of such Event of Default and direct the Master Trustee to declare an event of default as defined in the Master Trust Indenture and to declare the 1996G Master Indenture Note immediately due and payable;

PNC18715

- 29 -

149642

(3) declare the System's obligations hereunder to be, whereupon the same shall become, immediately due and payable; and

(4) exercise, or cause to be exercised, any and all such remedies as it may have under this Agreement or any other document or at law or in equity.

(b) Upon the occurrence of an Event of Default under Section 7.01(f), all of the Obligated Group's obligations hereunder shall automatically become immediately due and payable.

Section 7.03. <u>Waivers; Consents</u>. No waiver of, or consent with respect to, any provision of this Agreement shall in any event be effective unless the same shall be in writing and signed by the Bank, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

Section 7.04. <u>No Waiver; Remedies Cumulative</u>. No failure on the part of the Bank to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; and no single or partial exercise of any right hereunder shall preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies available under any other document or at law or in equity.

Section 7.05. <u>Set-Off</u>. Upon the occurrence and during the continuance of any Event of Default, the Bank is hereby authorized at any time and from time to time without notice to the System (any such notice being expressly waived by the System) and, to the fullest extent permitted by law, to set off and to apply any and all balances, credits, deposits (general or special, time or demand, provisional or final), accounts or moneys at any time held and other indebtedness at any time owing by the Bank to or for the account of the System against any and all of the obligations of the System now or hereafter existing under this Agreement or any other agreement or instrument delivered by the System to the Bank in connection therewith, whether or not the Bank shall have made any demand hereunder or thereunder and although such obligations may be contingent or unmatured. The rights of the Bank under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Bank may have.

ARTICLE VIII

PNC18716

MISCELLANEOUS

Section 8.01. <u>Notices</u>. All notices and other communications provided for hereunder shall be in writing and sent by United States certified or registered mail, return

- 30 -

AH- 13706

148642

receipt requested, or by telegraph, telex, telecopier or private delivery service, addressed as follows:

If to the Bank:

PNC Bank, National Association
One PNC Plaza, 5th Floor
Fifth Avenue and Wood Street
Pittsburgh, Pennsylvania 15222

Attention:  Manager, Health Care Group


If to the System:

c/o AHERF
503 Martindale Street
Pittsburgh, Pennsylvania  15212

Attention:  Vice President-Treasury


If to the Depositary:

PNC Bank, National Association
Corporate Trust Department
One Oliver Plaza
23rd Floor
Pittsburgh, Pennsylvania 15222

Attention:  Fred Deramo, Vice President


Either party hereto and the Depositary may change the address to which notices to it are to be sent by written notice given to the other persons listed in this Section.  All notices shall, when mailed as aforesaid, be effective on the date indicated on the return receipt and all notices given by other means shall be effective when received.

Section 8.02.  Successors and Assigns.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.  The System may not assign its rights under this Agreement without the prior written consent of the Bank.

Section 8.03.  Survival.  All representations, warranties, covenants and agreements made by the System and the other Members of the Obligated Group herein and in any document delivered pursuant hereto shall survive the delivery of this Agreement and any advances under the Letter of Credit and shall continue in full force and effect until payment in full of all of the obligations of the System hereunder, it being understood that the agreements of the System found in Sections 2.06 and 8.05 hereof

PNC18717

143642

shall survive the payment in full of any other obligations of the System hereunder.

Section 8.04.  Counterparts.  This Agreement may be executed in any number of counterparts, with each executed counterpart constituting an original and all counterparts together constituting one agreement.

Section 8.05.  Costs, Expenses and Taxes.  The System agrees to pay on demand all costs and expenses of the Bank (including, without limitation, the reasonable fees and out-of-pocket expenses of counsel for the Bank) in connection with (a) the negotiation, preparation, execution, delivery, administration, termination or the like of this Agreement, the Letter of Credit and any other documents that may be delivered in connection with this Agreement or the Related Documents including, without limitation, any waiver or consent hereunder or thereunder or any amendments hereto or thereto, (b) any Event of Default or alleged Event of Default or the enforcement or interpretation of this Agreement and such other documents and (c) required deliveries by the Bank and or the Bank's parent corporation to Merrill Lynch and/or purchasers of Commercial Paper Notes of documents and filings made with the Securities and Exchange Commission and any and all publicly available financial information.  In addition, the System shall pay any and all stamp, transfer, documentary and other taxes, assessments, charges and fees payable or determined to be payable in connection with the execution and delivery of this Agreement and such other documents and agrees to indemnify and to hold the Bank harmless from and against any and all liabilities with respect to or resulting from any delay in paying or omitting to pay such taxes, assessments, charges and fees, provided the Bank promptly notifies the System of any such taxes, assessments, charges and fees.

Section 8.06.  Amendments.  This Agreement may be amended by an instrument in writing executed and delivered by the System, on behalf of itself and each of the Members of the Obligated Group, and the Bank.

