# SDN-GHS
## Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date | Reviewed By | | | | Mgmt |
|---|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | Received | FL | C&L | DBR | Other | |
| I. Organizational/corporate matters | | | | | | | | | |
| A. Articles of Incorporation, as amended, of each GHS entity | | | | | X | | | | |
| B. Corporate bylaws, as amended, of each GHS entity structure | | | | | X | | | | |
| C. Good-standing certificates for each GHS entity dated after 8-1-96 | | | | | X | | | | |
| D. List of the names, occupations, employers and dates of appointment of all Directors and corporate officers of each GHS entity | | | | | X | | | | |
| E. Chart of management organization and personnel staffing management position for each GHS entity and for GHS as of 8-1-96 | | | | | | | | | |
| F. Minutes of the Boards of each GHS entity, including minutes of Executive and other Board committees for the current and preceding five fiscal years | | | | | X | | | | |
| G. Minutes of meetings of member/shareholders of each GHS entity (current and preceding five years) | | | | | X | | | | |
| H. Organizational documents of any unincorporated entity under corporate authority of any GHS entity (e.g., hospital auxiliary) | | | | | X | | | | |
| I. List of states where any GHS entity is (or should be) qualified to transact business | | | | | X | | | | |
| J. Conflict of interest policies of each GHS entity and all Board, management and employee disclosure statements submitted pursuant thereto (Last 5 years) | | | | | X | | | | |
| K. List of all the consultants, including auditors, management advisory services, banking/financial advisors, actuaries and legal counsel used by any entity within the GHS structure in the last five years, and amounts paid to each such consultant | | | | | X | | | | |
| L. Description of business purposes, and organizational (legal) status and ownership of additional nonprofit, for-profit or joint venture entities on GHS business unit organization chart | | | | | X | | | | |

1

DEPOSITION EXHIBIT 807 AKF



DBR-DKS-22402

SDN-GHS
Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date | | Reviewed By | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | Received | | FL | C&L | DBR | Other | Mgmt |
| **II. Business Plans and Relationships** | | | | | | | | | | |
| A. Inter-entity contracts (including GHS, HSI and subsidiaries, and GHS Holding Corporation and subsidiaries) | | | | | | X | | | | |
| B. Contracts or transactions with officers, directors, members or shareholders of GHS entities or GHS | | | | | | X | | | | |
| C. Contracts for the sale, lease or acquisition of capital assets (Pending and closed transactions) | | | | | | X | X | | | |
| D. Construction, architect and engineering contracts related to any material projects planned or in progress | | | | | | X | X | | | |
| E. Deeds, contracts and options to purchase, lease or sell land | | | | | | X | | | | |
| F. Partnership or joint venture agreements involving any GHS entity | | | | | | X | | | | |
| G. Any confidentiality agreements and/or covenants restricting competition involving GHS entities (whether benefited or burdened) | | | | | | X | | | | |
| H. Affiliation, general and educational service agreements | | | | | | X | | | | |
| I. Membership or other agreements with groups or entities which engage in peer review, quality review or rate review procedures | | | | | | | | *private attorney* | | |
| J. Membership or other agreements with groups formed to coordinate facilities or services planning | | | | | | | | | | |
| K. Any patient referral and/or patient transport agreements | | | | | | | | | | |
| L. Agreements and/or commitments relating to capital expenditures | | | | | | | | | | |
| M. Agreements relating to loans, advances or investments  (Receivable or Payable) | | | | | | X | | | | |
| N. Performance guaranties | | | | | | X | | | | |

2

DBR-DKS-22403

## SDN-GHS
## Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | | Mgmt |
|---|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other | |
| O. Management, service, consulting or any other similar type of contracts | | | | | X | | | | |
| P. Leases of real property and personal property (Lessor or lessee) | | | | | X | | | | |
| Q. A schedule of all patents, patent applications, trademarks, service marks, trade names and copyrights | | | | | | | | | X |
| R. Agreements relating to fund raising | | | | | | | | | X |
| S. Agreements relating to joint purchasing arrangements (including those among affiliated entities, if applicable) | | | | | | | | | |
| T. Business plans or feasibility studies involving any GHS entity (last 5 years) | | | | | | | | | X |
| U. Other material agreements ("Material" contracts or projects are those requiring an expenditure of at least $300,000 or whose duration is more than one year) | | | | | X | | | | |
| III. Market Analysis | | | | | | | | | |
| A. GHS Hospital(s) and competitors | | | Hart - Scott- Rodino | | | | | | |
| 1. Map and/or patient origin data indicating primary and secondary service areas for each hospital | | | | | | | | | |
| 2. Identification of principal competitors (by service) | | | | | | | | | |
| 3. Market share information (if available) for key services | | | | | | | | | |
| 4. Overlap of GHS medical staff with other area providers | | | | | | | | | X |
| 5. List of HMO's, PPO's, pre-paid plans and/or direct contracts with whom GHS has contracts: | | | | | | | | | |
| a. Name of plan and number of enrollees | | | | | | | | | |
| b. Hospital dependence and utilization trends | | | | | | | | | |
| c. Copy of contract with GHS | | | | | | | | | |

DBR-DKS-22404

## SDN-GHS
## Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | |
|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other |
| 6. Major physicians' groups, institution-affiliated surgi-centers and non-traditional free-standing organizations<br>a. Name<br>b. Number in practice<br>c. Hospital dependency<br>d. Age mix/specialty of physicians | | | | | | | | |
| **B. GHS (Academic Relationships)** | | | | | | | | |
| 1. Licensure/accreditation for academic programs<br>a. Identification of requirements<br>b. Dates/results of most recent reviews<br>c. Timeframes for future reviews | | | | | X | | | |
| 2. Joint programs and educational affiliations<br>a. Identification/description of relationships<br>b. Copies of contracts and/or description of obligations, responsibilities and commitments | | | | | | | | |
| 3. Evaluation of State appropriations, grants and/or other support for education and/or research activities | | | | | | | | |
| 4. Financial Aid programs<br>a. Participation in Federal, State and private program (name, funding levels, audit requirements, reporting requirements)<br>b. Student participation in programs (percentage, dollars, dependence, etc.)<br>c. Compliance with requirements and regulations | | | | | X | X | | |

4

DBR-DKS-22405

DBR-DKS-22406

**SDN-GHS**
**Due Diligence Checklist**
**(Revised 8/23/96)**

| Area | Produced By | | | Date Received | Reviewed By | | | | Mgmt |
|---|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other | |
| C. GHS Physician Practice Relationships (including Founders Health Care, Inc.) | | | | | | | | | |
| 1. Legal status of physician organizations, if any (governance, restrictions, agreements) | | | | | X | | | | |
| 2. Consistency/appropriateness of accounting treatment | | | | | | | | | |
| 3. Relationships (loans, leases, payments, sharing of services, etc.) and/or commitments and guarantees (internal and external) | | | | | X | X | | | |
| 4. Operational considerations (decision-making, control, etc.) | | | | | | | | | |
| 5. Copy of most recent financial statements | | | | | | | | | |
| 6. Valuation reports and due diligence reports for acquired physician practices | | | | | X | X | | | |
| D. Graduate Medical Education Programs | | | | | | | | | |
| 1. List of accredited GME programs conducted at GHS (specialty, number of residents, relationships/commitments with other providers for GME) | | | | | | | | | X |
| 2. Accreditation status (timing of reviews, correspondence, deficiencies, probation, etc.) | | | | | | | | | |
| IV. Medical Staff Analysis | | | | | | | | | |
| A. Medical Staff Bylaws and/or Rules and Regulations | | | | | | | | | |
| B. List of members (including medical staff employment/leadership status) | | | | | | | | | X |
| C. Age profile (By specialty/department) | | | | | | | | | |
| D. Top 25 admitters (Last 3 years) including name, age and specialty | | | | | | | | | |
| E. Historical admitting patterns (By specialty/department by payor; last three years) | | | | | | | | | |

5

DBR-DKS-22407

## SDN-GHS
## Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date | Reviewed By | | | | |
|------|:---:|:---:|:---:|:---:|:---:|:---:|:---:|:---:|:---:|
| | GCO | DDL | Other | Received | FL | C&L | DBR | Other | Mgmt |
| F. Board specialization (Category by department/division/specialty, number, board specialized or eligible status, etc.) | | | | | | | | | X |
| G. Contractual relationship of physicians with GHS (e.g., employed, independent contractor, private practice, etc.) Copies of contracts and/or agreements | | | | | X | X | X | | X |
| H. Schedule describing all formal medical staff grievance proceedings in the last five years and all pending proceedings. | | | | | X | | | | |
| V. Research (Section may be N/A if GHS does not conduct significant sponsored research) | | | | | | | | | |
| A. Schedule showing active grant awards (including recipient, principal investigator, amount, terms and conditions) | | | | | | | | | X |
| B. Types of research being conducted (narrative) | | | | | | | | | X |
| C. Level/nature of funding (Federal/State/Local government, Private, Internal, Affiliated research activity with other institutions) | | | | | | | | | X |
| D. Documentation, audit reports, cost rate proposals, etc. including required compliance with reporting and regulatory matters | | | | | | | | | X |
| E. Copy of research protocols | | | | | | | | | X |
| F. Copy of Institutional Review Board (IRB) Bylaws | | | | | | | | | X |
| G. Copies of recent HHS and PHS site visit reports | | | | | | | | | X |
| VI. Tax Matters | | | | | | | | | |
| A. Federal, state and local tax exemption determination letters and applications therefore, including income taxes, property taxes and sales/use taxes | | | | | X | | | | X |

