Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 14

      (k)     The AUMC Board will conduct a planning process and recommend to AHERF the ultimate number of institutions that should be consolidated into AUMC.

NOW THEREFORE, BE IT RESOLVED, by the Board of Trustees of Allegheny Health, Education and Research Foundation ("AHERF") that the invitation to AVHS and its affiliates to merge with AUMC is hereby irrevocably ratified, and that there is an irrevocable commitment by the Board of Trustees of AHERF, that upon the adoption of this resolution by AVHS, AUMC and AHERF, it shall participate in the development and execution of a Plan of Merger of AVHS and affiliates with AUMC and other documents necessary to implement the intent of these resolutions, such as Articles, Bylaws, and other documents of AUMC, as may be determined to be appropriate and subject to satisfactory completion of such due diligence as is determined by AHERF, AUMC and AVHS to be appropriate; and

FURTHER RESOLVED, that the Board of Trustees of AHERF hereby acknowledges that the Board of Trustees of AVHS has approved such a resolution and Plan of Merger and the Board of AHERF, acting as the Member of AUMC hereby approves adoption of such a resolution and Plan of Merger by the Board of Trustees of AUMC; and

FURTHER RESOLVED, that upon the approval by the AHERF Board of such a resolution and Plan of Merger, then upon the notification by the CEO of AVHS to the President and CEO of AUMC of the occurrence of the last to occur of (i) the receipt of final approval of the proposed transaction by the Federal Trade Commission and the Department of Justice or upon the expiration of the required waiting period under the Hart-Scott-Rodino Act, and (ii) the completion of a due diligence process covering all information about AVHS which AUMC and AHERF deem relevant to this transaction with all issues identified being resolved to AUMC's and AHERF's satisfaction, the AUMC Board shall direct that such merger be effective as of the date of the filing with the Pennsylvania Corporation Bureau, or such later date as shall be mutually agreed between AVHS and AUMC (the "Effective Date"); and

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 15

FURTHER RESOLVED, that, upon the Effective Date, AVHS shall merge into AUMC, and shall transfer, by operation of law, ownership of and responsibility for the assets and liabilities of AVHS in existence as of the date upon which such merger takes effect to AUMC and that the consideration to be paid by AUMC to AVHS for the transfer of such assets pursuant to such merger shall be the assumption of such outstanding liabilities of AVHS by AUMC, as well as such other consideration as shall be provided by AUMC and/or AHERF to AVHS in exchange for such transfer of assets and liabilities, and that such consideration has been reviewed by AUMC and AVHS and has been determined to be fair market value for the assets transferred by such merger; and

FURTHER RESOLVED, that after the merger the Board of Trustees of AUMC shall have and exercise direction and control of AUMC, except that, AHERF, as the sole Member of AUMC, shall have the following reserve powers:

(a)    To approve the appointment of Trustees of AUMC and upon vote of at least two thirds of the Trustees of AHERF to remove the Trustees of the Corporation;

(b)    To approve the election of the Chair of the Board of AUMC and other officers of AUMC or of any subsidiary corporations to AUMC, and to remove the Chairman or other officers as set forth in (a) above;

(c)    To approve the appointment of the President of AUMC, or of any subsidiary corporations;

(d)    To approve Bylaws adopted by AUMC and to effect or approve any amendment, alteration, or restatement or other revision of the Articles of Incorporation of the Corporation and these Bylaws;

(e)    To approve the purchase or sale of any real property by AUMC or any subsidiary corporation, and to approve creation of a mortgage, lien, or any other security interest in the real property of the corporation or in the real property of any subsidiary corporation, and to approve borrowing of funds by the corporation from an unrelated

PGH: 24869.1

PR-1-000754

person, corporation, or other legal entity, or lending of funds by the corporation to an unrelated person, corporation or legal entity, including capital leases, where the term of the borrowing or lending exceeds one year in duration and where the total amount of the borrowing or lending exceeds One Hundred Thousand Dollars ($100,000.00); and

(f)    To approve annual capital and operating budgets for the corporation and for any other corporation in which AUMC has a sole, majority, or controlling voting or ownership interest (hereinafter referred to as "subsidiary corporations"), and to approve unbudgeted capital or operating expenditures to be undertaken individually or collectively by AUMC and any subsidiary corporation where the cumulative amount of such unbudgeted expenditures is the lesser of two million dollars ($2,000,000) or ten percent (10%) in excess of the individual or combined approved budgets of AUMC and its subsidiaries;

(g)    To determine how any and all excess cash generated by AUMC is allocated within the AHERF System in pursuit of the overall AHERF mission; for purposes of this section, "excess cash" shall mean the amount of cash added in prior periods as reflected in the audited statements of cash flows; AHERF's allocation of such excess cash would occur only after ensuring compliance with any and all debt covenants, with excess cash allocation among AUMC institutions to be determined by AUMC; and

FURTHER RESOLVED, that the Transaction and merger approved herein shall be accomplished in accordance with all applicable requirements of law and regulation, and in accordance with all contracts or other legal undertakings to which AVHS or any of its current component entities is a party or by which it or they are bound, and that all approvals shall be obtained which are legally required to be obtained from any person or entity, whether governmental or private, including, but not

limited to, any bond trustee, bond insurer, or court, in order to effect the merger and the transactions contemplated hereby, provided that any modification or reconfigurations which do not materially change the terms of this resolution in the merger required to secure any such approval shall be undertaken and are hereby approved, but further provided that the merger shall be maintained in all such circumstances, and despite any such structural modifications which may be required, provided, however, that consummation of the merger is contingent upon AHERF's and AUMC's completion of due diligence to their satisfaction; and

FURTHER RESOLVED, that, effective immediately upon adoption of this resolution, the Chief Executive Officer of AHERF will be given notice of any and all meetings of the Board of Trustees of AVHS and will be invited to attend such meetings, either in person or through a designee, as a guest, provided, however, that such individual shall not attend any portion of said meetings at which competitively sensitive information is discussed; and

FURTHER RESOLVED, that the Chairman of the Board of AVHS will appoint, subject to the reserve powers as set forth in paragraph 15 hereof, four (4) individuals who are currently members of the AVHS Board to serve as members of the initial Board of Trustees of AUMC (one of whom will be appointed by AHERF to the AHERF Board of Trustees and AVHS will always have a representative on the AHERF Board of Trustees), and the President of the Medical Staff of AVHS will serve as a member of the Board of AUMC ex-officio with vote; the remainder of the existing Trustees will become Life Trustees and members of an AVHS Community Advisory Board ("CAB") of AUMC from which AUMC, subject to the reserve powers as set forth in paragraph 15 hereof, will fill any vacancies among the four (4) lay AVHS appointees that occur on the AUMC Board, and that the initial Board of Trustees of AUMC will be responsible for developing and adopting the initial Bylaws of AUMC, subject to the reserve powers set forth herein;

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 18

FURTHER RESOLVED, that the CAB will advise AHERF and AUMC on institutional and AUMC planning matters and on other matters of significance to the AVHS community, nominate replacement appointees to the AUMC Board, work with the AVHS Auxiliary, monitor and report on the health status of the community, monitor and report on health care legislation matters, provide community education, address other issues delegated by AUMC, and elect additional members from time to time; and

FURTHER RESOLVED, that the Allegheny Valley Hospital Foundation shall remain as an independent and separate entity by modifying its corporate documents to reflect that it will be a supporting organization of AUMC, cognizant of and supportive of the AUMC mission within the AVHS service area, which will raise funds for AUMC activities at AVHS, said funds and other assets of the Foundation to be used exclusively in support of activities of AVHS.

