## Application of Moneys Upon Default

Following an Event of Default, any moneys on deposit in any Fund established under the Bond Indenture and any moneys received by the Bond Trustee upon the exercise of remedies under the Bond Indenture shall be applied:

First: to the payment of the costs of the Bond Trustee, including counsel fees, any disbursements of the Bond Trustee with interest thereon and its reasonable compensation;

Second: to the payment of all interest then due or overdue on Outstanding Bonds or, if the amount available before the payment of interest is insufficient for such purpose, to the payment of interest ratably in accordance with the amount due in respect of each Bond; and

Third: to the payment of the outstanding principal amount due or overdue, by acceleration or otherwise, with respect to all Bonds or, if the amount available for the payment of principal is insufficient for such purpose, to the payment of principal ratably in accordance with the amount due in respect of each Bond.

## Employment and Duties of the Bond Trustee

The Bond Trustee accepts the trusts imposed upon it by the Indenture, and agrees to observe and perform those trusts; all in the manner provided therein and subject to the conditions and terms thereof.

## Removal and Resignation of the Bond Trustee

The Bond Trustee may resign by notifying the Issuer, the Borrower and the Bond Insurer. The Borrower Representative or the holders of at least 25 percent in principal amount of the Outstanding Bonds may remove the Bond Trustee with the consent of the Bond Insurer (which consent shall not be required if the Bond Insurer is in default under the Bond Insurance Policy) by notifying the Bond Trustee, and may appoint a successor Bond Trustee with the consent of the Issuer and the Bond Insurer (so long as the Bond Insurer is not in default under the Bond Insurance Policy). Upon any such removal or resignation, the Borrower shall promptly appoint a successor Bond Trustee by an instrument in writing, which successor Bond Trustee shall give notice of such appointment to all Bondholders as soon as practicable; provided, that in the event the Borrower does not appoint a successor Bond Trustee prior to the date specified in the notice of resignation as the date when such resignation shall take effect, the resigning Bond Trustee or any Bondholder may petition any appropriate court having jurisdiction to appoint a successor Bond Trustee. Any removal or resignation of a Bond Trustee and appointment of a successor Bond Trustee will become effective only upon the acceptance of the appointment by the successor Bond Trustee and the transfer by the retiring Bond Trustee to the successor Bond Trustee of all property held by it under the Indenture as Bond Trustee.

## Rights of the Bond Insurer

Notwithstanding any provisions of the Indenture to the contrary, unless the Bond Insurer is in default under the Bond Insurance Policy, the Bond Insurer shall have the following rights upon the occurrence of an Event of Default under the Indenture:

GOV 19856

(a)    The Bond Insurer shall have the right to act on behalf of the holders of 1995A Bonds for the purposes of any provision of the Indenture which permits Bondholders to direct and control the exercise of rights and remedies by the Bond Trustee or to exercise such rights and remedies directly.

(b)    The Bond Insurer shall have the exclusive right to act on behalf of the holders of 1995A Bonds for the purposes of any provision in the Indenture which requires the Bond Trustee to obtain the consent of Bondholders.

(c)    Neither the 1995A Master Note nor the 1995A Bonds shall be accelerated for any cause without the prior written consent of the Bond Insurer.

(d)    No Event of Default may be waived without the prior written consent of the Bond Insurer.

The foregoing will not apply to any rights of the Bond Trustee or the holders of 1995A Bonds to demand and receive payments under the Bond Insurance Policy. For the purposes of subparagraphs (a) and (b) above, the Bond Insurer shall be treated as if it were the holder of all Outstanding 1995A Bonds.

**Amendments to Bond Indenture**

The Bond Indenture may be amended or supplemented from time to time, without the consent of the Bondholders, for one or more of the following purposes: (a) in connection with the issuance of Additional Bonds, to set forth matters which are specifically required or permitted by the Bond Indenture or other matters which will not adversely affect the holders of the Bonds then Outstanding; (b) to add additional covenants of the Authority or to surrender any right or power conferred upon the Authority; (c) to add, revise or remove provisions relating to the payment of arbitrage rebate to the United States, provided that the Bond Trustee receives a written opinion of nationally recognized bond counsel to the effect that the amendment will not adversely affect the exclusion from federal income taxation of the interest on any Bonds then Outstanding; (d) to authorize the issuance of unregistered Bonds bearing coupons, provided that the Bond Trustee receives a written opinion of nationally recognized bond counsel that the amendment will not adversely affect the exemption from federal income taxation of the interest on any Bonds then Outstanding; (e) to make conforming changes in connection with any amendment of the Loan Agreement; (f) to obtain or maintain any credit rating (or ratings) on any series of Bonds; and (g) to cure any ambiguity or to cure, correct or supplement any defective (whether because of any inconsistency with any other provision of the Bond Indenture or otherwise) provision of the Bond Indenture or make any other amendments; provided that, in either case, the amendment in question does not, in the judgment of the Bond Trustee (which judgment may be made in reliance upon the opinion of counsel), materially impair the security of the Bond Indenture or materially adversely affect the Bondholders.

The Bond Indenture may be amended or supplemented from time to time with the approval of the holders of at least 51% in aggregate principal amount of the Outstanding Bonds; provided, that (a) no amendment shall be made which adversely affects one or more but less than all series of Bonds without the consent of the holders of at least 51% of the then Outstanding Bonds of each series so affected, (b) no amendment shall be made which affects the rights of some but less than all the Outstanding Bonds of any one series without the consent of the holders of 51% of the Bonds so affected,

GOV 19857

and (c) no amendment which alters the interest rates on any Bonds, the maturities, interest payment dates or redemption provisions of any Bonds or the security provisions of the Bond Indenture may be made without the consent of the holders of all Outstanding Bonds adversely affected thereby.

## Amendments to Loan Agreement

The Loan Agreement may be amended without the consent of the Bondholders (a) in connection with the issuance of Additional Bonds, to set forth such matters as are permitted or required under the Bond Indenture in connection with such issuance or to set forth such other matters as will not adversely affect the holders of the Bonds then Outstanding, (b) to add, revise or remove provisions relating to the payment of arbitrage rebate to the United States, provided that the Borrower delivers a written opinion of nationally recognized bond counsel to the effect that the amendment will not adversely affect the exclusion from federal income taxation of the interest on any Bonds then Outstanding, (c) to add additional covenants of the Borrower or to surrender any right or power conferred upon the Borrower, (d) to make conforming changes in connection with any amendment of the Bond Indenture, (e) to obtain or maintain any credit rating (or ratings) on any series of bonds, or (f) to cure any ambiguity, inconsistency or formal defect or omission in the Loan Agreement or to make any other change in the Loan Agreement which, in the judgment of the Bond Trustee (which judgment may be made in reliance upon the opinion of counsel), does not materially adversely affect the rights of the holders of any Bonds. No prior notice of any amendments described in this paragraph shall be required.

Except for amendments, changes or modifications described above, neither the Authority nor the Bond Trustee shall consent to any amendment, change or modification of the Loan Agreement or waive any obligation or duty of the Borrower under the Loan Agreement without the written consent of the holders of not less than 51 percent in aggregate principal amount of the Outstanding Bonds affected thereby; provided, however, that no such waiver, amendment, change or modification shall permit termination or cancellation of the Loan Agreement, reduce the amounts payable by the Borrower under the provisions described under the heading "THE LOAN AGREEMENT - Repayment of Loan" herein or change the date when such payments are due without the consent of the holders of all the 1995A Bonds then Outstanding.

