extent (a) the Series 1991 Note is issued for a purpose which is not consistent with the charitable purposes of the Restricted Affiliate from which such transfer is requested or AGH is not, at the time of such transfer, exempt from Federal income taxes under Section 501(a) and 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), and is not a "private foundation" as defined in Section 509(a) of the Code; (b) such transfers are requested to be made from any monies or assets which are donor restricted or which are subject to a direct or express trust which does not permit the use of such monies or assets from such a transfer; (c) such transfer would result in the cessation or discontinuation of any material portion of the health care or related services previously provided by the Restricted Affiliate from which such transfer is requested; or (d) such transfers are requested to be made pursuant to any loan violating applicable usury laws and are subject to the qualification that enforcement thereof may be limited by laws relating to bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyances or other similar laws or equitable principles affecting the enforcement of creditors' rights. Due to the absence of clear legal precedent in this area, the extent to which the assets of any Restricted Affiliate fall within the category referred to in clause (b) above cannot now be determined. The amount of such assets which fall within such category could be substantial.

Neither ASRI nor ANI nor any other future Restricted Affiliate will be required to make any payment, loan or other transfer of monies or assets to AGH to be used for the benefit of another Restricted Affiliate to the extent such transfer would render the Restricted Affiliate insolvent or would conflict with, not be permitted by or be subject to recovery for the benefit of other creditors of such Restricted Affiliate under applicable laws. Furthermore, as to certain transfers, AGH is not required to cause such transfers to be made by any particular Restricted Affiliate except to the extent necessary to permit AGH to make payments on Notes and such transfers shall not be used to distribute or transfer any income, gain, profit, revenue or property of a Restricted Affiliate in excess of amounts necessary to permit such payments by AGH. There is no clear precedent in the laws as to whether such transfers from a Restricted Affiliate in order to pay debt service on the Series 1991 Note may be voided by a trustee in bankruptcy in the event of bankruptcy of the Restricted Affiliate or in the event an action is brought by third party creditors pursuant to fraudulent conveyances statutes of states in which Restricted Affiliates are located. Under the Bankruptcy Reform Act of 1978, as amended (the "Bankruptcy Code"), a trustee in bankruptcy and, under fraudulent conveyances statutes in states in which Restricted Affiliates are located, a creditor of a related guarantor may

MBIA     010800

avoid any obligation incurred by a related guarantor if, among other bases therefor, (a) the guarantor has not received fair consideration or reasonably equivalent value in exchange for the guaranty and (b) the guaranty renders the guarantor insolvent, as defined in the Bankruptcy Code or fraudulent conveyance or other statutes in the states in which Restricted Affiliates are located, or the guarantor is undercapitalized.

Application by courts of the tests of "insolvency," "reasonably equivalent value," "fair consideration," "valuable consideration" and "grossly inadequate consideration" has resulted in a conflicting body of case law. It is possible that, in an action to force a Restricted Affiliate to pay monies to AGH, a court might not enforce such a payment or transfer in the event it is determined that the Restricted Affiliate from whom payment is sought is analogous to a guarantor of the debt of AGH and that sufficient consideration for the Restricted Affiliate's guaranty was not received or that the incurrence of such liability has rendered or will render such Restricted Affiliate insolvent.

There exists common law authority and authority under Pennsylvania statutes for the ability of the Pennsylvania courts to terminate the existence of a nonprofit corporation or undertake supervision of its affairs on various grounds, including a finding that such corporation has insufficient assets to carry out its stated charitable purposes or has taken some action which renders it unable to carry out such purposes. Such court action may arise on the court's own motion or pursuant to a petition of the Pennsylvania attorney general or such other persons who have interests different than those of the general public, pursuant to the common law and statutory power to enforce charitable trusts and to see to the application of their funds to their intended charitable uses.

AGH or any Restricted Affiliate may file a plan for the adjustment of its debts in a proceeding under the Federal Bankruptcy Code which could include provisions modifying or altering the rights of creditors generally, or any class of them, secured or unsecured. The plan, when confirmed by the court, would bind all creditors who have notice or knowledge of the plan and would discharge all claims against the debtor provided for in the plan. No plan may be confirmed unless certain conditions are met, among which are that the plan is in the best interests of creditors, is feasible and has been accepted by each class of claims impaired thereunder. Each class of claims has accepted the plan if at least two-thirds in dollar amount and more than one-half in number of the allowed claims of the class that are voted with respect to the plan are cast in its favor. Even if the plan is not so accepted, it may be confirmed if the court finds that the plan

- 37 -

MBIA    010801

is fair and equitable with respect to each class of non-accepting creditors impaired thereunder and does not discriminate unfairly.

## LITIGATION

### Issuance of the Bonds

There is no litigation now pending against the Authority or AGH or, to the knowledge of their respective officers, threatened, restraining or enjoining the issuance, sale, execution or delivery of the Bonds, or in any way contesting or affecting the validity of the Bonds, any proceeding of the Authority or AGH taken concerning the issuance or sale thereof or the security provided for the payment of the Bonds, or the existence or powers of the Authority relating to the issuance of the Bonds.

### The Restricted Group

AGH and the Restricted Affiliates advise that no litigation or proceedings are pending or, to their knowledge, threatened against any or all of them or their officers, except (i) litigation in which the probable recoveries and the estimated costs and expenses of defense, in the opinion of their counsel, will be entirely within their applicable insurance policy limits (subject to applicable deductibles) or are not in excess of the total reserves held under any applicable self-insurance program, or (ii) litigation in which, in the opinion of their counsel, an adverse determination would not have a materially adverse effect on the operations or conditions, financial or otherwise, of the Restricted Group. AGH and the Restricted Affiliates further advise that no litigation or proceedings are pending or, to their knowledge, threatened against any or all of them which in any manner questions their right to effect the financing described herein.

