Restriction on Pledging Revenues

AGH agrees that it will not, and that it will not cause or permit any Restricted Affiliate to, pledge or grant a security interest in any of its Gross Revenues or other items pledged under the Master Indenture and the Contribution Agreements, except as provided under the Master Indenture.

Covenants as to Corporate Existence

AGH is required to (i) cause each Restricted Affiliate to remain a Restricted Affiliate throughout the term of the Master Indenture, except as permitted by the Master Indenture, (ii) promptly satisfy all of its obligations and Indebtedness other than that being contested in good faith and (iii) take no action, and assure that no Restricted Affiliate which is a Tax Exempt Organization (as defined in the Master Indenture) takes any action to cause the interest on any Related Bonds to be subject to federal income taxes.

Rate Covenant; Accounts Receivable

AGH is required to demonstrate at the end of each fiscal year that the Long-Term Debt Service Coverage Ratio of the Restricted Group is not less than 1.10. In addition, AGH covenants that the net accounts receivable for the Restricted Group, as shown on the Financial Statements, will not at any time exceed 30% of the Total Operating Revenues of the Restricted Group, as shown on the Financial Statements. If such ratio is below 1.10 or the amount of net accounts receivable exceeds such limit, AGH is required to retain a Consultant to make recommendations to increase such ratio to the required level or to the highest practicable level if, in the opinion of the Consultant, the achievement of the required level is impracticable and to make recommendations to improve methods of collection of such receivables such that the Restricted Group will not exceed the limit on net accounts receivable in future years. AGH is required to follow and to cause each Restricted Affiliate to follow the Consultant's recommendations, to the extent permitted by law.

So long as AGH shall retain a Consultant and the Restricted Group shall follow the recommendations of such Consultant, the provisions mentioned herein shall be deemed to have been met even if such ratio for any subsequent fiscal year is below the required level or the net accounts receivable exceed the permitted level; provided that the revenues of the Restricted Group are not less than the amount required in cash to pay the Total Operating Expenses of the Restricted Group and debt service on all Indebtedness of the Restricted Group.

MBIA        010900

If a report of a Consultant is delivered to the Master Trustee stating that Governmental Restrictions have been imposed which make it impossible for the coverage requirement to be met, then such coverage requirement shall be reduced to the maximum permitted level but not below 1.00, or which make it impossible for the net accounts receivable requirement to be met, then such requirement will be reduced to a level which can be met and still comply with such Governmental Restrictions.

## Limitations on Additional Indebtedness

AGH agrees that it will not incur any Additional Indebtedness, whether represented by Notes, Guaranties or otherwise, except as set forth in (a) through (k) below.

(a) Long-Term Indebtedness, including Notes and Guaranties, may be incurred by AGH or any Restricted Affiliate if AGH determines and states in an Officer's Certificate that either (i) the Long-Term Debt Service Coverage Ratio for the previous year, including the proposed Additional Indebtedness as if it had been incurred at the beginning of such year, is at least 1.50, or (ii) the Long-Term Debt Service Coverage Ratio for the previous year, not considering the proposed Additional Indebtedness, is at least 1.10 and the forecasted Long-Term Debt Service Coverage Ratio for each of the two years following the borrowing or the completion of the facilities being financed is at least 1.20. Forecasted Long-Term Debt Service Coverage Ratios must be demonstrated in pro forma combined financial statements of the Restricted Group, confirmed by a Consultant. AGH and the Restricted Affiliates may incur Long-Term Indebtedness in an amount up to 5% of the Total Operating Revenues of the Restricted Group without complying with either test.

(b) Completion Indebtedness may be incurred by AGH or Restricted Affiliates without limitation.

(c) Long-Term Indebtedness for the purpose of refunding any outstanding Long-Term Indebtedness may be incurred by AGH or any Restricted Affiliate if it is in the best interests of AGH and the Master Trustee receives an opinion of counsel stating that, after refunding, the outstanding Long-Term Indebtedness will no longer be Outstanding.

(d) Intermediate-Term Indebtedness may be incurred by AGH or any Restricted Affiliate if such Indebtedness does not, in total aggregate amount, exceed 15% of the Total Operating Revenues of the Restricted Group for the previous fiscal year.

D-15

MBIA        010901

(e)  Short-Term Indebtedness may be incurred by AGH or any
     Restricted Affiliate in the ordinary course of business
     if the aggregate of such Indebtedness outstanding,
     including the proposed Indebtedness, will not exceed 15%
     of the Total Operating Revenues of the Restricted Group
     for the previous fiscal year; provided, however, that AGH
     or any Restricted Affiliate is required to be free from
     Short-Term Indebtedness but for an amount equal to 3% of
     Total Operating Revenues for a period of 20 consecutive
     days during each fiscal year.

(f)  Interim Indebtedness having a term of 60 months or less
     issued in anticipation of the incurrence of Long-Term
     Indebtedness may be incurred by AGH if AGH states in an
     Officer's Certificate that the financing by Long-Term
     Indebtedness is reasonably expected to be completed
     within the next 60 months and if AGH can demonstrate
     compliance with the tests set forth in (a) above using
     assumed debt service requirements, based upon a 20 year
     amortization period and an interest rate (confirmed by an
     institution experienced in health care finance) at which
     AGH could secure a similar amount by issuing a 20-year
     term Note, or the actual debt service requirements for
     permanent financing if there is a binding commitment of
     a responsible financial institution to provide permanent
     financing within such 60-month period.

(g)  Non-Recourse Indebtedness may be incurred by AGH or any
     Restricted Affiliate (i) in an amount not exceeding 15%
     of the Total Operating Revenues of the Restricted Group
     for the previous fiscal year or (ii) in excess of such
     percentage if a Consultant determines that the facilities
     being financed with such Non-Recourse Indebtedness will
     have, for two fiscal years following completion of the
     project being financed, a projected long term debt
     service coverage ratio of at least 1.50.

