corporation may be subject to the branch profits tax imposed by the Code.

Ownership of Bonds may result in collateral federal income tax consequences to certain taxpayers, including, without limitation, financial institutions, property and casualty insurance companies, certain S corporations with "excess net passive income", individual recipients of Social Security or Railroad Retirement benefits and taxpayers who may be deemed to have incurred or continued indebtedness to purchase or carry the Bonds. We offer no opinion as to such collateral tax consequences.

We express no opinion herein with respect to the accuracy or completeness of any Official Statement prepared in respect of the Bonds or as to any other matter not set forth herein.

We call your attention to the fact that the Bonds are limited obligations of the Authority, payable only out of certain revenues of the Authority and certain other moneys available therefor as provided in the Indenture, and that the Bonds do not pledge the credit or taxing power of the Commonwealth of Pennsylvania or any political subdivision, agency or instrumentality thereof. The Authority has no taxing power.

Very truly yours,

E-4

MBIA    010925

APPENDIX F


FORM OF MBIA INSURANCE POLICY
(INSURING TERM BONDS DUE 2011 AND 2014 ONLY)

MBIA    010926

[THIS PAGE INTENTIONALLY LEFT BLANK]

MBIA    010927

## CONTENTS

| | Page |
|---|---|
| Introductory Statement | 1 |
| The Bonds | 4 |
| Sources of Payment and Security for the Bonds | 10 |
| Municipal Bond Insurance Policy | 16 |
| The Project | 18 |
| Estimated Sources and Uses of Funds | 19 |
| Bond Debt Service Requirements | 20 |
| The Restricted Group | 21 |
| The Authority | 21 |
| Bondholders' Risks | 23 |
| Litigation | 38 |
| Legal Matters | 38 |
| Tax Exemption | 39 |
| The Bond Trustee and Master Trustee | 40 |
| Legality for Investment | 40 |
| Underwriting | 41 |
| Ratings | 41 |
| Financial Statements | 41 |
| Miscellaneous | 42 |
| Appendix A: Allegheny General Hospital and the Restricted Group | A-1 |
| Appendix B: Consolidated Financial Statements of the Restricted Group for the Four Months ended October 31, 1990 and for the Three Years ended June 30, 1990 | B-1 |
| Appendix C: Definitions of Certain Terms and Summaries of Certain Provisions of the Bond Indenture and the Loan Agreement | C-1 |
| Appendix D: Summary of the Master Trust Indenture and Certain Proposed Amendments to the Master Trust Indenture | D-1 |
| Appendix E: Form of Opinion of Bond Counsel | E-1 |
| Appendix F: Form of MBIA Insurance Policy (Insuring Term Bonds Due 2011 and 2014 Only) | F-1 |

### REGARDING USE OF THIS OFFICIAL STATEMENT

No dealer, broker, salesman or other person has been authorized by the Pennsylvania Higher Educational Facilities Authority (the "Authority"), Allegheny General Hospital ("AGH"), any Restricted Affiliate or the Underwriter to give any information or to make any representations with respect to the Bonds, other than those contained in this Official Statement, and, if given or made, such other information must not be relied upon as having been authorized by any of the foregoing. This Official Statement does not constitute an offer to sell, or the solicitation of an offer to buy, and there shall be no sale of the Bonds by any person, in any state in which such offer, solicitation or sale would be unlawful. The information contained herein has been obtained from AGH, members of the Restricted Group, the Authority and the Trustee and other sources which are believed to be reliable, but the accuracy or completeness of such information is not guaranteed and such information is not to be construed to be the representation of the Underwriter or, except "The Authority", of the Authority. Neither the delivery of this Official Statement nor any sale made hereunder shall, under any circumstances, create any implication that there has been no change in the affairs of the parties referred to above since the date hereof.

In connection with this offering, the Underwriter may overallot or effect transactions which stabilize or maintain the market price of the Bonds at a level above that which might otherwise prevail in the open market. Such stabilizing, if commenced, may be discontinued at any time.

# $60,000,000

# Pennsylvania Higher Educational Facilities Authority
### (Commonwealth of Pennsylvania) Revenue Bonds (Allegheny General Hospital) 1991 Series A



ALLEGHENY GENERAL HOSPITAL

*OFFICIAL STATEMENT*

## The First Boston Corporation

## PNC Securities Corp
A PNC COMPANY

Dated: January 9, 1991

MBIA    010928

 FINANCIAL GUARANTY INSURANCE POLICY

## Municipal Bond Investors Assurance Corporation
### Armonk, New York 10504

Policy No. XXXXXX

Municipal Bond Investors Assurance Corporation (the "Insurer"), in consideration of the payment of the premium and subject to the terms of this policy, hereby unconditionally and irrevocably guarantees to any owner, as hereinafter defined, of the following described obligations, the full and complete payment required to be made by or on behalf of the Issuer to [INSERT NAME OF PAYING AGENT] or its successor (the "Paying Agent") of an amount equal to (i) the principal of (either at the stated maturity or by any advancement of maturity pursuant to a mandatory sinking fund payment) and interest on, the Obligations (as that term is defined below) as such payments shall become due but shall not be so paid (except that in the event of any acceleration of the due date of such principal by reason of mandatory or optional redemption or acceleration resulting from default or otherwise, other than any advancement of maturity pursuant to a mandatory sinking fund payment, the payments guaranteed hereby shall be made in such amounts and at such times as such payments of principal would have been due had there not been any such acceleration); and (ii) the reimbursement of any such payment which is subsequently recovered from any owner pursuant to a final judgment by a court of competent jurisdiction that such payment constitutes an avoidable preference to such owner within the meaning of any applicable bankruptcy law. The amounts referred to in clauses (i) and (ii) of the preceding sentence shall be referred to herein collectively as the "Insured Amounts." "Obligations" shall mean:

[PAR AMOUNT]
[LEGAL TITLE OF OBLIGATIONS]

Upon receipt of telephonic or telegraphic notice, such notice subsequently confirmed in writing by registered or certified mail, or upon receipt of written notice by registered or certified mail, by the Insurer form the Paying Agent or any owner of an Obligation the payment of an Insured Amount for which is then due, that such required payment has not been made, the Insurer on the due date of such payment or within one business day after receipt of notice of such nonpayment, whichever is later, will make a deposit of funds, in an account with Citibank, N.A., in New York, New York, or its successor, sufficient for the payment of any such Insured Amounts which are then due. Upon presentment and surrender of such Obligations or presentment of such other proof of ownership of the Obligations, together with any appropriate instruments of assignment to evidence the assignment of the Insured Amounts due on the Obligations as are paid by the Insurer, and appropriate instruments to effect the appointment of the Insurer as agent for such owners of the Obligations in any legal proceeding related to payment of Insured Amounts on the Obligations, such instruments being in a form satisfactory to Citibank, N.A., Citibank, N.A. shall disburse to such owners, or the Paying Agent payment of the Insured Amounts due on such Obligations, less any amount held by the Paying Agent for the payment of such Insured Amounts and legally available therefor. This policy does not insure against loss of any prepayment premium which may at any time be payable with respect to any Obligation.

As used herein, the term "owner" shall mean the registered owner of any Obligation as indicated in the books maintained by the Paying Agent, the Issuer, or any designee of the Issuer for such purpose. The term owner shall not include the Issuer or any party whose agreement with the Issuer constitutes the underlying security for the Obligations.

Any service of process on the Insurer may be made to the Insurer at its offices located at 113 King Street, Armonk, New York 10504 and such service of process shall be valid and binding.

This policy is non-cancellable for any reason. The premium on this policy is not refundable for any reason including the payment prior to maturity of the Obligations.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed in facsimile on its behalf by its duly authorized officers, this [DAY] day of [MONTH, YEAR], but this policy shall not be valid unless countersigned by an authorized resident licensed agent of the Insurer.

COUNTERSIGNED:

MUNICIPAL BOND INVESTORS
ASSURANCE CORPORATION

_____
Resident Licensed Agent

President

_____
City, State

Attest:

_____
Date

Assistant Secretary

STD-RMS/PA-4

MBIA    010929

**EXHIBIT  1884**

**PA0543**

Allegheny Health, Education and Research Foundation
Delaware Valley Obligated Group



RECEIVED
NOV 1

RECEIVED
NOV 1 4 1996
SURVEILLANCE

*Combined*

*Financial*

*Statements*

*for the*

*year ended*

*June 30, 1996*

**EXHIBIT**
*1884*
*8-6-03*

# ALLEGHENY
## HEALTH, EDUCATION AND RESEARCH FOUNDATION

October 31, 1996

320 East North Avenue
Pittsburgh, PA 15212-4772

Ms. Emmeline Rocha-Sinha
Vice President and Manager
Health Care Department
MBIA
113 King Street
Armonk, NY 10504

RE:    Allegheny Health, Education and Research Foundation-
       Delaware Valley Obligated Group
       Series 1996A through E Bond Issue,

Dear Ms. Rocha-Sinha:

Pursuant to the terms of the closing documents executed in connection with the above reference bond issue, enclosed please find the following:

1)    combined audited financial statements of the Delaware Valley Obligated Group for the fiscal year ended June 30, 1996;

2)    an Officer's Certificate, with supporting calculation, stating the historical debt service coverage ratio position of the Delaware Valley Obligated Group at June 30, 1996;

3)    Report of Independent Certified Public Accountants for the fiscal year ended June 30, 1996;

4)    Management Letter for the fiscal year ended June 30, 1996;

5)    Delaware Valley Obligated Group Certificate and Resume of Insurance Consultant, prepared by Marsh & McLennan, for the fiscal year ended June 30, 1996; and

6)    Utilization Statistics of the Delaware Valley Obligated Group for fiscal years 1995 and 1996.

Please call me at (412) 442-2225 if I can be of further assistance.

Sincerely,

*Kelly L. Mertz*

Kelly L. Mertz
Senior Treasury Analyst

Enclosures
DVOGANNU\klm
cc:    Michael P. Martin (w/o enclosures)
       Susan M. Gilbert (w/o enclosures)

11/11/96

*korleer*

FYR.

*E*

*Members of the Allegheny Health, Education and Research Foundation*
*Allegheny General Hospital • Allegheny Integrated Health Group • Allegheny University of the Health Sciences •*
*Allegheny University Hospitals • St. Christopher's Hospital for Children*

MBIA          015813

**Coopers
&Lybrand**

Coopers & Lybrand L.L.P.

a professional services firm

## Report of Independent Accountants

To the Board of Trustees of
  Allegheny University Hospitals,
  Allegheny University of the Health Sciences
  and St. Christopher's Hospital for Children:

We have audited, in accordance with generally accepted auditing standards, the combined balance sheet of the Delaware Valley Obligated Group, hereinafter referred to as the Obligated Group, as of June 30, 1996, and the related combined statement of operations, changes in net assets, and cash flows for the year then ended, and have issued our report thereon dated September 11, 1996.

