# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 00-684 |
| v. | ) ) | Judge David Stewart Cercone |
| PRICEWATERHOUSECOOPERS, LLP, | ) ) | |
| Defendant. | ) | |

## APPENDIX TO THE COMMITTEE'S RESPONSE TO PwC'S STATEMENT OF UNDISPUTED AND MATERIAL FACTS UNDER LOCAL RULE 56.1(C)(1)

### VOLUME 7A

James M. Jones (PA #81295)
Laura E. Ellsworth (PA #39555)
Laura A. Meaden (PA #52002)
JONES DAY
500 Grant Street, 31st Floor
Pittsburgh, PA 15219

Richard B. Whitney
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114

Attorneys for Plaintiff The Official Committee
of Unsecured Creditors of AHERF

July 11, 2005

**EXHIBIT  2385**



Sherif S. Abdelhak
President and Chief Executive Officer

RECEIVED

AUG 1 3 1996

FRANK V. CAHOUET

Broad & Vine
Mail Stop 400
Philadelphia, PA 19102-119
215-762-8450
215-762-1754 Fax

320 East North Avenue
Pittsburgh, PA 15212
412-359-8800
412-359-5192 Fax

**ALLEGHENY**
**UNIVERSITY**
OF THE HEALTH SCIENCES

August 8, 1996

Dear Members of the Allegheny Board of Trustees:

I would like to update you regarding the opportunity recently presented to AHERF by The Graduate Health System (GHS). The Graduate Health System, headquartered in Philadelphia, is a 501(c)(3) not-for-profit corporation that owns and operates a diversified healthcare system including general and specialty hospitals, a network of ambulatory care providers and managed care components. The Graduate Hospital serves as the cornerstone of the six hospital, 1440 bed system, which includes Graduate Hospital (330 beds), Mt. Sinai Hospital (230 beds), City Avenue Hospital (180 beds) and Parkview Hospital (195 beds) in Philadelphia; Rancocas Hospital (318 beds) in New Jersey; and Community General Hospital (188 beds) in Reading, Pennsylvania. The system also includes Founders Healthcare, Inc., which owns and manages physician practices in Pennsylvania, New Jersey and Delaware, GS RE, Inc. an off-shore Bermuda captive insurance company, two foundations and a management company.

The management of GHS had approached AHERF Management about certain of its hospitals and other organizations becoming part of AHERF. More specifically, under such proposal, all of the previously denoted GHS organizations, except for Community General Hospital in Reading (which is currently under sales contract) and the management company (which basically incurs cost for several executives and allocates them to the operating units), would be part of this transaction. Essentially, the entities to be transferred represent total assets of approximately $423 million with total revenues of approximately $381 million.

However, given that this is a large complicated organization, we believe it prudent to utilize an interim step in the acceptance process. Rather than AHERF, the immediate transaction would occur between GHS and SDN. SDN, Inc. [formerly United Hospitals, Inc.] is a 501(c)(3) not-for-profit corporation which is currently inactive and independent of AHERF, but which is managed by AHERF. In that SDN, Inc. is not a member of AHERF no prior approval by the AHERF Board of Trustees was necessary to approve this transaction. However, in the future, should SDN, Inc.'s management feel it appropriate to transfer one or more of the preceding entities into the AHERF System, after securing all the necessary legal and regulatory approvals and the completion of various due diligence reviews and resolution of resulting issues to the satisfaction of AHERF, the AHERF Board will then review and confirm the Executive Committee's actions. As you are aware, we have accepted this overture.

DVR:40997.1

FVC 01668

DEPOSITION
EXHIBIT
2385
AKF

Allegheny Boards of Trustees
August 8, 1996
Page 2


The AHERF Executive Committee members have given their concurrence and approval to move forward in the direction as outlined in this correspondence. If you have any questions please call me at 412-359-8800.

Sincerely,

Sherif S. Abdelhak

DVR:40997.1

FVC
01569

## DESCRIPTION OF PROPOSED REORGANIZATION

A.    **Parties**

    1.    Graduate Health System ("GHS") and SDN, Inc. ("SDN"), a Pennsylvania non-profit corporation, both tax-exempt under Section 501(c)(3)

    2.    GHS Subsidiaries

        (a)    The Graduate Hospital
        (b)    Mt. Sinai Hospital
        (c)    GHS City Avenue Hospital and GHS Parkview Hospital
        (d)    Zurbrugg Memorial Hospital and Rancocas Valley Hospital
        (e)    Founder's Health Plan (including professional corporations)
        (f)    GS Re, Inc. (captive insurance subsidiary)
        (g)    At a future date, one or more of the entities providing outpatient and ancillary services previously owned and now owned by Health Systems International ("HSI") (including GHS Home Medical, Advanced Technology, Inc., Concorde Clinical Research, Bala Imaging, and Mid-Atlantic Stone Center).

B.    **Proposed Transactions**

    1.    GHS transfers control of GHS Subsidiaries to SDN; SDN will have the power to amend Articles of Incorporation and Bylaws, to appoint and remove subsidiary directors, and to appoint and remove subsidiary Presidents/CEO's.

    2.    SDN operates GHS Subsidiaries as parent holding company similar to GHS.

    3.    GHS Subsidiaries retain current assets and liabilities.

C.    **Financial**

    1.    GHS pays capital contribution to The Graduate Hospital; ($10 million on the effective date; $5 million each on first, second, and third anniversary dates totalling $25 million).

    2.    GHS calculates inter-company liabilities between and among GHS and the GHS Subsidiaries; net amount owing to GHS of approximately $3,448,000 is forgiven.

    3.    GHS transfers certain restricted funds, trusts and Board-designated assets to individual GHS Subsidiaries (including $6.2 million in restricted endowments and funds for Graduate Hospital.

DVR:40896.1

FVC 01670

Description of Proposed Reorganization
August 3, 1996
Page 2

    4.    SDN will pay for the salary and certain benefits of Harold Cramer, Esq. through November 30, 1998 at the level specified in his present employment agreement; SDN will hire Robert Mathews as Chief Operating Officer of the GHS Subsidiaries for the remaining term of his employment agreement at his present salary; GHS will remain responsible for paying certain pension benefits payable to Harold Cramer, Esq. and Robert Mathews.

    5.    SDN will provide severance benefits to employees of GHS Subsidiaries with two weeks of severance for each year of service up to a maximum of 26 weeks and healthcare vouchers to be used by displaced employees or their families at hospitals and physicians' offices designated by SDN.

    6.    SDN, with necessary approvals, will assume responsibility for guarantees of GHS Subsidiary indebtedness, provided that GHS will be responsible for paying the difference between regular debt service and any payments accelerated as a result of the reorganization.

D.    Other Terms

    1.    All GHS Subsidiaries will be released from the Management Agreement between GHS and HSI Management;

    2.    GHS will negotiate with HSI for the transfer of the ancillary businesses; in turn, GHS will transfer to SDN any of the ancillary businesses transferred to GHS.

    3.    GHS's interests in Founder's professional corporations in Pennsylvania, New Jersey, and Delaware will be assigned to SDN designee.

E.    Indemnities

    1.    SDN will indemnify GHS and its directors/officers/employees/agents/representatives for acts or omissions of SDN in connection with the reorganization or from acts or omissions of SDN after the effective date of the reorganization.

    2.    GHS will indemnify SDN and its directors/officers/employees/agents/representatives for acts or omissions of GHS in connection with the reorganization or from acts or omissions of GHS prior to the effective date of the reorganization.

F.    Process

    1.    GHS approves resolutions.

    2.    GHS certifies approval of resolutions and satisfaction of required conditions to SDN,

    3.    SDN certifies approval of resolutions and satisfaction of required conditions to GHS.

    4,    Resolutions and transactions take effect.

DVR:40896.1

Description of Proposed Reorganization
August 3, 1996
Page 3

    5.      After reorganization, SDN will undertake due diligence review, resolution of outstanding issues, and securing of necessary governmental and legal approvals.

    6.      Upon completion of due diligence and approval processes satisfactory to AHERF, GHS Subsidiaries will become part of the AHERF System.

    7.      If joinder of GHS Subsidiaries with AHERF System is not completed within 24 months of the effective date of reorganization (unless reasons are beyond control of AHERF), GHS may recover the GHS Subsidiaries and reverse the reorganization.

DVR:40896.1

PVC 01672

**EXHIBIT  2452**

David W. McConnell
Executive Vice President and
Chief Financial Officer



**ALLEGHENY**
HEALTH, EDUCATION AND
RESEARCH FOUNDATION

Fifth Avenue Place
120 Fifth Avenue
Suite 2900
Pittsburgh, PA 15222-3099
412-359-3341
412-359-3065 Fax

RECEIVED
APR 28 1998
By _____

Hand Delivery

April 27, 1998

Mellon Bank, N.A., as Agent
One Mellon Bank Center
Room 151-0300
Pittsburgh, PA 15258

Attn: Marsha Wicker

Dear Ms. Wicker:

Pursuant to Section 2.01 (f) of the Credit Agreement dated as of March 27, 1997, as amended (the "Credit Agreement"), among Allegheny Health, Education and Research Foundation (the "Borrower"), the Lenders parties thereto from time to time and Mellon Bank, N.A., as Agent, the Borrower hereby gives notice to the Agent that it is reducing the Revolving Credit Committed Amounts (as defined in the Credit Agreement) to zero, effective on April 27, 1998 on which date the Credit Agreement will terminate.

As a condition to reducing the Revolving Credit Committed Amounts to zero, the Agent must return the Obligated Group Notes and deliver signed U.C.C. 3 termination statements with respect to the original Collateral to the Borrower.

Very truly yours,

*David W McConnell*

David W. McConnell

AHERF LIT
USDC W.D. Pa.
MISC No. 00-40
**407**
EXHIBIT NO.



DEPOSITION
EXHIBIT

2452

AKF 2/25/04

C000048

Allegheny Health, Education and Research Foundation
Allegheny University of the Health Sciences • Allegheny University Hospitals • Allegheny University Medical Practices • St. Christopher's Hospital for Children



**MELLON BANK, N.A.
HEALTH CARE BANKING
ONE MELLON BANK CENTER
ROOM 370
PITTSBURGH, PA 15258**

PLEASE DELIVER FAX. . .

5-4-98

TO: _A2/E RC+ Banks_

FAX: _Messrs. Utgard  Beck,  Maloney_

FROM: _Marsha Fricker_

PHONE: _412-234-3594_

FAX:  412-236-0287

# of pages: _2_

If you do not receive all of the above pages or if you have any questions, please call:

_Regi (412) 234-9099_

MESSAGE: _____

_____

_____

_____

_____

**Confidentiality Notice:**
This facsimile contains privileged and confidential information intended only for the use of the addressee named above. If you have received this facsimile in error please notify the sender immediately.

FC000049

**EXHIBIT  2472**

**ALLEGHENY**
HEALTH, EDUCATION AND
RESEARCH FOUNDATION

David W. McConnell
Executive Vice President and
Chief Financial Officer

January 28, 1997

Fifth Avenue Place, Suite 2900
120 Fifth Avenue
Pittsburgh, PA 15222-3009
Telephone (412) 359-3341
Fax (412) 359-3065

Broad & Vine Streets
Mail Stop #400
Philadelphia, PA 19102-1192
Telephone (215) 762-3301
Fax (215) 762-1639

Sherif S. Abdelhak
403 Hillside Farms Drive
Sewickley, PA 15143

Dear Mr. Abdelhak

Your 1996 Form W-2 is enclosed for use in preparing your annual Income Tax Return. In accordance with tax regulations, the total compensation reported on Form W-2 reflects the monthly salary paid to you plus various other payments made directly to you or on your behalf for activities which constitute taxable compensation.

