AGH:AC    12/20/93

THREE:  The Agent shall review from time to time the investments held hereunder and shall make such sales and purchases as it considers to be in the best interests of the Principal and in accordance with the investment policy last transmitted to it by the Principal and shall also make such sales or purchases as the Principal may direct in writing; PROVIDED, however, that the Agent shall not review any shares of MELLON BANK CORPORATION stock, but shall hold the same merely as custodian.  The Agent shall furnish to the Principal a report on all investment transactions at such reasonable times as the Principal shall request.  The Agent shall not be liable for any loss resulting from any action taken by it hereunder in good faith.  The Agent is authorized to execute purchases and sales through its affiliated discount brokerage service so long as said service provides best execution, and the Agent shall pay the regular charges of said service as part of the administrative expenses of the account.

FOUR:  Within the limitations of Article THREE, the Agent may invest in any kind of property, real or personal, or part interest therein, located in the United States or abroad, including interest-bearing accounts in or certificates issued by its own banking department, shares of registered investment companies for which the Agent or an affiliate performs services for a fee, whether as custodian, transfer agent, investment

-3-

CL 032031

AGH:AC    12/20/93

advisor or otherwise, and securities underwritten by syndicates of which the Agent is a member but not purchased from the Agent, all statutory and other limitations as to the investment of funds, now or hereafter enacted or in force, being waived

**FIVE:**  The Agent shall furnish to the Principal quarter-annual statements of income, principal and investments.

**SIX:**  The Agent shall be entitled to receive annual compensation for its services hereunder in accordance with its schedule in effect when the services are performed, which compensation shall be charged wholly against income.

**SEVEN:**  This Agreement may be revoked in whole or in part by either the Principal or the Agent by written notice to the other, whereupon the securities and other property as to which said revocation extends shall be delivered to the Principal or as the Principal shall direct in writing.

**EIGHT:**  All directions from the Principal to the Agent, including revocations, shall be in writing signed by the President of the Principal. The Principal shall keep the Agent

-4-

CL 032032

AGH:AC      12/20/93

advised of the persons holding such office, and the Agent is authorized to rely upon the last advice received.

WITNESS the due execution hereof the day and year aforesaid.

ALLEGHENY GENERAL HOSPITAL

By _____
                President

ATTEST:

_____
Mr. Secretary

MELLON BANK, N.A.

By _____
                Vice President
                              Ellen E. Whiting

ATTEST:

_____
Trust Officer

–5–

CL 032033

# SCHEDULE A

## ALLEGHENY GENERAL HOSPITAL

## DEPARTMENT OF RADIOLOGY ENDOWMENT CHAIR

## $150,000 CASH

CL 032034

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND  TRUSTS INVESTMENT FUND

ENDOWMENT RESTRICTED INCOME ACCOUNT

Mellon Agency No.  40-139 → 042-430

ACCT. NOS.: ASSET 7-200-742     INCOME 5-510-005 &-015     ACCRUED RECEIVABLE 5-136-035

EQUITY 7-650-740     MEMO 1-799-020

COMMENCEMENT DATE:     May 31, 1951

PERIOD (LIFE) OF FUND:     30 days' written notice required by either party.  "Inas-
much as the funds held hereunder are a permanent fund for the benefit of
the Hospital, it is understood and agreed that no partial termination of the
account is to be permitted."

AMOUNT OF FUND:     Estimated Annual Net Income $5,000

LOCATION OF FUND:     Mellon National Bank & Trust Company

ESTABLISHED BY:     Agreement between Allegheny General Hospital and Mellon
National  Bank, July 24, 1951.

ADMINISTERED BY:     Mellon Trust Department
Fee:  4.25% on gross income collected

PURPOSE OF FUND:     For the particular work of the Hospital specified by
the donors.

SPECIAL PROVISIONS:     The net income received from this Account distributed
based on the per cent of each account's principal balance to the total
principal of the account:

A.G.H. Nurses Alumnae Association 77.48%/49.44%     510-005 T
H. J. Heinz Endowed Room             22.52%/14.37%     510-015 T
*General Operations                        36.19%     544-025 P

*Other individual accounts that were merged to 40-139 are:  Harriet B.W.
Chalfant, Jane H. Harmer, Wilhelmina M. Townsend and Mrs. Richard B. Mellon.

T - Temporary Funds;  P - Plant Fund

TYPE:  Principal-     X     Restricted     _____ Unrestricted

Income-     X     Restricted     _____ Unrestricted

CL 032035

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

DAVID E. PARK SUITE FUND

Mellon Trust No. 500-015

9/1/90  750//05  2011870

ACCT. NOS.: **ASSET 7-200-742**   INCOME 5-510-030   ACCRUED RECEIVABLE 5-136-035
EQUITY 7-650-741   MEMO 1-799-020

COMMENCEMENT DATE:   December 12, 1916

PERIOD (LIFE) OF FUND: Perpetual Trust

AMOUNT OF FUND:   Estimated Annual Net Income  $2,500

LOCATION OF FUND:   Mellon National Bank & Trust Company

ESTABLISHED BY:   Deed of Trust of David E. Park

ADMINISTERED BY:   Mellon Trust Department

PURPOSE OF FUND:   "for Allegheny General Hospital for Maintenance of Rooms
Endowed by Sarah G. Park No. 4".   Rooms 1248 - 1250 (S-A-29+5-A-51)

SPECIAL PROVISIONS:   "The Allegheny General Hospital shall annually render a
report to the trustee showing the expenditures of the income received, and,
should it any time be made to appear that the income is being diverted to
purposes other than the endowment above mentioned, the trustee is authorized
to withhold the income.

Should the Allegheny General Hospital for any reason cease
to exist this trust shall end and the estate held in trust shall revert to
the estate of the party of the first part hereto."

