-4-

sell, convert, assign, convey, exchange, transfer and dispose of any and all such investments during the continuance of the trust hereby created.

In making investments and reinvestments, the Trustee is fully authorized and empowered to make the same in such manner as to it in its sole discretion shall seem fit and proper, it being the true intent and meaning hereof that said Trustee, in making such investments and reinvestments, shall be in no wise restricted or limited to such investments as under the laws of the United States of America or of Pennsylvania, or of any other State, are recognized or authorized as proper investments for trust funds; but on the contrary, such Trustee shall be at liberty to invest in and purchase stocks, bonds, securities or other personal property, interests or rights of any character, as to such Trustee, in its discretion, shall seem to be fit, proper, safe and wise investments.

## ARTICLE III.

The Trustee may, in its sole discretion, cause the securities which may from time to time comprise the trust fund, or any part thereof, to be registered in its name as Trustee hereunder, or in its own name, or in the name of its nominee, or to take and keep the same unregistered, and to retain them or any part thereof, in such condition that they will

-5-

pass by delivery.

## ARTICLE IV.

Said Trustee shall never be required to give bond or other security in pursuance of any power herein given, because of non-residence in any State or jurisdiction wherein it may be necessary to perform any act with reference to said trust estate.

## ARTICLE V.

The said Trustee is also authorized and empowered, in its discretion, to vote in person or by proxy on all stocks held by it or by said trust estate, to unite with other owners of similar property in carrying out any plan for the reorganization of any corporation, to exchange the securities of any corporation for others issued by the same or any other corporation, and to subscribe for and exercise any rights with reference to any stock of any corporation, on such terms as said Trustee shall deem proper, and generally to unite with other owners of similar property in carrying out any plan or plans which in the discretion of the Trustee shall seem to be for the best interests of said trust.

## ARTICLE VI.

Said Trustee is further fully authorized and empowered

-6-

to pay any and all assessments, subscriptions and other sums
of money as it may deem expedient or necessary for the pro-
tection of such trust estate, and its interests as holder
of any stocks, bonds or other securities of any such cor-
poration or company, and generally to exercise in respect
to all securities held by it or owned by said trust estate,
all the same rights, powers or privileges as are or may be
exercised by persons holding similar property in their own
right.

## ARTICLE VII.

Said Trustee is fully authorized and empowered to
manage and control the said trust estate and to exercise
all the powers necessary to that end.

## ARTICLE VIII.

All cash dividends and/or disbursements exceeding
ten percentum (10%) per annum which shall be distributed
by any corporation, and all stock dividends — that is,
dividends payable in stock in any corporation — which
shall be received by the Trustee hereunder, on account
of its ownership from time to time of any stock or secur-
ity, shall be considered by it as wholly a distribution of
principal or corpus and not as income, and as such shall

-7-

go to and become a part of the principal or corpus of said
trust estate.

## ARTICLE IX.

In case of securities taken or purchased for the trust
fund at a premium, the Trustee shall not be required to set
aside any part of the income thereof as a sinking fund to
retire or absorb such premium, or to make any other provision
for such depreciation in the value of the securities con-
stituting the trust fund by reason of the approaching matur-
ity of said securities or otherwise.  In case of the sale
of any securities of the trust fund at a premium or profit,
such premium or profit shall become a part of the corpus
and not income.

## ARTICLE X.

The Trustee is further fully authorized and empowered
from time to time to borrow such sum or sums of money as
may be necessary or required to pay taxes of any kind, to
pay subscription rights, and/or carry out any of the terms
of this agreement; to make, execute and deliver any note
or notes necessary for that purpose, and to pledge and hy-
pothecate such securities of the trust estate as may be
necessary or required to secure the payment of any money
so borrowed.

JMW*B
8/5/35
5

500-022

## DEED OF TRUST

### JOHN MARSHALL LOCKHART

### to

### THE UNION TRUST COMPANY OF PITTSBURGH, PENNSYLVANIA

THIS INDENTURE made as of the 5th day of August, 1935, between JOHN MARSHALL LOCKHART, a citizen of the Commonwealth of Pennsylvania and a resident of the City of Pittsburgh, Allegheny County, in said Commonwealth, party of the first part, and THE UNION TRUST COMPANY OF PITTSBURGH, a corporation of the State of Pennsylvania, having its principal office and place of business in the City of Pittsburgh, Allegheny County, Pennsylvania, hereinafter sometimes called the "Trustee", party of the second part.

