UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS, LLP, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 00-684 <br><br> Judge David Stewart Cercone |

**APPENDIX TO THE COMMITTEE'S RESPONSE TO PwC'S STATEMENT OF
UNDISPUTED AND MATERIAL FACTS UNDER LOCAL RULE 56.1(C)(1)**

VOLUME 11

James M. Jones (PA #81295)
Laura E. Ellsworth (PA #39555)
Laura A. Meaden (PA #52002)
JONES DAY
500 Grant Street, 31st Floor
Pittsburgh, PA  15219

Richard B. Whitney
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114

Attorneys for Plaintiff The Official Committee
of Unsecured Creditors of AHERF

July 11, 2005

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 00-684 |
| v. | ) ) ) | Judge David Stewart Cercone |
| PRICEWATERHOUSECOOPERS, LLP, | ) ) | |
| Defendant. | ) | |

## DECLARATION OF D. PAUL REGAN

I, D. Paul Regan, hereby depose and state as follows:

1. I am over the age of 18. I have personal knowledge of, and am competent to testify about, the matters set forth herein.

2. I have been retained by the Plaintiff to serve as an expert witness, offering expert opinion testimony, in the above-captioned matter. I am submitting this Declaration in support of the Plaintiff's opposition to Defendant's Motion For Summary Judgment in the above matter.

3. Attached hereto are true and correct copies of the expert reports that I prepared in connection with my engagement:

- the Expert Report of D. Paul Regan
- the Rebuttal Report D. Paul Regan
- the Supplemental Report of D. Paul Regan

4. If called to testify at trial, I would testify in a manner consistent with the opinions expressed in these expert reports.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 6, 2005 in San Francisco, California.

_____
D. Paul Regan

EXPERT REPORT

Of

D. PAUL REGAN, CPA, CFE


IN THE MATTER OF

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
ALLEGHENY HEALTH, EDUCATION
AND RESEARCH FOUNDATION,
PLAINTIFFS,


V.


PRICEWATERHOUSECOOPERS, LLP,
DEFENDANT.

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. THE NATURE OF MY ASSIGNMENT ........................................................................ 1

III. SUMMARY OF OPINIONS ............................................................................................ 2

IV. SUMMARY OF EXPERT QUALIFICATIONS ............................................................ 3

V. EVIDENCE CONSIDERED ............................................................................................ 4

VI. DISCUSSION OF OPINIONS ......................................................................................... 4

    A. BACKGROUND (PRESENTED AS OF JUNE 30, 1997) ............................................. 4

    B. RELEVANT ACCOUNTING AND AUDITING STANDARDS ................................. 6
        1   AICPA Code of Professional Conduct ........................................................... 6
        2   The Nature of Generally Accepted Accounting Principles ............................. 7
        3   The Nature of Generally Accepted Auditing Standards ................................ 10
        4   Materiality ..................................................................................................... 15

    C. PwC'S 1996 AUDIT .................................................................................................. 21
        1   Planning the Audit (For Fiscal Year 1996 and 1997) ................................. 21
        2   AHERF Irrevocable Trusts (Overstated Investment Income by $15.4 million) ............................. 24
        3   Reserve for Uncollectible Accounts was Materially Understated ................ 33
        4   Utilizing "Cushions" to Decrease the Reported Net Loss ........................... 56
        5   Improperly Recognized a Gain of $6.7 million on the IBM "Sale Leaseback" Transaction ......... 61
        6   Tort Settlements (Understated Expenses by $4.4 million) ........................... 62
        7   Violation of Debt Covenants (AGHOG Morgan Agreement) ....................... 65
        8   PwC's Failure to Comply with its Responsibilities for Communications with AHERF's Audit Committee ......................................................................... 69
        9   Summary of GAAS Violations for PwC's 1996 Audit ................................. 71

    D. PwC'S 1997 AUDIT .................................................................................................. 74
        1   Graduate Transfer of $50 million to DVOG Reserve for Uncollectible Accounts ......................... 74
        2   Graduate Transfers of $21.3 million ($20.1 million to DVOG Reserves for Uncollectible Accounts and $1.2 million to DVOG Other Assets) and $28.3 million to DVOG Contractual Allowance ..................................................................................................... 88
        3   AHERF Irrevocable Trusts (Overstated Investment Income by $55 million) ............................. 94
        4   Depreciation Recapture (Overstated Net Income by $7.1 million) ............. 97
        5   Other Revenue Adjustments (Overstated Net Income by $6.5 million) ..... 100
        6   Forbes Acquisition Reserves Recorded as "Cushions" .............................. 101
        7   Violation of Debt Covenant (AGH Morgan Agreement) ............................ 102
        8   Failure to Classify the Graduate Hospitals' Long-Term Debt as Current Liabilities ................. 104
        9   PwC's Failure to Comply with its Responsibilities for Communications with AHERF's Audit Committee ....................................................................... 109
        10  Summary of GAAS Violations for PwC's 1997 Audit ............................... 110

    E. SUMMARY OF SPECIFIC ITEMS DISCUSSED IN C AND D ABOVE: ................................. 113

Prepared in connection with litigation

## I. Introduction

The opinions expressed in this report and portions of the information presented in the accompanying exhibits are my present opinions subject to the following reservations: Amendments or additions to this report and the accompanying exhibits may be required as a result of developments prior to or at trial, including, but not limited to, the discovery of new evidence, expert discovery, the testimony of any other witness in deposition or at trial, and further analysis.

