IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION,<br><br>                                    Plaintiff,<br><br>-against-<br><br>PRICEWATERHOUSECOOPERS LLP,<br><br>                                    Defendant. | Civil Action No. 00-684<br><br>Judge David Stewart Cercone |

### REPLY MEMORANDUM IN SUPPORT OF PwC'S MOTION TO PRECLUDE DUPLICATIVE AND UNRELIABLE EXPERT ACCOUNTING TESTIMONY

#### Preliminary Statement

In its opening memorandum, PwC demonstrated in detail the duplicative nature of the expert opinion evidence proffered by Mr. Berliner, Mr. Regan and Mr. Wallace. The Committee has responded with general denials, with attempts to change the subject, and with a plea that it not be called to account for this improper duplication yet.

The Committee's counter-arguments are without substance, and the interests of justice and efficiency will be best served by resolving this issue now.

#### Argument

**I.  MR. REGAN'S TESTIMONY IS NEEDLESSLY DUPLICATIVE OF THAT OF MR. BERLINER.**

PwC documented in its opening memorandum, with line-by-line citations to the record, that Mr. Regan's proposed opinions as set forth in his initial report

mirror—or are a subset of—those of Mr. Berliner. (PwC Br. at 3-5.)[1] PwC is confident that, if the Court reviewed the voluminous expert reports of Mr. Berliner and Mr. Regan at any length, it would find that PwC has described the proffered opinions of those two gentlemen fairly. The Committee ignores these irrefutable facts, and instead responds with a series of irrelevancies. The Committee notes that Mr. Regan did not duplicate some of the analyses performed by Mr. Berliner (Comm. Br. at 4, 5)—which merely establishes that Mr. Regan's proposed opinions are a subset of those proffered by Mr. Berliner. The Committee asserts that Mr. Regan did not read Mr. Berliner's report, and that he performed his analysis "independent[ly]" (Comm. Br. at 3)—which in no way contradicts the fact that Mr. Regan's resulting opinions are purely duplicative.[2] And the Committee oddly argues that Mr. Regan is "additionally" a Certified Fraud Examiner (Comm. Br. at 4)—but so is Mr. Berliner. (*See* Berliner Rpt. Ex. A (App. tab 9).)

In short, the Committee does not back up its bold heading, "The Committee Proffers No Duplicative or Cumulative Accounting Testimony." (Comm. Br. at 7.) Instead, the Committee begs leave to proffer just such testimony. But the Committee's excuses for duplication are without merit.

First, the Committee asserts that PwC will elicit cumulative expert testimony from its several auditor-employees who will likely be fact witnesses, but this

---

[1] Mr. Regan has proffered a different and non-duplicative set of opinions in his eight-page supplemental report dated January 31, 2005, in which he opines on the treatment of certain reserve accounting issues by Coopers & Lybrand at other, non-AHERF hospital audits. PwC's present motion does not seek to preclude testimony on those topics.

[2] By its insistent statements that Messrs. Regan and Berliner reached their conclusions "independently", the Committee illustrates how it intends to use the identical conclusions both men drew to vouch for each man's work (suggesting that since each man "independently" reached an identical conclusion, both must be right).

confuses two dissimilar types of testimony. If two or more fact witnesses see the same things, their testimony appropriately helps prove the truth and, of course, cross examination can be used to test recollection and/or test credibility. These fact witnesses may be asked a broad range of questions by both sides—potentially including questions about their state of mind at the time of the events in question, and their views regarding their audits—but there is a fundamental difference between opinion testimony from fact witnesses and the sorts of opinions offered by outside auditors retained as testifying experts, as is illustrated by a case cited by the Committee in its response brief. *See Alegria Enterprises v. Immel's Marine*, No. 90-8127, 1992 U.S. Dist. Lexis 3246, at *3 (E.D. Pa. Mar. 13, 1992) ("When a [fact] witness performed an act that is relevant to the disputed facts, he can explain his reasons . . . . If those reasons are based on scientific knowledge . . . , the explanation is not thereby turned into an expert opinion."). Moreover, the PwC employee witnesses are inevitably going to appear before the jury in the role of the "accused"; there will be no perception that they are impartial, or that PwC has multiple independent experts vouching for its position. Instead, PwC has proffered Rule 702 expert opinion evidence from only one outside accounting and auditing expert: Mr. Tillett.

