UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF  )<br>UNSECURED CREDITORS OF  )<br>ALLEGHENY HEALTH, EDUCATION  )<br>AND RESEARCH FOUNDATION,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>PRICEWATERHOUSECOOPERS, LLP,  )<br>  )<br>Defendant.  ) | Civil Action No. 00-684<br><br>Judge David Stewart Cercone |

**THE COMMITTEE'S BRIEF IN RESPONSE TO PwC'S SUPPLEMENTAL
BRIEF IN SUPPORT OF PwC'S MOTION FOR SUMMARY JUDGMENT AND THE
COMMITTEE'S BRIEF IN FURTHER OPPOSITION TO PwC'S MOTION TO
EXCLUDE TESTIMONY CONCERNING CERTAIN DAMAGE THEORIES**

**INTRODUCTION**

In May, the Third Circuit decided a case styled *In re CitX Corp.*, 448 F.3d 672 (3d Cir. 2006). A month later, citing and attaching the *CitX* opinion, PwC sought leave to file what it called a supplemental brief in support of its summary judgment motion. Why PwC thought it useful to bring this case to the Court's attention is a mystery. *CitX* not only provides no support to the positions PwC has taken in this case, it rejects many of them. The mystery is not solved by a review of PwC's supplemental brief.

In that brief, which offers no real analysis of the facts or holdings of the decision, PwC argues that *CitX* "provides significant additional support to PwC's pending motion for summary judgment." PwC's Supp. Br. at 1. In a footnote – void of any analysis whatsoever – PwC argues that *CitX* "also provides additional support" for PwC's separate motion to exclude testimony concerning certain damage theories proffered by the Committee through its damages expert, R. Bruce Den Uyl. *Id.* at 1 n.1.

PII-1141188v4

But *CitX* has nothing to do with PwC's summary judgment motion. And to the extent that the opinion is relevant to PwC's motion to exclude testimony concerning the Committee's damage theories, *CitX* confirms only that PwC's motion should be overruled.

## ARGUMENT

I.  **An Appreciation For What *CitX* Does And Does Not Mean For This Case, Not Surprisingly, Is Best Gleaned From A Presentation Of What *CitX* Actually Says – What The Facts Were And What The Court Held.**

In *CitX*, "an insolvent internet company involved in an illegal Ponzi scheme used its financial statements, compiled by its accounting firm, to attract investors." 448 F.3d at 674. "After the company spent the investors' money and incurred millions more in debt, it filed for bankruptcy." *Id.* The bankruptcy trustee for CitX then sued CitX's accounting firm and one of that firm's partners for, among other things, malpractice and something the trustee labeled "deepening insolvency." *Id.*

CitX's accounting firm did not conduct an audit. It "compiled" the corporation's financial statements. "Compilations differ significantly from other forms of financial-statement preparation – reviews and audits. Among the three, compilations represent the lowest level of assurance." *Id.* at 675 n.3 (internal quotation marks omitted).

The CitX trustee alleged harm in the "form of 'deepening insolvency.'" *Id.* at 677. The trustee alleged that the inaccurately compiled financial statements permitted CitX to "wrongfully expand" its debt and "waste" its "illegally raised capital." *Id.* "CitX was . . . able to raise more than $1,000,000 in equity. The company thereby prolonged its existence and went on to accrue millions of dollars of debt." *Id.* at 676. The only evidence, however, that "anyone extended credit to CitX in reliance" on the financial statements compiled by CitX's accountants came in the form of a "sham" affidavit from CitX's Chief Operating Officer, who "virtually disavowed" it during his deposition. *Id.* at 680, 678.

Absent the sham affidavit, there was no evidence that CitX's officers or directors, if accurately informed of the company's financial condition, would have undertaken an investigation, taken steps to avoid future losses, or done anything else to "protect CitX's assets." *Id.* at 678. Indeed, the Chief Operating Officer ultimately testified that he knew, at the time that CitX approached investors to raise the $1,000,000 investment, that the Florida Attorney General already had "shut down" CitX's "only significant" (and "fraudulent") customer, whose $2,400,000 receivable had falsely propped up CitX's balance sheet. *Id.* at 674, 678.

As the Third Circuit observed, "[a]ssuming for the sake of argument that [the accounting firm's] financial statements allowed CitX to raise over $1,000,000, that did nothing to 'deepen' CitX's insolvency. It did the opposite," and, without the false affidavit, there was no evidence that the post-investment debt or credit extension "was wrought" by anyone other than "CitX's management." *Id.* at 677.

