UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 00-684 |
| v. | ) ) | Judge Cercone |
| PRICEWATERHOUSECOOPERS, LLP, | ) ) ) | Electronically Filed |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF THE COMMITTEE'S MOTION**
**TO PERPETUATE THE TESTIMONY OF ROBERT W. BERLINER**

**INTRODUCTION**

  The Committee seeks to perpetuate the testimony of one of its expert witnesses in this matter, Robert W. Berliner, while this case is pending on appeal before the United States Court of Appeals for the Third Circuit. The Committee retained Mr. Berliner, an accounting and auditing expert, more than six years ago. Over the years that followed, Mr. Berliner and those reporting to him committed thousands of hours to reviewing and analyzing the financial and accounting documents and data that are germane to this case. His opinions and testimony will feature prominently in the Committee's case in chief, and they, in part, form the bases for or otherwise inform the opinions of other testifying expert witnesses retained by the Committee. The sheer volume of the analytical work performed and the time and expense incurred in the effort render Mr. Berliner's testimony insusceptible of practical replacement.

  Mr. Berliner is 73 years of age. While he is healthy, the natural and largely unavoidable risks to good health occasioned by advancing age are undeniable. Given these facts

and the central role that Mr. Berliner's work and testimony will play in any trial of this matter, the Committee, in the exercise of prudence, seeks authorization to perpetuate his trial testimony while this case works its way through the appellate process.

## FACTUAL AND PROCEDURAL BACKGROUND

The Committee filed this lawsuit on April 11, 2000, some seven years ago. Interrupted by a stay of discovery during settlement negotiations in other civil actions seeking recoveries for the AHERF estates, fact discovery in this case closed in June 2004, the parties exchanged expert reports between September 2004 and January 2005, and expert depositions concluded in March 2005.

PwC filed its summary judgment motion in May 2005. Briefing on that motion followed, and this Court issued its decision granting that motion on January 17, 2007. The Committee filed its notice of appeal on February 6, 2007, and this case is now pending before the United States Court of Appeals for the Third Circuit. The Third Circuit has not yet set the briefing schedule, and the median time from filing a notice of appeal to disposition in this circuit is some thirteen months. *See* Administrative Office of the U.S. Courts, Federal Court Management Statistics: 2006, http://www.uscourts.gov/cgi-bin/cmsa2006.pl.

Should the Third Circuit return this case to this Court for trial, it would appear that a jury would not be impaneled until mid-2008 at the soonest. A trial commencing in that time frame would come a full eight years after the case was filed, more than seven years after the Committee's accounting expert witnesses were retained, and three years after those experts completed their last significant work on the file.

The Committee retained Mr. Berliner in December 2000. His work and that of those at his firm who reported to him included the review and analysis of store rooms of AHERF financial and accounting reports and data and Coopers' audit work papers for multiple fiscal

2

years. He has opined that Coopers failed in multiple ways in its duties to perform audits that comported with Generally Accepted Auditing Standards. His analyses also include the calculation and presentation of dollar adjustments to various individual line items on the audited financial statements of AHERF and its affiliates for three fiscal years. These adjustments correct for accounting treatments that did not comply with Generally Accepted Accounting Principles but were approved by Coopers just the same.[1]

These adjustments, when totaled, reveal that AHERF's net income and unrestricted net assets were overstated by tens of millions of dollars in both fiscal-years 1996 and 1997. When netted against the figures reported in the audited (and erroneous) financial statements that bear Coopers' clean opinions, the adjustments were reviewed by or serve as part of the bases for other of the Committee's experts (i) to evaluate and opine upon the extent to which AHERF had sufficient working capital and other financial resources to effect a turnaround of its operations and regain profitability had AHERF's auditors given AHERF's Board of Trustees accurate financial information at the time of Coopers' audits and (ii) to assess and calculate actual losses suffered by the estates as a result of Coopers' audit failures.

No other of the Committee's experts has calculated and presented these correcting adjustments for the errors upon which Coopers passed although, as noted, certain of the Committee's other experts have been informed by or rely upon Mr. Berliner's adjustments as a part of the predicate for their testimony. The importance of Mr. Berliner's testimony to the presentation of the Committee's case should be the subject of no dispute.

Mr. Berliner and his colleagues at Marks Paneth, his firm, expended approximately 10,000 hours performing the analyses, substantiating his findings, and reporting

---

[1] Mr. Berliner's report appears at Exhibit A of Tab 3 of the Committee's Appendix to its Brief in Opposition to PwC's Motion for Summary Judgment. (That portion of the Appendix is a part of Document 143.)

his opinions and conclusions in more than 400 pages of text.  For this effort, Mr. Berliner's firm received approximately $3.0 million in fees and expense reimbursements over the course of the multiple-year engagement.  The amount of work was significant, and the investment has been considerable.  Reproducing the work would be impracticable in the extreme.  The time required and financial burden imposed would be beyond substantial.  And the prejudice to proceeding without the opinions formulated would be both obvious and severe.

The Committee seeks here to perpetuate the testimony of a single expert witness. Rule 27(b) authorizes the taking of testimony during appellate proceedings in just these circumstances.  This Court should grant the leave requested.

