Appendix
Comparison of Mr. Berliner's and Mr. Regan's Opinions

| Berliner Opinion<br>(Berliner Rpt. (App. tab 3) at 5-6) | Regan Testimony |
|---|---|
| "1. C&L violated GAAS by failing to properly assess the materiality of AHERF's GAAP violations" | Q. "[H]ave you also expressed the opinion that Coopers & Lybrand violated GAAS by failing to properly assess the materiality of AHERF's GAAP violations? A. "I don't think you will see those words in my report, but this statement would be consistent with my expectation . . .". (Regan Dep. Tr. (App. tab 2) at 11-17.) |
| "2. C&L violated GAAS by failing to require AHERF to record an adequate allowance for uncollectible accounts and to correct DVOG's FY'96 bad debt expenses" | Q. ". . . in substance, you've expressed a 'similar opinion to [Berliner opinion] Number 2?" A. "Yes." (*Id.* at 51-52.) |
| "3. C&L violated GAAS by failing to require AHERF to correct its improper accounting for DVOG's 1997 bad debt expense" | A. "I believe I expressed the same opinion in substance." (*Id.* at 52.) |
| "4. C&L violated GAAS by failing to require AHERF to correct its improper accounting for its acquisition of GHS entities and transfers of acquisition reserves and other liabilities among affiliated entities" | A. ". . . my opinion is in substance the same." (*Id.* at 53.) |
| "5. C&L failed to require AHERF to correct its improper accounting for certain irrevocable, permanently restricted trusts" | Q. "Do you express in substance the same opinion as Mr. Berliner does here?" A. "Yes." (*Id.* at 53-54.) |
| "6. C&L failed to require AHERF to correct its improper financial reporting of cost rate adjustments" | Q. "Do you express in substance the same opinion as Mr. Berliner?" A. "I do." (*Id.* at 55.) |
| "7. C&L failed to require AHERF to correct its improper accounting for certain excessive liabilities, understated assets, and excessive asset valuation allowance accounts" | A. "I believe that I've expressed in substance the same opinion." (*Id.* at 55.) |

| | |
|---|---|
| "8. C&L failed to require AHERF to correct its improper accounting for DVOG's FY'96 year-end increase in allowance for uncollectible accounts and bad debt expense" | Q. "In substance, do you express the same opinion as Mr. Berliner expresses in Item No. 8 on page 5 of his report?" A. "Yes." (*Id.* at 56.) |
| "9. C&L failed to require AHERF to correct its improper accounting for Medicare reimbursements of Graduate Medical Education program costs" | Q. "In substance, do you express the same opinion as Mr. Berliner as set forth in Item 9?" A. "I believe so." (*Id.* at 56.) |
| "11. C&L failed to require AHERF to correct its improper accounting for interest costs on construction projects" | Q. "In substance, is the opinion that you formed on this subject area the same as that expressed by Mr. Berliner in Item 1 1?" A. "I would expect that in substance it is." (Id. at 59-60.) |
| "12. C&L failed to require AHERF to correct its improper accounting for investment in Health Partners of Philadelphia, Inc." | Q. "Do you in substance hold the same opinion?" A. "Yes." (*Id.* at 60-61.) |
| "13. C&L failed to require AHERF to correct its improper accounting for tort settlements with two former executives" | Q. "Do you hold the same opinion in substance to what Mr. Berliner has expressed in Item 13?" A. "I would expect that his criticism is in substance the same as mine." (*Id.* at 61.) |
| "14. C&L failed to require AHERF to correct its improper accounting for contingent amounts of depreciation recapture from Medicare" | Q. "Is that in substance an opinion that you also express?" . . , A. "Yes." (*Id.* at 61-62.) |
| "15. C&L failed to require AHERF to correct other GAAP violations", including the accounting treatment of a sale-leaseback transaction of a building known as the IBM Building. (App. tab 1, Appx. 15, at 15-4.) | Q. "Do you also express the view that the I.B.M. building sale leaseback accounting in 1996 was improper, that it should not have been treated as a gain?" A. "That's correct." (*Id.* at 62-63.) |
| "16. C&L failed to require AHERF to classify certain long-term debt as current liabilities and disclose violations of certain debt covenants" | Q. "Do you express the view in your report that in 1996 and again in 1997, the AGHOG group, Obligated Group, violated debt covenants?" A. "Yes." Q. "And is your basis for concluding that they violated debt covenants that they failed to exclude from their unrestricted fund balance items loaned to other AHERF entities outside the AGHOG Obligated Group?" A. "Yes." (*Id.* at 63-64.) |

-Appendix 2-

| | |
|---|---|
| "17. C&L failed to communicate to AHERF's Board of Trustees and/or Audit Committee matters required to be communicated by GAAS" | Q. "Do you also express the opinion in your report that certain matters, in fact virtually all of the GAAP violations that you identify, and some non-GAAP violations, should have been communicated to the Audit Committee of AHERF by Coopers & Lybrand?" <br> A. "Yes." (*Id.* at 64.) |
| "18. C&L failed to maintain independence in the performance of its audits" | Q. "Do you also conclude that Coopers and Lybrand failed to maintain independence in the performance of its audits?" <br> A. "Yes." (*Id.* at 64.) |

Note: References are to the materials contained in the Appendix to PwC's Motion to Preclude Duplicative and Unreliable Expert Accounting Testimony, filed on May 6, 2005.