**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, | ) ) ) ) | Civil Action No. 00-684 |
| Plaintiff, | ) ) ) | Judge David Stewart Cercone |
| v. | ) ) | Electronically Filed |
| PRICEWATERHOUSECOOPERS, LLP, | ) ) ) | |
| Defendant. | ) | |

**THE PARTIES' PRETRIAL STIPULATION**

Pursuant to paragraph 4 of the November 9, 2011 Pretrial Order (as amended) and in accordance with the Court's standing Case Management Order, plaintiff The Official Committee of Unsecured Creditors of Allegheny Health, Education and Research Foundation ("the Creditors' Committee" or "the Committee") and defendant PricewaterhouseCoopers LLP ("PwC") jointly submit this pretrial stipulation.

**I.     The Committee seeks the following forms of relief in this action:**

The Committee seeks compensatory and punitive damages as more fully described in the Committee's Pretrial Statement.  *See* Dkt. No. 288 at 15-21.

**II.     This Court has jurisdiction based upon the following facts:**

This Court has jurisdiction over this action under 28 U.S.C. § 1334(b), as the action is related to AHERF's Chapter 11 bankruptcy case filed before the United States Bankruptcy Court for the Western District of Pennsylvania (Bankruptcy Case Nos. 98-25773-JFK through 98-25777-JFK), which court, by consent order of April 5, 2000, directed that this action "shall be

filed in the United States District Court for the Western District of Pennsylvania." *See* Bankruptcy Court Dkt. No. 7008.

**III.     The parties stipulate that the following facts will require no proof at trial:**

**<u>The Parties</u>**

1.      The Allegheny Health, Education and Research Foundation, known as "AHERF," was a nonprofit Pennsylvania corporation.  Before filing for bankruptcy, AHERF was one of the largest nonprofit, integrated healthcare systems in the country.

2.      AHERF operated as the parent company for a number of affiliates in the greater Pittsburgh and Philadelphia areas, which affiliates operated hospitals, a medical school, physician practices, and research facilities, and entered into contracts with health insurers.

3.      AHERF filed for bankruptcy under Chapter 11 of the Bankruptcy Code on July 21, 1998.  At the same time, the following AHERF affiliates also filed for bankruptcy: (1) Allegheny University Hospitals, East ("AUH-East"); (2) Allegheny University Medical Practices ("AUMP"); (3) Allegheny University Hospitals, Centennial ("AH-Centennial"); and (4) Allegheny University of the Health Sciences ("AUHS") (collectively, the "AHERF Debtors" or "AHERF Estates").

4.      The Plaintiff in this case is The Official Committee of Unsecured Creditors of Allegheny Health, Education and Research Foundation ("the Creditors' Committee" or "the Committee").  The Committee consists of the largest creditors of the five AHERF Debtors, and was charged with representing the unsecured creditors in the AHERF bankruptcy.  The Committee has five members:  MBIA Insurance Corp. ("MBIA"); PNC Bank, National Association ("PNC Bank"); BNY Mellon, as trustee for the Centennial bondholders; Aetna, Inc.; and Coventry Healthcare, Inc.

5.      The Bankruptcy Court granted the Committee standing to bring this action on behalf of, and to pursue the claims of, the AHERF Debtors.  In other words, the Committee has "stepped into the shoes" of the AHERF Debtors for purposes of pursuing the claims alleged in this case.  In granting the Committee standing, the Bankruptcy Court did not express any view on the merits of the claims brought in this action.

6.      The defendant in this case is PricewaterhouseCoopers LLP ("PwC").  PwC is a limited liability partnership that provides professional services, including accounting and auditing services.

7.      PwC was formed on July 1, 1998, from the merger of legacy firms Price Waterhouse LLP ("Price Waterhouse") and Coopers & Lybrand L.L.P. ("C&L").

8.      C&L and Price Waterhouse, before the merger, also were limited liability partnerships that provided professional services, including accounting and auditing services.

9.      PwC is the successor to C&L.  In other words, PwC has "stepped into the shoes" of C&L for purposes of defending against the claims alleged in this case.

