# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION AND RESEARCH FOUNDATION, | ) ) ) ) ) | Civil Action No. 00-684 |
| Plaintiff, | ) ) | Judge David Stewart Cercone |
| v. | ) ) | Electronically Filed |
| PRICEWATERHOUSECOOPERS, LLP, | ) ) ) | |
| Defendant. | ) | |

**THE COMMITTEE'S REPLY BRIEF IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 1 TO EXCLUDE CERTAIN PLEADINGS AND DISCOVERY MATERIALS FILED OR SERVED BY THE COMMITTEE IN OTHER AHERF-RELATED PROCEEDINGS**

David S. Torborg
Beth Heifetz
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
(202) 879-3939

James M. Jones (PA #81295)
Laura A. Meaden (PA #52002)
JONES DAY
500 Grant Street, 45th Floor
Pittsburgh, PA  15219-2514
(412) 391-3939

J. Kevin Cogan
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215-2673
(614) 469-3939

Richard B. Whitney
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114-1190
(216) 586-3939

Dated:  August 30, 2012

Attorneys for The Official Committee of Unsecured Creditors of AHERF

WAI-3085786v1

PwC argues that "evidence" of allegations made and legal conclusions asserted in the Committee's pleadings and discovery responses in other AHERF-related proceedings is "so important to PwC's defense that to keep it from the jury would taint the entire trial." Dkt. No. 382 ("PwC Opp.") at 1. This argument says more about the strength of PwC's defense than it does about the evidentiary dispute to be resolved. A defense premised on allegations and legal conclusions from other cases is no defense at all, and the real risk of irredeemable taint here is the introduction of inadmissible matter that does not qualify as an evidentiary admission and has no probative value.[1] The jury should decide the factual disputes here on the testimony from actual witnesses and volumes of contemporaneous documents, not snippets of inadmissible advocacy from separate proceedings.

## I. The "Statements" at Issue Are Not Evidentiary Admissions.

The overriding legal principle is undisputed: "legal conclusions do not qualify as evidentiary admissions." PwC Opp. at 11; *see also* Dkt. No. 317 at 6-7 ("Comm. Mem."). This principle alone renders most, if not all, of the statements contained in the Committee's prior advocacy—including those in interrogatory responses and any "adoptive admissions" from Mr. Hurst's affidavit—inadmissible. PwC concedes a "small [unidentified] portion of the Officer & Trustee Complaint and the Chapter 11 Trustee Motion" constitutes "legal conclusions," but contends the rest consists of "factual assertions." PwC Opp. at 3, 11.

The question, then, is whether the statements PwC seeks to introduce at trial are properly characterized as factual averments or legal conclusions. While the Committee does not—and this Court cannot—know which particular statements PwC wants to introduce (from the hundreds of possibilities), PwC's brief may be a logical place to start. "By way of illustration,"

---

[1] *See W.V. Realty Inc. v. N. Ins. Co. of N.Y.*, 334 F.3d 306, 317 (3d Cir. 2003) (reversing judgment due to prejudicial admission of prior pleadings); *Garman v. Griffin*, 666 F.2d 1156, 1158 (8th Cir. 1981) (same); *Lytle v. Stearns*, 830 P.2d 1197, 1208 (Kan. 1992) (same).

PwC identifies a series of "relevant, indeed crucial, admissions" from the Committee's interrogatory responses:

- Mr. Snyder "*acted to the detriment of the Debtors' estate*" by "*fail[ing] to ensure* that [the Hunter Group's] recommendations were considered or implemented";

- Messrs. Barnes and Gumberg "*failed to ensure* that Hunter had adequate resources and support to carry out their assigned tasks";

- Mr. Barnes "*knew* that AHERF's net income . . . was $29.1 million below the forecasted amount," "*recognized* that 'AHERF's quality of earnings "over the past couple of years" was "very poor,"'" and "*was aware* that AHERF was relying on millions of dollars in 'investment income' to offset certain negative items";

- Mr. Snyder "*failed to take prompt meaningful steps*, after the misstatements in AHERF's financial reporting became obvious";

- Mr. Gumberg "*was involved in the process* by which AHERF and its affiliates provided information regarding their financial condition," and "therefore '*played a role*' in any manipulation or mishandling* in . . . financial reporting";

- "Mr. Gumberg *played a role* in the Mellon repayment," and "did not take *proper action*, as an AHERF Trustee, to stop the Mellon repayment or *take steps to initiate recovery* of the funds after the payment"; and

- Mr. Barnes "*should have mandated* that the decision to repay the Mellon loan, given its amount and importance, was adequately discussed by the AHERF Board."

