# EXHIBIT A

## TO PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION *IN LIMINE* NO. 1

**Defendant PwC's Responses and Objections to Plaintiff's First Set of Interrogatories**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALLEGHENY HEALTH, EDUCATION & RESEARCH FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> PRICEWATERHOUSECOOPERS, LLP, <br><br> Defendant. | Civil Action No. 00-684 |

**PRICEWATERHOUSECOOPERS, LLP'S RESPONSES AND OBJECTIONS
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant PricewaterhouseCoopers, LLP ("PwC"), by its undersigned attorneys, hereby responds and objects to Plaintiff's First Set of Interrogatories (the "Interrogatories") as follows:

<u>General Objections</u>

1. PwC objects to the Interrogatories to the extent that they purport to impose obligations on PwC beyond those permitted by the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Western District of Pennsylvania.

2. PwC objects to the Interrogatories to the extent that they purport to require the disclosure of information or documents protected by the attorney-client privilege, the attorney work product immunity doctrine, or any other applicable confidentiality restriction, court order, discovery agreement, privilege, immunity, law, or rule. PwC hereby claims such privileges and protections to the extent they are implicated

by the Interrogatories and excludes privileged or protected information and documents from its responses. PwC will respond to the Interrogatories only with responsive, non-privileged, non-exempt information. Any disclosure of privileged or protected information or documents is inadvertent and is not intended to waive any privileges and protections.

3. PwC objects to the Interrogatories to the extent that they purport to require the production of information or documents not presently within the possession, custody, or control of PwC.

4. PwC objects to the Interrogatories to the extent that they call for information that is not relevant to the subject matter of the above-captioned matter and is not reasonably calculated to lead to the discovery of admissible evidence.

5. PwC objects to the Interrogatories to the extent that they are overly broad and unduly burdensome and/or purport to require PwC to identify all persons, documents, or communications that refer or relate to a particular subject or that support a particular contention, or to identify persons, documents, or communications with a level of specificity that is not necessary for Plaintiffs to be reasonably able to understand what persons, documents, or communications are being identified. The information sought by the Interrogatories may more efficiently and completely be gathered by way of depositions of PwC and AHERF personnel. PwC has conducted a reasonable search to identify responsive information and documents within its possession, custody, or control.

6. In making these objections and the following responses, PwC does not in any way waive or intend to waive, but rather preserves and intends to preserve:

a. all rights to object on any ground to the competency, relevancy, materiality, and/or admissibility of any information or document that may be provided in response to the Interrogatories or the subject matter thereof;

2

    b. all rights to object on any ground to the use of any information or document that may be provided in response to the Interrogatories or the subject matter thereof, in any subsequent proceeding, including the trial of this or any other action;

    c. all rights to object on any ground to any request for further responses to these or any other discovery requests; and

    d. all rights to object on any ground to any definition or instruction contained in Plaintiff's discovery requests.

  7. PwC reserves the right to make any use of, or to introduce at any hearing and at trial, information or documents responsive to the Interrogatories but discovered subsequent to the date of PwC's initial responses and production, including, but not limited to, any documents obtained during discovery.

  8. PwC has conducted a reasonable investigation concerning the information sought by the Interrogatories, and PwC's responses to the Interrogatories are made to the best of its present knowledge, information, and belief. But PwC's discovery and investigation of the facts relevant to this case are ongoing, and PwC reserves the right to amend and/or supplement its responses, if necessary, if and when additional or different information is disclosed by further discovery or investigation.

  9. Without waiving the objections set forth above, PwC responds to the Interrogatories as it understands them, and, when appropriate, states additional objections to specific Interrogatories. A specific objection is designed to place counsel on notice of specifically objectionable phraseology and is made in addition to (and not instead of) PwC's general objections. All of the general objections set forth herein are incorporated into each of the individual responses set forth below and have the same force and effect as if fully set forth therein.

## Specific Objections and Responses

### Interrogatory No. 1:

Identify all substantive communications between C&L or PwC and AHERF and/or its affiliates concerning any SUD for fiscal years 1996, 1997 or 1998, specifying the resolution of each SUD discussed.