Section 8.07.  Severability; Interest Limitation.  If any provision hereof is found by a court of competent jurisdiction to be prohibited or unenforceable in any jurisdiction, it shall be ineffective in such jurisdiction only to the extent of such prohibition or unenforceability, and such prohibition or unenforceability shall not invalidate the balance of such provision in such jurisdiction to the extent it is not prohibited or unenforceable, nor invalidate such provision in any other jurisdiction, nor invalidate the other provisions hereof, all of which shall be liberally construed in favor of the Bank in order to effect the provisions of this Agreement.  Notwithstanding anything to the contrary herein contained, the total liability of the System for payment of interest pursuant hereto shall not exceed the maximum amount, if any, of such interest permitted by applicable law to be contracted for, charged or received, and if

AH- 13708

PNC18718

148642

any payments by the System to the Bank include interest in excess
of such a maximum amount, the Bank shall apply such excess to the
reduction of the unpaid principal amount due pursuant hereto, or
if none is due, such excess shall be refunded to the System;
provided that, to the extent permitted by applicable law, in the
event the interest is not collected, is applied to principal or
is refunded pursuant to this sentence and interest thereafter
payable pursuant hereto shall be less than such maximum amount,
then such interest thereafter so payable shall be increased up to
such maximum amount to the extent necessary to recover the amount
of interest, if any, theretofore uncollected, applied to
principal or refunded pursuant to this sentence.  Any such
application or refund shall not cure or waive any Event of
Default.  In determining whether or not any interest payable
under this Agreement exceeds the highest rate permitted by law,
any non-principal payment (except payments specifically stated in
this Agreement to be "interest") shall be deemed, to the extent
permitted by applicable law, to be an expense, fee, premium or
penalty rather than interest.

     Section 8.08.  Complete Agreement.  Taken together with the
other instruments and documents delivered in compliance herewith,
this Agreement is a complete memorandum of the agreement of the
System and the Bank.  Waivers or modifications of any provision
hereof must be in writing signed by the party to be charged with
the effect thereof.

     Section 8.09.  Consent to Jurisdiction; Venue; Waiver of
Jury Trial.  The System and the Bank hereby irrevocably (i) agree
that any suit, action or other legal proceeding arising out of or
relating to this Agreement may be brought in any federal or state
court located in Pittsburgh, Pennsylvania and consent to the
jurisdiction of such court in any such suit, action or proceeding
and (ii) waive any objection which either of them may have to the
laying of venue of any such suit, action or proceeding in any
such court and any claim that any such suit, action or proceeding
has been brought in an inconvenient forum.  The System hereby
irrevocably consents to the service of any and all process in any
such suit, action or proceeding by mailing of copies of such
process to the System at its address provided in Section 8.01.
The System agrees that a final judgment in any such action or
proceeding shall be conclusive and may be enforced in other
jurisdictions by suit on the judgment or in any other manner
provided by law.  All mailings under this Section shall be by
certified mail, return receipt requested.  Nothing in this
Section shall affect the right of the Bank to serve legal process
in any other manner permitted by law or affect the right of the
Bank to bring any suit, action or proceeding against the
Obligated Group or its property in the courts of any other
jurisdiction.  THE SYSTEM AND THE BANK HEREBY WAIVE THE RIGHT TO
TRIAL BY JURY IN ANY ACTION ARISING HEREUNDER OR OTHERWISE IN
CONNECTION HEREWITH.

PNC18719

- 33 -

AH 13700

148642

Section 8.10.  <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania without reference to its principles of conflicts of law.

Section 8.11.  <u>Participation</u>.  Notwithstanding any other provision of this Agreement, the System understands that the Bank may at any time enter into participation agreements with one or more other participating banks (such other participating banks are hereinafter referred to as "Participating Banks") whereby the Bank will allocate to the Participating Banks certain percentages of the payment obligations of the System under this Agreement and the funding obligations of the Bank under the Letter of Credit. Notwithstanding such allocations to Participating Banks, the Bank shall remain obligated by the terms of this Agreement.  The System acknowledges that, for the convenience of all parties, the System's obligations under this Agreement are and will be undertaken for the benefit of, and as an inducement to, the Participating Banks as well as the Bank.  Without limiting the foregoing, the System acknowledges that Sections 2.02(d) and 2.05 and the indemnity of the Bank under Section 8.05 are for the benefit of the Participating Banks as if such Sections specifically referred to the Participating Banks and their participations in the payment obligations of the System and the funding obligations of the Bank, and the System agrees to make any payments required by such provisions for the account of any one or more Participating Banks to the Bank on demand of the Bank.  The System hereby grants to each Participating Bank, to the extent of its participation and to the extent permitted by applicable law, the right to set off deposit accounts maintained by the System with such bank as if the Participating Banks were specifically referred to therein the date first above written.

Section 8.12.  <u>Headings</u>.  Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose.

PNC18720

- 34 -

AH- 13710

IN WITNESS WHEREOF, the System and the Bank have caused this Letter of Credit, Reimbursement and Security Agreement to be duly executed and delivered as of the date first set forth above.