6

SDN-GHS
Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | | Mgmt |
|---|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other | |
| B. Copies of all returns (1120, 990 and 990T) for latest closed and all open years (federal, state and local) for all entities of GHS and any joint ventures of which any entity within the GHS system is partner or venturer | | | | | | | | | X |
| C. Status of required compliance/reporting for employment/wage tax matters (including any audit reports, correspondence or assessments related thereto) | | | | | | | X | | X |
| D. Tax reviews and/or audits and copies of any documentation relating thereto | | | | | X | | | | X |
| E. Current and pending revenue agents' reports and proposals (federal, state and local) | | | | | X | | | | X |
| F. Settlement documents and correspondence, memos, protests, briefs, etc. for last five years | | | | | | | | | X |
| G. Agreements waiving or extending statute of limitations | | | | | | | | | X |
| H. Copies of all IRS powers of attorney | | | | | | | | | X |
| I. Documentation concerning current property tax assessments and/or payments in lieu of such taxes | | | | | | | | | X |
| J. Information and documentation concerning all loans, leases, income guarantees, loan guarantees or other transactions with individuals | | | | | | | | | X |
| K. Documents relating to charitable solicitation and charitable trust registrations | | | | | X | | | | X |
| VII. Financial Statements and General Financial Data | | | | | | | | | |
| A. Financial Statements and Financial Reporting | | | | | | | | | |
| 1. Separate or consolidated and consolidating audited financial statements, and auditors' management letters for the last three years | | | | | | X | | | X |
| 2. Current unaudited interim statements, with comparable statements for prior year | | | | | | | | | X |

DBR-DKS-22408

7

## SDN-GHS
## Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | |
|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other |
| 3. Correspondence with external auditors (including agendas, exit conferences, debt compliance letters, etc.) for the last three years | | | | | | X | | |
| 4. Letters to auditors with management representations for the last five years | | | | | | X | | |
| 5. Auditors' inquiry letters to attorneys and attorney's replies thereto for last five years | | | | | X | | | |
| 6. Documents relating to terms of compliance with all restricted gifts and endowments | | | | | | | | |
| 7. Documents relating to requirements of distributions from all development foundations or affiliated trusts or organizations | | | | | | | | |
| 8. List of pending pledges, gifts and bequests, if any | | | | | | | | |
| 9. Research and/or other rate notification documents | | | | | | | | |
| B. Financings | | | | | | | | |
| 1. Schedule of all outstanding debt (all GHS entities) | | | | | X | | | |
| 2. Copies of all transcripts (bound or unbound) related to any issue of tax-exempt bonds issued for the benefit of any GHS Entity, including bonds that have been defeased | | | | | X | | | |
| 3. Copies of all agreements with commercial banks or other lending institutions whereby outstanding lines of credit (whether or not drawn) or loans have been made to any GHS Entity | | | | | X | | | |
| 4. Copies of all guarantees whereby a GHS Entity has guaranteed the debt of another party (including any indebtedness of GHS) | | | | | X | | | |
| 5. Copies of all subordinated notes and debentures of all GHS Entities | | | | | X | | | |

8

DBR-DKS-22409

DBR-DKS-22410

**SDN-GHS**
**Due Diligence Checklist**
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | |
|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other |
| 6. Documentation underlying any federal, state or local construction grants and any related compliance reports | | | | | | | | |
| 7. Copies of all purchase money mortgage agreements, capital leases (if not described above), mortgages, deeds of trust, or other security instruments | | | | | X | X | | |
| 8. Copies of all Financing Statements filed under the UCC with any required local government bodies (Prothonotary in PA) and with the State Authorities (FL to undertake a "UCC Search") | | | | | X | | | |
| C. Assets | | | | | | | | |
| 1. Schedule of all securities, notes receivable and other investments showing date acquired, cost basis and market value | | | | | | | | |
| 2. Schedule of all banking or other depository institutions where accounts are maintained (all GHS entities) | | | | | | | | |
| 3. Accounts receivable analyses (including valuation accounts, reserves and/or third party settlements pending)<br>a. Copy of latest aging schedule (by payor)<br>b. Schedule of accounts receivable<br>c. Schedule of loans, notes and/or accounts receivable from officers, directors, members of affiliated companies | | | | | | | | |
| 4. Analysis of third-party cost report receivables/payables describing make-up of account balances (i.e., cost reports, appeals, etc.), a listing of current year activity and any related reserves | | | | | | | | |
| 5. List and summary description (including original cost, date of purchase and current book value) of all property, equipment and other fixed assets owned or leased and all applicable leases or financing agreements | | | | | | | | |

SDN-GHS
Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other | Mgmt |
| 6. Appraisals of property, equipment and other fixed assets | | | | | | | | | X |
| 7. List of all property-in-kind subject to any donor restrictions | | | | | | | | | X |
| D. Liabilities | | | | | | | | | |
| 1. List of all current liabilities (accounts payable over 5% of total) and all short-term bank and other loans, tax and other accrued expense accounts, and current portion of long-term debt | | | | | | | | | X |
| 2. List of all obligations and liabilities on judgements, decrees, administrative findings or arbitrators' decisions (FL to perform judgement and tax lien search) | | | | | X | | | | |
| 3. Schedule of all deferred credits (identify deferred income taxes, deferred reimbursement matters and other deferrals and potential future liability therefrom), if any | | | | | | | | | |
| 4. Schedule of pension liabilities (vested benefits in excess of or less than pension fund assets) | | | | | | | X | | |
| 5. Schedule of provisions, reserves and contingent liabilities (including actuarial evaluations, as appropriate, for reserve accounts, e.g., workers' compensation) | | | | | X | X | X | TLHST | |
| 6. Correspondence with lenders for the past three years, including compliance reports | | | | | | | | | X |
| 7. Computations demonstrating compliance with covenants in existing financing documents | | | | | | | X | | |
| VIII. Employee Benefit Plans and ERISA | | | | | | | | | |
| A. Qualified retirement plans (plan documents and amendments, trust agreements, insurance contracts, most recent IRS determination letters, valuation and actuarial reports, annual audit reports, summary plan descriptions and summary annual reports) | | | | | | | | | |

10

DBR-DKS-22411

## SDN-GHS
## Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | |
|------|-----|-----|-------|-----|-----|-----|-----|-------|
| | GCO | DDL | Other | | FL | C&L | DBR | Other |
| B. Copies of forms 5500, 5500-C, or 5500-K (including attachments) filed with the IRS or DOL for the last three taxable years for each qualified plan and copies of the most recent summary annual reports, and IRS qualification letter for each plan | | | | | | | X | |
| C. Section 403(b) annuity plans (plan documents, funding vehicle documents, Form 5500, SPDs, etc.) | | | | | | | X | |
| D. Non-qualified deferred compensation arrangements (related documents, 5500s, etc.) | | | | | | | X | |
| E. Flexible benefit plans (cafeteria plan) including plan documents, insurance contracts, SPDs, enrollment material, 5500s etc | | | | | | | | |
| F. Welfare benefit plans (including, where applicable) summary plan description and annual reports | | | | | | | X | |
| G. Voluntary employee beneficiary associations (VEBA's) | | | | | | | X | |
| H. Pension plan terminations/restructuring (last 10 years; any PBGC liabilities related thereto) | | | | | | | X | |
| I. Other post-retirement benefits/commitments (e.g., medical, life insurance, non-pension commitments) | | | | | | X | X | |
| J. Status of pension plan funding and contribution levels | | | | | | X | X | |
| K. Contributions, obligations and/or possible withdrawal liabilities associated with union group health and welfare or retirement programs | | | | | | | X | |
| L. Audits, correspondence, notices, charges, complaints, etc. by IRS, DOL or other regulatory agencies within the last five years | | | | | X | | | |
| IX. Employee Matters | | | | | | | | |
| A. All management and employment agreements/contracts (including termination agreements and consulting arrangements with former employees) | | | | | X | | | |

11

DBR-DKS-22412

**SDN-GHS**
**Due Diligence Checklist**
(Revised 8/23/96)

| Area | Produced By | | | Date | Reviewed By | | | | | Mgmt |
|---|---|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | Received | FL | C&L | DBR | Other | |
| B. Employee manuals and policies (including executive benefits and perquisites) | | | | | | | | | x |
| C. Wage scales and incentive compensation arrangements | | | | | | | | | x |
| D. Descriptions of fringe benefits, perquisites, holiday and vacation policies and/or programs | | | | | | | | | x |
| E. Information about any labor disputes, requests for arbitration, grievance proceedings, etc. during the past three years | | | | | | | | | x |
| F. Copies of EEO-1 reports and Affirmative Action plans for the current and preceding five years | | | | | | | | | |
| G. Copies of all collective bargaining agreements | | | | | x | | x | | |
| H. Description of any ongoing or recently completed organizing campaigns | | | | | | | | | |
| X. Insurance and Risk Management | | | | | | | | | |
| A. Insurance and Self-Insurance | | | | | | | | | |
| 1. Names of insurance brokers used in past five years, with details of coverage placed | | | | | | | | | x |
| 2. Schedule of all insurance policies/ contracts (primary and excess) and self-insurance trusts | | | | | | | | | |
| 3. Organizational documents (Articles of Incorporation, By-laws, etc.), operative agreements (including management agreements and reinsurance agreements), and actuarial reports for captive insurance program (GHS Re) and any self-insurance trusts | | | | | | | | TL:HST HM | |
| 4. Minutes of captive insurance company Board and Committees (include description of Committees and their function | | | | | | | | HM | |
| 5. Financial statements, auditors management letters (if any), actuarial reports and tax status (including all IRS filings) of all self-insurance trusts/captives | | | | | | | | TL:HST HM | |

12

DBR-DKS-22413

## SDN-GHS
## Due Diligence Checklist
### (Revised 8/23/96)

| | Area | Produced By | | | Date Received | Reviewed By | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | GCO | DDL | Other | | FL | C&L | DBR | Other | Mgmt |
| 6. | Other contracts/agreements related to GHS Re including captive insurance policies (all years), reinsurance agreements (all years) and fronting collateral arrangements | | | | | | | | HM | X |
| 7. | Copies of all workers' compensation and unemployment insurance arrangements | | | | | | | X | | X |
| 8. | List of all insurable claims and reserves (including reserve history) established for them | | | | | | | | | X |
| 9. | Review of all contracts which provide either direct insurance coverage or indemnification | | | | | | | | | X |
| 10. | Insurance requirements associated with any long-term debt and any compliance certifications | | | | | | | | | X |
| B. | Risk Management (including professional and general liability, workers compensation, D&O coverage, crime and fiduciary liability) | | | | | | | | | |
| 1. | Documentation/description related to claims management (e.g., reserving practices, defense counsel assignment/performance review, policies/procedures, TPA involvement, personnel/organization charts, etc.) | | | | | | | | | |
| 2. | Loss runs (primary and excess) for the most current and prior two years. Include both open and closed claims | | | | | | | | MM TLHST | |
| 3. | CAT Fund Remittance reports (all years). Including historical payment invoices, surcharge calculation methodology, base rates, tail coverage, etc. | | | | | | | | MM TLHST | |
| 4. | Files documenting employed physician coverage | | | | | | | | | |
| 5. | Files pertaining to notice of claims to CAT Fund and excess insurers; notice of aggregate impairment | | | | | | | | | X |
| 6. | Make available for review all open claim files | | | | | | | | | |