FURTHER RESOLVED, that AVHS's hospital shall remain licensed as a separate hospital with a separate and independent, self-governed Medical Staff; and

FURTHER RESOLVED, that all assets accumulated by AVHS set forth on it's consolidated balance sheet as of the date of the Transaction, shall continue to be utilized exclusively to support the programs and facilities of AVHS, unless AHERF, AUMC and AVHS, at the time the merger becomes effective, specifically agree unanimously otherwise; and

FURTHER RESOLVED, that in the event AHERF or AUMC, changes ownership or closes AVHS as an acute care hospital without the concurrence of the AUMC/AVHS CAB, then AHERF will return AVHS and all restricted assets as defined in the foregoing paragraph to the AUMC/AVHS CAB, if the CAB, by duly adopted resolution, so elects; and

PGH: 24869.1

PR-1-000757

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 19

FURTHER RESOLVED, that since the merger may result in certain staff positions at AVHS being eliminated, all existing policies approved prior to the date of merger which relate to severance for individuals whose positions are eliminated, (or with respect to any individuals hired since the beginning of the fiscal year, in effect from the date of hire), shall be honored; and

FURTHER RESOLVED, that with regard to employees who are not covered by severance policies described in the above-referenced paragraph, it is agreed that such employees shall be provided severance in accordance with the Income Continuation Plan adopted by the Board of Trustees of AHERF at its meeting of April 8, 1994; in addition, these affected employees will be given vouchers to use for any health care they, or their families, may need during that period, provided they receive such care at any of the AHERF hospitals and clinics in the Pittsburgh area; and

FURTHER RESOLVED, that any of the Chairman, Vice-Chairman, President, Secretary, or Treasurer of AHERF and AUMC are hereby authorized and directed to do all such things and take all such actions as such officer may deem to be reasonable and appropriate to provide for the implementation and effectuation of the Transaction and merger approved herein, including without limitation, by execution of contracts and other undertakings, delivery of instruments, securing of licenses, permits, and approvals, and making of filings and notifications, and all such actions are hereby approved; and

FURTHER RESOLVED, that the Chairman of the Board and the Chief Executive Officer of AUMC (the "Designated Officers"), are hereby authorized and directed to determine on behalf of AHERF, how to proceed with the Transaction through negotiation and consultation with the Chairman of the Board and the Chief Executive Officer of AVHS, (who have been similarly authorized and directed by AVHS), and the Transaction, if any, and all determinations and decisions

PGH: 24869.1

PR-1-000758

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 20

concerning the Transaction made by the Designated Officers, including, without limitation, with respect to the terms and/or form of such Transaction, or actions to effect such Transaction (including intermediate transactions) are hereby approved and ratified; and

FURTHER RESOLVED, that when the Designated Officers decide in which form to proceed with the Transaction, the Designated Officers are hereby authorized to do all such things and take all such actions on behalf of AUMC and AHERF as shall be necessary to effect and implement the Transaction as approved by the Designated Officers and to preserve the benefits of the Transaction to AVHS and to AHERF and AUMC, provided that the ultimate objective of the merger of AVHS into AUMC is achieved, (such actions to include, without limitation, the execution and delivery of instruments to implement a statutory merger or one or more intermediate transactions) and the authority to approve and effect all such actions on behalf of AUMC and AHERF is hereby delegated to the Designated Officers, and all such actions are hereby approved and ratified; and

FURTHER RESOLVED, that AHERF agrees to defend and indemnify any of the current directors of AVHS in the event they are sued or subjected to any liability of their approval of this Transaction and merger; and

FURTHER RESOLVED, that any inquiries or questions regarding this merger or any aspect thereof shall be referred to the President and Chief Executive Officer of AHERF.

B.    Recommendations for AHERF Board Membership

1.    Appointment of Trustee

Mr. Nimick presented the Committee on Trustees recommendation for appointment of an Allegheny Health, Education and Research Foundation

PR-1-000759

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 21

Trustee. Upon motion duly made and seconded, the Board adopted the following resolution:

**RESOLVED, that the Board of Trustees of Allegheny Health, Education and Research Foundation appoints the following to serve as a Trustee of Allegheny Health, Education and Research Foundation, in such class and for such term as indicated:**

### Class II - Expiring Annual Meeting 1999

**Robert L. Fletcher**

2.     Reappointment of Trustees

Mr. Nimick presented the Committee on Trustees recommendations for reappointment of AHERF Trustees. Upon motion duly made and seconded, the Board adopted the following resolution:

**RESOLVED, that the Board of Trustees of Allegheny Health, Education and Research Foundation reappoints the following to serve as Trustees of Allegheny Health, Education and Research Foundation, in such class and for such term as indicated:**

### Class II - Term Expiring Annual Meeting 1999

**Dorothy McKenna Brown, Ed.D.**
**Leonard T. Ebert**
**Alfred Martinelli**
**Joseph Neubauer**
**Robert B. Palmer**
**Richard Spielvogel, M.D.**
**Leon C. Sunstein, Jr.**

C.     Nominations for AHERF Officers for Calendar Year 1997

Mr. Nimick presented the Committee on Trustees recommendation for a slate of officers for Allegheny Health, Education and Research Foundation. Upon motion duly made and seconded, the Board adopted the following resolution:

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 22

> RESOLVED, that the Board of Trustees of Allegheny Health, Education and Research Foundation appoints the following individuals as officers to serve at the pleasure of the Board for the ensuing year.
>
> Chair - William P. Snyder III
> Vice Chair - Douglas D. Danforth
>
> *Executive Vice President - Calvin Bland
> *Executive Vice President - Dwight Kasperbauer
> *Executive Vice President - Donald Kaye, M.D.
> *Executive Vice President - David W. McConnell
> *Executive Vice President - Leonard L. Ross, Ph.D.
> *Executive Vice President - Anthony M. Sanzo
> *Executive Vice President - Nancy A. Wynstra. Esq.
>
> *Secretary - Nancy A. Wynstra, Esq.
> *Treasurer - David W. McConnell
> *Assistant Secretary - William C. Kennedy, Esq.
> *Assistant Secretary - Lynn R. Isaacs
> *Assistant Secretary - Cherry S. White
> *Assistant Treasurer - Michael P. Martin
>
> *       Appointed Officer without vote

D.    Conflict of Interest Policy and Bylaw Amendments

Ms. Wynstra presented a proposed policy and relevant Bylaw amendment language relative to the Conflict of Interest Policy. She advised that the granting of tax-exempt status to Allegheny Integrated Health Group (AIHG) is contingent upon AIHG's adoption of the IRS's new form of conflict of interest policy. That policy is not inconsistent with the policies previously adopted by Allegheny Health, Education and Research Foundation and the other entities in the AHERF health care system, including AIHG. To enable AIHG and other new entities to obtain federal tax-exempt status and to ensure continued uniformity among AHERF and the other entities in the AHERF system, it is recommended that the corporate Bylaws of each Allegheny entity be amended, and that the suggested form of conflict of interest policy be adopted by AHERF as the policy for it and its subsidiaries.