Any Supplemental Indenture which is executed pursuant to the provisions of the Indenture described in clauses (b), (e) or (g) under the second paragraph under " - Amendments to Bond Indenture" or any amendment or supplement to the Loan Agreement which is executed pursuant to the provisions of the Indenture described in clause (c) under " - Amendments to Loan Agreement" shall be subject to the prior written consent of the Bond Insurer (unless it is in default under the Bond Insurance Policy).

## Defeasance

When interest on and principal or redemption price (as the case may be) of all Outstanding Bonds have been paid, or there shall have been deposited with the Bond Trustee an amount, evidenced by moneys or Government Obligations, the principal of and interest on which, when due, will provide sufficient moneys fully to pay the Bonds at the maturity date or date fixed for redemption thereof, as well as all other sums payable under the Bond Indenture by the Authority, the right, title and interest of the Bond Trustee under the Bond Indenture shall thereupon cease and the Bond Trustee, on demand of the Authority, shall release the Bond Indenture and shall execute such documents to evidence such release as may be reasonably required by the Authority and shall turn over to the Borrower or to such

GOV 19858

person, body or authority as may be entitled to receive the same all balances remaining in any funds established under the Bond Indenture.

## Unclaimed Moneys

Moneys deposited with the Bond Trustee for the payment of Bonds which remain unclaimed four (4) years after the date payment thereof becomes due shall, upon written request of the Authority, if the Authority is not at the time to the knowledge of the Bond Trustee in default with respect to any covenant in the Bond Indenture or the Bonds contained, be paid to the Authority or, at the direction of the Authority, to the Borrower; and the holders of the Bonds for which the deposit was made shall thereafter be limited to a claim against the Authority; provided, however, that before making any such payment to the Authority or the Borrower, the Bond Trustee shall mail notice of such payment to the holders of all Bonds for which unclaimed moneys are being held.

## THE LOAN AGREEMENT

### The Loan

Upon the issuance of the 1995A Bonds, the Authority will lend the proceeds thereof to the Borrower for application toward the costs of the 1995 Project.  The loan will be made by depositing the proceeds of the 1995A Bonds with the Bond Trustee for application toward the purposes set forth in the Bond Indenture.

Upon compliance with the applicable requirements under the Bond Indenture, the Authority may issue Additional Bonds for the purpose of making additional loans to the Borrower.  Such additional loans will be made to and repaid by the Borrower under the Loan Agreement.

The Loan Agreement will remain in effect until such time as all Outstanding Bonds and all other expenses payable by the Borrower under the Loan Agreement have been paid or provisions for such payment has been made as described under the heading "THE BOND INDENTURE - Defeasance" herein.

### Repayment of Loan

Subject to modification in connection with the issuance of any Additional Bonds, the Borrower will be required to pay to the Bond Trustee, as the assignee of the Authority, the following sums:

(a)  To the Bond Trustee, on or before the 10th day next preceding each principal maturity or mandatory redemption date, an amount equal to the principal of 1995A Bonds becoming due on the immediately succeeding principal maturity or mandatory redemption date, subject to credit for other available funds in the manner provided in the Bond Indenture.

(b)  To the Bond Trustee, on or before the 10th day next preceding each Scheduled Interest Payment Date for the 1995A Bonds, an amount equal to the interest on the

GOV 19859

1995A Bonds becoming due on the immediately succeeding Scheduled Interest Payment Date, subject to credit for other available funds in the manner provided in the Bond Indenture.

(c)    To the Bond Trustee, at the times required under the Bond Indenture, such additional amounts as are required to make up any deficiency which may occur in any of the funds established under the Bond Indenture, including the Construction Fund.

## Additional Payments

The Borrower will be required to pay, upon requisition therefor, all Administrative Expenses of the Authority and the Bond Trustee.

The Borrower shall compute and pay to the United States government all sums representing arbitrage rebate pursuant to Section 148(f) of the Code. Such computations shall be made, with respect to the 1995A Bonds, on specified dates occurring every five years and upon retirement of the last 1995A Bond.

## Nature of Obligations

The obligations of the Borrower under the Loan Agreement are general obligations of the Borrower to which its full faith and credit are pledged. The Borrower's payment obligations in respect of the 1995A Bonds are evidenced and secured by the 1995A Master Note issued in favor of the Authority and assigned to the Bond Trustee. In connection with the issuance of any Additional Bonds, an additional Master Note shall be issued under the Master Indenture to evidence and secure the Borrower's payment obligations in respect of such Additional Bonds.

## Insurance Proceeds and Condemnation Awards

The Borrower shall notify the Authority and the Bond Trustee promptly of the receipt by any member of the Obligated Group of any insurance proceeds or condemnation awards when it is determined that such proceeds are to be applied to the redemption or prepayment of the Master Notes pursuant to the Master Indenture. Any amount so applied shall in turn be used to make a corresponding extraordinary redemption of 1995A Bonds pursuant to the Bond Indenture.

## Additional Covenants

In addition to the foregoing, the Loan Agreement will contain covenants which will require the Borrower, among other things, to: (a) comply in all material respects with applicable laws affecting the Borrower and the Facilities and operations of the Borrower; (b) take whatever actions are necessary to continue to be organized and operated in a manner which will preserve and maintain its status as an organization which is (i) described in Section 501(c)(3) of the Code, (ii) exempt from federal income taxes under Section 501(a) of the Code and (iii) not a private foundation under Section 509(a) of the Code; (c) pay to or for the account of the Authority all amounts needed to comply with the requirements of Section 148 of the Code; (d) perform and observe all of the covenants and agreements under the Master Indenture; (e) deliver annual financial statements and the independent public accountants reports thereon for each Fiscal Year to the Authority, the Bond Trustee and each Rating Agency; (f) indemnify the Bond Trustee for certain liabilities arising out of the issuance of Bonds or actions taken

GOV 19860

or omitted under the Bond Indenture or the Loan Agreement; (g) neither take or omit to take any action which would cause the Bonds to be "arbitrage bonds" under Section 148 of the Code; (h) deliver to the Authority a copy of the report of the insurance consultant which is required to be delivered pursuant to the Master Indenture; and (i) deliver to the Authority a copy of any statement which the Borrower distributes that provides information regarding the business, financial position, activities, corporate structure and material events of the Borrower or any Obligated Affiliate and which is currently intended to conform with suggested voluntary secondary market disclosure guidelines or which satisfies the secondary market disclosure requirements of Securities Exchange Act Rule 15c2-12 when effective, to the extent any series of Bonds is subject thereto.