## LEGAL MATTERS

Legal matters incident to the authorization, issuance and sale of the Bonds by the Authority are subject to the approving opinion of Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pennsylvania, Bond Counsel. Certain legal matters will be passed upon for AGH and the Restricted Affiliates by its special counsel, Foley & Lardner, Chicago, Illinois and by Nancy A. Wynstra, Esquire, Executive Vice President and General Counsel of Allegheny Health Services, Inc.; for the Authority by its counsel, Klett Lieber Rooney & Schorling, Pittsburgh, Pennsylvania; and for the Underwriters

- 38 -

MBIA     010802

by their counsel, Drinker Biddle & Reath, Philadelphia,
Pennsylvania.  Drinker Biddle & Reath, counsel for the
Underwriters, has, from time to time, performed legal services
for Allegheny Health Services, Inc. and its affiliates,
including legal services in connection with the proposed
affiliation of AHS with United Hospitals, Inc. (see Appendix A
- "ALLEGHENY GENERAL HOSPITAL AND THE RESTRICTED GROUP:
Management's Discussion and Analysis - Proposed Affiliation").

## TAX EXEMPTION

On the date of issuance of the Bonds, Bond Counsel
will deliver an opinion (in substantially the form attached
hereto as Appendix E) to the effect that interest on the Bonds
is excludable from gross income for purposes of federal income
tax under existing law as presently enacted and construed,
assuming continued compliance by the Authority and AGH with
their covenants contained in the Bond Indenture and the Loan
Agreement, respectively, relating to the tax-exempt status of
the Bonds.

In the opinion of Bond Counsel, interest on the Bonds
will not be an item of tax preference for purposes of
determining either individual or corporate alternative minimum
tax, but interest on Bonds held by corporate bondholders
(other than S corporations, regulated investment companies,
real estate investment trusts or real estate mortgage
investment conduits) may be indirectly subject to alternative
minimum tax and an environmental tax because interest on the
Bonds will be included in the earnings and profits of such
corporate bondholders.  In addition, interest on the Bonds
held by foreign corporations may be subject to the foreign
branch profits tax.

Ownership of the Bonds may result in collateral
federal income tax consequences to certain taxpayers,
including, without limitation, financial institutions,
property and casualty insurance companies, certain S
corporations with "excess net passive income," individual
recipients of Social Security or Railroad Retirement benefits
and taxpayers who may be deemed to have incurred or continued
indebtedness to purchase or carry the Bonds.  Bond Counsel
will express no opinion as to these collateral tax
consequences.  Prospective purchasers of the Bonds who may be
subject to such consequences should consult their tax
advisors.

The initial public offering price of the Bonds other
than those maturing on September 1, 1992 and September 1, 1993
(the "Discount Bonds") is less than the amount payable at
maturity.  The difference between the initial public offering

MBIA       010803

price of the Discount Bonds and the amount payable at maturity constitutes original issue discount. Bond Counsel is of the opinion that the appropriate portion of such original issue discount allocable to the original and each subsequent holder of Discount Bonds will, upon sale, exchange, redemption, or payment at maturity of such Discount Bonds, be treated as interest and excluded from gross income for federal income tax purposes to the same extent as interest on the Bonds.

Bond Counsel will also render the opinion that, under the laws of the Commonwealth of Pennsylvania as enacted and construed on the date of such opinion, the Bonds are exempt from personal property taxes in Pennsylvania, and the interest on the Bonds and any gain from the sale thereof are exempt from Pennsylvania personal income tax and corporate net income tax.

## THE BOND TRUSTEE AND MASTER TRUSTEE

The obligations of the Bond Trustee and the Master Trustee (the "Trustees") are described in the Bond Indenture and the Master Indenture (the "Indentures"), respectively. The Bond Trustee and the Master Trustee have undertaken only those obligations and duties which are expressly set out in the respective Indentures. The Trustees have not independently passed upon the validity of the Bonds or the Series 1991 Note, or the security of the payment thereof, the adequacy of the provisions for such payment, or the status for federal or state income tax purposes of the interest on the Bonds. The Bond Indenture and the Master Indenture expressly provide that the respective Trustees will not be responsible for any loss or damage resulting from any action or inaction taken in good faith in reliance upon an opinion of counsel.

## LEGALITY FOR INVESTMENT

Under the Act, the Bonds are designated securities in which all officers of the Commonwealth and its political sub-divisions, municipal officers and administrative departments, boards and commissions of the Commonwealth, all banks, bankers, savings banks, trust companies, savings and loan associations, investment companies and other persons carrying on a banking business, all insurance companies, insurance associations and other persons carrying on an insurance business, and all administrators, executors, guardians, trustees and other fiduciaries, and all other persons whatsoever who now or may hereafter be authorized to invest in bonds or other obligations of the Commonwealth, may properly

MBIA        010804

and legally invest any funds, including capital belonging to them or within their control. The Act also provides that the Bonds are securities which may properly and legally be deposited with, and received by, any state or municipal officer or agency of the Commonwealth for any purpose for which the deposit of bonds or other obligations of the Commonwealth is now or may hereafter be authorized by law.

## UNDERWRITING

The Bonds are being purchased by the Underwriters at an aggregate discount of $720,000 from the initial offering prices set forth on the cover page. The Purchase Contract between the Underwriters and the Authority provides that the Underwriters will purchase all Bonds, if any are purchased, and contains the agreement of AGH and the Restricted Affiliates to indemnify the Underwriters and the Authority against losses, claims, damages and liabilities to third parties arising out of any materially incorrect or incomplete statements of information contained in this Official Statement pertaining to the Restricted Group. The initial public offering prices set forth on the cover page may be changed by the Underwriters and the Underwriters may offer and sell the Bonds to certain dealers (including dealers depositing Bonds into investment trusts) and others at prices lower than the offering prices set forth on the cover page.