(h)  AGH or any Restricted Affiliate is permitted to incur
     Balloon Long-Term Indebtedness and Optional Tender
     Indebtedness, in an amount outstanding up to 15% of Total
     Operating Revenues for the previous fiscal year. AGH or
     any Restricted Affiliate may incur Balloon Long-Term
     Indebtedness and Optional Tender Indebtedness, in the
     aggregate, in excess of such percentage if AGH or the
     Restricted Affiliate funds a sinking fund for the amount
     in excess of such limit and payments into the sinking
     fund on account of such Indebtedness comply with the
     tests mentioned in (a) above.

MBIA      010902

(i) Convertible Indebtedness may be incurred by AGH or any Restricted Affiliate. The nature of the debt at the time it is incurred will determine the test or limit to be imposed on the Convertible Indebtedness.

(j) AGH is permitted to incur Variable Rate Long-Term Indebtedness if the test set forth in (a) is met with respect thereto. In determining compliance with the test set forth in (a) and in determining compliance with the Debt Service Coverage Ratio requirement, the interest rate on Variable Rate Long-Term Indebtedness during each fiscal year is assumed to be the rate which was or would have been in effect on the last day of the prior fiscal years.

(k) The total principal amount of any Additional Indebtedness the incurrence of which is limited to a percentage of Total Operating Revenues may not exceed 25% of Total Operating Revenues. However, should the ability of the Restricted Group to generate sufficient revenues to pay such indebtedness, previously incurred within the percentage limits mentioned above without being reported upon by a Consultant, be reported upon by a Consultant, the percentage limits mentioned herein represented by such portion of such indebtedness so reported upon by a Consultant shall be reinstated.

Guaranties

AGH agrees that it will not, and that it will not permit any Restricted Affiliate to, enter into any Guaranty (which, in general, means an obligation guaranteeing in any manner the obligations of another person which, if that person were AGH or such Restricted Affiliate, as the case may be, would constitute Indebtedness, unless the guaranteed obligation is other than for payment of a sum certain) of obligations of an entity which is not a member of the Restricted Group unless there is delivered to the Master Trustee a Consultant's report showing the total of the income available for debt service for the person whose indebtedness is being guaranteed and the Net Income Available for Debt Service for two fiscal years following the date of the proposed Guaranty. If the percentage derived from dividing the total mentioned in the preceding sentence by the total of the maximum annual debt service in any year thereafter on the indebtedness being guaranteed and Maximum Annual Debt Service is (i) less than 1.00; (ii) between 1.00 and 1.50; or (iii) in excess of 1.50 then in the case of (i) no Guaranty shall be made, in the case of (ii) the Guaranty may be made but 100% of the annual debt service on the indebtedness being

MBIA      010903

guaranteed shall be added to the computation of Long-Term Debt
Service Requirement and in the case of (iii) the Guaranty may be
made but 20% of the annual debt service on the indebtedness being
guaranteed shall be added to the computation of Long-Term Debt
Service Requirement.

**Limitations on Creation of Liens**

AGH agrees that it will not create or suffer to be created or
permit the existence of, or permit a Restricted Affiliate to create
or suffer to be created or permit the existence of, any Lien upon
Property now owned or hereafter acquired by AGH or any Restricted
Affiliate other than Permitted Liens.

**Sale, Lease or Other Disposition of Operating Assets; Disposition
of Liquid Assets**

Except for the transfer of certain physical assets transferred
subsequent to the Series 1983 Note of AGH, AGH agrees that it will
not, and that it will not permit any Restricted Affiliate to, sell,
lease or otherwise dispose of Operating Assets in any fiscal year
the Book Value of which would, in the aggregate, exceed 1/2 of 1%
of the Book Value of Property, Plant and Equipment, except in the
ordinary course of business and except for transfers of Operating
Assets (i) to any person if in the judgment of AGH, stated in an
Officer's Certificate, the Operating Assets are or will, within the
next 24 months, become obsolete, worn out, unnecessary or
unprofitable; (ii) to another member of the Restricted Group; (iii)
to a person which is not a member of the Restricted Group if AGH
states in an Officer's Certificate that assuming such transfer
occurred on the first day of the prior fiscal year, the Long-Term
Debt Service Coverage Ratio for such fiscal year would not have
been reduced by more than 20% or to less than 1.50 or the average
of the forecasted Long-Term Debt Service Coverage Ratios for the
next two fiscal years would be greater than 1.50 and not reduced to
less than 80% of the historic level; or (iv) to an affiliate of AGH
which is not a Restricted Affiliate if such affiliate becomes a
Restricted Affiliate pursuant to the Master Indenture.

AGH or any Restricted Affiliate may transfer liquid assets (i)
to another member of the Restricted Group without limit or (ii) to
another person provided that there is stated in an Officer's
Certificate that the Long-Term Debt Service Coverage Ratio for the
previous fiscal year would not be below 1.75 if the amount of Net
Transfers of Liquid Assets were deducted from Income Available for
Debt Service for such period.

Net Transfers of Liquid Assets means (i) transfers of liquid
assets during such period to any person which is not a Restricted
Affiliate minus (ii) the amount of liquid assets transferred to AGH
or a Restricted Affiliate during such period by any person which is
not a Restricted Affiliate which transfers to AGH or Restricted

MBIA     010904

Affiliate would, under generally accepted accounting principals, have no effect on Net Income Available for Debt Service of the Restricted Group.

Consolidation and Merger

AGH covenants that it will not, and that it will not permit any Restricted Affiliate to, merge or consolidate with any other corporation, partnership, joint venture, business trust or other entity which is not a Restricted Affiliate or sell or convey all or substantially all of its assets to any such entity who is not a Restricted Affiliate except as stated below.

(a)   If AGH or a Restricted Affiliate is the continuing entity, immediately after such merger, consolidation, sale or conveyance (the "Corporate Action"), AGH must be in compliance with all covenants of the Master Indenture, and the Restricted Group must meet the tests mentioned herein for the incurrence of one dollar of additional Long-Term Indebtedness;

(b)   If neither AGH nor a Restricted Affiliate is the continuing entity, then (i) any successor entity to AGH must assume the obligations of AGH under the Notes, including the Series 1991 Note, and the Master Indenture and, immediately after the Corporate Action, must be in compliance with the covenants of the Master Indenture as described in paragraph (a) above and (ii) any successor entity to a Restricted Affiliate must either become a Restricted Affiliate or the conditions relating to the cessation of restricted status described below under "Cessation of Status as Restricted Affiliate; Limitation On Preferred Stock"' must be complied with; and

(c)   Such merger, consolidation or sale will not, in the opinion of bond counsel, have an adverse effect on the tax-exempt status of any Related Bond.