In connection with our audit, nothing came to our attention that caused us to believe that the Obligated Group was not in compliance with the covenants (insofar as they relate to accounting matters) contained in Article 6 of the Master Trust Indenture and Sections 3.6 and 3.21 of the First Supplemental Master Trust Indenture dated May 15, 1996 with Norwest Bank, Minnesota, N.A. (as Master Trustee). It should be noted, however, that our audit was not directed primarily toward obtaining knowledge of such noncompliance.

This report is intended solely for the information and use of the Board of Trustees and management of the Obligated Group and Norwest Bank, Minnesota, N.A. and should not be used for any other purpose.

*Coopers & Lybrand L.L.P.*

Pittsburgh, Pennsylvania
September 11, 1996

Coopers & Lybrand L.L.P. is a member of Coopers & Lybrand International, a limited liability association incorporated in Switzerland.

MBIA          015814

| Coopers | Coopers & Lybrand L.L.P. |
| &Lybrand | |
| | a professional services firm |

September 11, 1996

To the Board of Trustees of
Allegheny Health, Education and Research Foundation:

In planning and performing our audits of the financial statements of Allegheny Health, Education and Research Foundation (AHERF), Allegheny General Hospital Obligated Group (including Allegheny General Hospital and Allegheny-Singer Research Institute) and the Delaware Valley Obligated Group (including Allegheny University Hospitals - East Falls Hospital, Center City Hospital, Elkins Park Hospital and Bucks County Hospital, St. Christopher's Hospital for Children and Allegheny University of the Health Sciences), collectively referred to as AHERF and affiliates, for the year ended June 30, 1996, we considered its internal control structure in order to determine our auditing procedures for the purpose of expressing our opinion on the financial statements and not to provide assurance on the internal control structure. Our consideration of the internal control structure would not necessarily disclose all matters that might be material weaknesses as defined below. However, we noted no such matters.

Companies establish and maintain policies and procedures designed to prevent or detect within a timely period errors or irregularities in their financial statements. These policies and procedures, taken together, constitute the internal control structure, which has three elements: the control environment, the accounting system, and control procedures. The control environment encompasses the attitudes, awareness, and actions of management and the board of directors, and includes factors such as the organization structure and broad supervisory, personnel, and control policies and practices. The accounting system consists of procedures to gather data, process transactions, and record them in the accounting records and to maintain accountability for the related assets and liabilities. Control procedures are established to provide reasonable assurance that assets are safeguarded and that transactions and events are properly recorded.

An internal control structure should be designed and operated in a manner that reduces to a relatively low level the risk that errors or irregularities in amounts that would be material in relation to the financial statements may occur and not be detected within a timely period by employees in the normal course of performing their assigned functions. A condition in which the design or operation of an internal control structure element does not reduce this risk to a sufficiently low level constitutes a material weakness, under standards established by the American Institute of Certified Public Accountants.

This letter is intended solely for the information and use of the board of trustees, management, others within the organization, the holders of AHERF and affiliates debt obligations and other third party payors.

Very truly yours,

Coopers & Lybrand L.L.P.

Coopers & Lybrand L.L.P. is a member of Coopers & Lybrand International a limited liability association incorporated in Switzerland.

MBIA          015815

## CERTIFICATE OF INSURANCE CONSULTANT

Marsh & McLennan has acted as Insurance Consultant to the Allegheny Health, Education and Research Foundation - Delaware Valley Obligated Group (The Obligated Group).   In that capacity, we have been apprised of the provisions of Section 5.1 of the Master Trust Indenture and Section 3.18 of the First Supplemental Master Trust Indenture dated May 15, 1996 By and Among Norwest Bank Minnesota, National Association, as Master Trustee, and the following Delaware Valley entities known collectively as the Obligated Group:

- Allegheny University Hospitals, East Falls, (formerly The Medical College of Pennsylvania and Hahnemann University Hospital System);
- Allegheny University Hospitals, Center City, (formerly Hahnemann University Hospital);
- Allegheny University Hospitals, Bucks County and Allegheny University Hospitals, Elkins Park, (formerly Allegheny United Hospitals, Inc.);
- Allegheny University of the Health Sciences, (formerly The Medical College of Pennsylvania and Hahnemann University);
- St. Christopher's Hospital for Children; and
- Horizon Medical Corporation.

We have either placed or reviewed the insurance which is the subject of this certificate after consultation with members of The Obligated Group and have based our placements upon their instructions.  Terms of coverage, including limits and deductibles, of insurance which we did not place are based upon information furnished to us by The Obligated Group.

On the basis of the foregoing and subject to the other qualifications stated in this certificate, we are pleased to confirm the following:

1.    The insurance policies listed on the attached Resume of Insurance (the "Policies") are in full force and effect as of the date hereof;

2.    As of this date, we have not received any notice of cancellation or non-renewal with respect to the Policies and we are not aware of any circumstances which would make the giving of such a notice by an insurer likely;

3.    In our view, based upon our understanding of Section 5.1 of the Master Trust Indenture and Section 3.18 of the First Supplemental Master Trust Indenture, the Policies are consistent with the requirements thereof;

4.    Based upon our experience as insurance brokers, the coverages provided by the Policies are consistent with those normally provided to companies similarly situated to The Obligated Group.

We express no view and assume no liability with respect to the solvency or future ability to pay of any of the insurance companies which have issued the Policies.

The confirmations above, with respect to certain liability insurance coverages, are made with reliance upon actuarial projections made by the independent consulting actuary.

Marsh & McLennan, Inc.

By: _Laurie Graefiel_

Date: _9/19/96_

c:\ami\aherf\cert\9

MBIA        015816

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION

DELAWARE VALLEY OBLIGATED GROUP

OFFICER'S CERTIFICATE

*June 30, 1996*

This Officer's Certificate is being delivered pursuant to:

●    Section 6.3 of the Master Trust Indenture, dated as of May 15, 1996, and Section 3.21 of the First Supplemental Indenture, dated as of May 15, 1996, by and among Norwest Bank Minnesota, N.A., as Master Trustee, and the following entities, known collectively as the Delaware Valley Obligated Group:

  ‣    Allegheny University Hospitals, East Falls (formerly The Medical College of Pennsylvania and Hahnemann University Hospital System);
  ‣    Allegheny University Hospitals, Center City (formerly Hahnemann University Hospital);
  ‣    Allegheny University Hospitals, Bucks County and Allegheny University Hospitals, Elkins Park (formerly Allegheny United Hospitals, Inc.);
  ‣    Allegheny University of the Health Sciences (formerly The Medical College of Pennsylvania and Hahnemann University);
  ‣    St. Christopher's Hospital for Children; and
  ‣    Horizon Medical Corporation.

To the best knowledge of the signer, the financial covenant, which is detailed on the attachment, accurately reflects the *Historical Debt Service Coverage Ratio* position of the Delaware Valley Obligated Group at June 30, 1996.

The audited financial statements, which accompany this certificate, fairly present the consolidated financial position and the results of operations of the Delaware Valley Obligated Group as of and for the fiscal year ended June 30, 1996 and have been prepared in accordance with generally accepted accounting principles.  I certify that no Event of Default, or event which, with the giving of notice or lapse of time or both, would constitute any Event of Default, has occurred or is continuing.

Dated this  17 ᵀᴴ  day of October, 1996.

*Charles P. Morrison* (signature)

Charles P. Morrison

Senior Vice President and Chief Financial Officer

Allegheny Health, Education and Research Foundation - Delaware Valley

S:\WP\LANDY\DVOCNW
Attachment: Financial Covenant

MBIA        015817

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION    15-Oct-96
DELAWARE VALLEY OBLIGATED GROUP
NORWEST BANK, N.A.
[Series 1996 Master Trust Indenture ]

Financial Ratio

*For the twelve months ended June 30, 1996*
*($'s IN THOUSANDS)*

| Covenant | Calculated Ratio |
|----------|------------------|

A.    **Historical Debt Service Coverage Ratio**
*Not less than 1 1.1*

Calculation:    ( Net Loss  +  Depreciation/Amortization  +  LTD Interest Expense - Extraordinary
Items - Change in Accounting Principle - Unrealized Investment Appreciation)
Maximum Annual Debt Service Requirement

$$= \frac{((1,291) + 50,339 + 26,049 - (32,534) - 4,363 - 6,302}{34,951} = \underline{2.77}$$

MBIA    015818

**Coopers
&Lybrand**

Coopers & Lybrand L.L.P.

a professional services firm

## Report of Independent Accountants

To the Boards of Trustees of
   Allegheny University Hospitals,
   Allegheny University of the Health Sciences
   and St. Christopher's Hospital for Children:

     We have audited the accompanying combined balance sheet of the Allegheny Health, Education and Research Foundation Delaware Valley Obligated Group (the Obligated Group) as of June 30, 1996, and the related combined statements of operations, changes in net assets, and cash flows for the year then ended. These combined financial statements are the responsibility of the Obligated Group's management. Our responsibility is to express an opinion on these combined financial statements based on our audit.

     We conducted our audit in accordance with generally accepted auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

     In our opinion, the combined financial statements referred to above present fairly, in all material respects, the combined financial position of the Allegheny Health, Education and Research Foundation Delaware Valley Obligated Group as of June 30, 1996 and the combined results of its operations, changes in net assets and cash flows for the year then ended in conformity with generally accepted accounting principles.

     As discussed in Note 2 to the combined financial statements, the Allegheny Health, Education and Research Foundation Delaware Valley Obligated Group changed its method of accounting for contributions by adopting Statement of Financial Accounting Standards (SFAS) No. 116, "Accounting for Contributions Received and Contributions Made" and its method of reporting by adopting SFAS No. 117, "Financial Statements of Not-for-Profit Organizations," as well as its method of accounting for investments by adopting SFAS No. 124, "Accounting for Certain Investments Held by Not-for-Profit Organizations."

*Coopers + Lybrand L.L.P.*

Pittsburgh, Pennsylvania
September 11, 1996

1

Coopers & Lybrand L.L.P. is a member of Coopers & Lybrand International, a limited liability association incorporated in Switzerland

MBIA          015819

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

COMBINED BALANCE SHEET
June 30, 1996
(Dollars in Thousands)

### ASSETS

| | | |
|---|---|---:|
| Current assets: | | |
| Cash and cash equivalents | $ | 27,282 |
| Assets limited or restricted as to use | | 24,039 |
| Receivables: | | |
| Patient accounts, less allowance for uncollectible | | |
| accounts of $50,625 | | 252,568 |
| Grants and other | | 37,906 |
| Inventories | | 12,749 |
| Prepaid expenses | | 3,380 |
| | | |
| Total current assets | | 357,924 |
| | | |
| Assets limited or restricted as to use, net of current portion | | 157,772 |
| Property and equipment, net | | 419,945 |
| Other assets | | 23,153 |
| | | |
| Total assets | $ | 958,794 |

### LIABILITIES AND NET ASSETS

| | | |
|---|---|---:|
| Current liabilities: | | |
| Accounts payable and accrued expenses | $ | 114,760 |
| Payable to affiliates | | 21,076 |
| Self-insurance liabilities | | 3,848 |
| Deferred revenue | | 13,323 |
| Lines of credit | | 40,300 |
| Current portion of long-term debt | | 690 |
| | | |
| Total current liabilities | | 193,997 |
| | | |
| Long-term debt, net of current portion | | 406,450 |
| Student loans | | 18,731 |
| Payable to affiliates | | 60,797 |
| Self-insurance liabilities | | 9,430 |
| Other noncurrent liabilities | | 1,168 |
| | | |
| Total liabilities | | 690,573 |
| Net assets: | | |
| Unrestricted | | 150,925 |
| Restricted: | | |
| Temporarily | | 50,053 |
| Permanently | | 67,243 |
| | | |
| Total net assets | | 268,221 |
| | | |
| Total liabilities and net assets | $ | 958,794 |

The accompanying notes are an integral part of the combined financial statements.