The components of taxable compensation reported on the Form W-2 are as follows:

| | |
|---|---:|
| Base Pay | $ 775,000.00 |
| Graduate Merger Bonus | 150,000.00 |
| Forbes Merger Bonus | 100,000.00 |
| Exec-U-Flex Allowance | 23,250.00 |
| Perquisite Allowance | 41,724.00 |
| Automobile Allowance | 21,600.00 |
| Key Management Incentive (Long Term) | 123,150.00 |
| Key Management Incentive (Short Term) | 450,000.00 |
| Imputed Income (Life Insurance) | 7,294.00 |
| Executive Retirement | 234,113.08 |
| | |
| Total Income | $ 1,926,131.08 |
| | |
| Less Pre-Tax Deductions: | |
| Benopt-D | 533.16 |
| Dependent Care Reimbursement | 5,000.04 |
| Matched Savings Plan | 9,499.92 |
| | |
| Total Taxable Income | $ 1,911,097.96 |

Very truly yours

David W McConnell

David W. McConnell

DWM:cg

Members of the Allegheny Health, Education and Research Foundation
Allegheny General Hospital • Allegheny Integrated Health Group • Allegheny University of the Health Sciences •
Allegheny University Hospitals • St. Christopher's Hospital for Children

DBR-DK
010243



DEPOSITION
EXHIBIT
2472
3-3-04  SSS



**David W. McConnell**
Executive Vice President and
Chief Financial Officer

Fifth Avenue Place
120 Fifth Avenue
Suite 2900
Pittsburgh, PA 15222-3009
412-359-3341
412-359-3065 Fax

April 10, 1998

**ALLEGHENY**
HEALTH, EDUCATION AND
RESEARCH FOUNDATION

Sherif S. Abdelhak
403 Hillside Farms Drive
Sewickley, PA 15143

Dear Mr. Abdelhak:

Your 1997 Form W-2 is enclosed for use in preparing your annual Income Tax Return. In accordance with tax regulations, the total compensation reported on Form W-2 reflects the monthly salary paid to you plus various other payments made directly to you or on your behalf for activities which constitute taxable compensation.

The revised components of taxable compensation reported on the corrected Form W-2 are as follows:

| | |
|---|---:|
| Base Pay | $ 904,500.00 |
| Merger Bonus | $ 150,000.00 |
| Execu-FLEX Allowance | $ 27,135.00 |
| Perquisite Allowance | $ 42,975.72 |
| Automobile Allowance | $ 21,600.00 |
| Key Management Incentive (Long Term) | $ 145,810.29 |
| Imputed Income (Life Insurance) | $ 31,960.72 |
| Executive Retirement | $ 295,639.00 |
| Miscellaneous | $ 2,493.32 |
| Imputed Income (House) | $ 215,713.98 |
| Total Income | **$1,837,828.03** |
| | |
| Less Pre-Tax Deductions: | |
| Benopt-D | $ 1,276.32 |
| Dependent Care Reimbursement | $ 4,999.92 |
| Matched Savings Plan | $ 12,495.96 |
| Total Taxable Income | **$1,819,055.83** |

In addition to the above, you may receive a small refund from your 403(b) contributions which are considered taxable income for 1997. For participants in TIAA-CREF, distributions and the Form 1099-R will be mailed in March 1998.

Very truly yours,

David W. McConnell
DWM:kss

**DBR-DK**
**010244**

**ALLEGHENY**
HEALTH, EDUCATION AND
RESEARCH FOUNDATION

David W. McConnell
Executive Vice President and
Chief Financial Officer

---

January 30, 1998

Fifth Avenue Place, Suite 2900
120 Fifth Avenue
Pittsburgh, PA 15222-3009
Telephone (412) 359-3341
Fax (412) 359-4065

Broad & Vine Streets
Mail Stop #400
Philadelphia, PA 19102-1192
Telephone (215) 762-3301
Fax (215) 762-1619

Sherif S. Abdelhak
403 Hillside Farms Drive
Sewickley, PA 15143

Dear Mr. Abdelhak

Your 1997 Form W-2 is enclosed for use in preparing your annual Income Tax Return. In accordance with tax regulations, the total compensation reported on Form W-2 reflects the monthly salary paid to you plus various other payments made directly to you or on your behalf for activities which constitute taxable compensation.

The components of taxable compensation reported on the Form W-2 are as follows:

| | |
|---|---|
| Base Pay | → $ 904,500.00 |
| Merger Bonus | ~~150,000.00~~ |
| Exec-U-Flex Allowance | 27,135.00 |
| Perquisite Allowance | 42,975.72 |
| Automobile Allowance | 21,600.00 |
| Key Management Incentive (Long Term) | ~~145,810.29~~ |
| Imputed Income (Life Insurance) | 31,960.72 |
| Executive Retirement | ~~295,639.00~~ |
| Miscellaneous | 2,493.32 |
| IMPUTED INCOME (HOUSE) | 215,713.98 |
| Total Income | ~~$1,622,114.05~~  1,837,828.03 |
| | |
| Less Pre-Tax Deductions: | |
| Benopt-D | 1,276.32 |
| Dependent Care Reimbursement | 4,999.92 |
| Matched Savings Plan | 12,495.96 |
| | |
| Total Taxable Income | $ ~~1,603,341.85~~  1,819,055.83 |

In addition to the above, you may receive a small refund from your 403(b) contributions which are considered taxable income for 1997. For participants in TIAA-CREF, distributions and the Form 1099-R will be mailed in March, 1998.

Very truly yours

*David W McConnell*

David W. McConnell

DBR-DK
010245

DWM:cg

Members of the Allegheny Health, Education and Research Foundation
Allegheny General Hospital • Allegheny Integrated Health Group • Allegheny University of the Health Sciences •
Allegheny University Hospitals • St. Christopher's Hospital for Children

January 30, 1996

Sherif S. Abdelhak
403 Hillside Farms Drive
Sewickley, PA 15143

Dear Mr. Abdelhak:

    Your 1995 Forms W-2 are enclosed for use in preparing your annual Income Tax Return. In accordance with tax regulations, the total compensation reported on Forms W-2 reflects the monthly salary paid to you plus various other payments made directly to you or on your behalf for activities which constitute taxable compensation. As a note, an administrative transfer effective October 1, 1995 causes you to receive two W-2 forms this year.

    The components of taxable compensation reported on the Forms W-2 are as follows:

|                                        | Jan-Sept      | Oct-Dec       |
|----------------------------------------|---------------|---------------|
| Base Pay                               | $ 492,134.25  | $ 187,500.00  |
| Exec-U-Flex Allowance                  | 14,764.02     | 5,625.00      |
| Perquisite Allowance                   | 30,436.47     | 10,145.49     |
| Automobile Allowance                   | 12,593.97     | 7,237.60      |
| Key Management Incentive (Long Term)   | 116,479.00    | 0.00          |
| Key Management Incentive (Short Term)  | 0.00          | 330,400.00    |
| Imputed Income (Life Insurance)        | 0.00          | 4,335.00      |
| Executive Retirement                   | 320,841.25    | 0.00          |
| Total Income                           | $ 987,248.96  | $ 545,243.09  |
| Less Pre-Tax Deductions:               |               |               |
| Benopt-D                               | 748.26        | 249.42        |
| Dependent Care Reimbursement           | 3,749.94      | 1,249.98      |
| Matched Savings Plan                   | 7,124.94      | 2,374.98      |
| Total Taxable Income                   | $ 975,625.82  | $ 541,368.71  |

Very truly yours

David W. McConnell

DWM:cg

DBR-DK
010246

**EXHIBIT  2475**

**DAVID M. DEASY**
Senior Director
Corporate Disbursements
AHERF
(412) 442-2295
Fax - (412) 442-2403

To: ANTHONY M. SANZO          Date: 7/8/98

ATTACHED IS THE INFORMATION YOU
REQUESTED. IT IS NOT AS NEAT
AND ORGANIZED AS I WOULD LIKE
BUT I THINK IT REPRESENTS THE
INFORMATION YOU ARE LOOKING FOR
FAIRLY WELL.

PLEASE LET ME KNOW IF YOU WANT
ME TO DO ANY FURTHER INVESTIGATION
OR TRY TO PROVIDE MORE DOCUMENTATION.

DEPOSITION
EXHIBIT
2475
3-5-04  SSS
PENGAD-Bayonne, N.J.

AMS6 000158

# ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
## MEMORANDUM

TO:        Anthony Sanzo
           President and Chief Executive Officer

FROM:      Dave Deasy *DWG*
           Senior Director, Corporate Disbursements

DATE:      July 8, 1998

RE:        Information Requested

Pursuant to your request, attached is the past ten years of detail compensation paid to Messrs. Abdelhak and McConnell. I have made notations regarding types of payments based on documentation and my recollection.

Gross pay is not necessarily composed from the other five columns on the report. These five columns were intended to show any normal salary payments plus any large and/or unusual payments. Items included in gross, but not in one of the five columns include, but may not be limited to, 3% execuflex allowance, perquisite allowances, car allowances, imputed income on life insurance, travel reimbursements, etc.

Please note that this review was done on a calendar year basis, not fiscal year. If your total review includes 990 filings, these filings are done on a fiscal year basis.

Allocations of salary for 990 purposes were not a formal process but were done with certain end results in mind. Allocations were considered to be done to unrelated entities such as Ohio Valley and SDN so as to avoid further reporting. Allocations were done solely by Messrs. Abdelhak and McConnell well after the fact when the forms 990 were due (typically 11 months after the end of the fiscal year).

If you need any further information or clarification, please call me at 442-2296, or you can reach me at home at 795-0583.

AMS6 000159

**A L L E G H E N Y**
HEALTH, EDUCATION AND
RESEARCH FOUNDATION

David W. McConnell
Executive Vice President and
Chief Financial Officer

January 30, 1998

Fifth Avenue Place, Suite 2900
120 Fifth Avenue
Pittsburgh, PA 15222-3009
Telephone (412) 359-3341
Fax (412) 359-3065

Broad & Vine Streets
Mail Stop #400
Philadelphia, PA 19102-1192
Telephone (215) 762-3301
Fax (215) 762-1639

Sherif S. Abdelhak
403 Hillside Farms Drive
Sewickley, PA 15143

Dear Mr. Abdelhak

Your 1997 Form W-2 is enclosed for use in preparing your annual Income Tax Return. In accordance with tax regulations, the total compensation reported on Form W-2 reflects the monthly salary paid to you plus various other payments made directly to you or on your behalf for activities which constitute taxable compensation.

The components of taxable compensation reported on the Form W-2 are as follows:

| | |
|---|---:|
| Base Pay | $   904,500.00 |
| Merger Bonus | 150,000.00 |
| Exec-U-Flex Allowance | 27,135.00 |
| Perquisite Allowance | 42,975.72 |
| Automobile Allowance | 21,600.00 |
| Key Management Incentive (Long Term) | 145,810.29 |
| Imputed Income (Life Insurance) | 31,960.72 |
| Executive Retirement | 295,639.00 |
| Miscellaneous | 2,493.32 |
| Total Income | $ 1,622,114.05 |
| Less Pre-Tax Deductions: | |
| Benopt-D | 1,276.32 |
| Dependent Care Reimbursement | 4,999.92 |
| Matched Savings Plan | 12,495.96 |
| Total Taxable Income | $ 1,603,341.85 |

In addition to the above, you may receive a small refund from your 403(b) contributions which are considered taxable income for 1997. For participants in TIAA-CREF, distributions and the Form 1099-R will be mailed in March, 1998.