TYPE:  Principal-   _____X_____  Restricted   _____ Unrestricted

Income-   _____X_____  Restricted   _____ Unrestricted

185-40

CL 032036

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND  TRUSTS INVESTMENT FUND

MARY JONES LAUGHLIN TRUST

Mellon Trust No. 500-016

9/1/90  7501105  2011870

ACCT. NOS.:   ASSET 7-200-742     INCOME 5-510-020      ACCRUED RECEIVABLE 5-136-035
              EQUITY 7-650-742     MEMO 1-799-020

COMMENCEMENT DATE:     December 24, 1917

PERIOD (LIFE) OF FUND:  Perpetual Trust

AMOUNT OF FUND:        Estimated Annual Net Income  $900

LOCATION OF FUND:      Mellon National Bank & Trust Company

ESTABLISHED BY:        Deed of Trust of Mary Jones Laughlin

ADMINISTERED BY:       Mellon Trust Department

PURPOSE OF FUND:       "for Allegheny General Hospital for Maintenance of the
    B. F. Jones Suite and the Mary F. Laughlin Suite No. 5."  B. F. Jones Suite -
    Rooms 1446-1450 & Mary F. Laughlin Suite, Rooms 1648-1650.
            (5-C-29+5-C-31)                           (L-A-29+L-A-31)

SPECIAL PROVISIONS:    "...pay over the net income therefrom to the Allegheny
    General Hospital,....which payment shall be received and receipted for by the
    Treasurer of said Hospital and shall be used by it solely for the purpose of
    maintenance of said recited Suites.

            The Allegheny General Hospital shall annually render a report
    to the Trustee showing the expenditures of income received, and, should it
    any time be made to appear that the income is being diverted to purposes other
    than the endowment above mentioned, the Trustee is authorized to withhold the
    income."

TYPE:  Principal-  ___X___ Restricted      _____ Unrestricted

       Income-   ___X___ Restricted      _____ Unrestricted

CL 032037

160-10
rev 6/5/92

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

MARTHA LOCKHART MASON  NO. 17

Mellon Trust No.  500-019

9/1/90 TSO1105 2011870

ACCT. NOS.:  ASSET 7-200-742    INCOME 5-510-025    ACCRUED RECEIVABLE 5-136-035
            EQUITY 7-650-743    MEMO 1-799-020

COMMENCEMENT DATE:      December 31, 1924

PERIOD (LIFE) OF FUND:  Perpetual Trust

AMOUNT OF FUND:         Estimated Annual Net Income    $670

LOCATION OF FUND:       Mellon National Bank & Trust Company

ESTABLISHED BY:         Deed of Trust of Martha Lockhart Mason – No. 17

ADMINISTERED BY:        Mellon Trust Department

                        (8-A-29, 8-A-31)   (8-C-29, 8-C-31)
PURPOSE OF FUND:        Maintenance of Rooms 1247 – 1249 & 1445 – 1449 and other
                        expenses as permitted under deed of trust

SPECIAL PROVISIONS:     Net income for upkeep of said rooms and care of "needy
        gentle folk". The Hospital may apply to its general maintenance the excess
        over and above the amount of $1,000 of any income received and not needed
        and expended for upkeep of rooms and the care and treatment of patients.

TYPE:  Principal-    -X   Restricted    _____ Unrestricted

       Income-    X   Restricted    _____ Unrestricted

185-48
IN· 5/3/72

CL 032038

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND  TRUSTS INVESTMENT FUND

ELEANOR G. PARK TRUST  -  NO. 36

Mellon Trust No.  500-020

9/1/90  7103200  2916990

ACCT. NOS.: ASSET 7-200-742    INCOME 5-510-037    ACCRUED RECEIVABLE 5-136-035
EQUITY 7-650-744    MEMO 1-799-020

COMMENCEMENT DATE:    August 13, 1929

PERIOD (LIFE) OF FUND: Perpetual Trust

AMOUNT OF FUND:    Estimated Annual Net Income  $700

LOCATION OF FUND:    Mellon National Bank & Trust Company

ESTABLISHED BY:    Deed of Trust of Eleanor G. Park

ADMINISTERED BY:    Mellon Trust Department

PURPOSE OF FUND:    (6-6-79)    Maintenance and upkeep of Room 1443; also to provide this
room to members of the medical and surgical staffs of the Hospital (including
the "Dispensary and Interns" staffs), who are unable or find it difficult
to pay hospital expenses when sick.

SPECIAL PROVISIONS:    The Hospital is required "to place and keep on the door or
wall of the endowed room an appropriate metal plate bearing the inscription
'Endowed in Perpetuity in Memory of Richard Gray Herron, M. D., August 13,
A. D. 1929, by Eleanor G. Park'."

Any excess income over and above the emergency fund of
$4,000 may be applied to the Hospital's general maintenance.

TYPE:  Principal-  __X__  Restricted    _____  Unrestricted

Income-  __X__  Restricted    _____  Unrestricted

105-40

CL 032039

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

ELEANOR G. PARK TRUST  -  NO. 37

Mellon Trust No.  500-021

9/1/90  7/03/00 2/01/990

ACCT. NOS.: ASSET 7-200-742    INCOME 5-510-035    ACCRUED RECEIVABLE 5-136-035
            EQUITY 7-650-745    MEMO 1-799-020

COMMENCEMENT DATE:      March 13, 1930

PERIOD (LIFE) OF FUND:  Perpetual Trust

AMOUNT OF FUND:         Estimated Annual Net Income  $600

LOCATION OF FUND:       Mellon National Bank & Trust Company

ESTABLISHED BY:         Deed of Trust of Eleanor G. Park

ADMINISTERED BY:        Mellon Trust Department
                        Fee:  4.25% of gross income received
                                              (4-c-31)
PURPOSE OF FUND:        Maintenance and upkeep of Room 1440; also to provide this
        room, free care and treatment to Ministers of the Gospel and Missionaries
        who are unable or find it difficult to pay hospital expenses when sick.


SPECIAL PROVISIONS:     The Hospital is required "to place and keep on the door
        or wall of the endowed room an appropriate metal plate bearing the inscription
        'Endowed in Perpetuity in Memory of Joseph C. Ohail, M. D., March 13, A.D.,
        1930, by Eleanor G. Park'."

                        Any excess income over and above the emergency fund in
        the amount of $4,000 may be applied to the Hospital's general maintenance.