WHEREAS, the party of the first part hereto desires to create a trust of the property and for the purposes hereinafter mentioned,

NOW, THEREFORE, THIS INDENTURE WITNESSETH: That in consideration of the premises, the mutual covenants herein contained, and of other good and valuable considerations, and of

- 1 -

JMW*B
8/5/35
5

the sum of One ($1.00) Dollar to him in hand paid by the party

of the second part at or before the ensealing and delivery of

these presents, the receipt whereof is hereby acknowledged, the

party of the first part has granted, conveyed, assigned, set

over and delivered, and by these presents does grant, convey,

assign, set over and deliver unto said party of the second part,

its successors and assigns, the property and securities item-

ized and described in a Schedule marked Schedule "A", hereto

attached and made a part hereof, as fully and effectually as if

it were set forth in this agreement, which schedule has been

identified by the signatures of the parties hereto.

TOGETHER with the appurtenances and all the estate,

right, title, interest, claim, demand and equity whatsoever of

the party of the first part thereto.

TO HAVE AND TO HOLD all and singular said property

and/or securities unto said party of the second part, its suc-

cessors and assigns, IN TRUST NEVERTHELESS, for and upon the

following uses, ends, intents and purposes, and under and sub-

ject to the terms, conditions, powers, limitations and agree-

ments hereinafter set forth:

### ARTICLE I

To take, receive, hold, manage, sell, exchange, in-

vest and reinvest the same and every part thereof, in the man-

- 2 -

JMW'B
8/5/35
5

ner hereinafter specified, and to collect, recover and receive
the rents, issues, interest, income and profits thereof, here-
inafter called "Income", and to pay, hold, apply and dispose
of the "Income" from time to time in the following manner:

(a) To the payment of commissions and compen-
sation of the Trustee, reasonable attorney fees and the pro-
per and necessary expenses in the administration of the trust.

(b) To pay to the ALLEGHENY GENERAL HOSPITAL, a
corporation established under the laws of the State of Penn-
sylvania, and to its lawful successor or successors forever,
the net income of said trust estate, said payments of income
to be made at least semi-annually.

## ARTICLE II

The Trustee is authorized and empowered to retain,
subject to the provisions hereof, any and all of the property
and securities herein turned over to it in their present form,
so long as it shall seem fit and proper so to do, or it may,
in its discretion, at any time or from time to time, change
the condition thereof by collecting or calling in the same or
any part thereof, or by selling, converting, assigning, ex-
changing, transferring, or in any other way disposing of the
same or any part thereof, at such price or prices, and upon
such terms as to it shall seem fit and proper, and the pro-

JMW B
8/5/35
5

ceeds thereof to invest and reinvest in any kind of property,
real or personal, and/or in mortgages, stocks, bonds and other
securities, corporate, public or private, with like power at
any time or from time to time to again change, collect, call
in, sell, convert, assign, convey, exchange, transfer and dis-
pose of any and all such investments during the continuance of
the trust hereby created.

In making investments and reinvestments, the Trustee
is fully authorized and empowered to make the same in such man-
ner as to it in its sole discretion shall seem fit and proper,
it being the true intent and meaning hereof that said Trustee,
in making such investments and reinvestments, shall be in no
wise restricted or limited to such investments as under the
laws of the United States of America or of Pennsylvania, or of
any other State, are recognized or authorized as proper invest-
ments for trust funds; but on the contrary, such Trustee shall
be at liberty to invest in and purchase any kind of property,
real or personal, stocks, bonds, securities or other personal
property, interests or rights of any kind and character, as to
such Trustee, in its discretion, shall seem to be fit, proper,
safe and wise investments.

## ARTICLE III

The Trustee may, in its sole discretion, cause the
securities which may from time to time comprise the trust fund,
or any part thereof, to be registered in its name as Trustee

- 4 -

JMW'B
8/5/35
5

hereunder, or in its own name, or in the name of its nominee, and need not add any words showing the fiduciary character of itself or such nominee, or to take and keep the same unregistered, and to retain them or any part thereof, in such condition that they will pass by delivery.

## ARTICLE IV

Said Trustee shall never be required to give bond or other security in pursuance of any power herein given, because of non-residence in any State or jurisdiction wherein it may be necessary to perform any act with reference to said trust estate.

## ARTICLE V

The said Trustee is also authorized and empowered, in its discretion, to vote in person or by proxy on all stocks held by it or by said trust estate, to unite with other owners of similar property in carrying out any plan for the reorganization of any corporation, to exchange the securities of any corporation for others issued by the same or any other corporation, and to subscribe for and exercise any rights with reference to any stock or securities of any corporation, on such terms as said Trustee shall deem proper, and generally to unite with other owners of similar property in carrying out any plan or plans which in the discretion of the Trustee shall seem to be for the best interests of said trust.