I anticipate using at trial selected exhibits attached to this report, documents reviewed in connection with their preparation, enhanced graphic versions of selected exhibits included in this report (i.e., redrafted to improve their presentation quality) and additional graphics illustrating concepts described in this report.

## II. The Nature of My Assignment

I have been retained, through my employer, Hemming Morse, Inc. ("HMI"), by Jones Day, counsel for The Official Committee of Unsecured Creditors of Allegheny Health, Education and Research Foundation ("AHERF"), to provide expert testimony regarding:

A. The compliance of the consolidated financial statements and the accompanying consolidating financial information of AHERF, the consolidated financial statements and the accompanying consolidating financial information of Allegheny General Hospital Obligated Group ("AGHOG"), the combined financial statements and the accompanying combining financial information of Delaware Valley Obligated Group ("DVOG"), the financial statements of Allegheny Integrated Health Group ("AIHG"), and the financial statements of Allegheny-Singer Research Institute ("ASRI") for the year ended June 30, 1996, with generally accepted accounting principles ("GAAP");

B. The compliance of Defendant PricewaterhouseCoopers LLP, the successor to Coopers & Lybrand LLP (hereinafter collectively referred to as "PwC"), with generally accepted auditing standards ("GAAS") in its audits of the consolidated financial statements and the accompanying consolidating financial information of AHERF, the consolidated financial statements and the accompanying consolidating financial information of AGHOG, the combined financial statements and the accompanying combining financial information of DVOG, the financial statements of AIHG, and the financial statements of ASRI for the year ended June 30, 1996;

C. The compliance of the consolidated financial statements and the accompanying consolidating and combining financial information of AHERF for the year ended June 30, 1997[1], with GAAP;

D. The compliance of Defendant PwC with GAAS in its audits of the consolidated financial statements and the accompanying consolidating and combining financial information of AHERF for the year ended June 30, 1997;

E. The consequences of the lack of compliance of the aforementioned financial statements and the accompanying consolidating and combining financial information for the years ended June 30, 1996 and 1997, with GAAP; and

F. The consequences of the lack of compliance by Defendant PwC with GAAS in its audits of the aforementioned financial statements and the accompanying consolidating and combining financial information for the years ended June 30, 1996 and 1997, including its awareness of material misstatements affecting the aforementioned financial statements.

## III. Summary of Opinions

A. The consolidated financial statements and the accompanying consolidating financial information of AHERF, the consolidated financial statements and the accompanying consolidating financial information of AGHOG, and the combined financial statements and the accompanying combining financial information of DVOG for the year ended June 30, 1996 contained material departures from GAAP.

B. PwC failed to conduct its audits of the consolidated financial statements and the accompanying consolidating financial information of AHERF, the consolidated financial statements and the accompanying consolidating financial information of AGHOG, and the combined financial statements and the accompanying combining financial information of DVOG for the year ended June 30, 1996 in accordance with GAAS.

C. The consolidated financial statements, and the accompanying consolidating and combining financial information of AHERF for the year ended June 30, 1997 contained material departures from GAAP.

---

[1] Effective for the year ended June 30, 1997, AHERF issued consolidated financial statements for AHERF, which included AGHOG and DVOG, and did not issue separate financial statements for AGHOG and DVOG. AHERF included supplementary consolidating and combining financial information for individual entities, obligated groups and divisions, in an effort to meet financial reporting obligations called for by debt agreements.

Page 2 of 114

Prepared in connection with litigation

D. PwC failed to conduct its audits of the consolidated financial statements, and the accompanying consolidating and combining financial information of AHERF for the year ended June 30, 1997 in accordance with GAAS.

E. The aforementioned 1996 and 1997 financial statements and the accompanying consolidating and combining financial information were materially misstated as a result of the inclusion therein of material departures from GAAP.

F. PwC failed to properly apply GAAS during its 1996 and 1997 audits. PwC was aware, or should have been aware, of material misstatements in those financial statements and the accompanying consolidating and combining financial information. Such failures, including the failure by PwC to communicate significant matters to AHERF's audit committee resulted in the inappropriate issuance by PwC of unqualified audit opinions on those financial statements.

## IV. Summary of Expert Qualifications

I am a Certified Public Accountant, licensed in the State of California, a Certified Fraud Examiner, and President and Chairman of Hemming Morse, Inc., CPAs, Litigation and Forensic Consultants, a 90 person accounting firm. I was the Director in charge of its litigation and forensic consulting practice for more than 29 years. My work in the accounting profession includes experience as an auditor and as a consultant. My expert qualifications, including my testimony in the last four years and the publications I have authored, are described in Exhibit A hereto.

I have been a certified public accountant for more than 30 years. During these years I have worked on more than 500 complex litigation matters. Many of these have required an extensive analysis and determination of generally accepted accounting principles ("GAAP") and generally accepted auditing standards ("GAAS"). I have performed these analyses for large and small companies in the private sector, as well as for various states and federal agencies (e.g. Federal Deposit Insurance Corporation, Resolution Trust Corporation, the Securities & Exchange Commission). These analyses have involved financial statements of entities across a diverse range of industries, including the healthcare industry. During this period I have testified as an expert in more than 50 trials and arbitrations and in more than 100 depositions. These cases were generally in state and federal courts.

I am a member of the California Society of Certified Public Accountants ("CalCPA"). I have served on its statewide Litigation Services Steering Committee since 1990 and I was its Chair during 2002 / 2004. This Steering Committee provides guidance to the more than 800 members of its four Operating Sections – (1) Business Valuation, (2) Economic Damages, (3) Fraud and (4) Family Law. For two and one-half years (through August of 1998), I was Chair of its 250

Prepared in connection with litigation