       Second, the Committee cites a scattered few cases as supposedly blessing duplicative expert opinion evidence in general. The cases do no such thing. The court in *Johnson v. United States*, 780 F.2d 902, 906 (11th Cir. 1986), reversed the exclusion of an expert who would have offered "more comprehensive" testimony based in part on different evidence. But Mr. Regan's proposed testimony is less comprehensive than that of Mr. Berliner, and based on the same evidence. The court in *Habecker v. Copperloy*

*Corp.*, 893 F.2d 49, 53 (3d Cir. 1990), reversed a district court that permitted one side to put forward three outside experts on a single issue, while the other side had only one, but as noted above, no such imbalance exists here.[3]

Far from undercutting PwC's motion, *Alegria Enterprises*, 1992 U.S. Dist. Lexis 3246, supports it. There, the court allowed an additional expert's testimony because unlike Messrs. Regan and Berliner, "plaintiff's experts [were] sufficiently different so that their testimony [would] not overlap". *Id.* at *5.

Other cases are consistent with these, and with those previously cited by PwC. In *Sunstar, Inc. v. Albero-Culver Co.*, No. 01 C 0736, 2004 U.S. Dist. Lexis 16855 (N.D. Ill. Aug. 20, 2004) (cited by the Committee on a different point), the court precluded testimony from a second expert <u>except</u> as to subjects unique to the second expert's report. *See id.* at *75 ("Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative. It also raises the unfair possibility that jurors will resolve competing expert testimony by 'counting heads' rather than evaluating the quality and credibility of the testimony."). In *Polec v. Northwest Airlines, Inc.*, 86 F.3d 498, 527 (6th Cir. 1996), the Sixth Circuit affirmed exclusion of plaintiff's multiple experts, noting that "giving Northwest a double helping of experts would be unfair".

---

[3] *Habecker*'s reasoning supports PwC, not the Committee. The appellate court found error in excluding plaintiff's cumulative expert in part because of the need to counterbalance the prejudicial impact suffered by the plaintiff as a result of the cumulative testimony of <u>defendant's</u> multiple experts. Thus, the court reasoned, "[w]hile Brandt's testimony may have been cumulative to the testimony of Nicholas Miller, having two expert witnesses testify, instead of one, could easily have made the jury more likely to believe plaintiffs' theory, particularly given that the defendants collectively offered the testimony of *three* witnesses on the issue." *Habecker*, 893 F.2d at 53.

Finally, because it cannot substantively rebut the fact that the testimony being proffered by Mr. Regan and Mr. Berliner is improperly duplicative, the Committee seeks a stay of execution, pleading that the Court ignore this impropriety and permit the Committee to keep its multi-expert threat hanging over PwC's head until a later date. However, where (as here) the record is sufficiently developed, there is no reason for the Court to wait until trial to rule on PwC's motion, and it would be unfair to PwC's trial preparation to do so. *See, e.g., United States v. Benavidez-Benavidez*, 217 F.3d 720, 725-26 (9th Cir. 2000) (deciding Rule 403 motion prior to deciding *Daubert* challenges); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 747 (3d Cir. 1994) (upholding *in limine* exclusion of expert testimony based on Rule 403 grounds); *Bowman v. Corrections Corp of Am.*, 350 F.3d 537, 547 (6th Cir. 2003) ("[W]e encourage the district court to make such [expert exclusion] rulings before trial, as a last-minute decision made during trial can be disruptive to a party's strategy . . . ."). In the case cited by the Committee, *Option Resource Group v. Chambers Development Co.*, 967 F. Supp. 846 (W.D. Pa. 1996)—a case that did not involve expert testimony—the court's decision reflected its doubt over the strength of the objector's argument, not any restriction on resolving a Rule 403 issue prior to trial.

In this case, the Committee's experts have all submitted expert reports, and all have been deposed. The Committee argues the Rule 403 issue on the merits, and there is nothing to be gained by waiting until trial is imminent. Meanwhile, the burden on PwC of preparing to deal with multiple adverse audit expert witnesses at trial will be substantial, and should be unnecessary.