The district court granted summary judgment in favor of the accountants on both the "deepening insolvency" and the malpractice causes of action. The Third Circuit affirmed.

The Third Circuit held that negligent conduct alone "cannot sustain a deepening-insolvency cause of action." *Id.* at 681. As the CitX trustee had failed to proffer evidence that CitX's accounting firm had "engaged in fraudulent conduct," the Third Circuit affirmed summary judgment for the accounting firm on the trustee's "deepening insolvency" claim. *Id.* at 681.

The Third Circuit also held that the CitX trustee's malpractice claim, a negligence-based action, failed because he could not "establish harm or causation." *Id.* Revisiting its decision in *Official Committee Of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001), the Third Circuit held that no harm befell CitX because "'the deepening

of a firm's insolvency is not an independent form of corporate damage.'" 448 F.3d at 678 (quoting Sabin Willett, *The Shallows of Deepening Insolvency*, 60 Bus. Law. 549, 575 (2005)); *see also id.* at 681. The Third Circuit, however, expressly limited this holding and authorized standard damage proofs for state-law claims for relief even if those proofs bear some relationship to or overlap with the "solvency calculation." *Id.* at 678. "'Where an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, without reference to the incidental impact upon the solvency calculation.'" *Id.* at 678 (quoting same article).

The CitX trustee's proof of causation failed because the Chief Operating Officer's sham affidavit had to be "discarded." *Id.* at 681. Without it, "there [was] nothing in the record to support a finding that anyone extended credit to CitX in reliance on the financial statements compiled by" the accounting firm, and the trustee could not establish that the firm "caused any harm to CitX." *Id.* at 680.

II.  *CitX* **Rejects Only A Claim That the Committee Never Pleaded, Has No Import For PwC's Summary Judgment Motion, And, In Fact, Endorses The State-Law Damage Measures The Committee Will Present At Trial.**

*CitX*'s holding that negligence alone would not support an independent "deepening insolvency cause of action," though perhaps of academic interest, has nothing to do with this case. Unlike the trustee in *CitX*, who perhaps read recent Third Circuit law to create a separate tort cause of action for deepening insolvency, *see, e.g., Official Committee of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.)*, 299 B.R. 732, 752 (Bankr. D. Del. 2003), the Committee has never pleaded a "deepening insolvency cause of action." Nor has it ever asserted that such a claim even exists. The Committee's claims are traditional, state-law

claims for professional malpractice, breach of contract, and aiding and abetting breach of fiduciary duty.

*CitX*'s holding regarding permissible measures of harm or damages in accounting malpractice cases, though PwC argues otherwise, has nothing to do with PwC's motion for summary judgment. PwC did not move for summary judgment on the ground that the Committee failed to offer sufficient proof of harm or damages. PwC's briefing on summary judgment is grounded, among other things, on standard accounting firm defenses, like imputation and audit interference, and routine auditors' challenges to causation, like assertions that even false and grossly overstated audited financial statements somehow would not have mattered to the company that paid for the audits. In that summary judgment briefing, PwC does not argue that the Committee failed to support its claims with sufficient evidence of harm or damages. *CitX* cannot support a motion for summary judgment that PwC never made.

In a separate motion and briefing, PwC did seek to exclude certain testimony concerning damages proffered by the Committee's damage expert, R. Bruce Den Uyl. *See* PwC's Opening Br. on Damages Testimony (filed May 6, 2005; doc. no. 107). PwC mentions this motion only in a footnote in its supplemental brief on *CitX*. PwC relegates this prior damages-related motion to a footnote even though the issues implicated in that motion and its supporting briefs are the only issues to which *CitX* has relevance. PwC's reluctance to review what it said in its earlier submissions on damages is understandable. In those papers, PwC argued that the Committee's creditor shortfall "damages theory is not legally permitted" because that theory does *not* measure the "'deepening insolvency' of the bankrupt estate." *Id.* at 3, 5 (citing *Lafferty*, 267 F.3d at 349-50). In its supplemental brief concerning *CitX*, PwC now

argues just the opposite – that the Committee's damages theories are not legally permitted because they *do* measure a "'deepening insolvency'-like" figure. PwC's Supp. Br. at 4.