## ARGUMENT

Rule 27(b) authorizes parties to perpetuate testimony while a case is on appeal:

> If an appeal has been taken from a judgment of a district court . . . , the district court in which the judgment was rendered may allow the taking of the depositions of witnesses to perpetuate their testimony for use in the event of further proceedings in the district court. . . .  The motion shall show (1) the names and addresses of persons to be examined and the substance of the testimony which the party expects to elicit from each; (2) the reasons for perpetuating their testimony.  If the court finds that the perpetuation of the testimony is proper to avoid a failure or delay of justice, it may make an order allowing the depositions to be taken . . . .

Should Mr. Berliner's testimony be lost while this matter awaits appellate resolution and the commencement of trial, justice here would be delayed if not denied entirely.

The "purpose informing [Rule 27] militates in favor of allowing perpetuation of testimony of a person when it is uncertain that that person will be available at trial." *19th St. Baptist Church v. St. Peter's Episcopal Church*, 190 F.R.D. 345, 349 (E.D. Pa. 2000). Advanced age is regularly cited as a legitimate reason for allowing the perpetuation of testimony. *See, e.g., Penn Mut. Life Ins. Co. v. United States*, 68 F.3d 1371, 1375 (D.C. Cir. 1995) (A deponent's

4

"age presents a significant risk that he will be unavailable to testify by the time of trial."); *De Wagenknecht v. Stinnes*, 250 F.2d 414, 417 (D.C. Cir. 1957) ("[T]here can be no certainty that this testimony will still be available when the controversy is ready for litigation, since the witness is at present seventy-four years of age.").

In *Texaco, Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967), the district court stayed a civil antitrust suit until a parallel criminal action had finished. There was no firm indication as to when the civil proceedings would pick up again. Texaco sought to perpetuate a witness's testimony because his age – 71 years – meant that there was a risk that the witness would not be available for trial. The district court denied the motion, saying that "age standing alone is meaningless." The Third Circuit disagreed and reversed, finding an abuse of discretion and instructing that the witness's age was, on the contrary, "quite meaningful." *Id.* at 609. "It would be ignoring the facts of life to say that a 71-year old witness will be available, to give his deposition or testimony, at an undeterminable future date when" the criminal action "will have been 'determined,' and the trial of a related civil action will subsequently take place." *Id.*

The Third Circuit's analysis is fully instructive here, as Mr. Berliner is two years older than the witness in the *Texaco* case. Perpetuating Mr. Berliner's testimony now will ensure that the Committee's case is not prejudiced by delays attendant to the judicial process. It will occasion no real prejudice to PwC. In this case, some 200 depositions were conducted. PwC noticed the bulk of them. One more deposition now, which will only advance in time the taking of potential trial testimony, does not cause undue expense or dislocation.

While the Committee proposed to PwC a reciprocal agreement under which both sides could designate selected witnesses whose testimony should be perpetuated during the pendency of this appeal, PwC declined to agree. PwC asserted that it would oppose perpetuation

PII-1155425v2

here because it hoped to prevail on appeal, it did not wish to advance its cross-examination of Mr. Berliner to a time before the rest of the testimony in the case was to be elicited, and it viewed Mr. Berliner's testimony as cumulative.

As the discussion of Fed. R. Civ. P. 27(b) above makes clear, PwC's hopes concerning appellate outcome and its comments about the sequence of the elicitation of Mr. Berliner's testimony are not relevant to the inquiry. Mr. Berliner's testimony may be lost during the appeal and before the trial of this matter, and substantial delay in securing substitute testimony may be imposed if Mr. Berliner's testimony is not taken in the near term: this is all that Rule 27(b) requires to justify an order for perpetuation. If likelihood of success on appeal and the relative sequence of witnesses' testimony were relevant considerations, Rule 27(b) would say so, and the perpetuation of testimony would be a distinct rarity.

PwC's assertion regarding cumulative testimony is neither relevant nor accurate. Determining whether trial testimony is inappropriately cumulative should be done at the time of trial when the order and substance of the testimony to be presented is known. The call to be made now is only whether Mr. Berliner's testimony should be preserved. PwC's assertion that Mr. Berliner's testimony is likely to be substantially duplicative of that of other of the Committee experts (indeed, so duplicative as to dispense with the need for perpetuation) is not accurate. Overlap cannot even be discerned or become an issue until testimony is proffered at trial, testimonial overlap is not by itself improper, and no expert witness but Mr. Berliner has calculated the dollar amounts of the necessary adjustments to present a GAAP-compliant financial statement at year-end 1996 and 1997.[2]

---

[2] The Committee previously addressed PwC's arguments regarding what PwC labeled "duplicative" accounting testimony in the Committee's opposition to PwC's earlier-filed motion to preclude testimony that PwC described with that word. (The Committee's opposition is found at Document 123.) Among other things, the Committee's auditing experts, in their independent efforts, employed different analytical and evaluative methods;

## CONCLUSION

For the foregoing reasons, the Committee requests that the Court grant its motion to perpetuate the testimony of Robert W. Berliner.

Dated: April 9, 2007

Respectfully submitted,

 */s/ James M. Jones*
James M. Jones (PA # 81295)
Laura A. Meaden (PA # 52002)
JONES DAY
500 Grant Street, Suite 3100
Pittsburgh, Pennsylvania 15219
(412) 391-3939

Richard B. Whitney
J. Kevin Cogan
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114

Attorneys for Plaintiff The Official Committee of Unsecured Creditors of Allegheny Health, Education and Research Foundation

---

(continued…)

their opinions do not address all of the same areas of audit failure; and, as noted here, they performed separate inquiries into matters like account adjustments and Coopers' audit work for other healthcare providers.