10.     C&L had, and PwC has today, a Pittsburgh office.

11.     AUH-East operated the following five hospitals in the Philadelphia area: (1) Allegheny University Hospitals, MCP (also known as the Medical College of Pennsylvania Hospital and as Allegheny University Hospital, East Falls); (2) Allegheny University Hospitals, Hahnemann (also known as Hahnemann University Hospital and as Allegheny University Hospital, Center City); (3) Allegheny University Hospitals, Bucks County; (4) Allegheny University Hospitals, Elkins Park; and (5) St. Christopher's Hospital for Children.

12.     AUMP, previously known as the Allegheny Integrated Health Group ("AIHG"), owned and managed a number of physician practices in the greater Pittsburgh and Philadelphia areas.

13.     AH-Centennial operated the following four hospitals in Philadelphia:  (1) The Graduate Hospital; (2) City Avenue Hospital; (3) Parkview Hospital; and (4) Mt. Sinai Hospital.

14.     AUHS was an accredited university in Philadelphia that operated the MCP-Hahnemann School of Medicine.

15.     Other AHERF affiliates did not file for bankruptcy.  Those affiliates included: (1) Allegheny General Hospital ("AGH"); (2) Allegheny University Medical Centers ("AUMC"); and (3) Allegheny Hospitals, New Jersey.

16.     AGH is a hospital in Pittsburgh.

17.     AUMC operated the following hospitals and other healthcare facilities in the greater Pittsburgh area:  (1) Forbes Regional Hospital; (2) Forbes Metropolitan Hospital; (3) Forbes Nursing Center; (4) Forbes Hospice; (5) Allegheny Valley Hospital; and (6) Canonsburg General Hospital.

18.     Before the bankruptcy filing, C&L provided audit and other professional services to AHERF and certain of its affiliates, including, but not limited to, auditing AHERF's consolidated financial statements for fiscal years 1996 and 1997.

**The Development of the AHERF System**

19.     AHERF was originally formed in 1983 and became that year the sole member, or parent company, of AGH, a hospital founded in Allegheny (now part of Pittsburgh) in 1885.

20.     Beginning in 1987, AHERF or its affiliates acquired hospitals in the greater Philadelphia and Pittsburgh areas, physician practices in both metropolitan areas, and two

medical schools (later merged into one) in Philadelphia, and entered into contracts with health insurers.

21.     In 1987, AHERF acquired control of the Medical College of Pennsylvania (a medical school, later a part of AUHS) and the Medical College of Pennsylvania Hospital (a hospital in Philadelphia).

22.     In 1991, AHERF acquired control of the United Health System, which included St. Christopher's Hospital for Children in Philadelphia, and Bucks County Hospital and Elkins Park Hospital (both hospitals in suburban Philadelphia).

23.     In 1993, AHERF acquired control of Hahnemann University (a medical school, later a part of AUHS) and Hahnemann University Hospital (a hospital in Philadelphia).

24.     In 1994, AHERF began the process of merging the Medical College of Pennsylvania and the Hahnemann University Medical School into the MCP-Hahnemann School of Medicine.

25.     The Graduate Health System ("GHS") operated a number of hospitals in the Philadelphia area, including The Graduate Hospital, Mt. Sinai Hospital, Parkview Hospital and City Avenue Hospital in Philadelphia, and Rancocas Hospital in New Jersey.  In fiscal year 1997, AHERF acquired control of these GHS hospitals.  The four GHS hospitals in Philadelphia became part of Allegheny Hospitals, Centennial, and Rancocas Hospital became part of Allegheny Hospitals, New Jersey.

26.     In 1997, AHERF also acquired control of three community hospitals and a nursing center from the Forbes Health System, the Allegheny Valley Hospital, and the Canonsburg General Hospital.  As noted above, each of these Pittsburgh community hospitals became part of AUMC.

27.     AHERF purchased the practices of hundreds of physicians in greater Philadelphia and Pittsburgh during the 1990s.  Those practices were managed by AHERF affiliate AIHG (later known as "AUMP").