*Id.* at 7-9 (emphasis added) (quoting Committee's interrogatory responses).

PwC's own examples simply are not averments of objective fact (and certainly are not based on personal knowledge). They are advocacy-laden, conclusory allegations and legal conclusions, made in response to contention interrogatories served early in another case before any defendant had been deposed. *See Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547-48 n.5 (3d Cir. 1956) (allegations that third-party defendant "fail[ed] to properly maintain and control" and "fail[ed] to warn" about dangerous electric lines were "legal conclusions").[2] PwC's

---

[2] PwC misinterprets *Giannone*. Because neither party appealed the admission of some statements made in a third-party complaint, the court had no occasion to "affirm[] the admission into evidence of the factual allegations." PwC Opp. at 14. Moreover, the fact that *Giannone* and *W. V. Realty* involved third-party complaints filed by defendants, *see* PwC Opp. at 14-15, raises a distinction without a difference. Many decisions have excluded allegations made by plaintiffs against other defendants related to the same or similar injuries. *See* Comm. Mem. at 6-7 n.7.

examples parallel statements the United States Supreme Court, in the oft-cited *Ashcroft v. Iqbal*, has categorized as legal conclusions rather than factual allegations. 556 U.S. 662, 680 (2009) (defendant "'knew of, condoned, and willfully and maliciously agreed to subject' [plaintiff] to harsh conditions of confinement 'as a matter of policy'"; "was the 'principle architect' of this invidious policy"; and was "'instrumental' in adopting and executing it") (quoting plaintiff's complaint).

PwC's own cases illuminate the distinction between factual averments properly treated as evidentiary admissions and the allegations and conclusions at issue here. To the extent they considered the question, those cases involved first-hand factual averments very different from the Committee's prior allegations.[3] Neither *Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147 (2d Cir. 2003) nor *Stratton v. Sacks*, 99 B.R. 686 (D. Md. 1989), *aff'd*, 900 F.2d 255 (4th Cir. 1990)—which PwC trumpets as "more directly on point," PwC Opp. 15—even involved evidentiary admissions. Those cases treated allegations

---

[3] *See Fid. & Deposit Co. of Md. v. Hudson United Bank*, 653 F.2d 766, 777 (3d Cir. 1981) (interrogatory response in separate litigation stated that bank terminated employee because of suspected dishonesty); *Coal Contractors (1991), Inc. v. Gen. Elec. Capital Corp.*, No. 3:05CV398, 2005 WL 2648336, at *4 (M.D. Pa. Oct. 17, 2005) (answer to complaint in previous action admitted that defendant entered into contract); *In re Cont'l Airlines, Inc.*, 125 B.R. 415, 417 (Bankr. D. Del. 1991) (pleading in separate action stated defendant was insolvent within ten days of bankruptcy filing); *Mangual v. Prudential Lines, Inc.*, 53 F.R.D. 301, 302-03 (E.D. Pa. 1971) (previous interrogatory response in same litigation admitted "presence of a rug at the time and the place where the injury to plaintiff occurred"); *Williams v. Union Carbide Corp.*, 790 F.2d 552, 554 (6th Cir. 1986) (complaint in earlier action contended plaintiff's injuries were caused by acetylene explosion, not chemical exposure); *United States v. Morgan*, 581 F.2d 933, 935-36 (D.C. Cir. 1978) (affidavit from police detective stated informant told him that informant purchased pills from specific individual); *Lear Auto. Dearborn, Inc. v. Johnson Controls, Inc.*, 789 F. Supp. 2d 777, 779 (E.D. Mich. 2011) (surveys used by party opponent stated information on how users utilized product); *In re Nat'l Century Fin. Enters., Inc.*, 341 B.R. 198, 209 (Bankr. S.D. Ohio 2006) (declaration recounted facts regarding entity's source of revenue, claims it submitted, amount of receivables collected, and efforts to sell hospital).

against corporate insiders as *judicial* admissions.[4]  In *Dugan v. EMS Helicopters, Inc.*, 915 F.2d 1428, 1433-35 (10th Cir. 1990), the court approvingly recognized many of the Committee's authorities that excluded prior pleadings, but found those cases distinguishable because the plaintiff's position at trial was flatly inconsistent with previous factual averments in another case.