### Response to Interrogatory No. 1:

PwC incorporates its general objections into its response to Interrogatory No. 1. PwC specifically objects to this interrogatory as overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, and as presently informed, PwC states the following:

At least William Buettner, Mark Kirstein, and/or Amy Frazier of Coopers & Lybrand ("C&L") at times discussed entries on the Summaries of Unadjusted Differences ("SUDs") for fiscal years 1996 and 1997 with at least David McConnell, Stephen Spargo, Al Adamczak, Daniel Cancelmi, Joseph Dionisio, Charles Lisman, John Lydon, Carolyn Cafaro, Elaine Junio, and/or Shulamith Klein of AHERF. Mark Proska of C&L may also have been involved in discussions relating to workers compensation and malpractice insurance reserves in connection with the SUDs for fiscal years 1996 and 1997. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to documents bearing Bates numbers CL 000325-37 and CL 216941-46 for further information about the SUDs for fiscal years 1996 and 1997.

There was no SUD for fiscal year 1998 because PwC did not conduct an audit for that year.

PwC expressly reserves the right to supplement or amend its answer to this interrogatory as further information is developed and in light of further discovery.

4

### Interrogatory No. 2:

Please identify all attendees and matters discussed at the meetings referenced in paragraphs 73, 74, 76 and 87 of the SEC Complaint.

### Response to Interrogatory No. 2:

PwC incorporates its general objections into its response to Interrogatory No. 2. PwC specifically objects to this interrogatory as overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, and as presently informed, PwC states the following:

With respect to the meeting alleged in paragraph 73 of the SEC Complaint, PwC is aware of no such meeting.

With respect to the luncheon alleged in paragraph 74, on or about April 7, 1997, Mark Kirstein of C&L met Al Adamczak and Daniel Cancelmi of AHERF for lunch. The discussion was primarily of a social nature. There was some discussion of accounting for the acquisition of the Graduate hospitals, but PwC is aware of no discussion regarding any transfer of reserves.

With respect to the conference call alleged in paragraph 76, pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the document bearing Bates numbers CL 039248-49.

With respect to the meeting alleged in paragraph 87, on August 22, 1997, Mark Kirstein, Amy Frazier, and possibly other employees of C&L met with Al Adamczak, Daniel Cancelmi, Charles Lisman, and possibly other employees of AHERF. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the documents bearing Bates numbers CL 037536 and CL 039228.

PwC expressly reserves the right to supplement or amend its answer to this interrogatory as further information is developed and in light of further discovery.

**Interrogatory No. 3:**

Identify any review, study or investigation conducted by or at the behest of C&L and/or PwC concerning C&L's audit of the financial statements of AHERF and/or its affiliates for fiscal years 1996 or 1997, specifying the identity of those persons who participated in the review, study or investigation, their findings or conclusions, and any actions taken as a result.

**Response to Interrogatory No. 3:**

PwC incorporates its general objections into its response to Interrogatory No. 3. PwC specifically objects to this interrogatory on the ground that it purports to require the disclosure of information subject to the attorney-client privilege and/or the attorney work product immunity doctrine. Subject to and without waiving the foregoing general and specific objections, and as presently informed, PwC states that it is aware of no non-privileged review, study, or investigation conducted by or at the behest of C&L and/or PwC concerning C&L's audit of the financial statements of AHERF and/or its affiliates for fiscal years 1996 and 1997.

PwC expressly reserves the right to supplement or amend its answer to this interrogatory as further information is developed and in light of further discovery.

**Interrogatory No. 4:**

Identify any disciplinary action taken by C&L or PwC with respect to any of their employees who provided services to AHERF and/or its affiliates between March 1, 1996 and December 31, 1998.

**Response to Interrogatory No. 4:**

PwC incorporates its general objections into its response to Interrogatory No. 4. PwC specifically objects to this interrogatory as overly broad and unduly burdensome. Subject to and without waiving the foregoing general and specific objections, and as presently informed, PwC states that it is aware of no disciplinary action taken by C&L or PwC with respect to any of their employees who provided services to AHERF and/or its affiliates between March 1, 1996 and December 31, 1998.

6

PwC expressly reserves the right to supplement or amend its answer to this interrogatory as further information is developed and in light of further discovery.