ATTEST:

ALLEGHENY UNIVERSITY HOSPITALS

By: _____
Name: Charles P Morrison
Title: Treas

PNC BANK, NATIONAL ASSOCIATION

By: _____
Name: Marcie D. Knittel
Title: Vice President
      Health Care Group

PNC18721

AH- 13711

<u>ACKNOWLEDGMENT AND CONSENT</u>

Each of the undersigned, as a Member of the Obligated Group under the Master Trust Indenture dated as of May 15, 1996, among the Obligated Group and Norwest Bank Minnesota, National Association, as Master Trustee (in such capacity the "Master Trustee"), as amended and supplemented by a First Supplemental Master Trust Indenture dated as of May 15, 1996 (as so supplemented and amended the "Master Trust Indenture"), intending to be legally bound, acknowledges and agrees that:

1.  It has reviewed (i) the Letter of Credit, Reimbursement and Security Agreement dated as of June 1, 1996, between Allegheny University Hospitals (the "System") and PNC Bank, National Association, (ii) the 1996E Master Indenture Note and (iii) the 1996G Master Indenture Note (collectively the "Notes") issued under the Master Trust Indenture by the System and hereby consents to the execution and delivery of the same and the transactions relating thereto;

2.  It is a Member of the Obligated Group and derives substantial benefits in such capacity; and

3.  It shall be jointly and severally liable for all obligations of the System under the Notes.

ATTEST:                          ALLEGHENY UNITED HOSPITALS, INC.

By: _____
                                 Name:
                                 Title:

ATTEST:                          ST. CHRISTOPHER'S HOSPITAL FOR
                                 CHILDREN

By: _____
                                 Name:
                                 Title:

PNC18722

AH 13712

ATTEST:                              HORIZON MEDICAL CORPORATION

_____            By: _____
                                        Name:
                                        Title:


ATTEST:                              HAHNEMANN UNIVERSITY HOSPITAL

_____            By: _____
                                        Name:
                                        Title:


        ATTEST:                      ALLEGHENY UNIVERSITY FOR HEALTH
SCIENCES

_____            By: _____
                                        Name:
                                        Title:


PNC18723

- 2 -

AH- 13713

148642

PNC BANK, NATIONAL ASSOCIATION
IRREVOCABLE LETTER OF CREDIT
NO. A-308180

June 19, 1996

PNC Bank, National Association,
  as Depository
Corporate Trust Department
One Oliver Plaza, 27th Floor
Pittsburgh, PA  15222

Attention: Fred Deramo

    RE:  Allegheny University Hospitals $54,194,000 in Aggregate
        Principal Amount of Commercial Paper Notes

Ladies and Gentlemen:

    1.    PNC Bank, National Association, as Depository in trust
for and on behalf of the holders of Commercial Paper Notes (the
"Depositary") under the Depository Agreement dated as of June 1,
1996, between the Account Party (as defined herein) and the
Depositary pursuant to which the above-captioned commercial paper
notes are issued, is hereby irrevocably authorized to make
demands for payment under this Irrevocable Letter of Credit No.
A-308180 issued by PNC Bank, National Association (the "Bank"),
for the account of Allegheny University Hospitals (the "Account
Party"), pursuant to the Letter of Credit, Reimbursement and
Security Agreement, dated as of June 1, 1996 (the "Reimbursement
Agreement"), between the Bank and the Account Party, upon the
terms and conditions hereinafter set forth, in an aggregate
principal amount not exceeding $54,194,000 (the "Commitment
Amount").  The Commitment Amount shall from time to time be
reduced or reinstated as provided for in paragraphs 6 and 7
hereof.

    2.    Funds under this Letter of Credit are available to the
Depositary against a certificate, signed by a duly authorized
officer of the Depositary, in the form, appropriately completed
and presented to the Bank as provided in paragraph 3 hereof,
designated below:

        (a)  If the drawing is being made with respect to the
    payment of Commercial Paper Notes at maturity, the
    certificate in the form attached as Annex 1.

PNC18724

Page 1 of 16

AH- 13714

(b)   If the drawing is being made following the occurrence of an Event of Default under the Depositary Agreement, the certificate in the form attached as <u>Annex 2</u>.

Multiple demands for payment, accompanied by completed certificates in the form of <u>Annex 1</u> and <u>Annex 2</u> hereto, may be made hereunder.

3.   All documents presented to the Bank in connection with any demand for payment under this Letter of Credit, as well as all notices and other communications to the Bank in respect hereof, shall be in writing and signed by one of your officers, shall make specific reference to this Letter of Credit by number, shall be to the attention of Letter of Credit Department and shall either (i) be delivered to the Bank at its office at 3rd Floor Annex, 237 Fifth Avenue, Pittsburgh, Pennsylvania 15222, Attention:  Letter of Credit Department, or at any other office that the Bank hereafter designates by written notice delivered to you, or (ii) be sent in the form of a tested telex to Telex No. 866533 (ANSWERBACK:  FIRSTBANK PGH) or such other telex number that may be designated by the Bank by written notice delivered to you, or (iii) be sent in the form of a telecopy transmission of the documents described in clause (i) of this sentence to Telecopier No. 412/762-5960 (with transmission confirmed by call to telephone number 412/762-2798) or such other telecopier and telephone numbers that the Bank hereafter designates by written notice delivered to you.  If a drawing is made by telex or telecopier, it must contain an additional certification by you that originals of the draft and certificate on your letterhead manually signed by one of your officers will be mailed to the Bank concurrently by first class United States mail.