13

DBR-DKS-22414

## SDN-GHS
## Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other | Mgmt |
| **C. Litigation** | | | | | | | | | |
| 1. Complete list of all pending litigation and threatened claims for the past five years, including the nature of the litigation, the amount involved, and the opinion of counsel (as expressed in audit response letters) as to the probable outcome of such litigation and copies of all complaints, counter claims, and answers | | | | | X | | | | |
| 2. Copies of any federal or state court or administrative agency orders or decrees affecting the conduct of the business of any entity within the GHS structure (e.g., antitrust trade practices, environmental problems, contract disputes) | | | | | X | | X | | |
| 3. Copies of correspondence during the last five years relating to any federal or state governmental investigations (e.g., Justice Department, OIG, FTC, SEC, EEOC, DOL, NLRB, etc.) and copies of any consent decrees or applicable injunctions | | | | | X | | X | | |
| 4. List of all investigations being conducted by any government agency | | | | | X | | X | | |
| 5. Correspondence regarding any claim audits by any insurance companies | | | | | | | | | X |
| **IX. Real Estate Matters** | | | | | | | | | |
| A. Examination of underlying documentation (architectural plans, survey results, construction data, etc.) | | | | | | | | | |
| 1. Construction in progress (compared to architect's reports) | | | | | | | | | X |
| 2. Code and regulatory compliance | | | | | | | | | X |
| B. Real Estate Documentation | | | | | | | | | |
| 1. Listing of all real estate owned or leased by any GHS entity | | | | | X | | | | X |

14

DBR-DKS-22415

DBR-DKS-22416

## SDN-GHS
## Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | | Mgmt |
|---|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other | |
| 2. Most recent title insurance policies or title reports for each parcel of real estate owned or leased by each GHS entity (FL to obtain title searches for any parcel for which evidence of title is more than two years old) | | | | | X | | | | |
| 3. Copy of current surveys whether or not prepared in accordance with ALTA Land Survey Standards | | | | | | | | | |
| 4. Statement of current real estate taxes (copies of bills, notices of charges or assessments, documents relating to exempt property) and any related protests | | | | | | | | | |
| 5. Copies of any documents related to GHS condominium arrangements (organization, structure, operations, etc.) | | | | | X | | | | |
| XII. Environmental Compliance | | | | | | | | | |
| A. Description of all actions by governmental authorities pursuant to environmental regulatory provisions, including all investigations, proceedings and orders over the last five years; all actions pending or contemplated and all notices of violation, administrative orders and delayed compliance orders from the federal EPA | | | | | | | | SPEC | |
| B. Copies of PRP (Potentially Responsible Party) "notice letters" issued under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA) | | | | | | | | SPEC | |
| C. Copies of all environmental audit, compliance and/or inspection reports for the last five years | | | | | | | | SPEC | |
| D. Copies of all internal reports relating to compliance with environmental protection laws | | | | | | | | SPEC | |
| E. All current permits under the Clean Air Act, Clean Water Act, Resource Conservation and Recovery Act and similar state and local laws (including any required permits not obtained or expired) | | | | | | | | SPEC | |
| F. Underground Storage tank information and any notifications related thereto | | | | | | | | SPEC | |

# SDN-GHS
## Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | | Mgmt |
|---|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other | |
| G. List of off-site waste disposal facilities used and copies of related contracts, if any | | | | | | | | SPEC | |
| **XIII. Health Provider Matters** | | | | | | | | | |
| A. Licensure | | | | | | | | | |
| 1. Copies of the institutional licenses and required notices for GHS and any other applicable entities. The following are some, but likely not all, of the health provider licenses or notices which are required under state, federal, and local law | | | | | X | | | | |
| a. State (Hospital License, Pharmacy License, Controlled Substances Registration, Certificate of Need/Certificate of Exemption, Department of Nuclear Safety Radioactive Materials License, Boilers) | | | | | | | | | |
| b. Federal (DOJ/DEA) Controlled Substance Registration, Nuclear Regulatory Commission Materials License, Dept. of Treasury, ATF, Industrial Alcohol Users Permit) | | | | | | | | | |
| c. Local (Department of Revenue Certificate of Registration for Local Taxes [for Parking facilities and/or Coffee/gift shop licenses], Hospital license, business licenses, occupancy permits, etc.) | | | | | X | | | | |
| 2. Copies of licensure and accreditation survey reports (JCAHO, Life/Safety, PA license, etc.) for last five years and all correspondence pertaining to survey reports, including exit conference reports and Plans of Correction | | | | | | | | | |
| B. Health Planning | | | | | | | | | |
| 1. Copies of planning permits, letters of nonreviewability or Certificate of Exemption ("COE") for all capital expenditures, changes in bed complement, program changes or major medical equipment purchases in the last five years | | | | | | | | | |
| 2. Copies of pending Certificate of Need ("CON") and COE applications | | | | | | | | | |
| 3. Evidence that all pending CONs and COEs have been contractually committed within required time frames (e.g., twelve or eighteen months) | | | | | | | | | |

16

DBR-DKS-22417

## SDN-GHS
### Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | |
|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other |
| **C.** Reimbursement | | | | | | | | |
| 1. Evidence of the status of GHS hospitals and other provider entities (if any) as a participating provider in major third-party reimbursement programs | | | | | | | | |
| 2. Copies of Medicare and Medicaid cost reports currently in compilation and copies of such cost reports for the last closed year and any open years (including evaluation of appeal items for accounting recognition, exposure and/or possible revenue recovery) | | | | | | | | |
| 3. Medicare and Medicaid audit reports for last three years | | | | | | | | |
| 4. Notice of Provider Reimbursement for last three years | | | | | | | | |
| 5. Intermediary exit conference summaries and reports for last three years | | | | | | | | |
| 6. Contracts with or documents relating to investments in or with or by any "Provider" or "Supplier", as defined for Medicare purposes | | | | | | | | |
| 7. Blue Cross/Blue Shield, HMO, PPO and other third-party insurance agreements | | | | | | | | |
| 8. Description of any fraud and abuse and/or billing-related claims or other regulatory actions pending against GHS arising from government reimbursement | | | | | X | X | | |
| 9. Copies of all current PRO agreements | | | | | | | | |
| 10. Copies of any consultant's reports related to billing, coding, charging and/or regulatory compliance for any GHS entity | | | | | X | X | | |
| **D.** Accreditations | | | | | | | | |
| 1. Copies of JCAHO survey applications, if survey is anticipated within the next six months | | | | | | | | |

DBR-DKS-22418

## SDN-GHS
## Due Diligence Checklist
### (Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | Received | FL | C&L | DBR | Other | Mgmt |
| 2. List of all accreditations received by GHS and all professional or trade association memberships | | | | | | | | | X |
| **E. Hill-Burton Obligations (if any)** | | | | | | | | | |
| 1. Copy of allocation plan | | | | | | | | | X |
| 2. Status of compliance regarding uncompensated care | | | | | | | | | X |
| 3. Copies of any complaints or investigations for three to five years | | | | | | | | | X |
| 4. Opinion from outside consultants (if any) as to compliance for both community service and dollar volume of care | | | | | | | | | X |
| **G. Fraud and Abuse Review** (May be duplicative of contract/business relationship review. However, the following type of contracts should be reviewed for fraud and abuse implications): | | | | | | | | | |
| 1. Partnership arrangements and joint ventures involving any acquired GHS entity | | | | | | | | | |
| 2. Physician compensation arrangements | | | | | | | | | |
| 3. Ambulatory/outpatient services | | | | | | | | | |
| 4. In-home services (including homecare and DME) | | | | | | | | | |
| 5. Lease/sublease arrangements (lessor and lessee) | | | | | | | | | |
| 6. Laboratory services | | | | | | | | | |
| 7. Patient transport/ambulance | | | | | | | | | |
| 8. Management/service contracts | | | | | | | | | |
| 9. Loans to physicians/recruiting and/or retention inducements | | | | | | | | | |
| 10. Purchase or sale of physician practices | | | | | | | | | |
| 11. Patient referral agreements | | | | | | | | | |
| 12. Purchasing contracts (discounts, rebates, etc.) | | | | | X | | | | |

18

DBR-DKS-22419

DBR-DKS-22420

## SDN-GHS
## Due Diligence Checklist
(Revised 8/23/96)

| Area | Produced By | | | Date Received | Reviewed By | | | |
|---|---|---|---|---|---|---|---|---|
| | GCO | DDL | Other | | FL | C&L | DBR | Other |
| **XIV. Physical Facilities** | | | | | | | | |
| A. Results of and responses to site review of facilities (JCAHO, State licensure, environmental, Life Safety, Fire regulations, etc.) | | | | | | | | |
| B. Description of capacity utilization and potential additions/renovations | | | | | | | | |
| **XV. Financial and Accounting Matters** | | | | | | | | |
| A. Access to independent accountant's audit workpapers, current year and prior year, focusing on the following: | | | | | | X | | |
|   1. Year-end audit adjustments | | | | | | | | |
|   2. Audit problems | | | | | | | | |
|   3. Adequacy of reserves | | | | | | | | |
|   4. Risk areas (including accounts receivable valuation, insurance reserves, debt matters, intercompany transactions, related-party matters, etc.) | | | | | | | | |
|   5. Unrecorded liabilities | | | | | | | | |
|   6. Adjustments waived | | | | | | | | |
|   7. "Discretionary" adjustments | | | | | | | | |
|   8. "Valuation" issues | | | | | | | | |
|   9. Unusual journal entries | | | | | | | | |
| B. Description of GHS accounting policies and practices (interim and year-end) | | | | | | | | |
|   1. Appropriateness of GHS's accounting policies and practices | | | | | | | | |
|   2. Revenue recognition and expense accruals | | | | | | | | |
|   3. Valuation allowances | | | | | | | | |
|   4. Cash management | | | | | | | | |
|   5. Fixed asset accounting | | | | | | | | |