Upon motion duly made and seconded, the Board adopted the following resolution:

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 23

WHEREAS, the Internal Revenue Service has recently issued a suggested form for conflict of interest policies for tax-exempt organizations; and

WHEREAS, Allegheny Health, Education and Research Foundation (AHERF) has a systemwide Code of Ethics program, which includes a Conflict of Interest program; and

WHEREAS, obtaining and maintaining tax-exempt status will be simplified by amending AHERF's current conflict of interest program to include certain specific language suggested by the IRS.

NOW THEREFORE, BE IT RESOLVED, that the Board of Trustees of Allegheny Health, Education and Research Foundation, for itself and each of its subsidiaries, hereby approves the amendments to its Bylaws and the Bylaws of each Allegheny entity in the form attached hereto as Exhibit "A"; and

FURTHER RESOLVED, that the Board adopts the Conflict of Interest Policy, in substantially the form attached hereto as Exhibit "C", as the policy for AHERF and its subsidiaries; and

FURTHER RESOLVED, that the Secretary is directed to attach to the minutes of this meeting a copy of the Bylaw amendments and Conflict of Interest Policy as presented to this meeting.

VI.    **Report from the Audit Committee**

Mr. Barnes presented the Report from the Audit Committee meeting held on October 15, 1996 and introduced the items set forth below which were advanced to the Board for consideration.

A.    Report on FY 1996 Audited Financial Statements and Related Reports for AHERF and Subsidiaries

Mr. Barnes presented the Audited Financial Statements for Fiscal Year 1996 for AHERF and its Subsidiaries. The report included the related debt compliance letters for AHERF, the Allegheny General Hospital Obligated Group and the Delaware Valley Obligated Group. Following discussion and upon motion duly made and seconded, the Board adopted the following resolution:

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 24

> RESOLVED, that the Allegheny Health, Education and Research Foundation Board of Trustees approves the Audited Financial Statements and the related debt compliance letters for Fiscal Year 1996; and

> FURTHER RESOLVED, that the Board instructs the Secretary to append copies of the approved Fiscal Year 1996 Financial Statements and related debt compliance letters to the original minutes of this meeting.

B.  Fiscal Year 1996 Report on AHERF Internal Controls

Mr. Barnes reported that Coopers & Lybrand had reviewed internal controls within AHERF and its Obligated Group entities and stated that there were no matters noted during the audits that would be considered to be material weaknesses. Upon motion duly made and seconded, the Board adopted the following resolution:

> RESOLVED, that the Allegheny Health, Education and Research Foundation Board of Trustees accepts the Coopers & Lybrand Report on Allegheny Health, Education and Research Foundation Internal Controls as presented; and

> FURTHER RESOLVED, that the Board instructs the Secretary to attach a copy of the approved Report to the original minutes of the meeting.

C.  Recommendation of Appointment of External Auditors

Mr. Barnes presented the Audit Committee's recommendation that Coopers & Lybrand (C&L) be reappointed to serve as external auditors for AHERF and its subsidiary organizations for Fiscal Year 1997. Discussion followed regarding the proposed appointment and whether or not a change would be appropriate at this time, and it was agreed to review the matter. It was noted that we do not use C&L for consultation except on matters directly related to the audit or in due diligence. Following discussion, and upon motion duly made and seconded, the Board adopted the following resolution:

> RESOLVED, that the Allegheny Health, Education and Research Foundation Board of Trustees reappoints Coopers & Lybrand as independent auditors of Allegheny Health, Education and Research Foundation and its subsidiary organizations for Fiscal Year 1997.

PGH: 24869.1

PR-1-000763

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 25

## VII.    Report from the Finance Committee

Mr. Barnes presented the Report from the Finance Committee meeting held on December 2, 1996 and introduced the items set forth below which were advanced to the Board for consideration.

A.    Results of AHERF Operations and Financials for the Period Ended September 30, 1996

Mr. Barnes presented the results of the AHERF Operations and Financials for the period ended September 30, 1996 noting that the results are slightly better than budget. The increase in admission figures to date is primarily responsible for the results achieved so far this year that were better than budgeted. Mr. Barnes emphasized the importance of increasing the earnings in order to provide enough cash flow in the corporation to provide for equipment and plant modernization and for the provision of new technology. Discussion followed regarding the continuing decrease in Accounts Receivable after the negative interim impact experienced with the move of receivables management from Philadelphia to Pittsburgh. Additionally, a suggestion was made that the Finance Committee examine the debt structure and determine its effect on AHERF's long term financial capabilities. Upon motion duly made and seconded, the Board adopted the following resolution:

**RESOLVED, that the Board of Trustees of Allegheny Health, Education and Research Foundation, accepts the results of the AHERF Operations and Financials for the period ended September 30, 1996, and directs the Secretary to attach a copy of the accepted Financial Statements to the original minutes of this meeting.**

B.    Authorization of AHERF Lines of Credit

Mr. Barnes reported that the Treasury Department has devised a plan to consolidate the several lines of credit that AHERF maintains for working capital purposes. He noted that such consolidation, using a single bank, will save AHERF an estimated $400,000 per year in bank fees. Any borrowing by an operating unit would be treated on the financial statements as a borrowing by that individual unit and not of AHERF.