**Events of Default and Remedies**

Each of the following shall constitute an Event of Default:

(a)    If the Borrower fails to make any payment when due pursuant to the Loan Agreement, as described under paragraph (a) or (b) under "Repayment of Loan" above;

(b)    If the Borrower fails to make any other payment or to perform any other covenant, condition or agreement to be performed by it under the Loan Agreement;

(c)    If the Borrower proposes or makes an assignment for the benefit of creditors or a composition agreement with all or a material part of its or their creditors, or a trustee, receiver, executor, conservator, liquidator, sequestrator or other judicial representative, similar or dissimilar, is appointed for the Borrower or any of its assets or revenues, or there is commenced any proceeding in liquidation, bankruptcy, reorganization, arrangement of debts, debtor rehabilitation, creditor adjustment or insolvency, local, state or federal, by or against the Borrower and if such is not vacated, dismissed or stayed on appeal within sixty (60) days;

(d)    If the Bond Trustee receives notice from the Master Trustee that an Event of Default under the Master Indenture has occurred and is continuing; or

(e)    If for any reason the Bonds are declared due and payable by acceleration in accordance with the Bond Indenture.

provided, however, that (i) no default under paragraph (a) above shall constitute an Event of Default if the Borrower's failure to make any payment is cured within 10 days after the due date of the payment (except that such cure period shall not extend beyond the date the payment is due to the Bondholders) and (ii) no default under paragraph (b) above shall constitute an Event of Default until actual notice of such default by registered or certified mail shall be given to the Borrower in default by the Authority or the Bond Trustee and the Borrower shall have 30 days after receipt of such notice to correct the default and shall not have corrected it; and provided further that, if a default cannot be corrected within such 30-day period, it shall not constitute an Event of Default if corrective action is instituted by the Borrower within the period and diligently pursued until the default is corrected.

If any Event of Default occurs and is continuing, the Authority (or the Bond Trustee as its assignee) may at its option exercise any one or more of the following remedies: (a) by mandamus, or other suit, action or proceeding at law or in equity, enforce all rights of the Authority, and require the

GOV 19861

Borrower to carry out any agreements with or for the benefit of the Bondholders and to perform its duties under the Act or the Loan Agreement; or (b) by action or suit in equity require the Borrower to account as if it were the trustee of an express trust for the Authority; or (c) by action or suit in equity enjoin any acts or things which may be unlawful or in violation of the rights of the Authority; or (d) upon the filing of a suit or other commencement of judicial proceeding to enforce the rights of the Bond Trustee and the Bondholders, have appointed a receiver or receivers with respect to the Borrower and its Facilities, with such powers as the court making such appointment shall confer; or (e) upon notice to the Borrower, to accelerate the due dates of all sums due or to become due under the Loan Agreement, if and to the extent that the Bonds have been accelerated under the Bond Indenture and such acceleration has not been annulled; or (f) enforce all rights and remedies as a Master Noteholder under the Master Indenture.

**Amendments**

The Loan Agreement may be amended from time to time in accordance with the provisions described under "THE BOND INDENTURE - Amendments to Loan Agreement" herein.

C-17

GOV 19862

[THIS PAGE INTENTIONALLY LEFT BLANK]

GOV 19863

**Appendix D**

# Summary of the Restated and Amended Master Trust Indenture

GOV 19864

# TABLE OF CONTENTS

**Page**

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

SUMMARY OF THE MASTER INDENTURE . . . . . . . . . . . . . . . . . . . . . . . . .    11
    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11
    Authorization of Notes and Guaranties . . . . . . . . . . . . . . . . . . . . . . . .    11
    Covenants as to Corporate Existence . . . . . . . . . . . . . . . . . . . . . . . . . .    11
    Rate Covenant; Accounts Receivable . . . . . . . . . . . . . . . . . . . . . . . . . .    12
    Limitations on Additional Indebtedness . . . . . . . . . . . . . . . . . . . . . . . .    12
    Guaranties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14
    Limitations on Creation of Liens . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14
    Sale, Lease or Other Disposition of Operating Assets; Disposition of Liquid Assets . . . .    15
    Consolidation and Merger . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15
    Filing of Financial Statements, Certificate of No Default, Other Information . . . . . . . .    16
    Cessation of Status as Obligated Affiliate . . . . . . . . . . . . . . . . . . . . . . .    17
    Addition of Obligated Affiliates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17
    Defaults and Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17
    Satisfaction and Discharge of Master Indenture . . . . . . . . . . . . . . . . . . .    20
    Supplements and Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

SUMMARY OF SUPPLEMENTAL INDENTURES . . . . . . . . . . . . . . . . . . . . .    21
    1993 Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22
    1994A Note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

GOV 19865

# DEFINITIONS

The terms defined below are among those used in this Official Statement and the Summary of the Restated and Amended Master Indenture which follows.

"**Additional Indebtedness**" means any Indebtedness (including all Notes and all Guaranties) incurred subsequent to April 7, 1993.

"**Balloon Indebtedness**" means Long-Term Indebtedness, 50% or more of the principal of which matures on the same date, which portion of the principal is not required by the documents governing such Indebtedness to be amortized below such percentage by mandatory redemption or prepayment prior to such date; provided, however, Balloon Indebtedness shall not include Optional Tender Indebtedness.

"**Book Value**" when used in connection with Property of any Obligated Affiliate, means the value of such Property, net of accumulated depreciation, as it is carried on the audited Financial Statements of such Obligated Affiliate, and when used in connection with Property of the Obligated Group, means the aggregate of the values of such Property, net of accumulated depreciation, as reflected on the most recent audited Financial Statements of the Obligated Group, provided that the aggregate of such values shall be determined in such a manner that no portion of such value of Property of any Obligated Affiliate is included more than once.

"**Capitalized Interest**" means amounts deposited in escrow in connection with the issuance of Long-Term Indebtedness or Related Bonds to pay interest on such Long-Term Indebtedness or Related Bonds.

"**Capitalized Lease**" means any lease of real or personal property which, in accordance with generally accepted accounting principles, is required to be capitalized on the balance sheet of the lessee.

"**Commitment Indebtedness**" means the obligation of any Obligated Affiliate to repay amounts disbursed pursuant to a commitment from a financial institution to refinance or purchase when due, when tendered or when required to be purchased (a) other Indebtedness of such Obligated Affiliate, which other Indebtedness was incurred in accordance with the provisions of the Master Indenture or (b) Indebtedness of a Person who is not an Obligated Affiliate, which Indebtedness is guaranteed by a Guaranty of such Obligated Affiliate or secured by or payable from amounts paid on Indebtedness of such Obligated Affiliate, in either case which Indebtedness or Guaranty of such Obligated Affiliate was incurred pursuant to the Master Indenture, and the obligation of any Obligated Affiliate to pay interest payable on amounts disbursed for such purposes, plus any fees payable to such financial institution for, under or in connection with such commitment, in the event of disbursements pursuant to such commitment or in connection with enforcement thereof, including, without limitation, any penalties payable in the event of such enforcement.

"**Completion Indebtedness**" means any Long-Term Indebtedness incurred by any Obligated Affiliate for the purpose of (i) financing the completion of constructing or equipping facilities for which Long-Term Indebtedness has theretofore been incurred in accordance with the provisions of the Master Indenture, to the extent necessary to provide a completed and equipped facility of the type and scope contemplated at the time that such Long-Term Indebtedness was originally incurred, and in accordance with the general plans and specifications for such facility as originally prepared with only such changes

G O V   1 9 8 6 6

as have been made in conformance with the documents pursuant to which such Long-Term Indebtedness was originally incurred and (ii) providing for capitalized interest during the period of construction, funding or increasing the funding of a reserve fund and paying costs and expenses of issuing such Completion Indebtedness.