## RATINGS

Standard & Poor's Corporation and Moody's Investors Service, Inc. have given the Bonds other than the Insured Term Bonds ratings of "AA" and "Aa", respectively. The Insurer has given the Insured Term Bonds ratings of "AAA" and "Aaa," respectively, based upon the issuance by the Insurer of the policy of municipal bond insurance described herein. Any explanation of the significance of such ratings may only be obtained from the rating agency furnishing the same. The Authority and the members of the Restricted Group furnished to such rating agencies certain information and materials concerning the Bonds and themselves. Generally, rating agencies base their ratings on such information and materials and on investigations, studies and assumptions by the rating agencies. There is no assurance that such ratings will continue for any given period of time or that they will not be revised downward or withdrawn entirely by such rating agencies, if in the judgment of such rating agencies circumstances so warrant. Any such downward revision or withdrawal of such ratings may have an adverse effect on the market price of the Bonds.

## FINANCIAL STATEMENTS

The consolidated financial statements for the Restricted Group included in Appendix B hereto for the fiscal

- 41 -

MBIA    010805

years ended June 30, 1990, June 30, 1989 and June 30, 1988, have been audited by Coopers & Lybrand, independent certified public accountants. Such consolidated financial statements have been so included in reliance on the report of Coopers & Lybrand, given on the authority of that firm as independent public accountants.

### MISCELLANEOUS

AGH and the Restricted Affiliates have furnished the information herein related to the Restricted Group. The Authority has furnished only the information included herein under the section entitled "THE AUTHORITY". Any statements herein involving matters of opinion, whether or not expressly so stated, are intended as such and not as representations of fact.

The foregoing and following summaries or descriptions of provisions of the Bonds, the Bond Indenture, the Loan Agreement, the Series 1991 Note, the Master Indenture, the Restated Master Indenture and the Contribution Agreements, and all references to other materials not purporting to be quoted in full, are only brief outlines for some of the provisions thereof and do not purport to summarize or describe all of the provisions thereof. For a complete statement of the provisions of such documents, reference is made to the documents in their entireties, copies of which are on file at the principal office of the Bond Trustee, in Pittsburgh, Pennsylvania.

The information hereinabove set forth, and that which follows in the Appendices, should not be construed as representing all of the conditions affecting the Authority, the Restricted Group or the Bonds.

This Official Statement is approved and authorized for distribution by the Authority and AGH.

PENNSYLVANIA HIGHER EDUCATIONAL
FACILITIES AUTHORITY

By: /s/ Donald W. Bagenstose
        Executive Director

Approved:

ALLEGHENY GENERAL HOSPITAL

By: /s/Anthony M. Sanzo
        President

- 42 -

MBIA        010806

# APPENDIX A

# ALLEGHENY GENERAL HOSPITAL
## AND
## THE RESTRICTED GROUP

The information contained
herein as Appendix A to this
Official Statement has been obtained from
Allegheny General Hospital, Allegheny Singer Research Institute
and Allegheny Neuropsychiatric Institute.

# Table of Contents

| | Page |
|---|---|
| HISTORY AND BACKGROUND | A-1 |
| General | A-1 |
| Corporate Governance | A-2 |
| The Restricted Group | A-3 |
| Non-Restricted Affiliates | A-3 |
| | |
| GOVERNING BODIES AND MANAGEMENT | A-6 |
| Governing Bodies | A-6 |
| Relationship of Parties | A-10 |
| Management | A-10 |
| | |
| DESCRIPTION OF FACILITIES | A-12 |
| | |
| ALLEGHENY GENERAL HOSPITAL | A-13 |
| Patient Origin and Service Area | A-13 |
| Patient Care Services | A-14 |
| Historical Utilization of Patient Care Services | A-18 |
| | |
| ALLEGHENY NEUROPSYCHIATRIC INSTITUTE | A-20 |
| Patient Origin and Service Area | A-20 |
| Patient Care Sevices | A-20 |
| Historical Utilization of Patient Care Services | A-21 |
| | |
| ALLEGHENY SINGER RESEARCH INSTITUTE | A-21 |
| | |
| MEDICAL STAFF | A-22 |
| | |
| EMPLOYEES OF THE RESTRICTED GROUP | A-23 |
| | |
| EDUCATION PROGRAMS | A-24 |
| | |
| ACCREDITATIONS, MEMBERSHIPS AND APPROVALS | A-24 |
| | |
| MANAGEMENT'S DISCUSSION AND ANALYSIS | A-25 |
| Results of Operations | A-25 |
| Financial Condition | A-26 |
| Future Plans | A-26 |
| Proposed Affiliation | A-27 |
| | |
| CERTAIN FINANCIAL INFORMATION OF THE RESTRICTED GROUP | A-29 |
| Summary Statement of Revenues and Expenses | A-29 |
| Support to MCP | A-30 |
| Sources of Revenue | A-31 |
| Insurance | A-31 |

MBIA        010808

## HISTORY AND BACKGROUND

### General

Allegheny Health Services, Inc. ("AHS") is the parent corporation of the Allegheny system (the "Allegheny System"), which consists of several nonprofit and business corporations all controlled or owned, directly or indirectly, by AHS. Formed in 1983, AHS is committed to providing quality health care and health-related teaching and research and is responsible for planning, coordination and policy making for the entities currently comprising the Allegheny System, including the members of the Restricted Group, Allegheny General Hospital ("AGH"), Allegheny Neuropsychiatric Institute ("ANI"), and Allegheny Singer Research Institute ("ASRI"). AHS and its controlled affiliates and subsidiaries are organized and operated to serve the charitable purpose of promoting the general health of the community. This is accomplished through the delivery of a comprehensive range of health care services and involvement in other activities which advance or support these services in an academic environment, such as providing educational programs for health care practitioners, and supporting health care related research.

AGH has provided health care services to residents of the greater Pittsburgh area since 1886. During its more than 100 years of operation, the acute care hospital facility, located in Pittsburgh, Pennsylvania and owned and operated by AGH, has grown from a 50 bed hospital to its present licensed capacity of 746 acute care beds. AGH provides tertiary care hospital services to a five state area, including Pennsylvania, West Virginia, Ohio, New York, and Maryland.