Cessation of Status as Restricted Affiliate; Limitation on Preferred Stock

AGH covenants that it will not, and that it will not permit any Restricted Affiliate to, take any action which would cause any Restricted Affiliate to cease to be a Restricted Affiliate unless prior to taking such action there is delivered to the Master Trustee a report by a Consultant to the effect that immediately after such action (i) the Long-Term Debt Service Coverage Ratio for the previous fiscal year, assuming such action was taken at the beginning of that year, would not have been reduced by more than

MBIA    010905

20% or to less than 1.50 or (ii) the average of the Long-Term Debt Service Coverage Ratios for the two succeeding fiscal years will be greater than 1.50 and not less than 80% of the figure in (i) or higher than it would have been if such action had not been taken.

AGH also covenants that it will not permit any Restricted Affiliate to issue any equity securities the payment of any dividend on which ranks prior to payments under a Contribution Agreement or which require distribution of assets following liquidation to any person prior to distribution to another Restricted Affiliate.

## Addition of Restricted Affiliates

Affiliates may become Restricted Affiliates upon compliance with the following conditions, among others:

(a) The Affiliate's articles of incorporation, by-laws or other organic document pursuant to which the Affiliate is organized contain the Required Charter Provisions.

(b) The Affiliate executes and delivers a Contribution Agreement.

(c) A Consultant's report shows that immediately upon such Affiliate becoming a Restricted Affiliate, AGH would not be in default under the Master Indenture and AGH could thereupon incur at least one dollar of additional Long-Term Indebtedness.

Allegheny Health Services, Inc. ("AHS") may at anytime, and without compliance with any test, assume all the obligations of AGH under the Master Indenture, including the Series 1988 Note, in accordance with the provisions of the Master Indenture, including the pledge by AHS of a security interest in its Gross Revenues and other items specified in the Master Indenture, and execution by AGH of a Contribution Agreement if the Restricted Group as it would then be constituted, would be in compliance with all covenants and conditions contained in the Master Indenture.

## Depreciation Reserve Fund

AGH agrees to create and maintain, and agrees to cause its Restricted Affiliates to create and maintain, one or more depreciation reserve funds, and to fund the same and to restrict the expenditure of funds contained therein in accordance with the judgment of management as stated from time to time in an Officer's Certificate, such judgment to be based on standards of the industries or businesses, including the health care delivery industry, in which AGH and the Restricted Affiliates may be engaged from time to time.

D-20

MBIA    010906

Noteholders

In determining whether the requisite number of Noteholders has concurred in amendments to the Master Indenture, and in directing the Master Trustee to declare any Notes immediately due and payable or to take other action upon an Event of Default, Notes owned by AGH, a Restricted Affiliate or affiliated entities are disregarded. Except in certain circumstances, the holders of bonds secured by Notes are treated as holders of an equal principal amount of Notes. No amendment of the provisions of Article V of the Master Indenture, pertaining to certain covenants of AGH, may be made which would materially and adversely affect the interests of any Noteholder without the consent of all Noteholders, treating the Related Bond Trustees and any other trustees or other persons holding a Note as Noteholders for purposes of such consent.

Defaults and Remedies

      Events of Default.   An Event of Default under the Master Indenture includes any of the following events: the failure to make any payment on any Note or Guaranty when due or the failure to make any required payment into a debt service reserve fund established pursuant to any Related Bond Indentures, in either case after the expiration of any applicable grace period, the failure to observe or perform any covenant or agreement under the Master Indenture for a period of 30 days after written notice shall have been given to AGH by the Master Trustee or to AGH and the Master Trustee by Noteholders having at least 20% aggregate principal amount of Notes then Outstanding; any event of default under a Related Bond Indenture or a Related Bond; any default in the payment of any Indebtedness of the Restricted Group for borrowed monies (other than Non-Recourse Indebtedness) and any applicable grace period shall have expired, or any default in the performance of any instrument evidencing or securing such Indebtedness; or the entry of a decree or order by a court adjudging AGH or any Restricted Affiliate bankrupt or insolvent, or approving as properly filed a petition seeking reorganization or arrangement of AGH or any Restricted Affiliate under the Federal Bankruptcy Code or any other similar applicable Federal or state law, or appointing a receiver, liquidator, assignee, or sequestrator (or other similar official) of any member of the Restricted Group or of any substantial part of their Property, or ordering the winding up or liquidation of its affairs, and the continuance of any such decree or order unstayed and in effect for a period of 90 days; the institution by AGH of proceedings to be adjudicated a bankrupt or insolvent, or the consent by it to the institution of bankruptcy or insolvency proceedings against it, or the filing by it of a petition or answer or consent seeking reorganization or relief under the Federal Bankruptcy Code or any other similar applicable Federal or state law, or the consent by it to the filing of any such petition or to the appointment of a receiver, liquidator, assignee, trustee or sequestrator (or other similar official) of any member of the

D-21

MBIA      010907

Restricted Group or of any substantial part of their property, or the making by any of them of an assignment for the benefit of creditors, or the admission by any of them in writing of their inability to pay their debts generally as they become due.

**Acceleration.** Upon the occurrence of any Event of Default, the Master Trustee may, and upon the request of the holders of not less than 20% of the principal amount of all Notes Outstanding non-Recourse Indebtedness and other non-parity Indebtedness may not be represented by Notes) must, declare all Notes to be immediately due and payable. For purposes of such determinations, the Series 1983 Note of AGH is to be disregarded and each holder of a Series 1983-D Bond is deemed to hold a portion of the Series 1983 Note of AGH in the principal amount of the Series 1983-D Bond held. Any such request by holders of Series 1983-D Bonds must be made to the Bond Trustee which, in turn, will make such request to the Master Trustee. If all Events of Default are remedied prior to entry of final judgment or decree in any suit, action or proceeding instituted on account of such Event of Default, the Master Trustee may annul such declaration.