2

MBIA          015820

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

COMBINED STATEMENT OF OPERATIONS
For the year ended June 30, 1996
(Dollars in Thousands)

| | | |
|---|---|---:|
| Unrestricted revenues, gains and other support: | | |
| Net patient service revenue | $ | 883,816 |
| Research and training support | | 51,446 |
| Academic activities | | 62,916 |
| Other revenue | | 49,999 |
| Investment income | | 17,588 |
| Net assets released from restrictions used for operations | | 10,398 |
| Total revenues, gains and other support | | 1,076,163 |
| | | |
| Expenses: | | |
| Salaries, wages and fringe benefits | | 597,645 |
| Materials, supplies and services | | 374,315 |
| Depreciation and amortization | | 50,339 |
| Interest | | 26,984 |
| Total expenses | | 1,049,283 |
| | | |
| Net income, before extraordinary item and change in accounting principle | | 26,880 |
| | | |
| Extraordinary loss on early extinguishment of debt | | (32,534) |
| Income from change in accounting principle | | 4,363 |
| | | |
| Net loss | | (1,291) |
| | | |
| Net assets released from restrictions used for acquisition of property and equipment | | 1,715 |
| Transfers from other net assets | | 971 |
| Transfers to affiliates, net | | (73,676) |
| | | |
| Decrease in unrestricted net assets | $ | (72,281) |

The accompanying notes are an integral part of the combined financial statements.

3

MBIA        015821

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

COMBINED STATEMENT OF CHANGES IN NET ASSETS
For the year ended June 30, 1996
(Dollars in Thousands)

| | |
|---|---:|
| Unrestricted net assets: | |
| Net loss | $ (1,291) |
| Net assets released from restrictions used for | |
| acquisition of property and equipment | 1,715 |
| Transfers from other net assets | 971 |
| Transfers to affiliates, net | (73,676) |
| | |
| Decrease in unrestricted net assets | (72,281) |
| | |
| Temporarily restricted net assets: | |
| Adjustment from change in accounting principles | 7,183 |
| Contributions | 4,991 |
| Investment income | 6,592 |
| Unrealized appreciation of investments | 3,570 |
| Net assets released from restrictions | (13,396) |
| Transfers to other net assets | (550) |
| Transfers from affiliates | 111 |
| | |
| Increase in temporarily restricted net assets | 8,501 |
| | |
| Permanently restricted net assets: | |
| Adjustment from change in accounting principles | 13,999 |
| Contributions | 4,976 |
| Investment income | 284 |
| Unrealized appreciation of investments | 527 |
| Transfers from affiliates | 1,594 |
| Transfers to other net assets | (421) |
| | |
| Increase in permanently restricted net assets | 20,959 |
| | |
| Decrease in net assets | (42,821) |
| Net assets, beginning of year | 311,042 |
| | |
| Net assets, end of year | $ 268,221 |

The accompanying notes are an integral part of the combined financial statements.

4

MBIA          015822

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

COMBINED STATEMENT OF CASH FLOWS
For the year ended June 30, 1996
(Dollars in Thousands)

| | | |
|---|---|---:|
| Cash flows from operating activities: | | |
| Change in net assets | $ | (42,821) |
| Adjustments to reconcile change in net assets | | |
| to net cash provided by operating activities: | | |
| Extraordinary loss on early extinguishment of debt | | 32,534 |
| Adjustment from change in accounting principles | | (25,545) |
| Depreciation and amortization | | 50,339 |
| Net transfers to affiliates | | 71,971 |
| Net unrealized appreciation of investments | | (10,399) |
| Increase/(decrease) in cash from changes in: | | |
| Patient receivables | | (72,228) |
| Intercompany accounts | | 45,230 |
| Other current assets | | (11,487) |
| Accounts payable and accrued expenses | | 34,777 |
| Other | | (22,217) |
| Net cash provided by operating activities | | 50,154 |
| | | |
| Cash flows from investing activities: | | |
| Acquisition of property and equipment, net | | (71,666) * |
| Decrease in assets limited or restricted as to use, net | | 68,423 |
| Net cash used by investing activities | | (3,243) |
| | | |
| Cash flows from financing activities: | | |
| Issuance of long-term debt | | 404,834 |
| Early extinguishment of long-term debt | | (369,636) |
| Net borrowings under lines of credit | | 34,300 |
| Repayment of long-term debt | | (7,492) |
| Payment of debt issuance costs | | (9,664) |
| Net transfers to affiliates | | (71,971) * |
| Net cash used by financing activities | | (19,629) |
| | | |
| Net increase in cash and cash equivalents | | 27,282 |
| | | |
| Cash and cash equivalents, beginning of year | | - |
| | | |
| Cash and cash equivalents, end of year | $ | 27,282 |
| | | |
| Supplemental disclosure: | | |
| Cash paid for interest | $ | 36,190 |

The accompanying notes are an integral part of the combined financial statements.

5

MBIA        015823

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

1.    **Organization:**

The Allegheny Health, Education and Research Foundation (AHERF) Delaware Valley
Obligated Group (the Obligated Group) financial statements provide combined financial
information about the organizations that are obligated in connection with the issuance of
the Series 1996 Bonds by the Pennsylvania Higher Educational Facilities Authority (the
Authority).

The Obligated Group consists of Allegheny University of the Health Sciences (Allegheny
University), Allegheny University Hospitals and St. Christopher's Hospital for Children
(St. Christopher's), collectively referred to as "Members" of the Obligated Group.

Allegheny University owns and operates a health sciences university currently comprised
of a medical school, undergraduate and graduate schools of health sciences and humanities,
various physician group practices and research activities, principally located in
Philadelphia, Pennsylvania. Allegheny University is the parent company of Hahnemann
Insurance Company, Inc. (HAHN), a nonprofit captive insurance company incorporated
under the insurance laws of the state of Vermont. Allegheny University Hospitals owns
and operates two tertiary care teaching hospitals (Allegheny Center City Hospital and
Allegheny East Falls Hospital) and two acute care community hospitals (Allegheny Bucks
County Hospital and Allegheny Elkins Park Hospital) in Philadelphia, Pennsylvania.
Additionally, Allegheny University Hospitals, operate on behalf of the Commonwealth of
Pennsylvania, an inpatient psychiatric facility (Eastern Pennsylvania Psychiatric Institute)
for adults and children located in Philadelphia, Pennsylvania. St. Christopher's is an acute
care children's hospital and a regional referral center located in Philadelphia,
Pennsylvania.

Each of the Members of the Obligated Group is a controlled affiliate of AHERF and a
Pennsylvania nonprofit corporation, exempt from federal income taxation. AHERF, a
nonprofit organization, is also the parent company of Allegheny General Hospital (AGH),
Allegheny Integrated Health Group, Allegheny Health Services Providers Insurance
Company (AHSPIC), and Diversified Health Group, Inc. (DHG). AGH is the parent
company of Allegheny-Singer Research Institute (ASRI).

6

MBIA        015824

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

1.    Organization: (continued)

The Series 1996 Bonds were issued by the Authority under a Bond Indenture.  The
proceeds therefrom were applied, together with other funds available to the Members of
the Obligated Group, principally to undertake a program to refinance certain obligations
of the Members.  In connection with the issuance of the Series 1996 Bonds,  Allegheny
University Hospitals, Allegheny University and St. Christopher's became members of the
Obligated Group.

2.    Accounting Policies:

The significant accounting policies applied in preparing the accompanying combined
financial statements are summarized below:

    Principles of Combination:

    The accompanying combined financial statements include the accounts of
    Allegheny University Hospitals, Allegheny University and St. Christopher's.  All
    intercompany transactions have been eliminated in combination.

    Accounting Changes:

    In fiscal year 1996, the Obligated Group adopted Financial Accounting Standards
    Board Statements (FAS), No. 116, "Accounting for Contributions Received and
    Contributions Made," No. 117, "Financial Statements of Not-for-Profit
    Organizations" and No. 124, "Accounting for Certain Investments Held by Not-
    for-Profit Ogranizations."  FAS 116 requires that unconditional promises by
    donors to pledge monies to the Obligated Group be recorded as receivables and
    revenues within the appropriate net asset category.  FAS 116 also requires that any
    perpetual trusts held and administered by third parties, of which the not-for-profit
    organization is the beneficiary, be recorded as a contribution to permanently
    restricted assets measured by the fair value of the assets contributed.  As permitted
    by FAS 116, the cumulative effect of adopting this statement for periods prior to
    July 1, 1995 is $2,549 and $13,673 for temporarily and permanently restricted
    funds, respectively, and are reflected as adjustments from change in accounting

7

MBIA          015825

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

2.    <u>Accounting Policies:</u>   (continued)

principles on the combined statement of changes in net assets.  FAS 117 establishes
uniform standards for general-purpose external financial statements of not-for-profit
organizations.    FAS 117 further requires the classification of net assets into three
categories, based on the existence or absence of donor-imposed restrictions as follows:

> <u>Unrestricted</u> - Net assets that are not subject to donor-imposed stipulations.
> Such net assets may be designated by the Boards of Trustees for specific
> purposes or limited by contractual agreements with outside parties.
>
> <u>Temporarily Restricted</u> - Net assets whose use is subject to donor-imposed
> stipulations that can be fulfilled by specific actions pursuant to such
> stipulations or expire by the passage of time.
>
> <u>Permanently Restricted</u> - Net assets subject to donor-imposed stipulations
> that neither expire by passage of time nor can be fulfilled and removed by
> action.  Such net assets, which must be maintained in perpetuity, generally
> include only the original amount of the contribution since the donors of
> these assets most often permit the use of all investment earnings for specific
> or general purposes.

FAS 124 requires that investments in equity securities with readily determinable fair values
and all investments in debt securities be reported at fair value with gains and losses
included in the combined statement of operations.  As permitted by FAS 124, the
cumulative effect of adopting this statement for periods prior to July 1, 1995 is $4,363 for
unrestricted investments, which is reflected as an adjustment from change in accounting
principle on the combined statement of operations, and $4,634 and $326 for investments
temporarily and permanently restricted, respectively, which are reflected on the combined
statement of changes in net assets.