Very truly yours

*David W McConnell*

David W. McConnell

DWM:cg

*Members of the Allegheny Health, Education and Research Foundation*
*Allegheny General Hospital • Allegheny Integrated Health Group • Allegheny University of the Health Sciences •*
*Allegheny University Hospitals • St. Christopher's Hospital for Children*

AMS6  000160

A L L E G H E N Y
HEALTH, EDUCATION AND
RESEARCH FOUNDATION

David W. McConnell
Executive Vice President and
Chief Financial Officer

January 28, 1997

Fifth Avenue Place, Suite 2900
120 Fifth Avenue
Pittsburgh, PA 15222-3009
Telephone (412) 359-8341
Fax (412) 359-3065

Broad & Vine Streets
Mail Stop #400
Philadelphia, PA 19102-1192
Telephone (215) 762-3301
Fax (215) 762-1639

Sherif S. Abdelhak
403 Hillside Farms Drive
Sewickley, PA 15143

Dear Mr. Abdelhak

      Your 1996 Form W-2 is enclosed for use in preparing your annual Income Tax
Return.  In accordance with tax regulations, the total compensation reported on Form W-2
reflects the monthly salary paid to you plus various other payments made directly to you or
on your behalf for activities which constitute taxable compensation.

      The components of taxable compensation reported on the Form W-2 are as follows:

| | |
|---|---:|
| Base Pay | $ 775,000.00 |
| Graduate Merger Bonus | 150,000.00 |
| Forbes Merger Bonus | 100,000.00 |
| Exec-U-Flex Allowance | 23,250.00 |
| Perquisite Allowance | 41,724.00 |
| Automobile Allowance | 21,600.00 |
| Key Management Incentive (Long Term) | 123,150.00 |
| Key Management Incentive (Short Term) | 450,000.00 |
| Imputed Income (Life Insurance) | 7,294.00 |
| Executive Retirement | 234,113.08 |
| | |
| Total Income | $ 1,926,131.08 |
| | |
| Less Pre-Tax Deductions: | |
| Benopt-D | 533.16 |
| Dependent Care Reimbursement | 5,000.04 |
| Matched Savings Plan | 9,499.92 |
| | |
| Total Taxable Income | $ 1,911,097.96 |

Very truly yours

*David W McConnell*

David W. McConnell

DWM:cg

Members of the Allegheny Health, Education and Research Foundation
Allegheny General Hospital • Allegheny Integrated Health Group • Allegheny University of the Health Sciences •
Allegheny University Hospitals • St. Christopher's Hospital for Children

AMS6 000161

ALLEGHENY
HEALTH,
EDUCATION AND
RESEARCH
FOUNDATION

David W. McConnell
Executive Vice President and
Chief Financial Officer

January 30, 1996

Fifth Avenue Place, Suite 2900
120 Fifth Avenue
Pittsburgh, PA 15222-3009
Telephone (412) 359-3341

Broad & Vine Streets
Mail Stop #400
Philadelphia, PA 19102-1192
Telephone (215) 762-3301

Sherif S. Abdelhak
403 Hillside Farms Drive
Sewickley, PA 15143

Dear Mr. Abdelhak

    Your 1995 Forms W-2 are enclosed for use in preparing your annual Income
Tax Return.  In accordance with tax regulations, the total compensation reported on
Forms W-2 reflects the monthly salary paid to you plus various other payments made
directly to you or on your behalf for activities which constitute taxable compensation.
As a note, an administrative transfer effective October 1, 1995 causes you to receive
two W-2 forms this year.

    The components of taxable compensation reported on the Form: W-2 are as
follows:

|  | Jan-Sept | Oct-Dec |
|---|---|---|
| Base Pay | $ 492,134.25 | $ 187,500.00 |
| Exec-U-Flex Allowance | 14,764.02 | 5,625.00 |
| Perquisite Allowance | 30,436.47 | 10,145.49 |
| Automobile Allowance | 12,593.97 | 7,237.60 |
| Key Management Incentive (Long Term) | 116,479.00 | 0.00 |
| Key Management Incentive (Short Term) | 0.00 | 330,400.00 |
| Imputed Income (Life Insurance) | 0.00 | 4,335.00 |
| Executive Retirement | 320,841.25 | 0.00 |
| Total Income | $ 987,248.96 | $ 545,243.09 |
| Less Pre-Tax Deductions: |  |  |
| Benopt-D | 748.26 | 249.42 |
| Dependent Care Reimbursement | 3,749.94 | 1,249.98 |
| Matched Savings Plan | 7,124.94 | 2,374.98 |
| Total Taxable Income | $ 975,625.82 | $ 541,368.71 |

Very truly yours

David W. McConnell

DWM:cg

Members of the Allegheny Health, Education and Research Foundation
Allegheny General Hospital • Allegheny Integrated Health Group • Medical College of Pennsylvania and Hahnemann University •
Medical College of Pennsylvania and Hahnemann University Hospital System • St. Christopher's Hospital for Children

AMS6 000162



**ALLEGHENY
HEALTH,
EDUCATION AND
RESEARCH
FOUNDATION**

David W. McConnell
Executive Vice President and
Chief Financial Officer

January 30, 1995

Fifth Avenue Place, Suite 2900
120 Fifth Avenue
Pittsburgh, PA 15222-3009
Telephone (412) 359-3341

100 West Laurel Avenue
Cheltenham, PA 19012-2098
Telephone (215) 663-5405

Sherif S. Abdelhak
403 Hillside Farms Drive
Sewickley, PA 15143

Dear Mr. Abdelhak:

    Your 1994 Form W-2 is enclosed for use in preparing your annual Income Tax Return. In accordance with tax regulations, the total compensation reported on Form W-2 reflects the monthly salary paid to you plus various other payments made directly to you or on your behalf for activities which constitute taxable compensation.

    The components of taxable compensation reported on the Form W-2 are as follows:

| | |
|---|---:|
| Base Pay | $ 783,168.50 |
| Exec-U-Flex Allowance | 18,815.10 |
| Perquisite Allowance | 39,399.96 |
| Automobile Allowance | 16,791.96 |
| Key Management Incentive (Long Term) | 105,292.00 |
| Key Management Incentive (Short Term) | 256,000.00 |
| Imputed Income (Life Insurance) | 9,009.17 |
| Total Income | $ 1,228,476.69 |
| Less Pre-Tax Deductions: | |
| Benopt-D | 985.80 |
| Dependent Care Reimbursement | 4,999.92 |
| Matched Savings Plan | 9,499.92 |
| Total Taxable Income | $ 1,212,991.05 |

Very truly yours

*David*

David W. McConnell

DWM:cg

AMS6 000163

ALLEGHENY
HEALTH,
EDUCATION AND
RESEARCH
FOUNDATION

David W. McConnell
Executive Vice President and
Chief Financial Officer

January 21, 1994

Fifth Avenue Place, Suite 2900
120 Fifth Avenue
Pittsburgh, PA 15222-3009
Telephone (412) 359-3341

100 West Laurel Avenue
Cheltenham, PA 19012-2098
Telephone (215) 663-5405

Sherif S. Abdelhak
403 Hillside Farms Drive
Sewickley, PA 15143

Dear Mr. Abdelhak

    Your 1993 Form W-2 is enclosed for use in preparing your annual
Income Tax Return.  In accordance with tax regulations, the total
compensation reported on Form W-2 reflects the monthly salary paid to you
plus various other payments made directly to you or on your behalf for
activities which constitute taxable compensation.

    The components of taxable compensation reported on the Form W-2 are
as follows:

| | |
|---|---:|
| Base Pay | $   517,002.00 |
| Exec-U-Flex Allowance | 15,510.00 |
| Perquisite Allowance | 39,399.96 |
| Key Management Incentive (Long Term) | 199,609.00 |
| Key Management Incentive (Short Term) | 193,875.00 |
| Imputed Income (Life Insurance) | 4,176.00 |
| Other Compensation | 43,083.35 |
| Executive Retirement | 83,626.56 |
| Automobile Allowance | 6,996.65 |
| **Total Income** | **$ 1,103,278.52** |
| Less Pre-Tax Deductions: | |
| Benopt-D | 477.96 |
| Dependent Care Reimbursement | 4,999.92 |
| Matched Savings Plan | 9,499.92 |
| **Total Taxable Income** | **$ 1,088,300.72** |

Very truly yours

David W. McConnell

DWM:cg

AMS6 000164

# ALLEGHENY
HEALTH, EDUCATION AND
RESEARCH FOUNDATION

January 30, 1998

Fifth Avenue Place, Suite 29C
120 Fifth Avenue
Pittsburgh, PA 15222-3009

David W. McConnell
101 Lantern Circle
McMurray, PA 15317

Dear Mr. McConnell

    Your 1997 Form W-2 is enclosed for use in preparing your annual Income Tax Return. In accordance with tax regulations, the total compensation reported on Form W-2 reflects the monthly salary paid to you plus various other payments made directly to you or on your behalf for activities which constitute taxable compensation.

    The components of taxable compensation reported on the Form W-2 are as follows:

| | |
|---|---:|
| Base Pay | $ 537,501.75 |
| Merger Bonus | 100,000.00 |
| Miscellaneous Bonuses | 188,999.20 |
| Exec-U-Flex Allowance | 16,125.00 |
| Perquisite Allowance | 23,930.04 |
| Automobile Allowance | 21,600.00 |
| Key Management Incentive (Long Term) | 88,024.62 |
| Imputed Income (Life Insurance) | 803.00 |
| Executive Retirement | 69,019.00 |
| Miscellaneous | 4,007.12 |
| **Total Income** | **$ 1,050,000.73** |
| Less Pre-Tax Deductions: | |
| Benopt-D | 303.12 |
| Matched Savings Plan | 9,499.92 |
| **Total Taxable Income** | **$ 1,040,206.69** |

    In addition to the above, you may receive a small refund from your 403(b) contributions which are considered taxable income for 1997. For participants in Fidelity Investments, the distribution and a letter describing the tax impact will be mailed in March, 1998.

Very truly yours

David M. Deasy
Senior Director
Corporate Payroll

DMD:cg

Members of the Allegheny Health, Education and Research Foundation
Allegheny General Hospital • Allegheny Integrated Health Group • Allegheny University of the Health Sciences •
Allegheny University Hospitals • St. Christopher's Hospital for Children

AMS6 000165

**A L L E G H E N Y**
HEALTH, EDUCATION AND
RESEARCH FOUNDATION

_____

January 28, 1997

Fifth Avenue Place, Suite 2900
120 Fifth Avenue
Pittsburgh, PA 15222-3009

David W. McConnell
101 Lantern Circle
McMurray, PA 15317

Dear Mr. McConnell

    Your 1996 Form W-2 is enclosed for use in preparing your annual Income Tax Return. In accordance with tax regulations, the total compensation reported on Form W-2 reflects the monthly salary paid to you plus various other payments made directly to you or on your behalf for activities which constitute taxable compensation.