TYPE:  Principal-  ___X___ Restricted      _____ Unrestricted

       Income-    ___X___ Restricted      _____ Unrestricted


105-40
3 - 6/3/72                                          CL 032040

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND  TRUSTS INVESTMENT FUND

THE JANE WALKER LOCKHART MEMORIAL FUND

Union National Trust No.  295

9/1/90 7103299  2014990

ACCT. NOS.:  ASSET 7-200-742   INCOME 5-510-010   ACCRUED RECEIVABLE 5-136-035
              EQUITY 7-650-746 :  MEMO 1-799-020

COMMENCEMENT DATE:      November 24, 1927

PERIOD (LIFE) OF FUND:  Perpetual Trust

AMOUNT OF FUND:         Estimated Annual Net Income  $9,000

LOCATION OF FUND:       Union National Bank of Pittsburgh

ESTABLISHED BY:         Martha Lockhart Mason — Deed of Trust

ADMINISTERED BY:        Union National Bank of Pittsburgh
                        Fee: .5% of gross income collected
                        Frank M. Lyle, Vice President

PURPOSE OF FUND:        To provide "special nursing care and attention (a) to
        needy gentle folk who may be patients, (b) to the sick and injured on the
        wards and (c) to any of the Hospital's employees, including interns, who
        may be patients."

SPECIAL PROVISIONS:

TYPE:  Principal-    x    Restricted    _____ Unrestricted

       Income-      x    Restricted    _____ Unrestricted

CL 032041

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

SARAH ELEANOR SAWYER TRUST FUND

Union National Trust No. C-3431

9/1/90 7501105 2311870

ACCT. NOS.: ASSET 7-200-742    INCOME 6-510-040    ACCRUED RECEIVABLE 5-136-035

EQUITY 7-650-747    MEMO 1-799-020

COMMENCEMENT DATE:    November 20, 1929

PERIOD (LIFE) OF FUND: Perpetual Trust

AMOUNT OF FUND:    Estimated Annual Net Income  $600

LOCATION OF FUND:    Union National Bank of Pittsburgh

ESTABLISHED BY:    Trust under Will of Sarah Eleanor Sawyer

ADMINISTERED BY:    Union National Trust Department
Fee: 6.0% upon gross income collected

PURPOSE OF FUND:    Endowed Room No. 1228  "Mary Hanna Sawyer Memorial Room"

SPECIAL PROVISIONS:    "The Hospital shall apply $1,000 of the annual income
to meeting the cost and expense of the furnishment and upkeep of said room,
and the free treatment of patients, and shall be free to apply to its
general maintenance the excess of income over and above the amount of
$1,000."

TYPE:  Principal-  __X__  Restricted  _____  Unrestricted

       Income-  __X__  Restricted  _____  Unrestricted

CL 032042

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

CHARLES H. SPANG ENDOWMENT FUND

Pittsburgh National Trust No. 8417

9/1/93 7103299 2911990

ACCT. NOS.:  ASSET 7-200-742   INCOME 5-510-045   ACCRUED RECEIVABLE  5-136-035

EQUITY 7-650-748    MEMO 1-799-020

COMMENCEMENT DATE:    June 5, 1925

PERIOD (LIFE) OF FUND:  Perpetual Trust

AMOUNT OF FUND:    Estimated Annual Net Income  $1,200

LOCATION OF FUND:   Pittsburgh National Bank

ESTABLISHED BY:    Irrevocable Trust under the Will of Charles H. Spang

ADMINISTERED BY:   Pittsburgh National Trust Department
                   Fee:  2.0% of gross income collected

PURPOSE OF FUND:   Endowing a room

SPECIAL PROVISIONS:    Room is to bear the inscription "In memory of Charles
    H. Spang", and income is also to be used for the care and treatment of
    needy persons occupying such room (1-A-9)

TYPE:  Principal-  ___X___ Restricted  _____ Unrestricted

       Income-   ___X___ Restricted  _____ Unrestricted

103-40
6/6/72

CL 032043

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

## ROBERT AND MARY WEISBROD ENDOWMENT FUND

## UNION NATIONAL BANK NO. 2587

ACCT. NOS.: ASSET: PRINR 7-200-742   INCOME 5-510-050   ACCRUED RECEIVABLE 5-136-035

EQUITY: 7-650-749   MEMO: 1-799-020

COMMENCEMENT DATE:   July 6, 1982

PERIOD (LIFE) OF FUND:   Written notice required of either party to terminate the agreement.

AMOUNT OF FUND:   $150,000 (payable in three installments)

LOCATION OF FUND:   Union National Bank of Pittsburgh

ESTABLISHED BY:   Assets from the Robert and Mary Weisbrod Foundation

ADMINISTERED BY:   Union National Bank of Pittsburgh Trust Department

PURPOSE OF FUND:   Maintenance and support of the Robert and Mary Weisbrod Memorial Chapel

SPECIAL PROVISIONS:

TYPE: Principal-  __X__  Restricted  _____ Unrestricted

Income-  __X__  Restricted  _____ Unrestricted

105-40                                                                CL 032044

*Participating Trust*

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

MARY MORTON TRUST FUND

Union National Trust No.  C-2832

ACCT. NOS.:  FUND _____    INCOME ⊢ 735-030    ACCRUED RECEIVABLE _____

COMMENCEMENT DATE:        April 28, 1931

PERIOD (LIFE) OF FUND:   Perpetual Trust (Participating)

AMOUNT OF FUND:          Estimated Annual Net Income    $700

LOCATION OF FUND:        Union National Bank of Pittsburgh

ESTABLISHED BY:          Trust Under Will of Mary Morton

ADMINISTERED BY:         Union National Trust Department

PURPOSE OF FUND:         For the maintenance of free beds for poor patients

∟ *restricted*

SPECIAL PROVISIONS:      Net income is distributed at 50% to Allegheny General
       Hospital and 50% to Shadyside Hospital.

TYPE:  Principal-    X      Restricted    _____  Unrestricted

       Income-     ☞      Restricted    ___ X ___  Unrestricted

CL 032045

*Participating Trust*

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

THE PITTSBURGH FREE DISPENSARY

UNION NATIONAL BANK NO. 1765

4/1/89 7103662 2014990   7/1/90 7103200 2016990
1/1/86 7103200 2016990

ACCT. NOS.: FUND_____·____    INCOME  1-735-060    ACCRUED RECEIVABLE_____

COMMENCEMENT DATE:    NOVEMBER 23, 1931

PERIOD (LIFE) OF FUND: PERPETUAL TRUST

AMOUNT OF FUND:    ESTIMATED ANNUAL INCOME – $230,000

LOCATION OF FUND:    UNION NATIONAL BANK OF PITTSBURGH

ESTABLISHED BY:    MONIES FROM THE PITTSBURGH FREE DISPENSARY

ADMINISTERED BY:    UNION NATIONAL BANK OF PITTSBURGH TRUST DEPARTMENT

PURPOSE OF FUND:    Restricted to use for Dispensary

SPECIAL PROVISIONS:

TYPE:  Principal-  ___X___ Restricted  _____ Unrestricted

　　　　Income-  _____ Restricted  ___X___ Unrestricted

105-40

CL 032046

Department, as hereinbefore constituted and one representative from each of
the Medical, Surgical and Special Clinics of The Hospital.