- 5 -

JMW·B
8/5/35
5

## ARTICLE VI

Said Trustee is further fully authorized and empowered to pay any and all assessments, subscriptions and other sums of money as it may deem expedient or necessary for the protection of such trust estate, and its interests as holder of any stocks, bonds or other securities of any such corporation or company, and generally to exercise in respect to all securities held by it or owned by said trust estate, all the same rights, powers or privileges as are or may be exercised by persons holding similar property in their own right.

## ARTICLE VII

Said Trustee is fully authorized and empowered to manage and control the said trust estate and to exercise all the powers necessary to that end.

## ARTICLE VIII

In case of securities taken or purchased for the trust fund at a premium, the Trustee shall not be required to set aside any part of the income thereof as a sinking fund to retire or absorb such premium, or to make any other provision for such depreciation in the value of the securities constituting the trust fund by reason of the approaching maturity of said securities or otherwise.  In case of the sale of any securities of the trust fund at a premium or profit, such

JMW 'B
8/5/35
5

premium or profit shall become a part of the corpus and not income.

## ARTICLE IX

The Trustee is further fully authorized and empowered from time to time to borrow such sum or sums of money as may be necessary or required to pay taxes of any kind, to pay subscription rights, and/or carry out any of the terms of this agreement; to make, execute and deliver any note or notes necessary for that purpose, and to pledge and hypothecate such securities of the trust estate as may be necessary or required to secure the payment of any money so borrowed.

## ARTICLE X

The party of the first part hereby irrevocably transfers to the Trustee for the purposes herein set forth, all his right, title, claim and interest of any kind whatsoever in and to the property and securities hereby turned over and the income therefrom, and has and by these presents does divest himself of all interest and title thereto.  This trust as hereby constituted with respect to disposition both of income and corpus in whole or in part is irrevocable and no power to alter, modify, revoke or amend the same in any respect is retained by the party of the first part or by the Trustee.  Neither the party of the first part nor his estate shall ever be a beneficiary of the corpus or income of said

- 7 -

**EXHIBIT  4123**

## AHERF
## 06/30/97

**Working Paper Name:**    City Avenue Hospital Opening Balance Sheet Analysis
**Working Paper Reference:**    🖹0026-401
**Working Paper Type 🗎:**    Created in Notes

| Account | Work Performed |
|---|---|
| Cash Concentration 1001100 | C&L traced and agreed 6/30/97 balance to the CoreStates bank Statement dated 6/30/97. Per Sam Yanez, this account has been ZBA'd, and is no longer in use. |
| A/R | Please see W/P 26-403 🖹 |
| PP&E | See valuations. |
| Trade A/P 4101001 | Per Sam Yanez, this account is used for the trade A/P in the City Avenue system. This is now being converted into AHERF's ESI system. Therefore, the balance has decreased by $1.9 million since the date from 5/1/97 to 6/30/97 C&L performed detail testing of A/P as part of its's year end audit procedures. See W/P 71-1 🖹 for detail testing |
| Accrued A/P 4102000 | Per Sam Yanez,s this amount represents A/P item that have not been entered into the A/P system as of the acquisition date. City Avenue was extremely behind in entering the invsoices into the A/P sytstem. Therefore, the balance in the account has decreased by $1.9 million from 5/1/97 to 6/30/97. |
| Current Portion of LOC 4400000 | Per Sam Yanez, this Line of Credit was used by City Avenue for everyday cash needs. Transactions were initiated daily to either borrow from or pay down the line of credit. This credit line was paid off in June. |
| C/P Pre 11/95 Wor.Com.TR 4310002 | C&L traced and agreed 4/30/97 account balance to the detail account analysis, noting no unusual items, or exceptions. |
| Noncurr Liab. Malp. 532000 | C&L traced and agreed 4/30/97 account balance to the detail account analysis, noting no unusual items, or exception |
| LT Loan - PCOM 5509150 | Per Sam Yanez, this loan is the amount owed for the Purchase of City Ave. from the Phialadelphia College of Osteopathic Medicine. C&L traced and agreed amount to the amortization schedule and the imputed interest calculation. No exception noted. |

CL 013039

EXHIBIT

4123

PENGAD 800-631-6989

| Purchase Price Adjustments (Goodwill) 2501900 | Net Loss before coming into SDN (10/31/96)..........................$12548<br>Additioinal bad debt reserve ....................................................$8,000<br>Net Loss from 10/31/96 - 4/30/97(prior to coming into AHERF.......$10,083<br>Purchase Price Adj @ 5/1/97.....................................................$30,631<br>Additional Bad Debt reserve for all payers..............................$699<br>Additional A/P Accrual............................................................$1,500<br>Goodwill Balance @ 6/30/97.....................................................$32,830<br>**66.1**<br><br>C&L traced and agreed the 10/31/96 balance and the 6/30/97 balance to the amortization schedule.  C&L examined the amortization schedule noting that the calculation appears to be reasonable. |
| | |