## II. MR. WALLACE'S TESTIMONY SHOULD BE EXCLUDED FOR MULTIPLE REASONS.

Mr. Wallace's proposed opinion evidence should be excluded in its entirety for three distinct reasons.

### A. Mr. Wallace's Opinions Amount to Improper "Vouching".

PwC has demonstrated chapter and verse, quoting from Mr. Wallace's report, that the opinions he proffers consist repeatedly of his assertion that he "agree[s]" with the opinions of Mr. Berliner and Mr. Regan. (PwC Br. at 6.) The Committee identifies not a single counter-example from Mr. Wallace's report. Instead, the Committee argues that Mr. Wallace had a "narrower scope of work" and "limited rebuttal opinions" (Comm. Br. at 6)—scarcely evidence that the opinions he does offer do not amount to improper vouching for opinions expressed in more detail by Messrs. Berliner and Regan. The Committee also—again without reference to the report—makes vague assertions about what Mr. Wallace "will testify" to. (Comm. Br. at 5.) But Mr. Wallace was required to put in his report "a complete statement of all opinions to be expressed" (Fed. R. Civ. P. 26(a)(2)(B)), and the opinions he has identified boil down to, "I agree."

The Committee does not deny that vouching is improper, but attempts to evade that principle, well articulated in *Tunis Brothers Co. v. Ford Motor Credit Co.*, 124 F.R.D. 95, 98 (E.D. Pa. 1989), by creating an exception that would swallow the rule, suggesting that "I agree" testimony becomes acceptable "rebuttal" if there has been "an attack on the first expert". (Comm. Br. at 13.) Of course, where experts appear in litigation, there are almost invariably "attacks" on the positions they take. PwC believes that it has accurately described the *Tunis Brothers* case and its prohibition on "vouching" testimony (*see* PwC Br. at 6-7), and the Committee cites no contrary law.

B.  Mr. Wallace Is Not Qualified to Offer Opinions on Accounting Questions, Because His Expertise Is Out of Date.

Mr. Wallace's report and proposed testimony rest on an inadequate foundation, because Mr. Wallace is not a licensed CPA in any jurisdiction. Mr. Wallace stated in his report, "I am a Certified Public Accountant." This is false; as the Committee now acknowledges (but Mr. Wallace did not disclose in his report), Mr. Wallace has not held a license as a CPA in any jurisdiction since 1998. The Committee calls this discrepancy "understandable" and "of no moment", but that is wrong. (Comm. Br. at 10.) Like most states, Pennsylvania places strict limitations on the ability of non-licensed persons to claim accounting expertise or claim that they are CPAs. *See* 63 Pa. Stat. Ann. § 9.12(m) (West 2004) (it is "unlawful for any person who is not a licensee to sign or affix his name . . . to or otherwise issue any: (1) report; or (2) opinion, . . . which indicates: (i) that he is an accountant or auditor; or (ii) that he has expert knowledge in accounting or auditing"); 49 Pa. Code § 11.8(b) (1990) ("It is unlawful for an individual . . . not currently licensed to engage in the practice of public accounting to hold oneself out as a certified public accountant."). While the statue may not govern expert testimony in litigation, and CPAs licensed in other jurisdictions (such as Messrs. Regan, Berliner and Tillett) regularly offer expert testimony on accounting issues (which commonly turn on national, not local standards), Mr. Wallace has not been licensed in any jurisdiction for seven years—ample time to forget a great deal. The statute reflects the legislative judgment that, likely due to the intricately complex nature of accounting and audit principles, it would be a misrepresentation for anyone except a currently licensed CPA to hold himself out as expert in such matters. Mr. Wallace's inability to recall "certain current accounting industry standards" governing analysis by

CPAs for litigation purposes is indeed, as the Committee urges, "understandable" (*see* Comm. Br. at 11) seven years after his license lapsed—but this simply illustrates the reason underlying the legal prohibition. Since expertise "in accounting or auditing" is an essential basis for Mr. Wallace's proffered testimony, he is not suitably qualified to offer that testimony.