The conflict is direct and unmistakable. In last year's briefing, PwC warned that the "Committee may try to describe Mr. Den Uyl's 'creditor shortfall' calculation as a measure of deepening insolvency, but the inapplicability of this measure of damages to the Committee's allegations is apparent from the following facts" (PwC's Opening Br. on Damages Testimony at 5):

- "First, the Committee does not allege that AHERF's life was improperly prolonged as a result of C&L's audit. On the contrary, the Committee, through its turnaround expert Mr. Singleton, asserts that AHERF would have survived longer but for C&L's alleged misconduct." *Id.* (underscoring, here and in the next two bullets, is PwC's).

- "Second, the Committee does not allege that C&L's conduct enabled AHERF to prolong its life by obtaining additional debt financing." *Id.*

- "Third, Mr. Den Uyl's calculation has nothing to do with measuring the types of 'losses from extended life' authorized by *Lafferty* . . . ." *Id.* at 7.

PwC went on to chide the Committee for failing to measure "deepening insolvency" by "'additional debt incurred' after the defendant's first wrongful conduct." *Id.* PwC faulted the Committee, too, for failing to assert that "the value of the Debtors decreased at all, after the first bad act." *Id.* (underscoring, in this paragraph and the one that follows, is again PwC's). In the final paragraph of this portion of its opening brief, PwC added: "Indeed, absent from the Committee's case is any evidence or even any allegation that the Debtors' debt or insolvency increased over any period of time." *Id.*

In its reply brief, PwC offered a mathematical explanation for why the Committee's creditor shortfall damages measure "bears no logical relationship to deepening insolvency." PwC's Reply Br. on Damages Testimony (filed Aug. 19, 2005; docket no. 193) at 3. "Unless, by remarkable coincidence, the net worth of the estate was an even zero in

September 1996 (the time of the first alleged 'bad act'), then it is certain that the net indebtedness of the estate upon bankruptcy is not a measure of 'deepening insolvency.'" *Id.* PwC then summed up: "In fact, since the Committee has offered no valuation of the estate as of September 1996, nor any estimate of change in valuation, there cannot even be any inference that there was any deepening insolvency." *Id.* (citation to PwC's Opening Brief omitted).

PwC could not have been more emphatic. It argued that the Committee's damages expert, Mr. Den Uyl, could not testify because he and the Committee had not calculated a "deepening insolvency" measure of damages. Now PwC argues that it should be granted summary judgment because the Committee, "like its *CitX* counterpart, seeks to recover a 'deepening insolvency'-like measure of damages." PwC's Supp. Br. at 3. The hyphen cannot save PwC from the patent contradiction.

The doctrine of judicial estoppel "precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position" and prevents parties from "playing fast and loose with the courts." *Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990) (internal quotation marks omitted). Judicial estoppel may apply whether or not the self-contradicting party "actually benefited from its attempt[ed]" about-face. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 324 (3d Cir. 2003). PwC's turnabout should not be permitted here.

The Committee did not measure a "deepening insolvency" when proffering evidence of its damages. Nor did the Committee claim that it had. The quote that PwC snips from the Committee's earlier opposition to PwC's motion to exclude damages testimony itself makes the point. The Committee noted only that its creditor shortfall measure of damages "'does no harm to the underlying premise of the deepening insolvency theory.'" PwC's Supp. Br. at 4

(quoting the Committee's Opp. to PwC's Motion on Damages Testimony at 8 (filed July 11, 2005; doc. no. 121)). The Committee nowhere asserted that it, in fact, had calculated a deepening insolvency.

While PwC argued in its earlier briefs that the Third Circuit in *Lafferty* had essentially identified "deepening insolvency" as the only damage measure in audit/business failure cases, the Committee responded that tort and contract damages remained a matter of traditional state-law proof. *See* Committee's Opp. To PwC's Motion on Damages Testimony at 4-8. Consistent with Pennsylvania common law, the Committee marshaled and proffered evidence of proximately caused loss occasioned by PwC's audit negligence.

*CitX* now confirms that the Committee's approach was and remains the correct one: "Where an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, without reference to the incidental impact upon the solvency calculation." 448 F.3d at 678 (internal quotation marks omitted). Auditing malpractice, breach of contract, and aiding and abetting breach of fiduciary duty are "independent caus[es] of action." They "give" AHERF "a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits." And the Committee, on behalf of the AHERF estates, therefore "may recover, without reference to the incidental impact upon" AHERF's "solvency calculation."