28.     AHERF also entered into what are known as "risk contracts."  These are agreements under which a healthcare provider (such as AHERF) assumed full financial responsibility for medical care provided to a group of health insurance subscribers and, in exchange, received from the health insurance company a percentage of the health-insurance premiums paid to that health insurance company by those subscribers.

### Bond Financing

29.     Certain AHERF affiliates were members of obligated groups, on whose behalf state and local authorities issued municipal bonds.  Each member of an obligated group was obligated on that obligated group's bonds.

30.     As of June 30, 1996, the AHERF system had two obligated groups:  the Allegheny General Hospital Obligated Group ("AGHOG") and the Delaware Valley Obligated Group ("DVOG").  The DVOG comprised the Debtors AUH-East and AUHS.  The DVOG bonds were issued in early June 1996.  All the DVOG bonds were either insured by MBIA or secured by a stand-by letter of credit from PNC Bank.

31.     As of June 30, 1997, AHERF had five obligated groups:  the AGHOG; the DVOG; the AUMC Obligated Group; the AH-Centennial Obligated Group; and Allegheny Hospitals, New Jersey.  These last three obligated groups were comprised of affiliates that joined the AHERF system in fiscal year 1997, and did not issue new bonds after their affiliation with AHERF.  For each of AHERF's obligated groups, those affiliates that were liable on bonds issued before their affiliation with AHERF remained liable on those bonds.

32.     The Centennial bonds were issued by the GHS Obligated Group, which comprised The Graduate Hospital and Mt. Sinai Hospital, in 1991 and 1993.

33.     Up to and through the fiscal year ended June 30, 1996, the financial statements for GHS, the GHS Obligated Group, and each of the hospitals that became the Centennial hospitals were audited by Deloitte & Touche LLP.

## AHERF's Board of Trustees and Officers

34.     The governing body of AHERF was its Board of Trustees.  Its members were drawn from the Pittsburgh and Philadelphia area medical and business communities.

35.     Many of AHERF's affiliates also had their own Board of Trustees.  Certain of the members of AHERF's Board of Trustees also served as members of the Board of Trustees of one or more AHERF affiliate.

36.     The AHERF Board of Trustees had committees of board members who were charged with certain responsibilities.  Among those committees were the Executive Committee, the Finance Committee and the Audit Committee.  As of the fall of 1996, William Penn Snyder III chaired the Executive Committee, and J. David Barnes chaired both the Finance Committee and the Audit Committee.

37.     Sherif S. Abdelhak became President and Chief Executive Officer ("CEO") of AHERF in 1986.  Mr. Abdelhak also served as a member of the Board of Trustees of AHERF and the other Debtor affiliates.  Mr. Abdelhak's duties included general supervision, direction, and control of the business affairs of AHERF.

38.     David W. McConnell became Executive Vice President and Chief Financial Officer ("CFO") of AHERF in 1991.  Mr. McConnell also served as an officer of Debtors AUHS, AUH-East and AH-Centennial.  Mr. McConnell's duties included responsibility for the finances, financial transactions, and financial reporting of AHERF.

39.     Mr. Abdelhak and Mr. McConnell's employment with AHERF was terminated in June 1998.

### AHERF's Financial Reporting

40.     AHERF prepared financial statements for the various AHERF affiliates and for consolidated AHERF as a whole, which were submitted to the Boards of Trustees of AHERF and its affiliates.  Before the bankruptcy, C&L audited certain annual AHERF financial statements.

41.     AHERF operated on a fiscal year that began on July 1 and ended on June 30. AHERF's fiscal year 1996 started on July 1, 1995 and ended on June 30, 1996.  AHERF's fiscal year 1997 started on July 1, 1996 and ended on June 30, 1997.

42.     The year-end financial statements were prepared initially and submitted to C&L for audit by AHERF employees in its Corporate Support Services department.  These employees provided accounting and other support services to AHERF.  From 1993 until June 1997, Corporate Support Services was headed by Stephen Spargo, Senior Vice President, Corporate Support Services.  Mr. Spargo reported to Mr. McConnell.