PwC argues here, too, that the Committee's previous advocacy "is in utter conflict" with "the allegations Plaintiff now makes against PwC," PwC Opp. at 2, but does not identify a single statement inconsistent with the Committee's common-sense and central contention in this case: Had C&L told the trustees about deliberate accounting fraud and the true extent of AHERF's financial woes, those trustees would have acted to end the wrongdoing, remove the wrongdoers, and take corrective steps to halt or minimize AHERF's implosion.  The Committee has never contended—nor has PwC—that *any* trustee participated in or had actual knowledge of the wrongdoing at issue here, including the material misstatements in the audited financial information they were provided.[5]

At a minimum, the Court should prohibit use of the implicated pleadings and discovery responses until it has separately assessed individual statements specifically identified by PwC.[6]

---

[4] In *Color Tile*, the court expressly declined to consider (because not timely raised) plaintiff's argument that allegations against other defendants should not be considered due to plaintiff's ability to plead in the alternative.  *See* 322 F.3d at 166.  Moreover, in *Stratton*, the Court considered plaintiff's allegations against the debtor's officers in ruling upon summary judgment, but only "as corroboration of what the record otherwise shows."  *See* 99 B.R. at 694.

[5] *See* Dkt. No. 21 (Mem. of Pl. in Opp. to PwC's Mot. for Partial Summ. J. (Dec. 21, 2001)) at 31 n.25 ("The Committee's allegation that a majority of the outside Trustees were innocent, unaware and misinformed about the misstatements in AHERF's financial reporting is premised on its review of documents, a review suggesting a majority, if not all, of the outside Trustees were uninformed about the financial misrepresentations at issue in this case."); PwC's Resps. and Objs. to Pl.'s First Set of Interrogs. (June 12, 2002), at 16 ("[PwC] has not contended that AHERF's Trustees were aware of misstatements or misrepresentations . . . .") (attached as Ex. A).

[6] *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,* 505 F. Supp. 1190, 1240-41 (E.D. Pa. 1980) ("[W]e think that Rule 801(d)(2) requires that each statement be separately admissible."); *Pfizer Inc. v. Teva Pharms. USA, Inc.*, No. 04-754, 2006 WL 3041102, at *4, *4

## II. The Other Litigation Materials Should Also Be Excluded Under Rule 403.

PwC contends that statements from the Committee's "own mouth" have "great probative value" because they are "some of the most powerful evidence the jury will have" in deciding the key question of how AHERF's trustees would have responded to appropriate disclosures from C&L. PwC Opp. at 17, 19. Again, the Committee's prior pleadings and discovery responses are inadmissible or almost entirely so, and PwC's quoted contention therefore says much about the relative weakness of any relevant and admissible evidence it actually has been able to muster in its defense. PwC also misapprehends the Rules of Evidence.

"There are two components to relevant evidence: materiality and probative value." E. CLEARY, MCCORMICK ON EVIDENCE § 185 (6th ed. 2010). "Materiality concerns the fit between the evidence and the case." *Id.* Even if the prior advocacy "fit" this case—momentarily setting aside that little of it has anything to do with how trustees would have reacted to appropriate disclosures from C&L—that does nothing to establish probative value. Probative value is the "tendency of evidence to establish the proposition that it is offered to prove," *id.*, and evidence does not "have great probative value" simply because, allegedly, it is "powerful." *See United States v. Ramirez-Robles*, 386 F. 3d 1234, 1245 (9th Cir. 2004) (affirming exclusion of "powerful," yet prejudicial evidence); *cf. Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 595 (1993) (expert testimony can be "powerful" but "quite misleading").

Here, as in *Kelly vs. Ellefson*, 712 N.W.2d 759 (Minn. 2006),[7] the Committee's prior advocacy does not (at least in large part) consist of assertions of fact based on personal

---

n.5 (D.N.J. Oct. 26, 2006) ("Teva cannot rely on any legal conclusions asserted in the prior briefs. . . . If disputes arise as to the proper characterization of a particular representation—i.e. legal conclusion versus factual allegation—the Court will decide them on an individual basis.").