**Interrogatory No. 5:**

Identify all substantive communications through the present time between C&L or PwC and any Trustee concerning AHERF and/or its affiliates, including without limitation, all executive sessions of any meeting of the AHERF Board or any committee thereof.

**Response to Interrogatory No. 5:**

PwC incorporates its general objections into its response to Interrogatory No. 5. PwC specifically objects to this interrogatory as overly broad and unduly burdensome, including to the extent that it purports to require information regarding time periods before fiscal year 1996. Subject to and without waiving the foregoing general and specific objections, and as presently informed, PwC states the following:

On October 15, 1996, William Buettner of C&L attended a meeting of the Audit Committee of AHERF's Board of Trustees. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the document bearing Bates numbers CL 036005-153 for further information about the meeting.

On March 14, 1997, William Buettner of C&L attended a meeting of AHERF's Audit Committee. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the document bearing Bates numbers CL 36936-7102 for further information about the meeting.

On October 15, 1997, William Buettner of C&L attended a meeting of AHERF's Audit Committee. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the document bearing Bates numbers CL 036444-651 for further information about the meeting.

On March 11, 1998, William Buettner and Lou Testoni of C&L attended a meeting of the Finance and Audit Committee of AHERF's Board of Trustees. Pursuant

7

FROM CRAVATH SWAINE & MOORE        (WED) 6.12'02 22:18/ST. 22:13/NO. 4861019158 P 11

to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the document bearing Bates numbers CL 180713-872 for further information about the meeting.

On April 18, 1998, William Buettner of C&L met with a number of AHERF Trustees. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the document bearing Bates number GOV 29002 for further information about the meeting.

On June 12, 1998, at least William Buettner of C&L met with a number of AHERF Trustees. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the document bearing Bates numbers CL 192731-40 for further information about the meeting.

On or about August 17, 1998, Ben Korbly, James Stalder, and Mel Hope of PwC met with David Barnes, an AHERF Trustee. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the documents bearing Bates numbers CL 150083, CL 151015, and CL 151135 for further information about the meeting.

On August 27, 1998, Ben Korbly and James Stalder of PwC attended a meeting of AHERF's Finance and Audit Committee. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the document bearing Bates numbers CL 147170-234 for further information about the meeting.

On September 1, 1998, Ben Korbly and James Stalder of PwC attended a meeting of AHERF's Finance and Audit Committee. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the document bearing Bates numbers CL 147133-34 for further information about the meeting.

On or about September 24, 1998, Mel Hope and James Stalder of PwC met with David Barnes, an AHERF Trustee. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the documents bearing Bates numbers CL 150930-31 and CL 151056 for further information.

On or about October 5, 1998, Ben Korbly and James Stalder of PwC met with David Barnes, an AHERF Trustee. Pursuant to Fed. R. Civ. P. 33(d), PwC refers

Plaintiff to the documents bearing Bates numbers CL 147124 and CL 151297 for further information.

On or about October 8, 1998, Ben Korbly and James Stalder of PwC met for lunch with David Barnes and Ira Gumberg, AHERF Trustees. Korbly and Stalder raised issues relating to Statement on Auditing Standards No. 82 and the ongoing audit relating to government awards in accordance with OMB Circular A-133. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the document bearing Bates number CL 151021 for further information.

On October 28, 1998, Ben Korbly, James Stalder, and Mel Hope of PwC attended a meeting of AHERF's Finance and Audit Committee. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the document bearing Bates numbers CL 150828-47 for further information about the meeting.

After the end of June or the beginning of July 1998, James Stalder of PwC also had other discussions with some members of AHERF's Board of Trustees (including at least David Barnes and Robert Hernandez).

PwC expressly reserves the right to supplement or amend its answer to this interrogatory as further information is developed and in light of further discovery.

<u>Interrogatory No. 6</u>:

Identify all substantive communications through the present time concerning AHERF and/or its affiliates between C&L or PwC and any person, including without limitation, any representative of any primary or excess insurer of AHERF and/or its affiliates.