4.   The Bank hereby agrees that demands for payment made under and in compliance with the terms of this Letter of Credit will be duly honored by the Bank (from the Bank's own funds and not directly or indirectly from funds or other assets of the Account Party or any affiliate of the Account Party) upon presentation of the certificate(s) specified in paragraph 2 hereof to the Bank as provided in paragraph 3 hereof on or before the Stated Expiration Date (as defined in paragraph 8 hereof) or earlier termination of this Letter of Credit.  If a demand for payment is made by the Depositary hereunder at or prior to 1:00 p.m. on a Business Day (as hereinafter defined), and if such demand for payment conforms to the terms and conditions hereof, payment shall be made of the amount specified, in immediately available funds, by 4:00 p.m. on the later of (i) that Business Day and (ii) with respect to the payment of Commercial Paper Notes at maturity, the "Maturity Date" set forth in such certificate.  If a demand for payment is made by the Depositary hereunder on a Business Day after 1:00 p.m. and if such demand for payment conforms to the terms and conditions hereof, payment shall be made of the amount specified, in immediately available funds, by 4:00 p.m. on the later of (i) the following Business

PNC18725

AH- 13715

148642

Day and (ii) with respect to the payment of Commercial Paper
Notes at maturity, the "Maturity Date" set forth in such
certificate.  Payment under this Letter of Credit shall be made
by wire transfer or deposit to the Depositary.  As used in this
Letter of Credit, "Business Day" means any day other than (i) a
Saturday or Sunday or (ii) a day on which banking institutions in
Pittsburgh, Pennsylvania, New York, New York, or the city or
cities in which the principal corporate trust office of the
Depositary is located are required or authorized by law
(including executive order) to close.  To the extent practical,
the Depositary shall give the Bank at least one Business Day's
advance written notice (such notice to be sent by facsimile
transmission to the number set forth in paragraph 3 above) of the
amount of each demand for payment of the Commercial Paper Notes
at maturity, but failure of the Depositary to give such notice or
any discrepancies between the amount or other information set
forth in such notice from the amount or other information set
forth in the certificate actually presented to the Bank shall in
no way relieve or otherwise change the obligation of the Bank to
honor properly submitted demands for payment under this Letter of
Credit.  References to any time of day in this Letter of Credit
shall refer to Eastern standard time or Eastern daylight saving
time, as in effect in Pittsburgh, Pennsylvania on such day.

     5.   Only the Depositary may make demands for payment under
this Letter of Credit, and demands for payment under this Letter
of Credit shall be presented directly to the Bank and not
negotiated.  Upon payment of the amount specified in a demand for
payment made hereunder, the Bank shall be fully discharged of its
obligation under this Letter of Credit with respect to such
demand for payment and the Bank shall not thereafter be obligated
to make any further payments under this Letter of Credit in
respect of such demand for payment.  By paying the Depositary an
amount demanded in accordance with this Letter of Credit, the
Bank makes no representation as to the correctness of the amount
demanded or of the calculations and representations of the
Depositary required by this Letter of Credit.

     6.   The Commitment Amount shall be automatically reduced
from time to time as follows:

          (a)  Upon a demand for payment under this Letter of
     Credit, the Commitment Amount shall be reduced by an amount
     equal to the amount of such demand (subject, in certain
     instances, to reinstatement as provided in paragraph 7
     hereof); and

          (b)  Upon the designation by the Account Party of a
     portion of the Commitment Amount as the available amount
     (the "Available Amount"), the Commitment Amount shall be
     reduced, if necessary, so that the Commitment Amount equals
     the Available Amount, and the Account Party and the Bank
     shall issue a certificate in the form of Annex 3 hereto to
     the Depositary to such effect; provided, however, that (i)
     the Commitment Amount shall not be increased to an amount

AH 13716

148642

greater than $54,194,000, and (ii)(A) during any period of time that any Commercial Paper Note is Outstanding, the Commitment Amount shall not be reduced to an amount that is less than the sum of the aggregate face amount of all Commercial Paper Notes then Outstanding plus the principal amount of Unreimbursed Drawings then Outstanding and (B) on the date of issuance of any Commercial Paper Note, the Commitment Amount shall not be less than the sum of the aggregate face amount of all Commercial Paper Notes then Outstanding plus the principal amount of Unreimbursed Drawings then Outstanding, after giving effect to such issuance and the application of the proceeds thereof.  The amount equal to $54,194,000 less the Available Amount shall be the unavailable amount (the "Unavailable Amount").  For purposes of the foregoing calculations, the Bank may rely entirely upon a certificate of the Depositary as to the aggregate face amount of all Commercial Paper Notes then Outstanding. ·

Upon a permanent reduction of the Commitment Amount, the Bank may require the Depositary to surrender this Letter of Credit and to accept, simultaneously in substitution hereof, a substitute Letter of Credit for a Commitment Amount reflecting such permanent reduction, but otherwise identical in form and terms to this Letter of Credit.