19

SDN-GHS
Due Diligence Checklist
(Revised 8/23/96)

| | Area | Produced By | | | Date | Reviewed By | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | GCO | DDL | Other | Received | FL | C&L | DBR | Other | Mgmt |
| 6. | Grant/research accounting | | | | | | | | | X |
| 7. | Charity care accounting/reporting | | | | | | | | | X |
| 8. | Accounting for subsidiary, joint venture and/or affiliate activities | | | | | | | | | |
| C. | Review of financial reporting and accounting controls for GHS | | | | | | | | | |
| 1. | Control environment (including centralized vs. decentralized operations) | | | | | | | | | |
| 2. | Systems and procedures documentation | | | | | | | | | |
| 3. | Cost accounting and method of cost allocation between affiliated entities (if applicable) | | | | | | | | | |
| 4. | Accounts receivable | | | | | | | | | |
| 5. | Purchasing/Accounts payable | | | | | | | | | |
| 6. | Payrolls | | | | | | | | | X |
| 7. | General ledgers | | | | | | | | | |
| 8. | Journal books and entries | | | | | | | | | |
| 9. | Closing procedures | | | | | | | | | |
| D. | Description of GHS patient billing operation(s) and that of other provider entities (if any) | | | | | | | | | |
| 1. | Use of outside contractors | | | | | | | | | |
| 2. | Type of systems | | | | | | | | | |
| 3. | Existing and planned contracts (including upgrades and/or conversions) | | | | | | | | | |

20

DBR-DKS-22421

DBR-DKS-22422

# SDN-GHS
## Due Diligence Checklist
### (Revised 8/23/96)

| Area | Produced By | | | Date | Reviewed By | | | | Mgmt |
|------|------|-----|-------|----------|----|-----|-----|-------|------|
|      | GCO  | DDL | Other | Received | FL | C&L | DBR | Other |      |
| E. Investment/endowments | | | | | | | | | |
| 1. Policies and procedures for management endowment funds and other investments | | | | | | | | | |
|    a. Use of internal or outside investment managers | | | | | | | | | |
|    b. Evaluation of investment performance (versus industry/economic rates) | | | | | | | | | |
|    c. Growth/spending trends for endowments | | | | | | | | | |
| 2. Quasi-endowment/Board-designated funds | | | | | | | | | |
|    a. Board policy for establishing quasi-endowment | | | | | | | | | |
|    b. Nature of quasi-endowment | | | | | | | | | |
| 3. Review of endowment documents and compliance with any restrictions | | | | | | | | | |
| XVI. Information Systems | | | | | | | | | |
| A. Inventory of major hardware | | | | | | | | | |
| B. Listing of operating systems and major applications | | | | | | | | | |
| C. Listing of all software classified as to owned, leased, shared and whether it is an in-house or external application | | | | | | | | | |
| D. Policy/procedure manuals including security administration/overview, systems documentation, backup procedures and business recovery plans | | | | | | | | | |
| E. Description of current and planned software development projects | | | | | | | | | |
| F. Schedule of computer equipment and software leases (parties to the lease, significant terms of leases including dollars and key dates, severability/assignment provisions, etc.) | | | | | | | | | |

(DKS:kks/8-23-96/GHSCHECK.DKS)

**EXHIBIT  0822**

MAY-19-98 TUE 03:19 PM    GREG SNOW VP PFSG         FAX NO. 4123305410              P.02

Allegheny Health, Education and Research Foundation
Interoffice Correspondence

**FILE COPY**

## MEMORANDUM

EXHIBIT
**822**
11-14-02

**TO:**      Joseph D. Dionisio
             SVP & CIO, AHERF and SVP & CFO, AGH

**FROM:**    Gregory M. Snow
             Vice President, Financial Services

**DATE:**    October 2, 1995

**SUBJECT:** Pre-July 1, 1995 DVR Write-Offs

***********************************************************************************

This memo will serve to confirm the discussion on Friday, September 29, 1995 at Mr.
McConnell's staff meeting.  My instructions were as follows:

   "Do not write-off any amounts with dates of service prior to July 1, 1995 for any
   reason."

Please contact me if you have any questions.

GMS/cs/
p/ws/gms/jjd-write-off

c: File

**GOV 43691**

**EXHIBIT  0829**

Special Meeting of the Board of Trustees of
Allegheny Health, Education and Research Foundation
Monday, September 16, 1996, 9:00 a.m.
AHERF Board Room
Fifth Avenue Place, Pittsburgh, Pennsylvania
and
Allegheny University of the Health Sciences
Center City President's Conference Room
Philadelphia, Pennsylvania

A special meeting of the Board of Trustees of Allegheny Health, Education and Research Foundation was held on Monday, September 16, 1996 at 9:00 a.m. via videoconference from the AHERF Board Room, Fifth Avenue Place, Pittsburgh, Pennsylvania and the President's Conference Room at Allegheny University of the Health Sciences, Philadelphia, Pennsylvania. The meeting was called pursuant to notice duly given in accordance with the Bylaws to each member of the Board of Trustees. A copy of the notice is appended to the original minutes of this meeting. The following individuals were present:

| MEMBERS PRESENT | OTHER INVITEES | MEMBERS ABSENT |
|---|---|---|
| Sherif S. Abdelhak | Beth Boyer | Dorothy McKenna Brown, Ed.D. |
|  | Calvin Bland | Judith S. Eaton, Ph.D. |
| William F. Adam | Debra Caplan | Leonard T. Ebert |
| Henry G. Allyn, Jr. |  | William H. Genge |
| Barbara F. Atkinson, M.D. | Lynn R. Isaacs | Teresa Heinz |
| J. David Barnes | Donald Kaye, M.D. | Oksana Korzeniowski, M.D. |
| Iain F. S. Black, M.D. | William C. Kennedy, Esq. | Stanley M. Marks, M.D. |
| Ralph W. Brenner, Esq. | David W. McConnell | Joseph C. Maroon, M.D. |
| Douglas D. Danforth | Jean Rocks | Leslie Anne Miller, Esq. |
| Ronald R. Davenport | Leonard L. Ross, Ph.D. | Joseph Neubauer |
| Harry R. Edelman, III | Anthony M. Sanzo | Thomas H. O'Brien |
| Ira J. Gumberg | Cherry S. White | Chryss O'Reilly |
| Robert M. Hernandez | Nancy A. Wynstra, Esq. | J. Brandon Snyder |
| Alfred W. Martinelli |  | Leon C. Sunstein, Jr. |
| Donna M. Murasko, Ph.D. |  | Mark Victor, M.D. |
| Francis B. Nimick, Jr. |  |  |
| Robert B. Palmer |  |  |
| David W. Sculley |  |  |
| W.P. Snyder III |  |  |
| Richard Spielvogel, M.D. |  |  |
| W. Bruce Thomas |  |  |
| Margaret Gray Wood, M.D. |  |  |


DEPOSITION
EXHIBIT
829
AKF

DVR:51236.1

PR-1-000910

Minutes of the Special Meeting of
The Board of Trustees of Allegheny
Health, Education and Research Foundation
September 16, 1996
Page 2

I.    Opening of Meeting

The meeting was called to order by W.P. Snyder, III; Chairman. Nancy A. Wynstra, Esquire maintained the minutes. The Chairman declared that a quorum was present and the meeting was competent to proceed. Mr. Snyder noted that this was the first Board meeting to be held using our interactive video equipment.

II.   Additions to the Agenda

Mr. Snyder noted that the group had received an additional packet, containing material about several items on the agenda, which would be addressed at appropriate points during the meeting.

III.  Greene County Memorial Hospital Management Agreement

Mr. Sanzo discussed the proposed management agreement with Greene County Memorial Hospital ("GCMH"). He stated that it is a 102 bed hospital, which operates 40 beds at any given time. He stressed that a linkage with GCMC has a strategic value as we position ourselves in the regional market. He noted that GCMH has a positive cash position. He also advised the Board that we expect to enter into a separate management contract for the emergency room.

Following discussion and upon motion duly made and seconded, the Board adopted the following resolution:

**WHEREAS, Allegheny Health, Education and Research Foundation ("AHERF") owns and operates a diversified healthcare system ("AHERF System") located primarily in the cities of Philadelphia and Pittsburgh, Pennsylvania, which includes general and specialty hospitals, a network of ambulatory care providers, managed care components, and a health sciences university which includes a medical school; and**

**WHEREAS, Greene County Memorial Hospital ("GCMH") operates a hospital and related healthcare affiliates located in Waynesburg, Greene County, Pennsylvania; and**

**WHEREAS, discussions have been held between representatives of AHERF and GCMH about AHERF assuming the management of day-to-day operation of GCMH pursuant to the terms and conditions of a Management Agreement; and**

**WHEREAS, management believes that entering into a Management Agreement with GCMH will be beneficial to Allegheny General Hospital;**

**NOW THEREFORE, BE IT RESOLVED, by the Board of Trustees of AHERF that the proposed Management Agreement between AHERF and GCMH and its affiliates, in a form**

PR-1-000911

Minutes of the Special Meeting of
The Board of Trustees of Allegheny
Health, Education and Research Foundation
September 16, 1996
Page 3

substantially equivalent to the existing AHERF management agreement with Ohio Valley Medical Center, is hereby approved to be effective October 1, 1996; and

FURTHER RESOLVED, that any inquiries or questions regarding this Management Agreement or any aspect thereof shall be referred to the President and Chief Executive Officers of GCMH and AHERF.

IV.     Delaware Valley Medical Center Management Agreement

Dr. Kaye gave a brief description of the Delaware Valley Medical Center to the Trustees. Delaware Valley Medical Center has been actively seeking a partner for some time and because of the number of primary care practices in their immediate vicinity owned by AIHG, this management contract is a good strategic move for AHERF Delaware Valley. He noted that the contract still needs approval by the Delaware Valley Medical Center System Board. This management contract is very similar to other contracts that AHERF has entered into whereby AHERF would hire their CEO and may or may not hire their CFO. Delaware Valley Medical center will pay a management fee of $1 million, plus expenses to AHERF.