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 26

Upon motion duly made and seconded, the Board adopted the following resolution:

> **WHEREAS, Certain affiliates (the "Affiliates") of Allegheny Health, Education and Research Foundation ("AHERF") currently maintain one or more lines of credit for working capital and general corporate purposes; and**

> **WHEREAS, AHERF desires to reduce the associated direct and indirect expenses incurred by the Affiliates by establishing a line of credit with a bank or banks (the "Bank"), the proceeds of which will be used immediately to refinance its Affiliates' lines of credit; and**

> **WHEREAS, Each of the Affiliates have agreed to guaranty its indebtedness and obligations and to issue and deliver to AHERF for the benefit of the Bank a Master note guaranteeing the obligations under the guaranty or an obligation in the form of a guaranty, all under and pursuant to each of the Affiliate's respective Master Indenture;**

> **NOW, THEREFORE, BE IT RESOLVED, That the Board of Trustees of AHERF hereby approves and authorizes the use of a line of credit to be secured through a bank or banks with an amount not to exceed $100 million and a term not to exceed three (3) years; and**

> **FURTHER RESOLVED, That the officers of AHERF, each severally, are authorized and directed to execute and deliver on behalf of and in the name of AHERF any and all instruments, agreements or documents that may be required by the bank or banks in order to effect the intent of these Resolutions.**

## VIII.    Information Items

A.    Management of Human Resources at AHERF

Mr. Kasperbauer presented the report on the Management of Human Resources at AHERF, as information.

PGH: 24869.1

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 27

B.    Allegheny Health, Education and Research Foundation Management Report

The Annual Report to the Board of Trustees was presented at the meeting. Mr. Abdelhak discussed his intent to schedule an AHERF Board meeting in the spring with an expanded format to appropriately address system-wide strategies and discuss modifications to those strategies to support AHERF's Mission and Vision. Mr. Abdelhak stated that he envisioned an open format which would allow for feedback from every Trustee. The possibility of holding the meeting on a Saturday was suggested.

C.    Reports From Supported Organizations

1.    Allegheny General Hospital

Mr. Sanzo presented the Report from the President and CEO of Allegheny General Hospital for the First Quarter, Fiscal Year 1997, to the Board as information. He noted that AGH is currently ahead of plan.

2.    Allegheny Integrated Health Group

Dr. Kaye presented the Report from the President and CEO of Allegheny Integrated Health Group as information. He emphasized the significant growth that has taken place. He noted that the revenue realized per physician annually is currently $3 million and is expected to reach $6 million per physician in Philadelphia.

3.    Allegheny-Singer Research Institute

Dr. McMaster presented the Allegheny-Singer Research Institute Report as information. He noted that Stephen Vatner, M.D. has been appointed Director of the Institute for Cardiovascular Research for the University.

4.    Allegheny University Hospitals

Dr. Kaye presented the Report from the President and CEO of Allegheny University Hospitals to the Board as information, emphasizing that operational activity has dramatically increased over the past year.

PGH: 24869.1

PR-1-000766

Annual Meeting of the Board of Trustees of AHERF
December 12, 1996
Page 28

5.  Allegheny University of the Health Sciences

Dr. Ross presented the Report of the Provost of Allegheny University of the
Health Sciences as information. He reported on the continued advancement
of the quality of educational programs and the move to full integration of
relevant programs. Research initiatives have experienced exponential growth.
A major goal is the assurance of full interaction between researchers from the
Philadelphia and Allegheny campuses.

6.  St. Christopher's Hospital for Children

Mr. Bland presented the Report of the President and CEO of St.
Christopher's Hospital for Children as information. He noted a downturn in
pediatric activity throughout the Delaware Valley and discussed the
development of our SCHC pediatric program at Allegheny General Hospital.

D.  Management Report from Managed Organization

Ohio Valley Health Services Educational Corporation

Mr. Galinski presented the President's Report of Ohio Valley Health Services
Educational Corporation as information, noting that OVHSEC is making money.

IX.  Adjournment

There being no further business, the meeting was adjourned.

Respectfully submitted,

Nancy A. Wynstra, Esq.
Secretary

NOTED ATTACHMENTS: Meeting Notice; Unanimous Consent; Bylaw Amendments; Conflict of
Interest Policy; Fiscal Year Audited 1996 Financial Statements; Fiscal Year 1996 Report on AHERF
Internal Controls; Operations and Financials for the Period Ended September 30, 1996

PGH: 24869.1

PR-1-000767

**EXHIBIT  0899**

## OFFICIAL STATEMENT DATED MARCH 9, 1995

### NEW ISSUE — BOOK-ENTRY ONLY

*In the opinion of Bond Counsel, assuming compliance with the requirements of federal tax laws, interest on the 1995A Bonds is excludable from gross income for purposes of federal income tax laws, as presently enacted and construed. Interest on the 1995A Bonds will not be an item of tax preference for determining either individual or corporate alternative minimum tax, but interest on the 1995A Bonds held by certain corporate bondholders may be indirectly subject to alternative minimum tax and an environmental tax because interest on the 1995A Bonds may be included in the earnings and profits of such corporate bondholders. In the opinion of Bond Counsel, under the laws of the Commonwealth of Pennsylvania as presently enacted and construed, the 1995A Bonds are exempt from personal property taxes in Pennsylvania, and the interest on the 1995A Bonds is exempt from Pennsylvania personal income and corporate net income tax. See "Tax Exemption" herein.*

**$50,000,000**
# ALLEGHENY COUNTY
# HOSPITAL DEVELOPMENT AUTHORITY
**(Commonwealth of Pennsylvania)**
**Hospital Revenue Bonds**
**Series A of 1995**
**(Allegheny General Hospital Project)**

ALLEGHENY GENERAL HOSPITAL

**Dated: March 1, 1995.**                                    **Due: September 1, as shown below**

The 1995A Bonds will be issued by the Allegheny County Hospital Development Authority (the "Authority") under a Trust Indenture dated as of March 1, 1995 (as amended and supplemented from time to time, the "Bond Indenture"), between the Authority and Mellon Bank, N.A., as trustee, paying agent and bond registrar (in such capacities, the "Bond Trustee"), and will be payable from and secured by a pledge of certain funds held by the Bond Trustee under the Bond Indenture and from payments to the Bond Trustee, as assignee of the Authority, under a Loan Agreement dated as of March 1, 1995 (the "Loan Agreement"), between the Authority and Allegheny General Hospital ("AGH"). In addition, the 1995A Bonds will be payable from amounts payable to the Bond Trustee under the 1995A Master Note described herein and issued by AGH under the Master Indenture described herein between AGH and Allegheny-Singer Research Institute (each an "Obligated Affiliate" and collectively, the "Obligated Group") and PNC Bank, National Association, as trustee (the "Master Trustee"), which 1995A Master Note is secured by a pledge and assignment in favor of the Master Trustee of the Unrestricted Receivables of the Obligated Affiliates.

The 1995A Bonds will be issued as fully registered bonds, and, when issued, will be registered in the name of and held by Cede & Co., as nominee for The Depository Trust Company ("DTC"), New York, New York. DTC will act as securities depository for the 1995A Bonds. Purchases of the 1995A Bonds will be made only in book-entry form, in denominations of $5,000 and integral multiples thereof, and purchasers will not receive certificates representing their interests in the 1995A Bonds. So long as DTC, or its nominee, Cede & Co., is the registered owner of the 1995A Bonds, payments of the principal of, redemption premium, if any, and interest on the 1995A Bonds (payable semiannually on March 1 and September 1 of each year, commencing September 1, 1995) will be made by the Bond Trustee directly to Cede & Co. Disbursement of such payments to the DTC Participants is the responsibility of DTC, and disbursement of such payments to Beneficial Owners of the 1995A Bonds is the responsibility of the DTC Participants and the Indirect Participants. See "BOOK-ENTRY-ONLY SYSTEM" herein.