"**Construction Index**" means the health care component of the implicit price deflator for the gross national product as most recently reported prior to the date in question by the United States Department of Commerce or its successor agency, or, if such index is no longer published, such other index which is certified to be comparable and appropriate by an Officer's Certificate of the Obligated Group Agent delivered to the Master Trustee.

"**Consultant**" means a Person or firm who is not, and no member, stockholder, director, officer or employee of which is, an officer or employee of any Obligated Affiliate, and which is a nationally recognized professional consultant having the skill and experience necessary to render the particular report required by the provisions of the Master Indenture in which such requirement appears, acceptable to the Master Trustee.

"**Corporate Trust Office**" means the office of the Master Trustee at which its principal corporate trust business is conducted.

"**Cross-Over Date**" means, with respect to Cross-Over Refunding Indebtedness, the date on which the principal portion of the Cross-Over Refunded Indebtedness is paid or redeemed, or on which it is anticipated that such principal portion be paid or redeemed, from the proceeds of such Cross-Over Refunding Indebtedness.

"**Cross-Over Refunded Indebtedness**" means Indebtedness of a Person refunded by Cross-Over Refunding Indebtedness.

"**Cross-Over Refunding Indebtedness**" means Indebtedness of a Person issued for the purpose of refunding other Indebtedness of such Person if the proceeds of such Cross-Over Refunding Indebtedness are irrevocably deposited in escrow to secure the payment on the applicable Cross-Over Date of the Cross-Over Refunded Indebtedness and earnings on such escrow deposit are required to be applied to pay principal or interest on either or both of such Cross-Over Refunding Indebtedness or such Cross-Over Refunded Indebtedness until the Cross-Over Date.

"**Current Value**" means (i) with respect to Property, Plant and Equipment: (a) the aggregate fair market value of such Property, Plant and Equipment as reflected in the most recent written report of an appraiser and, in the case of real property, who is a member of the American Institute of Real Estate Appraisers (MAIA), delivered to the Master Trustee (which report shall be dated not more than three years prior to the date as of which Current Value is to be calculated) increased or decreased by a percentage equal to the aggregate percentage increase or decrease in the Construction Index from the date of such report to the date as of which Current Value is to be calculated; plus (b) the Book Value of any Property, Plant and Equipment acquired since the last such report increased or decreased by a percentage equal to the aggregate percentage increase or decrease in the Construction Index from the date of such acquisition to the date as of which Current Value is to be calculated; minus (c) the greater of the Book Value or the fair market value (as reflected in such most recent appraiser's report) of any Property, Plant and Equipment disposed of since the last such report increased or decreased by a percentage equal to the aggregate percentage increase or decrease in the Construction Index from the date of such report to the

2

GOV 19867

date as of which Current Value is to be calculated, and (ii) with respect to any other Property, the fair market value of such Property, which fair market value shall be evidenced in a manner satisfactory to the Master Trustee.

"Expenses" means, for any period, the aggregate of all expenses calculated under generally accepted accounting principles, including without limitation any taxes, incurred by the Person or group of Persons involved during such period, minus interest on Long-Term Indebtedness, depreciation and amortization and extraordinary expenses (including without limitation losses on the sale of assets other than in the ordinary course of business and losses on the extinguishment of debt) and, if such calculation is being made with respect to the Obligated Group, excluding any such expenses attributable to transactions between any Member of the Obligated Group and any other Member of the Obligated Group.

"Financial Statements" means, depending on the context, the consolidated or combined financial statements of the Obligated Group, which contain certain summarized consolidated or combined financial information concerning the Obligated Group or the financial statements of an Obligated Affiliate, in all cases prepared in accordance with generally accepted accounting principles.

"Governing Body" means, when used with respect to any Obligated Affiliate, its board of directors, board of trustees, or other board or group of individuals in which the powers of the Obligated Affiliate are vested.

"Governmental Restrictions" means federal, state or other applicable governmental laws or regulations affecting the Obligated Group and its facilities, which place restrictions and limitations on the (i) fees and charges to be fixed, charged and collected or revenues to be earned by the Obligated Affiliates or (ii) timing of receipt of such revenues.

"Guaranty" means all obligations of an Obligated Affiliate guaranteeing in any manner, whether directly or indirectly, any obligation of any other Person which obligation of such other Person would, if such obligation were the obligation of such Obligated Affiliate constitute Indebtedness under the Master Indenture, unless the obligation of such other Person is other than for payment of a sum certain.

"Historical Long-Term Debt Service Coverage Ratio" means, for any period of time, the ratio consisting of a numerator equal to the amount determined by dividing Income Available for Debt Service for that period by the Long-Term Debt Service Requirement for such period and a denominator of one; provided, however, that in calculating the Long-Term Debt Service Requirement for such period, the principal amount of any Indebtedness included in such calculation which is paid during such period shall be excluded to the extent such principal amount is paid from the proceeds of other Indebtedness incurred in accordance with the provisions of the Master Indenture.

"Historical Long-Term Pro Forma Debt Service Coverage Ratio" means, for any period of time, the ratio consisting of a numerator equal to the amount determined by dividing Income Available for Debt Service for that period by the Maximum Annual Debt Service Requirement for the Long-Term Indebtedness then Outstanding and the Long-Term Indebtedness then proposed to be issued and a denominator of one.

"Income Available for Debt Service" means, with respect to the Obligated Group, as to any period of time, the excess of Revenues over Expenses of the Person or group of Persons involved.

3

GOV 19868

"**Indebtedness**" means all obligations for borrowed money, installment sales obligations and Capitalized Leases incurred or assumed by an Obligated Affiliate, including Guaranties (other than any Guaranty by any member of the Obligated Group of Indebtedness of any other member of the Obligated Group) and Commitment Indebtedness, except obligations of a member of the Obligated Group to another member of the Obligated Group.

"**Insurance Consultant**" means a Person or firm who is not, and no member, director, officer or employee of which is, an officer or employee of any Obligated Affiliate and who is qualified to survey risks and to recommend insurance coverage for hospitals, health-related facilities and services and organizations engaged in such operations.

"**Lien**" means any mortgage, pledge or lease of, security interest in or lien, charge, restriction or encumbrance on any Property of any Obligated Affiliate in favor of or which secures any Indebtedness or any other obligation to any Person, other than a member of the Obligated Group.

"**Long-Term Debt Service Requirement**" means, with respect to the period of time for which calculated, the aggregate of the payments required to be made during such period in respect of principal of (whether at maturity, as a result of mandatory sinking fund redemption, mandatory prepayment or otherwise) and interest on Outstanding Long-Term Indebtedness of each Person with respect to which calculated; provided that: (a) the amount of such payments for a future period shall be calculated in accordance with the assumptions described herein under the caption, "**Limitations on Additional Indebtedness**"; (b) interest shall be excluded from the determination of Long-Term Debt Service Requirement to the extent that Capitalized Interest is available to pay such interest; and (c) principal and/or interest on Long-Term Indebtedness shall be excluded from the determination of Long-Term Debt Service Requirement to the extent that cash or Qualified Investments are on deposit in an irrevocable escrow in an amount sufficient, together with the earnings thereon without any regard to any reinvestment thereof, to pay such principal and/or interest.