ANI owns and operates a 94-bed facility located in Oakdale, Pennsylvania which treats patients with a dual diagnosis of a neurological disorder and concomitant psychiatric disturbances.

ASRI, since its formation in 1977, has conducted research activity that complements the strength of AGH's clinical programs. The research activity is funded through a combination of external sources and internal support from the Allegheny System. During fiscal years 1988 through 1990, ASRI was awarded approximately $8.9 million from various external sources, primarily federal agencies, private donations and endowment income and approximately $22.1 million from the Allegheny System. Total research expenditures during the same time period amounted to approximately $24.8 million.

The Allegheny System also includes The Medical College of Pennsylvania ("MCP"), which owns and operates a medical college with a current student enrollment of 466 medical students and 101 graduate students and a tertiary care teaching hospital licensed for 455 beds, the main campus of which is located in Philadelphia, Pennsylvania, with a campus in Pittsburgh, Pennsylvania at AGH's facilities; the Allegheny Health Foundation ("AHF") which manages

MBIA        010809

the non-operating funds of the Allegheny System; Diversified Health Group ("DHG"), a business corporation, which pursues appropriate proprietary opportunities, including joint ventures with physicians; Centennial Health Services ("CHS") which supports the management personnel of the Allegheny System; and Allegheny Health Services Providers Insurance Company ("AHSPIC"), a Cayman Island corporation, which is the vehicle for providing professional and general liability insurance.

AGH, ANI, ASRI, MCP, AHF and AHS are all Pennsylvania nonprofit corporations which have been determined by the Internal Revenue Service to be exempt from federal income tax under Section 501(a) of the Internal Revenue Code of 1986, as amended (the "Code") as organizations described in Section 501(c)(3) of the Code and fur-ther, not to be private foundations under Section 509(a) of the Code (each, a "Tax-Exempt Organization"). DHG is a Pennsylvania business corporation, all the outstanding stock of which is owned by AHF. CHS is a Pennsylvania nonprofit corporation and is not a Tax-Exempt Organization. AHSPIC is a business corporation organized and operating in the Cayman Islands, all the outstanding stock of which is owned by AGH.

AHS also provides, through a management contract, management services for Ohio Valley Health Services and Education Corporation ("OVHSEC"), a three hospital system with a total of 878 licensed acute care beds based in Wheeling, West Virginia and Martins Ferry, Ohio, which provide acute care and outpatient services to residents of West Virginia and Ohio.

**Corporate Governance**

A nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania may include in its corporate structure one or more classes of members and vest in such members, pursuant to its articles of incorporation or by-laws, powers over its corpo-rate organization and operations. A corporation may be a member of a nonprofit corporation.

AHS is the sole member of AGH, MCP, AHF and CHS and is the sole "Class A" member of ANI and ASRI. In such capacity, AHS is vested with and exercises certain powers over each controlled affiliate. These powers include the appointment and removal of directors; approval of amendments to articles of incorporation and by-laws; approval of annual operating and capital budgets; approval of unbudgeted expenditures in excess of certain amounts; approval of borrowings from external sources; approval of the granting of security interests in real property; and approval of the appointment of, and the right to remove the president.

AGH is the sole "Class B" member of ANI and ASRI, and as such is vested with certain powers which include the power to appoint directors of ANI and ASRI, respectively, subject to approval by the

A-2

MBIA        010810

Class A member; to recommend approval of amendments to the Articles of Incorporation or the Bylaws of ANI and ASRI, respectively, subject to final approval by the Class A member; to approve annual capital and operating budgets for ANI and ASRI, respectively, and their respective subsidiaries; to approve unbudgeted expenditures in excess of certain amounts for ANI and ASRI, respectively; and to approve borrowing of funds from external sources.

As sole shareholder of AHSPIC, AGH appoints the directors of AHSPIC.

As the sole shareholder of DHG, AHF has the power to determine the number of directors of DHG; to elect the directors of DHG; and to make or approve alterations, amendments, or a repeal of the bylaws of DHG.

**The Restricted Group**

### Allegheny General Hospital

AGH is responsible for the operation of its hospital facilities and services. AGH is licensed as an acute care general hospital by the Pennsylvania Department of Health and conducts and sponsors substantial medical and health care professional educational programs, including those undertaken at the Pittsburgh campus of MCP. AGH is governed by a thirty person Board of Directors, of which seven serve as ex-officio with vote and one serves as ex-officio without vote.

### Allegheny Neuropsychiatric Institute

ANI is licensed as a psychiatric hospital by the Pennsylvania Department of Public Welfare. ANI is governed by a nine person Board of Directors which includes two ex-officio voting members.

### Allegheny Singer Research Institute

ASRI performs clinical and non-clinical medical research. It is governed by a ten person Board of Directors which includes five ex-officio voting members.

**Non-Restricted Affiliates**

### Allegheny Health Services

AHS is the parent corporation of the Allegheny System and, in addition to being responsible for planning, coordination and policy making for the Allegheny System, is responsible for fund development activities on behalf of all entities within the Allegheny System.

A-3

MBIA    010811

### Allegheny Health Foundation

AHF manages the non-operating funds of the Allegheny System.

### Centennial Health Services

CHS provides centralized corporate support functions and management functions for the Allegheny System. In this capacity, CHS employs senior management and corporate staff for the Allegheny System, including AGH, ASRI, ANI, and MCP.

### Diversified Health Group

DHG is the for-profit arm of the Allegheny System which engages in selected for-profit active investment opportunities. DHG has a 50% interest in two joint ventures with members of the AGH Medical Staff, an imaging center and an ambulatory surgical center.

### Allegheny Health Services Providers Insurance Company

AHSPIC is a business corporation based in the Cayman Islands which has a Class B Unrestricted Insurance License. AHSPIC serves as the vehicle for the provision of professional and general liability insurance to AGH and certain of its physicians, as well as to other corporations within the Allegheny System.