The Series 1991 Bonds will become immediately due and payable if the Series 1991 Note is declared to be immediately due and payable by the Master Trustee. In the event that the Master Trustee annuls any such declaration of acceleration of the Series 1991 Note, the acceleration of the related Series 1991 Bonds will be automatically annulled.

**Additional Remedies and Enforcement of Remedies.** Upon the occurrence and continuance of any Event of Default, the Master Trustee may, and upon the written request of the Holders of not less than 20% in aggregate principal amount of the Notes Outstanding, together with indemnification of the Master Trustee to its satisfaction, shall, proceed forthwith to protect and enforce its rights and the rights of such Noteholders by such proceedings as the Master Trustee deems expedient.

Regardless of the happening of an Event of Default, the Master Trustee, if requested in writing by the Holders of not less than 20% in aggregate principal amount of the Notes then Outstanding, shall when indemnified to its satisfaction, institute and maintain proceedings necessary or expedient to prevent any impairment of security by any acts which may be unlawful or in violation of the Master Indenture, or to preserve or protect the interests of the Holders, provided that such action is not in conflict with applicable law or the Master Indenture and, in the Master Trustee's sole judgment, is not unduly prejudicial to the Holders of Notes not making such request.

D-22

MBIA    010908

Application of Revenues and Other Monies After Default. During the continuance of an Event of Default all monies received by the Master Trustee, after payment of costs and expenses, shall be applied as follows:

Unless the principal of all Outstanding Notes shall have been declared due and payable: First: to the payment of interest then due on the Notes in the order of the maturity, and, if the amount available shall not be sufficient to pay in full all amounts maturing on the same date, then ratably, according to the amounts due, without discrimination or preference; and Second: to the payment of the unpaid principal installments of any Notes then due, whether at maturity or by call for redemption, in the order of their due dates, and if the amounts available shall not be sufficient to pay in full all the Notes when due on any date, then ratably, according to the amounts of principal installments due on such date, without discrimination or preference.

If the principal of all Outstanding Notes shall then be or have been declared to be due and payable, to the payment of the principal and interest then due and unpaid without preference or priority of principal over interest or of interest over principal, or of any installment of interest over any other installment of interest, or of any Note over any other Note, ratably, according to the amounts due respectively for principal and interest, without discrimination or preference.

Monies to be applied by the Master Trustee during continuance of an Event of Default shall be applied as the Master Trustee shall determine, having due regard for the amount available and the likelihood of additional monies becoming available in the future. Whenever the Master Trustee shall apply such monies, it shall fix the date upon which such application is to be made and upon such date interest on the amounts of principal to be paid on such dates shall cease to accrue. The Master Trustee shall give such notice as it may deem appropriate of such date.

Noteholders' Control of Proceedings. If any Event of Default shall have occurred and be continuing, the Holders of at least a majority in aggregate principal amount of Notes then Outstanding shall have the right subject to the terms of the Master Indenture to direct the method and place of conducting any enforcement proceedings.

Waiver of Events of Default. No delay or omission of the Master Trustee or of any Holder of the Notes to exercise any right or power upon an Event of Default shall impair any such right or power or shall be construed to be a waiver of any such Event of Default. Every power and remedy given to the Master Trustee and the Holders of the Notes, respectively, may be exercised from time

D-23

MBIA    010909

to time and as often as may be deemed expedient by them. The Master Trustee may waive any Event of Default which in its opinion shall have been remedied before the entry of final judgment. The Master Trustee, upon the written request of the Holders of a majority of the aggregate principal amount of Notes then Outstanding, shall waive any Event of Default under the Master Indenture (except a default in payment of principal, premium, if any, or interest on any Note which may be waived only by Holders of all the Notes then Outstanding), and its consequences. In case of such waiver, all parties shall be restored to their former positions but no such waiver shall extend to any subsequent or other Event of Default.

**Appointment of Receiver.** Upon the occurrence of any Event of Default, the Master Trustee shall be entitled to the appointment of a receiver or receivers of the Property of AGH with such powers as the court shall confer.

**Notice of Default.** The Master Trustee shall, within 10 days after it has knowledge of the occurrence of an Event of Default, mail to all holders of Notes as the names and addresses of such Holders appear on the books of the Master Trustee, notice of such Event of Default known to the Master Trustee; but, except in the case of nonpayment of any Notes or bankruptcy defaults, the Master Trustee may withhold such notice if it determines that such withholding is in the interests of the Holders of Notes.

Satisfaction and Discharge of Master Indenture

If AGH shall deliver to the Master Trustee for cancellation all Notes theretofore authenticated (other than any Notes which shall have been mutilated, destroyed, lost or stolen and which shall have been replaced or paid as provided in the Master Indenture) and not theretofore cancelled, or (ii) all Notes not theretofore cancelled or delivered to the Master Trustee for cancellation shall have become due and payable and been paid, or (iii) AGH shall deposit with the Master Trustee (or with a bank or trust company acceptable to the Master Trustee pursuant to an agreement between AGH and such bank or trust company in form acceptable to the Master Trustee) as trust funds the entire amount of moneys or direct general obligations of, or obligations the payment of principal and interest on which are unconditionally guaranteed by, the United States of America, or both, the principal of and the interest on which when due, will be sufficient to pay at maturity or upon redemption all Notes not theretofore cancelled or delivered to the Master Trustee for cancellation, including principal and interest due or to become due to such date of maturity or redemption date, as the case may be, and if in either case AGH shall also pay or cause to be paid all other sums payable under the Master Indenture by AGH, then the Master Indenture shall cease to be of further effect, and the Master Trustee, on demand of AGH, and at the cost and expense of AGH, shall execute proper

MBIA    010910

instruments acknowledging satisfaction of and discharging the Master Indenture. AGH agrees to reimburse the Master Trustee for any costs or expenses theretofore and thereafter reasonably and properly incurred by the Master Trustee in connection with the Master Indenture or such Notes. Notwithstanding the satisfaction and discharge of the Master Indenture, the obligations of AGH to the Master Trustee thereunder shall survive.