8

MBIA          015826

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

2.    **Accounting Policies:**   (continued)

Use of Estimates:

The preparation of these combined financial statements in conformity with
generally accepted accounting principles requires the Obligated Group's
management to make estimates and assumptions that affect the reported amounts
of assets and liabilities and disclosure of contingent assets and liabilities at the date
of the combined financial statements.  Estimates also affect the amounts reported
as revenues and expenses during the reporting period.  Actual results could differ
from those estimates.

Cash and Cash Equivalents:

Cash and cash equivalents include highly liquid investments purchased with a
maturity date of three months or less and deposits maintained with AHERF which
are available to the Obligated Group.

Investments and Investment Income:

The Obligated Group's investments are carried at fair value and consist generally
of certificates of deposit, government and corporate obligations that have fixed
rates of return, pooled investment funds and marketable equity securities of
domestic companies.

Donated investments are recorded at estimated fair value at the date of
contribution.  Unrestricted investment income and gains and losses on sales of
investments, which are based on average cost, are included in investment income.

Grants Receivable and Deferred Revenue:

Grants and contracts are recognized in the year in which expenditures are made,
either as research support or, in the case of expenditures for property and
equipment, as additions to net assets.  Receivables are recorded when contract and
grant expenditures exceed funds received.  Deferrals are recorded when funds
received are in excess of expenditures incurred.  Additionally, notices of federal
and other research grant awards relating to future years have not been recorded.

9

MBIA        015827

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

2.    Accounting Policies:    (continued)

Inventories:

Inventories are valued at the lower of average cost or fair value.

Property and Equipment:

Property and equipment, along with expenditures that extend the useful lives of
assets, are recorded at cost. Certain internal computer software development costs
are capitalized and included in property and equipment. Interest is capitalized in
accordance with the construction of major capital additions. Maintenance and
repairs are charged to expense as incurred. At the time assets are retired or
otherwise disposed of, the cost thereof and accumulated depreciation or
amortization are eliminated and any resulting gain or loss on disposition is
recorded as other revenue.

Depreciation is provided over the estimated useful lives of the assets computed
under the straight-line method with one-half year of depreciation recognized in the
year the related assets are placed into service.

Other Assets:

Other assets consist primarily of bond financing costs, equity investments and
program development costs. Bond financing costs are being amortized over the
respective terms of the related bond issues on a basis that approximates the interest
method. Program development costs are being amortized over three years under
the straight-line method.

Restricted Net Assets:

Temporarily restricted net assets are those whose use has been limited by donors
for a specific purpose or a specific time period. Permanently restricted net assets
have been restricted by donors to be maintained in perpetuity. Temporarily
restricted assets released from restriction during the period are reflected in the
combined statement of operations.

10

MBIA          015828

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

2.    **Accounting Policies:**   (continued)

Net Patient Service Revenue:

The Obligated Group's hospitals have agreements with third-party payors that
provide for payments to Obligated Group facilities at amounts different from their
established rates.  Payment arrangements include prospectively determined rates
based upon discharges, discounted charges, per diem payments and capitation
arrangements.   Net patient service revenue is reported at the estimated net
realizable amounts due from patients, third-party payors, and others for services
rendered, including estimated net retroactive adjustments under reimbursement
agreements with third-party payors.  Retroactive adjustments are accrued on an
estimated basis in the period the related services are rendered and adjusted in
future periods as final settlements are determined.

Charity Care, Uncompensated Care and Other Community Services:

The Obligated Group's hospitals maintain charity care policies which were
established to assure that all persons seeking treatment receive needed health care
services regardless of their ability to pay.  These policies provide that persons who
lack the means to pay for all or a portion of their needed health care services
receive financial assistance in the form of partial or total charge reductions.
Because the hospitals do not pursue collection of amounts determined to qualify as
charity care, they are not reported as revenue.  The amount of charges forgone for
services and supplies furnished under the Obligated Group's charity care policy
approximated $9,956 in fiscal year 1996.

Additionally, the Obligated Group's hospitals provide services to patients covered
by Medical Assistance and Medicare, whereby the payments received are less than
the cost of providing such services.  Also, the Obligated Group's hospitals perform
services at no charge which benefit the community, such as public health
screenings, health care publications, workplace wellness programs, health related
research, educational programs and other activities.

11

MBIA          015829

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

2.    **Accounting Policies:**  (continued)

    Related Party Transactions:

    Fees charged for services provided by affiliates are included in expenses with all
    other transactions among affiliates recorded as net asset transfers.  Any resulting
    accounts receivable or payable with affiliates are settled periodically in the normal
    course of business.

    Income Taxes:

    The members of the Obligated Group are not-for-profit corporations that have been
    recognized as tax exempt pursuant to Section 501 (c)(3) of the Internal Revenue
    Code.

3.    **Assets Limited or Restricted as to Use:**

Assets limited or restricted as use consist of the following components at June 30, 1996:

| | |
|---|---:|
| Unrestricted: | |
|   By Boards of Trustees: | |
|     Future additions to or replacement of property and equipment | $ 5,602 |
|     Self-insurance reserve funds | 6,154 |
|     Endowments | 25,899 |
|     Other | 8,925 |
| | 46,580 |
|   By Financing Agreements | 3,495 |
|   Endowments | 8,408 |
| | 58,483 |
| Temporarily restricted: | |
|   Endowments | 32,419 |
|   Student loans | 19,230 |
|   By donor | 8,078 |
| | 59,727 |
| Permanently restricted: | |
|   Endowments | 51,807 |
|   Perpetual trusts | 11,794 |
| | 63,601 |
|     Total assets limited or restricted as to use | 181,811 |
|     Less current portion | 24,039 |
|     Assets limited or restricted as to use | $ 157,772 |

12

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

3.    **Assets Limited or Restricted as to Use:**   (continued)

The following table sets forth the composition of assets limited or restricted as to use by investment type at June 30, 1996:

| | |
|---|---:|
| Unrestricted: | |
| Cash and short-term investments | $   9,635 |
| Government and corporate obligations | 31,328 |
| Marketable equity securities | 17,520 |
| | 58,483 |
| Temporarily restricted: | |
| Cash and short-term investments | 23,713 |
| Government and corporate obligations | 23,163 |
| Marketable equity securities | 12,851 |
| | 59,727 |
| Permanently restricted: | |
| Cash and short-term investments | 1,859 |
| Government and corporate obligations | 34,220 |
| Marketable equity securities | 27,522 |
| | 63,601 |
| Assets limited or restricted as to use | $ 181,811 |

The Obligated Group's various Boards of Trustees retain control over certain designated assets and may, at their discretion, subsequently use such assets for other purposes. Assets limited or restricted as to use, including $5,151 of temporarily restricted funds that are required to satisfy obligations classified as current liabilities, are reported as current assets on the combined balance sheet.

Investment returns consisted of the following for the year ended June 30, 1996:

| | |
|---|---:|
| Net gains on investments | $   7,692 |
| Dividends and interest | 4,921 |
| | $  12,613 |

13

MBIA          015831

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

4.  **Property and Equipment:**

Property and equipment consists of the following components at June 30, 1996:

| | |
|---|---:|
| Buildings and building improvements | $ 382,157 |
| Equipment | 393,315 |
| Land and land improvements | 23,948 |
| | 799,420 |
| Less accumulated depreciation and amortization | 421,940 |
| | 377,480 |
| Construction in progress | 42,465 |
| Property and equipment, net | $ 419,945 |

5.  **Lines of Credit:**

The Obligated Group maintains $58,000 of working capital lines of credit from several banks with various maturity dates through November 1997 and interest at variable rates ranging from 6.3% to 9.0% during fiscal year 1996 and 6.4% to 6.8% at June 30,1996. Amounts outstanding under these lines of credit were $40,300 at June 30, 1996.

6.  **Long-Term Debt:**

Long-term debt consists of the following obligations at June 30, 1996:

| | |
|---|---:|
| Pennsylvania Higher Educational Facilities Authority (PHEFA): | |
| Revenue Bonds: | |
| Series 1996 A-C, net of unamortized discount of $3,606 (with maturity dates through November 15, 2021 and fixed interest rates ranging from 4.0% to 5.9%) | $ 302,544 |
| Series 1996 Variable Rate Bonds (with maturity dates through November 15, 2035 and a variable rate of 5.43% on June 30, 1996) | 50,000 |
| Notes payable (with maturity dates through November 15, 2015 and a variable rate of 3.45% on June 30, 1996) | 52,290 |
| Other obligations | 2,306 |
| | 407,140 |
| Less amounts maturing within one year | 690 |
| Long-term debt | $ 406,450 |

14

MBIA    015832

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

6.    **Long-Term Debt:**   (continued)

In June 1996, $306,150 of PHEFA Health Services Revenue Bonds Series A-C, $50,000 of PHEFA Variable Rate Bonds and $52,290 of PHEFA notes payable were issued to refinance certain obligations of the Obligated Group and to reimburse the Obligated Group for certain construction, renovation and equipment purchases.  A portion of the proceeds, along with certain funds held under prior bond indentures, were deposited into irrevocable escrow accounts invested in federal government obligations scheduled to mature and pay interest in amounts sufficient to meet all debt service requirements for the refunded obligations.  The escrow funds along with refunded obligations are not included on the Obligated Group's combined balance sheet.  The outstanding principal balance of the refunded obligations was $342,283 at June 30, 1996.

As a result of the fiscal year 1996 advance refunding, an extraordinary loss of $32,534 was recognized, which represents the difference between the reacquisition cost and the carrying amount of the refunded bonds, adjusted for accrued interest and deferred financing costs.

All long-term debt is subject to early redemption at the option of the Obligated Group.  Additionally, the Obligated Group is subject to various debt covenants contained in the Master Trust Indenture and Loan and Security Agreements which govern the preceding obligations.  The most restrictive of these covenants require the Obligated Group to maintain minimum long-term debt service coverage and liquidity ratios.  Additionally, the bonds are collateralized by the pledge of certain of the Obligated Group's gross revenue, real property, personal property and accounts receivable.

Following are scheduled principal repayments and sinking fund requirements on the long-term debt for each of the next five fiscal years:

| | | |
|---|---|---|
| 1997 - | $ | 690 |
| 1998 - | | 11,766 |
| 1999 - | | 10,735 |
| 2000 - | | 11,290 |
| 2001 - | | 11,825 |

15

MBIA         015833

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

7.    **Commitments:**

Effective July 1, 1989, the Obligated Group entered into an operating lease agreement with the Commonwealth of Pennsylvania whereby all land and buildings associated with the Eastern Pennsylvania Psychiatric Institute are leased for a term of 25 years at annual rental payments of one dollar. The agreement also specifies provisions for a renewal option for additional terms.

Certain office space adjacent to St. Christopher's is subleased to a medical university, which has a teaching affiliation with St. Christopher's, for use as professional office space for the medical faculty and students of that university. The sublease currently provides annual gross rental income of approximately $1,700 and expires in March, 2000.