    The components of taxable compensation reported on the Form W-2 are as follows:

| | |
|---|---:|
| Base Pay | $ 487,534.00 |
| Graduate Merger Bonus | 112,500.00 |
| Forbes merger Bonus | 75,000.00 |
| Miscellaneous Bonuses | 252,023.09 |
| Exec-U-Flex Allowance | 14,626.00 |
| Perquisite Allowance | 23,232.00 |
| Automobile Allowance | 21,600.00 |
| Key Management Incentive (Long Term) | 77,233.00 |
| Key Management Incentive (Short Term) | 200,000.00 |
| Imputed Income (Life Insurance) | 659.00 |
| Executive Retirement | 62,479.00 |
| | |
| Total Income | $ 1,326,886.09 |
| | |
| Less Pre-Tax Deductions: | |
| Benopt-D | 123.05 |
| Matched Savings Plan | 9,499.92 |
| | |
| Total Taxable Income | $ 1,317,263.12 |

Very truly yours

David M. Deasy
Senior Director
Corporate Payroll

DMD:cg

*Members of the Allegheny Health, Education and Research Foundation*
*Allegheny General Hospital • Allegheny Integrated Health Group • Allegheny University of the Health Sciences •*
*Allegheny University Hospitals • St. Christopher's Hospital for Children*

AMS6 000166

January 30, 1996

David W. McConnell
101 Lantern Circle
McMurray, PA 15137

Dear Mr. McConnell

    Your 1995 Forms W-2 are enclosed for use in preparing your annual Income Tax Return. In accordance with tax regulations, the total compensation reported on Forms W-2 reflects the monthly salary paid to you plus various other payments made directly to you or on your behalf for activities which constitute taxable compensation. As a note, an administrative transfer effective October 1, 1995 causes you to receive two W-2 forms this year.

    The components of taxable compensation reported on the Forms W-2 are as follows:

|                                       | Jan-Sept      | Oct-Dec       |
|---------------------------------------|---------------|---------------|
| Base Pay                              | $ 337,500.00  | $ 112,500.00  |
| Exec-U-Flex Allowance                 | 10,125.00     | 3,375.00      |
| Perquisite Allowance                  | 16,994.97     | 5,664.99      |
| Automobile Allowance                  | 12,593.97     | 8,372.96      |
| Key Management Incentive (Long Term)  | 77,624.00     | 0.00          |
| Key Management Incentive (Short Term) | 0.00          | 180,000.00    |
| Imputed Income (Life Insurance)       | 0.00          | 588.00        |
| Executive Retirement                  | 63,596.15     | 0.00          |
| Total Income                          | $ 518,434.09  | $ 310,500.95  |
| Less Pre-Tax Deductions:              |               |               |
| Benopt-D                              | 95.04         | 31.68         |
| Matched Savings Plan                  | 7,124.94      | 2,374.98      |
| Total Taxable Income                  | $ 511,214.11  | $ 308,094.29  |

Very truly yours

David M. Deasy
Director
Corporate Payroll

DMD:cg

AMS6 000167

**ALLEGHENY
HEALTH,
EDUCATION AND
RESEARCH
FOUNDATION**

David W. McConnell
Executive Vice President and
Chief Financial Officer

---

January 30, 1995

Fifth Avenue Place, Suite 2900
120 Fifth Avenue
Pittsburgh, PA 15222-3009
Telephone (412) 359-3341

100 West Laurel Avenue
Cheltenham, PA 19012-2098
Telephone (215) 663-5405

David W. McConnell
174 Fireside Drive
McMurray, PA 15137

Dear Mr. McConnell

Your 1994 Form W-2 is enclosed for use in preparing your annual Income Tax Return. In accordance with tax regulations, the total compensation reported on Form W-2 reflects the monthly salary paid to you plus various other payments made directly to you or on your behalf for activities which constitute taxable compensation.

The components of taxable compensation reported on the Form W-2 are as follows:

| | |
|---|---:|
| Base Pay | $ 510,762.00 |
| Exec-U-Flex Allowance | 12,375.09 |
| Perquisite Allowance | 21,999.96 |
| Automobile Allowance | 4,197.99 |
| Key Management Incentive (Long Term) | 70,226.00 |
| Key Management Incentive (Short Term) | 150,000.00 |
| Imputed Income (Life Insurance) | 495.00 |
| Executive Retirement | 51,515.80 |
| Total Income | $ 821,571.84 |
| Less Pre-Tax Deductions: | |
| Matched Savings Plan | 9,499.92 |
| Total Taxable Income | $ 812,071.92 |

Very truly yours

David M. Deasy
Director
Corporate Payroll

DMD:cg

**ALLEGHENY**
**HEALTH,**
**EDUCATION AND**
**RESEARCH**
**FOUNDATION**

Fifth Avenue Place, Suite 2900
120 Fifth Avenue
Pittsburgh, PA 15222-3009

January 21, 1994

David W. McConnell
174 Fireside Drive
McMurray, PA 15137

Dear Mr. McConnell

    Your 1993 Form W-2 is enclosed for use in preparing your annual Income Tax Return.  In accordance with tax regulations, the total compensation reported on Form W-2 reflects the monthly salary paid to you plus various other payments made directly to you or on your behalf for activities which constitute taxable compensation.

    The components of taxable compensation reported on the Form W-2 are as follows:

| | |
|---|---:|
| Base Pay | $ 358,834.50 |
| Exec-U-Flex Allowance | 10,680.12 |
| Perquisite Allowance | 21,399.96 |
| Key Management Incentive (Long Term) | 122,856.00 |
| Key Management Incentive (Short Term) | 110,100.00 |
| Imputed Income (Life Insurance) | 423.00 |
| Executive Retirement | 58,433.23 |
| Total Income | $ 682,726.81 |
| Less Pre-Tax Deductions: | |
| Matched Savings Plan | 9,499.92 |
| Total Taxable Income | $ 673,226.89 |

Very truly yours

David M. Deasy
Director
Corporate Payroll

DMD:cg

AMS6 000169

**EXHIBIT  2476**

MINUTES OF THE COMPENSATION COMMITTEE MEETING OF
ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION
Tuesday, March 7, 1995 - 9:30 A.M. - ALLEGHENY GENERAL HOSPITAL

A meeting of the Allegheny Health, Education and Research Foundation Compensation Committee
was held on Tuesday, March 7, 1995 at 9:30 A.M. in the Kent Room at Allegheny General
Hospital.

| Members Present: | Invited Guests: | Members Absent: |
|---|---|---|
| J. David Barnes | Sherif S. Abdelhak | Graemer K. Hilton |
| Douglas D. Danforth | Dwight Kasperbauer | Francis B. Nimick, Jr. |
| W.P. Snyder III | David W. McConnell | |
| | Nancy A. Wynstra | |

I.    Opening of the Meeting

The meeting was called to order by Chairman, W.P. Snyder III, who declared that a
quorum was present and the meeting was competent to proceed.  Nancy Wynstra
maintained the minutes of the meeting.

II.    Approval Items

A.    Minutes

The minutes from the October 3, 1994 meeting of the Compensation Committee
were approved as presented.

B.    Long-Term Incentive Plan Award Distribution

Mr. Abdelhak presented to the Committee a report on the performance of the
organization for Fiscal Years 1991 to 1995.  The report is presented to assist the
Committee in evaluating whether or not the long-term award accruals approved in
Fiscal Year 1991 should be distributed to the involved executives at this time,
which, pursuant to the terms of the Long-Term Incentive Plan, is five years after
the initial accrual.

Following discussion and upon motion duly made and seconded the Committee
approved the following resolution.

WHEREAS, The Compensation Committee adopted a Key Management Long-
Term Incentive Plan to encourage and reward senior managers for the



DEPOSITION
EXHIBIT
2476
3-5-04 SSS

JD-HL 0020906

Minutes of the AHERF Compensation Committee
Tuesday, March 7, 1995 - 9:30 a.m.
Page 2

attainment of established long-term objectives; and,

WHEREAS, The organization has received a favorable ruling from the IRS
concerning such Plan; and,

WHEREAS, The Plan provides for the distribution of accrued incentive
awards subject to the Compensation Committee's determination of
management performance; and,

WHEREAS, An assessment of progress concerning quality of care, level of
charity care, excellence in educational and research programs and financial
viability indicates that the system has been and continues to be effectively
managed in the long-term best interests of patients, students and staff.

NOW, THEREFORE, BE IT RESOLVED, That the Compensation Committee
authorizes the distribution of accrued long-term incentive awards for Fiscal
Year 1991 plus accrued in' rest to the following individuals:

NAME

Sherif S. Abdelhak
D. Walter Cohen, D.D.S.
Thomas P. Galinski
Dwight Kasperbauer
Donald Kaye, M.D.
David W. McConnell
Leonard L. Ross, Ph.D.
Anthony M. Sanzo
Nancy A. Wynstra

FURTHER RESOLVED, That the Committee authorizes distribution of 100%
of the deferred award amount, based on its evaluation of management's
progress and performance each year for the prior five years; and

FURTHER RESOLVED, That the Committee directs that the list of
individuals and the specific awards authorized be appended in a sealed
envelope to the original minutes of this meeting.

JD-HL 0020907

Minutes of the AHERF Compensation Committee
Tuesday, March 7, 1995 - 9:30 a.m.
Page 3

C.    Mr. Abdelhak presented an overview of the proposed revisions to the Annual and
Long-Term Incentive Plans, noting that these proposed revisions have been
developed as a result of concerns expressed by the Committee that the prior plans
did not reflect an appropriate balance between the various mission elements of the
organization and the need for the organization to retain financial strength.  Mr.
Abdelhak noted that the trigger for the free care related objective had been changed
from a specific number to a requirement that no person is refused service because
of inability to pay.  Mr. Abdelhak then reviewed with the group the financial
guidelines which he has given to the organization's executives and indicated that
he is, through management, assuring an appropriate balance between the various
incentive award objectives.  He also noted that, in order to maintain Internal
Revenue Service approval of the Plan, it is important that the commitment to
quality and to significant amounts of charitable care be appropriately reflected in
the Plan.

The Committee requested that different terminology than Meets Expectations and
Exceeds Expectations be used to reflect perf rmance.  The Committee accepts and
hereby approves revisions of the Management Incentive Plan as presented at this
meeting.

Following discussion, and upon motion duly made and seconded, the Committee
approved the following resolution.

**RESOLVED, that the AHERF Compensation Committee accepts and
hereby approves the revisions to the Management Annual Incentive
Plan and the Management Long-Term Incentive Plan as presented at
this meeting, contingent upon the substitution of other terms for the
terms "acceptable progress," "achieved expectations" and "exceeded
expectations" as set forth in the draft plan; and**

**FURTHER RESOLVED, that the Secretary is directed to attached a
copy of the approved Plans to the minutes of this meeting.**

D.    Executive Compensation Cost of Living Adjustment

Mr. Kasperbauer noted that the Committee had agreed that, until such time as a
new market study to measure the competitive position of AHERF's senior
management salaries is conducted, which will not occur any earlier than January,

JD-HL 0020908

Minutes of the AHERF Compensation Committee
Tuesday, March 7, 1995 - 9:30 a.m.
Page 4

1997, salary increases for senior management are limited to cost of living adjustments. He indicated that a 3.25% cost of living adjustment was recommended for eligible individuals, to be effective on their anniversary date.

Following discussion and upon motion duly made and seconded the Committee approved cost of living adjustments of 3.25% for Sherif S. Abdelhak, D. Walter Cohen, D.D.S., Thomas P. Galinski, Dwight Kasperbauer, Donald Kaye, M.D., Iqbal F. Paroo, Leonard L. Ross, Ph.D., Anthony M. Sanzo, Nancy A. Wynstra, with such adjustment to be effective on the individual's anniversary date. The Committee agreed that this approach to compensation adjustments would be continued for one additional year but requested that a comparative compensation study be commenced at that time.