The function of the Committee and its subsidiary shall be the
active conduct of the professional work of the Department.

The plan of organization contemplates the division of the
medical work of the Department into clinics, such as the medical, surgical,
orthopedic, children's, eye, ear, nose, throat, etc., each having a physician
in charge to be known as Chief of Clinic, preferably an associate member of
the Attending Medical Staff of The Hospital who will act largely in a super-
visory capacity, the routine work being done by the attending physicians of
the Out-Patient Department, not necessarily members of the Attending Staff
of The Hospital.  It is expected that the members of the Senior Attending
Staff of The Hospital will act as consultants and give freely of their ad-
vice and experience when called upon by the various Chiefs of Clinics.

6.  All elections and appointments herein provided shall be
made annually to conform as nearly as possible to the dates fixed by the
By-Laws and regulations of The Hospital for the election of its Board of
Directors, officers and staff members.

7.  A reasonably accurate estimate of the cost of operating
the Department, with the cost per patient visit, is deemed highly desirable.
The Hospital authorities therefore will endeavor to determine and segregate
items properly chargeable to the activities of the Department, including a
fair proportionate share of the overhead ascertained in accordance with the
best practice as at present exemplified in the plan used by the Cleveland
Hospital Council and sponsored by the American Hospital Association, but
subject always, to the requirements imposed upon State aided hospitals in the
system of accounting demanded by the Department of Welfare and the Auditor
General of Pennsylvania.

8.  All income in the hands of The Dispensary at the time this
agreement takes effect and all income thereafter received by it from any
source whatsoever, save only such amounts as may be required to pay taxes,
insurance, repairs or other items in the upkeep of its property, including a
reasonable contingent fund if deemed necessary, shall be paid over to The

-3-

CL 032047

Hospital as and when received and be applied and used in furtherance of the
... of the Department.    And this being done no deficit which may arise from
the operation of the Department shall be chargeable in any amount or pro-
portion to The Dispensary.

9.  Nothing herein contained shall be construed as forfeiting
or impairing the separate corporate identity of either party hereto, nor as
having any bearing on the title to and control over the separate property of
either, nor as affecting the exercise by either of any function not covered
by the terms hereof.    Upon termination of this agreement The Hospital shall
forthwith discontinue the use of the name The Pittsburgh Free Dispensary in
connection with the operation of its Out-Patient Department.

10.  This agreement shall take effect at once and continue in
force for one year and from year to year thereafter until terminated by
either party, giving to the other notice in writing to that effect at least
ninety days prior to the close of any year.

IN WITNESS WHEREOF the parties hereto have caused these presents
to be duly executed the day and year first above written.

THE PITTSBURGH FREE DISPENSARY

By  J. W. Lloyd
                              President.

ATTEST:

George F. Smith
                    Secretary.

ALLEGHENY GENERAL HOSPITAL

By   Whitland Alexander
                              President.

ATTEST:

C. F. Holdship
                    Secretary.

-4-

CL 032048

*Participating Trust*

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

MARGARET J. BIDDLE CHARITABLE TRUST

Pittsburgh National Trust No. 506-8

ACCT. NOS.:  FUND_____  INCOME 5-541-428   ACCRUED RECEIVABLE _____

MEMO 1-799-060

COMMENCEMENT DATE:     March , 1971

PERIOD (LIFE) OF FUND:  Perpetual Trust (Participating)

AMOUNT OF FUND:

LOCATION OF FUND:      Pittsburgh National Bank

ESTABLISHED BY:        Trust under Will of Margaret J. Biddle

ADMINISTERED BY:       Pittsburgh National Trust Department

PURPOSE OF FUND:       To be used for the equipment and expansion of the Dental
                       Department of the Hospital from time to time in the dis-
                       cretion of the Directors.

SPECIAL PROVISIONS:    Memorial for Samuel J. Jamieson, John R. Jamieson,
                       Anna E. Jamieson and Margaret Jamieson Biddle.

                       The income received from this trust is to be deposited
           in the Department of Dentistry Development Fund, Account No. 541-428, in the
           Plant Fund accounts of the Hospital.

TYPE:  Principal-  ___X___ Restricted    _____ Unrestricted

       Income-    ___X___ Restricted    _____ Unrestricted

CL 032049

*Participating Trust*

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

"THE MARTHA LOCKHART MASON MEMORIAL FUND"

Union National Trust No.  1739

2/200 – ~~1-839-202~~ ÚS6100 1012010
2/200 – ~~1-859-612-5-530-CTA~~ 7503100 1716120
116/200-

ACCT. NOS.:  FUND_____    INCOME  544-021  )    ACCRUED RECEIVABLE ___ __ __

MEMO  799-015  )

COMMENCEMENT DATE:        December 26, 1935

PERIOD (LIFE) OF FUND:    Perpetual Trust (Participating)

AMOUNT OF FUND:           Estimated Annual Net Income  $190,000

LOCATION OF FUND:         Union National Bank of Pittsburgh

ESTABLISHED BY:           Deed of Trust – Martha Lockhart Mason

ADMINISTERED BY:          Union National Bank Trust Department

PURPOSE OF FUND:          "To be used in furtherance of their respective religious,
     educational or charitable objects and purposes in the manner as the
     trustees or other governing body thereof may from time to time direct."

SPECIAL PROVISIONS:       The interests of Allegheny General Hospital in said
     income are as follows:     116/200ths for general purposes of the Hospital

2/200ths for furnishing the annual Thanks-
giving Day dinner

2/200ths for furnishing annual Christmas gifts
to children who are patients

TYPE:  Principal-  __X__  Restricted              _____ Unrestricted

Income-   __4/200ths__  Restricted      __116/200ths__ Unrestricted

H.C.40
CFN 6/5/72

CL 032050

Date Prepared 2/20/92
Prepared by
a) C & L
b) Clerk and
Examined by _SWS_
Reviewed by
C & L SN/SLP

AHERF
ASRI Endowments
6/30/xx

*ASRI*

Note: Copies of full endowment agreement
maintained by Al Zaiwn, ACH acctg

3

CL 032051



## Mellon Bank

Mellon Bank, N.A.
Three Mellon Bank Center
Pittsburgh, PA 15259-0001
412 234 5784

**Barbara K. Robinson**
Vice President

May 10, 1993

Ms. Susan Murray
Allegheny Health Education
 & Research Foundation
Fourth Floor - Treasury
D.L. Clarke Building
503 Martindale Street
Pittsburgh, PA  15212



Dear Sue:

Re:  Allegheny - Singer Research Institute
Neuroscience Research Endowment
Account Number 042-462

Enclosed is your executed original copy of this agreement.  A Schedule A is attached per your request.