**Completed By:**      Anthony R. Carrabba      **Date:**   08/21/97 03:49:46 PM
**Last Modifed By:**   Christa L. Porter         **Date:**   09/10/97 04:31:14 PM

| ■ Request |  Christa L. Porter<br>Christa L. Porter |

| ■ |

**Modification History:**

| Christa L. Porter<br>Kristen Heinlein<br>Dana Bleckman<br>Anthony R. Carrabba |

CL 013040



0026-401 - City Avenue Hospital Opening Balance Sheet Analysis - S. - Lotus Notes

File   Edit   View   Create   Actions   Window   Help

| LT Loan - PCOM 5509150 | Per Sam Yanez, this loan is the amount owed for the Purchase of City Ave. from the Phialdelphia College of Osteopathic Medicine. C&L traced and agreed amount to the amortization schedule and the imputed interest calculation. No exception noted. |
|---|---|
| Purchase Price Adjustments (Goodwill) 2501900 | Net Loss before coming into SDN  (10/31/96)........................................$12548 Additional bad debt reserve ...............................................................$8,000 Net Loss from 10/31/96 - 4/30/97(prior to coming into AHERF.......$10,083 Purchase Price Adj @ 5/1/97................................................................$30,631 Additional Bad Debt reserve for all payers.........................................$699 |

AHERF management analyzed the bad debt allowance as of 4/30/97, and decided that additional reserve was needed for all third party payers. The A/R reserve percentages are consistent with the monthly bad debt reserve calculations. Refer to to the A/R bad debt reserve analysis on W/P 53-44

the amortization schedule. C&L examined the amortization schedule noting that the calculation appears to be reasonable.

1375 unread document(s) remaining          C&L Office

CL 013041



0026-301 - Parkview Opening Balance Sheet Analysis - S. - Lotus Notes

File  Edit  View  Create  Actions  Window  Help

5505150 | agreed amount to the amortization schedule and the imputed interest calculation. No exception noted.

| Purchase Price Adjustments<br><br>(Goodwill)<br>2501900 | [Amount in thousands]<br><br>Net Loss before coming into SDN (10/31/96).................$8,365<br>Additional bad debt reserve ..........................................$6,000 |

Prior experience with the Delaware Valley entities led to the $50 million reserve for bad debts. AHERF management believed that when the DV entities were brought into the AHERF system, the entities did not have sufficient reserves on their books for bad debts. Therefore, management wanted to have sufficient reserves for The Graduate Hospitals when they were brought into AHERF. AHERF management discussed this decision with the C&L partner who agreed that a reserve should be established.

the amortization schedule. C&L examined the amortization schedule noting that the calculation appears to be reasonable.

C&L Office

CL 013042



CL 013043

**EXHIBIT  4124**

# AHERF
## 06/30/97

**Working Paper Name:**     City Avenue Hospital Opening
Balance Sheet Analysis
**Working Paper Reference:**     ▯0026-401
**Working Paper Type ▯:**     Created in Notes

| Account | Work Performed |
|---|---|
| Cash Conce ntrati on 1001 100 | C&L traced and agreed 6/30/97 balance to the CoreStates bank Statement dated 6/30/97. Per Sam Yanez, this account has been ZBA'd, and is no longer in use. |
| A/R | |
| PP& E | |
| Trade A/P 4101 001 | Per Sam Yanez, this account is used for the trade A/P in the City Avenue system. This is now being converted into AHERF's ESI system. Therefore, the balance has decreased by $1.9 million since the date from 5/1/97 to 6/30/97 |
| Accru ed A/P 4102 000 | Per Sam Yanez,s this amount represents A/P item that have not been entered into the A/P system as of the acquisition date. City Avenue was extremely behind in entering the invsoices into the A/P sytstem. Therefore, the balance in the account has decreased by $1.9 million from 5/1/97 to 6/30/97. |
| Curre nt Portio n of LOC 4400 000 | Per Sam Yanez, this Line of Credit was used by City Avenue for everyday cash needs. Transactions were initiated daily to either borrow from or pay down the line of credit. This credit line was paid off in June. |
| C/P Pre 11/9 | C&L traced and agreed 4/30/97 account balance to the detail account analysis, |