        C.     <u>Mr. Wallace Performed Inadequate Factual Investigation and Analysis.</u>

PwC has previously identified categories of key factual evidence which Mr. Wallace did not review, and with which he is not familiar. (PwC Br. at 8-11.) The Committee's response that he did review some other things (Comm. Br. at 11) cannot solve the problem. The cases the Committee cites to bless what Mr. Wallace <u>did</u> do— read the reports of Messrs. Berliner and Regan, accept their characterization of the facts, and declare that he agrees with their opinions—do no such thing. None of these cases countenances an expert relying on "facts" <u>within his own purported area of expertise</u> as served up in the report of another expert, rather than performing an analysis based on the actual evidentiary record. *See 6,816.5 Acres of Land v. United States*, 411 F.2d 834, 839-40 (10th Cir. 1969) (excluding opinion of expert who based his opinions on those of another expert who was a colleague in his field).[4] The procedure followed by

---

[4] The cases cited by the Committee stand for the uncontroversial proposition that an expert in one field may rely upon the testimony of an expert in <u>another</u> field. *See Seese v Volkswagenwerk A.G.*, 648 F.2d 833, 844-45 (3rd Cir. 1981) (engineer reconstructing automobile accident may rely on medical conclusions of physician expert); *United States v. 1,014.16 Acres of Land*, 558 F. Supp. 1238, 1241-42 (W.D. Mo. 1983) (allowing experts in forestry, hydrology and real estate appraisal to rely on one another), *aff'd*, 739 F.2d 1371 (8th Cir. 1984). The passing statement in *Barris v. Bob's Drag Chutes & Safety Equipment, Inc.*, 685 F.2d 94, 101 n.10 (3d Cir. 1982), that an expert's opinion "may be formulated by use of ... conclusions of other experts" does not suggest that an expert may rely upon a second expert in his own field, and the case did not involve such a situation.

Mr. Wallace simply does not amount to the application of a methodology accepted by auditors to a reliable factual foundation, as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

### III. MR. REGAN SHOULD BE PRECLUDED FROM OFFERING TESTIMONY CONCERNING THE PROPRIETY OF THE C&L AUDITS BECAUSE HIS OPINIONS ARE IMPROPERLY BASED ON CREDIBILITY JUDGMENTS.

The Committee agrees with PwC that "[e]xpert witness may not offer opinions on relevant events based on their personal assessment of the credibility of another witness's testimony". (Brief in Support of the Committee's Motion to Exclude Certain Testimony from PricewaterhouseCoopers' Experts at 16-17 (quoting *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988)).) But the Committee advances two reasons why Mr. Regan's testimony should not be precluded in this case, notwithstanding that undisputed rule of law. First, the Committee contends that "Mr. Regan has nowhere testified that his view of Mr. Kirstein's earlier work or testimony has affected his opinions in this case". (Comm. Br. at 15.) That contention is simply wrong. Second, the Committee avows that it will not elicit such testimony from Mr. Regan at trial. (*Id.*) But that cannot cure the problem, as Mr. Regan's opinions will remain tainted by the impermissible credibility judgment.

Mr. Regan testified at his deposition that his opinions in this case were affected by his assessment of Mr. Kirstein's credibility formed during the *Phar-Mor* case. The Committee's trial counsel (Mr. Whitney), questioning his own expert, established that Mr. Regan had submitted an expert report in the *Phar-Mor* case, in which Mr. Kirstein was involved. (Regan Dep. Tr. (App tab 2) at 252.) Mr. Whitney then

asked Mr. Regan a series of questions about the role that Mr. Kirstein's credibility may play in this case, of which the following question is illustrative:

> "Q: With regard to the issue of when PricewaterhouseCoopers first had knowledge of the $50 million, the first $50 million in reserve transfers, to your knowledge, does that issue turn to some extent, on the credibility of Mr. Kirstein?
>
> "[Objection by counsel for PwC]
>
> "A: I think it may have a role, yes."