"If injury occurs, tort law attempts to place the injured party in the same position he occupied before the injury." *Hahn v. Atlantic Richfield Co.*, 625 F.2d 1095, 1104 (3d Cir. 1980) (construing Pennsylvania tort policy). "While formulated rules relating to the appropriate measure of damage in varying circumstances have to some extent become fixed, they are by no means immutable but bend to the exigencies of the particular case in order that just

compensation may be ascertained and awarded." *Neuman v. Corn Exch. Nat'l Bank & Trust Co.*, 51 A.2d 759, 766 (Pa. 1947); *accord Capital Care Corp. v. Hunt*, 847 A.2d 75, 82 (Pa. Super. Ct. 2004) (proof of "value not realized" in corporate asset sale due to attorney malpractice is "sufficient evidence" of "actual damages").

The Committee's damages measures – the creditor shortfall and avoidable cost calculations derived by Mr. Den Uyl – attempt to place AHERF in the same position it would have occupied had AHERF's audited financial statements been free of material misstatement. The creditor shortfall measure is informed by volumes of testimony from members of AHERF's board of trustees and from the responsible decision makers at its largest lenders. These volumes detail how accurate financial statements would have caused a swift business intervention. The creditor shortfall measure is informed also by the report and testimony of the Committee's health care turnaround expert, Thomas Singleton. Mr. Singleton's report and testimony establish how an appropriate intervention could and likely would have turned AHERF around and avoided a bankruptcy and the creditor shortfall that followed. The avoidable-cost measure tallies discrete hard costs and expenditures that AHERF incurred but could and likely would have avoided had its audited financial statements accurately represented the enterprise's financial condition and performance. It is informed, too, by essentially the same evidentiary record.

AHERF's independent causes of action give it these remedies. The measures are sanctioned by state law. The supporting proofs are substantial. They are catalogued, in part, in the transcripts and reports just mentioned. None of this evidence comes in the form of an untruthful affidavit. None of it has been recanted. No AHERF trustee or creditor representative has testified that he or she had reason to know that AHERF's audited financial statements were

materially misstated. The CitX trustee had no damages proof, only empty allegations. The Committee's damages record is replete with admissible damages evidence.

For these reasons, *CitX*'s holding that proof of causation cannot be established by a single, disavowed affidavit – hardly a remarkable proposition in its own right – can have no application to this case. PwC does not even argue that it does.

What PwC does argue is that *CitX* bars an insolvent company from pursuing a malpractice claim if its damages measure is "'deepening insolvency'-like." PwC's Supp. Br. at 3. *CitX* not only does not hold this, it rejects it. The *CitX* court dealt with a trustee who – without proof of proximate cause or causation-in-fact and without any evidentiary tether between accounting misconduct and damages incurred – attempted to establish damages by simply comparing two balance sheets and labeling the difference a "deepening insolvency."

Recognizing this scant causation and damage record for what it was, the *CitX* court took care not to question or undermine the validity of state-law damage measures just because the losses reflected in those measures necessarily may affect a corporation's solvency or insolvency and the numbers derived from those measures might therefore coincidentally relate to corporate solvency/insolvency fluctuations. *CitX* directly instructed that "[w]here an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, *without reference to the incidental impact upon the solvency calculation*." 448 F.3d at 678 (internal quotation marks omitted) (emphasis supplied).

The Third Circuit's directive makes sense. It is difficult to imagine an effort to tally financial damages incurred by an insolvent company that would not reflect either that the company's solvency was adversely affected or that its insolvency was, in fact, "deepened."

PwC's reads *CitX* to bar any recovery for the insolvent company so damaged. This reading, if considered for a moment, would outlaw accounting malpractice recoveries for virtually all insolvents and establish this rule: Those who commit malpractice in their service to solvent clients shall respond in damages; those who commit malpractice in their service to insolvent clients – or commit it so severely as to cause their clients to become insolvent – shall receive a get-out-of-liability-free card. This is not the law, and *CitX* makes sure of it.

## CONCLUSION

*CitX* has no relevance to PwC's motion for summary judgment. *CitX* calls for overruling PwC's motion to exclude certain damages testimony proffered by the Committee. PwC's summary judgment motion and its damages motion should be denied.

Dated: July 13, 2006                                Respectfully submitted,

*/s/ James M. Jones*
James M. Jones (PA #81295)
Laura A. Meaden (PA #52002)
JONES DAY
500 Grant Street, Suite 3100
Pittsburgh, Pennsylvania 15219
(412) 391-3939

Richard B. Whitney (OH #8004)
J. Kevin Cogan (OH #9717)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114

Attorneys for Plaintiff The Official Committee of Unsecured Creditors of Allegheny Health, Education and Research Foundation