43.     During this same time period, two Corporate Support Services employees reported directly to Mr. Spargo regarding financial accounting and reporting:  (1) Albert Adamczak, who served as senior director of accounting for the AHERF parent company and AHERF's hospitals in the Pittsburgh area, and (2) Daniel Cancelmi, who served as senior director of accounting for AHERF's hospitals in the Philadelphia area.

44.     After Mr. Spargo's departure from AHERF in June 1997, Mr. Adamczak was promoted to Vice President of Corporate Support Services, reporting to Mr. McConnell. Mr. Cancelmi was promoted to Senior Director of Accounting and Financial Reporting, with oversight responsibility for the financial accounting of AHERF's Philadelphia and Pittsburgh operations.

45.     William Buettner was a C&L and, later, a PwC partner until his retirement from

PwC at the end of 2000.  He served as the Engagement Partner for C&L's audits of AHERF's

financial statements for fiscal years 1996 and 1997.  As Engagement Partner, Mr. Buettner had

overall responsibility for C&L's audit work for AHERF for those fiscal years.

46.     Mark Kirstein and Amy Frazier were C&L employees.  They remain employees

of PwC today.  They served as managers on C&L's audits of AHERF's financial statements for

fiscal years 1996 and 1997.

47.     For fiscal year 1996, C&L audited annual financial statements for:

(1) consolidated AHERF; (2) DVOG; (3) AGHOG, including AGH and Allegheny-Singer

Research Institute ("ASRI"); (4) separate financial statements for ASRI; (5) AIHG; and (6) the

Hahnemann Insurance Company, Inc.

48.     For fiscal year 1997, C&L audited financial statements for consolidated AHERF.

### AHERF's Bankruptcy Filing

49.     As noted above, on July 21, 1998, AHERF and four of its affiliates filed for

bankruptcy.

50.     On November 10, 1998, all of AHERF's affiliates in the Philadelphia area, except

Allegheny Hospitals, New Jersey, were sold to Tenet Healthcare Corporation ("Tenet") through

an auction process overseen by the Bankruptcy Court.  Tenet is a for-profit owner and operator

of hospitals.  Allegheny Hospitals, New Jersey, which was not part of the AHERF bankruptcy,

was sold to Our Lady of Lourdes, a Catholic-based, not-for-profit healthcare system.

51.     Drexel University agreed to operate AUHS, including the medical school, after an

agreement was reached to assign to Drexel some of the proceeds of the purchase price paid by

Tenet.

52.     The non-Debtor AHERF hospitals in the Pittsburgh area, including AGH,

ultimately were acquired by West Penn Health System, another non-profit healthcare system

operating in the Pittsburgh area.  West Penn Health System was renamed the "West Penn

Allegheny Health System."

53.     After the sale of the AHERF Debtors' hospitals, the Bankruptcy Court continued

to oversee the administration of the bankruptcy involving the AHERF Debtors, including the

process of reducing other assets to cash and making distributions to creditors.

## IV.     The following issues of fact remain in dispute:

The parties' pretrial statements reveal, in summary form, the numerous issues of fact that

remain in dispute.  The Committee submits that the principal disputed issues of fact include:

1.  Whether and the extent to which AHERF's financial statements were prepared
    in compliance with Generally Accepted Accounting Principles and were
    materially misstated;

2.  Whether and the extent to which C&L became aware of, acquiesced in, or
    aided any such noncompliance or misstatement;

3.  Whether and the extent to which C&L conducted its audits of AHERF's
    financial statements in good faith;

4.  Whether and the extent to which C&L's audits of AHERF's financial
    statements complied with Generally Accepted Auditing Standards and C&L's
    professional duty to AHERF, either in the audit work performed or in the
    audit disclosures made or not made;

5.  Whether and the extent to which C&L aided or abetted breaches of fiduciary
    duty to AHERF on the part of AHERF's officers charged with financial
    management;

6.  Whether and the extent to which any failures in compliance with GAAS, other
    breaches of professionally duty on the part of C&L, or any aiding and abetting
    the breaches of fiduciary duty owed to AHERF by officers of AHERF
    proximately caused damage to the AHERF Debtors;

7.  The extent and amount of damages caused by any such failures or breaches;
    and

8.  Whether any of the conduct evidencing the breaches of duty noted above warrants the imposition of punitive damages and the amount of same.