[7] The court in *Kelly* never described its holding as a "departure from the 'general rule in other jurisdictions.'" PwC Opp. at 16 n.4. The "general rule" referenced by the court was that "interrogatory answers are admissible as party admissions *provided that the substance of the*

knowledge.[8]  To borrow PwC's language from one of its motions *in limine*—the advocacy consists of an "untested and unproven set of allegations," Dkt. No. 355 at 11 (quoting *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2003 WL 1610775, at *11 (S.D.N.Y. Mar. 26, 2003), for the proposition that parallel complaint was "not evidence of anything other than the existence of an accusation"), offered to advance the Committee's then-extant, good-faith position in a different case.  *See also W.V. Realty*, 334 F.3d at 316 ("probative value" of allegations in third-party complaint were "minimal"); KENNETH S. BROUN, MCCORMICK ON EVIDENCE § 257 (6th ed. 2009) (admitting prior pleading may serve to "prejudice unfairly a party or to be overvalued in relation to its true probative worth").  The Committee's prior statements were not based on personal knowledge and do not have a tendency to prove or disprove any fact in dispute here.[9]

Finally, in determining probative value, courts look to the availability of other evidence to prove the matter in dispute.  *See United States v. Layton*, 767 F.2d 549, 555 (9th Cir. 1985); *Gross v. Black & Decker, Inc.*, 695 F.2d 858, 863 (5th Cir. 1983); FED. R. EVID. 403 advisory committee's note.  PwC has deposed more than 40 AHERF Board members; it has listed most of those individuals and the piles of exhibits used during their depositions in its pretrial disclosures.  PwC has no legitimate need for the Committee's prior allegations and legal conclusions.  They should be excluded.

---

*answers satisfies the rule of evidence*."  712 N.W.2d at 769 (emphasis added).  The court then cited numerous decisions *excluding* interrogatories for various reasons, including Rule 403.

[8] The Committee agrees that there are statements in Mr. Hurst's affidavit within his personal knowledge.  *See* PwC Opp. at 19.  However, because Mr. Hurst did not come on the scene until August 1998, the Committee *does* dispute the relevance of many of those statements.

[9] PwC's claim that the Committee "does not cite to any case holding that lack of personal knowledge is a basis for excluding party admissions under Rule 403," PwC Opp. at 19, is wrong. *See Mister v. Ne. Ill. Commuter R.R. Corp.*, 571 F.3d 696 (7th Cir. 2009) (cited at Comm. Mem. at 10 n.10); *see also Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 763 (7th Cir. 2001); *United States v. Seong Ug Sin*, CR 10-5332JRC, 2010 WL 3195788, at *2 (W.D. Wash. Aug. 10, 2010).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ James M. Jones* |
| David S. Torborg | James M. Jones (PA #81295) |
| Beth Heifetz | Laura A. Meaden (PA #52002) |
| JONES DAY | JONES DAY |
| 51 Louisiana Avenue, N.W. | 500 Grant Street, 45th Floor |
| Washington, D.C. 20001-2113 | Pittsburgh, PA  15219-2514 |
| (202) 879-3939 | (412) 391-3939 |
|  |  |
| J. Kevin Cogan | Richard B. Whitney |
| JONES DAY | JONES DAY |
| 325 John H. McConnell Blvd., Suite 600 | North Point |
| Columbus, OH 43215-2673 | 901 Lakeside Avenue |
| (614) 469-3939 | Cleveland, OH  44114-1190 |
|  | (216) 586-3939 |
|  |  |
|  | Attorneys for The Official Committee of |
| Dated:  August 30, 2012 | Unsecured Creditors of AHERF |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of August, 2012, I electronically filed the foregoing, **The Committee's Reply Brief in Support of Its Motion *in Limine* No. 1**, with the Clerk of the Court using CM/ECF, causing same to be served on these attorneys for defendant PricewaterhouseCoopers LLP via ECF filing notice:

| | |
|---|---|
| Thomas G. Rafferty | Joseph F. McDonough |
| Antony L. Ryan | Buchanan Ingersoll & Rooney, P.C. |
| Cravath, Swaine & Moore | One Oxford Centre |
| 825 Eighth Avenue | 301 Grant Street, 20th Floor |
| Worldwide Plaza, Suite 3900 | Pittsburgh, PA 15219-1410 |
| New York, NY 10019-7415 | (412) 562 8800 |
| (212) 474-1000 | Email: joseph.mcdonough@bipc.com |
| Email: trafferty@cravath.com | |
| Email: aryan@cravath.com | |

          */s/ James M. Jones*
          One of the Attorneys for Plaintiff The Official Committee of Unsecured Creditors of AHERF

WAI-3085786v1