<u>Response to Interrogatory No. 6</u>:

PwC incorporates its general objections into its response to Interrogatory No. 6. PwC specifically objects to this interrogatory to the extent that it purports to require the disclosure of information subject to the attorney-client privilege and/or the attorney work product immunity doctrine. PwC further objects to this interrogatory as

9

overly broad and unduly burdensome, including to the extent that it seeks information regarding time periods before fiscal year 1996; communications with "any person" (including PwC's lawyers) concerning AHERF; and/or communications with Allegheny Health Services Providers Insurance Co. (AHSPIC), a captive insurance subsidiary of AHERF. There were so many communications concerning AHERF and its affiliates in connection with the audits and otherwise that it would be unduly burdensome even to try to identify them. Subject to and without waiving the foregoing general and specific objections, and as presently informed, PwC states that it is aware of no communication concerning AHERF and/or its affiliates between C&L or PwC and any representative of any primary or excess insurer (other than AHSPIC) of AHERF and/or its affiliates.

    PwC expressly reserves the right to supplement or amend its answer to this interrogatory as further information is developed and in light of further discovery.

**Interrogatory No. 7:**

Identify all substantive communications between C&L or PwC and AHERF and/or its affiliates relating to:

    (a)    the classification of or accounting for any inter-company loans, advances or receivables/payables in the financial statements of AHERF and/or its affiliates for the 1996 and 1997 fiscal years;

    (b)    the classification of, or accounting for the transfer of, funds from any trusts or other endowments held by AHERF and/or its affiliates, including without limitation, those accounts commonly known as the "Lockhart Trusts";

    (c)    the reasonableness of the reserves established on the books of AHERF and/or its affiliates for uncollectible accounts receivable; or

    (d)    the need for or reasonableness of the reserves established on the books of any entities acquired by or merged with AHERF and/or its affiliates between January 1, 1993 and January 1, 1998.

**Response to Interrogatory No. 7:**

PwC incorporates its general objections into its response to Interrogatory No. 7. PwC specifically objects to this interrogatory as overly broad and unduly burdensome, including to the extent that it seeks information regarding time periods before fiscal year 1996. Subject to and without waiving the foregoing general and specific objections, and as presently informed, PwC states the following:

At least William Buettner, Mark Kirstein, and/or Amy Frazier of C&L communicated with David McConnell, Stephen Spargo, Al Adamczak, and/or Daniel Cancelmi of AHERF regarding the subject matter of this interrogatory.

With respect to 7(a), during C&L's audit of AHERF's 1997 financial statements, AHERF told C&L that it would classify $113,884,000 in intercompany advances from Allegheny General Hospital's funded depreciation account as "assets limited or restricted as to use" on its consolidating balance sheet. AHERF represented to C&L that the advance was a loan that would be fully repaid by AHERF's eastern operations and would not be forgiven. C&L informed AHERF that, given that the audit

12

opinion was only on AHERF's consolidated financial statements, that was a permissible classification on the consolidating balance sheet so long as the advance was included in the elimination column on the consolidating balance sheet. PwC refers Plaintiff to paragraph no. 19 of AHERF's 1997 management representation letter, at Bates numbers CL 149922-27, for further information.

   With respect to 7(b), during the audits of the 1996 and 1997 financial statements of AHERF and its affiliates, AHERF told C&L that it was properly classifying its endowment funds (including the "Lockhart trusts"). PwC refers Plaintiff to paragraph no. 22 of AHERF's 1996 management representation letter, at Bates numbers CL 006263-67, for further information. AHERF did not inform C&L of the position of Mellon Bank, trustee for the Lockhart trusts, that the capital appreciation in the Lockhart trusts was restricted. In June 1998, AHERF provided C&L for the first time with an October 30, 1996 letter from Mellon Bank stating that Mellon Bank considered the funds in the Lockhart trusts to be restricted. C&L advised AHERF that the letter raised the possibility that AHERF's 1996 and 1997 financial statements would need to be restated. AHERF responded that its in-house counsel would be consulted.

   With respect to 7(c), during the audit of the 1996 financial statements of AHERF and its affiliates, C&L advised AHERF that its bad debt reserves for its Delaware Valley operations appeared to be inadequate. AHERF subsequently increased its bad debt reserves by $17.5 million. This increase resolved C&L's concern. During the audit of AHERF's 1997 financial statements, C&L learned that AHERF had transferred $50 million in purchase accounting reserves from the Graduate Health System hospitals to the bad debt reserves for the Delaware Valley Obligated Group. C&L informed AHERF that that was improper accounting, but AHERF refused to undo the transaction. AHERF did not inform C&L of all material information relating to the $50 million in reserve transfers or of additional reserve transfers to the bad debt reserves

12

for the Delaware Valley Obligated Group. Based on the information known to C&L, C&L concluded that AHERF's bad debt reserves, not including the $50 million in known transferred reserves, were not materially misstated.