7.    The Commitment Amount shall be automatically reinstated from time to time as follows:

(a)    the Commitment Amount of this Letter of Credit shall be automatically reinstated to the full amount of a demand for payment under the Letter of Credit upon the Bank's reimbursement by or on behalf of the Account Party for such drawing (or upon the assignment of proceeds and other funds, in an amount equal to such drawing, of Commercial Paper Notes to be issued on such Business Day pursuant to Section 4(c) of the Depositary Agreement); provided, however, that such amount shall not be reinstated if the Depositary shall have received, and to the extent provided in, a certificate of Event of Default in the form of Annex 4 hereto; and

(b)    subject to the proviso to paragraph 7(a) above, the Commitment Amount of this Letter of Credit shall be automatically reinstated, if necessary, so that the Commitment Amount is equal to the Available Amount as determined above, and the Bank shall issue a certificate in the form of Annex 3 hereto to the Depositary to such effect.

Notwithstanding anything herein to the contrary, a certificate of Event of Default in the form of Annex 4 hereto shall not affect the Bank's obligations under this Letter of Credit with respect to Commercial Paper Notes issued prior to the receipt by the Depositary of such certificate.

PNC18727

Page 4 of 16

AH 13717

148642

8.    This Letter of Credit shall automatically terminate upon the earliest of (i) June 10, 1999 (such date, as extended as provided below, being called the "Stated Expiration Date"), (ii) on the date that (A) the Account Party receives notification from the Depositary that this Letter of Credit has been replaced by a substitute letter of credit and that no Commercial Paper Notes are then Outstanding, or (B) the date on which all Commercial Paper Notes have been paid in full, no additional Commercial Paper Notes are eligible to be issued under the Depositary Agreement and the Bank shall have received notice from the Depositary requesting termination of this Letter of Credit or (C) the fifteenth (15th) calendar day after the Depositary has received written notice from the Bank, in the form of Annex 5 hereto, which notice may be delivered in the manner described in Paragraph 3 hereof, that an Event of Default under and as defined in the Reimbursement Agreement has occurred and is then continuing.  Upon the expiration or termination of this Letter of Credit, the Depositary shall promptly return this Letter of Credit to the Bank for cancellation.  As provided in the Reimbursement Agreement, the Bank, at the request of the Account Party, may give its written consent to periodic extensions of the Stated Expiration Date, each and any such extension to be for at least one year after the then current Stated Expiration Date. The Bank shall deliver to the Depositary a certificate in the form of Annex 6 hereto evidencing each extension of the Stated Expiration Date.

9.    The Depositary may transfer its rights under this Letter of Credit in their entirety (but not in part) to any transferee who, in accordance with the provisions of the Depositary Agreement, has succeeded to the Depositary as depositary under the Depositary Agreement (and any such transferee shall, upon the effectiveness of such transfer, be deemed to be the Depositary for purposes of this Letter of Credit) and such transferred rights may be successively transferred.  Transfer of the available demands for payment under this Letter of Credit to any such transferee shall be effected upon the presentation of this Letter of Credit to the Bank for endorsement hereon of such transfer accompanied by a transfer letter, in the form of Annex 7 hereto, executed by the Depositary and such transferee.

10.  This Letter of Credit is subject to the Uniform Customs and Practice for Documentary Credits (1993 Revision), International Chamber of Commerce, Publication No. 500 (the "Uniform Customs"), other than Article 48(g) thereof.  This Letter of Credit shall be deemed to be a contract made under the laws of the Commonwealth of Pennsylvania, including, without limitation, Article 5 of the Uniform Commercial Code as in effect in the Commonwealth of Pennsylvania, and shall, as to matters not governed by the Uniform Customs, be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to principles of conflicts of law.

PNC18728

AH- 13718

11.   This Letter of Credit sets forth in full the terms of the Bank's undertaking, and this undertaking shall not in any way be modified, amended, amplified or limited by reference to any document, instrument or agreement referred to herein or in which this Letter of Credit is referred to or to which this Letter of Credit relates, except only the drafts and certificates referred to herein; and any such reference shall not be deemed to incorporate herein by reference any document, instrument or agreement, except such drafts and certificates.  All drafts and certificates referred to herein that are presented to the Bank from time to time shall become an integral part of this Letter of Credit and shall be binding on any transferee permitted by the terms of this Letter of Credit.