Following discussion and upon motion duly made and seconded, the Board adopted the following resolution:

WHEREAS, Allegheny Health, Education and Research Foundation ("AHERF") owns and operates a diversified healthcare system ("AHERF System") located primarily in the cities of Philadelphia and Pittsburgh, Pennsylvania, which includes general and specialty hospitals, a network of ambulatory care providers, managed care components, and a health sciences university which includes a medical school; and

WHEREAS, Delaware Valley Medical Center ("DVMC") operates a hospital and related healthcare programs and facilities located in suburban Philadelphia in Langhorne, Pennsylvania; and

WHEREAS, discussions have been held between representatives of AHERF and DVMC regarding AHERF providing certain management and support services pursuant to the terms and conditions of a management agreement; and

WHEREAS, management believes that entering into a management contract with DVMC will be beneficial to the AHERF facilities and physicians in the Delaware Valley; and

NOW THEREFORE, BE IT RESOLVED, by the Board of Trustees of AHERF that the proposed Management Agreement between AHERF and DVMC and its affiliates, in

PR-1-000912

Minutes of the Special Meeting of
The Board of Trustees of Allegheny
Health, Education and Research Foundation
September 16, 1996
Page 4

substantially the form of the current contract between AHERF and Ohio Valley Medical Center, is hereby approved to be effective October 1, 1996 or at such other date as shall be agreed upon between AHERF and DVMC; and

FURTHER RESOLVED, that the President and Chief Executive Officer of the Corporation (or his designee) is hereby authorized and directed to negotiate and confirm such final terms and conditions for such Management Agreement as such officer shall deem reasonable and appropriate, and such terms and conditions are hereby ratified and approved; and

FURTHER RESOLVED, that any officer of the Corporation is hereby authorized and directed to do all such things and take all such actions as shall be necessary or appropriate to execute and deliver the Management Agreement in the form approved by the President and CEO, or his designee, and such actions are hereby ratified and approved; and

FURTHER RESOLVED, that any inquiries or questions regarding this Management Agreement or any aspect thereof shall be referred to the President and Chief Executive Officer of AHERF, or his designee and the Chairman of the Partnering Committee of the Board of DVMC.

V.    Consolidation with Forbes Health System

Mr. Abdelhak briefed the Trustees on the consolidation with the Forbes Health System. He stated that this is an important strategic move, and will allow for greater strength in negotiations with payors. Mr. Abdelhak said that he and management have had repeated meetings with Forbes' management and that he would be meeting with their Board on Tuesday, September 17, 1996. He also noted that the Forbes special committee has recommended a consolidation with AHERF.

Mr. McConnell then reviewed issues relative to Medicare recapture and this transaction. He noted that recapture is basically an acceleration of depreciation based on reevaluation of the life of the asset. If the transaction occurs, over the next five years, we could record into income $7+ million. He also noted that there are strict regulatory requirements which must be followed in order for an entity to qualify for recapture and that this transaction is structured in a way which meets the requirements. Mr. Abdelhak stressed that the consolidation with Forbes, whether or not recapture occurs, is an important strategic move on our part.

Following a lengthy discussion and upon motion duly made and seconded, the Board adopted the following resolution:

DVR:51236.1                                    4

PR-1-000913

Minutes of the Special Meeting of
The Board of Trustees of Allegheny
Health, Education and Research Foundation
September 16, 1996
Page 5

WHEREAS, Allegheny Health, Education and Research Foundation ("AHERF") owns and operates a diversified healthcare system ("AHERF System") located primarily in the cities of Philadelphia and Pittsburgh, Pennsylvania, which includes general and specialty hospitals, a network of ambulatory care providers, managed care components, and a health sciences university which includes a medical school; and

WHEREAS, Forbes Health System ("FHS") operates hospitals and related healthcare affiliates located in Allegheny County, Pennsylvania; and

WHEREAS, discussions have been held between representatives of FHS and AHERF about FHS becoming a member of the AHERF System pursuant to the general structure and parameters set forth herein; and

WHEREAS, FHS has independently concluded that substantial changes in circumstances applicable to healthcare systems and providers will result in significant shifts in demand for healthcare services, substantial reductions in payment for healthcare services, and shifts in the mechanisms for financing and delivery of healthcare services; and

WHEREAS, FHS has independently concluded that consolidation of healthcare resources and reductions in healthcare capacity will occur as a result of such changing circumstances; and

WHEREAS, FHS and AHERF have discussed consolidation and both FHS and AHERF have concluded that a consolidation between them would represent an appropriate response to the aforementioned changing circumstances and would be in the best interests of both organizations and the community; and

WHEREAS, AHERF is willing to embrace FHS' community mission and community providers and will commit itself to the advancement of both; and

WHEREAS, as part of the consolidation it is anticipated that FHS will, at a later date, merge into a corporation named Allegheny University Medical Centers ("AUMC"); and

WHEREAS, FHS and AHERF have discussed and conducted arm's length negotiations concerning the terms under which a consolidation between AHERF and FHS will occur, the details of which will be specifically set forth in a Consolidation Plan based on the following principles:

    (a)    Any and all legal agreements entered into by and between FHS and any other party will be honored by AHERF;

PR-1-000914

Minutes of the Special Meeting of
The Board of Trustees of Allegheny
Health, Education and Research Foundation
September 16, 1996
Page 6

(b)    A comprehensive assessment of administrative services will be conducted by the Chief Executive Officers of FHS and AHERF to identify the strongest, most efficient and effective administrative configuration for FHS and AUMC, including evaluation of the relative benefits of membership in the VHA or Premier alliance;

(c)    Programmatic clinical collaboration will be the responsibility of the Chief Executive Officer of FHS and related representatives of the medical staff and their counterparts at other AHERF entities;

(d)    All clinical services which can be effectively provided in the community hospital setting will continue to be maintained there and only those activities that the FHS physicians and management believe cannot be done effectively in the community based hospital will be encouraged to be delivered at Allegheny General Hospital (AGH);

(e)    All FHS physicians who have appropriate training and meet the established credentialing criteria will be welcome to join the medical staff of all other AHERF entities;

(f)    The current anesthesiology, emergency room, pathology and radiology contracts will be maintained to the extent consistent with quality patient care and cost efficiency;

(g)    AHERF's intent is to work with and not supplant the existing medical and surgical specialists of the FHS Medical Staff through its multiple programmatic and facility resources. Working through the established planning process, the FHS Medical Staff leadership will have the opportunity to identify gaps and levels of professional services appropriate for community facilities consistent with the adopted mission;

(h)    Determinations on referrals of patients shall be made exclusively by the patient's responsible physician and it is expected that the physician will do whatever he/she believes is in the best interests of the patient at all times. If referrals are made out of the System, the referring physician will be encouraged to provide an explanation to AHERF so that the System can determine how it can improve to earn the physician's referrals;

(i)    All FHS physicians will be encouraged, but not required, to participate in any and all offerings by AHERF including contracts with insurers and employers;

PR-1-000915

Minutes of the Special Meeting of
The Board of Trustees of Allegheny
Health, Education and Research Foundation
September 16, 1996
Page 7

    (j)    An appropriate assessment will take place regarding the effective operation of Forbes Metropolitan Hospital where it is anticipated that a preventative and rehabilitative outpatient service for geriatrics will be established and operated by the current FHS staff and it is anticipated that AGH and its staff will make referrals as appropriate for the services offered at that facility;

    (k)    AHERF will, to the extent resources are available and community need is present, continue to equip and maintain the FHS facilities in a manner appropriate to community facilities of their size and type, and will allocate no greater amount of corporate overhead to Forbes Metropolitan Hospital, Forbes Regional Hospital, and Forbes Nursing Center than FHS currently allocates.

    (l)    The consolidation will be accomplished using all necessary steps to make the total transaction most beneficial to FHS and to AHERF and to ultimately achieve the desired configuration.

NOW THEREFORE, BE IT RESOLVED, by the Board of Trustees of Allegheny Health, Education and Research Foundation ("AHERF") that the invitation to FHS and affiliates to consolidate with AHERF is hereby ratified, and that the proposed consolidation of FHS and affiliates with AHERF is hereby approved upon adoption of a resolution by the FHS Board accepting the contents and spirit of this resolution and the notice set forth in the reserve powers section hereof; and

FURTHER RESOLVED, that the Board of Trustees of AHERF hereby requests that the Board of Trustees of FHS approve such a resolution and consolidation; and

FURTHER RESOLVED, that upon the approval by the FHS Board of such a resolution and consolidation, then effective immediately and automatically upon the notification by the CEO of FHS to the Chairman of the Board of AHERF of the occurrence of the last to occur of (i) the receipt of final approval of the proposed transaction by the Federal Trade Commission and the Department of Justice or upon the expiration of the required waiting period under the Hart-Scott-Rodino Act, (ii) the expiration of the required waiting period following formal required notification to the Pennsylvania Department of Health, for consummation of the consolidation contemplated by this resolution, and (iii) the completion of a due diligence process covering all information about FHS which AHERF deems relevant to this transaction with all issues identified resolved to AHERF's satisfaction, the Transaction and consolidation as herein described will occur.

FURTHER RESOLVED, that the structure of this Transaction will be in the form of either (1) a purchase of assets of FHS by Allegheny University Medical Centers ("AUMC") or another AHERF subsidiary, or (2) a statutory merger of FHS into AUMC or another AHERF

PR-1-000916

Minutes of the Special Meeting of
The Board of Trustees of Allegheny
Health, Education and Research Foundation
September 16, 1996
Page 8

subsidiary, with the fair market value consideration for the Transaction being the assumption by AUMC or another AHERF subsidiary of the outstanding liabilities of FHS and/or such other consideration as shall be determined to be appropriate by AHERF and FHS.