THE 1995A BONDS ARE SUBJECT TO MANDATORY, OPTIONAL AND EXTRAORDINARY OPTIONAL REDEMPTION PRIOR TO MATURITY AS DESCRIBED HEREIN.

Scheduled payment of the principal of and interest on the 1995A Bonds when due will be guaranteed by a municipal bond insurance policy to be issued simultaneously with the delivery of the 1995A Bonds by MUNICIPAL BOND INVESTORS ASSURANCE CORPORATION.

**MBIA**

The 1995A Bonds will be limited obligations of the Authority and will not be a debt or liability of the County of Allegheny, the Commonwealth of Pennsylvania or any political subdivision, agency or municipality thereof other than the Authority. Neither the general credit of the Authority nor the credit or taxing power of the County of Allegheny, the Commonwealth of Pennsylvania or any political subdivision, agency or municipality thereof, will be pledged for the payment of the 1995A Bonds. The Authority has no taxing power.

**MATURITY SCHEDULE**
**$15,360,000 Serial Bonds**
(plus accrued interest from March 1, 1995)

| Year (September 1) | Amount | Interest Rate | Price or Yield | Year (September 1) | Amount | Interest Rate | Price or Yield |
|---|---|---|---|---|---|---|---|
| 1996 | $ 955,000 | 4.65% | 100% | 2002 | $1,285,000 | 5.30% | 5.35% |
| 1997 | 1,000,000 | 4.75 | 100 | 2003 | 1,355,000 | 5.35 | 5.45 |
| 1998 | 1,050,000 | 4.80 | 4.90 | 2004 | 1,430,000 | 5.45 | 5.55 |
| 1999 | 1,100,000 | 4.90 | 5.00 | 2005 | 1,515,000 | 5.55 | 5.65 |
| 2000 | 1,160,000 | 5.10 | 5.20 | 2006 | 1,600,000 | 5.60 | 5.70 |
| 2001 | 1,220,000 | 5.25 | 5.30 | 2007 | 1,690,000 | 5.70 | 5.80 |

**$5,725,000   6.00% Term Bonds due September 1, 2010, Yield 6.10%**
**$12,220,000   6.20% Term Bonds due September 1, 2015, Yield 6.30%**
**$16,695,000   6.25% Term Bonds due September 1, 2020, Yield 6.35%**
(plus accrued interest from March 1, 1995)

The 1995A Bonds are offered when, as and if issued by the Authority and accepted by the Underwriter subject to prior sale or withdrawal or modification of the offer without notice, and subject to receipt of the approving legal opinion of Ballard Spahr Andrews & Ingersol, Philadelphia, Pennsylvania, Bond Counsel. Certain legal matters will be passed upon for Allegheny General Hospital and the Obligated Affiliates by its special counsel, Foley & Lardner, Chicago, Illinois, and by Nancy A. Wynstra, Esquire, Executive Vice President and General Counsel of Allegheny Health, Education and Research Foundation; for the Authority by its solicitor, Mead J. Mulvihill, Jr., Esquire, Pittsburgh, Pennsylvania; and for the Underwriter by its counsel, Drinker Biddle & Reath, Philadelphia, Pennsylvania. It is expected that the 1995A Bonds in definitive form will be available for delivery in New York, New York, on or about March 23, 1995.

# PNCSECURITIES

GOV 19747

Ex - 899

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Introductory Statement | 1 |
| Plan of Financing | 3 |
| The Obligated Group | 4 |
| The Authority | 5 |
| The 1995A Bonds | 6 |
| Book-Entry-Only System | 9 |
| Sources of Payment and Security for the 1995A Bonds | 11 |
| Municipal Bond Insurance Policy | 13 |
| Bond Debt Service Requirements | 15 |
| Bondholders' Risks | 16 |
| Litigation | 32 |
| Legal Matters | 32 |
| Tax Exemption | 32 |
| The Bond Trustee and Master Trustee | 33 |
| Underwriting | 34 |
| Ratings | 34 |
| Independent Accountants | 34 |
| Financial Advisor | 34 |
| Additional Information | 34 |
| Miscellaneous | 35 |

**APPENDIX A:** The Obligated Group
**APPENDIX B:** Consolidated Financial Statements of the Obligated Group for the Two Years Ended June 30, 1994
**APPENDIX C:** Summaries of Certain Provisions of the Bond Indenture and the Loan Agreement
**APPENDIX D:** Summary of the Restated and Amended Master Trust Indenture
**APPENDIX E:** Proposed Form of Opinion of Bond Counsel
**APPENDIX F:** Specimen Municipal Bond Insurance Policy

---

The information set forth herein has been obtained from Allegheny County Hospital Development Authority, Allegheny General Hospital and other sources that are believed to be reliable, but such sources are not guaranteed as to the accuracy or completeness, and the information is not to be construed as a representation by the Underwriter, and, except for the information concerning the Authority under the Heading "THE AUTHORITY," it is not to be construed as a representation by the Authority. The information and expressions of opinion herein are subject to change without notice, and neither the delivery of this Official Statement nor any sale made hereunder shall, under any circumstances, create any implication that there has been no change in the affairs of the Authority or the Obligated Group since the date hereof.

No dealer, broker, salesman or other person has been authorized by the Authority, the Underwriter, AGH or any Obligated Affiliate to give any information or to make any representations, other than those in this Official Statement, and if given or made, such other information or representations must not be relied upon as having been authorized by any of the foregoing. This Official Statement does not constitute an offer to sell or the solicitation of an offer to buy, and there shall not be any sale of, the Bonds in any jurisdiction in which it is unlawful to make such offer, solicitation or sale.

IN CONNECTION WITH THIS OFFERING, THE UNDERWRITER MAY OVER-ALLOT OR EFFECT TRANSACTIONS THAT STABILIZE OR MAINTAIN THE MARKET PRICE OF THE 1995A BONDS AT A LEVEL ABOVE THAT WHICH MIGHT OTHERWISE PREVAIL IN THE OPEN MARKET. SUCH STABILIZING, IF COMMENCED, MAY BE DISCONTINUED AT ANY TIME.