"**Long-Term Indebtedness**" means, with respect to any Person, all Indebtedness for any of the following:

> (i)      Payments of principal and interest with respect to money borrowed for an original term, or renewable at the option of the borrower for a period from the date originally incurred, longer than one year;

> (ii)      Payments under installment sales obligations having an original term in excess of one year; and

> (iii)      Capitalized Leases.

"**Master Indenture**" means the Restated and Amended Master Trust Indenture dated April 7, 1993 among Allegheny General Hospital, Allegheny-Singer Research Institute and Allegheny Neuropsychiatric Institute and the Master Trustee, as supplemented and amended from time to time.

"**Master Trustee**" means PNC Bank, National Association, and its successors and assigns as trustee under the Master Indenture.

4

GOV 19869

"**Maximum Annual Debt Service Requirement**" means the highest Long-Term Debt Service Requirement for the current or any succeeding fiscal year.

"**Non-Recourse Indebtedness**" means any Indebtedness secured by a Lien, the liability for which is effectively limited to the Property, the purchase, acquisition or improvement of which was financed or refinanced with the proceeds of such Non-Recourse Indebtedness and which is subject to such Lien with no recourse, directly or indirectly, to any member of the Obligated Group.

"**Note**" means any Note issued, authenticated and delivered under the Original Master Indenture which is Outstanding on April 7, 1993 and any Note issued, authenticated and delivered under the Master Indenture.  References to a series of Notes or to Notes of a series shall mean the Notes or series of Notes issued pursuant to a single Supplemental Indenture.

"**Noteholder**" or "**Holder**" means the registered owner of any Note or Guaranty.

"**Obligated Affiliate**", as of the date hereof, means Allegheny General Hospital (which Allegheny Neuropsychiatric Institute merged into subsequent to the date of the Master Indenture) or Allegheny-Singer Research Institute and, from time to time hereafter, also means any Person which shall become an Obligated Affiliate pursuant to the Master Indenture.

"**Obligated Group**" means all Obligated Affiliates.

"**Obligated Group Agent**" means Allegheny General Hospital, or its successors or assigns.

"**Officer's Certificate**" means a certificate signed by the chairman of the Governing Body, or the president or chief executive officer or the chief financial officer, or the chairman of the finance committee of the Governing Body of a Person.

"**Opinion of Bond Counsel**" means an opinion in writing signed by an attorney or firm of attorneys experienced in the field of municipal bonds whose opinions are generally accepted by purchasers of municipal bonds.

"**Opinion of Counsel**" means an opinion in writing signed by an attorney or firm of attorneys who may be counsel for the Obligated Group Agent.

"**Optional Tender Indebtedness**" means Indebtedness which is payable or required to be purchased or redeemed, at the option the holder of such Indebtedness, prior to its stated maturity date.

"**Original Master Indenture**" means the Master Trust Indenture dated as of December 1, 1983 between Allegheny Health, Education and Research Corporation (which, subsequent to such date, merged into Allegheny General Hospital) and the Master Trustee.

"**Original Restricted Affiliates**" means Allegheny General Hospital, Allegheny-Singer Research Institute and Allegheny Neuropsychiatric Institute.

"**Outstanding**" when used with reference to Indebtedness, shall mean, as of any date of determination, all Indebtedness theretofore issued or incurred and not paid and discharged other than (i) Indebtedness evidenced by Notes or Guaranties theretofore canceled by the Master Trustee or delivered

5

GOV 19870

to the Master Trustee for cancellation, (ii) Indebtedness deemed paid and no longer Outstanding as provided in the Master Indenture, (iii) Notes in lieu of which other Notes have been authenticated and delivered or have been paid pursuant to the Master Indenture unless proof satisfactory to the Master Trustee has been received that any such note is held by a bona fide purchaser, (iv) Notes for the sole security of which an Obligated Affiliate shall have deposited with a bank or trust company, including the Master Trustee, pursuant to an agreement between such Obligated Affiliate and such bank or trust company as trust funds Qualified Investments, the maturing principal of and interest on which when due will be sufficient to pay at maturity or upon redemption, principal and interest then due and principal and interest due or to become due prior to such date and (v) Notes securing Related Bonds if, under the Related Bond Indenture pursuant to which such Related Bonds were issued, such Related Bonds are not Outstanding.

"**Permitted Liens**" means any of the following:

(i)    The Lien on Unrestricted Receivables and other items created by the Master Indenture;

(ii)    Liens arising by reason of good faith deposits with any Obligated Affiliate in connection with tenders, leases of real estate or contracts (other than contracts for the payment of money), deposits by any Obligated Affiliate to secure public or statutory obligations, or to secure, or in lieu of, surety, stay or appeal bonds, and deposits as security for the payment of taxes or assessments or other similar charges;

(iii)    Any Lien arising by reason of deposits with, or the giving of any form of security to, any governmental agency or any body created or approved by law or governmental regulation for any purpose at any time as required by law or governmental regulation as a condition to the transaction of any business or the exercise of any privilege or license, or to enable any Obligated Affiliate to maintain self-insurance or to participate in any funds established to cover any insurance risks or in connection with worker's compensation, unemployment insurance, employee benefit plans, pension or profit sharing plans or other social security, or to share in the privileges or benefits required for companies participating in such arrangements;

(iv)    Any judgment lien against any Obligated Affiliate, the time for the appeal or petition for rehearing of which shall not have expired, so long as such judgment is being contested and execution thereon is stayed;

(v)    (A) Rights reserved to or vested in any municipality or public authority by the terms of any right, power, franchise, grant, license, permit or provision of law, affecting any Property; (B) any liens on any Property for taxes, assessments, levies, fees, water and sewer rents, and other governmental and similar charges and any liens of mechanics, materialmen, laborers, suppliers or vendors for work or services performed or materials furnished in connection with such Property, which are not due and payable or which are not delinquent or which, or the amount or validity of which, are being contested and execution thereon is stayed or, with respect to which liens of mechanics, materialmen, laborers, suppliers or vendors have been due for less than 90 days; (C) easements, rights-of-way, servitudes, restrictions, oil, gas or other mineral reservations and other minor defects, encumbrances, and irregularities in the title to any Property

6

GOV 19871

which do not materially impair the use of such Property or materially and adversely affect the value thereof; (D) rights reserved to or vested in any municipality or pubic authority to control or regulate any Property or to use such Property in any manner; (E) to the extent that it affects title to any Property, the Master Indenture; and (F) landlord's liens;

(vi) . Any Lien which is existing on the date of authentication and delivery of the initial series of Notes issued under the Original Master Indenture, provided that no such Lien may be extended, renewed or modified to apply to any Property of any Obligated Affiliate not subject to such Lien on such date, unless such Lien as so extended, renewed or modified otherwise qualifies as a Permitted Lien under the Master Indenture;

(vii) Any Lien securing Non-Recourse Indebtedness, subject to the limits described in subparagraph (xv) below;

(viii) Any Lien on Property acquired by an Obligated Affiliate if an Officer's Certificate is delivered to the Master Trustee certifying that (A) the Lien and the Indebtedness secured thereby were created and incurred by a person other than the Obligated Affiliate acquiring such Property, and (B) the Lien was created prior to the decision of the Obligated Affiliate to acquire the Property and was not created for the purpose of enabling the Obligated Affiliate to avoid the limitations of the Master Indenture on creation of Liens on Property of the Obligated Group;

(ix) Any Lien resulting from installment sales obligations or financing leases relating to the acquisition of Property, if the Indebtedness which is secured by such purchase money security interest is incurred in compliance with the provisions of the Master Indenture;

(x) Liens on moneys deposited by patients or others with any Obligated Affiliate as security for or as prepayment for the cost of patient care;.