### The Medical College of Pennsylvania

MCP owns and operates a medical college and tertiary care teaching hospital located in Philadelphia, Pennsylvania licensed for 455 acute care beds. MCP also has a campus located in Pittsburgh, Pennsylvania at AGH's facilities.

The chart on the facing page shows the relationships among AHS and the other corporations of the Allegheny System. Only the members of the Restricted Group are liable for any obligations under the Loan Agreement, the Master Indenture or the Series 1991 Note or the payment of the principal of, premium, if any, and interest on the Bonds.

A-4

MBIA    010812



* Member of the Restricted Group
— Control
-- Stock ownership

A-5

MBIA    010813

## GOVERNING BODIES AND MANAGEMENT

### Governing Bodies

Listed below are the officers and members of the Boards of Directors of AGH, ANI and ASRI. Members of the Boards are appointed by AHS to staggered three-year terms. Directors receive no compensation for their services as directors. Some officers of AGH, ANI and ASRI are compensated as employees of CHS. All appointments are as of December 17, 1990.

### Allegheny General Hospital

| Officer/Director | Affiliation |
|---|---|
| **OFFICERS** | |
| Francis B. Nimick, Jr.<br>Chairman | Retired, President and Chief Executive Officer, Dollar Savings Bank |
| Sherif S. Abdelhak<br>Vice Chairman | President & Chief Executive Officer, Allegheny Health Services, Inc. |
| Anthony M. Sanzo | President and Chief Executive Officer, Allegheny General Hospital |
| W. Bruce Thomas<br>Secretary | Vice Chairman of Administration & Chief Financial Officer, USX Corporation |
| Ira J. Gumberg<br>Treasurer | President and Chief Executive Officer, J. J. Gumberg Company |
| Nancy A. Wynstra *<br>Assistant Secretary | Executive Vice President & General Counsel, Allegheny Health Services, Inc. |
| Mary S. Mayer *<br>Assistant Secretary | Assistant Vice President, Corporate Affairs, Allegheny Health Services, Inc. |
| David W. McConnell<br>Assistant Treasurer | Executive Vice President & Chief Financial Officer, Allegheny Health Services, Inc. |
| Joseph D. Dionisio *<br>Assistant Treasurer | Senior Vice President and Chief Financial Officer, Allegheny General Hospital, Senior Vice President and Chief Information Officer, Allegheny Health Services, Inc. |
| **DIRECTORS** | |
| James B. Armor | Retired, President, Thrift Drug Company |

A-6

MBIA     010814

| | |
|---|---|
| George J. Brodmerkel, M.D. | Immediate Past President of Medical Staff, Allegheny General Hospital |
| John A. Burkholder, M.D. | President of Medical Staff, Allegheny General Hospital |
| Martha Burkholder ** | President, Allegheny General Hospital Auxiliary |
| William J. Copeland | Retired, Vice Chairman of the Board, Pittsburgh National Bank |
| Daniel Diamond, M.D. | President-Elect, Medical Staff, Allegheny General Hospital |
| William T. Duboc | Retired, Director of Special Projects, Power Generation Business Unit, Westinghouse Electric Corporation |
| Harry R. Edelman, III | Chairman and President, Heyl and Patterson, Inc. |
| William H. Genge | Chairman & Chief Executive Officer, K M & G International, Inc. |
| Robert M. Hernandez | Senior Vice President and Treasurer, USX Corporation |
| Graemer K. Hilton | Retired, President and Chief Operating Officer, Allegheny International, Inc. |
| Claude R. Joyner, M.D. | Chairman, Department of Medicine Allegheny General Hospital |
| Caryl M. Kline | Former Secretary of Education, Commonwealth of Pennsylvania; Retired, Bank Officer |
| George J. Magovern, M.D. | Chairman, Department of Surgery, Allegheny General Hospital |
| Donald J. McGraw, M.D. | President, Pittsburgh Biomedical Development Corporation; Partner, Chief Executive Officer, Venture Fund |
| Robert B. Pease | Executive Director, Allegheny Conference on Community Development |
| Leonard L. Ross, Ph.D. | Executive Vice President, Chief Academic Officer and Dean, The Medical College of Pennsylvania |
| Vincent A. Sarni | Chairman and Chief Executive Officer, PPG Industries, Inc. |
| A. William Schenck, III | Vice Chairman, Pittsburgh National Bank |
| David W. Sculley | Senior Vice President, H. J. Heinz Company |
| J. Brandon Snyder | President, J. S. McCormick Company |

A-7

MBIA    010815

| | |
|---|---|
| W. P. Snyder, III | President, Wilpen Group, Inc. |
| Laird J. Stuart, D.D. | Senior Minister, Westminster Presbyterian Church |
| Donal A. Warde, M.D. | Chairman, Executive Committee of the Medical Staff, Allegheny General Hospital |

\*     Appointed Officer, without vote
\*\*   Ex-Officio Member, without vote

### Allegheny Neuropsychiatric Institute

| Officer/Director | Affiliation |
|---|---|

**OFFICERS**

| | |
|---|---|
| William F. Adam<br>  Chairman | Senior Vice President, Mellon Bond Associates |
| James Brady \*<br>  Honorary Chairman | Former Press Secretary, White House |
| Richard K. Means, Jr.<br>  Vice Chairman | President, Pittsburgh Business Properties |
| Anthony M. Sanzo<br>  Interim President | President and Chief Executive Officer, Allegheny General Hospital |
| William T. Duboc<br>  Secretary/Treasurer | Retired, Director of Special Projects, Power Generation Business Unit, Westinghouse Electric Corporation |
| Nancy A. Wynstra \*<br>  Assistant Secretary | Executive Vice President and General Counsel, Allegheny Health Services, Inc. |
| Mary S. Mayer \*<br>  Assistant Secretary | Assistant Vice President, Corporate Affairs, Allegheny Health Services, Inc. |
| Joseph D. Dionisio \*<br>  Assistant Treasurer | Senior Vice President and Chief Financial Officer, Allegheny General Hospital,<br>Senior Vice President and Chief Information Officer, Allegheny Health Services, Inc. |
| Roger A. Oxendale \*<br>  Assistant Treasurer | Assistant Vice President, Finance, Allegheny General Hospital and Chief Financial Officer, Allegheny Neuropsychiatric Institute |