Notwithstanding the discharge of the lien thereof, the Master Trustee shall nevertheless retain such rights, powers and duties thereunder as may be necessary and convenient for the payment of amounts due or to become due on the Notes and the registration, transfer, exchange and replacement of Notes as provided therein. Nevertheless, any moneys held by the Master Trustee or any paying agent for the payment of the principal of, premium, if any, or interest on any Note remaining unclaimed for five years after the principal of all Notes has become due and payable, whether at maturity or upon proceedings for redemption or by declaration as provided therein, shall then be paid to AGH and the Holders of any Notes not theretofore presented for payment shall thereafter be entitled to look only to AGH for payment thereof as unsecured creditors and all liability of the Master Trustee or any paying agent with respect to such moneys shall thereupon cease.

## Supplements and Amendments

Supplements Not Requiring Consent of Noteholders. The Master Indenture may be supplemented or amended without the consent of or notice to any of the Holders, but only to cure any ambiguity or formal defect or omission; to correct or supplement any provision which may be inconsistent with any other provision, or to make any other provisions with respect to matters or questions arising under the Master Indenture and which shall not materially and adversely affect the interests of the Holders; to grant or confer ratably upon all Holders any additional rights, remedies, powers or authority that may lawfully be granted or conferred upon them; to qualify the Master Indenture under the Trust Indenture Act of 1939, as amended, or corresponding provisions of federal laws from time to time in effect; to create and provide for the issuance of a series of Notes or a Guaranty as permitted under the Master Indenture; to obligate a successor to AGH; and to amend the covenants or provisions of the Master Indenture in the event there is a material change in the Method or practices of third party reimbursement.

Supplements Requiring Consent of Noteholders. Other than supplements referred to in the preceding paragraph, the Holders of not less than 60% in aggregate principal amount of the Notes then Outstanding have the right to approve execution of Supplements modifying, in any particular, the Master Indenture and becoming a part of the Master Indenture, except a Supplement which would: extend the stated maturity of or time for paying interest on any

MBIA    010911

Note or reduce the principal amount of or the redemption premium or ratio of interest payable on any Note without the consent of the Holder of such Note; modify, alter, amend, add to or rescind any of the terms or provisions concerning covenants of AGH and the Restricted Affiliates contained in the Master Indenture described under the heading "Particular Covenants of AGH" in any manner which would materially and adversely affect the interests of the Noteholders or any of them without the consent of the Holders of all Notes then Outstanding or reduce the aggregate principal amount of Notes then Outstanding the consent of which is required for Supplements without the consent of the Holders of all Notes then Outstanding.    All Supplements executed pursuant to the Master Indenture shall be binding on all Holders of Notes.

Execution and Effect of Supplements.    In executing any Supplement, the Master Trustee may rely upon an opinion of counsel stating that the execution of such Supplement is authorized or permitted by the Master Indenture.

### SUMMARY OF CONTRIBUTION AGREEMENTS

Pursuant to the respective Contribution Agreements that AGH has entered into or will enter into with Restricted Affiliates, each Restricted Affiliate has agreed or will agree to comply with all covenants and restrictions which the Master Indenture requires AGH to impose upon members of the Restricted Group.   In addition, each Restricted Affiliate has covenanted or will covenant in its respective Contribution Agreement that, upon written notice from AGH, it will, to the extent permitted by law, transfer to or for the account of AGH, by loan, advance, grant or otherwise, such of its assets and revenues, after payment of costs of operation, as are necessary to enable AGH to comply with the provisions of the Master Indenture, the Master Notes and Guaranties.

To secure performance by the Restricted Affiliates under their respective Contribution Agreements, each Restricted Affiliate (a) has pledged and assigned or will pledge and assign to AGH all its Gross Revenues and the proceeds thereof and (b) has, to the extent permitted by law and as set forth in the Master Indenture, granted or will grant to AGH a security interest in all its securities, investments, insurance policies on all its Property, subject to certain exceptions, and to all of the proceeds of the foregoing.

The obligations of the Restricted Affiliates under their respective Contribution Agreements are absolute and unconditional and remain in full force and effect unless and until such Restricted Affiliate ceases its status as such in accordance with the Master Indenture or the Master Indenture is defeased, as described under the caption, "Summary of the Master Indenture-Satisfaction and Discharge of Master Indenture."

MBIA      010912

## SUMMARY OF CERTAIN PROPOSED AMENDMENTS
## TO THE MASTER TRUST INDENTURE

The following is a summary of the material amendments to the Master Indenture as described in a Second supplemental Master Trust Indenture, dated as of February 1, 1988 (the "Second Supplement"), certain of which require the consent of the holders of 60% in aggregate principal amount of Notes and Guaranties outstanding under the Master Indenture, and others of which shall become effective upon the Series 1983 Bonds ceasing to be outstanding or the consent of the holders of 100% of the Notes and Guaranties outstanding under the Master Indenture, whichever occurs earlier (the "Effective Date"). The Master Indenture, as so amended, will be known as the Restated and Amended Master Trust Indenture, dated as of February 1, 1988 (the "Restated Master Indenture").

Obligated Group

(a)  Under the Restated Master Indenture AGH and the Restricted Affiliates will constitute an "Obligated Group" under which each member will be jointly and severally liable as a direct party to the Restated Master Indenture under all Notes and Guaranties issued under the Master Indenture and which are outstanding on the Effective Date of the Restated Master Indenture and under all Notes and Guaranties which thereafter are issued under the Restated Master Indenture. Restricted Affiliates are not parties to the existing Master Indenture but are obligated to provide funds to AGH under its Contribution Agreement with AGH to enable AGH to make payments on Notes and Guaranties. In addition, each Obligated Affiliate will directly pledge its Unrestricted Receivables, as defined in the Restated Master Indenture, to the Master Trustee to secure its obligations under the Restated Master Indenture and under Notes and Guaranties issued under the Master Indenture and the Restated Master Indenture.

(b)  The adoption of the Required Charter Provisions by an Affiliate will no longer be required as a condition to entry into the Obligated Group.

(c)  Each existing Restricted Affiliate and any Affiliate which becomes a Restricted Affiliate under the Master Indenture prior to the Effective Date of the Restated Master Indenture will be released from its obligations under its Contribution Agreement and such Contribution Agreement will be deemed terminated upon the execution by such Restricted Affiliate of the Restated Master Indenture as an obligated Affiliate.