The Obligated Group leases certain medical and office equipment and office space used in its operations. Rental expense for operating leases for the year ended June 30, 1996 was $13,631. The annual and total future minimum lease payments under noncancelable operating leases entered into as of June 30, 1996 are as follows:

| Year | |
|------|------:|
| 1997 | $  6,130 |
| 1998 | 3,948 |
| 1999 | 3,510 |
| 2000 | 2,997 |
| 2001 | 2,730 |
| 2002 and thereafter | 19,549 |
| Total minimum payments | $ 38,864 |

8.    **Net Patient Service Revenue:**

Net patient service revenue consists of the following components for the year ended June 30, 1996:

| | |
|------|------:|
| Gross patient service revenue | $ 2,245,999 |
| Less provisions for contractual adjustments | 1,362,183 |
| Net patient service revenue | $    883,816 |

16

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

8.    **Net Patient Service Revenue:**   (continued)

Contractual adjustments represent the difference between standard billing rates and amounts estimated to be paid under various health benefit agreements. Provisions for contractual adjustments are recorded in the period in which the services are provided.

During fiscal year 1996, the Obligated Group's bad debt expense amounted to $49,523, which is included in materials, supplies and services expense on the combined statement of operations.

9.    **Insurance:**

AHERF is self-insured for primary coverage and for certain levels of excess coverage related to professional and general liability claims through AHSPIC (an affiliated captive insurance company incorporated in the Cayman Islands), HAHN and various self insurance trusts. In addition, AHERF participates in the Medical Professional Liability Catastrophic Loss Fund of the Commonwealth of Pennsylvania (CAT Fund) and maintains insurance under commercially insured programs on a claims-made basis for amounts in excess of the self-insurance and CAT Fund coverages. Premiums for the self-insurance coverage are retrospectively rated and are paid to AHSPIC and HAHN based on funding requirements determined by independent insurance actuaries to include provisions for estimates for the ultimate costs for both reported claims and claims incurred but not reported, determined on a discounted basis using a 7.5% rate. Professional and general liability expense is allocated by AHERF to each relevant AHERF entity based principally upon such entity's reported claims and estimated claims incurred but not reported. During fiscal year 1996, the Obligated Group's total professional and general liability insurance expense was $20,708.

HAHN was formed in December 1991 to provide professional liability insurance coverage for the former Hahnemann University, including its hospital, directors, officers, residents and non-physician employees. The insurance policy with HAHN was not renewed as of January 1, 1995 and AHSPIC commenced providing professional liability insurance coverage. HAHN's insurance business is now considered to be in run-off.

17

MBIA          015835

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

9.  Insurance:  (continued)

AHERF is also self-insured for workers' compensation liability claims and has established
trust funds for the payment of such claims.  Funding requirements and estimates of losses
incurred are determined on a discounted basis using actuarial assumptions which include
a 6.0% discount rate and which are subject to revision based upon actual experience.
Workers' compensation expense is allocated by AHERF to each relevant AHERF entity
based principally upon such entity's reported claims and estimated claims incurred but not
reported.  During fiscal year 1996, the Obligated Group's workers' compensation expense
was $6,225.

10.  Pension Plans:

AHERF maintains a noncontributory, defined benefit pension plan covering substantially
all Obligated Group employees.  Under this cash balance plan (the Plan), pension accruals
are determined using a defined percentage of an employee's current compensation based
on the employee's age and years of service.  Each employee's individual retirement benefit
is defined within the Plan's obligation as a notational cash balance retirement account and
is credited with interest based on a defined interest rate.  AHERF's funding policy is to
contribute such amounts as are necessary on an actuarial basis to provide the Plan with
assets sufficient to meet benefits to be paid to retirees or their beneficiaries and to satisfy
the minimum funding requirements of the Employee Retirement Income Security Act of
1974.  Pension expense is allocated by AHERF to each relevant AHERF entity based
principally upon the number of full and part time employees covered by the Plan and their
respective salary levels.  During fiscal year 1996, the Obligated Group's pension expense
was $9,894.

In addition, certain union employees are covered by multi-employer pension plans to
which the Obligated Group contributes based on individual plan policies and actuarial
valuations.  Expenses in fiscal year 1996 pertaining to the multi-employer pension plans
amounted to $3,577.

AHERF sponsors a contributory, defined contribution savings plan which is available to
substantially all Obligated Group employees in order to provide additional security during
retirement by creating an incentive for employees to make regular contributions on their
own behalf.  Under this plan, and as determined on an individual employee basis, AHERF

18

MBIA          015836

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

10.    **Pension Plans:**  (continued)

contributes an amount equal to 25% of an employee's contribution for employee
contributions up to 4% of such employee's salary in a given year. Such expense is
allocated by AHERF to each relevant AHERF entity based on actual contributions made.
The Obligated Group's expense associated with contributions to this savings plan was
$1,932 for the year ended June 30, 1996.

11.    **Related Party Transactions:**

AHERF provides selected management, administrative and support services to its
operating units and charges them for these services. During fiscal year 1996, the
Obligated Group incurred service charges from AHERF of $151,091. These charges are
included on the combined statement of operations as salaries, wages and fringe benefits
expense and materials, supplies and services expense. Additionally, AHERF provided
support under a matching endowment program of $1,705 in fiscal year 1996. The
matched endowments are recorded as restricted net assets on the combined balance sheet.

An affiliation agreement between AHERF and Allegheny University stipulates certain
AHERF financial commitments to strengthen Allegheny University's academic, research
and health services programs. Such financial support of operations, which is determined
annually based upon Allegheny University's needs and available funds within the AHERF
system, amounted to $2,500 in fiscal year 1996. This agreement also specifies that
AHERF will provide Allegheny University with a research grant, which is determined
annually based upon the amount of external, competitively awarded research funds
obtained by Allegheny University during the prior fiscal year and the total amount of
internal funding available for research within the AHERF system. This research grant
amounted to $3,571 in fiscal year 1996. The support of operations is recorded as other
revenue on the combined statement of operations. The amounts pertaining to the research
grant are initially recorded as deferred revenue on the combined balance sheet and
subsequently reflected as research and training support on the combined statement of
operations as the related research expenses are incurred.

During fiscal year 1996, the Obligated Group charged AGH $16,536 for clinical, teaching,
research and administrative services of certain employed physicians. The fees charged for
these physician services are included in other revenue on the combined statement of
operations.

19

MBIA        015837

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

11.  **Related Party Transactions:**   (continued)

During fiscal year 1996, the Obligated Group charged Allegheny Integrated Health Group
$58,119 for clinical and administrative services in connection with the operations of
physician practices.  Such amounts are reflected on the combined statement of operations
as a reduction of salaries, wages and fringe benefits expense.  Also, during fiscal year
1996, the Obligated Group, through AHERF, transferred $50,499 to Allegheny Integrated
Health Group to support its acquisition and operation of physician practices.  These
transfers have been reflected as net asset transfers to affiliates on the combined statement
of changes in net assets.  Prior to fiscal year 1996, support of Allegheny Integrated Health
Group's operations was provided through expense subsidization, which was reflected as
an expense on the combined statement of operations as opposed to a net asset transfer.

12.  **Functional Expenses:**

The Obligated Group provides general health care services through its hospitals and
provides education services and performs medical research through its university.
Expenses related to these services are as follows for the year ended June 30, 1996:

| | |
|---|---:|
| Health care services | $  835,613 |
| Education services | 76,534 |
| Medical research | 51,844 |
| General and administrative | 85,292 |
| | $ 1,049,283 |

13.  **Concentration of Credit Risk:**

The Obligated Group's hospitals grant credit without collateral to its patients, most of
whom are local residents, who are insured under third-party payor agreements.  The mix
of receivables from patients and third-party payors is as follows at June 30, 1996:

| | |
|---|---:|
| Medicare | 16% |
| Medicaid | 26 |
| Blue Cross | 12 |
| Managed care | 25 |
| Other third-party payors | 13 |
| Patients | 8 |
| | 100% |

MBIA      015838

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

NOTES TO COMBINED FINANCIAL STATEMENTS
June 30, 1996
(Dollars in Thousands)

14.   **Fair Value of Financial Instruments:**

The following methods and assumptions were used by the Obligated Group in estimating the fair value of its financial instruments:

**Cash and cash equivalents:** The carrying value reported in the combined balance sheet for cash and cash equivalents approximates its fair value.

**Assets limited or restricted as to use:** These assets consist primarily of government and corporate obligations, marketable equity securities, cash and short-term investments. For government and corporate obligations and marketable equity securities, fair values were determined based on quoted market prices and dealer quotes where available, or quoted market prices pertaining to similar securities where not available. The carrying value for cash and short-term investments approximates fair value. The carrying value reported on the combined balance sheet for all assets limited or restricted as to use approximates their fair value.

**Student loan receivables:** Determination of the fair value of student loan receivables, which are primarily federally sponsored student loans with U.S. Government mandated interest rates and repayment terms and subject to significant restrictions as to their transfer or disposition, could not be made without incurring excessive costs.

**Long-term debt:** The fair value of all obligations included in long-term debt is based on current traded values. The carrying and fair values of the Obligated Group's long-term debt obligations are $407,140 and $405,630, respectively, at June 30, 1996.

15.   **Legal Matters:**

The Obligated Group is subject to legal proceedings and claims which have arisen in the ordinary course of its business and have not yet been adjudicated. The ultimate liability from these actions cannot be determined because of the uncertainties that exist. In the opinion of management, the eventual disposition of these matters will not have a material adverse effect on the combined financial position of the Obligated Group. However, it is possible that, upon settlement, results of operations in a particular period could be materially affected.

21

MBIA        015839

Coopers
&Lybrand

Coopers & Lybrand L.L.P.

a professional services firm

### Report of Independent Accountants on Combining Financial Information

Our report on the audit of the combined financial statements of the Allegheny Health, Education and Research Foundation Delaware Valley Obligated Group as of June 30, 1996, and for the year then ended appears on page 1. This audit was conducted for the purpose of forming an opinion on the combined financial statements taken as whole. The supplementary combining financial information accompanying the combined financial statements is not necessary for fair presentation of the combined financial position, results of operations and changes in net assets of the Allegheny Health, Education and Research Foundation Delaware Valley Obligated Group in conformity with generally accepted accounting principles. The supplementary combining financial information is presented only for purposes of additional analysis and is not a required part of the combined financial statements. The supplementary combining financial information has been subjected to the auditing procedures applied in the audit of the combined financial statements and, in our opinion, is fairly stated, in all material respects, in relation to the combined financial statements taken as a whole.

*Coopers & Lybrand L.L.P.*

Pittsburgh, Pennsylvania
September 11, 1996

22

Coopers & Lybrand L.L.P. is a member of Coopers & Lybrand International, a limited liability association incorporated in Switzerland.