E.    **Human Virology Institute Recruitment**

Mr. Abdelhak presented information with respect to the potential recruitment of three senior researchers in the area of Human Virology He noted that, in order to provide security to the individuals involved, it would be necessary to offer them five-year continuing contracts. In addition, a special laboratory would need to be constructed for conducting the research involved and a number of people who currently work with these researchers would need to be recruited to the organization. Mr. Abdelhak noted that, while this recruitment would be expensive, it would significantly enhance the organization's reputation and lead to receipt of substantial research funding.

Following discussion and upon motion duly made and seconded the Committee approved offering five-year continuing contracts to Robert C. Gallo, M.D., Robert R. Redfield, M.D., and William A. Blattner, M.D.

F.    **Information Items**

A.    **Non-Compete Plan Investment Report**

As requested by the Committee, Mr. Kasperbauer presented a report on the investment performance of the funds invested in the Non-Compete Plan account for Messrs. Abdelhak and Kasperbauer and Ms. Wynstra.

JD-HL 0020909

Minutes of the AHERF Compensation Committee
Tuesday, March 7, 1995 - 9:30 a.m.
Page 5

B.      **Review of AHERF and Subsidiary Meeting Dates and Activities**

Mr. Kasperbauer briefly reviewed the calendar of Compensation Committee meetings for 1995 and called the attention of the Committee to the draft minutes of the subsidiary compensation committees.

At approximately 10:20 a.m., the Committee went into Executive Session and all management staff other than Mr. Abdelhak were excused.

The meeting was adjourned at approximately 11:20 a.m.

Respectfully submitted,

Nancy A. Wynstra, Esquire

NAW:kss
Enclosures
3-10-95

JD-HL 0020910

# A  H  E  R  F
*Allegheny Health, Education*
*and Research Foundation*

120 Fifth Avenue Place
Suite 2900
Pittsburgh, PA  15222-3009

---

**PERSONAL AND CONFIDENTIAL**

**TO:**        David M. Deasy
              Director, Corporate Payroll

**FROM:**      Dwight Kasperbauer
              Executive Vice President
                and Chief Human Resources Officer

**SUBJECT:**   Key Management Long-Term Incentive Plan - Fiscal Year 1991

**DATE:**      March 7, 1995

The amounts on the attached document have been approved by the AHERF Compensation Committee for distribution.

Please forward the checks to my attention on or about July 3, 1995.

Thank you in advance.

DK:tJH
Attachment

JD-HL 0020911

# ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION

## Key Management Long-Term Incentive Plan - Fiscal Year 1991

| Executive Name | Accrued Award |
|---|---|
| Sherif S. Abdelhak | $116,479 |
| D. Walter Cohen, D.D.S. | $ 41,617 |
| Thomas P. Galinski | $ 32,817 |
| Dwight Kasperbauer | $ 60,856 |
| Donald Kaye, M.D. | $ 65,367 |
| David W. McConnell | $ 77,624 |
| Leonard L. Ross, Ph.D. | $ 56,471 |
| Anthony M. Sanzo | $ 69,916 |
| Nancy A. Wynstra | $ 63,498 |
| **TOTAL** | **$584,645** |

Percent accrued award authorized for distribution _100_ %

W.P. Snyder III
Chairman, Compensation Committee

Mar. 7, 1995
Date

Members:

J. David Barnes
3.7.95
Date

Douglas D. Danforth
3.7.95
Date

Graemer K. Hilton
Date

Francis B. Nimick, Jr.
Date

DK:kas:Keymgmt:2-21-95

JD-HL 0020912

^ALLEGHENY HEALTH, EDUCATION AND
^RESEARCH FOUNDATION

^KEY MANAGEMENT LONG TERM
^INCENTIVE PLAN

| Executive | FY 1991 award | *Value @ 6-30-95 FY 1992 award | FY 1993 award | FY 1994 | Total | AWARD @ 6-30-95 |
|---|---|---|---|---|---|---|
| Abdelhak | $104,691 | $117,638 | $110,970 | $132,608 | $465,915 | $116,479 |
| McConnell | $76,915 | $71,902 | $78,780 | $82,680 | $310,498 | $77,624 |
| Santo | $50,432 | $68,262 | $71,199 | $79,772 | $279,664 | $69,916 |
| Galinski | $38,536 | $45,508 | $47,225 | $0 | $131,269 | $32,817 |
| McMaster | $47,646 | $39,196 | $42,009 | $40,549 | $169,400 | $42,350 |
| Vynstra | $57,702 | $56,657 | $65,042 | $74,592 | $253,992 | $63,498 |
| Kasperbauer | $50,684 | $59,160 | $63,968 | $69,412 | $243,425 | $60,856 |
| Cohen | $53,437 | $59,160 | $0 | $53,872 | $166,469 | $41,617 |
| Ross | $46,266 | $59,160 | $55,811 | $64,646 | $225,884 | $56,471 |
| Welton | $42,038 | $43,915 | $21,543 | $41,590 | $149,086 | $37,272 |
| Cumming | $0 | | $0 | $0 | $0 | $0 |
| Dionisio | $53,563 | $51,196 | $48,290 | $46,620 | $199,677 | $49,919 |
| Raeson | $33,656 | $32,538 | $32,199 | $31,080 | $129,473 | $32,368 |
| Kaye | $30,346 | $75,313 | $77,696 | $78,114 | $261,470 | $65,367 |
| Bland | N/A | N/A | $44,844 | $49,728 | $130,507 | $0 |
| McNair | N/A | N/A | $42,932 | $41,440 | $84,372 | $0 |
| Total | $0 | $821,520 | $798,545 | $886,903 | $3,209,100 | $744,555 |

JD-HL 0020913

**MANAGEMENT ANNUAL INCENTIVE PLAN**
**ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION**
**ADMINISTRATIVE GUIDE**

1.    <u>PURPOSE</u>

The AHERF Management Annual Incentive Plan is intended to enhance the Organization's ability to achieve its mission and charitable purpose of promoting the general health of both present and future generations of the communities it serves.    Specific Plan objectives are to:

- Reinforce the Organization's commitment to excellence in all of its patient care, education and research activities;

- Focus the attention of senior management on maintaining financial viability and achieving Organizational outcomes necessary to support the Organization's mission;

- Encourage teamwork and personal achievement; and,

- Enhance the Organization's ability to attract and retain high quality executive talent by providing Award opportunities commensurate with the Organization's management challenge and performance.

The Plan is designed to provide guidance to the various constituent components of AHERF.  In application, it is subject to interpretation by the Business Unit Compensation Committees; however, final determination of any matters of interpretation rest with the AHERF Compensation Committee.

2.    <u>DEFINITIONS</u>

"**AHERF Compensation Committee**" refers to the Compensation Committee of the Board of Trustees of the Organization, a committee made up of outside directors who receive no compensation from the Organization.

"**Award**" refers to the calculated incentive amount earned by and paid to a Participant under the terms and provisions of this Plan.

"**Base Salary**" refers to annualized base rate in effect at the close of the fiscal year, exclusive of the value of any basic or supplemental employee benefits, but inclusive of any base earnings deferred to a subsequent year in accordance with any Organization-sponsored qualified tax deferred Plan(s).
"**Business Unit**" refers to any component of AHERF recognized as a distinct operating unit for purposes of this Plan.

"**Business Unit Compensation Committee**" refers to the Committee of external trustees selected to oversee executive compensation within the relevant business unit of AHERF.

"**Goal Weight**" refers to a weight assigned to reflect the impact and degree of importance attached to a goal: (1) moderate, (2) high, and (3) essential.

"**Mission Objectives**" refer to the broad based mission oriented categories within which specific annual performance Goals are developed by each Business Unit.

JD-HL 0020914

"Must Goals" refers to Business Unit and/or Organizational Performance Goals which must be fully achieved in order for the appropriate unit to qualify for any Award.

"Organization" refers to AHERF and its subsidiaries.

"Organization Appraisal" refers to the annual review of performance to Plans/Goals which occur at the subsidiary and AHERF level.

"Organizational Performance Goals" or "Goals" refer to the specific performance measurement criteria approved by the Committee at the start of the fiscal year for purposes of Award determination under this Plan.

"Participant" refers to an employee of the Organization designated by the Committee to participate in the Plan.

"Performance Appraisal" refers to the Participant's annual review, conducted by his or her immediate superior, for the purpose of assessing performance with respect to his or her total job responsibilities.

"Plan" refers to the AHERF Management Annual Incentive Plan as described in this document.

"Plan Year" refers to the Organization's Fiscal Year.

"Planning Calendar" refers to the schedule of events in the planning, performance evaluation and incentive determination cycle (Appendix A).

"Work Unit" refers to a single entity or multiple entities which when combined, represents organization(s) upon which the individual participant's performance is measured. For example, a Department Chair's Work Unit may be 75% the department and 25% the school. A hospital system executive's Work Unit may be 100% the hospital.

3.     **ELIGIBILITY**

Plan eligibility is extended to employees of the Organization (or any of its subsidiaries) who, in the opinion of the Business Unit, have the opportunity to significantly impact the accomplishment of the Organization's mission. In general, the eligible group includes Academic/Clinical Chairs and employees in executive salary grades 4 and above or other designated key employees who play crucial roles in the attainment of the Organization's Goals.

It is the intent that each Participant be notified in writing of his or her eligibility, Award opportunity and all relevant Business Unit performance goals within 60 days of the start of the Plan Year.

4.     **MISSION OBJECTIVES**

Awards may be paid to the Participants provided the AHERF Compensation Committee determines that the Organization is satisfying its Mission Objectives. Mission performance will be evaluated in light of the following:

- No patient will be refused service because of the inability to pay.

- Quality of care is maintained or enhanced as measured by:

JD-HL 0020915

-   Patient/client satisfaction indices;

-   Full accreditation by the Joint Commission on Accreditation of Healthcare Organizations and other relevant Organizations;

-   Institutional quality scores (e.g., mortality, nosocomial infections, unplanned re-admissions, drug reactions) at satisfactory levels as determined by appropriate business unit Quality Assurance Committees.

- The commitment to research and teaching is maintained or enhanced;

- Long-term Organizational viability as measured by financial indicators is maintained or enhanced.

The committee(s) will annually review the performance of the Business Units and its senior officers to make a determination if the mission requirements have been met and that Goals specified in the annual performance Plan have been achieved. If so, the committee(s) will authorize calculation of Awards pursuant to the methods described in the Plan.

5.    PERFORMANCE PLANNING AND MEASUREMENT

Each CEO, in concert with the System CEO, will develop Organizational Goals for his or her Business Unit consistent with the System Mission Objectives and assign weights, i.e., 1) moderate, 2) high, 3) essential, indicating the impact of the goal on the organization's mission. The Goals of each Business Unit will be the measure upon which the individual CEO's performance will be evaluated. (See Appendix B for format). Each participant throughout the System will likewise develop goals and objectives in concert with his or her supervisor.

The System CEO will annually evaluate the results of each Business Unit and arrive at unit performance score considering both the weight of the goal and achievement. Each goal will be assigned one of the following scores.

    o - Unacceptable Performance
    1 - Acceptable Progress
    2 - Achieved Expectations
    3 - Exceeded Expectations

A weighted average score will determine the Work Unit Score category. The Business Unit Compensation Committee will validate the performance evaluations conducted by the CEO. The AHERF Board Chairman will evaluate and the AHERF Compensation Committee will validate the System CEO's performance.

6.    ORGANIZATION PERFORMANCE THRESHOLDS: MUST GOALS

Notwithstanding the calculations described in Section 8, no Awards will be payable under the Plan if the Organization or Business Units fail to achieve any Board of Trustee-determined Must Goals. For example, if the Organization fails to provide care to any individual because of his/her ability to pay or fails to maintain hospital or academic accreditation, no awards will be authorized within that Business Unit.