If you have any questions, please call.

Very truly yours,

*Barbara*

Barbara K. Robinson
Vice President

BKR:vlr

Enclosures

CL 032052



AGREEMENT

By and Between

ALLEGHENY-SINGER RESEARCH INSTITUTE

and

MELLON BANK, N.A.

CL 032053

ASRC:BKR    10/07/92

### AGREEMENT

Made the  20th  day of  April          , 19 93.

ALLEGHENY-SINGER RESEARCH INSTITUTE, a non-profit medical research institute organized and existing under the laws of the Commonwealth of Pennsylvania and having its principal office in Pittsburgh, Allegheny County, Pennsylvania, as the Principal, and MELLON BANK, N.A., a national banking association, as the Agent, hereby agree as follows:

ONE:    The Principal hereby delivers into the custody of the Agent the property listed in Schedule "A" attached hereto, to be known as the "NEUROSCIENCE RESEARCH ENDOWMENT", and authorizes the Agent to do all acts necessary to carry out the provisions of this Agreement, hereby appointing the Agent as its attorney-in-fact for this purpose and ratifying and confirming all acts of the Agent performed in pursuance hereof. As to any third party, this Agreement shall be full authority to rely upon the act of the Agent in respect of all matters requiring the direction or consent of the Principal, without any duty upon such third party to inquire concerning the existence of such direction or consent. The authority vested in the Agent shall extend to any company with which it may consolidate or merge without notice from the Agent to the Principal.

TWO:    The Agent shall hold the said property, any

CL 032054

ASRC:BKR      10/07/92

additions thereto and any reinvestments thereof, shall collect the income therefrom and shall pay the net income quarter-annually to the Principal or in such manner as the Principal may direct in writing. The Agent may hold assets in the name of a nominee, in bearer form or in book entry form or in a clearing corporation or depository, so long as its records clearly indicate the assets held in this account; the Agent shall vote proxies only as directed by the Principal. If any situation comes to the attention of the Agent which will or may require the enforcement or exercise of any of the rights or privileges pertaining to any fixed income obligation or debt security held hereunder, the Agent shall give prompt notice thereof to the Principal and shall take only such action as the Principal directs in writing.

THREE: The Agent shall review from time to time the investments held hereunder and shall make such sales and purchases as it considers to be in the best interests of the Principal and in accordance with the investment policy last transmitted to it by the Principal and shall also make such sales or purchases as the Principal may direct in writing; PROVIDED, however, that the Agent shall not review any shares of MELLON BANK CORPORATION stock, but shall hold the same merely as custodian. The Agent shall furnish to the Principal a report on all investment transactions at such reasonable times as the Principal shall request. The Agent shall not be

CL 032055

ASRC:BKR    10/07/92

liable for any loss resulting from any action taken by it hereunder in good faith. The Agent is authorized to execute purchases and sales through its affiliated discount brokerage service so long as said service provides best execution, and the Agent shall pay the regular charges of said service as part of the administrative expenses of the account.

FOUR:  Within the limitations of Article THREE, the Agent may invest in any kind of property, real or personal, or part interest therein, located in the United States or abroad, including interest-bearing accounts in or certificates issued by its own banking department, shares of registered investment companies for which the Agent or an affiliate performs services for a fee, whether as custodian, transfer agent, investment advisor or otherwise, and securities underwritten by syndicates of which the Agent is a member but not purchased from the Agent, all statutory and other limitations as to the investment of funds, now or hereafter enacted or in force, being waived.

FIVE:  The Agent shall furnish to the Principal quarter-annual statements of income, principal and investments.

SIX:  The Agent shall be entitled to receive annual compensation for its services hereunder in accordance with its schedule in effect when the services are performed, which compensation shall be charged wholly against income.

-3-

CL 032056

ASRC:BKR    10/07/92

SEVEN:   This Agreement may be revoked in whole or in part by either the Principal or the Agent by written notice to the other, whereupon the securities and other property as to which said revocation extends shall be delivered to the Principal or as the Principal shall direct in writing.

EIGHT:   All directions from the Principal to the Agent, including revocations, shall be in writing signed by the President of the Principal.  The Principal shall keep the Agent advised of the persons holding such offices, and the Agent is authorized to rely upon the last advice received.

WITNESS the due execution hereof the day and year aforesaid.

ALLEGHENY-SINGER RESEARCH INSTITUTE

ATTEST:                              By _____
                                                      President

_____
Asst. Secretary

MELLON BANK, N.A.

By _____
                Vice President

ATTEST:

_____
Trust Officer

-4-

CL 032057

SCHEDULE A


ALLEGHENY - SINGER RESEARCH INSTITUTE
NEUROSCIENCE RESEARCH ENDOWMENT

ACCOUNT NUMBER 042-462


$2,000,000 cash

CL 032058

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

AGENCY ACCOUNT

Mellon Agency No. 40-102 → 042-429

ACCT. NOS.: ASSET 7-200-743    INCOME 483-849    ACCRUED RECEIVABLE 6-136-040
EQUITY 7-660-743    MEMO 799-030

COMMENCEMENT DATE:    July 17, 1942

PERIOD (LIFE) OF FUND:

AMOUNT OF FUND:    Estimated Annual Income $13,000

LOCATION OF FUND:    Mellon National Bank & Trust Company

ESTABLISHED BY:

ADMINISTERED BY:    Mellon Trust Department

PURPOSE OF FUND:

SPECIAL PROVISIONS:

TYPE: Principal-    X    Restricted    _____ Unrestricted

Income-    X    Restricted    _____ Unrestricted

105-40

CL 032059

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

DR. WILLIAM T. MITCHELL, JR. &
ELSIE BREESE MITCHELL

Union Trust No. ~~1192~~ 019-503

ACCT. NOS.: ASSET 7-200-743    INCOME 483-849    ACCRUED RECEIVABLE 8-136-040

EQUITY 7-660-740    MEMO 799-030

COMMENCEMENT DATE:    December 23, 1959

PERIOD (LIFE) OF FUND:

AMOUNT OF FUND:    Estimated Annual Income $4,400

LOCATION OF FUND:    Union National Bank of Pittsburgh

ESTABLISHED BY:

ADMINISTERED BY:    Union National Bank of Pittsburgh

PURPOSE OF FUND:

SPECIAL PROVISIONS:

TYPE:  Principal-  ___X___  Restricted    _____ Unrestricted

       Income-    ___X___  Restricted    _____ Unrestricted

105-40

CL 032060

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND  TRUSTS INVESTMENT FUND

MARGUERITE SINGER MILLIGAN

Mellon Trust No. 500-014

ACCT. NOS.: ASSET 7-200-743    INCOME 483-849    ACCRUED RECEIVABLE  136-040
EQUITY 7-660-744       MEMO   799-030
COMMENCEMENT DATE:  July 6, 1915

PERIOD (LIFE) OF FUND:

AMOUNT OF FUND:   Estimated Annual Income $10,000

LOCATION OF FUND:   Mellon National Bank & Trust Company

ESTABLISHED BY:

ADMINISTERED BY:   Mellon Trust Department

PURPOSE OF FUND:

SPECIAL PROVISIONS:

TYPE: Principal-    X    Restricted            Unrestricted
Income-    X    Restricted            Unrestricted

105-40                                                    CL 032061

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

G. HARTON SINGER

Mellon Trust No. 500-018

ACCT. NOS.: ASSET 7-200-743    INCOME 483-849    ACCRUED RECEIVABLE & 136-040
            EQUITY 7-660-745    MEMO 799-030
COMMENCEMENT DATE:    June 12, 1924

PERIOD (LIFE) OF FUND:

AMOUNT OF FUND:    Estimated Annual Income $8,000

LOCATION OF FUND:    Mellon National Bank & Trust Company

ESTABLISHED BY:

ADMINISTERED BY:    Mellon Trust Department

PURPOSE OF FUND:

SPECIAL PROVISIONS:

TYPE:  Principal-    __X__    Restricted    _____ Unrestricted

       Income-    __X__    Restricted    _____ Unrestricted

105-40

CL 032062

ALLEGHENY GENERAL HOSPITAL

ENDOWMENTS AND TRUSTS INVESTMENT FUND

CHARLOTTE O. SINGER

Pittsburgh National Trust No. 8403-2

ACCT. NOS.: ASSET 7-200-743    INCOME  483-849    ACCRUED RECEIVABLE 3-136-040
            EQUITY 7-660-747    MEMO  799-030
COMMENCEMENT DATE:    July 15, 1924

PERIOD (LIFE) OF FUND:

AMOUNT OF FUND:    Estimated Annual Income $3,000

LOCATION OF FUND:    Pittsburgh National Bank

ESTABLISHED BY:

ADMINISTERED BY:    Pittsburgh National Trust Department

PURPOSE OF FUND:

SPECIAL PROVISIONS:

TYPE: Principal-    X    Restricted    _____ Unrestricted

      Income-    X    Restricted    _____ Unrestricted

105-40

CL 032063

Attachment A

ALLEGHENY HEALTH SERVICES AND ITS AFFILIATES

STATEMENT OF INVESTMENT GUIDELINES

FOR

CHARITABLE CARE ENDOWMENT

DATED:   June 26, 1990
(Revised with
Board Comments)

CL 032064

## TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . 1

    A.  Purpose of the Charitable Care Endowment . . . . . . 1

    B.  Historical Relationships and Returns . . . . . . . . 1

    C.  Investment Goals  . . . . . . . . . . . . . . . . . 2

RECOMMENDED POLICY. . . . . . . . . . . . . . . . . . . . 3

    A.  Statement of Income Policy . . . . . . . . . . . . 3

    B.  Statement of Principal Policy. . . . . . . . . . . 3

    C.  Statement of Investment Discretion . . . . . . . . 3

    D.  Other Investment Guidelines and Definitions. . . . . 3

        1.  Types of Securities. . . . . . . . . . . . . . 3

        2.  Diversification. . . . . . . . . . . . . . . . 4

        3.  Quality. . . . . . . . . . . . . . . . . . . . 4

        4.  Prohibited Investments . . . . . . . . . . . . 5

PERFORMANCE OBJECTIVES. . . . . . . . . . . . . . . . . . 6

    A.  Time Horizon . . . . . . . . . . . . . . . . . . . 6

    B.  Primary Objectives-Trailing Three-Year Time Horizon. 6

    C.  Secondary Objectives - Trailing One-Year Horizon . . 7

COMMUNICATIONS. . . . . . . . . . . . . . . . . . . . . . 8

    A.  Statements, Reports, and Meetings. . . . . . . . . 8

    B.  Primary Contacts . . . . . . . . . . . . . . . . . 8

    C.  Dynamic Nature of Policy . . . . . . . . . . . . . 8

CL 032065

-1-

## INTRODUCTION

This Statement of Investment Guidelines will provide the framework for investing the Allegheny Health Services' (AHS) Charitable Care Endowment. This endowment is one in which Allegheny has complete discretion with respect to investment authority, selection of trustee, and selection of investment manager.

A.    **Purpose of the Endowment Funds**

The purpose of the Funds is to insure that the operating entities within the Allegheny system have resources readily available to secure their continued ability to provide adequate levels of healthcare services to the indigent. This endowment will be funded from the profits from Allegheny's for-profit entities, from all unrestricted gifts to the Allegheny system and from any Allegheny affiliate who has excess revenues over expenses and wishes to direct some portion of the excess as additional support to the Endowment. As such, the funds should be managed with a total return approach, which means that principal growth will be generated from dividends, interest and capital gains. The Fund's assets must be invested with the care, skill, and diligence that a prudent person would exercise to comply with the objectives outlined herein, the Investment Advisory Act of 1940, and all other governing statutes. The long-term goal is to maximize the Endowment benefits for AHS without undue risk.

B.    **Historical Relationships/Returns**

It is critical to have a clear picture of how asset classes have performed in the past and how they react to inflation in order to develop expected returns for the future.