PENGAD 800-631-6989

**EXHIBIT**

4124

**JD-HIPKISS CLASS DISK**

| | |
|---|---|
| 5 Wor.C om.T R 4310 002 | noting no unusual items, or exceptions. |
| Nonc urr Liab. Malp. 5320 00 | C&L traced and agreed 4/30/97 account balance to the detail account analysis, noting no unusual items, or exception |
| LT Loan PCOM 5509 150 | Per Sam Yanez, this loan is the amount owed for the Purchase of City Ave. from the Phialdelphia College of Osteopathic Medicine. C&L traced and agreed amount to the amortization schedule and the imputed interest calculation. No exception noted. |
| Purch ase Price Adjust ments (Good will) 2501 900 | Net Loss before coming into SDN (10/31/96).....................................$1254 8<br>Additioinal bad debt reserve for DV A/R..............................................$8,000<br>Net Loss from 10/31/96 - 4/30/97(prior to coming into AHERF.......$10,083<br>Purchase Price Adj @ 5/1/97......................................................$30,631<br>Additional Bad Debt reserve for all payers................................................$699<br>Additional A/P Accrual.......................................................$1,500<br>Goodwill Balance @ 6/30/97.......................................$32,830<br><br>C&L traced and agreed the 10/31/96 balance and the 6/30/97 balance to the amortization schedule. C&L examined the amortization schedule noting that the calculation appears to be reasonable. |

JD-HIPKISS CLASS DISK



**Completed By:**                                    **Date:**

**Last Modified By:**        Anthony R. Carrabba        **Date:**
                            08/13/97 10:03:56 AM

☐ Reviewed

☐ Mark for Deletion

**Modification History:**

Anthony R. Carrabba

**JD-HIPKISS CLASS DISK**

**EXHIBIT  4126**

# AHERF
## 06/30/97

**Working Paper Name:**    Parkview Opening Balance
Sheet Analysis
**Working Paper Reference:**    📄0026-301
**Working Paper Type ▯:**    Created in Notes

---

**Account**
**Work Performed**

| | |
|---|---|
| A/R | |
| PP&E | |
| Prepaid Rent 2501 005 | Per Sam Yanez, this $2.5 million represents a deposit for the building.  It will be refunded upon termination of the lease.  C&L agreed the $2.5 million to a copy of the lease ( Page 15 paragraph F) noting no exceptions.  **66-1** |
| Accrued A/P 4102 000 | Per Sam Yanez, this amount represents an accrual for transactions that did not make it into Parkview's A/P system at the time of the acquisition.  Parkview was extremely backlogged with invoices that needed to be entered into the A/P system.  This balance has decreased significantly due to converting Parkview's system over to the ESI system at AHERF. |
| Current Portion of LOC 4400 000 | Per Sam Yanez, this Line of Credit was used by Parkview for everyday cash needs.  Transactions were initiated daily to either borrow from or pay down the line of credit.  This credit line was paid off in June. |
| Malp Liab. 5320 000 | Per Sam Yanez, this amount was transferred to AHERF and taken off the books of Parkview, subsequent to the date of acquisition |
| L/T Loan PCOM | Per Sam Yanez, this loan is the amount owed for the Purchase of Parkview from the Phialdelphia College of Osteopathic |



JD-HIPKISS CLASS DISK

| | |
|---|---|
| 5509 150 | Medicine.  C&L traced and agreed amount to the amortization schedule and the imputed interest calculation.  No exception noted. |
| Purchase Price Adjustments (Goodwill) 2501 900 | Net Loss before coming into SDN (10/31/96)....................................$8,365 Additioinal bad debt reserve for DV A/R..............................................$8,000 Net Loss from 10/31/96 · 4/30/97(prior to coming into AHERF.......$10,625 Purchase Price Adj @ 5/1/97........................................... ..............$16,365 Additional Bad Debt reserve for all payers...............................................$900 Bad Debt reserve for Wise Choice Health Plan.......................................$258 Additional A/P Accrual....................................................... ...........................$1,500 Goodwill Balance @ 6/30/97........................................................ ................$29,648₆₆·₁  C&L traced and agreed the 10/31/96 balance and the 6/30/97 balance to the amortization schedule.  C&L examined the amortization schedule noting that the calculation appears to be reasonable. |
| | |



**Completed By:**                               **Date:**

**Last Modified By:**          Anthony R. Carrabba          **Date:**
                              08/11/97 06:04:01 PM

☐ Mark for Deletion

**Modification History:**

Anthony R. Carrabba

**EXHIBIT 4127**

**AHERF**
**06/30/97**

**Working Paper Name:**   Graduate Goodwill Entry
**Working Paper Reference:**   0026-801
**Working Paper Type :**   OLE, Prepared by Client