(Id. at 257; see also id. at 255-56.) Counsel for PwC then followed up, seeking to learn whether Mr. Regan was impermissibly basing his opinions in this case on a judgment about the credibility of a witness:

> "Q: You were asked a series of questions by Mr. Whitney about the Phar-Mor case. Did you form an opinion about the credibility and truthfulness of Mr. Kirstein or Mr. Buettner as a result of your involvement in the Phar-Mor case?
>
> "A: I formed an opinion with respect to Mr. Kirstein, but not Mr. Buettner.
>
> "Q: And did you bring that impression that you formed in the Phar-Mor case with you into this case?
>
> "A: I would say I have an increased professional skepticism with respect to Mr. Kirstein's audit procedures and his credibility.
>
> "Q: So he began with a strike against him in this case?
>
> "A: Yes . . ."

(Id. at 258.) Thus, Mr. Regan has admitted that his opinions are based in part on his impression of Mr. Kirstein's credibility.

Nor can the flawed basis for Mr. Regan's opinions be cured if the Committee's counsel refrains from asking Mr. Regan on direct examination at trial the kinds of questions that he asked Mr. Regan at deposition. The Committee argues disingenuously that "PwC may choose to cross-examine Mr. [Regan] on his prior contact

-10-

with Mr. Kirstein". (Comm. Br. at 15.) But the very case on which the Committee relies, *Scop*, 846 F.2d at 142, holds that expert testimony on witness credibility "not only should be excluded as overly prejudicial but also renders inadmissible any secondary opinion based upon it". The *Scop* court reasoned that the opposing party should not be put to the "dilemma" of leaving the tainted opinion testimony untouched or eliciting the impermissible credibility judgment on cross-examination: "Were we to rule otherwise, triers of fact would be called upon either to evaluate opinion testimony in ignorance of an important foundation for that opinion or to hear testimony that is otherwise inadmissible and highly prejudicial." *Id.*; *see also Stachniak v. Hayes*, 989 F.2d 914, 925 (7th Cir. 1993) (affirming exclusion of expert testimony because expert's deposition testimony regarding witness credibility "disqualified him as a witness").[5]

The same reasoning applies here. Evaluating the credibility of witnesses is a quintessential jury function, and the Committee should not be permitted to proffer testimony from an expert (Mr. Regan) who admitted at deposition that his opinions are based in part on his evaluation of the credibility of one of PwC's witnesses.

---

[5] None of the cases the Committee cites on page 15 of its opposition to PwC's motion, for the proposition that bias can be examined through cross-examination, involves an expert who based his opinion on a determination of witness credibility. Whereas in those cases the opposing party can establish on cross, for example, that an expert is biased because he has a financial interest in the outcome of the case, here the nature of the witness bias (the credibility assessment) is inadmissible and would be highly prejudicial if disclosed to the jury.

-11-

## Conclusion

For the reasons set forth above, and in PwC's Memorandum in Support of Its Motion to Preclude Duplicative and Unreliable Expert Accounting Testimony, PwC respectfully requests that the Court enter an order:

1. Precluding the introduction of testimony from more than one expert on behalf of Plaintiff going to accounting or auditing issues;

2. Precluding the proffered testimony of Mr. Wallace for lack of adequate factual foundation and as the result of an unreliable methodology; and

3. Precluding the proffered testimony of Mr. Regan as improperly based in part on his views of the credibility of a significant PwC witness.

Dated: August 19, 2005

Respectfully submitted,

MANION McDONOUGH & LUCAS, P.C.

by _____
Joseph F. McDonough
(Pa. I.D. # 19853)

USX Tower
600 Grant Street, Suite 1414
Pittsburgh, PA 15219
(412) 232-0200

CRAVATH, SWAINE & MOORE LLP

Thomas G. Rafferty
Roger G. Brooks
Antony L. Ryan

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Attorneys for Defendant
PricewaterhouseCoopers LLP

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of August 2005, a true and correct copy of the foregoing Reply Memorandum in Support of Motion to Preclude Duplicative and Unreliable Expert Accounting Testimony and Supplemental Appendix thereto was served upon counsel of record by either hand delivery and/or overnight delivery, addressed as follows:

*Via Hand Delivery:*

James Jones, Esquire
JONES DAY
One Mellon Bank Center
500 Grant Street, Suite 3100
Pittsburgh, PA  15219

*Via Federal Express - Overnight*

Richard B. Whitney, Esquire
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114

_____