PwC submits that the principal disputed issues of fact include:

1.  Whether C&L conducted its audits of AHERF's financial statements materially in good faith;

2.  Whether C&L aided and abetted breaches of fiduciary duty to AHERF on the part of AHERF's officers charged with financial management of AHERF;

3.  Whether and the extent to which any failure by C&L to act materially in good faith, or any aiding and abetting by C&L of breaches of fiduciary duty by AHERF officers, proximately caused damage to the AHERF Debtors;

4.  The extent and amount of damages caused by any such failure to act materially in good faith or aiding and abetting breaches of fiduciary duty;

5.  Whether AHERF was contributorily negligent with respect to C&L's audits of AHERF's financial statements; and

6.  Whether AHERF was *in pari delicto* with C&L with respect to any alleged wrongful conduct.

**V.     The following issues of law remain in dispute:**

The issues of law that remain in dispute will be the subject of the parties' motions in limine and *Daubert* challenges to the testimony of expert witness, which motions and challenges are to be filed on July 2, 2012, and are the subject of ongoing meet-and-confer communications at the date of this filing.

**VI.    The following deposition testimony will be offered at trial:**

The parties' pretrial statements and exhibits thereto identify the deposition testimony that they expect to present or may present at trial.  *See* Dkt. No. 288, Exhibit 2; Dkt. No. 303, Exhibits 2 & 3; Dkt. No. 304, Exhibits 1 & 2; Dkt. No. 306, Exhibits 1 & 2.

-12-

**VII.    The following individuals will be offered as experts at trial based upon the accompanying statement of qualifications for each individual:**

The parties' pretrial statements identify the retained expert witnesses from whom the

parties expect to present or may present expert testimony at trial and the qualifications thereof.

*See* Dkt. Nos. 143, 144, 281, 288 (Committee's experts); Dkt. Nos. 289-303 (PwC's experts).

Before trial, the parties will undertake to arrive at agreed brief qualification statements for each

expert witness to be read before his testimony.

**VIII.    The parties estimate they will need the following number of six-hour days to try this action:**

The parties estimate they will need the following number of six-hour days to try the case:

Plaintiff's case-in-chief:  20-25 days

Defendant's case-in-chief:  20-25 days

Plaintiff's rebuttal case:  2-4 days

**TOTAL TIME NEEDED:** 42-54 days

Dated: June 15, 2012                                   Respectfully submitted,


*James M. Jones*                                       *Joseph F. McDonough*
James M. Jones (PA #81295)                             Joseph F. McDonough (PA #19853)
JONES DAY                                              BUCHANAN INGERSOLL
500 Grant Street, Suite 4500                             & ROONEY P.C.
Pittsburgh, PA  15219-2514                             One Oxford Centre
(412) 391-3939                                         301 Grant Street, 20th Floor
                                                       Pittsburgh, PA 15219-1410
Richard B. Whitney                                     (412) 562 8800
JONES DAY
North Point                                            Thomas G. Rafferty
901 Lakeside Avenue                                    Antony L. Ryan
Cleveland, OH  44114-1190                              CRAVATH, SWAINE & MOORE LLP
(216) 586-3939                                         Worldwide Plaza
                                                       825 Eighth Avenue
David S. Torborg                                       New York, NY 10019
Beth Heifetz                                           (212) 474-1000
JONES DAY
51 Louisiana Avenue, N.W.                              *Attorneys for Defendant*
Washington, D.C. 20001-2113                            *PricewaterhouseCoopers LLP*
(202) 879-3939


*Attorneys for The Official Committee of*
*Unsecured Creditors of AHERF*