With respect to 7(d), during the audit of AHERF's 1997 financial statements, AHERF and C&L discussed purchase accounting reserves that AHERF had established in connection with the acquisition of the Graduate Health System hospitals, the Forbes Health System, and the Allegheny Valley Hospital. AHERF told C&L that $50 million in purchase accounting reserves at the Graduate Health System hospitals had been transferred to the Delaware Valley Obligated Group, but AHERF did not tell C&L about any other reserve transfers.

PwC expressly reserves the right to supplement or amend its answer to this interrogatory as further information is developed and in light of further discovery.

### Interrogatory No. 8:

Identify all substantive communications between C&L or PwC and any person between July 1, 1997 and February 30, 1998 relating to the compliance (or noncompliance) of AHERF and/or its affiliates with the covenants set forth in its and/or their respective loan documents.

### Response to Interrogatory No. 8:

PwC incorporates its general objections into its response to Interrogatory No. 8. PwC specifically objects to this interrogatory as overly broad and unduly burdensome. Subject to the foregoing general and specific objections, and as presently informed, PwC states the following:

Between July 1, 1997 and February 28, 1998, at least William Buettner, Mark Kirstein, and/or Amy Frazier of C&L discussed with at least Al Adamczak, Daniel Cancelmi, Susan Gilbert, and/or AHERF's counsel from Foley and Lardner the compliance (or noncompliance) of AHERF and/or its affiliates with the covenants set forth in its and/or their respective loan documents. PwC received legal opinions from

13

AHERF's counsel from Foley and Lardner regarding, among other things, the Allegheny Hospitals, Centennial Obligated Group's debt covenant compliance as of June 30, 1997, and the Delaware Valley Obligated Group's debt covenant compliance as of September 30, 1997, and December 31, 1997. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to Note No. 17 of AHERF's 1997 Financial Statements and documents bearing Bates numbers CL 027086-92 and CL 027096-97 for further information about the substance of these discussions.

PwC expressly reserves the right to supplement or amend its answer to this interrogatory as further information is developed and in light of further discovery.

### Interrogatory No. 9:

Please describe in detail the manner in which C&L determined the materiality thresholds established for the 1996 and 1997 fiscal year audits of AHERF and/or its affiliates.

### Response to Interrogatory No. 9:

PwC incorporates its general objections into its response to Interrogatory No. 9. Subject to the foregoing general and specific objections, and as presently informed, PwC states that the materiality thresholds for the audits for fiscal years 1996 and 1997 were determined by at least William Buettner, Mark Kirstein, and/or Amy Frazier. The materiality thresholds were based upon auditor judgment, taking into account multiple factors, including the audit team's experience with and assessment of AHERF and its reporting requirements (e.g., whether AHERF's financial statements would be reported on a consolidated rather than an individual basis).

PwC expressly reserves the right to supplement or amend its answer to this interrogatory as further information is developed and in light of further discovery.

14

**Interrogatory No. 10:**

Identify all misstatements, regardless of their materiality, in the 1996 and 1997 financial statements of AHERF and/or its affiliates.

**Response to Interrogatory No. 10:**

PwC incorporates its general objections into its response to Interrogatory No. 10. PwC specifically objects to this interrogatory as overly broad and unduly burdensome. Subject to the foregoing general and specific objections, and as presently informed, PwC states the following:

Immaterial misstatements in AHERF's 1996 and 1997 financial statements are identified throughout C&L's work papers for the audits of those financial statements. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the documents bearing Bates numbers CL 000325-37 and CL 216941-46 (the SUDs for fiscal years 1996 and 1997) for additional information about misstatements in AHERF's 1996 and 1997 financial statements. Potential additional misstatements in AHERF's 1997 financial statements were identified in 1998. Pursuant to Fed. R. Civ. P. 33(d), PwC refers Plaintiff to the documents bearing Bates numbers CL 147148-58 for further information about these potential additional misstatements.