                            Very truly yours,

                            PNC BANK, NATIONAL ASSOCIATION


                            By:_____
                                  Authorized Officer

PNC18729

                                              AH- 13719

148642

Annex 1
to Irrevocable
Letter of Credit
No. A-308180

<u>CERTIFICATE FOR A DRAWING AT MATURITY</u>

TO:  PNC Bank, National Association
     3rd Floor Annex
     237 Fifth Avenue
     Pittsburgh, PA  15222
     Attention: Letter of Credit Department

     Re:  Irrevocable Letter of Credit No. A-308180

     The undersigned hereby certifies to PNC Bank, National
Association (the "<u>Bank</u>"), with reference to Irrevocable Letter of
Credit No. A-308180 (the "<u>Letter of Credit</u>") issued by the Bank
in favor of PNC Bank, National Association, as Depositary (the
"<u>Depositary</u>") and for the account of Allegheny University
Hospitals (the "<u>Account Party</u>"), that the undersigned is a duly
authorized officer of the Depositary, that any capitalized term
used but not defined herein shall have its respective meaning set
forth in the Letter of Credit and that:

     1.   The Depositary is the Depositary under the
Depositary Agreement.

     2.   Pursuant to Section 6(a)(i) of the Depositary
Agreement, the Depositary is making a drawing of $_____
under the Letter of Credit with respect to the payment of
Commercial Paper Notes due and payable at maturity on
_____ (the "Maturity Date").

     3.   The amount of this drawing does not exceed the
Commitment Amount.

     4.   Upon receipt of the amount demanded, the
Depositary will apply the same directly to the amount due
and payable on the Commercial Paper Notes.

     5.   If this Certificate and the accompanying draft are
initially presented by telex or telecopier, the originals of
such draft and this Certificate on the Depositary's
letterhead manually signed by one of its officers are being
mailed to you concurrently by first class United States
mail.

     Please [deposit/wire transfer/remit by check] the amount of
the accompanying draft [in our account number _____ with
_____ to _____, ABA Number _____, Account Number _____,
Re:_____].

PNC18730

AH- 13720

148642

        IN WITNESS WHEREOF, the Depositary has executed and
delivered this Certificate as of the ___ day of _____, ____.

                          PNC BANK, NATIONAL ASSOCIATION,
                          as Depositary


                          By:_____
                          Title:

\H-13721

PNC18731

148642

Annex 2
to Irrevocable
Letter of Credit
No. A-308180

<u>CERTIFICATE FOR A DRAWING FOLLOWING AN EVENT OF DEFAULT</u>

TO:    PNC Bank, National Association
       3rd Floor Annex
       237 Fifth Avenue
       Pittsburgh, PA  15222
       Attention: Letter of Credit Department

       Re:  Irrevocable Letter of Credit No. A-308180

     The undersigned hereby certifies to PNC Bank, National
Association (the "<u>Bank</u>"), with reference to Irrevocable Letter of
Credit No. A-308180 (the "<u>Letter of Credit</u>") issued by the Bank
in favor of PNC Bank, National Association, as Depositary (the
"<u>Depositary</u>") and for the account of Allegheny University
Hospitals (the "<u>Account Party</u>"), that the undersigned is a duly
authorized officer of the Depositary, that any capitalized term
used but not defined herein shall have its respective meaning set
forth in the Letter of Credit and that:

          1.   The Depositary is the Depositary under the
     Depositary Agreement.

          2.   Pursuant to Section 6(a)(ii) of the Depositary
     Agreement, the Depositary is making a drawing of $_____
     under the Letter of Credit with respect to a Default.

          3.   The amount of this drawing does not exceed the
     Commitment Amount.

          5.   Upon receipt of the amount demanded, the
     Depositary will deposit the same directly to the Special
     Account pursuant to Section 6(a)(ii) of the Depositary
     Agreement.

          6.   If this Certificate and the accompanying draft are
     initially presented by telex or telecopier, the originals of
     such draft and this Certificate on the Depositary's
     letterhead manually signed by one of its officers are being
     mailed to you concurrently by first class United States
     mail.

     Please [deposit/wire transfer/remit by check] the amount of
the accompanying draft [in our account number _____ with
_____/to _____, ABA Number _____, Account Number _____,
Re:_____].

PNC18732

AH- 13722

148642

IN WITNESS WHEREOF, the Depositary has executed and delivered this Certificate as of the ___ day of _____, ____.

PNC BANK, NATIONAL ASSOCIATION, as Depositary

By:_____
Title:

PNC18733

AH- 13723

148642

### CERTIFICATE FOR ADJUSTMENT OF COMMITMENT AMOUNT

TO:   PNC Bank, National Association,
         as Depositary
      Corporate Trust Department
      One Oliver Plaza, 27th Floor
      Pittsburgh, PA  15222
      Attention: Fred Deramo, Vice President


      Re:  Irrevocable Letter of Credit No. A-308180

     The undersigned hereby certifies to PNC Bank, National
Association, as Depositary (the "Depositary"), with reference to
Irrevocable Letter of Credit No. A-308180 (the "Letter of
Credit") issued by PNC Bank, National Association (the "Bank") in
favor of the Depositary and for the account of Allegheny
University Hospitals, that the undersigned is a duly authorized
officer of the Account Party, that any capitalized term used but
not defined herein shall have its respective meaning set forth in
the Letter of Credit and that:

     The Commitment Amount of the Letter of Credit is hereby
**[reduced] [reinstated]** to _____.