FURTHER RESOLVED, that after either the purchase or merger, the Articles of Incorporation of FHS shall be amended to either reflect AHERF as the sole Member of AUMC/FHS or to reflect AHERF as the Class "A" Member of FHS and AUMC as the Class "B" Member. Depending on the ultimate form of the Transaction, the Bylaws of AUMC/FHS shall be amended and restated, to render AHERF as the Sole Member of AUMC/FHS with the following reserve powers:

(a)     To appoint and remove, with or without cause, the trustees of the corporation;

(b)     To appoint and remove the Chair of the Board and other officers of the corporation or of any subsidiary corporation;

(c)     To approve the appointment of and to remove the president of the corporation or of any subsidiary corporations;

(d)     To adopt Bylaws and to effect or approve any amendments, alterations or restatements or other revision of the Articles of Incorporation of the corporation and these Bylaws;

(e)     To approve annual capital and operating budgets for the corporation and for any other corporation in which the corporation has a sole, majority, or controlling voting or ownership interest (hereinafter referred to as "subsidiary corporations"), including approval of individual line items of expense and income;

(f)     To approve unbudgeted capital or operating expenditures to be undertaken individually or collectively by the corporation and any subsidiary corporations where the cumulative amount of such unbudgeted expenditures is the lesser of two million dollars ($2,000,000) or ten percent (10%) in excess of the individual or combined approved budgets of the corporation and its subsidiaries;

(g)     To approve borrowing of funds by the corporation from an unrelated person, corporation, or other legal entity, or lending of funds by the corporation to an unrelated person, corporation or legal entity, including capital leases, where the term of the borrowing or lending exceeds one year in duration and where the total amount of the borrowing or lending exceeds One Hundred Thousand Dollars ($100,000).

DVR:51236.1                              8

PR-1-000917

Minutes of the Special Meeting of
The Board of Trustees of Allegheny
Health, Education and Research Foundation
September 16, 1996
Page 9

(h)    To approve the purchase or sale of any real property by the corporation or any subsidiary corporation, and to approve the creation of a mortgage, lien, or any other security interest in the real property of any subsidiary corporation;

(i)    To determine how any and all excess cash generated by the corporation is allocated with the Allegheny System in pursuit of the overall Allegheny mission. For purposes of this section, "excess cash" shall mean the amount of cash added in prior periods as reflected in the audited statements of cash flows. The Member's allocation of such excess cash would occur only after insuring compliance with any and all debt covenants.

Depending on the ultimate form of the Transaction, the Bylaws of FHS shall be amended and restated, to render AHERF as the Class "A" Member and AUMC as the Class "B" Member with the reserve powers set forth above divided between them as is usual in the AHERF System.

FURTHER RESOLVED, that the Transaction and consolidation approved herein shall be accomplished in accordance with all applicable requirements of law and regulation, and in accordance with all contracts or other legal undertakings to which FHS or any of its current component entities is a party or by which it or they are bound, and that prior to implementation of the consolidation, all approvals shall be obtained which are legally required to be obtained from any person or entity, whether governmental or private, including, but not limited to, any bond trustee, bond insurer, or court, in order to effect the consolidation and the transactions contemplated hereby, provided that any modifications or reconfigurations in the consolidation required to secure any such approval shall be undertaken and are hereby approved, but further provided that the consolidation shall be maintained in all such circumstances, and despite any such structural modifications which may be required, provided, however, that consummation of the consolidation is contingent upon AHERF's completion of due diligence to its satisfaction; and

FURTHER RESOLVED, that, effective immediately upon adoption of this resolution, the Chief Executive Officer of AHERF will be given notice of any and all meetings of the Board of Trustees of FHS and will be invited to attend such meetings, either in person or through a designee, as a guest, provided, however, that such individual shall not attend any portion of said meetings at which competitively sensitive information is discussed; and

FURTHER RESOLVED, that the Chief Executive Officer of AHERF will nominate five (5) individuals who are currently members of the FHS Board to serve as members of the initial Board of Trustees of AUMC one of whom will be a member of the FHS Medical Staff, the remainder of the existing Trustees to become Life Emeritus Trustees of AUMC from which AHERF will fill vacancies that occur on the AUMC Board, and that the initial Board of Trustees

DVR:51236.1

9

PR-1-000918

Minutes of the Special Meeting of
The Board of Trustees of Allegheny
Health, Education and Research Foundation
September 16, 1996
Page 10

of AUMC will be responsible for developing and adopting the initial Bylaws of AUMC, subject to the reserve powers set forth hereof; and

FURTHER RESOLVED, that FHS' hospitals shall remain licensed as separate hospitals with separate and independent, self-governed Medical Staffs; and

FURTHER RESOLVED, that those assets accumulated by FHS prior to the date of the consolidation shall continue to be utilized exclusively to support the programs and facilities of FHS, unless AHERF and FHS, at the time the consolidation becomes effective, specifically agree otherwise; and

FURTHER RESOLVED, that since the consolidation will result in certain staff positions at FHS being eliminated, all existing policies in effect as of the beginning of the current fiscal year which relate to severance for individuals whose positions are eliminated, (or with respect to any individuals hired since the beginning of the fiscal year, in effect from the date of hire), shall be honored; and

FURTHER RESOLVED, that with regard to employees who do not have contracts governing their severance benefits, it is agreed that such employees shall be provided severance in accordance with the Income Continuation Plan adopted by the Board of Trustees of AHERF at its meeting of April 8, 1994;
in addition, these affected employees will be given vouchers to use for any health care they, or their families, may need during that period, provided they receive such care at any of the AHERF hospitals and clinics in the Pittsburgh area; and

FURTHER RESOLVED, that the Board further irrevocably approves, at such time as it deems appropriate, the purchase of the assets of FHS or the statutory merger of FHS into Allegheny University Medical Centers; and

FURTHER RESOLVED, that any of the Chairman, Vice-Chairman, President, Secretary, or Treasurer of AHERF is hereby authorized and directed to do all such things and take all such actions as such officer may deem to be reasonable and appropriate to provide for the implementation and effectuation of the Transaction and consolidation approved herein, including without limitation, by execution of contracts and other undertakings, delivery of instruments, securing of licenses, permits, and approvals, and making of filings and notifications, and all such actions are hereby approved; and

FURTHER RESOLVED, that the Chairman of the Board and the Chief Executive Officer of AHERF (the "Designated Officers"), are hereby authorized and directed to determine, on behalf of AHERF, how to proceed with the Transaction through negotiation and consultation with the Chairman of the Board and the Chief Executive Officer of FHS, (who shall be similarly

DVR:51236.1

10

PR-1-000919

Minutes of the Special Meeting of
The Board of Trustees of Allegheny
Health, Education and Research Foundation
September 16, 1996
Page 11

authorized and directed by FHS), and the Transaction, if any, and all determinations and decisions concerning the Transaction made by the Designated Officers, including, without limitation, with respect to the terms and/or form of such Transaction, or actions to effect such Transaction (including intermediate transactions) are hereby approved and ratified; and

FURTHER RESOLVED, that when the Designated Officers decide in which form to proceed with the Transaction, the Designated Officers are hereby authorized to do all such things and take all such actions on behalf of FHS as shall be necessary to effect and implement the Transaction as approved by the Designated Officers and to preserve the benefits of the Transaction to FHS and to AHERF, provided that the ultimate objective of consolidation of FHS into the AHERF system is achieved, (such actions to include, without limitation, the execution and delivery of instruments to implement a purchase and sale of assets, a statutory merger, or one or more intermediate transactions) and the authority to approve and effect all such actions on behalf of FHS is hereby delegated to the Designated Officers, and all such actions are hereby approved and ratified; and

FURTHER RESOLVED, that AHERF agrees to defend and indemnify any of the current directors of FHS in the event they are sued or subjected to any liability whatsoever as a result of their approval of this Transaction and consolidation; and

FURTHER RESOLVED, that any inquiries or questions regarding this consolidation or any aspect thereof shall be referred to the President and Chief Executive Officer of AHERF.

VI.    Consolidation with Graduate Health Systems Subsidiaries

Mr. Abdelhak gave an informational update to the Trustees regarding the Graduate Health Systems consolidation. He stated that we are not ready to advance the consolidation to the Trustees but that the Hart-Scott-Rodino filing was submitted at the beginning of September. If no communication is received with regard to the filings by the end of September, then the acquisition will be approved. If additional information is requested, there is a twenty (20) day waiting period. Mr. Abdelhak stated that the due diligence process has been started and management is actively collecting information. It is expected that the due diligence process will be completed in ninety (90) days from the date of the announcement. Mr. McConnell discussed recapture in the Graduate context. Mr. Abdelhak stated that he expects to bring a recommendation on the details of what components of Graduate will ultimately move into AHERF to the Board for approval in December. Mr. Abdelhak stated that he has not yet reached any conclusions but was sharing with the Trustees the options available. Mr. Abdelhak then briefly updated the Board on other on-going or planned system development activities. He noted that he is only willing to add additional entities if they have strong existing management which can assume on-going management responsibility.

PR-1-000920

Minutes of the Special Meeting of
The Board of Trustees of Allegheny
Health, Education and Research Foundation
September 16, 1996
Page 12

VII.    <u>Appointment of President of Allegheny University Medical Centers (AUMC)</u>

Mr. Snyder announced that if Forbes decides to join AHERF, Barry Roth, President and CEO of Forbes Health Systems would be named President and CEO of the new entity, Allegheny University Medical Centers (AUMC). Mr. Abdelhak noted that this was contingent upon the outcome of the meeting of the Board of Trustees of Forbes Health System, scheduled for the next day.

Thereafter, upon motion duly made and seconded, the Board adopted the following resolution:

**RESOLVED, that the Board of Trustees of Allegheny Health, Education and Research Foundation (AHERF), acting as the Member of Allegheny University Medical Centers (AUMC), hereby approves the appointment of Barry Roth as President and Chief Executive Officer of AUMC, contingent upon approval by the Board of Directors of Forbes Health Systems.**

VIII.    <u>Adjournment</u>

Mr. Snyder asked if everyone was pleased with the format of using the interactive video equipment for meeting purposes and everyone stated that they were very pleased.

There being no further business, the meeting was adjourned.