GOV 19748

# OFFICIAL STATEMENT

## $50,000,000
## Allegheny County Hospital Development Authority
### (Commonwealth of Pennsylvania)
## Hospital Revenue Bonds
## Series A of 1995
## (Allegheny General Hospital Project)

## INTRODUCTORY STATEMENT

This Official Statement, including the cover page and appendices, is furnished in connection with the offering of $50,000,000 aggregate principal amount of Hospital Revenue Bonds, Series A of 1995 (Allegheny General Hospital Project) (the "1995A Bonds"). For the definitions of certain capitalized terms used but not otherwise defined herein, reference should be made to Appendix C: "SUMMARIES OF CERTAIN PROVISIONS OF THE BOND INDENTURE AND THE LOAN AGREEMENT" or, if not defined therein, to Appendix D: "SUMMARY OF THE RESTATED AND AMENDED MASTER TRUST INDENTURE."

The 1995A Bonds will be issued pursuant to a Trust Indenture dated as of March 1, 1995 (the "Bond Indenture"), between the Authority and Mellon Bank, N.A., as trustee (the "Bond Trustee"), and will be payable solely from amounts paid by Allegheny General Hospital ("AGH"), a Pennsylvania nonprofit corporation, under a Loan Agreement dated as of March 1, 1995 (the "Loan Agreement"), between the Authority and AGH, and from amounts held from time to time by the Bond Trustee in the funds and accounts established under the Bond Indenture. The 1995A Bonds are being issued for the purpose of providing funds to undertake a project (the "1995 Project") consisting of payment of or reimbursement to AGH for recent expenditures for the construction, acquisition and renovation of certain facilities of AGH, including the acquisition of certain equipment, and to pay certain costs of issuance of the 1995A Bonds, all as more particularly described under "PLAN OF FINANCING" below. In connection with the issuance of the 1995A Bonds, the Authority will loan the proceeds thereof to AGH pursuant to the Loan Agreement for the purpose of paying the costs of the 1995 Project. Under the Loan Agreement, AGH will be obligated to make payments to the Bond Trustee, as assignee of the Authority, in amounts and at times sufficient to pay the principal of and interest on the 1995A Bonds and certain other costs and expenses.

To evidence and secure the payment obligations of AGH under the Loan Agreement, AGH will deliver to the Authority, and the Authority will assign to the Bond Trustee a promissory note dated as of March 1, 1995 (the "1995A Master Note"), in a principal amount equal to the principal amount of the 1995A Bonds. The 1995A Master Note will be issued under and pursuant to a Restated and Amended Master Trust Indenture dated April 7, 1993, between AGH and Allegheny-Singer Research Institute, a Pennsylvania nonprofit corporation ("ASRI"), and PNC Bank, National Association, as trustee (the "Master Trustee"), as supplemented by a First Supplemental Master Trust Indenture (the "First Supplemental Master Indenture") dated June 17, 1993, and a Second Supplemental Master Trust Indenture (the "Second Supplemental Master Indenture") dated as of March 1, 1995 (collectively, the "Master Indenture"). AGH and ASRI are each sometimes referred to herein individually as an "Obligated Affiliate" and together as the "Obligated Affiliates" or the "Obligated Group." The 1995A Master Note will constitute the joint and several obligation of the Obligated Affiliates under the Master Indenture. Amounts paid to the Bond Trustee under the 1995A Master Note by any Obligated Affiliate will be credited against amounts payable under the Loan Agreement.

GOV 19749

Certain prior Master Notes have been issued under the Master Indenture to evidence additional long-term indebtedness of the Obligated Affiliates, which Master Notes are secured equally and ratably with the 1995A Master Note under the Master Indenture by a pledge and assignment of the Unrestricted Receivables of each Obligated Affiliate, subject in each case to Permitted Encumbrances (as defined in the Master Indenture) and to other limitations herein described. See "SOURCES OF PAYMENT AND SECURITY FOR THE 1995A BONDS."

Scheduled payment of the principal of and interest on the 1995A Bonds when due will be guaranteed by a municipal bond insurance policy (the "Bond Insurance Policy") to be issued simultaneously with the delivery of the 1995A Bonds by Municipal Bond Investors Assurance Corporation (the "Bond Insurer"). For a more complete description of the Bond Insurance Policy and the Bond Insurer, see "MUNICIPAL BOND INSURANCE POLICY" herein.

Each of the Obligated Affiliates is a controlled affiliate of Allegheny Health, Education and Research Foundation ("AHERF"), a Pennsylvania nonprofit corporation. Allegheny Neuropsychiatric Institute, which previously had been an Obligated Affiliate, was merged with and into AGH in November 1994. AGH continues to operate the programs of Allegheny Neuropsychiatric Institute. For a more detailed description of the facilities owned and operated, and the services provided, by the Obligated Group and AHERF and its other affiliates, see Appendix A hereto. **Neither AHERF nor any of its controlled affiliates or subsidiaries, other than the Obligated Affiliates, have any payment or other obligations under the Master Indenture or on any Notes or Guaranties issued thereunder, including the 1995A Master Note. Only AGH is obligated under the Loan Agreement.** See "THE OBLIGATED GROUP" below and in Appendix A hereto for a further description of the corporate structure under which the Obligated Group exists and operates.

The Authority is a body corporate and politic and a public instrumentality of the Commonwealth of Pennsylvania created pursuant to the Pennsylvania Municipality Authorities Act of 1945, Act of May 2, 1945, P.L. 382, as amended (the "Act"). **The 1995A Bonds are limited obligations of the Authority payable only out of the revenues derived by the Authority from the Loan Agreement and the 1995A Master Note, or otherwise available under the Bond Indenture, and do not constitute obligations of the County of Allegheny, the Commonwealth of Pennsylvania or any political subdivision thereof. The Authority has no taxing power.**

AGH has requested and the Authority intends to issue approximately $50,000,000 of additional bonds (the "Additional 1995 Bonds") to pay the portion of the cost of the 1995 Project not funded by the 1995A Bonds. For a more complete description of the proposed issuance of the Additional 1995 Bonds, see "PLAN OF FINANCING -- Additional Indebtedness" below. While AGH believes that the Additional 1995 Bonds will be issued simultaneously with or within a short time after the issuance of the 1995A Bonds, no assurance can be made that the Additional 1995 Bonds will be issued, or if issued, issued in the aggregate amount, or upon the terms, currently contemplated.

Summaries of certain provisions of the 1995A Bonds, the Bond Indenture and the Loan Agreement are contained in Appendix C: "SUMMARIES OF CERTAIN PROVISIONS OF THE BOND INDENTURE AND THE LOAN AGREEMENT." Summaries of certain provisions of the Master Indenture are set forth in Appendix D: "SUMMARY OF THE RESTATED AND AMENDED MASTER TRUST INDENTURE." The descriptions and summaries of such documents set forth in this Official Statement do not purport to be comprehensive or definitive and reference should be made to each such document for complete details of all terms and conditions, copies of which are on file at the principal

- 2 -

GOV 19750

office of the Bond Trustee in Pittsburgh, Pennsylvania. All statements herein are qualified in their entirety by the terms of each such document, and by reference to laws and principles of law and equity relating to or affecting generally the enforcement of creditors' rights.