(xi) Liens on Property received by any Obligated Affiliate through gifts, grants or bequests, such Liens being due to restrictions imposed by the donor, grantor or testator on such gifts, grants or bequests of Property or the income thereon;

(xii) Liens on Property due to rights of third party payors for recoupment of amounts paid to any Obligated Affiliate for health care or patient services;

(xiii) Liens on any Related Bond or Note held by any Obligated Affiliate and pledged to secure the obligation of such Obligated Affiliate to repay amounts due to the issuer of any Commitment Indebtedness;.

(xiv) Liens on amounts on deposit in any fund held by a Related Bond Trustee under a Related Bond Indenture;

7

GOV 19872

(xv)    Liens on Property, the total Book Value or (at the option of the Obligated Group Agent) the Current Value of which property subject to such Liens does not exceed 20% of the Book Value of the total assets of the Obligated Group as shown on the Financial Statements for the most recent fiscal year;

(xvi)    Liens arising under law or by contract with respect to deposits made under life-care contracts;

(xvii)    Any Lien on Property if such Lien equally and ratably secures all of the Notes and Guaranties and only the Notes and Guaranties;

(xviii)    Leases which relate to Property of the Obligated Group which is of a type that is customarily the subject of such leases, such as office space for physicians and educational institutions, food service facilities, gift shops and radiology or other hospital-based specialty services, pharmacy and similar departments, other leases entered into in accordance with the Master Indenture and any leases, licenses or similar rights to use Property whereunder a member of the Obligated Group is lessee, licensee or the equivalent thereof upon fair and reasonable terms no less favorable to the lessor or licensor than would obtain in a comparable arm's-length transaction;

(xix)    Statutory rights under Section 291, Title 42 of the United States Code, as a result of what are commonly known as Hill-Burton grants, and similar rights under other federal statutes or statutes of the state in which the Property involved in located; and

(xx)    Liens on accounts receivable arising as a result of sale of such accounts receivable with recourse, provided that the principal amount of Indebtedness secured by any such Lien does not exceed the aggregate sales price of such accounts receivable received by the member of the Obligated Group selling the same.

"Person" means an association, unincorporated organization, a corporation, partnership, joint venture, business trust or a government or an agency or a political subdivision thereof, or any other entity.

"Projected Long-Term Debt Service Coverage Ratio" means, for any future period, the ratio consisting of a numerator equal to the amount determined by dividing the projected Income Available for Debt Service for that period by the Maximum Annual Debt Service Requirement for the Long-Term Indebtedness expected to be Outstanding during such period and a denominator of one.

"Projected Rate" means the projected yield at par of an obligation as set forth in the report of a Consultant. Such report shall state that in determining the Projected Rate, such Consultant reviewed the yield evaluations at par of not less than five obligations selected by such Consultant, the interest on which is generally excluded from the gross income of the holder thereof (or, if it is not expected that it will be reasonably possible to issue such obligations, then obligations the interest on which is included in the gross income of the holder thereof), which obligations such Consultant states in its report are reasonable comparators for utilizing in developing such Projected Rate and which obligations: (i) were Outstanding on a date selected by the Consultant, which date so selected occurred during the 45-day period preceding the date of the calculation utilizing the Projected Rate in question, (ii) to the extent

8

GOV 19873

practicable, are obligations of Persons engaged in operations similar to those of the Obligated Group and having a credit rating similar to that of the Obligated Group, (iii) are not entitled to the benefits of any credit enhancement, including, without limitation, any letter of credit or insurance policy, and (iv) to the extent practicable, have a remaining term and amortization schedule substantially the same as the obligation with respect to which such Projected Rate is being developed.

"**Property**" means any and all rights, titles and interests in and to any and all property whether real or personal, tangible or intangible and wherever situated.

"**Property, Plant and Equipment**" means all Property of the members of the Obligated Group which is property, plant and equipment under generally accepted accounting principles.

"**Qualified Investment**" means any of the following:

    (i)    United States Government Obligations;

    (ii)    Bonds, debentures, notes or other evidences of indebtedness issued by any of the following: Federal Home Loan Banks, Federal Home Loan Mortgage Corporation (including participation certificates), Federal Financing Bank, or any other agency or instrumentality of the United States of America (created by an Act of Congress) substantially similar to the foregoing in its legal relationship to the United States of America;

    (iii)    Interest-bearing time or demand deposits, certificates of deposit, repurchase agreements or other similar banking arrangements with any government securities dealer, bank, trust company, national banking association or other savings institution (including the Master Trustee), provided that such deposits, certificates, repurchase agreements and other arrangements are (a) fully insured by the Federal Deposit Insurance Corporation, or (b) fully collateralized by Qualified Investments defined in (i) and (ii) above and held by a custodian pursuant to the terms of a custody agreement, or (c) in or with a government securities dealer, bank, trust company, national banking association or other savings institution rated in either of the two highest rating categories by Moody's Investors Service or Standard & Poor's Ratings Group; and

    (iv)    Such other investments which at the time of the acquisition thereof shall be listed as permissible investments or trusteed funds in an indenture, resolution, official statement, offering circular or prospectus with respect to Indebtedness which is secured under the Master Indenture.

"**Related Bonds**" means (i) the revenue bonds or other obligations issued by the Commonwealth of Pennsylvania or any other State of the United States of America or any municipal corporation or political subdivision formed under the laws thereof or any constituted authority or agency or instrumentality of any of the foregoing empowered to issue obligations on behalf thereof ("governmental issuer"), pursuant to a single Related Bond Indenture, the proceeds of which are loaned or otherwise made available to any member of the Obligated Group in consideration of the execution, authentication and delivery of a Note or Notes to or for the order of such governmental issuer or (ii) direct obligations of any Obligated Affiliate issued pursuant to a Related Bond Indenture and that are secured by a Note or Notes.

9

GOV 19874



"Related Bond Indenture" shall mean any indenture, bond resolution or other comparable instrument pursuant to which a series of Related Bonds are issued.

"Related Bond Issuer" shall mean the issuer of any issue of Related Bonds.

"Related Bond Trustee" shall mean the trustee and its successors in the trusts created under any Related Bond Indenture, and if there is no such trustee, shall mean the Related Bond Issuer.

"Revenues" means, for any period (i) in the case of any Person providing health care services, the sum of (a) gross patient service revenues less contractual allowances and provisions for uncollectible accounts, free care and discounted care, plus (b) other operating revenues, plus (c) nonoperating revenues (other than income derived from the sale of assets not in the ordinary course of business or any gain or loss from the extinguishment of debt or other extraordinary item), all as determined in accordance with generally accepted accounting principles; and (ii) in the case of any other Person, gross revenues less sale discounts and sale returns and allowances, as determined in accordance with generally accepted accounting principles, but excluding in any event (a) any gains or losses on the sale or other disposition of investments or fixed or capital assets not in the ordinary course or (b) earnings resulting from any reappraisal, revaluation or write-up of assets; provided, however, that, if such calculation is being made with respect to the Obligated Group, such calculation shall be made in such a manner so as to exclude any revenues attributable to transactions between any member of the Obligated Group and any other member of the Obligated Group.