**DIRECTORS**

| | |
|---|---|
| Sherif S. Abdelhak | President & Chief Executive Officer, Allegheny Health Services, Inc. |

A-8

MBIA      010816

| | |
|---|---|
| Harry R. Edelman, III | Chairman and President<br>Heyl & Patterson, Inc. |
| Ira J. Gumberg | President and Chief Executive<br>Officer, J. J. Gumberg Company |
| Gary Perecko | President & Chief Executive<br>Officer, Greater Canonsburg<br>Health Systems |
| Trevor R. P. Price, M.D. | Chairman, Department of<br>Psychiatry |

*Appointed Officer, without vote

## Allegheny-Singer Research Institute

| Officer/Director | Affiliation |
|---|---|
| **OFFICERS** | |
| Harry R. Edelman, III<br>  Chairman | Chairman & President,<br>  Heyl & Patterson, Inc. |
| G. Harton Singer, III *<br>  Lifetime Honorary Chairman | Retired, First Vice President,<br>  Butcher & Singer, Inc. |
| Sherif S. Abdelhak<br>  Vice Chairman | President & Chief Executive<br>  Officer, Allegheny Health<br>  Services, Inc. |
| William T. Duboc<br>  Secretary/Treasurer | Retired, Director of Special<br>  Projects, Power Generation<br>  Business Unit, Westinghouse<br>  Electric Corporation |
| James H. McMaster, M.D.<br>  President and Chief<br>  Executive Officer | Executive Vice President,<br>  Clinical Affairs, Allegheny<br>  Health Services, Inc. |
| Nancy A. Wynstra *<br>  Assistant Secretary | Executive Vice President &<br>  General Counsel,<br>  Allegheny Health Services, Inc. |
| Mary S. Mayer *<br>  Assistant Secretary | Assistant Vice President,<br>  Corporate Affairs, Allegheny<br>  Health Services, Inc. |
| Joseph T. Donnelly *<br>  Assistant Treasurer | Vice President and Corporate<br>  Controller, Allegheny Health<br>  Services, Inc. and Chief<br>  Financial Officer, Allegheny-<br>  Singer Research Institute |
| **DIRECTORS** | |
| Donald J. McGraw, M.D. | President, Pittsburgh Biomedical<br>  Development Corporation;<br>  Partner, Chief Executive<br>  Officer, Venture Fund |

A-9

| | |
|---|---|
| George J. Magovern, M.D. | Chairman, Allegheny Heart Institute; Chairman, Department of Surgery, Allegheny General Hospital |
| Frederick R. Heckler, M.D. | Chairman, Research Committee, Allegheny-Singer Research Institute; Director, Division of Plastic Surgery, Allegheny General Hospital |
| Leonard L. Ross, Ph.D. | Executive Vice President, Chief Academic Officer and Dean, The Medical College of Pennsylvania |
| Joseph E. Rowe, Ph.D. | Chairman, Allegheny-Singer Research Institute Scientific Advisory Committee; Vice President and Chief Scientist, PPG Industries, Inc. |

* Appointed Officer, without vote

**Relationship of Parties**

Certain members of the Board of Directors are associated with organizations doing business with AHS and other organizations within the Allegheny System. The Allegheny System has a conflict of interest policy which requires that Board members and management disclose any potential conflicts of interest and refrain from voting on issues which may present a conflict.

Specific individuals on the Board of Directors who have a direct or indirect relationship to the issuance of the Bonds and the transactions associated therewith include Mr. Schenck and Mr. Copeland, who are or have been employed by Pittsburgh National Bank, the Bond Trustee. PNC Securities Corp, an affiliate of Pittsburgh National Bank, will be a co-managing underwriter of the Bonds. PNC Financial Corp is the holding company of both Pittsburgh National Bank and PNC Securities Corp. Neither of these individuals has been involved in the selection of either the Bond Trustee or the co-managing underwriter.

**Management**

Selected biographical information on the principal members of the management of AHS, who also manage the organizations within the Restricted Group, is shown below:

**Sherif S. Abdelhak**, has been President and Chief Executive Officer of AHS and its affiliates since April 1986. He was previously employed by AGH from 1971 to 1982. He received a Bachelor's Degree in Economics/Political Science from the American University of Cairo

A-10

MBIA    010818

in Egypt and received a Master's Degree in Business Administration from the University of Pittsburgh. Before rejoining AHS, Mr. Abdelhak was President and Chief Executive Officer of Greater Canonsburg Health System for over three years.

**Anthony M. Sanzo,** has been President of AGH since December, 1989 and was given the additional responsibilities of Chief Executive Officer of AGH in January 1990. He previously served as Chief Operating Officer since December, 1987. He received a Bachelor's Degree in Economics from Allegheny College, Meadville, Pennsylvania and a Master's Degree in Hospital Administration from Duke University, Durham, North Carolina. Prior to joining AGH in 1986, Mr. Sanzo served as the Acting President and Chief Executive Officer of Presbyterian-University Health Systems, Inc. and Presbyterian-University Health Resources Management, Inc. in Pittsburgh.

**David W. McConnell,** has been Executive Vice President and Chief Financial Officer of AHS since January 1988. He previously served as Senior Vice President and Chief Financial Officer from 1986 through 1987. He received a Bachelor's Degree from Robert Morris College, Pittsburgh, Pennsylvania and a Master's Degree in Public Health Care Management from Carnegie Mellon University, Pittsburgh, Pennsylvania. Prior to joining AHS in 1980, Mr. McConnell served as Assistant Controller at the Ohio Valley General Hospital in Pittsburgh for six years.