MBIA     010913

## Security Interest in Securities and Investments

Under the Master Indenture each member of the Restricted Group has pledged, in addition to its Gross Revenues, its securities and investments (and income therefrom) to the Master Trustee.  Such security interest is non-possessory.  The pledge of a security interest in securities and investments and the income therefrom is not provided in the Restated Master Indenture.

## Security Interest in Unrestricted Receivables

Under the Restated Master Indenture, the obligations of each Obligated Affiliate will be secured by a pledge of its Unrestricted Receivables, which include accounts, assignable general intangibles and contract rights, and all the proceeds therefrom, all defined by the Pennsylvania Uniform Commercial Code, excluding gifts and grants which cannot be used for payment under Notes and Guaranties.  Under the Master Indenture, the obligations of the Restricted Affiliates and AGH are secured by their respective "Gross Revenues", the proceeds of which may be construed as a broader class of intangibles than included in Unrestricted Receivables, particularly with respect to proceeds of insurance and third-party payment contracts. In addition, Gross Revenues includes "inventory and other tangible . . .property", which are not included in Unrestricted Receivables.

## Permitted Liens

(a)  Under the Master Indenture, as described in clause (ii) of the definition of Permitted Liens contained herein under the caption, "DEFINITIONS," a Lien is a Permitted Lien if the total value of real Property subject to such Lien does not exceed 20% of the Book Value of the total assets of the Restricted Group.  This limitation will be amended to permit Liens on any Property not limited to real Property, and which may include items which constitute Unrestricted Receivables.

(b)  In addition, the total value of assets which may be made subject to Liens may, at the option of the Obligated Group, be determined on the basis of Current Value or Book Value.

(c)  Liens on accounts receivable will be permitted in conjunction with the sale of such receivables with recourse.

(d)  Non-Recourse Indebtedness under the Master Indenture is permitted subject only to the debt incurrence tests included therein, which limit Non-Recourse Indebtedness to 15% of the Total Operating Revenues of the Restricted Group for the most recent period of 12 full consecutive

MBIA        010914

months or in excess of such amount if the Long-Term Debt Service Coverage Ratio of the facility financed with the proceeds of Non-Recourse Indebtedness is projected to be at least 1.5:1.0. Under the Restated Master Indenture, the ability to incur Non-Recourse Indebtedness will not be determined by reference to Total Operating Revenues but rather to the Property securing such indebtedness. Non-Recourse Indebtedness will be subject to the limitation described in clause (a) above with respect to Liens upon the Property of the Obligated Group.

(e)  Permitted Liens under the Restated Master Indenture will also include Liens on Related Bonds or Notes held by any Obligated Affiliate and pledged to secure the obligation to repay Commitment Indebtedness (described below) and Liens on amounts on deposit in any fund held by a Related Bond Trustee under a Related Bond Indenture. The Master Indenture includes no such provision.

**Additional Indebtedness**

The Additional Indebtedness incurrence tests would be significantly revised. Following the Effective Date of the Restated Master Indenture, Additional Indebtedness may be incurred subject to the following limitations, which are contrasted with those described below currently in effect under the Master Indenture:

(a)  Long-Term Indebtedness.

(1)  Under the Master Indenture, Long-Term Indebtedness may be incurred provided that the Restricted Group evidences a Long-Term Debt Service Coverage Ratio, using historical revenues and pro forma debt service, in an amount not less than 1.5 or satisfies a historical coverage of 1.1 and a pro forma coverage (reported upon by a Consultant) of 1.2. In addition, Long-Term Indebtedness may be incurred in an amount not to exceed 5% of the Total Operating Revenues without satisfying the tests described above. Under the Restated Master Indenture, the ratio of historical revenues to pro forma debt service will be reduced from 1.5 to 1.25 and the pro forma coverage requirement will be reduced from 1.2 to 1.1.

(2)  Under the Restated Master Indenture, if projected coverage exceeds 1.5, then a Consultant's report will not be required and an Officer's Certificate will be sufficient.

MBIA    010915

(3)  As an alternative debt incurrence test under the Restated Master Indenture, the Obligated Group will be able to incur Long-Term Indebtedness provided that the amount of such Long-Term Indebtedness Outstanding, plus the proposed additional Long-Term Indebtedness, at the time of such incurrence does not exceed 66-2/3% of the sum of all Long-Term Indebtedness Outstanding, including the proposed additional Long-Term Indebtedness, plus the obligated Group's unrestricted fund balance. This balance sheet test is an alternative to the revenue-based test and does not preclude the use of a revenue-based test.

(b)  **Commitment Indebtedness and Cross-Over Refunding Indebtedness.**  Under the Restated Master Indenture, the Obligated Group will be able to incur Commitment Indebtedness, which is the obligation to repay amounts drawn under a credit facility or liquidity facility, and Cross-over Refunding Indebtedness. Such categories of Indebtedness are not specifically included in the Master Indenture.

(c)  **Short-Term Indebtedness: Credit Facility.**  Under the Restated Master Indenture, the Obligated Group may provide for a credit facility for Short-Term Indebtedness. In such event, Short-Term Indebtedness will be considered and deemed to be Long-Term Indebtedness for purposes of incurrence, subject to the ability to satisfy the revenue-based tests described above.

(d)  **Short-Term Indebtedness: Generally.**  Under the Master Indenture, Short-Term Indebtedness is permitted in an amount not exceeding 15% of Total Operating Revenues, with a requirement that such Indebtedness be "cleaned down" to 3% of Total Operating Revenues for a period of 20 consecutive calendar days. Under the Restated Master Indenture, the amount of Short-Term Indebtedness which may be incurred and Outstanding is increased to 25% of the Obligated Group's Revenues. The definition of Revenues includes non-operating revenues, which were not included in the definition of Total Operating Revenues. There will be no requirement that such Short-Term Indebtedness be reduced to any amounts below 25%.

(e)  **Non-Recourse Indebtedness.**  Non-Recourse Indebtedness will no longer be limited by Total Operating Revenues, but, as described above, will be limited by the value of assets which can be used to secure Non-Recourse Indebtedness and by the capitalization ratio described above.