MBIA        015840

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP
COMBINING BALANCE SHEET
as of June 30, 1996
(Dollars in Thousands)

| | Allegheny East Falls Hospital | Allegheny Elkins Park Hospital | Allegheny Bucks County Hospital | Allegheny Center City Hospital | Mgmt Support Services | Total Allegheny University Hospital | St. Christopher's | Allegheny University | Elim | Combined AHERF DV Obligated Grp |
|---|---|---|---|---|---|---|---|---|---|---|
| **Current assets:** | | | | | | | | | | |
| Cash and cash equivalents | $ 4,215 | $ 1,039 | $ 1,070 | $ 5,068 | $ 199 | $ 11,591 | $ 14,943 | $ 748 | $ - | $ 27,282 |
| Assets limited or restricted as to use | 1,457 | - | - | 8,416 | 10 | 9,893 | 1,943 | 12,203 | - | 24,039 |
| Receivables: | | | | | | | | | | |
| Patient accounts, net | 58,450 | 21,288 | 17,012 | 78,534 | - | 175,284 | 43,319 | 33,565 | - | 232,568 |
| Grants and other | 1,936 | 177 | 43 | 2,483 | 37 | 4,676 | 9,953 | 23,257 | - | 37,906 |
| From affiliates | - | - | - | 7 | 209 | 216 | 1,839 | 306 | (313) | - |
| Inventories | 2,909 | 666 | 577 | 6,549 | - | 10,910 | 415 | - | - | 12,249 |
| Prepaid expenses | 803 | 191 | 341 | 1,237 | 134 | 2,706 | - | 239 | - | 3,380 |
| Total current assets | 69,770 | 23,361 | 19,043 | 102,304 | 609 | 215,047 | 72,412 | 70,738 | (313) | 357,724 |
| Assets limited or restricted as to use, net of current portion | 5,383 | 25 | - | 28,282 | - | 33,690 | 23,672 | 100,410 | - | 157,772 |
| Property and equipment, net | 70,452 | 25,249 | 19,035 | 167,816 | 9,338 | 291,990 | 64,124 | 63,831 | - | 419,945 |
| Receivables from affiliates | - | - | - | 13,615 | 5,410 | 19,925 | 110 | - | (9,145) | - |
| Other assets | 7,033 | 981 | 1,321 | 6,920 | 14 | 16,738 | 3,032 | 3,843 | - | 23,153 |
| Total assets | $ 152,638 | $ 49,716 | $ 39,399 | $ 318,946 | $ 15,371 | $ 536,070 | $ 163,360 | $ 238,822 | $ (9,458) | $ 958,794 |
| **Current liabilities:** | | | | | | | | | | |
| Accounts payable and accrued expenses | $ 21,166 | $ 5,396 | $ 4,187 | $ 31,302 | $ 3,977 | $ 66,128 | $ 24,906 | $ 23,736 | $ - | $ 114,760 |
| Payable to affiliates | 12,921 | 2,000 | 2,000 | - | - | 16,721 | 4,464 | - | (313) | 21,076 |
| Self-insurance liabilities | 803 | - | - | 2,243 | - | 3,348 | 597 | 500 | - | 3,848 |
| Deferred revenue | 208 | - | - | 982 | - | 1,190 | - | 11,536 | - | 13,323 |
| Lines of credit | 11,000 | - | - | 11,000 | 12,300 | 34,300 | - | 6,000 | - | 40,300 |
| Current portion of long-term debt | - | - | 616 | 74 | - | 690 | - | - | - | 690 |
| Total current liabilities | 46,200 | 7,396 | 6,803 | 45,901 | 16,277 | 122,577 | 29,971 | 41,762 | (313) | 193,997 |
| Long-term debt, net of current portion | 59,209 | 60,841 | 20,317 | 182,638 | - | 123,005 | 47,400 | 36,045 | - | 406,450 |
| Student loans | - | - | - | - | - | - | - | 18,731 | - | 18,731 |
| Payable to affiliates | - | 23,584 | 16,085 | - | - | 39,569 | - | 40,273 | (9,145) | 60,797 |
| Self-insurance liabilities | - | - | - | 4,530 | - | 4,530 | 206 | 4,900 | - | 9,430 |
| Other noncurrent liabilities | - | 51 | 74 | - | 44 | 169 | - | 793 | - | 1,608 |
| Total liabilities | 105,409 | 91,872 | 43,279 | 233,069 | 16,311 | 489,950 | 77,577 | 142,504 | (9,458) | 690,573 |
| **Net Assets:** | | | | | | | | | | |
| Unrestricted | 44,285 | (42,359) | (3,904) | 64,620 | (949) | 61,693 | 73,716 | 15,516 | - | 150,925 |
| Restricted | | | | | | | | | | |
| Temporarily | 1,489 | 203 | 24 | 3,841 | (1) | 7,366 | 8,952 | 33,335 | - | 50,053 |
| Permanently | 1,455 | - | - | 17,406 | - | 16,861 | 3,115 | 47,267 | - | 67,243 |
| Total net assets | 47,229 | (42,156) | (3,880) | 85,877 | (950) | 86,120 | 85,783 | 96,318 | - | 268,221 |
| Total liabilities and net assets | $ 152,638 | $ 49,716 | $ 39,399 | $ 318,946 | $ 15,371 | $ 536,070 | $ 163,360 | $ 238,822 | $ (9,458) | $ 958,794 |

23

MBIA          015841

ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
DELAWARE VALLEY OBLIGATED GROUP

COMBINING STATEMENT OF OPERATIONS
for the year ended June 30, 1996
(Dollars in Thousands)

| | Allegheny East Falls Hospital | Allegheny Elkins Park Hospital | Allegheny Bucks County Hospital | Allegheny Center City Hospital | Mgmt. Support Services | Total Allegheny University Hospitals | St. Christopher's | Allegheny University | Elim. | Combined AUERF - DV Obligated Grp |
|---|---|---|---|---|---|---|---|---|---|---|
| **Unrestricted revenues, gains and other support:** | | | | | | | | | | |
| Net patient service revenue | $ 189,993 | $ 57,798 | $ 47,953 | $ 322,470 | | $ 618,214 | $ 134,149 | $ 131,453 | $ - | $ 883,816 |
| Research and training support | 2,242 | | | 3,626 | | 5,868 | 2,231 | 41,347 | | 51,446 |
| Academic activities | 3 | 114 | 13 | | 24 | 154 | 792 | 61,970 | | 62,916 |
| Other revenue | 7,524 | 667 | 802 | 6,566 | 3,361 | 18,920 | 7,355 | 70,754 | (47,010) | 49,999 |
| Investment income/(loss) | 4,460 | 192 | 78 | 6,472 | (250) | 10,952 | 4,961 | 3,437 | | 17,588 |
| Net assets released from restrictions used for operations | 540 | 3 | | 57 | | 600 | | 4,937 | | 10,398 |
| Total revenues, gains and other support | 204,762 | 58,774 | 48,846 | 339,191 | 3,135 | 654,708 | 152,687 | 315,798 | (47,010) | 1,076,163 |
| **Expenses:** | | | | | | | | | | |
| Salaries, wages and fringe benefits | 100,010 | 26,714 | 21,851 | 160,741 | 16,230 | 325,566 | 67,223 | 204,456 | (47,010) | 597,645 |
| Materials, supplies and services | 88,907 | 21,039 | 19,779 | 144,626 | (18,557) | 255,784 | 60,774 | 104,787 | | 374,315 |
| Depreciation and amortization | 6,930 | 3,376 | 2,806 | 18,500 | 5,462 | 36,974 | 6,415 | 6,950 | | 50,339 |
| Interest | 3,376 | 5,102 | 1,901 | 10,454 | | 20,833 | 3,608 | 2,543 | | 26,984 |
| Total expenses | 199,643 | 56,121 | 46,337 | 334,321 | 3,135 | 639,557 | 138,020 | 318,736 | (47,010) | 1,049,283 |
| Net income/(loss) before extraordinary item and change in accounting principle | 5,119 | 2,653 | 2,509 | 4,870 | | 15,151 | 14,667 | (2,938) | | 26,880 |
| Extraordinary loss on early extinguishment of debt | (3,716) | (6,550) | (2,186) | (2,830) | | (25,282) | (4,344) | (3,908) | | (32,534) |
| Income from change in accounting principle | 26 | 257 | 88 | 2,033 | | 2,454 | 765 | 1,144 | | 4,363 |
| Net income/(loss) | 1,429 | (3,640) | 411 | (5,877) | | (7,677) | 11,088 | (4,702) | | (1,291) |
| Net assets released from restrictions used for acquisition of property and equipment | (2) | 101 | | | 1 | 59 | 135 | 1,481 | | 1,715 |
| Transfers (to)/from other net assets | 77 | | | | 78 | 78 | 1,294 | (401) | | 971 |
| Transfers (to)/from affiliates, net | (20,287) | (10,655) | (9,557) | (16,220) | 68 | (56,651) | (10,742) | (6,282) | | (73,676) |
| Increase/(decrease) in unrestricted net assets | $ (18,783) | $ (14,194) | $ (9,146) | $ (22,097) | $ 69 | $ (64,151) | $ 1,775 | $ (9,905) | $ - | $ (72,281) |

24

MBIA    015842

**EXHIBIT  1887**

EXHIBIT

1887

8-6-03

## *MBIA* Insured Portfolio Management Department
## Hospital Unit Rating & Review Form

| | | | |
|---|---|---|---|
| **To:** | File  *(Filename: Pa0543c.doc)* | **Rating Date:** | 2/28/97 |
| **Analyst:** | Dick Heberton | **Rating:** | 6B |
| **Obligor:** | AHERF Delaware Valley Obligated Group | **Policy Numbers:** | 212700, 212720, 212740 |
| **Net Outst. Par:** | $262,753,238  as of // | **Credit Number:** | PA0543 |
| **Final Maturity** | 2021 | **Pool Parent:** | N/A |

### I. MBIA Rating Assignment, Change or Confirmation

| | New Rating | Previous Rating  (Date) |
|---|---|---|
| Standalone Rating: | 6B | 4B (5/23/96) |
| LOC Bank Rating (Pool Borrowers): | | |

| | | |
|---|---|---|
| LOC Bank Name | N/A | |
| FIAD Rating | | |
| Expiration of LOC | | |
| Renewal of LOC in question? Why? | | |

### II. Rating Agency Rating

| | New Rating | As of date | Previous Rating |
|---|---|---|---|
| Moody's: | | 5/23/96 | Baa |
| S&P: | | 5/23/96 | BBB |

### III. Rating Type

| | |
|---|---|
| x | Surveillance "20/20" Rating (Audits Spread, Analysis Below) |
| | Surveillance "SU" Rating (Alert/ACRS Report) |
| | Surveillance Review (Audits spread, no write-up) |
| | Rating Agency Report Reviewed (Full report only - attach) |

### IV. Contacts

| | Hospital/Obligor | Other |
|---|---|---|
| Name of Entity: | AHERF | |
| Contact Name: | Mike Martin | |
| Title: | CFO | |
| Phone No.: | 412-442-2219  (secretary: Addie) | |
| Date of Contact: | 2/26/97 | |

MBIA      029893

## Hospital Analysis

The 1,533-bed Allegheny Health, Education and Research Foundation (AHERF) Delaware Valley Obligated Group is a new legal entity formed in 1996. Previously, this credit number had consisted of our exposure to Hahnemann University Hospital. The new Obligated Group consists of Hahnemann and all of its fellow AHERF affiliates in the Philadelphia area. The Group members are all controlled affiliates of AHERF and are part of the Allegheny System. The Allegheny System is the largest in Pennsylvania with over 2,600 licensed beds and 3,177 students. AHERF is also the parent of the strong 728-bed Allegheny General Hospital in Pittsburgh (PA0325; 2B), Allegheny Integrated Health Group (AIHG; physician practices and ambulatory services) and many others.