JD-HL 0020916

7. <u>INDIVIDUAL PERFORMANCE THRESHOLD</u>

Regardless of the level of performance achieved against overall Organization and Business Unit objectives, no Award will be paid to a Participant who fails to achieve at least an "Acceptable Progress" rating on his/her individual Performance Appraisal for the year. Such Performance Appraisal shall include consideration of both achievement against the Participant's objective performance Goals, as well as subjective factors.

8. <u>TARGET AWARD LEVELS</u>

The table below establishes the range of Awards to be available to individuals dependent upon Work Unit performance. Business Unit performance will be used to determine the Award range for participants who function primarily within the Business Unit. Participant's performance which may materially impact or influence other entities will have Work Unit accountabilities adjusted to reflect the relationship (See Appendix C). Individual evaluations will be based on achievement of specific individual objectives established at the start of the fiscal year, as well as a subjective year-end assessment of the Participant's overall performance during the year.

Incentive Awards for CEOs and senior AHERF executives will be apportioned by the allocation of responsibility and interdependence among the units. For example, a portion of the hospital CEO's Award is dependent on the success of the university (see Appendix C for format). The relative weight to be assigned to each Organization may differ by CEO, based upon the specific role and responsibilities of each individual within the Organization.

TABLE 1 *

| WORK UNIT EVALUATIONS | INDIVIDUAL EVALUATION | | |
|---|---|---|---|
| | ACCEPTABLE PROGRESS | ACHIEVED EXPECTATIONS | EXCEEDED EXPECTATIONS |
| Acceptable Progress 1.0 - 1.66 + | 5% <br> 0% - 10% | 10% <br> 5% - 15% | 15% <br> 10% - 20% |
| Achieved Expectations 1.67 - 2.33 + | 15% <br> 10% - 20% | 20% <br> 15% - 25% | 25% <br> 20% - 30% |
| Exceeded Expectations 2.34 - 3.0 + | 25% <br> 20% - 30% | 30% <br> 25% - 35% | 35% <br> 30% - 40% |

\*   *Percents indicate percent of base salary.*

\+   *Final weighted score from evaluation of performance goals.*

The System CEO, subject to approval by the Compensation Committee, may adjust the Business Unit's CEO's incentive Award to reflect the individual CEO's personal performance in achieving Business Unit results. The Business Unit CEO, subject to the approval of the committee may adjust the Award to the Participant giving consideration to factors including total annual compensation or other relevant factors.

4

JD-HL 0020917

9.    <u>MAXIMUM AWARD</u>

Each Participant may be eligible to achieve an Award pursuant to the categories and ranges on Table 1, Page 4; however, in no case may the combination of base pay and annual incentive Award exceed 1.5 times the 75th percentile (market price) for the position. The AHERF Compensation Committee may elect to revise the maximum Award, as changing business conditions warrant. Further, the Committee may determine, in its sole discretion, if Awards in excess of the maximum are appropriate for any Participant as a reward for Organization and/or individual performance in any year.

10.    <u>PLAN FUNDING</u>

Estimated Awards under the Plan will be accrued monthly and charged as an expense against the income statement of the Organization and the applicable business unit. Accruals of Awards will not imply vesting of any individual Awards to Participants. Vesting occurs only upon completion of the fiscal year, following the Compensation Committee's review of the extent to which performance objectives have been met, and their decisions regarding individual Awards to be paid.

11.    <u>AWARD PAYMENT</u>

If the Compensation Committee determines that Awards should be made, earned Awards will be paid in cash within 150 days following the end of the fiscal year, unless payments are deferred under an Organization-sponsored deferral Plan.

12.    <u>NEW HIRES AND PROMOTIONS</u>

Individuals hired or promoted into positions that would qualify for Plan participation will be added to the Plan, subject to the a roval of the Committee. Internal promotions will be considered a Participant for the entire yea. and new hires will participate on a prorated basis according to the months employed in the fiscal/Plan year.

13.    <u>TERMINATION OF EMPLOYMENT</u>

If termination of a Participant's employment occurs during the fiscal year by reason of death, disability, or normal retirement (consistent with the Organization's then current provisions for disability and normal retirement), the Participant (or the Participant's beneficiary or estate in the event of death) will be eligible to receive a prorata Award for the year based on time employed and objectives accomplished during the year.

A Participant who terminates employment with the Organization prior to the end of the fiscal year for any other reason (whether voluntarily or involuntarily) will forfeit the opportunity to earn an Award under the Plan for that year. Participants who terminate after the close of the fiscal/Plan year but before approval of Award will be eligible for payment based upon fiscal/Plan Year performance.

Notwithstanding any other provision of the Plan, the Committee may, in its sole discretion, permit continued participation, proration or early distribution (or a combination thereof) of Awards which would otherwise be forfeited.

JD-HL 0020918

14.   ADJUSTMENTS

If an extraordinary event occurs during a fiscal year which significantly alters the basis upon which the Organization or Business Unit performance levels were established for the year, the AHERF Compensation Committee, in its sole discretion, may make adjustments in such performance levels to the extent it deems appropriate (whether before or after the end of the fiscal year). Such adjustments shall be conclusive and binding upon all parties concerned. Such events may include, without limitation, changes in accounting rules or regulations, changes in regulatory rulings affecting the business of the Organization, and significant unexpected changes in economic conditions affecting the Organization. Certain events, such as loss of hospital or medical school certification, insolvency of the Organization or any subsidiary, or the loss of tax-exempt status of the Organization or any of its tax exempt subsidiaries, may result in the termination of the Plan at any time, at the discretion of the AHERF Compensation Committee.

15.   PLAN ADMINISTRATION

All decisions concerning the determination of Awards under this Plan will be subject to final approval of the AHERF Compensation Committee. In addition, the Committee will have the authority to interpret the provisions of the Plan and to make any final decisions necessary to administer the Plan, including but not limited to:

- Approval of Plan Participants;

- Apportionment of accountability;

- Establishment of maximum Awards;

- Approval of performance objectives

- Weighting of objectives (Organization vs. Business Unit vs. individual);

- Certification of performance against objectives established for the Plan;

- Adjustment of objectives due to extraordinary events; and approval of individual Awards to be paid.

The Committees, in making any determinations under the Plan, shall be entitled to rely on opinions, reports, or statements of officers of the Organization, and of legal counsel, public accountants, and other experts or third parties.

16.   ASSIGNMENT AND EMPLOYEE RIGHTS

A Participant may not assign or transfer his or her rights under the Plan, and any attempt to do so will invalidate those rights.

No employee has any claim or right to be a Participant in the Plan nor to be granted an Award under the Plan, nor is there an obligation for uniformity of treatment of eligible employees or Participants under the Plan. Participation in the Plan does not give an employee the right to be retained in the employment of the Organization. Moreover, the decision about whether or not Awards should be paid under the Plan, in total or with respect to any Participant, is entirely within the discretion of the Business Unit Compensation Committee or AHERF Committee as may be appropriate.

6

JD-HL 0020919

17.   <u>DESIGNATION OF BENEFICIARIES</u>

A Participant may designate a beneficiary or beneficiaries to receive, in the event of the Participant's death, all or part of the amounts to be distributed to the Participant under the Plan. A designation of beneficiary may be replaced by a new designation or may be revoked by the Participant at any time.  In the event the participant fails to designate a beneficiary, the beneficiary designated for the Supplemental Survivor Life Insurance policy, provided by the organization, will be used.  A designation or revocation shall be on a form to be provided for such purpose and shall be signed by the Participant and delivered to the Organization prior to the Participant's death.  Any amount that is payable to a Participant upon death and is not subject to such a designation shall be distributed to the Participant's estate.

18.   <u>AMENDMENT OR TERMINATION</u>

This Plan may be amended, suspended, or revoked at any time and without notice.  In the case of termination of the Plan, the AHERF Compensation Committee, if it determines in its sole discretion that it is necessary or advisable under the circumstances, may authorize the proration or early distribution, or a combination thereof, of Awards earned under the Plan.

19.   <u>WITHHOLDING TAX</u>

The Organization will deduct from all Awards paid under the Plan any taxes required by law to be withheld.

20.   <u>EFFECTIVE DATE</u>

The Plan is effective as of <u>July 1, 1994</u> and shall remain in effect until terminated by the AHERF Compensation Committee.

21.   <u>VALIDITY</u>

In the event any provision of the Plan is held invalid, void, or unenforceable, the same shall not affect, in any respect whatsoever, the validity of any other provision of the Plan.

22.   <u>APPLICABLE LAW</u>

The Plan shall be governed by and construed in accordance with the laws of the state of Pennsylvania.

3-01-95:KEYAHS.D

7

JD-HL 0020920

# APPENDIX A

## AHERF INCENTIVE PLAN PROCESS AND TIME LINE

*Contingent on dates of Compensation Committee and Board of Trustees meetings.*

*Business Unit compensation committees meet prior to AHERF Compensation Committee to certify and advance to AHERF business unit performance.*

**Not Later Than**

| | |
|---|---|
| March 31 | Organization goals and budget assumptions for coming fiscal year approved by Trustees. |
| June 30 | CEO presents annual operating plan and budget to Trustees for approval. |
| June 30 | Incentive plan participants' personal goals for the coming fiscal year approved by each supervisor. |
| August 30 | Incentive plan participants' personal evaluations against prior year's goals completed by supervisor. |
| September 30 | Prior fiscal year performance report against plan presented by business unit CEO to System CEO for evaluation. Coopers & Lybrand will complete review of Business Unit and System performance measures. |
| October 30 | Business Unit and AHERF Compensation Committee meetings to review and validate performance against Trustee-approved plans, review CEO's report on individual performance against goals and authorize incentive awards as may be appropriate. |

DK:kss:1-18-95

JD-HL 0020921

**APPENDIX B**
**FISCAL YEAR 1996**

**PLAN AND EVALUATION FORMAT**

I.    AHERF ORGANIZATIONAL GOALS

| PLAN/GOALS | RESULTS | PRIORITY WEIGHT 1-2-3 (Must) | EVALUATION Raw Score | EVALUATION Weighted Score | COMMITTEE VERIFICATION |
|---|---|---|---|---|---|
| Maintain or enhance uncompensated care as a percent of revenue compared to prior fiscal year levels. (Correct for changed poverty levels.) | | | | | |
| Maintain or enhance patient satisfaction, program accreditation and clinical care quality indicators compared to prior fiscal year levels. | | | | | |
| Maintain or increase the level of external funding for research. | | | | | |
| All undergraduate and graduate educational programs sponsored by AHERF shall be fully accredited. | | | | | |
| Achieve a favorable change in net equity equal to or better than the charge in CPI. | | | | | |
| The rate of increase in the cost of health care services provided as measured by the cost per adjusted discharge, shall be lower than the rate of increase in the medical component of the consumer price index. | | | | | |

JD-HL 0020922

APPENDIX B
FISCAL YEAR 1996

PLAN AND EVALUATION FORMAT

II. BUSINESS UNIT MEASURES

| PLAN/GOALS | RESULTS | PRIORITY WEIGHT 1-2-3 (MUST) | EVALUATION Raw Score 0-1-2-3 | EVALUATION Weighted Score | COMMITTEE VERIFICATION |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

JD-HL 0020923

| PLAN/GOALS | RESULTS | PRIORITY WEIGHT 1-2-3 (MUST) | EVALUATION Raw Score 0-1-2-3 | EVALUATION Weighted Score | COMMITTEE VERIFICATION |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

* Priority weight to be determined.