Exhibit A details the historical returns and risk (volatility) of the asset classes for the past 63 years. Stocks have been, over time, the best performing asset class. However, they have also been the most volatile. Thus, a tradeoff emerges. Exhibit B demonstrates that over long horizons, stocks outperform other classes. Yet, over short time periods, stocks may provide negative returns, thereby creating substantial declines in value. Bonds, on the other hand, have provided historically lower returns, but offer a more consistent pattern of returns.

In Exhibit C, we simulate the interrelationships of asset mix and total return. By simulating specific asset structures over differing market conditions, one can see, firsthand, the investment implications. The end result of this exercise is the recommendation of a target allocation designed to maximize return and maintain the minimum risk levels the Funds will assume.

-2-

CL 032066

From the analysis, we conclude that the following long-term asset mix levels are appropriate:

| Section | Target | Range |
|---------|--------|-------|
| Equity | 70% | 60% to 80% |
| Fixed Income | 30% | 20% to 40% |
| Cash | 0% | 0% to 20% |

Rationale for the recommendation includes:

1. The recommended target mix produces an expected total return in excess of 10%, while maintaining an acceptable risk level, for a fund with no definitive income needs until the $10 million level is reached.

C.    Investment Goals

The primary investment goals are: (1) grow the principal of fund assets through a competitive return relative to capital market opportunities and (2) maintain a diversified portfolio mix of equities, fixed-income, and cash equivalent investments.

Success or failure in meeting these goals is largely determined by the Endowment's long-term asset mix strategy. To a significant degree, asset mix determines (1) expected return, (2) level of income, (3) risk or variability of returns, and (4) growth of principal.

CL 032067

-3-

## RECOMMENDED POLICY

**A.  Statement of Income Policy**

The Charitable Care Endowment will pay out up to 16% of the income earned annually, increasing to 80% of the income earned over a five-year period beginning July 1, 1990 at the specific request of the Allegheny Subsidiary.  If no requests are received, all income will be reinvested.

**B.  Statement of Principal Policy**

The principal target is to grow the assets through a competitive return relative to capital market opportunities.

**C.  Statement of Investment Discretion**

The investment manager has discretion to allocate assets and diversify holdings for the purpose of achieving target returns and managing risk exposure.  Within the constraints imposed by this document, the manager will have total discretion to manage the Fund's assets according to its professional judgment and fiduciary obligations.  Additionally, the manager is given broad responsibility to shift the Fund's asset commitment among industry sectors and individual securities to pursue opportunities presented by changes within the capital markets.

**D.  Other Investment Guidelines and Definitions**

**1.  Types of Securities**

**Equities** mean high-quality common stocks or equivalents.

**Fixed-Income** securities shall be represented by marketable debt issues of:

    U.S. Treasury or Agencies
    U.S. Domestic Corporations
    U.S. Domestic Banks or Other Financials Institutions

**Cash Equivalent** investments may be represented by any of the following:

    U.S. Treasury Bills
    U.S. Government Repurchase Agreements
    Money Market Funds
    Commercial Paper

CL 032068

-4-

## 2. Diversification

Equity Issues--The investment manager should diversify the equity section in an attempt to minimize the impact of substantial loss in any specific industry or issue. Therefore, no more than 5% of the equity section may be invested in any one company, valued at cost, and no more than 20% of the equity section may be invested in any one industry, valued at market. In addition, no more than 10% of the equity section may be invested in any one company, valued at market.

Fixed-Income Securities--The investment manager should also diversify the fixed-income section of the Fund within the quality and maturity guidelines, outlined in the next section, in an attempt to minimize the adverse effects of interest rate fluctuations. Therefore, except for U.S. Treasury and Agency obligations, the fixed-income section may not contain more than 10%, valued at cost, of a given domestic issuer, regardless of the number of differing issues.

## 3. Quality

Equity Issues--There are no qualitative guidelines suggested with regard to equity ratings, rankings, etc., except that prudent standards should be developed and maintained by the investment manager. Convertible bonds will be considered as an equity investment and must be rated "Baa"/"BBB" or better by a recognized rating service (i.e. Moody's or Standard & Poor's).

Fixed-Income Securities--Bonds held in the portfolio must be rated investment grade ("Baa") or equivalent by the rating services. This guideline is intended to give the investment manager(s) sufficient latitude to periodically take advantage of yield spreads among various sectors. The average par-weighted quality shall be no less than 3.0 based on the following scale:

| | |
|---|---|
| U.S. Government and Agencies | 5.0 |
| Aaa Bonds | 4.0 |
| Aa Bonds | 3.0 |
| A Bonds | 2.0 |
| Baa Bonds | 1.0 |

The maturities of the bonds held in the portfolio are at the discretion of the investment manager. However, expected risk and return will be measured relative to the Shearson Lehman Government/Corporate Intermediate Bond Index.

CL 032069

-5-

<u>Cash Equivalent Vehicles</u>--If commercial paper is used for short-term investments, it must be of high quality, rated at least the equivalent of "A-1" or "P-1."

4.    <u>Prohibited Investments</u>

<u>Other Restricted Securities</u>--The following categories are not considered appropriate.

        Venture Capital
        Private Placements
        Unregistered or Restricted Stock
        Options and Futures, Except for Hedging
        Margin Trading
        Commodities
        Limited Partnerships
        Short Selling

CL 032070

-6-

## PERFORMANCE OBJECTIVES

Investment objectives are intended to provide quantifiable benchmarks against which the progress toward long-range investment goals can be measured. Primary and secondary objectives have been established.

Primary objectives are those which should be attained if the assets are to be considered well-invested. Well-invested implies that, within the framework of this investment policy, the assets are generating returns sufficient to indicate long-range goals will be met.

Secondary objectives are measured over a shorter time span than primary objectives. Secondary objectives can serve as an early indication of the progress toward meeting the more fundamental and more important primary objectives.

A. <u>Time Horizon</u>

Progress toward stated goals will be measured regularly; however, the investment manager may require a market cycle (three to five years) to fully implement its management style.

B. <u>Primary Objectives -- Trailing Three-Year Time Horizon</u>

- Total return requirements (annualized):

| Section | Benchmark | Expectation |
|---------|-----------|-------------|
| Total Fund | Target Index* | Exceed by 80 basis points |
| Equity | S&P 500 Stock Index | Exceed by 100 basis points |
| Fixed Income | Shearson Lehman Gov't./Corp. Intermediate Bond Index | Exceed by 25 basis points |

- Relative to other professionally managed accounts in the Yanni-Bilkey GRID Universe:

| Section | Y-B GRID Universe | Expectation |
|---------|-------------------|-------------|
| Total Fund | Balanced High Equity** | Top 40% |
| Equity | "        "        " | Top 40% |
| Fixed Income | "        "        " | Top 40% |

CL 032071

-7-

C.   <u>Secondary Objectives - Trailing One-Year Horizon</u>

Same as the primary objectives but measured on a one-year
trailing period.