Graduate System Restructuring

 Completed

**Completed By:**   Kristen Heinlein       **Date:**   08/21/97 08:45:28 AM
**Last Modified By:**   Christa L. Porter       **Date:**   09/10/97 04:31:14 PM

| Reviewer | Christa L. Porter |
|---|---|

| Mark for Deletion |
|---|

**Modification History:**

Christa L. Porter
Kristen Heinlein
Anthony R. Carrabba
Dana Bleckman



EXHIBIT
4127

Graduate System Restructuring
C:\CL.DATA\123\WORK\FILE0001.WK4
05-Oct-98

| Description Acct. Nos. | Other 2501900 | 10/31 2501900 | 04/30 2501900 | Total 2501900 | 10/31 2501901 | 04/30 2501901 | Total 2501901 | 4205001 | 8011101 | Other | Other G.S_R | Check |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **GRADUATE** | | | | | | | | | | | | |
| Adjustment to other L/T assets | (2,009,000)A | | | (2,009,000) | | | | | 2,009,000 | | | 0 |
| Record bad debt allowance | | 20,000,000 B | | 20,000,000 | | | | | | (20,000,000) | 1,420,240 | 0 |
| Technology & for-profit (L/T) | | 7,200,000 C | | 7,200,000 | | | | | | (7,200,000) | 3,205,513 | 0 |
| Estimate of AMS runout | | 5,000,000 D | | 5,000,000 | | | | (5,000,000) | | | | 0 |
| Technology & for-profit - pad | | 4,400,000 C | | 4,400,000 | | | | | | (4,400,000) | 1,001,100 | 0 |
| Technology & for-profit (S/T) | | 2,400,000 C | | 2,400,000 | | | | | | (2,400,000) | 4,205,513 | 0 |
| Capitalize Negative Equity | | | 21,864,845 E | 21,864,845 | | | | | (21,864,845) | | | 0 |
| Contingent Liab. Reserve | | | 5,000,000 F | 5,000,000 | | | | | (5,000,000) | | | 0 |
| Transfer of SSMOB | | | 2,109,271 | 2,109,271 | | | | | | (2,109,271) | | 0 |
| Discount GHS Note Rec. | | | 1,758,053 | 1,758,053 | | | | | | (1,758,053) | 2,001,121 | 0 |
| Additional WC Liability | | | 1,300,000 I | 1,300,000 | | | | | | (1,300,000) | | 0 |
| Correct Grant Activity | | | 348,553 P | 348,553 | | | | | | (348,553) | | 0 |
| Addl. Physician Reserves | | | 300,708 J | 300,708 | | | | | | (300,708) | | 0 |
| GHS receivable (S/T) | | | | 0 | | | | | (5,000,000)H | 5,000,000 | 1,390,991 | 0 |
| GHS cash received | | | | 0 | | | | | (10,000,000)H | 10,000,000 | 2,001,100 | 0 |
| GHS receivable (L/T) | | | | 0 | | | | | (10,000,000)H | 10,000,000 | 2,001,120 | 0 |
| Adjustment to PP&E balances | | | | 0 | | | | | 88,608,000 | (88,608,000) | 2,310,990 | 0 |
| | (2,009,000) | 39,000,000 | 32,881,430 | 69,872,430 66.1 | | | | (110,000,000) | 43,752,155 | (103,424,585) | | 0 |
| | | | | | | | | | | | | |
| Amortization | | | Q | | | | | | | | | |
| Nov 96 | | | | | (92,857) 1 | | (92,857) 1 | | | 92,857 | 8,501,900 | 0 |
| Dec 96 | | | | | (92,857) 1 | | (92,857) 1 | | | 92,857 | 8,501,900 | 0 |
| Jan 97 | | | SUM 1 = | (898,482) 66. | (92,857) 1 | | (92,857) 1 | | | 92,857 | 8,501,900 | (898,482) |
| Feb 97 | | | | | (92,857) 1 | | (92,857) 1 | | | 92,857 | 8,501,900 | 0 |
| Mar 97 | | | | | (92,857) 1 | | (92,857) 1 | | | 92,857 | 8,501,900 | 0 |
| Apr 97 | | | | | (92,857) 1 | | (92,857) 1 | | | 92,857 | 8,501,900 | 0 |
| May 97 | | | | | (92,857) 1 | (77,813) 1 | (170,670) 1 | | | 170,670 | 8,501,900 | 0 |
| Jun 97 | | | | | (92,857) 1 | (77,813) 1 | (170,670) 1 | | | 170,670 | 8,501,900 | 0 |
| FY 1998 - 2031 | | | | | (37,865,656) | (31,747,704) | 69,633,360 | | | 69,633,360 | 8,501,900 | 0 |
| Jul 2031 | | | | | (92,857) | (77,813) | (170,670) | | | 170,670 | 8,501,900 | 0 |
| Aug 2031 | | | | | (92,857) | (77,813) | (170,670) | | | 170,670 | 8,501,900 | 0 |
| Sep 2031 | | | | | (92,857) | (77,813) | (170,670) | | | 170,670 | 8,501,900 | 0 |
| Oct 2031 | | | | | (92,917) | (77,813) | (170,730) | | | 170,730 | 8,501,900 | 0 |
| Nov 2031 | | | | | | (77,813) | (77,813) | | | 77,813 | 8,501,900 | 0 |
| Dec 2031 | | | | | | (77,813) | (77,813) | | | 77,813 | 8,501,900 | 0 |
| Jan 2032 | | | | | | (77,813) | (77,813) | | | 77,813 | 8,501,900 | 0 |
| Feb 2032 | | | | | | (77,813) | (77,813) | | | 77,813 | 8,501,900 | 0 |
| Mar 2032 | | | | | | (77,813) | (77,813) | | | 77,813 | 8,501,900 | 0 |
| Apr 2032 | | | | | | (77,783) | (77,783) | | | 77,783 | 8,501,900 | 0 |
| | | | | (39,000,000) | (32,881,430) | (71,881,430) | | | | 71,881,430 | | (898,482) |