PwC expressly reserves the right to supplement or amend its answer to this interrogatory as further information is developed and in light of further discovery.

**Interrogatory No. 11:**

Identify those persons you contend "controlled AHERF" as alleged in paragraph 4 of the Second Defense set forth in your Answer to First Amended Complaint.

**Response to Interrogatory No. 11:**

PwC incorporates its general objections into its response to Interrogatory No. 11. PwC specifically objects to this interrogatory as premature because it seeks information concerning PwC's ultimate contentions in this case prior to the full discovery

15

of relevant information and documents. Subject to the foregoing general and specific objections, and as presently informed, PwC states that some or all of AHERF's officers and/or management (including at least Sherif Abdelhak and David McConnell) were persons who controlled AHERF.

PwC expressly reserves the right to supplement or amend its answer to this interrogatory as further information is developed and in light of further discovery.

### Interrogatory No. 12:

Identify all trustees that you contend were aware of any misstatement or misrepresentation, regardless of its materiality, in the financial statements of AHERF and/or its affiliates for fiscal years 1996 and 1997 at the time C&L prepared and delivered its audit reports of those financial statements or at any time thereafter, specifying the misstatement(s) or misrepresentation(s) of which each such Trustee was allegedly aware and the date or time of his/her awareness.

### Response to Interrogatory No. 12:

PwC incorporates its general objections into its response to Interrogatory No. 12. PwC objects to this interrogatory as premature because it seeks information concerning PwC's ultimate contentions in this case prior to the full discovery of relevant information and documents. Indeed, PwC has contended that the AHERF Trustees were aware of AHERF's financial difficulties and of the causes of AHERF's business failure, but to date, based on information presently known to PwC, has not contended that AHERF's Trustees were aware of misstatements or misrepresentations in the financial statements. Moreover, this interrogatory is premature because it seeks information concerning each AHERF Trustee's state of mind--information that is within the possession of each AHERF Trustee, not PwC. As a result of the stay of discovery with respect to the AHERF Trustees, PwC has not yet had the opportunity to conduct any discovery regarding the AHERF Trustees' state of mind.

16

**Interrogatory No. 13:**

Identify all documents related to the "AHERF engagement" which were shredded or destroyed by C&L or PwC employees either in response to the e-mails reproduced on the documents bearing control numbers CL160230-31 or otherwise, specifying by whom each such document was shredded or destroyed and when.

**Response to Interrogatory No. 13:**

PwC incorporates its general objections into its response to Interrogatory No. 13. PwC specifically objects to this interrogatory as vague and ambiguous in its use of the term "shredded or destroyed" because it is not clear whether the term "shredding or destroying" documents as used in this interrogatory encompasses simply disposing of documents in the ordinary course of business. To the extent that this interrogatory purports to require PwC to identify any documents disposed of in the ordinary course of business, PwC further objects to this interrogatory as overly broad and unduly burdensome and because it seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing general and specific objections, and as presently informed, PwC states that no document relating to the audits of the financial statements of AHERF or its affiliates was shredded or destroyed, in response to the e-mail bearing Bates numbers CL 160230-31 or otherwise. The recipients of the e-mail were not members of the C&L audit team but rather members of a PwC Financial Advisory Services ("FAS") team (and James Stalder, head of PwC's Pittsburgh office). The FAS team was working on an engagement relating to AHERF's impending bankruptcy, not the previous audit engagements. The protocol set forth in the e-mail was standard for the FAS team in its bankruptcy-planning engagements, which by definition required the careful handling of highly sensitive business information about PwC's clients. Any suggestion by Plaintiff that the e-mail was intended or interpreted by the author or any of the recipients as anything other than a

reminder to maintain client confidentiality with respect to a potential bankruptcy filing is baseless.

June 12, 2002

*(signature)*

Francis P. Barron
Roger G. Brooks
CRAVATH, SWAINE & MOORE
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

Joseph F. McDonough
MANION MCDONOUGH & LUCAS, P.C.
600 Grant Street, Suite 882
Pittsburgh, PA 15219
(412) 232-0200

Counsel for PricewaterhouseCoopers, LLP