     IN WITNESS WHEREOF, the undersigned has executed and
delivered this Certificate as of the ___ day of _____, ____.

                         ALLEGHENY UNIVERSITY HOSPITALS


                         By:_____
                         Title:

Acknowledged:

PNC BANK, NATIONAL ASSOCIATION,
as issuer of the Letter of Credit


By:_____
Title:

PNC18734

AH- 13724

148642

Annex 4
to Irrevocable
Letter of Credit
No. A-308180

CERTIFICATE OF NO ISSUANCE NOTICE
UNDER THE DEPOSITARY AGREEMENT

TO:   PNC Bank, National Association,
         as Depositary
      Corporate Trust Department
      One Oliver Plaza, 27th Floor
      Pittsburgh, PA  15222
      Attention: Fred Deramo, Vice President

      Re:   Irrevocable Letter of Credit No. A-308180

      The undersigned hereby certifies to PNC Bank, National
Association, as Depositary (the "Depositary"), with reference to
Irrevocable Letter of Credit No. A-308180 (the "Letter of
Credit") issued by PNC Bank, National Association (the "Bank") in
favor of the Depositary and for the account of Allegheny
University Hospitals (the "Account Party"), that an Event of
Default has occurred and is now continuing under the Letter of
Credit, Reimbursement and Security Agreement dated as of June 1,
1996 (the "Reimbursement Agreement"), between the Bank and the
Account Party so that the Commitment Amount of the Letter of
Credit shall not be reinstated.  The Bank further instructs the
Depositary to cease issuing Commercial Paper Notes because the
issuance of Commercial Paper Notes is prohibited by the
provisions of Section 4(e) of the Depositary Agreement.

      IN WITNESS WHEREOF, the Bank has executed and delivered this
Certificate as of the ___ day of _____, ____.

                          PNC BANK, NATIONAL ASSOCIATION


                          By:_____
                          Title:

                                                    PNC18735

148642

Annex 5
to Irrevocable
Letter of Credit
No. A-308180

CERTIFICATE NOTIFYING DEPOSITARY OF
EVENT OF DEFAULT UNDER REIMBURSEMENT AGREEMENT

TO:

PNC Bank, National Association,
    as Depositary
Corporate Trust Department
One Oliver Plaza, 27th Floor
Pittsburgh, PA  15222
Attention: Fred Deramo, Vice President

    Re:  Irrevocable Letter of Credit No. A-308180

    The undersigned hereby (i) certifies to PNC Bank, National Association, as Depositary (the "Depositary"), with reference to Irrevocable Letter of Credit No. A-308180 (the "Letter of Credit") issued by PNC Bank, National Association (the "Bank") in favor of the Depositary and for the account of Allegheny University Hospitals (the "Account Party"), that an Event of Default has occurred and is now continuing under the Letter of Credit, Reimbursement and Security Agreement dated as of June 1, 1996, between the Bank and the Account Party and (ii) instructs the Depositary to make a drawing under the Letter of Credit in an amount equal to the aggregate amount required to pay the aggregate face amount of all Outstanding Commercial Paper Notes. The Bank further notifies the Depositary that (i) pursuant to paragraph 7 of the Letter of Credit, any now outstanding reductions in the Commitment Amount of the Letter of Credit on account of payment of Commercial Paper Notes at maturity will not be reinstated and (ii) pursuant to paragraph 8(ii)(C) of the Letter of Credit, the Letter of Credit will terminate effective the fifteenth calendar day next following the receipt by the Depositary of this Certificate.  Upon the termination of the Letter of Credit, the Bank has no obligation to, and will not, honor demands for payment thereunder.

    IN WITNESS WHEREOF, the Bank has executed and delivered this Certificate as of the ____ day of _____, ____.

                PNC BANK, NATIONAL ASSOCIATION,
                as issuer of the Letter of Credit

                By:_____
                Title:

PNC18736

AH-13726

148642

Annex 6
to Irrevocable
Letter of Credit
No. A-308180

CERTIFICATE EVIDENCING EXTENSION OF
LETTER OF CREDIT STATED EXPIRATION DATE

TO:  PNC Bank, National Association,
      as Depositary
      Corporate Trust Department
      One Oliver Plaza, 27th Floor
      Pittsburgh, PA  15222
      Attention: Fred Deramo, Vice President

      Re:  Irrevocable Letter of Credit No. A-308180

      The undersigned hereby certifies to PNC Bank, National
Association, as Depositary (the "Depositary"), with reference to
Irrevocable Letter of Credit No. A-308180 (the "Letter of
Credit") issued by PNC Bank, National Association (the "Bank") in
favor of the Depositary and for the account of Allegheny
University Hospitals (the "Account Party"), that, at the request
of the Account Party, the Bank has agreed to extend the Stated
Expiration Date of the Letter of Credit from _____ to
_____.  This Certificate should be attached to the
Letter of Credit.