Respectfully submitted,

*Nancy A. Wynstra*

Nancy A. Wynstra

NAW:bb:24208

DVR:51236.1

12

**EXHIBIT  0832**

ANNUAL MEETING OF THE BOARD OF TRUSTEES
ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
Via Videoconference
AHERF, Fifth Avenue Place Conference Room, Pittsburgh
and
Allegheny University Hospitals, MCP Board Room, Philadelphia

The annual meeting of the Board of Trustees of Allegheny Health, Education and Research Foundation ("AHERF"), was held on Thursday, December 12, 1996, via videoconference, in the AHERF Fifth Avenue Place Conference Room, Pittsburgh and the Allegheny University Hospitals, MCP Board Room, Philadelphia. The meeting was called pursuant to notice duly given in accordance with the Bylaws to each member of the Board of Trustees. A copy of the notice is appended to the original minutes of this meeting. The following individuals were present:

| **Members Present** | **Other Invitees** | **Members Absent** |
|---|---|---|
| Sherif S. Abdelhak | Calvin Bland | Leonard T. Ebert |
| William F. Adam | Robert L. Fletcher | William H. Genge |
| Henry G. Allyn, Jr. | Thomas Galinski | Teresa Heinz |
| Barbara F. Atkinson, M.D. | Lynn R. Isaacs | Robert M. Hernandez |
| J. David Barnes | Dwight Kasperbauer | Joseph C. Maroon, M.D. |
| Iain F. S. Black, M.D. | Donald Kaye, M.D. | Alfred W. Martinelli |
| Ralph W. Brenner, Esq. | David W. McConnell | Joseph Neubauer |
| Dorothy McKenna Brown, Ed.D. | James H. McMaster, M.D. | Chryss O'Reilly |
| Douglas D. Danforth | Leonard L. Ross, Ph.D. | David W. Sculley |
| Ronald R. Davenport | Barry H. Roth | J. Brandon Snyder |
| Harry R. Edelman, III | Anthony M. Sanzo | W. Bruce Thomas |
| Ira J. Gumberg | Nancy A. Wynstra, Esq. | |
| Oksana Korzeniowski, M.D. | | |
| Stanley M. Marks, M.D. | | |
| Donna M. Murasko, Ph.D. | | |
| Francis B. Nimick, Jr. | | |
| Thomas H. O'Brien | | |
| Robert B. Palmer | | |
| W. P. Snyder III | | |
| Richard Spielvogel, M.D. | | |
| Leon C. Sunstein, Jr. | | |
| Mark Victor, M.D. | | |
| Margaret Gray Wood, M.D. | | |



DEPOSITION EXHIBIT
235
AHF

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 2

## I.  Opening of the Meeting

The meeting was called to order at 12:20 p.m. by W.P. Snyder III, Chairman. Nancy A. Wynstra, Esq. maintained the minutes. The Chairman declared that a quorum was present and the meeting was competent to proceed.

Mr. Snyder introduced and welcomed a new trustee - Thomas O'Brien, Chairman and CEO, PNC Bank, and two guests - Barry Roth, President and CEO, Forbes Health System; and Robert L. Fletcher, Chairman of the Board of Forbes Health System.

## II.  Educational Presentation

Ms. Wynstra presented information on the Code of Ethics Education Program established at AHERF. This program has been developed for all AHERF employees and will become a part of employee orientation programs at all campuses. Ms. Wynstra noted that the Code has multiple purposes, including to reaffirm the commitment of AHERF to integrity and ethical conduct as a fundamental basis for the functioning of the organization; to convey to the internal and external community AHERF's basic values and commitment to ethical conduct; and to provide a foundation for the conduct of any individual who acts on behalf of the organization.

## III.  Additions to the Agenda

There were no additions to the agenda.

Mr. Snyder noted that a proposed resolution for the approval of the merger of Allegheny Valley Hospital into Allegheny University Medical Centers had been distributed and would be presented by Mr. Abdelhak under Consolidation Matters in Section II, Tab 7 of the agenda.

## IV.  AHERF Governance Issues

### A.  Minutes from the Meeting Held on June 21, 1996

Mr. Snyder presented for consideration the Minutes from the meeting of the Board of Trustees of Allegheny Health, Education and Research Foundation held on June 21, 1996. Upon motion duly made and seconded, the Board approved the following resolution:

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 3

> **RESOLVED, that the Board of Trustees of Allegheny Health, Education and Research Foundation approves the Minutes from the meeting held on June 21, 1996, as presented.**

B.    Minutes from the Special Meeting Held on September 16, 1996

Mr. Snyder presented for consideration the Minutes from the Special Meeting of the Board of Trustees of Allegheny Health, Education and Research Foundation held on September 16, 1996. Upon motion duly made and seconded, the Board approved the following resolution:

> **RESOLVED, that the Board of Trustees of Allegheny Health, Education and Research Foundation approves the Minutes from the Special Meeting held on September 16, 1996, as presented.**

C.    AHERF Executive Committee Unanimous Consent in Lieu of Meeting

Mr. Snyder presented background information on the Unanimous Consent in Lieu of Meeting dated October 22, 1996, relative to the sale of certain properties owned by various entities within the system, that was distributed and signed by all members of the AHERF Executive Committee. The Board approved the resolutions as agreed to by the Executive Committee and directed that a copy of the Unanimous Consent be attached to the original minutes of this meeting.

V.    **Report from the Committee on Trustees**

Mr. Nimick presented the Report from the Committee on Trustees meeting held on November 19, 1996 and introduced the items set forth below which were advanced to the Board for consideration:

A.    Consolidation Matters

1.    Corporate Structure

Mr. Abdelhak presented an organizational chart depicting the proposed corporate structure for Allegheny Health, Education and Research Foundation and its subsidiaries as recommended by the AHERF Committee on Trustees. He explained how the proposed new structure differs from the current structure. Discussion followed regarding the need for increased communication between various subsidiary Boards at AHERF. It was

PGH: 24869.1

recommended that a management group including the various Board and Committee Chairs and the members of senior management, convene twice a year to collectively discuss current significant issues throughout the organization.

The resolution delegates to the CEO of AHERF the authority to make final decisions concerning precisely when and how various GHS entities and employees will be integrated into AHERF. Among other things this delegation is intended to include the authority to amend the AHERF Retirement Account Plan (and other AHERF benefit plans) to adopt such provisions regarding employees of GHS entities as the AHERF President and Chief Executive Officer, and any other officers designated by him, may deem to be reasonable and appropriate.

Upon motion duly made and seconded, the Board approved the following resolution:

> **RESOLVED, that the Board of Trustees of Allegheny Health, Education and Research Foundation approves the AHERF Corporate Structure substantially as presented; and directs the Secretary to append a copy of the approved Structure to the original minutes of this meeting.**

2. Reorganization of Certain Graduate Health System Entities

Mr. Abdelhak presented for consideration proposed resolutions regarding the reorganization of certain Graduate Health System ("GHS") entities from SDN and/or GHS into the AHERF System. The President reviewed the overall plans underway and the steps taken to date to accomplish the integration and transaction of appropriate GHS activities to AHERF, noting that final form of the reorganization will be determined as current due diligence reviews and other financial, legal and operational analyses are completed. Mr. Abdelhak noted, in response to questions, that any GHS, Forbes, or AVHS debt currently outstanding will remain separate and will not be combined with the debt of any of the obligated groups currently within AHERF. He also reiterated AHERF's commitment, as demonstrated during the United Hospitals consolidation, to handle such transactions in a way which gives maximum protection to bondholders, both of AHERF system entity bonds and of the bonds of any entity being acquired.

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 5

Following discussion and upon motion duly made and seconded, the Board adopted the following resolution:

WHEREAS, Allegheny Health, Education and Research Foundation ("AHERF") operates a diversified health system (the "AHERF System") providing education, research, clinical and preventive health and health-related services in Western Pennsylvania and in the Delaware Valley, including through tertiary, specialty, and community hospitals, a health sciences university, a physician satellite network, and related activities; and

WHEREAS, Graduate Health System ("GHS"), a Pennsylvania non-profit tax-exempt corporation, historically has operated a diversified health services system within the Delaware Valley (the "GHS System") offering clinical, preventive, and related health services, including through five (5) adult community hospitals, a physician satellite network, and various other entities providing and supporting the provision of health and health-related services; (such entities collectively referred to herein as the "GHS Subsidiaries"); and

WHEREAS, GHS determined, after lengthy evaluation and analysis of alternatives, that the best interests of the GHS Subsidiaries and the GHS System would be best served by a reorganization that would allow some or all of the GHS Subsidiaries to become associated with another health services system; and

WHEREAS, after arm's-length negotiations, GHS entered into an agreement with SDN, Inc. ("SDN"), a Pennsylvania non-profit, tax-exempt corporation (which formerly operated United Hospitals, Inc.), to undertake a series of transactions (the "GHS-SDN Transactions") in which the GHS Subsidiaries would be transferred into SDN or to the control of SDN for various purposes, including without limitation, the evaluation of the possible reorganization of some or all of the GHS Subsidiaries into the AHERF System; and

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 6

WHEREAS, the GHS-SDN Transactions were concluded and became effective on November 1, 1996, at which time the GHS Subsidiaries were merged into SDN or transferred to the control of SDN; and

WHEREAS, AHERF provides management services to SDN under a management arrangement in effect since July 1, 1991, and, in conjunction with such management arrangement, has initiated various operational, financial, and legal due diligence analyses and investigations of the GHS Subsidiaries for the purpose of determining the appropriate future methods and locations of operation of the GHS Subsidiaries, including within the AHERF System; and

WHEREAS, although due diligence reviews are continuing, AHERF management has concluded that certain of the operations and assets of the GHS Subsidiaries should be integrated into the AHERF System, including, without limitation, three (3) of the adult community hospitals (the Graduate Hospital, City Avenue Hospital, and Rancocas Hospital), the physician satellite network, and the Bermuda offshore captive insurance company, GHS Re, Inc.; and

WHEREAS, as a result of ongoing due diligence reviews, AHERF management may determine that certain other operations and assets of the GHS Subsidiaries should be integrated into the AHERF System; and

WHEREAS, because of various operational, financial, legal, and regulatory considerations, certain operations and assets of the GHS Subsidiaries, such as the physician satellite network, already are being integrated into the AHERF System, while other components of the GHS Subsidiaries will enter the AHERF System at various times, depending on the completion of ongoing analyses and the resolution of certain operational, financial, legal, and/or regulatory factors; and

PGH: 24869.1

PR-1-000745

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 7

WHEREAS, AHERF management wishes to seek conceptual approval by the AHERF Board of Trustees of various activities and undertakings conducted to date by AHERF in connection with the GHS-SDN Transactions, and further to seek conceptual approval of the possible reorganization of various components of the GHS Subsidiaries into the AHERF System, as well as securing the approvals and authority reasonably necessary to accomplish such transaction;

NOW, THEREFORE, BE IT RESOLVED by the Board of Trustees ("Board") of AHERF, that the GHS-SDN Transactions are hereby acknowledged, and recognized to the extent relating to the possible reorganization of the GHS Subsidiaries into the AHERF System, including without limitation, the condition that GHS be permitted to recover control of the GHS Subsidiaries for a period of ninety (90) days if such reorganization shall not have occurred on or before October 31, 1998; and