## PLAN OF FINANCING

### The 1995 Project

The 1995 Project to be financed with the proceeds of the 1995A Bonds consists of the payment of or reimbursement to AGH for recent expenditures for (i) the construction, renovation and equipping of the Northwest wing of AGH's hospital campus and the acquisition of certain capital equipment and other capital improvements at such hospital campus; (ii) the acquisition of an off-campus facility within the City of Pittsburgh for AGH, located near the existing AGH campus in the City of Pittsburgh, and the renovations and equipping of such facility for health care and related purposes; and (iii) a portion of the costs of issuing the 1995A Bonds.

### Additional Indebtedness

AGH has requested and the Authority intends to issue approximately $50,000,000 of Additional 1995 Bonds to pay the portion of the cost of the 1995 Project not funded by the 1995A Bonds. The Additional 1995 Bonds would be issued by the Authority either as an additional series of Bonds under the Bond Indenture or under a separate trust indenture between the Authority and a designated trustee. If issued under the Bond Indenture, the Additional 1995 Bonds would be equally and ratably secured thereunder by among other things, additional amounts to be paid by AGH under the Loan Agreement. In any event, payment of amounts due from AGH in respect of the Additional 1995 Bonds would be evidenced by an additional Master Note issued by AGH under the Master Indenture, which Master Note would be equally and ratable secured thereunder with the 1995A Master Note. It is anticipated that the Additional 1995 Bonds will bear interest at variable interest rates and will be subject to periodic optional and mandatory tenders for purchase by the holders thereof. AGH expects that the Additional 1995 Bonds will be additionally secured by, or that amounts due in respect of Additional 1995 Bonds tendered for purchase will be payable from, amounts available under a bank credit or liquidity facility to be obtained solely for the benefit and security of the holders of the Additional 1995 Bonds. Reimbursement of amounts due from AGH in respect of such credit or liquidity facility would be evidenced by an additional Master Note to be issued under the Master Indenture. While AGH believes that the Additional 1995 Bonds will be issued simultaneously with or within a short time after the issuance of the 1995A Bonds, no assurance can be made that the Additional 1995 Bonds will be issued, or if issued, issued in the aggregate amount, or upon the terms, currently contemplated. If issued, the proceeds of the Additional 1995 Bonds, after payment of costs of issuance, would be applied to the reimbursement to AGH of recent capital expenditures comprising a part of the 1995 Project.

- 3 -

GOV 19751

**Estimated Sources and Uses of Funds**

The following table sets forth the estimated sources and uses of funds (exclusive of earnings on amounts deposited in the Funds and Accounts established under the Bond Indenture) in connection with the 1995 Project:

*Sources of Funds:*

| | |
|---|---|
| Principal Amount of the 1995A Bonds . . . . . . . . . . . . . . . . . . . . . . | $ 50,000,000 |
| Principal Amount of Additional 1995 Bonds . . . . . . . . . . . . . . . . . | 50,000,000 |
| Accrued Interest—1995A Bonds . . . . . . . . . . . . . . . . . . . . . . . . . | 180,433 |
| Total Sources of Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $100,180,433 |

*Uses of Funds:*

| | |
|---|---|
| Reimbursement for Capital Expenditures . . . . . . . . . . . . . . . . . . . . | $ 66,061,171 |
| Deposit to Construction Fund . . . . . . . . . . . . . . . . . . . . . . . . . . | 31,558,501 |
| Deposit to Debt Service Fund (Accrued Interest—1995A Bonds) . . . . . . | 180,433 |
| Original Issue Discount—1995A Bonds . . . . . . . . . . . . . . . . . . . . . | 487,514 |
| Costs of Issuance[1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1,892,814 |
| Total Uses of Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $100,180,433 |

---

(1)    Includes costs of issuing the 1995A Bonds and the estimated costs of issuing the Additional 1995 Bonds. Such costs include underwriters' discounts, bond insurance premium, credit facility fees, fees and expenses of the Bond Trustee, Master Trustee and Authority, and legal, printing and other expenses.

### THE OBLIGATED GROUP

AGH owns and operates an acute care hospital located in Pittsburgh, Pennsylvania licensed for 835 beds, including 755 acute care beds of which 716 are currently staffed, providing tertiary care hospital services to inhabitants of western Pennsylvania and nearby areas of other states. AGH is also the Pittsburgh campus of The Medical College of Pennsylvania and Hahnemann University, the main campus of which is located in Philadelphia, Pennsylvania. AGH's licensed beds include an 80-bed Continuing Care Center which offers skilled nursing services to former patients of AGH's acute care hospital, and 59 psychiatric beds. AGH provides inpatient and outpatient psychiatric services to patients with behavioral disturbances which result from brain injuries and neurological disorders. These services were formerly provided by Allegheny Neuropsychiatric Institute ("ANI") as described below. The Continuing Care Center and the psychiatric services of ANI are both located at AGH's hospital campus in Pittsburgh, Pennsylvania. ASRI, also located at AGH, performs clinical and non-clinical research.

Allegheny Neuropsychiatric Institute, which previously had been an Obligated Affiliate, was merged with and into AGH in November 1994. As described above, AGH continues to operate the programs of ANI.

- 4 -

GOV 19752

The sole corporate member of AGH is Allegheny Health, Education and Research Foundation ("AHERF"). AHERF and AGH are the only members of ASRI. Other entities affiliated with AHERF are described in Appendix A hereto. Neither AHERF nor any of its affiliated corporations, other than AGH and ASRI, are Obligated Affiliates or are in any manner responsible for the financial obligations of the Obligated Group.

More complete information with respect to the Obligated Group is set forth in Appendix A hereto.

## THE AUTHORITY

The Authority is a body corporate and politic created pursuant to a resolution of the Board of Commissioners of the County of Allegheny, Pennsylvania (the "County"), pursuant to the Act. The Authority was created in 1971. An amendment to the Authority's Articles of Incorporation was filed by the Authority with the Secretary of the Commonwealth of Pennsylvania on July 22, 1988, extending the Authority's existence for 50 years from that date. The Authority is empowered under the Act to acquire, finance, hold, construct, improve, maintain, own, operate and lease, in the capacity of either lessor or lessee, hospitals and health centers and other projects acquired, constructed or improved for hospital purposes. The Authority's address is 400 Fort Pitt Commons, 445 Fort Pitt Boulevard, Pittsburgh, Pennsylvania 15219.