"Short-Term Indebtedness" means all Indebtedness for money borrowed with an original term, or renewable at the option of the borrower for a period from the date originally incurred, of one year or less.

"Supplemental Indenture" means, prior to April 7, 1993, an indenture supplemental both to the Original Master Indenture and to the Master Indenture and, after April 7, 1993, an indenture supplemental to, and authorized and executed pursuant to the terms of, the Master Indenture for the purpose, among others, of creating a particular series of Notes or a particular Guaranty.

"Tax-Exempt Organization" means a person organized under the laws of the United States of America or any state thereof which is an organization described in Section 501(c)(3) and exempt from federal income taxes under Section 501(a) of the Internal Revenue Code of 1986, as amended, or corresponding provisions of federal income tax laws from time to time in effect.

"Tender Date" means (i) any date on which an owner of Optional Tender Indebtedness may elect to have such Optional Tender Indebtedness paid, purchased or redeemed by or on behalf of the underlying obligor prior to its stated maturity date or (ii) any date on which Optional Tender Indebtedness is required to be paid, purchased or repurchased from the owner by or on behalf of the underlying obligor (other than at the option of the owner) prior to its stated maturity date, other than pursuant to any mandatory sinking fund or other similar fund or due to acceleration.

"Total Fund Balance" means the unrestricted fund balance or a similar designation of an amount equal to total unrestricted assets less total unrestricted liabilities.

GOV 19875

"United States Government Obligations" mean (i) direct obligations of, or obligations the principal of and interest on which are fully guaranteed by, the United States of America, (ii) evidences of a direct ownership interest in future interest or principal payments on obligations issued or guaranteed by the United States of America, which obligations are held in a custody account by a custodian pursuant to the terms of a custody agreement, and (iii) obligations issued by any state of the United States of America or any political subdivision, public instrumentality or public authority of any state of the United States of America, the principal and interest on which obligations are fully secured by obligations described in the preceding clause (i) or (ii), which security is held pursuant to an irrevocable security agreement.

"Unrestricted Receivables" mean all accounts and assignable general intangibles now owned or hereafter acquired by any Obligated Affiliate regardless of where generated, and all proceeds therefrom, whether cash or noncash, all as defined in Article 9 of the Pennsylvania Uniform Commercial Code, as amended, and all contract rights now owned or hereafter acquired by any Obligated Affiliate regardless of where generated and all proceeds therefrom, whether cash or noncash; all as defined in the Pennsylvania Uniform Commercial Code; excluding, however, gifts, grants, bequests, donations and contributions to any Obligated Affiliate heretofore or hereafter made, and the income and gains derived therefrom, which are specifically restricted by the donor or grantor to a particular purpose which is inconsistent with their use for payments required under the Master Indenture or on the Notes.

## SUMMARY OF THE MASTER INDENTURE

### General

The Master Indenture authorizes the Obligated Affiliates to issue Notes, including the 1995A Master Note, and Guaranties thereunder which are general obligations of the Obligated Affiliates, secured by a pledge of and security interest in the Unrestricted Receivables of the Obligated Affiliates, and are entitled to the benefit and security of certain operational and financial restrictions and other contractual obligations contained in the Master Indenture. Set forth below is a summary of certain provisions of the Master Indenture.

### Authorization of Notes and Guaranties

Notes and Guaranties may be issued under the Master Indenture to evidence or secure Indebtedness as permitted under the Master Indenture, except Non-Recourse Indebtedness. All Notes and Guaranties issued under the Master Indenture are on a parity with each other.

### Covenants as to Corporate Existence

Each Obligated Affiliate is required (i) to remain an Obligated Affiliate throughout the term of the Master Indenture (except as permitted by the Master Indenture, (ii) to promptly satisfy all of its obligations and Indebtedness other than that being contested in good faith and (iii) to take no action to cause the interest on any Related Bonds to be subject to federal income taxes.

11

GOV 19876

**Rate Covenant; Accounts Receivable**

The Obligated Group is required to set rates and charges for its facilities such that its Historical Long-Term Debt Service Coverage Ratio, calculated at the end of each fiscal year, is not less than 1.10 to 1.0. If such ratio is below 1.10 to 1.0, the Obligated Group is required to retain a Consultant to make recommendations to increase the Projected Long-Term Debt Service Coverage Ratio to the required level or to the highest practicable level if, in the opinion of the Consultant, the achievement of the required level is impracticable. The Obligated Group is required to follow the Consultant's recommendations, to the extent permitted by law.

So long as the Obligated Group shall retain a Consultant and shall follow the recommendations of such Consultant, the provisions described herein, shall be deemed to have been met even if the Historical Long-Term Debt Service Coverage Ratio for any subsequent fiscal year is below the required level, provided that the Revenues of the Obligated Group, are not less than the amount required in cash to pay the Expenses of the Obligated Group and debt service on all Indebtedness of the Obligated Group and the Historical Long-Term Debt Service Coverage Ratio is at least 1.0 to 1.0.

If a report of a Consultant is delivered to the Master Trustee stating that Governmental Restrictions have been imposed which make it impossible for such coverage requirement to be met, then such coverage requirement shall be reduced to the maximum permitted level but not below 1.00.

**Limitations on Additional Indebtedness**

So long as any Notes or Guaranties are Outstanding, the Obligated Group will not incur any Additional Indebtedness other than Indebtedness described in any one of the following categories:

(a)    The Obligated Group may incur Long-Term Indebtedness provided that it can demonstrate satisfaction of either the following:

(i)    A Historical Long-Term Pro Forma Debt Service Coverage Ratio of the Obligated Group for the most recent fiscal year of not less than 1.25:1; or

(ii)    (A) A Historical Long-Term Debt Service Coverage Ratio for the fiscal year next preceding the incurrence of such Long-Term Indebtedness of not less than 1.10:1; and (B) (1) a Projected Long-Term Debt Service Coverage Ratio (demonstrated in a Consultant's report) for the next succeeding fiscal year or, if such Indebtedness is being incurred in connection with the financing of capital improvements, the fiscal year succeeding the projected completion date of such capital improvements, of not less than 1.10:1, or (2) a Projected Long-Term Debt Service Coverage Ratio (demonstrated in an Officer's Certificate) for the next succeeding fiscal year or, if such Indebtedness is being incurred in connection with the financing of capital improvements, the first year succeeding the projected completion date of such capital improvements, of not less than 1.50:1, provided that the requirements of the foregoing subsection (ii)(A) or (B), as the case may be, shall be deemed satisfied if (X) Governmental Restrictions have prevented or will prevent the Obligated Group from generating the Revenues required to be generated by subsection (ii)(A) or (B), as the case may be, as a prerequisite to the issuance of Long-Term Indebtedness, and (y) the rates charged or to be charged by the Obligated Group (demonstrated in a Consultant's report) are or will be such that the Obligated Group has generated or will generate

12

GOV 19877

the maximum amount of Revenues reasonably practicable given such Governmental Restrictions, and (z) the Historical and Projected Long-Term Debt Service Coverage Ratios of the Obligated Group in the applicable subsections are at least 1:1; or

        (iii)     Without compliance with either of the tests described in (i) and (ii) above, if the aggregate principal of all Long-Term Indebtedness Outstanding, including the proposed additional Long-Term Indebtedness, does not exceed 66-2/3% of the sum of all Long-Term Indebtedness Outstanding, including the proposed additional Long-Term Indebtedness, plus the Obligated Group's Total Fund Balance for the most recent fiscal year of the Obligated Group.