**Joseph D. Dionisio,** has been Senior Vice President and Chief Information Officer for AHS since February 1989 and Senior Vice President and Chief Financial Officer for AGH since December 1989. He is a Certified Public Accountant and received his Bachelor of Science Degree in Accounting from Point Park College. Prior to joining AHS, Mr. Dionisio spent 20 years with Price Waterhouse providing auditing and consulting services primarily to the health care industry.

**Nancy A. Wynstra,** has been Executive Vice President and General Counsel of AHS and its affiliates since January 1988. She was previously Senior Vice President and General Counsel from June 1983 to January 1988. She received her Bachelor's Degree in History from Whitman College, Walla Walla, Washington, graduating cum laude, and her J.D., also cum laude, from Columbia University School of Law, New York. Prior to joining AHS, Ms. Wynstra was Chief Counsel at Michael Reese Hospital and Medical Center, Chicago, Illinois, from 1978 to 1983.

**James H. McMaster, M.D.,** has been Executive Vice President of Clinical Affairs of AHS since January 1988. He received his M.D. degree from Temple University Medical School and his Bachelor of Arts from Washington and Jefferson College, Washington, Pennsylvania. He served his internship and general surgery residency at the Harrisburg Polyclinic Hospital in Harrisburg,

A-11

MBIA     010819

Pennsylvania. His Orthopedic Surgery Residency was served at the University of Pittsburgh Health Center Hospitals. Before coming to AGH in July of 1976, he was on the Attending Staff of Children's Orthopedic Clinic and Jackson Memorial Hospital, Miami, Florida.

## DESCRIPTION OF FACILITIES

The campus of the Restricted Group currently consists of numerous buildings located in Pittsburgh, Pennsylvania, with the exception of the facilities owned by ANI, which are located in Oakdale, Pennsylvania. All of the facilities described below are owned and operated by organizations within the Restricted Group. In addition, there is a professional office building on campus that is not owned by any of the Restricted Affiliates. The following is a description of each building, its approximate square footage and use.

### William P. Snyder, III Pavilion

The William P. Snyder, III Pavilion is a 12-story inpatient hospital building which opened in 1981 and comprises 740,000 square feet with 20 surgical suites, five cardiac catheterization laboratories, seven labor rooms and four delivery rooms. The William P. Snyder, III Pavilion contains all inpatient services of AGH.

### Northwest Wing

The Northwest Wing, completed in 1974 with 90,000 square feet, provides major diagnostic and treatment services such as Radiation Therapy, Diagnostic Radiology, Emergency/Trauma Services and Laboratory Medicine. An addition to the Northwest Wing has been completed to provide approximately 5,100 additional square feet for two Nuclear Magnetic Resonance Units.

### South Tower

The South Tower is the former site of the AGH inpatient facility. Since the inpatient facility was relocated in 1981 to the William P. Snyder, III Pavilion, the South Tower has been utilized for outpatient clinics, research, business offices, and professional and ancillary office space. The South Tower consists of 375,127 square feet and 18 stories. Its unique architecture has been preserved and serves as a landmark for the Pittsburgh skyline.

### Allegheny Neuropsychiatric Institute

Purchased in November 1987 and opened after renovations in May 1988, this 22-acre site, with its 92,000 square foot building, provides 94 inpatient beds for neuropsychiatric care. See the information herein under the caption, "ALLEGHENY NEUROPSYCHIATRIC INSTITUTE".

A-12

MBIA        010820

## Research Wing

The powerhouse for the old inpatient facility (South Tower) was converted in 1976 to the Research Wing, providing space for surgical, renal and cardiovascular research programs.  The Research Laboratories have developed improved surgical procedures and techniques as well as instruments and pre-operative and post-operative life support devices.

## Educational Conference Center

The Educational Conference Center, completed in July 1988, comprises 24,326 square feet.  The Educational Conference Center includes a 300 seat auditorium, state-of-the-art audio-visual capabilities and multi-use space able to handle groups from 50 to 300 for conference break-out sessions.

## Continuing Care Center

AGH has commenced construction of the Continuing Care Center, which is scheduled for completion in June 1991.  The Continuing Care Center will provide continuity of care for AGH patients requiring extended nursing care and serve as a transition from the acute care setting to the home.  This facility will contain 119 nursing care beds and will service AGH inpatients exclusively.  The Continuing Care Center will comprise 108,000 gross square feet, of which 20,000 square feet is not yet allocated.

## East Wing

The East Wing, which formerly housed patient care beds, is now a professional office building owned by AGH.  The building contains both private physician practices and hospital functions  and consists of approximately 77,454 square feet.  The building is 100% occupied.

## Parking Facilities

AGH owns two parking garages, one containing 817 spaces for physician and public parking, and another containing 922 spaces for employees.


### ALLEGHENY GENERAL HOSPITAL

## Patient Origin and Service Area

AGH owns and operates facilities located in Allegheny County, Pittsburgh, Pennsylvania.  AGH's primary service area is Allegheny County which accounted for 52.2% of total discharges during fiscal year 1990.  AGH's secondary service area is defined as the ten counties in Pennsylvania surrounding Allegheny County and five

A-13

MBIA     010821

adjacent counties in West Virginia and Ohio. The secondary service area represented an additional 35.8% of AGH's total discharges during fiscal year 1990. The remaining 12% of AGH's discharges come from areas outside of Allegheny County and the secondary service area.

In addition to AGH, twenty-one acute care hospitals are located in Allegheny County. The following data is a summary of fiscal year 1989 inpatient utilization statistics (excluding newborn utilization) comparing the hospitals within Allegheny County which most directly compete with AGH.