D-30

MBIA    010916

(f) **Interim and Intermediate-Term Indebtedness.**  Interim Indebtedness and Intermediate-Term Indebtedness may be incurred under the Master Indenture.  Such categories of Indebtedness would be eliminated and will be considered Long-Term Indebtedness subject to the tests described above.

(g) **Capitalized Leases.** Under the Master Indenture, capital- ized leases are considered Long-Term or Intermediate-Term Indebtedness.  Under the Restated Master Indenture, capitalized leases would be considered Long-Term Indebt- edness subject to the Long-Term Indebtedness limitations described above.

(h) **Balloon Indebtedness.**  Under the Master Indenture, Balloon Indebtedness may be incurred in an amount not exceeding 15% of Total Operating Revenues, and the debt service deemed payable with respect thereto would be the actual debt service.  The principal of Balloon Indebted- ness may exceed 15% of Total Operating Revenues, but any such amount must be subject to sinking fund payment schedules adopted by the obligor thereunder.  Under the Restated Master Indenture, Balloon Indebtedness will not be subject to any limitation based upon Total Operating Revenues or Revenues and will be deemed payable over a 30-year period at the "projected rate" and payable on a level annual debt service basis.  No liquidity facility will be required.

(i) **Optional Tender Indebtedness.**  Under the Master Inden- ture, Optional Tender Indebtedness is subject to the same limitations as Balloon Indebtedness and, in addition, the outstanding principal amount of Balloon Indebtedness is aggregated with Optional Tender Indebtedness in order to determine whether or not the 15% of Total Operating Revenues limitation has been exceeded.  Under the Restated Master Indenture, the incurrence of Optional Tender Indebtedness is tested in the same manner as Balloon Indebtedness.

(j) **"Basket" Debt.** The Master Indenture permits Indebtedness in excess of amounts otherwise described above, provided that the amount of such Indebtedness cannot exceed 25% of Total Operating Revenues.  Such additional debt capacity is not included in the Restated Master Indenture, and all Indebtedness must be considered either Long-Term Indebt- edness or Short-Term Indebtedness and incurred under the tests described above.

(k) **Guaranties.**  Under the Master Indenture, Guaranties are permitted if the debt service coverage ratio of the guaranteed party exceeds 1.0.  If such ratio is between

MBIA    010917

1.0 and 1.5, then 100% of the debt service payable on the guaranteed indebtedness will be deemed to be the debt service of the guarantor. If the debt service coverage ratio of the guaranteed party exceeds 1.50, then 20% of the debt service on the guaranteed debt is deemed to be the debt service of the guarantor. If the debt service coverage ratio of the guaranteed party is less than 1.0, then the Guaranty may not be made. Under the Restated Master Indenture, Guaranties are permitted in all circumstances and 20% of the debt service payable thereon is deemed to be the debt service of the guarantor unless payment has been required under such Guaranty and, in that event, 100% of the debt service is deemed to be the debt service of the guarantor until such payment is no longer required thereunder.

Asset Transfers.

Under the Master Indenture, the ability to sell, lease or otherwise dispose of assets is based upon the characterization of the assets subject to such transaction. Operating Assets, which essentially consist of the property, plant and equipment and other income generating physical assets, may be transferred provided that the transferor satisfies any one of a number of tests, including a test that the historical Long-Term Debt Service Coverage Ratio not be reduced by an amount in excess of 20% of such ratio for the preceding fiscal year and, in all events, such ratio must be at least 1.5. In the alternative, the projected Long-Term Debt Service Coverage Ratio may not be reduced by an amount in excess of 20% of what such ratio would be without such transfer. In addition, liquid assets may be transferred provided that the Long-Term Debt Service Coverage Ratio must be projected at a level of at least 1.75. The distinction between Operating Assets and liquid assets would be eliminated in the Restated Master Indenture. Any asset may be transferred provided that the historical Long-Term Debt Service Coverage Ratio would not have been reduced to less than 1.1 had such transaction occurred in the preceding fiscal year or would not be projected to be less than 1.1.

Depreciation Fund

The Restated Master Indenture would not include a requirement to fund a depreciation reserve fund or any similar such fund.

Withdrawal from the Obligated Group

Obligated Affiliates may withdraw from the Obligated Group under the Restated Master Indenture provided that the historical Long-Term Debt Service Coverage Ratio would not have been reduced to a level below 1.1 had such withdrawal occurred in the preceding fiscal year or would not be projected to be less than 1.1 for the fiscal year following the proposed date of the withdrawal. The

D-32

MBIA     010918

historical ratio under the Master Indenture must be maintained at 80% or at least 1.50 or the projected ratio must be maintained at 80% or at least 1.50.

**Addition of Obligated Affiliates**

Under the Restated Master Indenture, Affiliates may become Obligated Affiliates provided that the Obligated Group could continue to satisfy the revenue-based Long-Term Indebtedness incurrence tests. Under the Master Indenture, the same tests apply.

**Debt Service Coverage Ratio**

Under the Master Indenture, whenever a debt service coverage ratio is calculated, the revenue element of the ratio does not include non-operating revenues. Non-operating revenues will be included in the calculation of debt service coverage ratios under the Restated Master Indenture.

**Event of Default**

The aggregate principal amount of Indebtedness which may be in default without causing a cross-default in the Restated Master Indenture will be permitted up to $1,000,000. No such provision is included in the Master Indenture.

**Guaranties Under the Master Indenture**

When the Master Indenture was executed, the intention of the parties was to treat Guaranties issued and secured under the Master Indenture on a parity with Notes issued under the Master Indenture. Several revisions are made to the Restated Master Indenture specifically and expressly providing for such parity status.

**Amendments**

The Restated Master Indenture permits amendments to the extent that such amendments will not directly cause any rating on any Related Bond secured by a Note or any Indebtedness issued under the Restated Master Indenture either to be withdrawn or reduced. The Master Indenture contains no such clause. In addition, the requirement of the Master Indenture that amendments which materially and adversely affect the holders of Notes be approved by 100% of such holders will be modified so that the consent of only 60% of such holders will be required.