The Obligated Group members are:
- Allegheny University Hospitals
- Allegheny University of the Health Sciences
- St. Christopher's Hospital for Children

Allegheny University Hospitals consists of two Philadelphia tertiary hospitals:
  1. Allegheny Center City Hospital - 558 beds (formerly Hahnemann University Hospital) and
  2. Allegheny East Falls Hospital - 444 beds (formerly the Medical College of Pennsylvania Hospital),
and two suburban community care hospitals:
  1. Allegheny Bucks County Hospital - 176 beds and
  2. Allegheny Elkins Park Hospital - 175 beds.
It also operates an inpatient psychiatric facility (Eastern Pennsylvania Psychiatric Institute) on behalf of the State.

Allegheny University of the Health Sciences consists of the former Medical College of Pennsylvania and the academic segment of Hahnemann University Hospital System which were merged on 12/31/94 following the affiliation of Hahnemann with AHERF. Initially it was known as MCP~Hahnemann School of Medicine. It also includes the Schools of Nursing and Public Health.

St. Christopher's Hospital for Children is an 180-bed acute care children's hospital and regional referral center in Philadelphia. SCHC assumed the assets of a prior Group member, Horizon Medical Corp. which owned and managed SCHC's parking garage. Horizon withdrew from the Group following its merger with Zurbrugg Hospital.

This Obligated Group was brought together by AHERF to create a strong integrated delivery system in the Philadelphia area in order to gain a competitive advantage in negotiating for managed care contracts. The consolidation of the Group has been going on for the past three years and has involved many mergers, restructurings, layoffs and associated write-offs. Most the of members were rather lackluster performers prior to their affiliation with AHERF with fairly weak balance sheets.

The combined entity shows the scars of those weak balance sheets which were further harmed by $43MM in restructuring write-offs in 1994 and 1995, a large $33MM extraordinary loss due to the refinancing in 1996 and net transfers to other affiliates of $74MM in 1996 and $17MM in the first quarter of fiscal 1997. As a result of these charges, the Group's unrestricted fund balance dropped from $220MM in 1995 to $150MM in 1996 and $134MM as of 9/30/96. With debt of $464MM (including a $58MM line of credit) the Group is woefully undercapitalized. Debt/cap jumped from an already high 61% in 1995 to a staggering 77.5% at 9/30/96.

Cash fell sharply in 1995 from 59 to 33 days due to management's decision to reduce current liabilities. Cash fell further in 1996 to 27 days ($76MM) as A/R days soared to 104 days due to the difficulties of converting the members' A/R systems to the AHERF system. This was anticipated by management and has been partially funded with borrowings under its line of credit. The Group also has $123MM of restricted cash. This includes $60MM in temporarily restricted endowments, donations and student loans and $63MM in permanently restricted endowments and trusts. The AHERF System has about another $200MM in unrestricted cash, mostly at Allegheny General.

MBIA    029894

Good profitability in the last two years appears to partially mitigate this very weak balance sheet, but it depends how you interpret the income statement. The spreads show bottom line profits of $1.6MM in 1994, $36MM in 1995, $27MM in 1996 and $9.4MM in the first quarter 1997. But 1994's result excludes a $39MM restructuring charge, 1995's excludes a $4MM restructuring charge and 1996's excludes a $74MM transfer of net assets to affiliates. Of those transfers, $51MM went to support the acquisition (10%) and operation (90%) of physician practices by AIHG. Such support of physician practices had previously been accounted for mostly as an expense. For example, in 1995 the Group recorded an expense of $8MM and a net asset transfer of $5MM to AIHG. If all of this $51MM had been treated as an expense in 1996, the Group would have recorded a loss of over $24MM instead of a $27MM profit! These transfers continued in the first quarter of 1997 at $17.4MM and, according to CFO Martin, will continue at this pace indefinitely. The CFO indicated that they were now accounting for these expenses as transfers because AIHG is a separate corporation and because of the need to not appear to be buying referrals. 1996's profit was also boosted by a $8.6MM investment gain relating to the adoption of FAS 124.

AHERF is investing heavily in physician recruitment to help build revenues in the long-run. Average acquisition costs are about $150,000 for a primary care practice of 1.5 doctors. AHERF initially projected having 500 physicians (90% primary) and one million covered lives under contract by 6/30/98, but they have about 400 physicians now (including Graduate acquisition) and are comfortable staying at that level. The buildup of its primary care network and specialty recruitments are already having an impact as shown by the 8% rise in revenues in 1996. Utilization levels are also rising. All hospitals showed an increase in admissions (averaging 5%). Outpatient visits have gone up sharply in the last two years from 339,936 to 661,251. Rising managed care penetration reduced reimbursements which partially offset the benefit of these increases. Managed care now accounts for 32.6% of revenues.

The tertiary hospitals and St. Christopher's are the money makers in the Group as the medical school generates losses ($5MM in 1996) and the community hospitals have historically posted poor results. Losses at the medical schools are projected to decline as AHERF moves to reduce their size and consolidate operations. To improve profitability systemwide, AHERF has restructured operations to reduce costs. These actions included a reduction of FTEs at each facility.

Applications at the medical schools have fallen sharply from the peak year of 1994 due to the merger of MCP and Hahnemann in January 1995. After rising from 12,200 in 1992 to 19,695 in 1994, applications fell sharply in 1995 to 13,602 and to 12,528 in 1996. Matriculatants also were cut after the merger from 302 in 1994 to 240 in 1995. In 1996, 246 students matriculated. Total enrollment declined from 1,212 in 1994 to 1,121 in 1996 as a result. Applications at the Nursing and Public Health schools declined less severely and total enrollment has actually grown since the merger (2,116 in 1996 vs. 1,920 in 1994).

The Obligated Group's primary service area consists of most of Philadelphia County, along with a portion of surrounding counties in PA and NJ. The Group is the market leader in its service area with a 7.6% share (9% in Philadelphia). This market is very overbedded and is experiencing rapid managed care penetration. Recent consolidations have produced strong competitors to the Allegheny System. Competitors include 623-bed Thomas Jefferson (merged with Main Line HS), 703-bed University of Pennsylvania, 445-bed Temple, 524-bed Albert Einstein and the preeminent 301-bed Philadelphia Children's Hospital.

A related, but unaffiliated organization, SDN Inc., is in the process of acquiring Graduate Health System, which has six hospitals in the Philadelphia area. SDN has several AHERF executives on its board, but it is not legally part of AHERF. However, Martin indicated that SDN would eventually become part of the Allegheny System, although not part of of the DVOG, at least initially. Including the Graduate acquisition, AHERF will have a 15% market share in the Delaware Valley.

Almost all current senior managers in the Group (except at St. Christopher's) have been appointed by AHERF since its affiliation. Recent news articles have reported that AHERF's managers are some of the highest paid in the industry including the CEO, Sherif Abdelhak, who earned $1.2MM in 1995. UC members who met with management describe them as very competent and confident with good turnaround experience.

MBIA        029895

## Hospital Legal Structure

**Is the Borrower an Obligated Or Restricted Group?**     YES: x     NO:
**List Members:** | see writeup

| | | | | System Name: |
|---|---|---|---|---|
| **Borrower Type** | Single Hospital | _____ | | |
| | Two-Three Hospital System | x | | Allegheny |
| | Large, Multi-State System | _____ | | |

| **Type of Exposure** | New Issue | _____ | UIT/Secondary | _____ | BIG | _____ |
|---|---|---|---|---|---|---|
| (check all that apply) | Pool (non HBCS) | _____ | HBCS Pool | _____ | MBIA | x |

**Support**
(check all that apply)

| | |
|---|---|
| Gross receipts or A/R pledge | _____ |
| Mortgage | _____ |
| Negative Mortgage Pledge | _____ |
| Guarantee | _____ |
| Name of Guarantor | _____ |
| Other Support (Explain) | _____ |

**Debt Service Reserve Fund**

| | |
|---|---|
| Funded at inception at MADS | _____ |
| Funded at inception at less than MADS | _____ |
| Funded due to springing reserve at _____ | _____ |
| Not funded - springing reserve at _____ | _____ |
| Surety | _____ |
| No existing or springing DSRF | _____ |

**Is the borrower in compliance with all covenants?**     YES: _____  NO: _____

List major covenants and describe any compliance exceptions:

| Covenant | Section/Doc. | Required | Actual | Comments |
|---|---|---|---|---|
| Rate Covenant | § / | _____ | _____ | _____ |
| Cushion Ratio Covenant | § / | _____ | _____ | _____ |
| Additional Bonds Test | § / | _____ | _____ | _____ |
| Limits on Asset Transfers | § / | _____ | _____ | _____ |
| Other: | § / | _____ | _____ | _____ |
| | | | | _____ |

**Does the borrower have variable rate debt?**     YES _____     NO _____
If yes, what is date of Purchase Period expiration? _____
Is the debt backed by a LOC? Which Bank? _____
If MBIA insured, review document summaries and show next date of liquidity facility renewal. _____

**Other**
Is MBIA's exposure related to a crossover refunding?     YES _____     NO _____

**Comments:**

MBIA     029896

**EXHIBIT  1898**

EXHIBIT

1898
8-8-03

July 7, 1998

Members of the Board
    of Trustees of AHERF

Based upon your expressed need for system-wide financing on an urgent basis, we enclose a Proposed Term Sheet. Subject to the conditions of the term sheet, we would be prepared to lend a maximum of up to $160 million, of which not more than $50,000,000 will be available through August 15, 1998.

The loan would be made jointly and severally to AHERF, Allegheny General Hospital, Forbes Health System, Canonsburg General Hospital and Allegheny Valley Hospital (the "Borrowers"). The loan would be fully secured as set forth in the proposed Term Sheet by all assets of the Borrowers. To the extent that any proceeds of the loan are advanced by the Borrowers to their affiliates (as we understand will likely be the case), those intercompany advances will be evidenced by promissory notes secured by all assets of the affiliated borrower and such secured notes will be pledged and endorsed to us to further secure the loan.

We have heard that the AHERF Board has recently expressed strong reservations with respect to making the credit of the West available to support the East. The Board's current position is inconsistent with its actions in the past and is particularly unfortunate in view of the system-wide need for financing. Until now, the Board has had no reservation about attempting to adjust intercompany obligations or about using very substantial sums over an extended period of time for loans, advances and repayments within the AHERF system, as documented by the books and records of the various members of the AHERF system.

Moreover, at a time when the AHERF system had already manifested serious financial problems the Board nevertheless allowed the withdrawal from the AHERF system in April, 1998 of almost $90 million to repay, and thereby prefer as to all other creditors, Mellon Bank, an action which drained the AHERF system of desperately needed liquidity at a critical juncture.