Final Weighted Score:

| Summary Evaluation | Exceeded Expectations Achieved Expectations Acceptable Progress Unacceptable Performance |
|---|---|
| Committee Verification | |

JD-HL 0020924

APPENDIX C

**WORK UNIT ILLUSTRATIONS BASED ON
ALLOCATION OF RESPONSIBILITY AND INTERDEPENDENCE**

| EXECUTIVE NAME | AHERF | AGH | AIHG | MCP/HU | MCPHUHS | SCHC |
|---|---|---|---|---|---|---|
| CEO Hospital | 5% | | 5% | 15% | 25% | 50% |
| CEO AIHG | 5% | 15% | 50% | | 15% | 15% |
| EVP Corporate Staff | 50% | 10% | 10% | 10% | 10% | 10% |
| CEO Hospital System | 5% | | 15% | 20% | 50% | 10% |
| EVP Finance | 50% | 10% | 10% | 10% | 10% | 10% |
| Provost | 5% | 15% | 5% | 50% | 15% | 10% |
| CEO Hospital | 5% | 60% | 15% | 20% | | |
| EVP Legal Services | 50% | 10% | 10% | 10% | 10% | 10% |

| | | |
|---|---|---|
| Dean | School 75% | University 25% |
| Academic Department Chairs | Department 75% | School 25% |
| Hospital Vice President | Hospital 100% | |

For illustration only - Percentage allocations do not reflect discussion, agreement or approval of the nature of the distribution.

JD-HL 0020925

## INCENTIVE CALCULATION ILLUSTRATION

ASSUME:    Corporate Staff Executive
Base Salary $100,000
Individual Evaluation: Achieved Expectations

| Work Unit Responsibility Allocation | Unit Evaluation | Score |
|---|---|---|
| AHERF    50% | Achieved Expectations | 2 |
| AGH      10% | Achieved Expectations | 2 |
| AIHG     10% | Exceeded Expectations | 3 |
| MCPHU    10% | Acceptable Progress | 1 |
| MCPHUHS 10% | Achieved Expectations | 2 |
| SCHC     10% | Acceptable Progress | 1 |

Weighted Average                                1.9

Work Unit Summary Evaluation: Achieved Expectations

From Table 1, Page 4, incentive award to be $20,000.
(Work Unit achieved expectations and individual evaluation achieved expectations.)

ASSUME:    Department Chair
Base Salary $100,000
Individual Evaluation: Exceeded Expectations

| Work Unit Responsibility Allocation | Unit Evaluation | Score |
|---|---|---|
| School      25% | Acceptable Progress | 1 |
| Department 75% | Exceeded Expectations | 3 |

Weighted Average                                2.5

Work Unit Summary Evaluation: Exceeded Expectations

From Table 1, Page 4, incentive award to be $35,000.
(Work Unit exceeded expectations and individual evaluation exceeded expectations.)

JD-HL 0020926

## MANAGEMENT LONG-TERM INCENTIVE PLAN
### AHERF Administrative Guide
### Addendum to Annual Incentive Plan

1.  **PURPOSE**

    AHERF has established a management annual incentive plan to enhance the organization's ability to achieve the mission and goals. In furtherance of this purpose and in recognition of the long range impact and effect of certain managerial decisions, AHERF also maintains the Management Long-Term Incentive Plan to promote and reward actions which are in the long-term best interests of AHERF.

2.  **ELIGIBILITY**

    Plan eligibility is extended to full time employees of AHERF or any of its subsidiaries who qualify for participation in the Management Annual Incentive Plan and who are Department Chairs or are in executive salary grades 12 or above. Other individuals who play crucial roles in the attainment of organizational objectives as determined by the AHERF Compensation Committee may also be included.

3.  **GENERAL PLAN DESCRIPTION**

    Long-term plan accruals are predicated upon the determination of an annual award under the Management Annual Incentive Plan. Pursuant to the granting of an annual award, eligible participants may be awarded a deferred incentive grant equal to the annual award up to an amount not to exceed 20% of base salary. The award will be deferred to the fifth fiscal year following the year for which it has been earned and distributed at the discretion of the compensation committee. During the deferral period, deferred incentive balances will be credited interest at the AHERF Time Value of Money Rate established annually for the Execu-FLEX Benefit Program.

4.  **LONG-TERM PERFORMANCE MEASUREMENT**

    Payment of deposits and accrued interest thereon will be subject to an adjustment, determined at the sole discretion of the AHERF Compensation Committee, based on the Committee's assessment of the extent to which the Organization has attained its long-term objectives over the five-year period following the date of the initial deposit. This assessment will include both qualitative and quantitative considerations deemed relevant by the Committee, including, without limitation, measures of quality of care, level of charity care provided, excellence of educational and research programs, and financial viability.

    Actual awards to be paid under the Plan may vary from 0 percent to 100 percent of the total deposit and accrued interest, at the discretion of the AHERF Compensation Committee. Any reduction to the total deposit and accrued interest for a given year shall

apply in equal proportion (as a percent of total deposit and accrued interest) to the deposits and accrued interest of all participants for the year.

5.    **PLAN FUNDING AND VESTING OF ACTUAL AWARDS**

Deposits under the Plan, and interest thereon, will be accrued monthly and charged as an expense against the income statement of the Organization and the applicable subsidiary. Accruals of deposits and interest will not imply vesting of any actual awards to participants.

Vesting of each actual award (following any reduction deemed appropriate by the AHERF Compensation Committee as discussed in paragraph 11 above) will occur five years following the completion of the fiscal year for which the deposit was earned, subject to the participant's continued employment with the Organization during the five-year period.

6.    **TERMINATION OF EMPLOYMENT**

If termination of a participant's employment occurs during the fiscal year by reason of death, disability, or normal retirement (consistent with the Organization's then current provisions for disability and normal retirement), the Participant (or the participant's beneficiary or estate in the event of death) will be eligible to receive a prorata deposit for the year based on time employed and objectives accomplished during the year. Further, the total value of a participant's earned but unvested deposits and interest accrued thereon will vest immediately upon death, disability, or normal retirement, subject to a reduction by the AHERF Compensation Committee for Organization performance against its long-term goals over the preceding five-year period.

A participant who terminates employment with the Organization prior to the end of the fiscal year for any other reason (whether voluntarily or involuntarily) will forfeit the opportunity to earn a deposit under the Plan for that year. Further, the total value of a participant's earned but unvested deposits and interest accrued thereon will be forfeited upon termination of his/her employment with the Organization for any reason (whether voluntarily or involuntarily), other than for reasons of death, disability, or normal retirement, as discussed above.

Notwithstanding any other provision of the Plan, the Committee may, in its sole discretion, permit continued participation, proration or early distribution (or a combination thereof) of deposits and interest which would otherwise be forfeited.

7.    **NEW HIRES AND PROMOTIONS**

Individuals hired or promoted into positions that would qualify for Plan participation will be added to the Plan, subject to the approval of the Committee. Such participants who have been in the qualifying position long enough to have had an impact during the fiscal year (minimum of three months as Plan participant) will be eligible to receive a prorated

JD-HL 0020928

deposit based on time employed as a participant during the year.

8.    **ADJUSTMENTS**

If an extraordinary event occurs during a fiscal year which significantly alters the basis upon which the organization or business unit performance levels were established for the year, the Committee, in its sole discretion, may make adjustments in such performance levels to the extent it deems appropriate (whether before or after the end of the fiscal year). Such adjustments shall be conclusive and binding upon all parties concerned. Such events may include, without limitation, changes in accounting rules or regulations, changes in regulatory rulings affecting the business of the Organization, and significant unexpected changes in economic conditions affecting the Organization.

9.    **PLAN ADMINISTRATION**

All decisions concerning the determination of deposits and actual awards under this Plan will be subject to final approval of the Committee. In addition, the Committee will have the authority to interpret the provisions of the Plan and to make any decisions necessary to administer the Plan, including but not limited to:

- Approval of plan participants;
- Establishment of maximum deposits;
- Establishment of performance objectives;
- Weighing of objectives (organization vs. business unit vs. individual);
- Certification of performance against objectives established for the Plan;
- Adjustment of objectives due to extraordinary events; approval of individual deposits; and
- Approval of actual awards to be paid upon completion of the five-year vesting period.

The Committee, in making any determinations under the Plan, shall be entitled to rely on opinions, reports, or statements of officers of the Organization, and of counsel, public accountants, and other experts or third parties.

10.    **ASSIGNMENT AND EMPLOYEE RIGHTS**

A participant may not assign or transfer his or her rights under the Plan, and any attempt to do so will invalidate those rights.

No employee has any claim or right to be a participant in the Plan nor to be granted a deposit or actual award under the Plan, nor is there an obligation for uniformity of treatment of eligible employees or participants under the Plan. Participation in the Plan does not give an employee the right to be retained in the employment of the Organization. Moreover, the decision about whether or not actual awards should be paid under the Plan, in total or with respect to any participant, is entirely within the discretion f the AHERF Compensation Committee.

JD-HL 0020929

11.    DESIGNATION OF BENEFICIARIES

A participant may designate a beneficiary or beneficiaries to receive, in the event of the participant's death, all or part of the amounts to be distributed to the participant under the Plan. A designation of beneficiary may be replaced by a new designation or may be revoked by the participant at any time. A designation or revocation shall be on a form to be provided for such purpose and shall be signed by the participant and delivered to the Organization prior to the participant's death. Any amount that is distributable to a participant upon death and is not subject to such a designation shall be distributed to the participant's estate. If there shall be any question as to the legal right of any beneficiary to receive a distribution under the Plan, the amount in question may be paid to the estate of the participant, in which event the Organization shall have no further liability to any one with respect to such amount.

12.    AMENDMENT OR TERMINATION

This Plan may be amended, suspended, or revoked at any time and without notice. In the case of termination of the Plan, the Committee, if it determines in its sole discretion that it is necessary or advisable under the circumstances, may authorize the proration or early distribution, or a combination thereof, of deposits earned under the Plan.

13.    WITHHOLDING TAX

The Organization will dedu t from all actual awards paid under the Plan any taxes required by law to be withhe!d.

14.    EFFECTIVE DATE

The Plan is effective as of July 1, 1994 and shall remain in effect until terminated by the Committee.

15.    VALIDITY

In the event any provision of the Plan held invalid, void, or unenforceable, the same shall not affect, in any respect whatsoever, the validity of any other provision of the Plan.

16.    APPLICABLE LAW

The Plan shall be governed by and construed in accordance with the laws of the state of Pennsylvania.

DK.kss:1-30-95.MLT:P

**EXHIBIT  2480**

**ALLEGHENY HEALTH, EDUCATION & RESEARCH FOUNDATION (AHERF)**
**PERFORMANCE MEASURES**
**FISCAL YEAR 1996**

The following quantitative performance measures, which are compiled primarily from information contained within the audited financial statements, where appropriate, and which have been reviewed and verified by Coopers & Lybrand, are intended to assist in the annual evaluation of AHERF's performance and that of its key managers and employees. These performance measures, which are consistent amongst all AHERF business units, will be used in conjunction with Mr. Abdelhak's formal assessment of AHERF's operating results to assess overall performance during fiscal year 1996. Mr. Abdelhak will be present at the meeting to discuss his formal assessment of operating results along with any other relevant aspects of AHERF's overall performance.