\*An index constructed from a 70% weight in the S&P 500 and 30% in
the Shearson Lehman Government/Corporate Intermediate Bond Index.

\*\*Those portfolios whose equity allocation represents 55% - 75%
of the total assets.

CL 032072

-8-

## COMMUNICATIONS

AHS considers the ongoing process of understanding the investment manager's strategy and actions of primary importance. The manager should maintain complete, open, and timely communications with AHS at all times.

A.    <u>Statements, Reports, and Meetings</u>

The <u>Trustee/Custodian</u> of the Fund is expected to:

- Provide monthly statements of portfolio transactions and invested positions, by cost and market.

The <u>Investment Manager</u> is expected to:

- Attend a meeting semiannually to review investment activity and results. This appraisal should indicate the current portfolio strategy, as well as commentary on the outlook for the economy and capital markets.

The <u>Consultant</u> is expected to provide a quarterly review of investment activity and results presented in light of the appropriate standards set forth in this Statement of Investment Guidelines.

B.    <u>Primary Contacts</u>

**Allegheny Health Foundation**

Kathleen S. Wright

**Yanni-Bilkey Investment Consulting**

Terry Bilkey

**Investment Manager**

Barbara Robinson

C.    <u>Dynamic Nature of Policy</u>

It is understood that all parties have an obligation to report new trends or philosophies in investment management of Endowment Funds so that excellence in investment management will be maintained.

KSW/jmk
ENYBCHAR\DOC
Draft 5 - 6/21/90

CL 032073

# Return Comparison

## 1926 - 1989

| | Return | Risk |
|---|---|---|
| Stocks | 10.3% | 20.7% |
| Corporate Bonds | 5.1 | 8.4 |
| Long Government Bonds | 4.5 | 8.4 |
| T-Bills | 3.6 | 3.3 |
| Inflation | 3.8 | 4.8 |

YANNI-BILKEY 2300 Grant Building • Pittsburgh, Pennsylvania 15219 • (412) 232-1000 • FAX: (412) 232-1027

CL 032074



CL 032075



Risk/Return Tradeoff
Expected Five-Year Return

CL 032076



Date Prepared 5-11-94

Prepared by
(a) C.L.
(b) Client and
Exported to    BWC

Reviewed by
C.B.L. SHARP

AHERF
INVESTMENT GUIDELINES FOR CHARITY CARE
6-30-94

CL 032077

Attachment F

ALLEGHENY HEALTH SERVICES AND ITS AFFILIATES

STATEMENT OF INVESTMENT GUIDELINES

FOR

UNRESTRICTED ENDOWMENT FUNDS

DATED:  June 26, 1990

CL 032078

-1-

INTRODUCTION

This Statement of Investment Guidelines will provide the framework for investing the Allegheny Health Services' (AHS) Unrestricted Endowment Funds.  Unrestricted Endowment Funds are defined as those gift funds in which Allegheny has complete discretion with respect to investment authority, selection of trustee, and selection of investment manager.

A.    Purpose of the Endowment Funds

The purpose of the Funds is to provide for the continued operation and growth of the various charitable entities within the Allegheny system, in order that they are and continue to be able to carry out their charitable purposes. AHS Endowment disbursements and principal growth will be generated from dividends, interest, and capital gains.  As such, the funds should be managed with a total return approach.  The Fund's assets must be invested with the care, skill, and diligence that a prudent person would exercise to comply with the objectives outlined herein, the Investment Advisory Act of 1940, and all other governing statutes.  The long-term goal is to maximize the Endowment benefits for AHS without undue risk.

B.    Historical Relationships/Returns

It is critical to have a clear picture of how asset classes have performed in the past and how they react to inflation in order to develop expected returns for the future.

Exhibit A details the historical returns and risk (volatility) of the asset classes for the past 63 years. Stocks have been, over time, the best performing asset class.  However, they have also been the most volatile. Thus, a tradeoff emerges.  Exhibit B demonstrates that over long horizons, stocks outperform other classes.  Yet, over short time periods, stocks may provide negative returns, thereby creating substantial declines in value.  Bonds, on the other hand, have provided historically lower returns, but offer a more consistent pattern of returns.

In Exhibit C, we simulate the interrelationships of asset mix and total return.  By simulating specific asset structures over differing market conditions, one can see, firsthand, the investment implications.  The end result of this exercise is the recommendation of a target allocation designed to maximize return and maintain the minimum risk levels the Funds will assume.

From the analysis, we conclude that the following long-term asset mix levels are appropriate:

CL 032079

-3-

RECOMMENDED POLICY

**A.   Statement of Income Policy**

At this time, the Unrestricted Endowment Fund has no income requirements.  All income will be reinvested, except where the Board determines that income from the account should be used to support the charitable purposes of one of the operating units within the Allegheny system.

**B.   Statement of Principal Policy**

The principal target is to grow the assets through a competitive return relative to capital market opportunities.

**C.   Statement of Investment Discretion**

The investment manager has discretion to allocate assets and diversify holdings for the purpose of achieving target returns and managing risk exposure.  Within the constraints imposed by this document, the manager will have total discretion to manage the Fund's assets according to its professional judgment and fiduciary obligations.  Additionally, the manager is given broad responsibility to shift the Fund's asset commitment among industry sectors and individual securities to pursue opportunities presented by changes within the capital markets.

**D.   Other Investment Guidelines and Definitions**

   **1.   Types of Securities**

     **Equities** mean high-quality common stocks or equivalents.  Specific constraints include the avoidance of extremely volatile issues, as well as issues with limited marketability.

     **Fixed-Income** securities shall be represented by marketable debt issues of:

       U.S. Treasury or Agencies
       U.S. Domestic Corporations
       U.S. Domestic Banks or Other Financials
       Institutions

     **Cash Equivalent** investments may be represented by any of the following:

       U.S. Treasury Bills
       U.S. Government Repurchase Agreements
       Money Market Funds
       Commercial Paper

CL 032080