Graduate System Restructuring
C:\CLDATA\123\WORKFILE0006.WK4
14-Oct-98

| Description | Other 25Q1900 | 10/31 25Q1900 | 04/30 25Q1900 | Total 25Q1900 | 10/31 25Q1901 | 04/30 25Q1901 | Total 25Q1901 | 4205Q1 | 6011101 | Other | Other G/L # | Check |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mt. SINAI | | | | | | | | | | | | |
| Adjustment to other U/T assets | 19,663,000 A | | | 19,663,000 | | | | | (19,663,000) | | | 0 |
| Writedown of PP&E | 12,730,033 N | | | 12,730,033 | | | | | | (12,730,033) | 2,310,910 | 0 |
| Record bad debt allowance | 5,000,000 B | | | 5,000,000 | | | | | | (5,000,000) | 1,420,140 | 0 |
| Estimate of shutdown | 3,000,000 K | | | 3,000,000 | | | | (3,000,000) | | | | 0 |
| Record CRA liability | 2,899,813 L | | | 2,899,813 | | | | | | (2,899,813) | 1,240,197 | 0 |
| Estimate of AMS runout | 1,500,000 D | | | 1,500,000 | | | | (1,500,000) | | | | 0 |
| Capitalize Negative Equity | | | 5,729,904 I | 5,729,904 | | | | | (5,729,904) | | | 0 |
| Severance Liability | | | 5,500,000 M | 5,500,000 | | | | (5,500,000) | | | | 0 |
| Contingent Liab Reserve | | | 2,000,000 F | 2,000,000 | | | | (2,000,000) | | | | 0 |
| Adjustment to PP&E balances | | | | 0 | | | | (12,000,000) | (10,684,000) | (38,076,904) | 10,684,000 | 2,310,950 | 0 |
| | 0 | 44,592,846 | 13,229,904 | 57,822,750 86.1 | | | | (12,000,000) | (38,076,904) | (9,745,846) | | |

| | | | | | 10/31 | 04/30 | Total | | | Other | Other | Check |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Nov 96 | | SUM 1 = | (912,384) | (106,173) | | (106,173) 1 | | | 106,173 | 8,501,900 | (912,384) |
| Dec 96 | | 86.1 | (886,194) | (106,173) | | (106,173) 1 | | | 106,173 | 8,501,900 | (886,194) |
| Jan 97 | | Differnce | (26,190) | (106,173) | | (106,173) 1 | | | 106,173 | 8,501,900 | (26,190) |
| Feb 97 | | | | (106,173) | | (106,173) 1 | | | 106,173 | 8,501,900 | 0 |
| Mar 97 | | | | (106,173) | | (106,173) 1 | | | 106,173 | 8,501,900 | 0 |
| Apr 97 | | | | (106,173) | | (106,173) 1 | | | 106,173 | 8,501,900 | 0 |
| May 97 | | | | (106,173) | (31,500) | (137,673) 1 | | | 137,673 | 8,501,900 | 0 |
| Jun 97 | | | | (106,173) | (31,500) | (137,673) 1 | | | 137,673 | 8,501,900 | 0 |
| FY 1998 - 2031 | | | | (43,318,584) | (12,852,000) | (56,170,584) | | | 56,170,584 | 8,501,900 | 0 |
| Jul 2031 | | | | (106,173) | (31,500) | (137,673) | | | 137,673 | 8,501,900 | 0 |
| Aug 2031 | | | | (106,173) | (31,500) | (137,673) | | | 137,673 | 8,501,900 | 0 |
| Sep 2031 | | | | (106,173) | (31,500) | (137,673) | | | 137,673 | 8,501,900 | 0 |
| Oct 2031 | | | | (106,359) | (31,500) | (137,859) | | | 137,859 | 8,501,900 | 0 |
| Nov 2031 | | | | | (31,500) | (31,500) | | | 31,500 | 8,501,900 | 0 |
| Dec 2031 | | | | | (31,500) | (31,500) | | | 31,500 | 8,501,900 | 0 |
| Jan 2032 | | | | | (31,500) | (31,500) | | | 31,500 | 8,501,900 | 0 |
| Feb 2032 | | | | | (31,500) | (31,500) | | | 31,500 | 8,501,900 | 0 |
| Mar 2032 | | | | | (31,500) | (31,500) | | | 31,500 | 8,501,900 | 0 |
| Apr 2032 | | | | | (30,433) | (30,433) | | | 30,433 | 8,501,900 | 0 |
| | | | | (44,592,846) | (13,228,933) | (57,821,779) | | | 57,821,779 | | (1,824,768) |