      IN WITNESS WHEREOF, the Bank has executed and delivered this
Certificate as of the _____ day of _____, _____.

                              PNC BANK, NATIONAL ASSOCIATION


                              By:_____
                              Title:

                                                        PNC18737

AH-13727

148642

Annex 7
to Irrevocable
Letter of Credit
No. A-308180

## FORM OF TRANSFER LETTER

_____, ____

TO:  PNC Bank, National Association
     3rd Floor Annex
     237 Fifth Avenue
     Pittsburgh, PA  15222
     Attention: Letter of Credit Department

     Re:  Irrevocable Letter of Credit No. A-308180

Ladies and Gentlemen:

     For value received, the undersigned beneficiary hereby
irrevocably transfers to:

     (Name of Transferee)
     (Address)

all rights of the undersigned beneficiary to make demands for
payment under the above-referenced transferable letter of credit
(the "Letter of Credit") in its entirety.  Said transferee has
succeeded the undersigned beneficiary as Depositary under the
Depositary Agreement dated as of June 1, 1996 among Allegheny
University Hospitals and the undersigned pursuant to which
Allegheny University Hospitals may issue and sell up to
$54,194,000 aggregate face amount of its Commercial Paper Notes
outstanding at any one time.

     By this transfer, all rights of the undersigned beneficiary
in the Letter of Credit are transferred to the transferee and the
transferee shall have the sole rights as beneficiary thereof,
including sole rights relating to any amendments (whether
increases or extensions or other amendments) of the Letter of
Credit and whether now existing or hereafter made.  All
amendments of the Letter of Credit are to be advised directly to
the transferee without the necessity of any consent of or notice
to the undersigned beneficiary.

PNC18738

AH- 13728

143642

 The Letter of Credit is returned herewith.  We ask that you
endorse the transfer on the reverse side of the Letter of Credit
and forward the Letter of Credit directly to the transferee with
your customary notice of transfer.

Signature Authenticated:          Very truly yours,

                                  PNC BANK, NATIONAL ASSOCIATION,
                                  as Depositary
_____
(Bank)

                                  By:_____
_____         Title:
(Authorized Signature)


Signature Authenticated:          **[NAME OF TRANSFEREE]**, as
                                  Depositary
_____
(Bank)

                                  By:_____
_____         Title:
(Authorized Signature)

PNC18739

\H- 13729

EXHIBIT  0347

EXECUTION COPY

## AMENDMENT NO. 1 TO
## REIMBURSEMENT AND SECURITY AGREEMENT

AMENDMENT dated as of *Jan 1*, 1997 to the Reimbursement and Security Agreement dated as of April 1, 1995 (the "**Agreement**") among ALLEGHENY GENERAL HOSPITAL (AGH), Allegheny-Singer Research Institute (ASRI), and MORGAN GUARANTY TRUST COMPANY OF NEW YORK, as Bank (the "**Bank**").

### W I T N E S S E T H :

WHEREAS, the parties hereto have heretofore entered into the Agreement; and

WHEREAS, the parties hereto desire to amend the Agreement as provided herein.

NOW, THEREFORE, the parties hereto agree as follows:

SECTION 1. *Definitions; References.* Unless otherwise specifically defined herein, each term used herein which is defined in the Agreement has the meaning assigned to such term in the Agreement. Each reference to "hereof", "hereunder", "herein" and "hereby" and each other similar reference and each reference to "this Agreement" and each other similar reference contained in the Agreement shall, after this Amendment becomes effective, refer to the Reimbursement and Security Agreement as amended hereby.

SECTION 2. *Amendment to Section 7(b)(i) of the Agreement.* The reference to "66 2/3%" in Section 7(b)(i) of the Agreement is amended to read "63%."

SECTION 3. *Amendment to Section 7(b)(ii) of the Agreement.* The reference to "$200,000,000" in Section 7(b)(ii) of the Agreement is amended to read "$160,000,000."

(NY) /dpw-cw/028/27039/061/RSA/amend

DEPOSITION
EXHIBIT
347
AKF

REC'D MAY 9 1997

PNC11239

SECTION 4  *Amendment to Section 7(d)(A) of the Agreement.*  The reference to "1 20" in Section 7(d)(A) of the Agreement is amended to read "1 30."

SECTION 5  *Governing Law*  This Amendment shall be governed by and construed in accordance with the laws of the State of New York.

SECTION 6.  *Effectiveness.*  This Amendment shall become effective as of the date hereof on the date when the parties hereto have executed this Amendment.

(NY)/dpw/cw/023/27009/061/RSA/amend

2

PNC11240

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first above written

ALLEGHENY GENERAL HOSPITAL

By: _____
Title: Treasurer

ALLEGHENY-SINGER RESEARCH INSTITUTE

By: _____
Title: Treasurer

MORGAN GUARANTY TRUST COMPANY
OF NEW YORK

By: _____
Title: Vice President

(NY) /dpw/cw/028/27099/061/RSA/amend

3

PNC11241