FURTHER RESOLVED, that the proposed reorganization into the AHERF System of two (2) community hospitals previously operated as GHS Subsidiaries, The Graduate Hospital and City Avenue Hospital respectively, together with relevant operations, assets, and liabilities respectively pertaining thereto or associated therewith, is hereby approved and ratified, with the understanding that such hospitals shall be operated as part of a non-profit tax-exempt subsidiary of AHERF to be referred to as "Allegheny University Hospitals, Centennial"; and

FURTHER RESOLVED, that the proposed reorganization into the AHERF System of one (1) community hospital previously operated as a GHS Subsidiary, the Rancocas Hospital (operating under the corporate name "Zurbrugg Memorial Hospital") together with relevant operations, assets, and liabilities pertaining thereto or associated therewith, is hereby approved and ratified, with the understanding that such hospital shall be operated as part of a non-profit tax-exempt subsidiary of AHERF to be referred to as "Allegheny University Hospitals, New Jersey"; and

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 8

FURTHER RESOLVED, that the reorganization into the AHERF System of the physician satellite network, Founders Health Plan, together with the professional corporations, operations, assets, and liabilities pertaining thereto or associated therewith, through a merger or other appropriate method, is hereby ratified and approved, and that the components of such physician satellite network shall be operated as part of Allegheny Integrated Health Group; and

FURTHER RESOLVED, that the AHERF President and Chief Executive Officer is hereby authorized and directed to make and approve such determination(s) regarding the reorganization of additional GHS Subsidiaries (or component(s) thereof) into the AHERF System, together with such operations, assets, and liabilities as may be associated therewith, to the extent that the AHERF President and Chief Executive Officer determines that the reorganization of such GHS Subsidiaries (or components thereof) into the AHERF System is reasonable and appropriate to advance and/or protect the best interests of the AHERF System and the reorganization into the AHERF System of such additional GHS Subsidiaries as shall be determined and approved by the AHERF President and Chief Executive Officer is hereby ratified and approved; and

FURTHER RESOLVED, that the extension of the Management Agreement between SDN, Inc. and Allegheny Health, Education and Research Foundation dated July 1, 1991 (the "Management Agreement"), any actions or undertakings by AHERF with respect to SDN or the GHS Subsidiaries under the Management Agreement, and the continued provision of management and support services by AHERF to SDN and its subsidiaries, including, without limitation, the GHS Subsidiaries, under the terms of the Management Agreement are hereby approved and ratified collectively and individually; and

FURTHER RESOLVED, that the ratification and approval by the Board of the reorganization of certain of the GHS Subsidiaries into the AHERF System shall be conditioned upon the agreement of SDN to transfer to AHERF or to a designated AHERF subsidiary promptly upon the receipt thereof, any proceeds in any form whatsoever received by SDN or any GHS

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 9

Subsidiary controlled by SDN and remaining after providing for payment of any liabilities incurred in the ordinary course of business in the operation of SDN or any such GHS Subsidiary to the extent that such proceeds arise or result from the operation, purchase (or other acquisition in whole or in part), sale (or other disposition in whole or in part), closure, abandonment, or other transaction or activity of, or relating to, any such GHS Subsidiary (or any asset or component part thereof), provided that any such proceeds received by AHERF or any AHERF subsidiary shall be restricted and used exclusively to support the operation and/or carry out business purposes of one or more of the GHS Subsidiaries reorganized into the AHERF System (or component part(s) thereof); and

FURTHER RESOLVED, that the reorganizations of the GHS Subsidiaries into the AHERF System that are contemplated and approved hereby shall be completed on or before July 1, 1997, at such specific date and time as shall be deemed appropriate by the AHERF President and Chief Executive Officer, except to the extent that any such reorganization is delayed due to the necessity to secure any approval of such reorganization required from any governmental or private party or entity, in which case the effective date for such reorganization may be deferred by direction of the AHERF President and Chief Executive Officer until such approval has been obtained; and

FURTHER RESOLVED, that the transactions contemplated and approved hereby shall be conditioned upon the obtaining of all approvals which are legally required to be obtained from any person or entity, whether governmental or private, including, without limitation, any bond trustees, bond insurer, or court in order to effect the reorganizations and the transactions contemplated hereby, provided that any terms, conditions, and/or reconfigurations in the reorganizations required to secure any such approval shall be undertaken and are hereby approved and ratified subject to the requirement that SDN and/or any of the GHS Subsidiaries shall provide such assistance as may be reasonably required in securing any such approval; and

PR-1-000748

FURTHER RESOLVED, that the AHERF President and Chief Executive Officer, and any other officer(s) designated by the AHERF President and Chief Executive Officer are hereby authorized and directed to do all such things and take all such actions as such officer(s) may deem to be reasonable and appropriate with respect to the entity to which their office pertains to provide for the implementation and effectuation of the reorganizations of such of the GHS Subsidiaries (or any component(s) thereof) as shall be reorganized into the AHERF System as approved herein, including without limitation, by negotiation of terms and conditions and execution of contracts and other undertakings, delivery of instruments, securing of licenses, permits, and approvals, and making of filings and notifications, and all such actions are hereby approved and ratified.

3.    Consolidation of Forbes Health System

Mr. Abdelhak presented to the Board an analysis projecting the financial condition and operating performance of Forbes Health System following the effective date of the merger.

4.    Allegheny Valley Hospital

Mr. Abdelhak presented the proposed recommendation for Allegheny Valley Health System (AVHS) and its affiliates to merge with Allegheny University Medical Centers (AUMC). Mr. Abdelhak and Mr. McConnell provided background information on the merger. They reviewed AHERF and Allegheny Valley Health System (AVHS) combined financial statements and other selected information for Fiscal Year 1996 to depict the financial condition and operating performance of AVHS along with the impact of the proposed acquisition on AHERF's consolidated totals. It was also noted that AVHS has a strong management team in place. As proposed, AVHS will become part of AUMC which is a direct subsidiary of AHERF equivalent to Allegheny General Hospital, St. Christopher's Hospital for Children, Allegheny University Hospitals and Allegheny University of the Health Sciences. AUMC will serve as the company for all Pittsburgh based community hospitals that affiliate with the AHERF system. Following discussion and upon motion duly made and seconded, the Board approved the following resolution:

PGH: 24869.1

PR-1-000749

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 11

WHEREAS, Allegheny Health, Education and Research Foundation ("AHERF") owns and operates a diversified healthcare system ("AHERF System") located primarily in the cities of Philadelphia and Pittsburgh, Pennsylvania, which includes general and specialty hospitals, a network of ambulatory care providers, managed care components, and a health sciences university which includes a medical school; and

WHEREAS, Allegheny Valley Health System ("AVHS") operates a hospital and related healthcare affiliates located in Natrona Heights, Pennsylvania; and

WHEREAS, AHERF owns and operates as part of its diversified healthcare system a community hospital network in Western Pennsylvania known as Allegheny University Medical Centers ("AUMC"); and

WHEREAS, discussions have been held between representatives of AVHS and AHERF about AVHS becoming a member of AUMC pursuant to the general structure and parameters set forth herein; and

WHEREAS, AVHS has independently concluded that substantial changes in circumstances applicable to healthcare systems and providers will result in significant shifts in demand for healthcare services, substantial reductions in payment for healthcare services, and shifts in the mechanisms for financing and delivery of healthcare services; and

WHEREAS, AVHS has independently concluded that consolidation of healthcare resources and reductions in healthcare capacity will occur as a result of such changing circumstances; and

WHEREAS, AHERF and AVHS have discussed merger and both AHERF and AVHS have concluded that a merger between them would represent an appropriate response to the aforementioned changing circumstances and would be in the best interests of both organizations and their respective communities; and

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 12

WHEREAS, AHERF is willing to commit to AVHS's community mission and community providers and will commit itself to the advancement of both; and

WHEREAS, it is anticipated that AVHS will, at a later date, merge into Allegheny University Medical Centers ("AUMC"); and

WHEREAS, AHERF and AVHS have discussed and conducted arm's length negotiations concerning the terms under which a merger between AUMC and AVHS will occur, the details of which will be specifically set forth in a Plan of Merger based on the following principles:

(a)    Any and all legal agreements entered into by and between AVHS and any other party will be honored by AUMC and AHERF;

(b)    A comprehensive assessment of administrative services will be conducted by the Chief Executive Officers of AVHS and AUMC to identify the strongest, most efficient and effective administrative configuration for AVHS and AUMC;

(c)    Programmatic clinical collaboration will be the responsibility of the Chief Executive Officer of AVHS and related representatives of the medical staff and AUMC in consultation with the AUMC/AVHS Community Advisory Board and other AHERF entities;

(d)    All clinical services which can be effectively provided in the community hospital setting will continue to be maintained at AVHS and only those activities that the AVHS physicians and management believe cannot be offered effectively in the community hospital setting will be encouraged to be delivered at Allegheny General Hospital (AGH) or other AUMC hospitals;

PGH: 24869.1

PR-1-000751

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 13

(e) All AVHS physicians who have appropriate training and meet the established credentialing criteria will be welcome to apply for membership on the medical staffs of all other AHERF entities;

(f) AHERF's intent is to work with and not supplant the existing medical and surgical specialists of the AVHS Medical Staff through its multiple programmatic and facility resources. Working through its established institutional planning process, the AVHS Medical Staff leadership will have the opportunity to identify deficiencies in and approve levels of professional services appropriate for community facilities consistent with it's adopted mission;

(g) Determinations on referrals of patients shall be made exclusively by the patient's responsible physician and it is expected that the physician will do whatever he/she believes is in the best interests of the patient at all times. If referrals are made out of the System, the referring physician will be encouraged to provide an explanation to AUMC so that the other providers within the AHERF System can determine improvements needed to earn the physician's referrals;

(h) All AVHS physicians will be encouraged, but not required, to participate in any and all offerings by AHERF including contracts with insurers and employers;

(i) AHERF will, to the extent resources are available and community need is present, continue to equip and maintain the AVHS facilities in a manner appropriate to acute care community facilities of their size.

(j) The merger will be accomplished using all necessary steps to make the entire transaction most beneficial to AVHS and to AUMC.

PGH: 24869.1