The governing body of the Authority is a board consisting of nine members appointed by the Board of Commissioners of the County, the latter being elected officials. Members of the Board of the Authority are appointed for staggered five year terms and may be reappointed. The current members of the Authority's Board and their respective offices are:

| Name | Office |
|------|--------|
| Louis A. Vidic* | Chairman |
| Michael J. Kaufman** | Vice Chairman |
| Sanford D. Rivers | Treasurer |
| George J. Tkach | Secretary |
| Joseph R. Babish | Assistant Treasurer |
| John H. Miller** | Assistant Secretary |
| Henry H. Kramer | Second Vice Chairman |
| Douglas Long* | Second Assistant Secretary |
| Jack Wise | Second Assistant Treasurer |

---

* Term expired December 31, 1994. Members serve until their successors are appointed and qualified.
** Term expired December 31, 1993. Members serve until their successors are appointed and qualified.

The Authority has issued revenue bonds and notes for various projects. Each of the bond and note issues is payable from receipts and revenues derived by the Authority from the entity on whose behalf the bonds or notes were issued and is secured separately and distinctly from the issues for every other entity. The Authority expects from time to time to enter into separate indentures or other agreements for projects that will provide for the issuance of bonds or notes to be secured by revenues

- 5 -

GOV 19753

derived from such entities. The Authority has never been and presently is not in default under any of the foregoing obligations.

THE AUTHORITY HAS NOT PREPARED OR ASSISTED IN THE PREPARATION OF THIS OFFICIAL STATEMENT, EXCEPT THE STATEMENTS UNDER THIS SECTION AND UNDER THE HEADING "LITIGATION" BELOW IN RESPECT OF THE AUTHORITY, AND EXCEPT AS AFORESAID, THE AUTHORITY IS NOT RESPONSIBLE FOR ANY STATEMENTS MADE HEREIN.    ACCORDINGLY, EXCEPT AS AFORESAID, THE AUTHORITY DISCLAIMS RESPONSIBILITY FOR THE DISCLOSURE SET FORTH HEREIN MADE IN CONNECTION WITH THE OFFER, SALE AND DISTRIBUTION OF THE 1995A BONDS.

AGH has agreed pursuant to the Loan Agreement to indemnify the Authority and to hold it harmless from and against any liabilities which may arise out of (i) the Authority's participation in the transactions contemplated by the Loan Agreement and (ii) the issuance of the 1995A Bonds. Reference must be made to the applicable documents for a more complete description of these provisions.

## THE 1995A BONDS

### General Description

The 1995A Bonds will be issued as registered bonds without coupons in denominations of $5,000 or any integral multiple thereof. The 1995A Bonds will bear interest at the rates and mature, subject to the redemption provisions described below, in the amounts and on the dates set forth on the cover page hereof. Interest on the 1995A Bonds is payable on March 1 and September 1 of each year (each a "Scheduled Interest Payment Date"), commencing September 1, 1995, until maturity or redemption prior to maturity.

Subject to the provisions described under "BOOK-ENTRY ONLY SYSTEM" below, the principal or redemption price of the 1995A Bonds is payable upon presentation and surrender thereof at the principal corporate trust office of the Bond Trustee as the same shall become due and payable. Interest will be paid by check or draft mailed to the persons appearing as registered owners on the registration books kept by the Bond Trustee on each Regular Record Date, which is the fifteenth day of the month next preceding each Scheduled Interest Payment Date; provided, however, that if funds on any Scheduled Interest Payment Date are insufficient to pay the interest then due, any defaulted interest will cease to be payable to the registered owner as of the regular record date but will instead be payable on a special interest payment date established by the Bond Trustee for payment of such defaulted interest when sufficient funds are available to the registered owner as of a Special Record Date established by the Bond Trustee in accordance with the provisions of the Bond Indenture. Upon written request to the Bond Trustee on file at least one Business Day prior to a Regular Record Date, registered owners of $1,000,000 or more in aggregate principal amount of 1995A Bonds may elect to receive payments of interest by wire transfer to a designated account commencing on the first Interest Payment Date following such Regular Record Date.

So long as The Depository Trust Company ("DTC"), New York, New York, or its nominee, Cede & Co., is the registered owner of the 1995A Bonds, payments of the principal of and interest on the 1995A Bonds will be made by the Bond Trustee directly to Cede & Co. Disbursements of such payments to the DTC Participants (as hereinafter defined) is the responsibility of DTC. Disbursement

- 6 -

GOV 19754

of such payments to the owners of beneficial interests in the 1995A Bonds is the responsibility of the DTC Participants and the Indirect Participants (as hereinafter defined). See "BOOK-ENTRY ONLY SYSTEM" below.

### Transfer

Subject to the provisions described under "BOOK-ENTRY ONLY SYSTEM" below, a 1995A Bond may be transferred only upon presentation thereof to the Bond Trustee. Such 1995A Bond must be accompanied by an endorsement duly executed by the registered owner or a duly appointed attorney. No charge will be imposed in connection with any transfer or exchange, except for taxes or governmental charges related thereto. The Bond Trustee is not required to transfer or exchange any 1995A Bond for a period of 15 days immediately preceding the date of mailing of any notice of redemption or at any time following the mailing of any such notice if the 1995A Bonds or any portion of a 1995A Bond to be transferred or exchanged has been called for redemption.

### Redemption Provisions

*Mandatory Sinking Fund Redemption.* The 1995A Bonds maturing on September 1, 2010, September 1, 2015 and September 1, 2020 (the "1995A Term Bonds"), are subject to mandatory sinking fund redemption by the Authority, prior to maturity, in direct order of maturity and within each maturity by lot, at a redemption price equal to 100% of the principal amount thereof plus accrued interest to the redemption date, on September 1 of the years and in the amounts as follows:

| Date (September 1) | Principal Amount | Date (September 1) | Principal Amount |
|---|---|---|---|
| 2008 | $1,795,000 | 2015* | $2,755,000 |
| 2009 | 1,905,000 | 2016 | 2,935,000 |
| 2010* | 2,025,000 | 2017 | 3,125,000 |
| 2011 | 2,150,000 | 2018 | 3,325,000 |
| 2012 | 2,290,000 | 2019 | 3,540,000 |
| 2013 | 2,435,000 | 2020* | 3,770,000 |
| 2014 | 2,590,000 | | |

\* Maturity

The principal amount of 1995A Term Bonds otherwise required to be redeemed may be reduced by the principal amount of 1995A Term Bonds theretofore delivered to the Bond Trustee by AGH in lieu of cash payments under the Loan Agreement or purchased by the Bond Trustee out of moneys in the Debt Service Fund established under the Bond Indenture and which have not theretofore been applied as a credit against any sinking fund installment. In addition, as described under "Optional Redemption" and "Extraordinary Redemption" below, the principal amount of 1995A Bonds otherwise required to be redeemed may also be reduced by the application to such redemption obligation of a partial optional or extraordinary redemption of such 1995A Bonds in the manner designated by the Authority, at the direction of AGH.

*Optional Redemption.* The 1995A Bonds are subject to optional redemption by the Authority, prior to maturity, at the direction of AGH, on or after September 1, 2005, in whole or in part at any

- 7 -

GOV 19755