      (b)     Completion Indebtedness may be incurred without limit.

      (c)     Long-Term Indebtedness for the purpose of refunding (whether in advance or otherwise) any Outstanding Long-Term Indebtedness so as to render it no longer Outstanding.

      (d)     Short-Term Indebtedness (other than Short-Term Indebtedness described in clause (e) below) in a total principal amount which at the time incurred does not, together with the principal amount of all other such Short-Term Indebtedness of the Obligated Group then Outstanding and described in this clause (d), exceed 25% of the Revenues of the Obligated Group for the most recent fiscal year.

      (e)     Short-Term Indebtedness if:

        (i)     there is in effect at the time the Short-Term Indebtedness described in this clause (e) is incurred a commitment (including, without limitation, letters or lines of credit or insurance), which may be subject only to commercially reasonable contingencies, by a financial institution generally regarded as responsible to provide financing sufficient to pay such Short-Term Indebtedness at its maturity; and

        (ii)     the conditions described in clause (a)(i) or (ii) above are met with respect to such Short-Term Indebtedness when it is assumed that such Indebtedness is Long-Term Indebtedness maturing over 30 years from the date of issuance of the Short-Term Indebtedness, bears interest on the unpaid principal balance at the Projected Rate and is payable on a level annual debt service basis over a 30-year period.

      (f)     Non-Recourse Indebtedness may be incurred subject to the limits described in clause (a)(iii) above.

      (g)     Balloon Indebtedness without limit if the conditions described in clause (a)(i) or (ii) above are met with respect to such Balloon Indebtedness when the assumptions described in clause (e)(ii) above are made with respect to the portion of such Balloon Indebtedness becoming due during each such twelve-month period.

      (h)     Optional Tender Indebtedness if the conditions described in clause (a)(i) or (ii) above are met with respect to such Optional Tender Indebtedness when it is assumed that such Optional Tender Indebtedness bears interest at the Projected Rate and is payable on a level annual debt service basis over a 30-year period commencing with the next succeeding Tender Date.

13

G O V   1 9 8 7 8

(i)    Guaranties by any Obligated Affiliate of the payment by another Person of a sum certain if the conditions for the incurrence of additional Long-Term Indebtedness are satisfied when it is assumed that the Indebtedness guaranteed is Long-Term Indebtedness of such Obligated Affiliate; provided, however, that the Obligated Group's Income Available for Debt Service shall not be deemed to include any revenues of the primary obligor of the guaranteed indebtedness and that the debt service payable with respect to the Indebtedness guaranteed shall be calculated in accordance with the assumptions described herein.

(j)    Commitment Indebtedness without limit.

(k)    Cross-Over Refunding Indebtedness if immediately after the issuance of the proposed Cross-Over Refunding Indebtedness, the Maximum Annual Debt Service of the Obligated Group will not be increased by more than 20%.

In determining the amount of debt service payable on Indebtedness in the course of the various calculations required under certain provisions of the Master Indenture, if the terms of the Indebtedness being considered are such that interest thereon for any future period of time is expressed to be calculated at a varying rate per annum, a formula rate or a fixed rate per annum based on a varying index, then for the purpose of making such determination of debt service, interest on such Indebtedness for such period (the "Determination Period") shall be computed by assuming that the rate of interest applicable to the Determination Period is equal to the average of the rate of interest (calculated in the manner in which the rate of interest for the Determination Period is expressed to be calculated) which was in effect on the last date of each of any six consecutive calendar months occurring in the nine full calendar months immediately preceding the month in which such calculation is made; provided that if the index or other basis for calculating such interest was not in existence for at least six full calendar months next preceding the date of calculation, the rate of interest for such portion of such period shall be deemed to be the rate of interest borne by such Indebtedness when issued.

**Guaranties**

Each Obligated Affiliate agrees that it will not enter into, or become liable in respect of any Guaranty, except that:

(a)    Guaranties may be incurred without limit if the Guaranty is by a member of the Obligated Group of the Indebtedness of another member of the Obligated Group.

(b)    In all other events, 20% of the annual debt service on the Indebtedness being guaranteed shall be added to the computation of Long-Term Debt Service Requirement; provided, however, if payment is required under any Guaranty, then 100% of such amount shall be included in the Long-Term Debt Service Requirement until payment is no longer required.

**Limitations on Creation of Liens**

The Obligated Group agrees that it will not create or suffer to be created or permit the existence of any Lien upon Property now owned or hereafter acquired by any Obligated Affiliate, other than Permitted Liens.

14

GOV 19879

**Sale, Lease or Other Disposition of Operating Assets; Disposition of Liquid Assets**

Each Obligated Affiliate agrees that it will not sell, lease or otherwise dispose of assets, except in the ordinary course of business and except for transfers of assets:

(a) . To any Person if such assets have, or within the next succeeding 24 calendar months are reasonably expected to, become inadequate, obsolete, worn out, unsuitable, unprofitable, undesirable or unnecessary and the sale, lease, removal or other disposition thereof will not impair the structural soundness, efficiency or economic value of the remaining assets.

(b)   . To another member of the Obligated Group without limit.

(c)   To a Person which is not a member of the Obligated Group, provided that the Obligated Group is able to demonstrate compliance with either of the following:

(i)   The Historical Long-Term Debt Service Coverage Ratio for the most recent fiscal year preceding the proposed date of such transaction, assuming such transaction actually occurred at the beginning of such fiscal year, would not have been reduced to less than 1.10:1; or

(ii)   The Projected Long-Term Debt Service Coverage Ratio for the fiscal year immediately succeeding the proposed date of such transaction is expected to be not less than 1.10:1.

(d)   To any Person which is not an Obligated Affiliate, or a successor corporation pursuant to a merger or consolidation, without limit, if such Person shall become an additional Obligated Affiliate.

**Consolidation and Merger**

Each Obligated Affiliate covenants that it will not merge or consolidate with any other corporation, partnership, joint venture, business trust or other entity which is not an Obligated Affiliate or sell or convey all or substantially all of its assets to any Person which is not an Obligated Affiliate unless:

(i)   such Obligated Affiliate will be the continuing corporation, or if the successor corporation or other transferee entity is not an Obligated Affiliate, such successor corporation or other transferee entity shall be a corporation or business association organized and existing under the laws of the United States of America or a state thereof and shall become an Obligated Affiliate; .

(ii) ₄   the Obligated Group immediately after such merger or consolidation, or such sale or conveyance, would not be in default in the performance or observance of any covenant or condition of the Master Indenture (including any covenant or condition which imposes restrictions upon the activities of the Obligated Affiliates) and the conditions described in clause (a)(i) or (ii) under the caption, "**Additional Indebtedness**" would be met for the incurrence of one dollar of additional Long-Term Indebtedness; and

15

G O V   1 9 8 8 0