COMPETITIVE INSTITUTIONS
FY 1989 UTILIZATION STATISTICS
(EXCLUDES NEWBORN UTILIZATION)

| | LICENSED BEDS | AVAILABLE BEDS | ADMISSIONS | PATIENT DAYS | AVERAGE LENGTH OF STAY (DAYS) | AVERAGE OCCUPANCY (AS A % OF AVAILABLE BEDS) |
|---|---|---|---|---|---|---|
| AGH (1) | 714 | 699 | 26,658 | 206,829 | 7.5 | 80.0% |
| Competitors (2) | | | | | | |
| The Mercy Hospital of Pittsburgh | 511 | 507 | 17,988 | 145,327 | 8.0 | 78.5% |
| Montefiore Hospital | 520 | 336 | 10,400 | 86,918 | 8.4 | 70.8% |
| Presbyterian University Hospital | 636 | 570 | 18,723 | 173,842 | 9.3 | 83.6% |
| Shadyside Hospital | 446 | 401 | 15,827 | 126,237 | 8.0 | 86.2% |
| St. Francis Medical Center | 760 | 729 | 17,488 | 184,806 | 10.6 | 69.0% |
| The Western Pennsylvania Hospital | 542 | 453 | 16,065 | 136,694 | 8.5 | 82.7% |

SOURCES:      (1) AGH records as of June 30, 1989
              (2) Pennsylvania Department of Health, State Health Data Center.
                  (Reporting period July 1, 1988 through June 30, 1989.)

## Patient Care Services

AGH offers a full range of inpatient and outpatient diagnostic and therapeutic services and related ancillary services. Some specialty and subspecialty services provided by AGH include:

A-14

MBIA      010822

| | |
|---|---|
| Allergy | Open Heart Surgery |
| Anesthesiology | Ophthalmology |
| Cardiac Catheterization | Oral & Maxillofacial Surgery |
| Cardiology | Orthopedics |
| Dentistry | Otorhinolaryngology |
| Dermatology | Pediatric Cardiology |
| Emergency Medicine | Pediatrics |
| Electrophysiology | Pediatric Endocrinology |
| Endocrinology | Pediatric Neurology |
| Gastroenterology | Pediatric Surgery |
| General Medicine | Pediatric Trauma |
| General Surgery | Pediatric Neurosurgery |
| Gynecologic Oncology | Plastic Surgery |
| Hand Surgery | Proctology |
| Hematology | Psychiatry |
| Infectious Diseases | Radiology-diagnostic |
| Laboratory Medicine | Reproductive Endocrinology |
| Neonatology | Respiratory Disease |
| Neurology | Rheumatology |
| Neuro-otology | Spina Bifida |
| Neurosurgery | Thoracic Surgery |
| Nuclear Cardiology | Transplantation Services |
| Obstetrics/Gynecology | Trauma Services |
| Oncology | Urology |

AGH has developed several centers of excellence as follows:

Cardiovascular Services

AGH has been a regional leader in the delivery of medical and surgical services to patients with cardiovascular disease. A complete range of invasive and non-invasive techniques is available. Five cardiac catheterization laboratories perform over 7,700 in-patient and outpatient cardiac angiography procedures annually, the largest number in the Commonwealth of Pennsylvania. This figure includes over 1,300 coronary angioplasty procedures. The number of cardiac catheterization procedures has increased by 68% since fiscal year 1987. AGH has nearly doubled the number of angiographers on its staff, to twenty-two, since fiscal year 1988. Three nuclear cardiologists and four cardiac electrophysiologists have been recruited to AGH since fiscal year 1987.

AGH's open heart surgery program has existed since 1956, and now performs over 1,500 open heart procedures annually. In 1986, the cardiothoracic team made medical history by using a muscle flap to augment the heart's function. Heart transplantation was initiated in 1987 and, to date, 32 procedures have been performed.

Cardiovascular services are also supported by the non-invasive echocardiography laboratory. The laboratory offers state-of-the-art echocardiographic techniques including stress echocardiography and

A-15

MBIA     010823

transesophageal echocardiography. The division also has a strong cardiac rehabilitation program encompassing both the inpatient component of cardiac rehabilitation as well as a monitored and unmonitored exercise program for the post-hospital patient.

### Oncology

As a cancer center designated by the American College of Surgeons Commission on Cancer, AGH has developed a comprehensive program for cancer patients. AGH now supports full-time staffs in medical, radiation, and gynecological oncology and provides specialized personnel responsible for nutritional counseling, social service, home health care and psychiatric and rehabilitation counseling. Integrated with the cancer center is the Allegheny Home Health Care Program which operates an outpatient Hospice Program.

Effective June 1, 1990, AGH has received a five-year grant from the National Cancer Institute (NCI) for its Clinical Community Oncology Program (A-CCOP), representing the third such grant awarded to AGH. The A-CCOP currently serves Western Pennsylvania and Eastern Ohio and involves oncologists at five area facilities in addition to AGH. AGH's program is one of 51 programs nationally. To date, more than 850 patients have entered clinical trials with several thousand evaluated for possible entry over the past several years. AGH's participation in this program allows greater access to nationwide clinical oncologic research.

The cancer program is supported by a full range of support services including radiation therapy, and is one of the few centers nationally offering hyperthermia and brachytherapy services. In 1989, AGH initiated an autologous bone marrow transplant program and constructed a six bed unit to support this service.

### Musculoskeletal

The Department of Orthopedics provides a comprehensive range of services including in-depth diagnostic and therapeutic care by specialists trained in trauma and reconstructive surgery, the spine, the upper extremities, total joint replacement, sports medicine, and general orthopedics. AGH is a major referral center and a leader in the use of microsurgery for severe orthopedic traumatic injuries. AGH is one of 27 medical centers in the country to utilize the Monticelli Spinelli external fixation system, a device for treating seriously fractured and defected bones. AGH is also one of the few institutions nationally to use the Sidel nail to treat complex fractures of the humerus.

Presently, in the orthopedics research laboratories, research is underway in the molecular and biochemical mechanisms of various musculoskeletal diseases.

A-16

MBIA    010824