D-33

MBIA    010919

APPENDIX E


FORM OF OPINION OF BOND COUNSEL

MBIA     010920

[THIS PAGE INTENTIONALLY LEFT BLANK]

MBIA    010921

[FORM OF OPINION OF BOND COUNSEL]


Re:   Pennsylvania Higher Educational Facilities
      Authority Revenue Bonds (Allegheny General
      Hospital), 1991 Series A


        We have acted as bond counsel in connection with the
issuance by the Pennsylvania Higher Educational Facilities
Authority (the "Authority") of $_____ aggregate principal
amount of its Revenue Bonds (Allegheny General Hospital),
1991 Series A (the "Bonds").  The Bonds are issued under and
pursuant to the laws of the Commonwealth of Pennsylvania,
including particularly the Pennsylvania Higher Educational
Facilities Authority Act of 1967 (Act of December 6, 1967, P.L.
678, as amended) (the "Act"), and a Trust Indenture dated as of
January 1, 1991 (the "Indenture") between the Authority and
Pittsburgh National Bank, as trustee (the "Trustee").

        The Bonds are being issued at the request of Allegheny
General Hospital (the "Hospital") to provide funds which,
together with other available funds, will be used to finance the
costs of a project (the "1991 Project") consisting of: (a) the
construction, acquisition and renovation of certain facilities of
the Hospital, including the acquisition of certain capital
equipment; and (b) payment of certain costs incurred in
connection with the issuance of the Bonds.  The proceeds of the
Bonds will be loaned to the Hospital pursuant to a Loan Agreement
dated as of January 1, 1991 (the "Loan Agreement") between the
Authority and the Hospital.  The Hospital is required to make
payments under the Loan Agreement in amounts sufficient to pay,
among other things, the principal or redemption price of and
interest on the Bonds.

        The Bonds are secured by the Indenture and by an
assignment to the Trustee of all of the Authority's right, title
and interest in and to the Loan Agreement (except for the
Authority's rights thereunder to receive payments of
administrative fees and expenses and indemnification against
liability).  In addition, the Bonds are secured by a promissory
note of the Hospital (the "1991 Series A Note") issued in favor
of the Authority and assigned to the Trustee.  The 1991 Series A
Note is being issued under a Master Trust Indenture dated as of


                              E-1


MBIA      010922

December 1, 1983, as supplemented (the "Master Indenture"), between the Hospital and Pittsburgh National Bank, as master trustee.  Payments by the Hospital under the 1991 Series A Note will be credited against the obligations of the Hospital under the Loan Agreement and applied to the principal or redemption price of and interest on the Bonds.

The Hospital has represented that it is an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), is not a "private foundation" within the meaning of Section 509(a) of the Code and is exempt from federal income tax under Section 501(a) of the Code, except for unrelated business income subject to taxation under Section 511 of the Code.  The Hospital has covenanted that, throughout the term of the Loan Agreement, it will not carry on or permit to be carried on in any property now or hereafter owned by it any trade or business, nor will it take any action or permit any action to be taken on its behalf or cause or permit any circumstances within its control to arise or continue if the conduct of such trade or business or such other action or circumstances would adversely affect the validity of the Bonds or cause the interest paid by the Authority on the Bonds to be includable in gross income for purposes of federal income tax. The Hospital has further covenanted in the Loan Agreement that it will comply with the requirements of Section 148(f) of the Code which provides for the rebate of certain arbitrage profits to the United States.

Under the Indenture, the Authority has covenanted that it will comply with the requirements of Section 148 of the Code pertaining to arbitrage bonds.  In addition, an officer of the Authority responsible for issuing the Bonds has executed a certificate stating the reasonable expectations of the Authority on the date of issue of the Bonds as to future events that are material for the purposes of such requirements of the Code.

In our capacity as bond counsel, we have examined such documents, records of the Authority and other instruments as we deemed necessary to enable us to express the opinions set forth below, including original counterparts or certified copies of the Indenture, the Loan Agreement and the other documents listed in the closing memorandum in respect of the Bonds filed with the Trustee.  We have assumed that the Authority and the Hospital will comply with their respective covenants in the Indenture and the Loan Agreement relating to the tax-exempt status of the Bonds.  We have also examined an executed Bond, authenticated by the Trustee, and have assumed that all other Bonds have been similarly executed and authenticated.

MBIA      010923

Based on the foregoing, it is our opinion that:

1.    The Authority is a body corporate and politic validly existing under the laws of the Commonwealth of Pennsylvania, with full power and authority to undertake the 1991 Project, to execute and deliver the Indenture and the Loan Agreement and to issue and sell the Bonds.

2.    The Indenture and the Loan Agreement have been duly authorized, executed and delivered by the Authority and the covenants of the Authority therein are valid and binding obligations of the Authority enforceable in accordance with their terms, except as the rights created thereunder and the enforcement thereof may be limited by bankruptcy, insolvency or other laws or equitable principles affecting the enforcement of creditors' rights generally.

3.    The issuance and sale of the Bonds have been duly authorized by the Authority.  Based on the assumption as to execution and authentication set forth above, the Bonds have been duly executed and delivered by the Authority and authenticated by the Trustee, are valid and binding obligations of the Authority and are entitled to the benefit and security of the Indenture, except as the rights created thereunder and the enforcement thereof may be limited as indicated in paragraph 2.

4.    Under the laws of the Commonwealth of Pennsylvania as presently enacted and construed, the Bonds are exempt from personal property taxes in Pennsylvania, and interest on the Bonds and any gain from the sale thereof are exempt from Pennsylvania personal income tax and corporate net income tax.

5.    Under existing law as presently enacted and construed, interest on the Bonds is excludable from gross income for purposes of federal income taxation, assuming continuing compliance by the Authority with its covenants under the Indenture and by the Hospital with its covenants under the Loan Agreement, as described above.  Interest on the Bonds will not be an item of tax preference for purposes of determining either individual or corporate alternative minimum tax, but interest on Bonds held by a corporation (other than an S corporation, regulated investment company, real estate investment trust or real estate mortgage investment conduit) may be indirectly subject to alternative minimum tax and an environmental tax because of its inclusion in the earnings and profits of such corporate holder.  Interest on Bonds held by a foreign

E-3

MBIA        010924