PH1W2074R.4

MBIA        029957

We are willing to undertake this emergency financing in the interest of preserving vital assets of our communities. We urge you to carefully consider this proposal in light of the needs of the AHERF organization. We are prepared to move forward on the attached Term Sheet and invite your immediate response.

Very truly yours,

PNC BANK, NATIONAL ASSOCIATION

By: _____
    Thomas J. McCool, Senior V.P.

MBIA INSURANCE CORPORATION

By: _____
    David C. Stevens, Senior Managing Director

cc: Anthony Sanzo, C.E.O. (via hand delivery)
    David Hunter (via hand delivery)

PH1\4207418.4

MBIA    029958

## PROPOSED TERM SHEET - AHERF

PNC Bank, National Association ("PNC") and MBIA Insurance Corporation ("MBIA"; PNC and MBIA together are referred to as the "Lenders") will consider extending additional financing to the borrowers identified below in accordance with and subject to, among others, the following terms and conditions:

    i.    Borrowers - AHERF, Allegheny General Hospital, Forbes Health System, Canonsburg General Hospital, Allegheny Valley Hospital jointly and severally.

    ii.    Amount of Loan - $160,000,000 or such lesser amount as Borrowers' budget indicates will be necessary to cover the AHERF system's cash shortages as indicated on such budget - up to $50,000,000 will be available during the time period from closing through August 15, 1998. The Loan will be a revolving loan and may be repaid and reborrowed (subject to the mandatory prepayment requirement set forth below) until expiration.

    iii.    Use of Loan Proceeds - To the extent that Loan proceeds are directly or indirectly used by, advanced to or transferred by a Borrower to another AHERF entity which is not already a Borrower (a "non-Borrower Affiliate"), the non-Borrower Affiliate shall immediately evidence its obligations to repay such loan by executing a promissory note, in form and substance acceptable to Lenders, which note shall be in favor of its Borrower-lender and which note shall be secured by such non-Borrower Affiliate's assets, both real and personal. Immediately upon the making of the loan to its non-Borrower Affiliate, the Borrower-lender shall pledge, endorse, assign and deliver the note evidencing such loan to the Lenders and shall pledge and assign its rights in the collateral for such intercompany loan to the Lenders. To the extent that an intercompany obligation is not evidenced by a promissory note executed by the non-Borrower Affiliate, such intercompany obligation shall be deemed a "general intangible", shall be similarly secured and constitute part of the collateral granted to the Lenders under paragraph 9 hereof.

    iv.    Term - The Loan shall expire and be due and payable in full on December 31, 1998.

    v.    Interest Rate and Fees - Interest on the Loan shall be due and payable

PHIM70581.3 - **DRAFT: 7/7/98**

MBIA     029959

monthly at the applicable interest rate.  The interest rates are as follows: if the average amount outstanding during the month at issue is less than or equal to $50,000,000, interest on the total outstanding balance will be an annual rate equal to PNC's Prime Rate ("Prime") plus 1%; if the average amount outstanding during the month at issue exceeds $50,000,000 but does not exceed $100,000,000, interest on the total outstanding balance will be at Prime plus 2%; if the average amount outstanding during the month at issue exceeds $100,000,000, interest on the total outstanding balance will be at Prime plus 3%.  A fee of 1.5 % of the total commitment will be paid to the Lenders at closing.

vi.       Lender Percentages - PNC will take 25% share, MBIA will take 75% share.

vii.      Requirements for Advances - Borrowings will be permitted on a revolving basis once per week and are subject to the delivery by the Borrowers to the Lenders of the following items, each to be in form and content acceptable to the Lenders in their sole discretion:

(i) a weekly borrowing base certificate (which will reflect each Borrower's and each DVOG member's then existing aged accounts receivable) and projected system-wide budget (broken down by each entity in the AHERF system) for the next four week time period, each projected system-wide budget to include information regarding: (A) the anticipated use of the Loan proceeds and the entity that will be utilizing same, (B) categories of system-wide payments which will be made to vendors of AHERF or AHERF's affiliates during the time period covered by the system-wide budget and (C) such other information required by the Lenders,

(ii) evidence (acceptable to the Lenders) that a special committee of the Board of AHERF (the members of such special committee to be acceptable to the Lenders in their sole discretion) has considered and approved each projected budget prior to its submission to the Lenders,

(iii) a certificate signed by the chief financial officer of each Borrower and each member of DVOG certifying that no Events of Default and no conditions exist, which, with the giving or notice or the passage of time or both, would constitute an Event of Default under the documents evidencing the Loan and/or under the documents evidencing any other material obligation of any Borrower or any member of DVOG, and

(iv) satisfaction of such other terms and conditions as shall be required by the Lenders.

PHIM205813 - **DRAFT: 7/7/98**            - 2 -

MBIA        029960

viii.      **Borrowing Base and Lockbox** - Borrowing Base to be determined. Lockboxes and cash collateral accounts for receivables and the proceeds thereof will be required. Each Borrower and each member of DVOG will have at least one Lockbox and at least one cash collateral account. No access by Borrowers or members of DVOG to Lockboxes that contain payments from private insurers and other non-governmental entities.

ix.      **Collateral** - The Lenders will be granted security interests in and mortgage liens on all existing and after acquired assets of the Borrowers and, to the extent of intercompany obligations, members of DVOG, which security interests and liens shall be perfected and shall include, without limitation, unrestricted endowment funds, accounts receivable including, without limitation, intercompany accounts, real estate, equipment and machinery, furniture, fixtures, general intangibles, inventory, supplies and the proceeds of each of the foregoing, subject to such existing liens as are acceptable to the Lenders, in their sole discretion. The collateral shall include stock in any for profit subsidiaries, including but not limited to Allegheny University Medical Practices. Loan documentation will include negative pledge provisions.

x.      **Mandatory Prepayments** - The Borrowers will be required to make prepayments equal to 100% of the proceeds (after application of sale proceeds to existing debt secured by such asset) received by AHERF or any of its subsidiaries from the sale of any assets by such entities, provided that no prepayment will be required for any one asset sale by the Borrowers or any of them during any one month where the net proceeds from such sale equal or are less than $25,000 up to a maximum during any calendar year of $250,000. Any asset sale must be an arms length transaction and for fair value. Each mandatory prepayment will result in a dollar for dollar permanent reduction in the commitment of the Lenders.

xi.      **Special Conditions** - Conditions to borrowing will include the following:

(i) The Borrowers will, no later than August 1, 1998, retain an investment banker, acceptable to the Lenders, for purposes of valuing the assets of AHERF and all of its subsidiaries and to assist AHERF in the divestiture, refinancing or restructure of all such assets.

(ii) The Borrowers will, no later than August 1, 1998, submit to the Lenders the operational assessment and restructuring plan being prepared by the Hunter Group,

PHIM205815 - **DRAFT: 7/7/98**       - 3 -

MBIA     029961

such plan to be in form and substance acceptable to the Lenders in their sole discretion.

(iii) The Borrowers will, no later than September 1, 1998, submit to the Lenders a valuation, prepared by the investment banker, for the assets located in eastern Pennsylvania and New Jersey, such valuation to be on both a market (going concern) and liquidation basis.

(iv) The Borrowers will, no later than September 15, 1998, submit to the Lenders a valuation, prepared by the investment banker, for the assets located in western Pennsylvania, such valuation to be on both a market (going concern) and liquidation basis.

(v) The Borrowers will, no later than October 1, 1998, submit to the Lenders a plan (the "East Restructuring Plan"), to be in form and substance acceptable to the Lenders, pursuant to which the assets in eastern Pennsylvania and New Jersey will be sold, refinanced or restructured, such plan to include a projected closing date of no later than December 31, 1998. If in the sole judgment of the Lenders the East Restructuring Plan is unacceptable for any reason, then the Borrowers will submit to the Lenders a plan, no later than December 15, 1998, in form and substance acceptable to the Lenders, pursuant to which AHERF and all of its subsidiaries will be sold, restructured and/or refinanced in order to enable such entities to repay all indebtedness and obligations owing by them to either or both of the Lenders.

(vi) All of AHERF and its subsidiaries will establish deposit accounts and cash management systems acceptable to the Lenders in their sole discretion and all deposit accounts shall be located at PNC.

(vii) All Borrowers and members of DVOG shall maintain management and use such consultants that are reasonably acceptable to the Lenders.

(viii) Borrowers and members of DVOG shall provide Lenders with weekly reports which disclose all intercompany obligations including, without limitation, the amount of the obligation, the identity of the obligor(s), the intended use of the proceeds, the date such obligation was incurred, whether any note or other documentation exists evidencing such obligation and the terms of repayment regarding such obligation.

(ix) Borrowers and members of DVOG shall permit Lenders and their duly authorized agents access to the Borrowers' and DVOG members' books and records, facilities, personnel, consultants and investment bankers in order for Lenders to evaluate the existing and future financial condition and operations of AHERF and its subsidiaries.

PHI\420581.5 - **DRAFT: 7/7/98**                    - 4 -

MBIA          029962

(x) Such other terms and conditions as may be required by the Lenders in their sole discretion, including but not limited to, subordination of existing intercompany indebtedness to the extent required by the Lenders.

xii.    Financial and Other Covenants - To be determined.

xiii.    Pre-Closing Conditions - No later than July 15, 1998, the Borrowers will deliver to the Lenders the following, each to be in form and detail acceptable to the Lenders in their sole discretion: (i) projections supporting Borrowers' assertion that additional funds of up to $50,000,000 through August 15, 1998 and an additional amount up to $110,000,000 will permit AHERF and all of its subsidiaries to continue operating thereafter, (ii) a complete and accurate organizational chart for AHERF and its subsidiaries, also identifying each member of the Boards of Trustees and any other governing body (including, without limitation, any committees of any such governing body) for each such entity, (iii) information regarding the history of intercompany liabilities among AHERF and its subsidiaries since July 1, 1997, (iv) copies of the minutes of all Board meetings of the boards of the Borrowers and members of DVOG since July 1997, (v) consolidated and consolidating financial statements and operating statistics for AHERF and each of its subsidiaries for the months of April and May 1998, and (vi) copies of any financial information submitted by any of the Borrowers to any potential financing source in connection with or relating to any proposed financing or purchase of assets. In addition, no later than July 15, 1998, the Borrowers will submit evidence, including but not limited to a board resolution acceptable to the Lenders in their sole discretion, that the Board of Trustees of each of the Borrowers has considered and consented to the Borrowers' moving towards and attempting to close the Loan upon the terms and conditions contained in this proposal.

xiv.    Events of Default - Any violation of any obligation or covenant of the Borrowers under the documents evidencing the Loan.

xv.    Indemnification and Reimbursement - Must be acceptable to the Lenders in their sole discretion. Such provisions will include but not be limited to reimbursement, on demand, of (i) all fees and expenses of attorneys, accountants, investment bankers, appraisers, and other advisors retained by either or both of the Lenders and (ii) all out-of-pocket expenses of the Lenders.

xvi.    Other Terms and Conditions- The loan documents evidencing and

PHIW20581.5 - DRAFT: 7/7/98                    - 5 -

MBIA       029963