1. Achieve a rate of increase in the cost of health care services provided, as measured by the cost per adjusted discharge, which is lower than the change in the medical component of the consumer price index.

| | FY 96 Actual | FY 95 Actual | Decrease | Percent Decrease |
|---|---|---|---|---|
| Cost per adjusted discharge | $ 6,717 | $ 6,880 | ($ 163) | (2.4%) |

The cost per adjusted discharge decreased 2.4%, while the medical component of the consumer price index increased 4.6%.

2. Achieve favorable overall operating results, as measured by net income, in excess of established targets.

| | FY 96 Actual | FY 96 Target | Surplus |
|---|---|---|---|
| Net income exclusive of extraordinary loss on debt refinancing | $ 20,697,000 | $ 15,159,000 | $ 5,538,000 |

Net income exceeded the target by $5,538,000.

3. Achieve a favorable trend in financial viability, as measured by an increase in net equity, which is greater than the change in the consumer price index.

| | June 30, 1996 | June 30, 1995 | Increase | Percent Increase |
|---|---|---|---|---|
| Net equity exclusive of unusual items | $ 728,813,000 | $ 711,732,000 | $ 17,081,000 | 2.4% |

Net equity increased 2.4%, while the consumer price index increased 2.6%.

The lower than expected increase in net equity (2.4% vs. a 2.6% increase in the consumer index) is due largely to AIHG's financial results, which are significantly influenced by the start-up operations of the expanding physician network.

DEPOSITION
EXHIBIT
2480
3-5-04  SSS
PENGAD-Bayonne, N.J.

DBR-AA
22680

**ALLEGHENY HEALTH, EDUCATION & RESEARCH FOUNDATION (AHERF)**
**PERFORMANCE MEASURES**
**FISCAL YEAR 1996**
**Page 2**

4.   Maintain or enhance levels of uncompensated care as a percent of patient service revenue.

|                                                        | FY 96 Actual | FY 95 Actual |
| ------------------------------------------------------ | ------------ | ------------ |
| Uncompensated care as a percent of net patient service revenue | 6.0%         | 5.2%         |

Uncompensated care as a percent of net patient service revenue increased from 5.2% to 6.0%.

5.   Maintain or increase occupancy as measured by admissions.

|            | FY 96 Actual | FY 95 Actual | Increase |
| ---------- | ------------ | ------------ | -------- |
| Admissions | 91,133       | 88,375       | 2,758    |

Admissions increased 2,758 or 3.1%.

6.   Maintain or enhance the level of external funds used for research.

|                                    | FY 96 Actual  | FY 95 Actual  | Increase      |
| ---------------------------------- | ------------- | ------------- | ------------- |
| Level of external funds used for research | $ 57,079,000  | $ 45,589,000  | $ 11,490,000  |

Levels of external funds used for research increased $11,490,000.

AA:kw
\96perfmeas.ahf

DBR-AA
22681

**EXHIBIT  2487**

# AHERF

**Allegheny Health, Education
and Research Foundation**

Suite 2900, Fifth Avenue Place
Pittsburgh, Pennsylvania  15222

## MEMORANDUM

**TO:**        David W. McConnell

**FROM:**    Sherif S. Abdelhak

**DATE:**     June 10, 1996

**SUBJECT:**  Delaware Valley Debt Restructuring


In recognition of the outstanding job you did in the Delaware Valley debt restructuring, resulting in over $22,000,000 of net present value savings and the significant simplification of the documents, I am providing you with a one-time bonus equal to $100,000 after taxes.

Many thanks for the outstanding job; keep up the good work.

By copy of this memorandum to David Deasy, I am requesting that he prepare and issue this check at his earliest convenience.


SSA:cg

06101

CC: David M. Deasy





AMS6  000228

**EXHIBIT 2492**

53

## Meeting of the Compensation Committee
## Allegheny Health, Education and Research Foundation
## Pittsburgh, Pennsylvania

A meeting of the AHERF Compensation Committee was held on Wednesday, March 11, 1998 at 4:00 P.M. in the AUH-Allegheny General Hospital Board Room. The meeting was called pursuant to notice duly given in accordance with the Bylaws to each member of the Committee. A copy of the notice is appended to the original minutes of this meeting.

The following individuals were present:

| MEMBERS PRESENT | OTHER INVITEES | MEMBERS ABSENT |
|---|---|---|
| W. P. Snyder III (Chair) | Sherif S. Abdelhak | Graemer K. Hilton |
| J. David Barnes | Dwight Kasperbauer | |
| Douglas D. Danforth | David W. McConnell | |
| Francis B. Nimick, Jr. | Nancy A. Wynstra, Esquire | |

I.　**OPENING OF THE MEETING**

The meeting was called to order by W.P. Snyder III, Chair. Mr. Snyder declared that a quorum was present and the meeting was competent to proceed. Nancy A. Wynstra, Esquire maintained the minutes of the meeting.

II.　**APPROVAL ITEMS**

A.　The minutes from the October 15, 1996 and April 11, 1997 Allegheny Health, Education and Research Foundation Compensation Committee meetings were approved as presented.

B.　**Possible Sale of Green Valley Real Estate**

Mr. Abdelhak reported that the Allegheny General Hospital Board, at its March 3, 1998 meeting, was asked to consider a resolution granting authority for the sale of approximately 79 acres of the property which it owns in Ohio and Ross Townships. After discussion, the Board deferred action pending a comprehensive review of Allegheny's future development needs and potential uses for this property and the various options for divestiture if it is determined that the property will not be needed. Mr. Abdelhak and Ms. Wynstra presented, as an informational item, details relative to the proposal to purchase a portion of the property which was discussed at the March 11, 1998 meeting of the AHERF Executive Committee.

DEPOSITION
EXHIBIT
2492
3-5-04  SSS

D 0000576

Allegheny Health, Education and
Research Foundation (AHERF)
Compensation Committee Minutes
Page 2

Ms. Wynstra noted that because at least one of the potential purchasers of this property, in the event it is ultimately decided to sell it, is a board member and therefore an "insider" pursuant to the Internal Revenue Service rules, it is important that a process be established for evaluation of any potential sale transaction which would give AGH the benefit of the rebuttable presumption of reasonableness created by the Taxpayer Bill of Rights 2. To obtain the protection of the rebuttable presumption, it will be necessary that the Board receive external verification that the price offered is a fair market value price and that the entire transaction must be an arm length negotiation. Mr. Abdelhak then suggested that, if a decision is made to sell any or all of the property, David McClenahan, from the law firm of Kirkpatrick & Lockhart, be assigned to take a lead role in negotiating the sale and that Mr. Hernandez and Mr. Means be a special subcommittee who would assist him in obtaining and evaluating bids. Ultimately, Mr. Abdelhak suggested, that the recommended transaction should be reviewed and approved by the Committee on Trustees since at least one of the potential buyers is a member of the AUH West Compensation Committee. During the discussion, the Committee noted that any sale to an insider would be required to meet or exceed the appraised value and that, if any part of the sale, whether to an insider or not, included an option for future purpose, there should be a price assigned to that option.

C.      **Compensation Items/Executive Benefit Plan Amendments**

Mr. Abdelhak and Mr. Kasperbauer then presented a recommendation to the AHERF Compensation Committee to modify the existing benefit program for the senior executives of the organization in a manner which would make the benefit structure a better vehicle for building capital. They stated that while the proposed changes would make the benefit program more valuable to the executives, these changes will cost the organization no more than the benefit program in its present configuration.

The proposed amendments apply to the top six officers of AHERF: AHERF Chief Executive Officer; AUH-West Chief Executive Officer; AUH-East Chief Executive Officer; Executive Vice President and Chief Financial Officer; Executive Vice President and General Counsel and Executive Vice President and Chief Human Resources Officer.

Executive Benefits for senior management currently include a Retirement Account

Allegheny Health, Education and
Research Foundation (AHERF)
Compensation Committee Minutes
Page 3

Plan Nonqualified Restoration Benefit, an Executive Retirement Account -
Supplemental Pension, a Deferred Bonus Program, an Annual Incentive Program,
and an Executive Loan Program.  After a comprehensive evaluation, management,
working with outside benefits consultants, has identified a way to restructure the
four compensation programs (Retirement Account Plan Nonqualified Restoration
Benefit, Executive Retirement Account - Supplemental Pension,  Deferred Bonus
Program, Annual Incentive Program), and the Executive Loan Program, in a
manner which will be more beneficial for the participating executives at no
additional cost to the organization.  The program to achieve this program is called
a Keysop™, and it is a newly developed program.

In addition, a modified executive loan program is proposed which would provide a
more competitive interest rate on the underlying loans and which would allow for
payment of the interest as a deduction to the eligible executive's deferred
compensation.  Thus, there is a close linkage between the two proposed
amendments to the executive benefit plan.

Mr. Kasperbauer and Mr. Abdelhak noted that, if approved by the Compensation
Committee, the amended program will offer a more efficient way to deliver tax-
advantaged compensation, but at no greater cost to AHERF.  Further, by replacing
five existing executive programs with two programs, both the organization and the
participants will benefit from better communication and streamlined administration.
The Keysop™ and amended Executive Loan Program will replace the AHERF
Retirement Account Plan Nonqualified Restoration Benefit, Executive Retirement
Account - Supplemental Pension, Deferred Bonus Program, Annual Incentive
Program and the current Executive Loan Program.

The Keysop™ plan, if approved, would allow the Compensation Committee to
direct a portion of the executive's total compensation to be delivered in the form
of options to purchase mutual funds.  The provisions of the program would direct
that a participant's option grants would be reduced to cover the interest cost of the
Executive Loan Program.  If the amendments are approved as submitted, Coopers
& Lybrand will supply to the Compensation Committee members verification of
the individual participant's compensation to be directed to the Keysop™ and the
offsets for the Executive Loan Program interest.  The percentage of compensation
directed into the Keysop™ would be the same amount of compensation as the
benefit programs being replaced.

D 0000578

Allegheny Health, Education and
Research Foundation (AHERF)
Compensation Committee Minutes
Page 4

Lengthy discussion followed concerning the tax benefits for executives which
would result from adoption of the Keysop™ program, as well as specific issues
concerning how the program would function.  Following discussion and upon
motion duly made and seconded, the Committee approved the following
resolution:

WHEREAS, the Compensation Committee has determined that it would be
most appropriate to consolidate the discretionary compensation which may
be paid to the senior executives of the organization; and

WHEREAS, the KEYSOP™ Plan as presented at this meeting would
provide, at no additional cost to the organization, a replacement program for
the current discretionary compensation provided in the AHERF Retirement
Account Plan Nonqualified Restoration Benefit, the Executive Retirement
Account - Supplemental Pension, the Deferred Bonus Program, and the
Annual Incentive Program for eligible executives; and

WHEREAS, the Committee has determined that restructuring the current
discretionary compensation programs into a KEYSOP™ Plan would be more
advantageous for the affected executives; and

WHEREAS, the Committee has received opinions from external benefit
counsel and qualified tax consultants that the implementation of a
KEYSOP™ Plan as discussed at this meeting is consistent with applicable tax
law and meets the necessary requirements for treating the affected
compensation as deferred compensation for tax purposes.

NOW THEREFORE BE IT RESOLVED, that the Committee approves the
establishment of a KEYSOP™ Plan for the six senior officers of the
organization, specifically the AHERF Chief Executive Officer, AUH-West
Chief Executive Officer, AUH-East Chief Executive Officer, Chief Financial
Officer, General Counsel and Chief Human Resources Officer; and

FURTHER RESOLVED, that it is the Committee's expectation that the
KEYSOP™ Plan will be operated and administered in general conformance
with the Plan documents presented at this meeting which are attached to the
original version of this Resolution and incorporated herein; and