CL 013234

Graduate System Restructuring
C:\CLDATA\123\WORK\FILE0004.WK4
14-Oct-98

| Description | Other 2501900 | 10/31 2501900 | 04/30 2501900 | Total 2501900 | 10/31 2501901 | 04/30 2501901 | Total 2501901 | 6205001 | 6011101 | Other | Other G/L # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **RANCOCAS** | | | | | | | | | | | |
| Adjustment to other L/T assets | (669,000) A | | | (669,000) | | | | | 669,000 | | |
| Record bad debt allowance | | 9,000,000 B | | 9,000,000 | | | | | | (9,000,000) | 1,420,140 |
| Writedown of PP&E | | 4,000,000 C | | 4,000,000 | | | | | | (4,000,000) | 2,310,910 |
| Estimate of AMS runout | | 2,000,000 D | | 2,000,000 | | | | (2,000,000) | | | |
| Estimate of shutdown | | 1,000,000 X | | 1,000,000 | | | | (1,000,000) | | | |
| Contingent Liab. Reserve | | | 3,000,000 F | 3,000,000 | | | | (3,000,000) | | | |
| Capitalize Negative Equity | | | 1,281,525 E | 1,281,525 | | | | | (1,281,525) | | |
| Adjustment to PP&E balances | | | 0 | | | | | | 6,643,000 | (6,643,000) | 2,310,950 |
| | (669,000) | 16,000,000 | 4,281,525 | 19,612,525 66.1 | | | | (6,000,000) | 6,030,475 | (19,643,000) | |
| Jan 97 | | | | | (38,095) 1 | | (38,095) | | | 38,095 | 8,501,900 |
| Feb 97 | | | | | (38,095) 1 | | (38,095) | | | 38,095 | 8,501,900 |
| Mar 97 | | SUM 1 = | (248,958) | | (38,095) 1 | | (38,095) | | | 38,095 | 8,501,900 |
| Apr 97 | | | | | (38,095) 1 | | (38,095) | | | 38,095 | 8,501,900 |
| May 97 | | | | | (38,095) | (10,194) | (48,289) | | | 48,289 | 8,501,900 |
| Jun 97 | | | | | (38,095) | (10,194) | (48,289) | | | 48,289 | 8,501,900 |
| Jul 97 | | | | | (38,095) | (10,194) | (48,289) | | | 48,289 | 8,501,900 |
| Aug 97 | | | | | (38,095) | (10,194) | (48,289) | | | 48,289 | 8,501,900 |
| Sep 97 | | | | | (38,095) | (10,194) | (48,289) | | | 48,289 | 8,501,900 |
| Oct 97 | | | | | (38,095) | (10,194) | (48,289) | | | 48,289 | 8,501,900 |
| Nov 97 | | | | | (38,095) | (10,194) | (48,289) | | | 48,289 | 8,501,900 |
| Dec 97 | | | | | (38,095) | (10,194) | (48,289) | | | 48,289 | 8,501,900 |
| FY 1998 - 2031 | | | | | (15,542,860) | (4,159,152) | (19,702,012) | | | 19,702,012 | 8,501,900 |
| Jan 2032 | | | | | | (10,194) | (10,194) | | | 10,194 | 8,501,900 |
| Feb 2032 | | | | | | (10,194) | (10,194) | | | 10,194 | 8,501,900 |
| Mar 2032 | | | | | | (10,194) | (10,194) | | | 10,194 | 8,501,900 |
| Apr 2032 | | | | | | (10,239) | (10,239) | | | 10,239 | 8,501,900 |
| | | | | | (16,000,000) | (4,281,525) | (20,281,525) | | | 20,281,525 | |

CL 013235